JUDGE CEDARBAUM

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

William E. Richardson, Dennis G. Keith, Herman H. Scott, Florilis
Davis, Harley R. Smith, Lonnie J. Blake, James M. Salp, Ronald W.
Auld, Michael E. Dennis, Donald I. Byrd, Nicholas DiFalco, Paul H.
Freeland, Thomas R. Oberschmidt, Robert F. Howell, Robert L.
Toothman, Eugene F. Gee, Jr., Gary A. Marting, Eugene E. Racht,
Jr., Robert J. DeFauw, Dennis W. Schoenrock, Louis A. Runge,
Kenneth W. Van Lanen, Paul D. Herring, Charles A. Roe, Robert H.
Stauffer, Charles W. Harvey, William J. Logay, Robert L. Starratt,
Jr., Kent Lloyd Bryan, Jack B. Holder, Lloyd N. Nilsen, Gary A.
Crep, Richard R. Waldie, Dennis A. Vitale, Laurence J. Robicheau,
Steven R. Wallner, Benedict Saurino, Guy Scantlebury, Richard T.
Jarrett, Charles J. Sickels, William R. Hausmann, James J. Stever,
Jr., Donald P. Hoffmann, Diogenes K. Galanos, Bruce R. Stock,
John R. Thurston, Clifford M. Spingler, Emmett C. Scott, Thomas S.
Kostecke, J. Bernard Redd, Thomas L. Carter, Stanley J.
Amrozowicz, John H. Thurston, Richard W. Herman, George A.
Miller, Andrew H. Nash, Paul V. Kostyo, Alan L. Stoops, Robert
Finney, Russell C. Anderson, Walter Behrens, Clarence Benham,
Estate of David S. Brown, James A. Clark, John Cody, Clarence
Cook, Estate of Frederick Wallace Ford, Estate of Bernard Corbit,
Dwaine Converson, Daniel DiPirro, Richard Dreiwitz, Raymond
Egan Jr., Cyril Gamber, Michael Goergen, Joseph Gordon Sr.,
Warren Griffin, Ray Jackson, Harold Jacobs, Thomas Lavin, R.
Edward Lee Jr., John Maye, David McClugage, David Milroy,
Charles Monroe, Estate of Ronald Montague, James O'Brien, Peter
Pallatroni, Samuel Joseph Reed, Edward Skelly, Thomas Taylor,
William J. Knierim, Steve Goodenow and Frank E. Pickens,

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Complaint

**07 CV 11632**

**Docket No.:**



                        **Plaintiffs,**

                v.

National Football League, National Football League
Management Council, National Football League Pension Plan,
National Football League Capital Accumulation Plan, National
Football League Flex Plan, National Football League Management
Council Pension Plan, NFL Employee Benefit Committee and
Comprehensive Drug Testing, Inc.,

                        **Defendants.**

------------------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:
:

## INTRODUCTION

1.    This lawsuit is brought to seek redress for the actions of the named defendants, the National Football League ("NFL") and National Football League Management Council ("NFLMC") by the former Drug Program Agents of the NFL and NFLMC ("DPAs"). The DPAs, until all were terminated on April 30, 2007, were employees of the NFL and NFLMC responsible for administering vital aspects of the NFL and NFLMC program for testing NFL players for the use of performance enhancing substances, such as steroids, and illegal drugs.

2.    The work of the DPAs was essential to the operations of the NFL and NFLMC. There was never a material complaint about the performance of these individuals. Further, there was never any discussion or talk of replacing the DPAs until some DPAs began exploring the rights to which they were entitled as NFL and NFLMC employees.

3.    The named plaintiffs were all DPAs employed, either as of April 30, 2007, or in the past, by the NFL and NFLMC. The majority of these individuals had law enforcement backgrounds, and many were older workers.

4.    It has been determined, by the Internal Revenue Service, as well as by every State Unemployment Board that has considered the question, that the DPAs were, at all pertinent times, employees of the NFL and NFLMC.

5.    This lawsuit seeks relief based upon the employee benefits (pension and welfare) that the DPAs were entitled to as employees, but which were never provided to them.

6.    This lawsuit also seeks remedies based upon interference with DPA attainment of said benefits, and remedies for the retaliation the NFL and NFLMC inflicted upon the DPAs, including age discrimination, for attempting to assert, correctly, that they were

2

"employees" and are owed substantial benefits by the NFL, NFLMC and their various pension and welfare benefit plans.

7.      Also named in this lawsuit is Comprehensive Drug Testing, Inc. ("CDT"), which has, to date, refused to hire a single DPA to perform the functions they previously performed as NFL and NFLMC employees.

## THE PARTIES

8.      William E. Richardson resides at 1712 E. Greentree Drive, Tempe, Arizona.  Mr. Richardson's date of birth is November 27, 1951.  From approximately 1997 through April 30, 2007, Mr. Richardson was employed by defendants NFL and NFLMC as a DPA.   Throughout his employment with the NFL and NFLMC, Mr. Richardson was qualified for his position and performed his duties in a professional manner.  Prior to being employed by the NFL and the NFLMC, Mr. Richardson was a detective for the Mesa, Arizona police department.

9.      Dennis G. Keith resides at 1526 E. Southshore Drive, Tempe, Arizona. Mr. Keith's date of birth is January 22, 1944.  From approximately August 1988 through April 30, 2007, Mr. Keith was employed by defendants NFL and NFLMC as a DPA.  Throughout his employment with the NFL and NFLMC, Mr. Keith was qualified for his position and performed his duties in a professional manner.  Prior to being employed by the NFL and the NFLMC Mr. Keith was a Sergeant in the Phoenix Police Department.

10.      Herman H. Scott resides at 2787 Players Drive, Jonesboro, Georgia.  Mr. Scott's date of birth is January 9, 1934.  From approximately 1988 through April 30, 2007, Mr. Scott was employed by defendants NFL and NFLMC as a DPA (prior to 1996, DPAs were

known as "Drug Program Coordinators"). Throughout his employment with the NFL and NFLMC, Mr. Scott was qualified for his position and performed his duties in a professional manner. Mr. Scott is a former special agent for the FBI.

11.    Florilis Davis resides at 2696 Hearthstone Circle, Marietta, Georgia. Mr. Davis's date of birth is August 8, 1941. From approximately 2001 through April 30, 2007, Mr. Davis was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Davis was qualified for his position and performed his duties in a professional manner. Mr. Davis is a former special agent for the FBI.

12.    Harley R. Smith resides at 8501 Moody Road, Charlotte, North Carolina. Mr. Smith's date of birth is June 27, 1936. From approximately 1995 through April 30, 2007, Mr. Smith was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Smith was qualified for his position and performed his duties in a professional manner. Mr. Smith is a former police officer with the Police Department in Charlotte City, Mecklenburg County, North Carolina .from October 1958 until February 1987.

13.    Lonnie J. Blake resides at 11215 Beagle Street, Midland, North Carolina. Mr. Blake's date of birth is September 11, 1940. From approximately 1997 through April 30, 2007, Mr. Blake was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Blake was qualified for his position and performed his duties in a professional manner. Mr. Blake is a former officer with the Police Department in Charlotte, N.C.

4

14.    James M. Salp resides at W68N715 Evergreen Boulevard, Cedarburg, Wisconsin. Mr. Salp's date of birth is May 31, 1944. From approximately January, 2002 through April 30, 2007, Mr. Salp was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Salp was qualified for his position and performed his duties in a professional manner. Mr. Salp is a former special agent for the FBI.

15.    Ronald W. Auld resides at 6580 Pine Lane Drive, Tinley Park, Illinois. Mr. Auld's date of birth is April 5, 1937. From approximately mid 1988 through April 30, 2007, Mr. Auld was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Auld was qualified for his position and performed his duties in a professional manner. Mr. Auld is a former special agent for the FBI.

16.    Michael E. Dennis resides at 6320 North Le Mai Avenue, Chicago, Illinois. Mr. Dennis's date of birth is March 26, 1948. From approximately mid January 2002 through April 30, 2007, Mr. Dennis was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Dennis was qualified for his position and performed his duties in a professional manner. Mr. Dennis is a former special agent for the FBI.

17.    Donald I. Byrd resides at 27372 Dogridge Road, Brookville, Indiana. Mr. Byrd's date of birth is July 18, 1937. From approximately 1989 through April 30, 2007, Mr. Byrd was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Byrd was qualified for his position and performed his duties in a

5

professional manner.  Mr. Byrd is a former officer with the Police Department of Cincinnati, OH.

18.    Nicholas DiFalco resides at 11200 Quivas Loop, Westminster, CO.  Mr. DiFalco's date of birth is July 22, 1948.  From approximately 2001 through April 30, 2007, Mr. DiFalco was employed by defendants NFLMC and NFL as a DPA.  Throughout his employment with the NFL and NFLMC, Mr. DiFalco was qualified for his position and performed his duties in a professional manner.  Mr. DiFalco is a former special agent with the IRS Criminal Investigation Division.

19.    Paul H. Freeland resides at 4234 Intrepid Drive, Cincinnati, Ohio.  Mr. Freeland's date of birth is April 26, 1933.  From approximately 1988 through April 30, 2007, Mr. Freeland was employed by defendants NFL and NFLMC as a DPA.  Throughout his employment with the NFL and NFLMC, Mr. Freeland was qualified for his position and performed his duties in a professional manner.  Mr. Freeland is a former officer with the Police Department of Cincinnati, OH.

20.    Thomas R. Oberschmidt resides at 5578 Clearidge Lane, Cincinnati, Ohio.  Mr. Oberschmidt's date of birth is March 12, 1939.  From approximately 1999 through April 30, 2007, Mr. Oberschmidt was employed by defendants NFL and NFLMC as a DPA.  Throughout his employment with the NFL and NFLMC, Mr. Oberschmidt was qualified for his position and performed his duties in a professional manner.  Mr. Oberschmidt is a former officer with the Police Department of Cincinnati, OH.

21.    Robert F. Howell resides at 7335 Mulberry Road, Chesterland, Ohio.  Mr. Howell's date of birth is January 23, 1939.  From approximately 1994 through April 30, 2007,

Mr. Howell was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Howell was qualified for his position and performed his duties in a professional manner. Mr. Howell is a former officer with the Police Department in Cleveland, OH.

22.     Robert L. Toothman resides at 1756 El Dorado Boulevard, Brunswick, Ohio. Mr. Toothman's date of birth is December 29, 1944. From approximately 2000 through April 30, 2007, Mr. Toothman was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Toothman was qualified for his position and performed his duties in a professional manner. Mr. Toothman is a former Deputy United States Marshall with the U.S. Marshall's Service in Cleveland, OH.

23.     Eugene F. Gee, Jr. resides at 6047 Weymouth Drive, Dallas, Texas. Mr. Gee's date of birth is September 9, 1932. From approximately 1988 through April 30, 2007, Mr. Gee was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Gee was qualified for his position and performed his duties in a professional manner. Mr. Gee is a former special agent for the FBI.

24.     Gary A. Marting resides at 8 Swiftwater Trail, Austin, Texas. Mr. Marting's date of birth is October 24, 1943. From May 1, 1996 through April 30, 2007, Mr. Marting was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Marting was qualified for his position and performed his duties in a professional manner. Mr. Marting is a former special agent for the FBI.

25.     Eugene E. Racht, Jr. resides at 11016 Fernald Avenue, Dallas, Texas. Mr. Racht's date of birth is February 9, 1936. From approximately February 1996 through April 30,

2007, Mr. Racht was employed by defendants NFL and NFLMCC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Racht was qualified for his position and performed his duties in a professional manner. Mr. Racht is a former special agent for the FBI.

26.    Robert J. DeFauw resides at 1005 Cadieux Road, Grosse Pointe Park, Michigan. Mr. DeFauw's date of birth is November 1, 1934. From approximately 1988 through April 30, 2007, Mr. DeFauw was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. DeFauw was qualified for his position and performed his duties in a professional manner. Mr. DeFauw is a former special agent of the Drug Enforcement Administration ("DEA").

27.    Dennis W. Schoenrock resides at 3136 Tamarron Drive, Rochester Hills, Michigan. Mr. Schoenrock's date of birth is February 25, 1948. From approximately 2001 through April 30, 2007, Mr. Schoenrock was employed by respondent defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Schoenrock was qualified for his position and performed his duties in a professional manner. Mr. Schoenrock is a former special agent for the DEA.

28.    Louis A. Runge resides at 2253 County J, Abrams, Wisconsin. Mr. Runge's date of birth is April 5, 1941. From approximately December 1995 through April 30, 2007, Mr. Runge was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Runge was qualified for his position and performed his duties in a professional manner. Mr. Runge is a former Deputy Police Chief in Green Bay, WI

29.    Kenneth W. Van Lanen resides at 1802 11th Avenue, Green Bay, Wisconsin. Mr. Van Lanen's date of birth is July 12, 1933. From approximately August 1989 through April 30, 2007, Mr. Van Lanen was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Van Lanen was qualified for his position and performed his duties in a professional manner. Mr. Van Lanen is a former officer for the Police Department in Green Bay, WI.

30.    Paul D. Herring resides at 14367 Still Meadow, Houston, Texas. Mr. Herring's date of birth is January 14, 1939. From approximately 1991 through April 30, 2007, Mr. Herring was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Herring was qualified for his position and performed his duties in a professional manner. Mr. Herring is a former special agent of the DEA.

31.    Charles A. Roe, III resides at 1606 Houston Drive West, La Marque, Texas. Mr. Roe's date of birth is September 15, 1948. From approximately 1999 through April 30, 2007, Mr. Roe was employed by defendants NFL and NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Roe was qualified for his position and performed his duties in a professional manner. Mr. Roe is a former officer for the Police Department in Galveston, TX.

32.    Robert H. Stauffer resides at 3208 W. 96th Street, Indianapolis, Indiana. Mr. Stauffer's date of birth is October 23, 1943. From approximately 1994 through April 30, 2007, Mr. Stauffer was employed by as a DPA. Throughout his employment with the NFL and

9

NFLMC, Mr. Stauffer was qualified for his position and performed his duties in a professional manner. Mr. Stauffer is a former special agent for the FBI.

33.     Charles W. Harvey resides at 6549 Blossom Lane, South Drive, Indianapolis, Indiana. Mr. Harvey's date of birth is September 26, 1941. From approximately 1994 through April 30, 2007, Mr. Harvey was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Harvey was qualified for his position and performed his duties in a professional manner. Mr. Harvey is a former special agent for the FBI.

34.     William J. Logay resides at 8586 Hunters Creek Drive North, Jacksonville, Florida. Mr. Logay's date of birth is May 27, 1942. From approximately 1995 through April 30, 2007, Mr. Logay was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Logay was qualified for his position and performed his duties in a professional manner. Mr. Logay is a former officer of the Oakland Police Department and a former agent for the Central Intelligence Agency ("CIA") and the DEA.

35.     Robert L. Starratt, Jr. resides at 3941 Alcazar Avenue, Jacksonville, Florida. Mr. Starratt's date of birth is October 9, 1944. From approximately October 2005 through April 30, 2007, Mr. Starratt was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Starratt was qualified for his position and performed his duties in a professional manner. Mr. Starratt is a former special agent for the DEA.

36.    Kent Lloyd Bryan resides at 27965 Hedgeline Drive, Laguna Nigel, California. Mr. Bryan's date of birth is June 21, 1943. From approximately 1992 through April 30, 2007, Mr. Bryan was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Bryan was qualified for his position and performed his duties in a professional manner. Mr. Bryan is a former officer with the Police Department of Los Angeles, CA.

37.    Jack B. Holder resides at 3902 Flowerwood Lane, Fallbrook California. Mr. Holder's date of birth is December 28, 1942. From approximately 1992 through April 30, 2007, Mr. Holder was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Holder was qualified for his position and performed his duties in a professional manner. Mr. Holder is a former officer with the Police Department in Los Angeles, CA.

38.    Lloyd N. Nilsen resides at 3027 Lake Shore Drive, Deerfield Beach, Florida. Mr. Nilsen's date of birth is December 4, 1935. From approximately 1993 through April 30, 2007, Mr. Nilsen was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Nilsen was qualified for his position and performed his duties in a professional manner. Mr. Nilsen is a former special agent of the DEA.

39.    Gary A. Crep resides at 440 SE 9th Avenue, Pompano Beach, Florida. Mr. Crep's date of birth is January 30, 1948. From approximately 2001 through April 30, 2007, Mr. Crep was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Crep was qualified for his position and performed

his duties in a professional manner. Mr. Crep is a former special agent of U.S. Customs Service and the DEA.

40.    Richard R. Waldie resides at 13606 Crossglenn Path, Rosemount, Minnesota. Mr. Waldie's date of birth is October 11, 1949. From approximately 2005 through April 30, 2007, Mr. Waldie was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Waldie was qualified for his position and performed his duties in a professional manner. Mr. Waldie is a former special agent for the FBI.

41.    Dennis A. Vitale resides at 4 Trudy Terrace, Canton, Massachusetts. Mr. Vitale's date of birth is March 25, 1945. From approximately 1990 through April 30, 2007, Mr. Vitale was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Vitale was qualified for his position and performed his duties in a professional manner. Mr. Vitale is a former officer with the Police Department in Boston, MA.

42.    Laurence J. Robicheau resides at 114 Chickering Road, Dedham, Massachusetts. Mr. Robicheau's date of birth is June 18, 1945. From approximately 2003 through April 30, 2007, Mr. Robicheau was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Robicheau was qualified for his position and performed his duties in a professional manner. Mr. Robicheau is a former officer with the Police Department in Boston, MA.

43.    Steven R. Wallner resides at 1023 St. Mary Place, Slidell, Louisiana. Mr. Wallner's date of birth is February 20, 1948. From approximately 2001 through April 30, 2007, Mr. Wallner was employed by defendants NFLMC and NFL as a DPA. Throughout his

employment with the NFL and NFLMC, Mr. Wallner was qualified for his position and performed his duties in a professional manner. Mr. Wallner is a former U.S. Customs Agent in New Orleans, LA.

44.     Benedict Saurino resides at 41 Edgar Terrace, Staten Island, New York. Mr. Saurino's date of birth is December 7, 1939. From approximately June 2001 through April 30 , 2007, Mr. Saurino was employed by respondents National Football League Management Council ("NFLMC") and National Football League ("NFL") as a drug program agent ("DPA"). Throughout his employment with the NFL and NFLMC, Mr. Saurino was qualified for his position and performed his duties in a professional manner. Mr. Saurino is a former investigator for the U.S. Attorney's office for the Southern District of New York.

45.     Guy Scantlebury resides at 7 Ellbridge Court, South Setauket, New York. Mr. Scantlebury's date of birth is October 9, 1956. From approximately 2003 through April 30, 2007, Mr. Scantlebury was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Scantlebury was qualified for his position and performed his duties in a professional manner. Mr. Scantlebury is a former officer with the Police Department in New York, NY.

46.     Richard T. Jarrett resides at 6 Henri Hill Lane, Lafayette, California. Mr. Jarrett's date of birth is September 13, 1937. From approximately 1996 through April 30, 2007, Mr. Jarratt was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Jarrett was qualified for his position and performed his duties in a professional manner. Mr. Jarrett is a former special agent for the DEA.

47.    Charles J. Sickels resides at 3925 W. Las Positas Boulevard, Pleasanton, California. Mr. Sickels' date of birth is July 2, 1937. From approximately 1996 through April 30, 2007, Mr. Sickels was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Sickels was qualified for his position and performed his duties in a professional manner. Mr. Sickels is a former special agent for the FBI.

48.    William R. Hausmann resides at 703 Daylily Drive, Village of Flowers Mill, Langhorne, Pennsylvania. Mr. Hausmann's date of birth is July 17, 1942. From approximately 1993 through April 30, 2007, Mr. Hausmann was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Hausman was qualified for his position and performed his duties in a professional manner. Mr. Hausman is a former officer with the Police Department of Philadelphia, PA.

49.    James J. Stever, Jr. resides at 1142 Poquessing Avenue, Bensalem, Pennsylvania. Mr. Stever's date of birth is December 25, 1948. From approximately 2004 through April 30, 2007, Mr. Stever was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Stever was qualified for his position and performed his duties in a professional manner. Mr. Stever is a former special agent for U.S. Customs Service.

50.    Donald P. Hoffmann resides at 1123 Seneca Drive, Harmony, Pennsylvania. Mr. Hoffman's date of birth is November 26, 1944. From approximately 1991 through April 30, 2007, Mr. Hoffman was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Hoffman was qualified for his

14

position and performed his duties in a professional manner. Mr. Hoffman is a former officer with the Army Military Police Department.

51.    Diogenes K. Galanos resides at 3678 Via Calabria, Escondido, California. Mr. Galanos's date of birth is July 31, 1939. From approximately 1988 through April 30, 2007, Mr. Galanos was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Galanos was qualified for his position and performed his duties in a professional manner. Mr. Galanos is a former special agent for the DEA.

52.    Bruce R. Stock resides at 10702 Dutton Drive, La Mesa, California. Mr. Stock's date of birth is September 11, 1942. From approximately 2001 through April 30, 2007, Mr. Stock was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Stock was qualified for his position and performed his duties in a professional manner. Mr. Stock is a former special agent for the DEA.

53.    John R. Thurston resides at 2316 21st Avenue Court NW, Gig Harbor, Washington. Mr. Thurston's date of birth is December 24, 1943. From approximately 2001 through April 30, 2007, Mr. Thurston was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Thurston was qualified for his position and performed his duties in a professional manner. Mr. Thurston is a former special agent for the FBI.

54.    Clifford M. Spingler resides at 1233 NW 199th Place, Shoreline, Washington. Mr. Spingler's date of birth is January 13, 1942. From approximately 2001 through April 30, 2007, Mr. Spingler was employed by defendants NFLMC and NFL as a DPA.

Throughout his employment with the NFL and NFLMC, Mr. Spingler was qualified for his position and performed his duties in a professional manner. Mr. Spingler is a former special agent for the FBI.

55. Emmett C. Scott resides at 4130 Osprey Harbour Loop, Cortex, Florida. Mr. Scott's date of birth is January 11, 1939. From approximately 2002 through April 30, 2007, Mr. Scott was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Scott was qualified for his position and performed his duties in a professional manner. Mr. Scott is a former special agent for the FBI.

56. Thomas S. Kostecke resides at 107 Pebble Rock Drive, Venice, Florida. Mr. Kostecke's date of birth is October 17, 1943. From approximately 1996 through April 30, 2007, Mr. Kostecke was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Kostecke was qualified for his position and performed his duties in a professional manner. Mr. Kostecke is a former special agent for the DEA.

57. J. Bernard Redd resides at 1517 Covington Drive, Brentwood, Tennessee. Mr. Redd's date of birth is October 6, 1935. From approximately 1997 through April 30, 2007, Mr. Redd was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Redd was qualified for his position and performed his duties in a professional manner. Mr. Redd is a former special agent for the DEA.

58. Thomas L. Carter resides at 38 Woodlawn Terrace, Fredericksburg, Virginia. Mr. Carter's date of birth is October 1, 1951. From approximately 2002 through April 30, 2007, Mr. Carter was employed by defendants NFLMC and NFL as a DPA. Throughout his

employment with the NFL and NFLMC, Mr. Carter was qualified for his position and performed his duties in a professional manner. Mr. Carter is a former special agent for the FBI.

59.    Stanley J. Amrozowicz resides at 5152 Garden Path, Hamburg, New York. Mr. Amrozowicz's date of birth is April 20, 1945. From approximately 2002 through April 30, 2007, Mr. Amrozowicz was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Amrozowicz was qualified for his position and performed his duties in a professional manner. Mr. Amrozowicz is a former special agent for the FBI.

60.    John H. Thurston resides at 94 Graystone Lane, Orchard Park, New York. Mr. Thurston's date of birth is December 27, 1947. From approximately 2005 through April 30, 2007, Mr. Thurston was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Thurston was qualified for his position and performed his duties in a professional manner. Mr. Thurston is a former special agent for the FBI.

61.    Richard W. Herman resides at 8 Silvercreek Lane, Ballwin, Missouri. Mr. Herman's date of birth is November 21, 1940. From approximately 1995 through April 30, 2007, Mr. Herman was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Herman was qualified for his position and performed his duties in a professional manner. Mr. Herman is a former special agent for the FBI.

62.    George A. Miller resides at 124 Caybeth Drive, Ballwin, Missouri. Mr. Miller's date of birth is February 25, 1944. From approximately 2001 through April 30, 2007, Mr. Miller was employed by defendants NFLMC and NFL as a DPA. Throughout his

employment with the NFL and NFLMC, Mr. Miller was qualified for his position and performed his duties in a professional manner. Mr. Miller is a former special agent for the FBI.

63.    Andrew H. Nash resides at 1423 Margie Street, Waveland, Mississippi. Mr. Nash's date of birth is June 21, 1949. From approximately 2003 through April 30, 2007, Mr. Nash was employed by defendants NFLMC and NFL as a DPA.    Throughout his employment with the NFL and NFLMC, Mr. Nash was qualified for his position and performed his duties in a professional manner. Mr. Nash is a former special agent for the FBI.

64.    Paul V. Kostyo resides at 5829 South Kenton Way, Englewood, Colorado. Mr. Kostyo is a 62-year-old male, born on August 20, 1944. From approximately November 1999 through April 30, 2007, Mr. Kostyo was employed by respondents NFLMC as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Kostyo was qualified for his position and performed his duties in a professional manner. Mr. Kostyo is a former special agent of the IRS Criminal Investigation Division.

65.    Mr. Alan L. Stoops resides at 137 Ralston Road, Sarver, Pennsylvania 16055. Mr. Stoop's date of birth is January 18, 1949. From Approximately November 1994 to February 1, 2007, Mr. Stoops was employed by defendants NFLMC and NFL as a DPA. Mr. Stoops is a former employee of the United States Department of Transportation. Throughout his employment with the NFL and NFLMC, Mr. Stoops was qualified for his position and performed his duties in a professional manner.

66.    Robert T. Finney resides at 313 15th Avenue North, Hopkins, Minnesota. Mr. Finney's date of birth is December 1, 1971. From approximately 2005 through April 30, 2007, Mr. Finney was employed by defendants NFL and NFLMC as a drug program agent

("DPA"). Mr. Finney is a former school teacher. Throughout his employment with the NFL and NFLMC, Mr. Finney was qualified for his position and performed his duties in a professional manner.

67.    Mr. Russell C. Anderson resides at 14950 W. Mountain View Blvd., #2112, Surprise, AZ. Mr. Anderson's date of birth is March 20, 1932. From approximately 1988 through 2004, Mr. Anderson was employed by defendants NFLMC and NFL as a DPA. Mr. Anderson was formerly with the Federal Bureau of Investigations. Throughout his employment with the NFL and NFLMC, Mr. Anderson was qualified for his position and performed his duties in a professional manner.

68.    Mr. Walter Behrens resides at 10800 Amber Ridge Drive, Unit 205, Las Vegas, NV. Mr. Behrens' date of birth is December 26, 1935. From approximately 1988 through 2001, Mr. Behrens was employed by defendants NFLMC and NFL as a DPA. Mr. Behrens was formerly with the United States Drug Enforcement Administration. Throughout his employment with the NFL and NFLMC, Mr. Behrens was qualified for his position and performed his duties in a professional manner.

69.    Mr. Clarence Benham resides at 1220 Montego Road East, Jacksonville, FL. Mr. Benham's date of birth is May 9, 1943. From approximately 2001 through 2005, Mr. Benham was employed by defendants NFLMC and NFL as a DPA. Mr. Benham was formerly with the United States Air Force, Office of Special Investigations. Throughout his employment with the NFL and NFLMC, Mr. Benham was qualified for his position and performed his duties in a professional manner.

70.    Estate of David S. Brown, by the Executrix, Sandra Brown, resides at 1695 Meshaminy Valley Drive, Bensalem, Pennsylvania.  Mr. Brown's date of birth was May 29, 1942.  From Approximately 1988 through May 2004, Mr. Brown was employed by defendants NFLMC and NFL as a DPA.  Mr. Brown was formerly a police officer in Philadelphia, PA.  Throughout his employment with the NFL and NFLMC, Mr. Brown was qualified for his position and performed his duties in a professional manner.

71.    Mr. James A. Clark resides at 1262 Balboa Avenue, Burlingame, CA.  Mr. Clark's date of birth is June 18, 1938.  From approximately 1988 through 2005, Mr. Clark was employed by defendants NFLMC and NFL as a DPA.  Mr. Clark was formerly a Commander in the Burlingame, CA police department.  Throughout his employment with the NFL and NFLMC, Mr. Clark was qualified for his position and performed his duties in a professional manner.

72.    Mr. John Cody resides at 1039 SE Westminster Place, Stuart, FL.  Mr. Cody's date of birth is April 26, 1929.  From approximately 1988 through 1993, Mr. Cody was employed by defendants NFLMC and NFL as a DPA.  Mr. Cody was formerly with the United States Drug Enforcement Administration.  Throughout his employment with the NFL and NFLMC, Mr. Cody was qualified for his position and performed his duties in a professional manner.

73.    Mr. Clarence Cook resides at 5659 Thicket Lane, Columbia, MD.  Mr. Cook's date of birth is August 4, 1929.  From approximately 1991 through 2002, Mr. Cook was employed by defendants NFLMC and NFL as a DPA.  Mr. Cook was formerly with the United States Drug Enforcement Administration.  Throughout his employment with the NFL and

NFLMC, Mr. Cook was qualified for his position and performed his duties in a professional manner.

74.    Estate of Frederick Wallace Ford, by the Executrix, Martha Gladden, resides at 1505 Kalmia Road, N.W., Washington D. C.  Mr. Ford's date of birth was September 10, 1926.  From Approximately 1988 through 2002, Mr. Ford was employed by defendants NFLMC and NFL as a DPA.  Mr. Ford was formerly with the United States Drug Enforcement Administration.  Throughout his employment with the NFL and NFLMC, Mr. Wallace Ford was qualified for his position and performed his duties in a professional manner.

75.    Estate of Bernard Corbit, by the Executrix, Irene Corbit, resides at 7722 Braesview Lane, Houston, Texas.  Mr. Corbit's date of birth was March 18, 1929.  From Approximately 1988 through 1998, Mr. Corbit was employed by defendants NFLMC and NFL as a DPA.  Mr. Corbit was formerly with the United States Drug Enforcement Administration.  Throughout his employment with the NFL and NFLMC, Mr. Corbit was qualified for his position and performed his duties in a professional manner.

76.    Dwaine Converson resides at 11610 53rd Avenue South, Seattle, WA.  Mr. Converson's date of birth is July 31, 1946.  From approximately 1998 through 2001, Mr. Converson was employed by defendants NFLMC and NFL as a DPA.  Mr. Converson was formerly with the Seattle, WA Police Department.  Throughout his employment with the NFL and NFLMC, Mr. Converson was qualified for his position and performed his duties in a professional manner.

77.    Daniel DiPirro resides at 107 Carmelite Drive, West Seneca, NY.  Mr. DiPirro's date of birth is November 3, 1942.  From approximately 1998 through 2002, Mr.

DiPirro was employed by defendants NFLMC and NFL as a DPA. Mr. DiPirro was formerly with the Buffalo, NY Police Department. Throughout his employment with the NFL and NFLMC, Mr. DiPirro was qualified for his position and performed his duties in a professional manner.

78.    Richard Dreiwitz resides at 360 Lookout Avenue, Hackensack, NJ. Mr. Dreiwitz's date of birth is July 16, 1935. From approximately 1991 through 2003, Mr. Dreiwitz was employed by defendants NFLMC and NFL as a DPA. Mr. Dreiwitz was formerly with the United States Drug Enforcement Administration. Throughout his employment with the NFL and NFLMC, Mr. Dreiwitz was qualified for his position and performed his duties in a professional manner.

79.    Mr. Raymond Egan Jr. resides at 104 River Glen Drive, Covington, LA. Mr. Egan's date of birth is July 28, 1945. From approximately 1988 through 2001, Mr. Egan was employed by defendants NFLMC and NFL as a DPA. Mr. Egan was formerly with the United States Drug Enforcement Administration. Throughout his employment with the NFL and NFLMC, Mr. Egan Jr. was qualified for his position and performed his duties in a professional manner.

80.    Mr. Cyril Gamber resides at 4603 Player Court, Tampa, FL. Mr. Gamber's date of birth is June 1, 1937. From approximately 2001 through 2005, Mr. Gamber was employed by defendants NFLMC and NFL as a DPA. Mr. Gamber was formerly with the Federal Bureau of Investigation. Throughout his employment with the NFL and NFLMC, Mr. Gamber was qualified for his position and performed his duties in a professional manner.

81.    Mr. Michael Goergen resides at 6605 Kenney Place. Edina  MN.  Mr. Goergen's date of birth is October 12, 1944.  From approximatelyDecember 2001 through April 2005, Mr. Goergen was employed by defendants NFLMC and NFL as a DPA.  Mr. Goergen was formerly with the Federal Bureau of Investigation.  Throughout his employment with the NFL and NFLMC, Mr. Goergen was qualified for his position and performed his duties in a professional manner.

82.    Mr. Joseph Gordon Sr. resides at 11448 Ranier Avenue South, Apt. 243 Seattle, WA.  Mr. Gordon's date of birth is October 20, 1931.  From approximately 1988 through 2001, Mr. Gordon was employed by defendants NFLMC and NFL as a DPA.  Mr. Gordon was formerly with the United States Drug Enforcement Administration.  Throughout his employment with the NFL and NFLMC, Mr. Gordon was qualified for his position and performed his duties in a professional manner.

83.    Mr. Warren Griffin resides at P.O. Box 1013, San Mateo, CA.  Mr. Griffin's date of birth is March 10, 1945.  From approximately 2002 through 2005, Mr. Griffin was employed by defendants NFLMC and NFL as a DPA.  Mr. Griffin was formerly a police officer in San Mateo, CA.  Throughout his employment with the NFL and NFLMC, Mr. Griffin was qualified for his position and performed his duties in a professional manner.

84.    Mr. Ray Jackson resides at 907 Longfellow Drive, Waco, TX.  Mr. Jackson's date of birth is November 5, 1935.  From approximately 1990 through 2000, Mr. Jackson was employed by defendants NFLMC and NFL as a DPA.  Mr. Jackson was formerly a deputy sheriff in King City, WA.  Throughout his employment with the NFL and NFLMC, Mr. Jackson was qualified for his position and performed his duties in a professional manner.

85.    Mr. Harold Jacobs resides at 15430 Howe Road, Strongsville, OH. Mr. Jacobs' date of birth is May 23, 1929. From approximately 1990 through 1999, Mr. Jacobs was employed by defendants NFLMC and NFL as a DPA. Mr. Jacobs was formerly with the with the US Immigration and Nationalization Service. Throughout his employment with the NFL and NFLMC, Mr. Jacobs was qualified for his position and performed his duties in a professional manner.

86.    Mr. Thomas Lavin resides at 10441 West 131st St., Overland Park, KS. Mr. Lavin's date of birth is December 16, 1937. From approximately 1991 through January 2006, Mr. Lavin was employed by defendants NFLMC and NFL as a DPA. Mr. Lavin was formerly with the Federal Bureau of Investigation. Throughout his employment with the NFL and NFLMC, Mr. Lavin was qualified for his position and performed his duties in a professional manner.

87.    Mr. R. Edward Lee Jr. resides at 326 Russell Drive Oxford, MS. Mr. Lee's date of birth is April 12, 1943. From approximately 2001 through November 2003., Mr. Lee was employed by defendants NFLMC and NFL as a DPA. Mr. Lee was formerly with the Federal Bureau of Investigation. Throughout his employment with the NFL and NFLMC, Mr. Lee was qualified for his position and performed his duties in a professional manner.

88.    Mr. John Maye resides at 29 Poplar Avenue, Bronx, NY. Mr. Maye's date of birth is October 17, 1931. From approximately 1991 through 2001, Mr. Maye was employed by defendants NFLMC and NFL as a DPA. Mr. Maye was formerly a New York City Police Officer. Throughout his employment with the NFL and NFLMC, Mr. Maye was qualified for his position and performed his duties in a professional manner.

89.     Mr. David McClugage resides at 3253 Self Mountain Road, West Blairsville, GA. Mr. McClugage's date of birth is October 22, 1937. From approximately 1991 through 2006, Mr. McClugage was employed by defendants NFLMC and NFL as a DPA. Mr. McClugage was formerly with the Federal Bureau of Investigation. Throughout his employment with the NFL and NFLMC, Mr. McClugage was qualified for his position and performed his duties in a professional manner.

90.     Mr. David Milroy resides at 3202 Stoneybrook Lane, Tampa, FL. Mr. Milroy's date of birth is December 10, 1933. From approximately 1999 through 2001, Mr. Milroy was employed by defendants NFLMC and NFL as a DPA. Mr. Milroy was formerly with the Federal Bureau of Investigation. Throughout his employment with the NFL and NFLMC, Mr. Milroy was qualified for his position and performed his duties in a professional manner.

91.     Mr. Charles Monroe resides at 46 Don Timoteo Court, Sonoma, CA. Mr. Monroe's date of birth is March 22, 1936. From approximately 1995 through 1997, Mr. Monroe was employed by defendants NFLMC and NFL as a DPA. Mr. Monroe was formerly an investment banker. Throughout his employment with the NFL and NFLMC, Mr. Monroe was qualified for his position and performed his duties in a professional manner.

92.     Estate of Ronald Montague, by the Executrix Martha Montague, resides at 16107 E. Emerald Drive, #105, Fountain Hills, AZ 85268. Mr. Montague's date of birth was December 1, 1931. From approximately 1988 through 2003, Mr. Montague was employed by defendants NFLMC and NFL as a DPA. Mr. Montague was formerly with the United States Drug Enforcement Administration. Throughout his employment with the NFL and NFLMC, Mr. Montague was qualified for his position and performed his duties in a professional manner.

93.    Mr. James O'Brien resides at 737 Neuchatel Avenue, Burlingame, CA. Mr. O'Brien's date of birth is November 10, 1939. From approximately 1998 through 2001, Mr. O'Brien was employed by defendants NFLMC and NFL as a DPA. Mr. O'Brien was formerly a Police Sergeant in Burlingame, CA. Throughout his employment with the NFL and NFLMC, Mr. O'Brien was qualified for his position and performed his duties in a professional manner.

94.    Mr. Peter Pallatroni resides at 4 Tracey Lane Sparta, NJ. Mr. Pallatroni's date of birth is November 10, 1939. From approximately 1988 through  January 2006, Mr. Pallatroni was employed by defendants NFLMC and NFL as a DPA. Throughout his employment with the NFL and NFLMC, Mr. Pallatroni was qualified for his position and performed his duties in a professional manner. Mr. Pallatroni is a former special agent of the Drug Enforcement Administration.

95.    Mr. Samuel Joseph Reed resides at 1720 Northeast 55th Street, Ft. Lauderdale, FL. Mr. Reed's date of birth is February 28, 1925. From approximately 1988 through 2000, Mr. Reed was employed by defendants NFLMC and NFL as a DPA. Mr. Reed is a former special agent of the Drug Enforcement Administration. Throughout his employment with the NFL and NFLMC, Mr. Reed was qualified for his position and performed his duties in a professional manner.

96.    Mr. Edward Skelly resides at 8017 Park Street, Lenexa, KS 66215. Mr. Skelly's date of birth is March 6, 1944. From approximately 1996 through January 2006, Mr. Skelly was employed by defendants NFLMC and NFL as a DPA. Mr. Skelly is former a special agent of the Federal Bureau of Investigation. Throughout his employment with the NFL and

NFLMC, Mr. Skelly was qualified for his position and performed his duties in a professional manner.

97.     Mr. Thomas Taylor resides at 20 Dunrovin Court, Manchester, NJ 08759. Mr. Taylor's date of birth is October 20, 1929.  From approximately 1988 through January 2003, Mr. Taylor was employed by defendants NFLMC and NFL as a DPA.  Throughout his employment with the NFL and NFLMC, Mr. Taylor was qualified for his position and performed his duties in a professional manner.  Mr. Taylor is a former special agent of the Drug Enforcement Administration.

98.     Mr. William J. Knierim resides at 4940 Maybank Way, Jacksonville, Florida 32225.  Mr. Knierim's date of birth is July 9, 1932.  From July 1994 to January 16, 2002, Mr. Knierim was employed by defendants NFLMC and NFL as a DPA.  Mr. Knierim is a former special agent of the Drug Enforcement Administration.  Throughout his employment with the NFL and NFLMC, Mr. Knierim was qualified for his position and performed his duties in a professional manner.

99.     Mr. Steve Goodenow resides at 625 Iolani Avenue, PH, Honolulu, Hawaii 96813.  Mr. Goodenow's date of birth is October 23, 1942.  From 1995 through April, 2007, Mr. Goodenow was employed by defendants NFLMC and NFL as a DPA.  Throughout his employment with the NFL and NFLMC, Mr. Goodenow was qualified for his position and performed his duties in a professional manner.

100.    Mr. Frank E. Pickens resides at 605 Jewel Drive, Atlanta, Georgia  30331. Mr. Pickens date of birth is September 7, 1944.  From March, 1997 to July, 2001, Mr. Pickens was employed by defendants NFLMC and NFL as a DPA.  Throughout his employment with the

NFL and NFLMC, Mr. Pickens was qualified for his position and performed his duties in a professional manner.

101.    Stanley Amrozowicz, Ronald Auld, Lonnie Blake, Donald Byrd, Thomas Carter, Gary Crep, Florilis Davis, J. Robert Defauw, Michael Dennis, Nicholas DiFalco, Paul Freeland, Diogenes Galanos, Eugene Gee, Charles Harvey, William Hausmann, Richard Herman, Paul Herring, Donald Hoffman, Jack Holder, Robert Howell, Richard Jarrett, Dennis Keith, Thomas Kostecke, Paul Kostyo, Kent Lloyd Bryan, William Logay, Gary Marting, George Miller, Andrew Nash, Lloyd Nilsen, Thomas Oberschmidt, Eugene Racht, Bernard Redd, William Richardson, Laurence Robicheau, Charles Roe, Louis Runge, James Salp, Benedict Saurino, Guy Scantlebury, Dennis Schoenrock, Emmett Scott, Herman Scott, Charles Sickles, Harley Smith, Clifford Spingler, Robert Starratt, Robert Stauffer, James Stever, Bruce Stock, John R. Thurston, John H. Thurston, Robert Toothman, Kenneth Van Lanen, Dennis Vitale, Richard Waldie and  Steven Walner were active DPAs on April 30, 2007 ("Active DPAs").

102.    Russell Anderson, Walter Behrens, Clarence Benham, David Brown, Kent Lloyd Bryan, James Clark, John Cody, Clarence Cook, Bernard Corbit, Dwaine Converson, Daniel DiPirro, Richard Dreiwitz, Raymond Egan, Robert Finney, Frederick Ford, Cyril Gamber, Michael Goergen, Joseph Gordon, Sr., Warren Griffin, Paul Herring, Robert Howell, Ray Jackson, Harold Jacobs, William Knierim, Thomas Lavin, Edward Lee, John Maye, David McClugage, David, Milroy, Charles Monroe, Ronald Montague, James O'Brien, Peter Pallatroni, Frank Pickens, Samuel Reed, Dennis Schoenrock, Edward Skelly, Alan Stoops and Thomas Taylor were not active DPAs on April 30, 2007 ("Inactive DPAs").

103.    Upon information and belief, defendant NFL is an unincorporated association of thirty-two member teams, with its principal place of business at 280 Park Avenue, New York, NY 10017.    The day-to-day operation of the NFL is handled by an appointed Commissioner, currently Roger Goodell.    At all times herein, the NFL has employed more than 20 employees.

104.    Upon information and belief, defendant NFLMC is an unincorporated association with its principal place of business at 280 Park Avenue, New York, NY 10017. Representatives of each of the NFL's thirty-two teams comprise the NFLMC, which is the exclusive bargaining representative of the NFL.    The NFLMC is currently headed by Harold Henderson as Chairman of the NFLMC and Dennis Curran as Senior Vice President and General Counsel.    At all times herein the NFLMC has employed more than 20 employees.

105.    Upon information and belief, defendants National Football League Pension Plan, National Football League Management Council Pension Plan; and National Football League Capital Accumulation Plan ("the Pension Plans") are employee benefit pension plans as defined by The Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2)(A), and the NFL and NFLMC are the sponsors of said Pension Plans.

106.    Upon information and belief, defendant NFL Flex is an NFL sponsored employee welfare benefit plan providing, among other things, group medical, dental, disability and accident insurance to NFL and NFLMC employees.

107.    All plaintiffs were NFL and NFLMC employees, and all had rights under various programs of employee pension benefits and employee welfare benefits provided under

the Pension Plans and NFL Flex. Therefore, each plaintiff either was, or should have been, a participant in each of the Pension Plans and Employee Welfare Benefit Plans.

108.    At all times pertinent to the allegations herein, and as of March 22, 2007, the NFL and NFLMC had failed to file **any** summary plan descriptions ("SPDs") for any of the employee benefit pension plans or employee welfare benefit plans with the Department of Labor as required under ERISA and ERISA regulations.

109.    Defendant NFL Employee Benefit Committee represents that it is the entity that makes eligibility determinations under the various NFL and NFLMC sponsored Pension Plans and NFL Flex. NFL Employee Benefit Committee has its principal place of business at 280 Park Avenue, New York, NY 10017.

110.    Upon information and belief, defendant Comprehensive Drug Testing, Inc. ("CDT") is a California corporation with its principal place of business in Long Beach, California and which has employed more than 20 employees during the relevant time period.

## JURISDICTION AND VENUE

111.    Jurisdiction exists in this case pursuant to ERISA, 29 U.S.C. § 1001 et seq. and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").

112.    The Court has personal jurisdiction over all defendants. The NFL and NFLMC, as well as defendants NFL Employee Benefit Committee and the Pension Plans and NFL Flex, are all domiciled in New York State.

113.    Defendant CDT contracted with the NFL and NFLMC, New York domiciled entities, to provide drug testing services, and, on information and belief, its officers met with NFLMC representatives in New York City in connection to present CDT's proposal to provide such services and later to negotiate the agreement to do so.  Upon information and belief, Defendant CDT recruited and has employed sample collectors to collect urine samples in New York State.  CDT is subject to personal jurisdiction in this forum.

114.    Venue is proper in this district based upon the domicile of NFL, NFLMC, the Pension Plans, NFL Employee Benefit Committee and NFL Flex.   Also, a substantial portion of the acts or omissions giving rise to this complaint took place within the district.

## FACTS

115.    At the various times set forth above, the NFL and/or NFLMC hired the plaintiffs as DPAs.  The NFL's drug testing program began in or about June 1988.

116.    The DPAs were classified by the NFL and/or NFLMC as independent contractors, although they were, in fact, employees of the NFL and/or NFLMC.

117.    At no time did the NFL or NFLMC have a written contract with the DPAs.

118.    Until April 30, 2007, the Active DPAs were paid by the NFLMC and employed by the NFL and/or the NFLMC.  Inactive DPAs were paid by the NFLMC and/or the NFL and were employed by the NFL and NFLMC until the dates each ceased to provide urine collection services to the NFL and the NFLMC.

31

119.    The DPAs collected urine specimens on a random and scheduled basis from professional football players, game officials and others under the detailed DPA Guidelines and protocols and procedures established by the NFL and NFLMC as part of the NFL Policy and Program for Substances of Abuse and Anabolic Steroids and related substances ("NFL Drug Program"). The duties of the DPAs included, but were not limited to, collection of urine specimens, arranging for shipment of the urine specimens to the laboratories designated by the NFL and NFLMC, maintaining the chain of custody for the specimens and testifying in hearings, held by the NFL, if necessary, of players who have tested positive.

120.    Each DPA was assigned primarily to one NFL team near his residence. He collected specimens and performed his other duties, primarily at the assigned NFL team training facilities and/or stadiums during the NFL pre, regular and post seasons. Specimen collection during the "off season" was usually assigned to DPAs who resided near a player's off season residence. In 2007, there were 32 NFL teams in 23 states, some with training facilities and stadiums in two different states (e.g. New York Jets). Thus, the DPAs performed their services throughout the United States.

121.    NFL and NFLMC DPAs performed their services for the NFL Drug Program using means and methods set forth in detailed Guidelines and protocols.

122.    The Guidelines were contained in a detailed "Guidebook for Drug Program Agents" which contained the guidelines and protocols for the DPAs to follow. The Guidebook was maintained and amended by the NFL Management Council. The "Protocols" were established based upon the Collective Bargaining Agreement ("CBA") between the NFLMC and The NFL Players Association ("NFLPA") and were maintained and implemented

by two medical doctors, Doctors Brown and Lombardo, who were denominated by the NFL and NFLMC as "Medical Advisors"

123.    A letter from Dennis Curran, General Counsel of the NFLMC dated June 2005, and handed out to the DPAs at the June 2005 DPA training seminar, refers to the "Guidebook" containing the Protocol and states "You will find it to be invaluable in helping you to carry out your Program responsibilities as directed by the Medical Advisors and the Management Council."

124.    The NFL and NFLMC retained ultimate enforcement power concerning the adherence to the "Guidebooks" containing the "Guidelines" and "Protocols," and the "Medical Advisors" acted at the direction of the NFL and NFLMC.

125.    The NFL and NFLMC had, maintained and used the power to impose fines and other discipline including termination upon the DPAs in the event the "Guidelines" or "Protocol" were not followed.

126.    The NFL and NFLMC had the right to direct and control the DPAs, and, in fact, micro-managed many aspects of the services performed by the DPAs.

127.    The DPAs, while denominated "independent contractors," by the NFLMC did not, in fact, have autonomy in the means and methods of performing their work.

128.    For example, plaintiff Gary Marting, then the primary DPA for the Tampa Bay Buccaneers, anticipating his move to Austin, Texas in early 2006, approached Emmett Scott, one of the alternate DPAs, to discuss his willingness to assume the duties of a primary DPA.    Emmett Scott stated his willingness to take over the job as primary DPA.    Plaintiff

Marting then informed Warren Welsh (an NFLMC employee who supervised the DPAs) of the arrangement. Mr. Welsh told Marting that he (Welsh) would have to obtain approval from Valerie Cross, Director of Player Benefits of the NFLMC.

129. Similarly, on or about November 17, 2005, plaintiff Peter Pallatroni informed Warren Welsh that on November 23, 2005 DPAs Pallatroni and Guy Scantlebury "will switch positions and that Scantlebury will be the Primary Drug Program Agent." On November 18, 2005 Welsh sent an email to Pallatroni informing Pallatroni that "This isn't your decision to make - you can recommend after giving reasons. Thereafter, the matter is discussed by me with the Management Council. The NFLMC makes the final decision."

130. The DPAs were left with no discretion as to the manner in which they performed their services or, as discussed above, the location in which they performed their services. At the annual training sessions, the Medical Advisors told the DPAs that they had no discretionary authority.

131. DPAs could not be hired or fired by other DPAs. Only the NFL and NFLMC had that power.

132. DPAs who were dismissed, were dismissed by NFLMC employee Warren Welsh. Only the NFLMC could authorize dismissal.

133. DPAs, while they did not typically work set hours, were required to work within time frames imposed by the NFLMC .

134. DPAs were barred by the NFLMC from working for any NFL team, player, official, or for the gaming industry.

135.    DPAs were an integral part of NFL operations and to the operation of the collectively bargained NFL drug and steroid testing programs.    These programs were administered by the NFLMC and operated on a substantial and regular basis throughout the year. In recent years, approximately 20,000 specimens were collected and tested annually in furtherance of the programs.    A player using steroids has an unfair advantage. A player that tested positive for the first time under the Steroids Program faced an automatic four game suspension with the concomitant loss of one quarter of his annual salary.    Additional positive tests resulted in longer suspensions and increased fines.    Players who tested positive under Substances of Abuse Program were also subject to substantial fines and suspensions.    All of the sanctions were enumerated in the CBA.    A player falsely accused of using steroids, or innocent of violating league policies, is entitled to protection under the CBA.    The DPAs had to fulfill a very critical function, at the core of NFL integrity.    DPA honesty and integrity is integral to NFL honesty and integrity, and to the integrity of NFL football.

136.    In early 2006, various DPAs began to question the legitimacy of the NFL's position that the DPAs were independent contractors and not employees.    In early 2006, one of the DPAs, Thomas Lavin filed an IRS Form SS-8 asking the Internal Revenue Service to issue a ruling as to the correct employment status of a DPA.    On February 27, 2007, the IRS, after conducting its own investigation which included making inquiries of the NFL and the DPA, issued a determination that plaintiff DPA Thomas Lavin was a common law employee of the NFLMC. The NFLMC sought a review of that determination.    In or about June 2007, the IRS rejected the NFL's and NFLMC's *de facto* appeal from the February 27, 2007 ruling by refusing to issue a Technical Advice Memorandum.    The ruling that Lavin and all other similarly situated Drug Program Agents were common law employees of the NFLMC remains in effect.

35

137.    The relationship of the other plaintiff DPAs, both Inactive DPAs and Active DPAs, to the NFL and NFLMC is the same in all material respects as Lavin's.

138.    Prior to the IRS ruling, the question of whether the DPAs were employees or independent contractors had been raised in February 2006 when Robert J.  Costello of Levy, Tolman & Costello LLP, counsel for two former DPAs, Peter Pallatroni and Thomas Taylor, wrote to the NFLMC arguing that they were employees and not independent contractors.  Shortly thereafter, in late February and March 2006, two other DPAs, Mr. Lavin and then James Clark, filed Form SS-8s with the IRS seeking an IRS determination of whether they are employees or independent contractors.  The NFL and/or NFLMC received and responded to inquiries from the IRS over the next few months.

139.    Numerous plaintiff DPAs have filed Form SS-8s.  On information and belief, all processing of the Form SS-8s has been stayed by the IRS while the NFL pursues a further appeal from the June 2007 ruling.

140.    The test utilized by the IRS for determining whether one is an employee is derived from common law rules pursuant to Section 3121(d)(2) of the Internal Revenue Code.

141.    The critical inquiry is whether the employer has the right to control, direct and supervise the individual performing services, in this case the DPAs.  The same test is utilized for determining status as an "employee" under ERISA and under the ADEA.

142.    The IRS applies a test to determine whether the requisite degree of control and supervision exists, considering "(1) the degree to which the individual has become integrated into the operating organization of the person or firm for which the services are performed; (2) the

36

substantial nature, regularity, and continuity of the work for such person or firm; (3) the authority vested in or reserved by such person or firm to require compliance with its general policies; and (4) the degree to which the individual under consideration has been accorded the rights and privileges which such person or firm has created or established for its employees."

143.    The NFL and NFLMC had the right to control the time frame and order of sequence of the DPAs' work.

144.    DPAs received their work assignments by accessing the NFLMC's secure website. An "e-token" was issued free of charge to each DPA for that purpose by the NFLMC. NFL personnel, specifically Tomas Llibre, trained the DPAs in the usage of the computer system. If a DPA was terminated from his DPA job, he was required to return the "e-token," and if the "e-token" was not returned, a $75 dollar charge was assessed against the DPA by the NFLMC.

145.    Work assignments included collecting urine samples to be used to test players for drugs of abuse and for steroids. Each program was administered by an NFLMC-hired physician designated as a "Medical Advisor."

146.    Day-to day collection activities were supervised by the Medical Advisors and NFL employee Warren Welsh.

147.    The Medical Advisors did not act independently, but rather followed the instructions provided in the Collective Bargaining Agreement ("CBA") between the NFLMC and the NFL Players Association ("NFLPA"), as well as those instructions issued by NFLMC legal counsel. Rafael Prevot Esq., an attorney with the NFLMC provided the instructions given

to Doctor Brown and the Drugs of Abuse Program and Adolpho Birch, Esq., also an attorney with the NFLMC, did the same with respect to Doctor Lombardo and the Steroid Program.

148.    DPAs served continuously until resignation or dismissal by the NFLMC. Those urine specimens for drug and steroid analysis were collected on a substantial and regular basis, involving, in recent years, over 20,000 tests per year.

149.    DPAs could only delegate assignments to other NFL-preapproved Drug Program Agents.

150.    The NFLMC required that DPAs who were assigned to test players had to reside in the same geographical area as the player because the NFL wanted to minimize travel time in order to keep reimbursement of hours and travel expenses to a minimum.

151.    The NFL and/or NFLMC controlled all financial aspects of DPA work, providing all testing materials, paying all specimen shipment costs, reimbursing travel expenses and paying the DPAs an hourly wage.

152.    DPAs had no opportunity to incur a profit or loss in the performance of services.

153.    All payments to DPAs were set exclusively by the NFL and/or NFLMC, and were not the product of any bargaining.

154.    At all times pertinent, the NFL and/or NFLMC failed to pay the Federal Insurance Contributions Act taxes ("FICA") and Federal Unemployment Act Taxes ("FUTA") owed due to the status of the DPAs as employees.

155.    At all times pertinent, the NFL and/or NFLMC did not withhold Federal Income Tax from DPA wages nor did it report their compensation on Form W-2.

156.    Based upon the nature of the relationship between the NFL and/or NFLMC and the DPAs, plaintiffs were "employees" of the NFL from the moment they were hired, and remained "employees," notwithstanding misclassification of them by the NFL as "independent contractors."

157.    The NFL's and the NFLMC's misclassification of the DPAs' status was willful and purposeful in nature, and done with an intention to mislead the DPAs and deprive them of their just entitlements

158.    Warren Welsh, an NFLMC employee, served from 1996 to 2007 as a liaison and supervisor between the NFLMC and the DPAs.  From 1988 to 1996, Warren Welsh was Director of Security for the NFL and as such was also in charge of certain aspects of the drug program.  In or about 1996, Mr. Welsh "retired" as Director of Security for the NFL, but kept his responsibilities supervising the drug program collection process and acting as a drug collector.

159.    Upon information and belief, for a brief period of time following his retirement as Director of Security for the NFL Mr. Welsh was treated by the NFL or NFLMC as an independent contractor.  His status was switched back to that of an employee after a review by the Internal Revenue Service.  The NFL or NFLMC subsequently treated Warren Welsh as an employee from 1996 until his retirement earlier this year.

160.    During the period 1996 to 2007, the NFLMC held Mr. Welsh out to the outside world as a "consultant" or "advisor" to the drug program when, in fact, Mr. Welsh was an employee of the NFLMC.  This was done, at least in part, to confuse the DPAs into thinking that Mr. Welsh was not an employee, but rather an independent contractor, and mislead and lull the DPAs into believing that they, too, were properly being treated as "independent contractors."

161.    All the DPAs were required to attend at least one, and in the case of Primary DPAs, two yearly meetings, for which they were paid a flat fee of $500, plus all expenses for airfare and hotels.  Warren Welsh and the Medical Advisors were speakers at those meetings.  All aspects of the job were covered at these meetings, from writing reports and submitting vouchers to using NFLMC computer programs and systems. At the annual meeting all DPAs were required to take and pass a written test about the policies, guidelines, protocols and procedures that governed their work.

162.    Some training and instruction at these meetings was provided by Tomas Llibre, an NFL computer programmer, as well as NFL Medical Advisors, Drs. Brown and Lombardo.

163.    NFLMC employees Valerie Cross, Mary Ann Fleming, Warren Welsh, Dennis Curran, Adolpho Birch and Raphael Prevot were frequently present at and actively participated in these meetings.

164.    On occasion, Lawrence Lamade, a partner in the law firm Akin Gump Strauss Hauer & Feld, LLP was present, and gave a presentation.  Mr. Lamade was described as a "Consultant and Advisor" in the "Guide for DPAs" issued in June 2006.  Welsh interviewed applicants for the DPA position, and advised applicants of the final hiring decisions made by the

NFL or NFLMC. Warren Welsh provided direct supervision of the DPAs, including instruction and clarification of the rules and procedures required under the terms of the CBA between the NFLMC and the NFLPA. The terms of the CBA governed the establishment and operation of the NFL programs regarding anabolic steroids and substances of abuse.

165.    Upon information and belief, Welsh held himself out, at these annual meetings, to the assembly of DPAs as an "independent contractor" of the NFLMC stating, in words or substance, that he was "just like you."

166.    In fact, the NFL, NFLMC and Welsh knew, at all times pertinent, that Welsh was an employee of the NFLMC, not an independent contractor.

167.    The NFL and NFLMC's misrepresentations, made through Welsh, had the intent and effect of misleading the DPAs as to their true employment status.

168.    Prior to 2006 when the DPAs raised the issue of their status as employees and not independent contractors, the DPA Guidebook consisted of about 100 pages of detailed instructions and protocols that the NFLMC required DPAs to follow in the performance of their duties. After June, 2006, in an effort to show less control over the DPAs, the Guidebook was reduced to 22 pages.

169.    This Guidebook was written and revised over time by NFLMC employees, including Warren Welsh and Mary Ann Fleming, NFLMC Manager of Player Benefits, in consultation with certain select DPAs. DPAs were required to follow the Guidebook in performance of their assigned duties under penalty of dismissal.

170.    Plaintiffs' performance at all times has been competent and professional and, in the last review period, the performance of the DPAs was rated by the NFL itself as excellent.

171.    In 2005, then NFL commissioner Paul Tagliabue expressed the NFL's satisfaction with the Drug Testing Program in his testimony before the United States Congress.

172.    In June 2006, at the semi-annual meeting of all DPAs, the NFLMC Consulting Toxicologist on Anabolic Steroids and Related Substances, Bryan Finkle, reported that the DPAs' performance in 2006 as compared with 2005, was "very good" with fewer errors, fewer voided seals (on urine cups), an increase in the number of tests conducted, and no substituted or adulterated specimens in the prior year.

173.    The claims to the IRS by DPAs in 2006 caused the NFL and NFLMC to re-examine its relationship with the DPAs.  In addition, at various times during 2006, the NFL and NFLMC expressed concerns over the ages of the DPAs and DPAs claims to the IRS that they were employees.  On information and belief, their and NFLMC set upon a plan to relieve the NFL of its dual problems by acquiring younger DPAs who would be independent contractors or employees of a third-party organization.

174.    On April 13, 2007, the NFL acting through its Medical Advisors to the NFL Drug Program informed all DPAs that they would no longer receive testing assignments and that all drug testing would be turned over to Comprehensive Drug Testing ("CDT") of California as of May 1.

42

175.    The true nature of the NFL Management Council's involvement had been previously revealed to all of the DPAs when in November 2006 they received similar information from Dennis Curran, Vice President and General Counsel of the NFL Management Council, who told the DPAs on behalf of the NFLMC that they would be replaced in the near future by a then yet to be selected "independent third party administrator" who would, in all likelihood, hire most of the DPAs.

176.    Eventually, the NFL contracted with defendant CDT to replace the DPAs nationally.  None of the DPAs have been hired or retained by CDT although many DPAs applied for positions with CDT.

177.    On information and belief, the ages of the DPAs and the IRS decision that the DPAs were NFL employees were the determinative factors for the NFL in deciding to terminate the services of the DPAs and of CDT in not hiring or retaining any of the DPAs.

178.    On information and belief, CDT has been recruiting and hiring younger collectors with the identical profile to DPAs – seasoned law enforcement officers—to replace the NFL and/or NFLMC DPAs.   For example, on or about May 1, 2007, CDT hired or retained two retired FBI agents and one police officer in Kansas City, Missouri and one or more former law enforcement officers in Cincinnati, Ohio.

179.    The DPAs were qualified for their duties, having been trained by the NFL and/or NFLMC initially and, depending upon whether a DPA was a primary or back-up DPA, on an ongoing basis once or twice a year at mandatory training meetings conducted by and attended by the NFLMC.

180.    In or about January, 2006, at the semi-annual DPA Conference, Mary Ann Fleming, Coordinator of Player Benefits of the NFLMC, told DPA Paul Herring that the NFLMC was worried about the ages of the DPAs.  On another occasion, Ms. Fleming told a DPA, while discussing the DPAs' belief that they are employees, that "you guys [the DPAs] will be dead and buried before this is resolved," referring to the DPAs' claims to be employees and for benefits due to employees.

181.    At the next semi-annual DPA Conference in June 2006, Valerie Cross, Director of Player Benefits for the NFL Management Council, made statements that confirm the connection between the DPAs' ages and their retention.  On June 4, 2006, another DPA Jim Bowers, told Ms. Cross that comments made by various NFLMC representatives during the conference with the DPAs indicated to him that the NFL was considering a change in its relationship with the DPAs. Mr. Bowers offered to "be part of the solution" for the NFLMC. Ms. Cross then admitted to Mr. Bowers that the "NFL has a big problem" since "a couple" of DPAs had asked the IRS to rule that DPAs are NFL employees.  Mr. Bowers generally described his proposal to take over the specimen collections process for the NFL drug testing program. Ms. Cross told Mr. Bowers that he might be the "answer to our [NFLMC's] prayers."  One month later, immediately after the IRS determined that one of the DPAs was an NFLMC employee, Ms. Cross invited Mr. Bowers to make a presentation to the NFLMC of his proposal to manage the functions performed by the DPAs and, thus, remove the DPAs from direct NFL control.

182.    On August 9, 2006, DPA Jim Bowers made his presentation to the NFLMC and to Lawrence Lamade, Esq., as advisor to the NFL Management Council, to operate

the collection aspects of the NFL Drug Program through his own company with the then current DPAs as his employees. The proposition of treating DPAs as employees was met with open hostility by the NFLMC members and its advisor, Lawrence Lamade. They told Mr. Bowers that all the other bidders were proposing to treat the specimen collectors, which group did not include the current DPAs, as independent contractors. Mr. Bowers told the NFLMC that he needed to know, in order to properly estimate expenses in his proposal, which current DPAs he could hire for this new venture. The NFLMC representatives refused to answer the question directly, but told Mr. Bowers that they would tell the Medical Advisors, who would in turn inform Mr. Bowers. This was consistent with Mr. Bowers' understanding that the NFLMC controlled the Medical Advisors. For example, on another occasion an attorney for the NFLMC, Raphael Prevot, Esq. had previously advised Mr. Bowers and several other members of the DPA Advisory Committee that one of the medical advisors doesn't "take a shit without my telling him to." Approximately one month later, Mr. Bowers was informed that his proposal was rejected, although in fact the decision was made by the NFLMC within two or three days of the August 9th presentation.

183.    On October 5, 2006, the NFLMC announced in a memo to DPAs that by November 2006, it would no longer use DPAs in the drug testing program and, instead, would be using another unspecified company to carry out the DPA functions for the NFL drug testing program. The NFLMC falsely led the DPAs to believe that they would be considered for employment by the new company. The DPAs were informed that the unspecified new company would be contacting the DPAs to discuss their interest in joining the company. The November 2006 termination date was subsequently amended to an unspecified date after the end of the NFL season. The date ultimately selected was April 30, 2007.

45

184.    From October 2006 through April 2007, the NFLMC and CDT had numerous meetings, discussions and conversations in which the NFLMC informed CDT of its requirements for the NFL Drug Program and set forth its demands for conducting and staffing the DPA functions. On information and belief, the NFLMC and CDT discussed and considered the ages of the DPAs as a factor in whether to retain any DPA.

185.    At the specific urging and request of Valerie Cross, Jim Bowers worked with Kim Jasper, the President of CDT, to assist her in the transition of the NFL DPAs' functions as part of the NFL Drug Program from the NFL and NFLMC to CDT. Mr. Bowers had extensive knowledge of the NFL Drug Program and each DPA, including knowledge of the duties, skills, performance history and other details of each DPA. Mr. Bowers had numerous telephone conversations with Ms. Jasper, beginning in October 2006. On one occasion, Mr. Bowers spent several hours on the telephone with Ms. Jasper, at her request, reviewing each active DPA. Ms. Jasper had four areas of inquiry about each DPA: (1) his investigative and employment background; (2) his age; (3) his involvement with counsel and the IRS in seeking to obtain ERISA and other benefits; and (4) his work habits. In that lengthy telephone conversation, Mr. Bowers provided Ms. Jasper with the approximate ages of each DPA as requested, including the ages of all of the Active DPAs.

186.    At the specific instruction of Valerie Cross, Mr. Bowers invoiced and was paid by the NFL for his work in assisting Ms. Jasper of CDT.

187.    From October 2006 through March 2007, the NFL and NFLMC continued to lead the DPAs to believe that many of them would be offered employment by CDT. For

example, Valerie Cross, on behalf of the NFLMC, told the DPAs not to contact CDT because CDT would be contacting them.

188.    An April 13, 2007 memorandum was sent to all, or most, DPAs by Lawrence Brown, M.D. and John Lombardo, M.D.  Both of these doctors served as Medical Advisors, retained by the NFLMC to administer the NFL drug program.  This memorandum provides:

> "Contract Negotiations Completed
>
> Contract negotiations have now been completed with Comprehensive Drug Testing ("CDT"), the company that will soon have responsibility for specimen collections.  CDT will assume its responsibilities on May 1, 2007.  As you have been informed previously, the journey we have collectively traversed is coming to an end.  This communication provides you with the requisite guidance during this transition period. We have discussed these matters and we believe that the guidance that follows represents the most effective way to make this transition successful.
>
> In order to facilitate the transition to the new procedures, we ask that by April 30 you return certain items now in your possession, regardless of whether you have accepted a position with CDT.  Please call 718-522-7363 if you have any questions about the Drugs of Abuse program or 614-442-0106 if you have any questions about the Anabolic Steroid program. Please arrange for your last Substance of Abuse collection to occur on or before April 27, 2007.  Information concerning the remainder of this month's steroid testing will be relayed to you by Dr. Lombardo.
>
> Items to be returned to Dr. Brown:
>
> All unused Fed Ex air bills
> Your NFL ID
> Any copies you have of the DPA Guidebook
> Any copies you have of the NFL Policy on Substances of Abuse
> Any copies you have of the NFL Policy on Anabolic Steroids and Related
>     Substances
> Game officials kits with COC forms

E-Tokens
Copies of COC forms associated with previously submitted Substances of
   Abuse specimens

<u>Items to be returned to Dr. Lombardo:</u>

Copies of COC forms associated with previously submitted Anabolic Steroid
   specimens.

<u>Items to be returned to Head Athletic Trainer:</u>

Your Club ID, keys, etc.
Your remaining supply of kits, collection cups, COC envelopes, seals,
   biohazard labels, pipettes, reagent strips, gloves, shipping boxes

<u>Confidentiality Requirement:</u>

As you know, the policies governing both testing programs provide that the
confidentiality of player's medical conditions and test results will be protected
to the maximum extent possible. You of course remain bound by this
requirement, regardless of whether you have accepted a position with CDT.

On a personal note, we wish to express our appreciation of the manner in
which you have dedicated yourselves to make this program as revered as it is.
We are confident that you will finish this month with the same commitment
that you have shown during the past. We want you to reflect upon the
contributions you have made. Also, we want you to know that if at any time
you desire to contact us with respect to matters outside of the two programs,
you will find an appreciative response. While the professional part of our
journey maybe ending, the friendships remain."

189.    Stanley Amrozowicz, Ronald Auld, Lonnie Blake, Donald Byrd, Thomas

Carter, Gary Crep, Florilis Davis, J. Robert Defauw, Michael Dennis, Nicholas DiFalco, Paul

Freeland, Diogenes Galanos, Eugene Gee, Charles Harvey, William Hausmann, Richard

Herman, Paul Herring, Donald Hoffman, Jack Holder, Robert Howell, Richard Jarrett, Dennis

Keith, Thomas Kostecke, Paul Kostyo, Kent Lloyd Bryan, William Logay, Gary Marting,

George Miller, Andrew Nash, Lloyd Nilsen, Thomas Oberschmidt, Eugene Racht, Bernard

Redd, William Richardson, Laurence Robicheau, Charles Roe, Louis Runge, James Salp,

Benedict Saurino, Guy Scantlebury, Dennis Schoenrock, Emmett Scott, Herman Scott, Charles Sickles, Harley Smith, Clifford Spingler, Robert Starratt, Robert Stauffer, James Stever, Bruce Stock, John R. Thurston, John H. Thurston, Robert Toothman, Kenneth Van Lanen, Dennis Vitale, Richard Waldie and Steven Walner each applied to become collectors for CDT or sent an email to CDT indicating a desire to apply to become a collector.

190.    Some DPAs, such as Paul Kostyo and Nicholas DiFalco, were offered contracts by CDT, and signed and returned them to CDT.  CDT informed them that their hiring was subject only to a background check.  Subsequently CDT informed some of them that they were not going to be hired until the IRS ruling regarding the DPAs' status as employees of the NFL was "resolved."

191.    On information and belief, in addition to the IRS issue of the DPAs' employment status with the NFL, the age of the DPAs continued to be a consideration for CDT. For example, during a telephone job interview with William Logay, a DPA in Jacksonville, Florida, Lianna Lee, a CDT employee, asked Mr. Logay what his priorities were "at this point." He responded that his priorities were family, health and work and that he wanted to maintain a healthy lifestyle in order to see his grandchildren grow up.  Ms. Lee replied, "Oh, I didn't know that you had any grandchildren."  The telephone call was quickly terminated.  Thereafter, Mr. Logay's job application was rejected by CDT.

192.    In addition, the IRS's determination that the DPAs were employees was a determinative factor in the decision.  Commencing in April 2007, Liana Lee of CDT began calling DPAs who had applied for "sports collector" positions with CDT to inform the DPAs that CDT had rejected their applications.  In doing so, she left a recorded message on their answering

machines or told each DPA the same thing: "CDT is not retaining any of the DPAs until the IRS situation has been fully resolved."

193.    The NFLMC terminated its relationship with all DPAs effective April 30, 2007.

194.    To date, CDT has not hired any DPAs.

195.    Both the NFL and NFLMC have taken the position that the plaintiffs were never employees of the NFL or NFLMC.

196.    The NFL and NFLMC have indicated an intention to pursue an appeal of the IRS rulings as to DPA status as NFLMC employees.

197.    Throughout 2007 and continuing to date, the NFL and NFLMC have taken the position with numerous State Unemployment Appeal Boards that the plaintiff DPAs were not and are not employees of the NFL and/or NFLMC.

198.    Upon information and belief, the NFL's and NFLMC's argument that the plaintiff DPAs were not and are not their employees has been rejected in every State in which the NFL and NFLMC has raised it.

199.    No NFL or NFLMC fiduciary or Plan Administrator will find that DPAs are employees of the NFL and/or NFLMC is the face of the position advocated by the NFL or NFLMC in the various other forums, such as the State Unemployment Appeal Boards or before the IRS.

200.    On April 25, May 6, May 25, June 4 and June 11, 2007 (as well as subsequently), counsel for plaintiffs filed valid benefit claims with James McCloskey of the NFL Pension Plan on behalf of all plaintiffs under the Pension Plans and the Flex Plan. The claims sought benefits for all Pension benefits and Employee Welfare benefits to which NFL and NFLMC employees would have been entitled in the relevant period.

201.    The course of dealings of the NFL, the NFLMC and the Plan Administrator, with Plaintiffs' counsel, demonstrates conclusively that there is no point in further pursuing administrative remedies, and that such a pursuit would be futile and a needless squandering of resources.

202.    The NFL and NFLMC, through counsel, responded to plaintiffs' application for benefits on June 6, 2007 with, in essence, a set of interrogatories, many of which were tailored to the issue of whether the subject DPAs are employees of the NFL or NFLMC, thus demonstrating, to a certainty, that the NFL and NFLMC have not abandoned their challenge to the employee status of the plaintiffs.

203.    On July 16, 2007, counsel for the NFL and NFLMC stated that while they did not represent the Pension Plan or the Flex Plan, it was the final position of the NFL and NFLMC that the DPAs were "not employees of the NFL Management Council."

204.    No action was taken by the Plan Administrator with respect to the applications within the time frame permitted under ERISA and its implementing regulations. Accordingly, the plaintiff's claims for benefits are "deemed denied" by the Plan Administrator.

205.    Further efforts to obtain benefits from the NFL, NFLMC or any Plan Administrator would prove futile.    Further effort to exhaust administrative remedies prior to commencing suit is not required, and the exhaustion requirement is satisfied.

## FIRST CLAIM

### FOR PENSION BENEFITS, ASSERTED AGAINST NFL, NFLMC, THE PENSION PLANS AND THE NFL EMPLOYEE BENEFIT COMMITTEE

206.    Plaintiffs repeat and reallege each and every averment previously made herein in paragraphs 1 through 205.

207.    As "employees" of the NFL and/or NFLMC, plaintiffs were entitled to certain employee pension benefits and participation in certain employee pension benefit plans from the date of initial employment and going forward.

208.    Misrepresentations made by the NFL, the NFLMC, and  employee Welsh served to mislead plaintiffs into believing that they were not NFL and/or NFLMC "employees" and, therefore, not entitled to employee pension benefits.

209.    As "employees," plaintiffs should have been and were eligible to participate in all of the employee pension benefit plans sponsored by the NFL and NFLMC.

210.    Demand has been made for benefits, and the NFL and/or NFLMC has indicated that they do not intend to pay benefits under the employee pension plans.  Therefore, plaintiffs have exhausted their remedies, or exhaustion would be futile.

211.   The NFL Employee Benefit Committee failed to timely respond to plaintiffs applications for benefits, and, therefore, by operation of ERISA and its implementing regulations, the applications for benefits are "deemed denied."

212.   Pursuant to 29 U.S.C. § 1132, plaintiffs seek damages in an amount to be determined at trial from the defendants NFL and NFLMC, the defendant NFL Flex and the NFL Employee Benefit Committee. Plaintiffs also seek costs of suit and attorneys' fees, as well as civil penalties.

## SECOND CLAIM

## FOR WELFARE BENEFITS, ASSERTED AGAINST NFL, NFLMC AND NFL FLEX

213.   Plaintiffs repeat and reallege each and every averment previously made herein in paragraphs 1 through 212.

214.   Misrepresentations made by the NFL and/or NFLMC through employee Welsh served to mislead plaintiffs into believing that they were not NFL "employees" and, therefore, not entitled to employee welfare benefits.

215.   As "employees," plaintiffs should have been and were eligible to participate in all of the employee welfare benefit plans sponsored by the NFL including but not limited to group medical, dental, disability and accident insurance.

216.   Demand has been made for benefits, and the NFL and/or NFLMC has indicated that they do not intend to pay benefits under the employee welfare benefit plans. Therefore, plaintiffs have exhausted their remedies, or exhaustion would be futile.

217.    The NFL Employee Benefit Committee failed to timely respond to plaintiffs applications for benefits, and, therefore, by operation of ERISA and its implementing regulations, the applications for benefits are "deemed denied."

218.    Pursuant to 29 U.S.C. § 1132, plaintiffs seek damages in an amount to be determined at trial from the defendants NFL, NFLMC as well as the defendant NFL Flex. Plaintiffs also seek costs of suit and attorneys' fees, as well as civil penalties.

### THIRD CLAIM

### FOR INTERFERENCE WITH RIGHTS PROTECTED BY ERISA, ASSERTED AGAINST NFL, NFLMC AND CDT

219.    Plaintiffs repeat and reallege each and every averment previously made herein in paragraphs 1 through 218.

220.    The NFL has replaced all Active DPAs with Comprehensive Drug Testing, Inc. ("CDT"), a defendant herein, effective April 30, 2007.

221.    Upon information and belief, the Active DPAs who applied to CDT have been contacted by a Liana Lee of CDT and informed in words or substance, that CDT will not even consider hiring any of the DPAs until the IRS ruling concerning the DPAs status as NFL or NFLMC "employees" is "resolved."

222.    Upon information and belief, no former NFL/NFLMC DPA has been hired by CDT.

223.    Upon information and belief, CDT's refusal to hire any of the Active DPAs, is at the request and direction of the NFL and/or NFLMC.

224.    Upon information and belief, the NFL's and/or NFLMC's direction to CDT is intended to, and does serve to, frustrate and interfere with the vesting of DPA benefits under various NFL sponsored employee pension benefit plans and employee welfare benefit plans.

225.    For example, pursuant to one summary plan description ("SPD") for the National Football League Pension Plan, there is a requirement of 1000 Hours of Service per year in order to be eligible for pension benefits as provided under the terms of this particular pension plan.

226.    29 U.S.C. § 1140 provides, in pertinent part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

227.    CDT is "any person" within the meaning of 29 U.S.C. § 1140.

228.    CDT has refused to hire **any** former NFL/NFLMC DPA, despite application and inquiry from and qualification of numerous DPAs before and after their April 30, 2007 termination.

229.    Transfer of the function of DPAs to CDT by the NFL and NFLMC serves to change nothing concerning the "employee" status of those who perform the job. Any individual performing the role of a DPA, as defined by the NFL and NFLMC through the CBA, is, based on the factors for common law employment, and NFL and NFLMC employee.

230. Had CDT hired the Active DPAs, they would continue to be NFL and NFLMC employees, and their rights to benefits, particularly those that are based upon hours accrued, would continue to mature and to vest.

231. Plaintiffs are "participants," as that term is defined by ERISA, in some or all of the NFL employee benefit pension plans and employee welfare benefit plans referenced herein.

232. Termination of the Active DPAs serves to interfere with their ability to attain 1000 Hours of NFL Service. That service could have occurred, as a matter of law, even if CDT had hired them to work after April 30, 2007.

233. Defendants NFL, NFLMC and CDT have intentionally interfered with and frustrated the rights of the Active DPAs to participate in ERISA plans.

234. Defendants NFL, NFLMC and CDT have violated ERISA Section 510, 29 U.S.C. § 1140, by intentionally interfering with the attainment of benefits by the DPAs.

235. Those plaintiffs who were Active DPAs as of April 30, 2007 seek such equitable remedies, including back benefits, lost wages, lost benefits, costs of suit and attorney's fees as the Court may deem appropriate, as well as civil penalties.

## FOURTH CLAIM

## FOR ERISA RETALIATION, AGAINST NFL AND NFLMC

236. Plaintiffs repeat and reallege each and every averment previously made herein in paragraphs 1 through 235.

237.    Upon information and belief, the NFL and NFLMC has directed that a list be made of those DPAs who have sought legal counsel concerning the employment ramifications of their misclassification as "independent contractors."

238.    Upon information and belief, the April 30, 2007 termination of the Active DPAs is retaliation by the NFL against those DPAs who seek to pursue their rights as employees, including rights that they may have under ERISA.

239.    Upon information and belief, the NFL's and NFLMC's instruction to CDT not to hire any DPA until resolution of the IRS status issue is targeted, in part, at the proposed enforcement of ERISA rights by certain DPAs, and in retaliation for attempted and proposed enforcement of ERISA rights.

240.    Upon information and belief, the NFL and NFLMC specifically had knowledge that various DPAs intent to enforce their ERISA rights, and had such knowledge before instructing CDT not to hire any DPA until resolution of the IRS status issue.

241.    The NFL and NFLMC received letters from the law firms of Levy Tolman & Costello, LLP and Schnader Harrison Segal & Lewis LLP putting it on notice of certain DPAs' intentions to pursue rights under ERISA prior to its instruction to CDT not to hire any DPA until resolution of the IRS status issue.

242.    The Defendants NFL and NFLMC's conduct violates ERISA Section 510, 29 U.S.C. § 1140, in that it is retaliatory in nature against DPAs who seek to enforce their rights under ERISA.

243.    The Active DPAs seek such equitable remedies, including back benefits, lost wages, lost benefits, costs of suit and attorney's fees as the Court may deem appropriate, as well as civil penalties.

### FIFTH CLAIM

### FOR ESTOPPEL, AGAINST NFL, NFLMC, THE NFL EMPLOYEE BENEFIT COMMITTEE, THE PENSION PLANS AND NFL FLEX

244.    Plaintiffs repeat and reallege each and every averment previously made herein in paragraphs 1 through 243.

245.    According to a search of the records kept and maintained by the Department of Labor ("DOL"), as of March 2007 there was not a single NFL sponsored plan Summary Plan Description ("SPD") on file with the DOL.

246.    Filing of SPDs with the Department of Labor is expressly required by the terms of ERISA.  See ERISA §§ 104(a)-(b), codified as 29 U.S.C. §§ 1024(a)-(b); 29 C.F.R. §§ 2520.102-2(a), 2520.104a-3(a) & 2520.104b-2(b).

247.    The DPAs were misled by the NFL into believing that they were "independent contractors," and upon information and belief, none received copies of any version of any SPD.

248.    No DPA had actual or constructive knowledge of the contents of any NFL sponsored plan SPD, whether for pension benefits or employee welfare benefits such as health, life, dental, disability or accident.

249.    The NFL and NFLMC were required to file SPDs with the DOL pursuant to ERISA, 29 U.S.C. § 1001 et seq.

250.    As a remedy, plaintiffs seek damages in an amount to be determined at the time of trial, and to estop the NFL, NFLMC and the Pension Plans from relying upon such non-filed SPD provisions for any purpose. Plaintiffs also seek civil penalties.

### SIXTH CLAIM

### FOR FAILURE TO FURNISH UNDER ERISA ASSERTED AGAINST NFL, NFLMC AND NFL EMPLOYEE BENEFIT COMMITTEE

251.    On March 15, 2007, a request was sent on behalf of the plaintiffs to Dennis Curran, General Counsel of the NFL Management Counsel, as Plan Administrator for the NFL and NFLMC, seeking, among other things, copies of the latest updated summary plan descriptions and copies of the instruments under which each Pension and Welfare Plan is established or operated.

252.    Some documents were received in response to this request within 30 days, however, the production was incomplete, and may still be incomplete.

253.    In a letter dated November 21, 2007 from Douglas O'Connell, on behalf of the NFL Employee Benefit Committee, numerous references were made to documents that were not provided within the 30 day period mandated by 29 U.S.C. § 1132(c).

254.    The documents referenced in Mr. O'Connell's letter were not forwarded to counsel for the plaintiffs until December 18, 2007, more than eight (8) months after the responses were due. The production requested on March 15, 2007 may still be incomplete.

255. Plaintiffs seek statutory penalties under 29 U.S.C. § 1132(c) based on the failure of the NFL, NFLMC and NFL Employee Benefit Committee to promptly provide the documents that they were required to provide by statute.

256. Alternatively, the NFL, NFLMC and NFL Employee Benefit Committee should be limited to relying upon those documents which were timely provided in their defense of this action.

### SEVENTH CLAIM

### FOR ADEA VIOLATIONS, AGAINST NFL, NFLMC AND CDT

257. The Active DPAs repeat and reallege each and every averment previously made herein in paragraphs 1 through 256.

258. Defendants have unlawfully violated the ADEA, resulting in the discriminatory treatment of the Active DPAs based on their ages.

259. At least 60 days have passed since the Active DPAs filed charges alleging unlawful age discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 27, 2007.

260. Each of the Active DPAs has received a Notice of Right to Sue, dated October 3, 2007.

261. Each of the terminated DPAs was older than 40 and was a member of a protected class when they were subject to adverse employment actions by defendants, namely in the NFL and NFLMC's unlawful termination of the employment of the Active DPAs and CDT's refusal to hire any of the Active DPAs.

262.    Prior to their unlawful termination, the Active DPAs satisfactorily performed their jobs, were qualified for their positions and were qualified for the subsequent open positions with CDT for which they applied or about which they inquired and for which they were denied.

263.    The circumstances surrounding the termination of employment the of the Active DPAs and the refusal of employment with CDT, in addition to the blatantly discriminatory comments made to the Active  DPAs, give rise to an inference of age discrimination based upon the Active DPAs' membership in a protected class.

264.    Defendants knowingly, willfully and intentionally discriminated against the Active DPAs with malice and reckless indifference to the Active DPAs' federally and locally protected rights.

265.    The ages of the Active DPAs played a significant role in Defendants' decision-making processes and had a determinative outcome on their loss of employment with the NFL and NFLMC and denial of employment with CDT.

266.    As a direct an proximate result of Defendants' unlawful actions each Active DPA has been directly damaged in amount to be proven at trial, but in an amount not less than $400,000 plus attorneys' fees.

**PRAYER FOR RELIEF**

WHEREAS, the Plaintiffs pray that this Court:

A.    Award such injunctive relief as may be deemed appropriate;

B.    Award payment of benefits or money damages as may be deemed appropriate.

61

C.    Order the Defendants to pay interest, attorneys' fees, expenses and civil penalties.

D.    Award such other, different and further equitable and remedial relief as the Court may deem appropriate.


## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on their claims under the ADEA.


Dated: New York, New York
       December 28, 2007

SCHNADER HARRISON SEGAL & LEWIS LLP

By: _M. Christine Carty_ cos

    M. Christine Carty (MC-1796)
    140 Broadway, Suite 3100
    New York, New York  10005-1101
    (212) 973-8000
    *Attorneys for Plaintiffs*

LEVY, TOLMAN & COSTELLO, LLP
Robert J. Costello (RC-8301)
630 Third Avenue
New York, NY  10017
(212) 949-8770
*Attorneys for Plaintiffs*