Shepard Goldfein  (Shepard.Goldfein@skadden.com)
Jay S. Berke  (Jay.Berke@skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
*Attorneys for National Football League Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

William E. Richardson, et al.,                    :
                                                  :
                            Plaintiffs,           :   07 Civ. 11632 (MGC)
                                                  :
             - against -                          :   ECF CASE
                                                  :   ELECTRONICALLY FILED
National Football League, et al.,                 :
                                                  :
                            Defendants.           :
                                                  :
                                                  :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### NFL DEFENDANTS' MEMORANDUM OF LAW IN
### SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ iv

BACKGROUND ......................................................................................................... 2

SUMMARY OF ARGUMENT .................................................................................... 4

A.    The First And Second Claims For Benefits Are Incompletely Pled And
Are Time Barred ........................................................................................... 6

    (1)   Lack of Notice Pleading ...................................................................... 6

    (2)   Unauthorized Remedies Of Damages And Penalties Should Be
Stricken From Plaintiffs' Benefit Claims ........................................... 8

    (3)   All But 14 Of The Plaintiffs' Claims For Benefits Are Time Barred ......... 8

B.    The Third Claim For Interference and Fourth Claim For Retaliation Under
ERISA Section 510 Are Dismissable On Multiple Grounds ........................... 9

    (1)   All But 14 Active DPA Plaintiffs Lack Standing To Bring These
Claims .................................................................................................. 9

    (2)   Unauthorized Remedies Of Back Pay And Penalties Should Be
Stricken From The Section 510 Claims ............................................... 9

    (3)   The Third Claim For Interference Is Barred In Its Entirety By The
Two Year Statute Of Limitations Applicable To Section 510
Claims .................................................................................................. 10

    (4)   The Fourth Claim For Retaliation Based On The NFLMC's
Decision To Outsource Should Be Dismissed For Failure To
Allege Protective Activity By Any Active DPA ................................... 10

    (5)   The Fourth Claim Of Retaliation Aimed At CDT's Decision Not
To Retain DPAs Should Be Dismissed For Lack Of Notice
Pleading ............................................................................................... 11

C.    The Fifth and Sixth Claims For Failure To File SPDs With The DOL And
For Failure To Furnish Such Plan Documents To The Plaintiffs .................... 12

    (1)   The Fifth Claim Misinterprets The Statute And Should Be
Dismissed ............................................................................................. 12

            (2)      The Sixth Claim Misrepresents The Integral Document On Which It Relies And Should Be Dismissed...........................................................12

D.     The Seventh Claim For Age Discrimination Fails To Meet Notice Pleading Standards....................................................................................13

STATEMENT OF ALLEGED FACTS.......................................................................14

A.     Plaintiffs' Knowledge Of Their Treatment As Independent Contractors Not Eligible For Benefits At All Times Pertinent To The Action.........................14

B.     Some Plaintiffs Raise The Issue Of Whether They Are Employees Rather Than Independent Contractors...............................................................15

C.     The Mischaracterized IRS Proceedings.................................................16

D.     The October 5, 2006 Decision To Outsource The Specimen Collection Function Followed By The Bidding Process Resulting In The Selection Of CDT........................................................................................................17

E.     The Mischaracterized March 15, 2007 Letter Requesting SPDs And Other Plan Documents ....................................................................................17

F.     The Alleged Filing Of "Claims For Benefits" And The Amended Complaint's Attempt To Ignore The Benefit Committee's Administrative Determinations Of Plaintiffs' Ineligibility For Benefits Under The Various Plans.........................................................................................................19

G.     The Absence Of Factual Grounds Supporting Alleged ERISA Retaliation .........21

H.     The Absence Of Factual Grounds To Support Conclusory Allegations Of Age Discrimination................................................................................23

APPLICABLE STANDARDS ...................................................................................24

ARGUMENT..............................................................................................................27

POINT I  The First Claim And Second Claims Should Be Dismissed For Pleading Deficiencies, For  Seeking Unauthorized Remedies, And As Time Barred......................27

A.     The First And Second Claims Should Be Dismissed For All Plaintiffs Because They Fail To Plead Eligibility For Benefits Under The Specific Plans At Issue........................................................................................27

B.     Plaintiffs' Claims For Damages And Civil Penalties Under Their First And Second Claims For Benefits Should Be Stricken ...................................31

C.      The First And Second Claims For Benefits By All But 14 Plaintiffs Should
        Be Dismissed Because They Are Barred By The Applicable Statute Of
        Limitations ................................................................................................................33

POINT II The Third Claim For Interference With Benefits And The Fourth Claims
        For Retaliation, Should Be Dismissed ..............................................................................38

A.      The Third And Fourth Claims Should Be Dismissed In Their Entirety
        Because All Of The Active DPAs Lack Participant Standing To Bring
        Claims For Interference Or Retaliation Under ERISA Section 510 ......................39

B.      Plaintiffs' Claims For Lost Wages And Civil Penalties Under Their Third
        And Fourth Claims For Interference And Retaliation Under Section 510
        Should Be Stricken ...............................................................................................40

C.      The Third Claim For Interference With Benefits Is Barred In Its Entirety
        By The Two Year Statute Of Limitations Under New York Law For
        Workers' Compensation Claims And, In Any Event, Fails To State A
        Claim Under Section 510 Of ERISA .....................................................................42

D.      The Fourth Claim For Retaliatory Discharge Under ERISA Section 510
        Warrants Dismissal Because There Is No Allegation That Any Active
        DPA Plaintiff Engaged In Protected Activity Prior To The Outsourcing
        Decision .................................................................................................................44

E.      The Third And Fourth Claims For Interference And Retaliation Based On
        CDT's Alleged Decision Not To Retain Any Of The Former DPAs
        Warrant Dismissal For Failure To Plead Notice And Grounds Of
        Entitlement To Relief Against The NFL Defendants ............................................46

POINT III The Fifth Claim For Alleged Failure To File SPDs With The Department
        Of Labor Misstates The Law And Should Be Dismissed ..................................................48

POINT IV The Sixth Claim For Alleged Failure To Furnish SPDs And Other Plan
        Governing Instruments Should Be Dismissed Because The Alleged Request Was
        Made By Only One Plaintiff Who Lacks Standing To Bring The Claim ..........................49

POINT V The Seventh Claims For Age Discrimination Should Be Dismissed For
        Failure To Plead Notice And Grounds Of Age Discrimination Or Entitlement To
        Relief Against The NFL Defendants ...............................................................................51

CONCLUSION ..............................................................................................................................54

# TABLE OF AUTHORITIES

## CASES

Ambris v. Bank of New York, No. 96 Civ. 0061 LAP, 1998 WL 702289
(S.D.N.Y., October 7, 1998) ........................................................................34

ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) .................25

Barnett v. International Business Machines Corp., 885 F. Supp. 581 (S.D.N.Y.
1995) ...............................................................................................................30

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955
(2007) ...................................................................................................... passim

Benzman v. Whitman, 523 F.3d 119 (2d Cir. 2008) ..........................................................25

Berry v. Allstate Ins. Co., 252 F. Supp. 2d 336 (E.D. Tex. 2003), aff'd, 84 F.
App'x 442 (5th Cir. 2004) .........................................................................35, 43

Bolduc v. National Semiconductor Corp., 35 F. Supp. 2d 106 (D. Me. 1998)..................35

Box v. A & P Tea Co., 772 F.2d 1372, 1377 (7th Cir. 1985)............................................53

Boykin v. KeyCorp, 521 F.3d 202 (2d Cir. 2008) .......................................................25, 26

Bradley v. England, 502 F. Supp. 2d 259 (D. R.I. 2007)..............................................47, 48

Brennan v. Metropolitan Life Insurance Co., 275 F. Supp. 2d 406
(S.D.N.Y. 2003) ...........................................................................34, 35, 39, 50

Carey v. International Broth. of Electric Workers Local 363 Pension Plan, 201
F.3d 44 (2d Cir. 1999)....................................................................................35

In re Carnegie Center Associates, 129 F.3d 290 (3d Cir. 1997).......................................53

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002).........................................26

Cook v. New York Times Co. Long-Term Disability Plan, No. 02 Civ. 9154
(GEL), 2004 WL 203111 (S.D.N.Y. Jan. 30, 2004).....................................31

Curby v. Solutia, Inc., 351 F.3d 868 (8th Cir. 2003) .......................................................40

Danzer v. Norden Systems, Inc., 151 F.3d 50 (2d Cir. 1998)...........................................51

Dister v. Continental Group, Inc., 859 F.2d 1108 (2d Cir. 1988).....................................45

Downes v. JP Morgan Chase & Co., No. 03 Civ. 8991(GEL), 2004 WL 1277991 (S.D.N.Y. June 8, 2004)..........................................................................................35, 42

Firestone Tire & Rubber Company v. Bruch, 489 U.S. 101 (1989) ..............................7, 39

Fonseca v. Columbia Gas Systems, Inc., 37 F. Supp. 2d 214 (W.D.N.Y. Sept. 17, 1998) ............................................................................................................................44

Geaney v. McCarron, No. 01 Civ. 9260 (BSJ), 2003 WL 1701975 (S.D.N.Y. Mar. 31, 2003) ......................................................................................................................44

George v. First Unum Life Ins. Co., No. 93 Civ. 2916 (KMW), 1995 WL 231254 (S.D.N.Y. April 18, 1995)...........................................................................................31

Geosa v. Savasta & Co., 329 F.3d 317 (2d Cir. 2003)......................................................32

Giordano v. Thomson, 438 F. Supp. 2d 35 (E.D.N.Y. 2005) ............................................45

Goldstein v. Pataki, 516 F.3d 50 (2d Cir. 2008) ...............................................................25

Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002)............32, 41

Green v. AIM Executive, Inc., 897 F. Supp. 342 (N.D. Ohio 1995) .................................32

Greifenberger v. Hartford Life Insurance Co., 131 F. App'x 756 (2d. Cir 2005)..............31

Guilbert v. Gardner, 480 F.3d 140 (2d Cir. 2007) ............................................................33

Halaris v. Viacom, Inc., Civ. Act. No. 3:06CV1646N; 2007 WL 4145405 (N.D. Tex. Sept. 21, 2007)...................................................................................................25

Hoodack v. International Business Machines, Inc., 202 F. Supp. 2d 109 (S.D.N.Y. 2002) ............................................................................................................................44

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) .....................................................................25

Jensen v. AT&T Corp., No. 406-CV-842 CEJ, 2007 WL 2199714 (E.D. Mo. July 27, 2007) ......................................................................................................................25

Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229 (2d Cir. 2007)...........................25

Kienle v. Hunter Eng'g Co., 24 F. Supp. 2d 1004, 1006-07 (E.D. Mo. 1998)..................35

Kerr v. Charles F. Vatterott & Co., 184 F.3d 938 (8th Cir. 1999).....................................32

Krauss v. Oxford Health Plans, Inc., 517 F.3d 614 (2d Cir. 2008) ...........29, 30, 31, 32, 41

v

Kryzer v. BMC Profit Sharing Plan, No. 01 Civ 299, 2001 WL 1587177 (D. Minn. Nov. 1, 2001) .................................................................................................35

Lee v. Burkhart, 991 F.2d 1004 (2d. Cir. 1993) ................................................................32

McLellan v. E.I. DuPont de Nemours & Co., No. 04-CV-314, 2006 WL 3751583 (W.D.N.Y. Dec. 19, 2006).....................................................................................43, 45

Montesano v. Xerox Corp., 256 F.3d 86 (2d Cir. 2001).....................................................45

Nahoun v. Employees' Pension Plan of Credit Suisse First Boston, No. 04 Civ. 9221 (LAK), 2005 WL 1476453 (S.D.N.Y. June 22, 2005)........................................35

Nechis v. Oxford Health Plans, Inc., 421 F.3d 96 (2d Cir. 2005) .....................................29

Nicolaou v. Horizon Media, Inc., No. 01 Civ. 0785 (BSJ), 2003 WL 22208356 (S.D.N.Y. Sept. 23, 2003)..............................................................................................41

Plante v. Foster Klima & Co., LLC, No. 03-3553(RHK/FLN), 2004 WL 2222318 (D. Minn. Sept. 30, 2004) ..............................................................................................40

Ross v. Bank of America, N.A., (USA), 524 F.3d 217 (2d Cir. 2008).................................25

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007).........................................................2, 25, 26

Rozsa v. May Davis Group, Inc., 187 F. Supp. 2d 123 (S.D.N.Y. 2002)............................26

Sandberg v. KPMG Peat Marwick, L.L.P., 111 F.3d 331 (2d Cir. 1997) ..........................42

Schultz v. Texaco Inc., 127 F. Supp. 2d 443 (S.D.N.Y. 2001)....................................34, 37

Sembos v. Philips Components, 376 F.3d 696 (7th Cir. 2004) ..........................................53

Sobek v. Quattrochi, No. 03 Civ. 10219(RWS), 2004 WL 2809989 (S.D.N.Y. Dec. 8, 2004)...............................................................................................................27, 30

Strom v. Goldman, Sachs & Co., 202 F.3d 138 (2d Cir. 1999)....................................37, 41

Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan, 497 F.3d 234 (2d Cir. 2007) ...............................................................................................................................37

Sturgis v. Mattel, Inc., 525 F. Supp. 2d 695 (D. N.J. Nov. 29, 2007) ...............................36

Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111 (2d Cir. 2007).........................52

Valdez v. United States, 518 F.3d 173 (2d Cir. 2008).........................................................37

Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318 (2d Cir. 2004).................37

Weir v. Holland & Knight, No. 05 Civ. 9358LTSAJP, 2007 WL 1815494
     (S.D.N.Y. Jun. 25, 2007) ..............................................................................................44

Wharton v. Duke Realty, LLP, 467 F. Supp. 2d 381 (S.D.N.Y. 2006) ...........................41

Williams v. American International Group, Inc., No. 01 Civ. 9673 (CSH), 2002
     WL 31115184 (S.D.N.Y. Sept. 23, 2002).....................................................................43

Wong v. Kings County District Attorney's Office, No. 02 CV 3740 (JG), 2004
     WL 692165 (E.D.N.Y. Mar. 31, 2004)A .......................................................................53

Zielinski v. Pabst Brewing Co., 360 F. Supp. 2d 908 (E.D. Wis. 2005) ...........................32

## STATUTES

Fed. R. Civ. P. 12(b)(6).......................................................................................1, 24, 26, 27

29 U.S.C. § 1002(7) ...............................................................................................................39

29 U.S.C. § 1024(a)(6)......................................................................................................12, 48

29 U.S.C. § 1132.......................................................................................................... passim

29 U.S.C. § 1132(a)(1)(A) ........................................................................................13, 33, 50

29 U.S.C. § 1132(a)(1)(B) ........................................................................................27, 29, 32

29 U.S.C. § 1132(a)(3)(B) ..............................................................................................32, 41

29 U.S.C. § 1140.......................................................................................................... passim

N.Y. Work. Comp. Law 120 (McKinney 2006)...................................................................42

Defendants National Football League (the "NFL"), National Football League Management Council (the "NFLMC"), National Football League Pension Plan (the "NFLPP"), National Football League Capital Accumulation Plan (the "CAP"), National Football League Flex Plan (the "NFL Flex" or "Flex Plan"), National Football League Management Council Pension Plan (the "NFLMCPP"), and NFL Employee Benefit Committee (the "Benefit Committee") (collectively, the "NFL Defendants")[1], respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint (the "AC")[2] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief can be granted.

As demonstrated below, the AC should be dismissed because it (1) fails to meet basic notice pleading requirements, (2) is substantially barred by applicable statutes of limitations, and (3) purports to state claims which fail as a matter of law.

---

[1] The NFL is an unincorporated association of 32 member professional football teams. (AC ¶ 103.) The NFLMC is the multi-employer bargaining unit and collective bargaining agent for the NFL member clubs. (AC ¶ 104.) The NFLPP and the NFLMCPP are pension plans, the Flex Plan is a cafeteria style plan for health and related insurance, and the CAP is a 401(k) plan. (AC ¶ 105.) The Benefit Committee is the plan administrator for the above referenced plans. (AC ¶ 109.) Comprehensive Drug Testing, Inc. ("CDT") is an unrelated Defendant which is the independent company which contracted with the NFLMC in February 2007 to furnish specimen collection services for the Drug Program. (AC ¶ 110.)

[2] References are to the Amended Complaint "AC ¶ _"; to the Transmittal Declaration of Jay S. Berke in Support of the NFL Defendants' Motion To Dismiss, executed June 9, 2008 "Berke Dec. ¶ _"; and to any exhibit thereto "Ex. _".

## BACKGROUND

This action[3] is filed by ninety-three (93) former Drug Program Agents ("DPAs")[4], who collected specimens pursuant to the National Football League Policy and Program for Substances of Abuse and the National Football League Policy on Anabolic Steroids and Related Substances (collectively, the "Drug Program"). Defendant NFLMC (the collective bargaining agent for the NFL) and the National Football League Player's Association (the "Player's Association"), the union representing NFL football players (not a party to this action), collectively bargained the Drug Program, which was to be administered by persons and entities independent of both the NFL and the Player's Association. (AC ¶ 122.)[5]

The AC alleges that the NFLMC repeatedly told the DPAs that their activities were performed as independent contractors and not as employees of the NFLMC.[6] (AC ¶ 127.) As such, the AC alleges that DPAs believed they were not employees and knew that they did not participate in pension and welfare benefit plans which would be available to employees of the NFL or the NFLMC. (AC ¶¶ 208, 214.) The AC further alleges that on October 5, 2006, the

---

[3] The Complaint in this action was filed on December 28, 2007 and the AC was filed on January 17, 2008. By Stipulation and Order filed on March 28, 2008, the date for all Defendants to answer or move with respect to the AC was extended up to and including June 9, 2008. The NFL Defendants do not include CDT, the one additional Defendant named in this action. CDT is separately represented in this action and is responsible for answering or otherwise moving on its own with respect to the AC.

[4] "Active DPAs" are defined by the pleadings as those Plaintiffs who were active as of April 30, 2007, the last date on which DPAs functioned in the Drug Program (Berke Dec. Ex. 19), as opposed to the remainder of the Plaintiffs, defined as "Inactive DPAs," who voluntarily left the program at an earlier time (Berke Dec. Ex. 20). (AC ¶¶ 101-02.)

[5] See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (on a motion to dismiss, "even if not attached or incorporated by reference," a document may be considered by the court where it is "integral" to the pleadings).

[6] The AC should not be read to allege that Plaintiffs were employees of the NFL. See Plaintiffs' counsels' letter of January 16, 2008 at 2 n.1. "We acknowledge that if the NFL Office Pension Plan ("OPP") and NFL Office Supplemental Pension Plan ("OSPP") have never allowed Management Council employees to participate, as you have represented in the letter dated November 21, 2007, the DPAs cannot make claim thereunder. No such claim is advanced in the DPA's Complaint which is filed in the Southern District of New York seeking, among other things, employee benefits." (Berke Dec. Ex. 17.)

NFLMC informed the DPAs that it had decided it would no longer use them in the Drug Program and was going to obtain an outside company (which eventually turned out to be Defendant CDT) to carry out the specimen collection function of the program. (AC ¶ 183.) Allegedly, this decision came to fruition on April 30, 2007, the last day on which DPAs worked in the program. (AC ¶¶ 183, 220.)

The AC challenges the DPAs' independent contractor status, alleging that each of the 93 Plaintiffs was an employee of the NFLMC. (AC ¶¶ 207, 209, 215, 217.) The AC further alleges that it would have been futile for the DPAs to request a decision from the Benefit Committee (the plan administrator) as to their employment status because the NFLMC (the alleged employer) had already decided the DPAs were not employees. (AC ¶¶ 201-02.) On that basis alone, the First and Second Claims of the AC, purportedly authorized by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., seek on behalf of all 93 Plaintiffs, an award of pension and welfare benefits under the plans at issue here for the 19 year period between 1988 and April 30, 2007, regardless of whether each DPA meets the eligibility requirements of each specific plan. (AC ¶¶ 201-02, 207, 209, 215, 217.)

The AC also alleges that certain NFL Defendants compounded their alleged wrongdoing by not filing Summary Plan Descriptions ("SPDs") of the pension and welfare plans with the United States Department of Labor (the "DOL") (Fifth Claim) (AC ¶¶ 245, 249), and by not furnishing such SPDs and other plan documents on a timely basis to Plaintiffs (Sixth Claim) (AC ¶¶ 251-54).

Fifty-nine of the DPAs who are defined in the AC as the "Active DPAs," attack the NFLMC's decision to outsource the specimen collection function of the Drug Program as violative of Section 510 of ERISA, 29 U.S.C. § 1140, alleging that such decision was a

3

prohibited interference with the rights of the Active DPAs to seek benefits (Third Claim) (AC ¶¶ 224, 232-34), and retaliation against the Active DPAs for asserting their rights to pension and welfare benefits (Fourth Claim) (AC ¶¶ 238-39, 242). Ultimately the AC alleges that the decision to outsource was motivated by the age of the Active DPAs in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and that after agreeing to outsource the screening program the NFL Defendants conspired with CDT not to hire the former Active DPAs by reason of their age (Seventh Claim). (AC ¶¶ 258, 261, 263, 265.)

## SUMMARY OF ARGUMENT

Significantly, the AC makes no allegations that, assuming the DPAs were employees of the NFL or NFLMC, the DPAs meet the eligibility requirements of each of the NFL or NFLMC pension and welfare plans entitling them to benefits. Specifically, the AC, while alleging that the Plaintiffs invoked their plan administrative remedies, and relying on documents in that administrative process (AC ¶ 200), fails to allege that those Plaintiffs pursued such administrative remedies to conclusion. Similarly, the AC ignores the resulting decisions of the Benefit Committee that assumed arguendo that the DPAs were employees of the NFLMC but found that the DPAs did not qualify for pension or welfare benefits under any of defendants' applicable pension or welfare plans. (Berke Dec. Exs. 13, 16, 18.)

In two separate opinions on November 21 and December 21, 2007, and again in an opinion on appeal, dated March 14, 2008, the Benefit Committee determined on a variety of grounds under each of the plans that the DPAs were not eligible for benefits even if they had been employees. (Id.) Since the AC makes no allegations regarding the merits of the decisions of the Benefit Committee, the Court need not reach such merits in order to grant this motion. Rather the NFL Defendants respectfully request that the Court dismiss the First and Second Claims of the AC for Plaintiffs' failure to allege that they met the contractual requirements for

4

receipt of benefits under the plans and failure to challenge the Benefit Committee's decision --
which as threshold matters, make the employment status of the DPAs a moot or academic
question and unnecessary for decision by this Court.

In addition, the NFL Defendants respectfully request that the Court dismiss with
prejudice these claims for benefits as to all but 14 of the DPAs on the ground that they are time
barred by the applicable six-year statute of limitations. The NFL Defendants also respectfully
request dismissal with prejudice of the Third through Seventh Claims, for ERISA interference
and retaliation and failure to file and furnish plan documents under ERISA, and age
discrimination under the ADEA, on various legal grounds applicable to such claims, including
lack of participant standing to pursue an ERISA claim,[7] the failure to allege entitlement to
benefits under each of the specific plans, applicable statutes of limitations, failure to engage in
ERISA protected activities, misinterpretation of statutory requirements, and, with respect to the
discrimination claims based on CDT's failure to hire Active DPAs, under both ERISA and
ADEA, because there are no allegations that most of the Active DPAs actually applied for a
position with CDT and for material failure to plead more than conclusory allegations of
conspiracy between the NFL Defendants and CDT with adequate plausibility to justify discovery
under the recent decision of the Supreme Court in Bell Atlantic Corp. v. Twombly, 127 S. Ct.
1955 (2007).

---

[7]    Plaintiffs allege that they have standing as "participants" to pursue these claims under Section 502 of ERISA, 29
U.S.C. § 1132.  (AC ¶¶ 107, 231.)  They do not – and indeed could not – allege standing as "beneficiaries"
within the meaning of Section 502.

### A.    The First And Second Claims For Benefits Are Incompletely Pled And Are Time Barred

#### (1)    Lack of Notice Pleading

The AC alleges that counsel for Plaintiffs filed alleged "benefit claims" with the Benefit Committee on behalf of the 93 Plaintiffs through a series of five rolling letters between April 25, 2007 and June 11, 2007 as well as through "subsequent" correspondence. (AC ¶ 200.) It is further alleged that the Benefit Committee failed to decide the employment issue within the 180 day time frame permitted by regulations and therefore Plaintiffs' claim must be "deemed denied" by the Committee. (AC ¶ 204, 211, 207.) See 29 C.F.R. § 2560.503-1(f). The AC alleges that "pursuing [plan] administrative remedies" beyond such filings was "futile" because the NFL and NFLMC have not "abandoned their challenge to the employee status of the Plaintiffs" and because such proceedings would have caused a "needless squandering of resources." (AC ¶¶ 201-02.)

Given these allegations, the Court on the instant motion may properly examine documents from the administrative proceedings which are incorporated in or integral to the pleadings. These documents reveal that 90 (not all 93) of the Plaintiffs made requests for eligibility to the Benefit Committee which were pursued by these Plaintiffs to conclusion, and were not "futile" or "a needless squandering of resources." (Berke Dec. Exs. 4-6, 8, 10.) Indeed, on June 27, 2007, Plaintiffs specifically confirmed to the Benefit Committee that they sought a determination as to their eligibility for benefits based on a finding that they were employees and not independent contractors. (Berke Dec. Ex. 11.) The Benefit Committee informed the DPAs that their letters, though ambiguous on whether they were claims or requests for eligibility preliminary to the making of claims, would nevertheless be treated as claims for benefits and

6

afforded their counsel the opportunity to supply any additional information it desired. (AC ¶ 200; Berke Dec. Exs. 4-6, 8, 10-13, 16.)

Subsequently and contrary to Plaintiffs' untimeliness and "futility" allegations, the Benefit Committee issued detailed written decisions dated November 21, 2007 and December 21, 2007 prior to the filing of the AC, which determined that, assuming arguendo that the 90 DPAs were employees, each of them failed to meet one or more of the eligibility requirements under the specific NFL plans and thereby had no entitlement to any plan's benefits. (Id.) Subsequent to the filing of the AC, these Plaintiffs appealed the decisions, and on March 14, 2007 the Benefit Committee affirmed the initial determinations of ineligibility and, again, provided a full written discussion of the grounds for affirmance. (Berke Dec. Ex. 18.)

The NFL Defendants, by the instant motion, do not present these decisions by the Benefit Committee to the Court for review of their determinations but rather for the fact that they were issued.[8] Dismissal is currently sought on a more basic and preliminary ground, that in failing to plead that Plaintiffs met the eligibility standards of the plans and in ignoring the grounds for denial of benefits determined by the Benefit Committee, the AC fails to plead contractual entitlement to benefits or notice of all issues that must be resolved by the Court if Plaintiffs are to state claims upon which benefits can be awarded, grossly attempts to short circuit the controversy between the parties, and attempts to characterize as the sole issue as one that the

---

[8] Presentation of these decisions for merits review by the Court is reserved for a subsequent motion for summary judgment, which may be unnecessary in light of the instant motion to dismiss. The Benefit Committee's determinations were rendered pursuant to the established administrative and appellate procedures under the applicable plans and pursuant to the plans' provisions which specifically vest the Benefit Committee with broad discretion to interpret the terms of the plans including eligibility requirements. Pursuant to the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), and its progeny, these determinations are to be reviewed against the administrative record, and the plan administrator is to receive deference from this Court, where, as here, the determinations of ineligibility were not arbitrary and capricious; but these matters are not currently before the Court.

7

Court may never have to determine, in the event the Court defers to the Benefit Committee decisions or otherwise determines that Plaintiffs do not meet plan eligibility requirements. Therefore, as the AC presently stands, it ignores the fact that the employment status of the Plaintiff DPAs, while, if decided against them defeats their eligibility, is not, however, determinative in establishing their eligibility even if the issues were decided in their favor because the DPAs were denied benefits under the terms of the various plans under which they made claims. Therefore, the failure to plead allegations relating to the merits of the Benefit Committee decisions requires dismissal of the AC.

### (2) Unauthorized Remedies Of Damages And Penalties Should Be Stricken From Plaintiffs' Benefit Claims

The Court should also dismiss so much of the First and Second Claims for benefits under ERISA which seek the remedies of damages and civil penalties. It is well established that legal damages which are not recoverable contractual benefits are not within the scope of the equitable remedies available under ERISA. Civil penalties likewise are not cognizable remedies under an ERISA benefits claim.

### (3) All But 14 Of The Plaintiffs' Claims For Benefits Are Time Barred

The instant motion also seeks dismissal of the First and Second Claims for benefits for 79 Plaintiffs, because such claims are time barred by the New York State six-year statute of limitations applicable to contractual claims. On the face of the AC, 79 Plaintiffs were retained and worked as DPAs prior to December 28, 2001, and knew from the date of their retention, and at all times thereafter, that the NFL Defendants treated them as independent contractors without entitlement to employee pension or welfare benefits. (Berke Dec. Exs. 19-20;[9] AC ¶¶ 160, 165,

---

[9] Berke Dec. Ex. 19 and 20 are lists of all of the Active DPA and Inactive DPA Plaintiffs, respectfully, identified in the AC, paragraphs 8 through 100. Berke Dec. Ex. 21 is a list of those such Plaintiffs who were retained after

*(cont'd)*

8

208, 214.) Because prior to December 28, 2001 these 79 Plaintiffs knew or should have known of their claims for pension and welfare benefits, such claims were time barred when the Complaint in this action was filed more than six years later on December 28, 2007.

### B.    The Third Claim For Interference and Fourth Claim For Retaliation Under ERISA Section 510 Are Dismissable On Multiple Grounds

#### (1)    All But 14 Active DPA Plaintiffs Lack Standing To Bring These Claims

The Third Claim for ERISA interference and the Fourth Claim for ERISA retaliation, brought only by the Active DPAs, should likewise be dismissed for lack of standing as to all but the 14 Active DPA Plaintiffs whose claims for benefits are not time barred. (Berke Dec. Ex. 21.) Where an individual's right to claim benefits is barred by the statute of limitations, that individual has no colorable entitlement to benefits, and is therefore not a participant within the meaning of ERISA and has no standing to bring any Section 510 claim, whether for interference or retaliation. Moreover, where the Benefit Committee has denied eligibility under the specific plans and the pleadings make no allegations addressing those decisions Plaintiffs' interference and retaliation claims must be dismissed.

#### (2)    Unauthorized Remedies Of Back Pay And Penalties Should Be Stricken From The Section 510 Claims

In addition, the Court should strike so much of the Third and Fourth Claims under Section 510 of ERISA which seek the remedy of back pay (also sometimes referred to as front pay) and civil penalties for the alleged acts of interference and retaliation. It is well established that back pay constitutes legal damages which are neither recoverable contractual benefits, nor

---

*(cont'd from previous page)*

December 28, 2001. Paragraphs 8 through 100 in the AC set forth the approximate date each Plaintiff began working and ceased working in the Drug Program and this information was utilized in preparing these attachments to the Berke Dec.

9

within the scope of the equitable remedies available under ERISA. Civil penalties likewise are

not cognizable remedies under Section 510.

### (3) The Third Claim For Interference Is Barred In Its Entirety By The Two Year Statute Of Limitations Applicable To Section 510 Claims

The Third Claim for ERISA interference, even for the 14 DPAs whose pension and

welfare benefit claims are still alive under the First and Second Claims of the AC, is barred in its

entirety by the two-year statute of limitations for New York State workers compensation claims,

which courts in this circuit apply to ERISA Section 510 claims. Although that claim alleges that

it was (a) the decision to terminate the Active DPAs conveyed to them in October 2006 and (b)

CDT's subsequent failure to hire them once the outsourcing took place in April 2007, which

interfered with their right to benefits, the AC makes clear that such alleged interference occurred

much earlier than these events. (AC ¶¶ 183, 228, 230, 232.) Indeed, for each of the Active

DPAs, Plaintiffs assert that, if there was interference, it occurred from the very beginning, i.e.

from the date of each DPA's retention as an independent contractor without benefits. (Id.)

Therefore, any cause of action for interference with such benefits accrued upon each DPA's date

of retention, which was more than two years preceding the filing of the Complaint.

### (4) The Fourth Claim For Retaliation Based On The NFLMC's Decision To Outsource Should Be Dismissed For Failure To Allege Protective Activity By Any Active DPA

That part of the Fourth Claim which alleges that the NFLMC's decision to outsource the

DPA function, conveyed October 5, 2006, warrants dismissal for all of the Active DPAs. To

maintain a retaliatory discharge claim, the AC, at a minimum, must plead that each Active DPA

making the claim engaged in a protected activity, e.g., asserted his rights to benefits under

ERISA, after which a decision to take adverse action against that Plaintiff was made by the NFL

Defendants in retaliation for the previous protected activity. According to the AC, only two

10

Plaintiffs, Peter Pallatroni and Thomas Taylor, even arguably asserted their rights to plan benefits prior to the decision to outsource. (AC ¶ 138.) Thus, on February 7, 2006, counsel for Messrs. Pallatroni and Taylor wrote to the NFLMC asserting that these Plaintiffs, not any others, were employees entitled to benefits and not independent contractors. (Id.; Berke Dec. Ex. 1.) Both Messrs. Pallatroni and Taylor were at that time, already Inactive DPAs and neither is within the group of Active DPAs who seek to maintain the Third and Fourth Claims for interference with benefits or retaliation. (AC ¶¶ 94, 97, 100-01, 238; Berke Dec. Ex. 1.) Moreover, the exercise of ERISA rights by any of the Active DPAs did not occur until, at the earliest, April 25, 2007 (the date of the first alleged claim for benefits letter). But the October 5, 2006 decision to outsource the DPA function occurred nearly seven months prior to that first alleged Active DPA ERISA claim letter, and therefore could not have been in retaliation against the Active DPAs.

### (5)    The Fourth Claim Of Retaliation Aimed At CDT's Decision Not To Retain DPAs Should Be Dismissed For Lack Of Notice Pleading

The remainder of the Fourth Claim for retaliation based upon CDT's alleged declination to retain any of the Active DPAs also warrants dismissal for failure to meet the basic requirements of providing fair notice of what the Plaintiffs' claim is and the grounds upon which it rests as to the NFL Defendants. For example, although the AC contends that only some of the Active DPAs ever applied for a position at CDT, it does not identify such alleged applicants or the dates they made such application, preferring to charge retaliation against all Active DPAs, on the vague and ambiguous allegation that those who did not apply to CDT, nevertheless "indicated a desire" to do so (AC ¶ 189). Similarly, while the Fourth Claim alleges that CDT declined to retain any of the Active DPAs, it provides no ground to support the conclusory allegation that in deciding to engage in such conduct, CDT acted in concert with the NFL Defendants rather than in its own self-interest.

11

C.    **The Fifth and Sixth Claims For Failure To File SPDs With The DOL And For Failure To Furnish Such Plan Documents To The Plaintiffs**

(1)    **The Fifth Claim Misinterprets The Statute And Should Be Dismissed**

The Fifth Claim seeks to estop the NFL Defendants from relying on the eligibility requirements and other provisions contained in plan documents, because allegedly the plan administrator did not comply with statutory filing requirements for plan SPDs. Specifically, the Fifth Claim seeks this novel and unauthorized remedy of estoppel, together with penalties and damages (AC ¶ 243) based on the allegation that, "[t]he NFL and NFLMC were required to file SPDs with the DOL pursuant to ERISA" and "as of March 2007 there was not a single NFL sponsored plan Summary Plan Description...on file with the DOL." (AC ¶¶ 245, 249.) This claim should be dismissed as a matter of law. The requirement in ERISA to file SPDs as a matter of course with the DOL was amended and removed from the statute in 1997. (Berke Dec. Exs. 22-24.) Under ERISA Section 104(a), as presently constituted, SPDs need only be furnished to the Secretary of Labor in response to a specific request by the government for such documents, and no such request is pleaded in the AC. See 29 U.S.C. 1024(a)(6); Berke Dec. Ex. 23.

(2)    **The Sixth Claim Misrepresents The Integral Document On Which It Relies And Should Be Dismissed**

Plaintiffs' Sixth Claim for estoppel and penalties should likewise be dismissed as legally invalid. The AC alleges that "on March 15, 2007, a request was sent on behalf of the plaintiffs" seeking SPDs and other plan documents, and that while "[s]ome [responsive] documents were received....within 30 days" the remainder of the documents were not forwarded to counsel for Plaintiffs until December 18, 2007, more than eight months after the responses were due. (AC ¶¶ 251, 254.) However, the March 15, 2007 letter requests documents on behalf of one – and only one – Plaintiff, Mr. Peter Pallatroni and not on behalf of all 93 DPAs. (Berke Dec. Ex. 2.)

12

Therefore, the Sixth Claim on behalf of all the DPAs except Mr. Pallatroni should be dismissed and Mr. Pallatroni's claim should be dismissed because he had no standing under ERISA to make a statutorily authorized request for plan documents. Indeed, he and each of the other DPAs whose claim for benefits is time-barred is not a "participant" in these plans within the meaning of 29 U.S.C. § 1132(a)(1)(A) and (c) and has no standing to bring such claim under ERISA.

## D.    The Seventh Claim For Age Discrimination Fails To Meet Notice Pleading Standards

The Seventh Claim for age discrimination under ADEA, brought by the Active DPAs only, should be dismissed because it too fails to meet the basic pleading requirements of providing the NFL Defendants fair notice of the Plaintiffs' claims and the grounds upon which they rest. The allegations are purely conclusory asserting that age was a factor in the NFLMC's decision when it announced on October 5, 2006 that it would outsource the DPAs' function. (AC ¶¶ 258, 263.) Indeed, to the extent the AC alleges stray remarks dealing with age such as: "you guys [the DPAs] will be dead and buried before this is resolved," (AC ¶ 180), those remarks (which are undated), by admission of the AC, point only to the length of time it would take to resolve those claims and not to age discrimination as to the basis for the NFLMC's decision to outsource. Similarly, with respect to the allegation that CDT rejected DPA applicants for employment based on age (AC ¶ 265), the Seventh Claim fails to identify who among the Active DPAs ever actually applied for employment, who among them "indicated an interest" in such employment, how from any fact alleged in the AC an inference of age discrimination by CDT, much less by the NFL Defendants, can be drawn, and on what grounds it is alleged that CDT acted due to the DPAs' age in concert with the NFL Defendants rather than in its own self-interest. Clearly, under this Seventh Claim, the AC has utterly failed to provide the NFL

Defendants with notification of the grounds for age discrimination against which the Active

DPAs seek to require these defendants to answer and defend.

## STATEMENT OF ALLEGED FACTS[10]

**A.    Plaintiffs' Knowledge Of Their Treatment As Independent Contractors Not
Eligible For Benefits At All Times Pertinent To The Action**

All of the Plaintiffs are highly sophisticated individuals knowledgeable in concepts

relating to law and business. (AC ¶¶ 8-100.) All Plaintiffs were formerly employed as federal,

state or municipal criminal law enforcement personnel, and became DPAs after retiring from

such positions. (Id.) For example, 29 Plaintiffs were formerly agents of the Federal Bureau of

Investigation, 25 were agents of the United States Drug Enforcement Agency, 2 were Internal

Revenue Service criminal enforcement agents, and most others were former policemen from

state or metropolitan police forces. (Id.) The AC alleges that at all times pertinent to this action,

the NFLMC "denominated" the DPAs as "independent contractors," not employees of any of the

NFL Defendants. (AC ¶ 127.) Allegedly, "[d]uring the period 1996 to 2007, the Plaintiffs claim

they were "lull[ed]…into believing that they were properly being treated as independent

contractors." (AC ¶ 160.) Mr. Warren Welsh is alleged to have been Director of Security for the

NFL from 1988 to 1996, and thereafter until 2007 carried out responsibilities "supervising the

Drug Program collection process and acting as a drug collector." (AC ¶ 158.) Mr. Welsh

allegedly told the DPAs at annual meetings that he was an "independent contractor of the

NFLMC, stating, in words or substance, that he was 'just like you.'" (AC ¶ 165.) According to

the AC, at all pertinent times, the Plaintiffs knew and "believ[ed] that they were not NFL and/or

---

[10] Alleged facts, as opposed to conclusions, are assumed to be true for purposes of the instant motion only and the
NFL Defendants reserve the right to deny such assumed facts at any other stage of the proceedings. Additionally,
alleged facts should not be assumed to be true where they are contradicted by documents integral to the pleadings.

NFLMC 'employees' and, therefore not entitled to employee pension benefits" and also "therefore, not entitled to employee welfare benefits." (AC ¶¶ 136, 208, 214.)

According to the AC, any statement by Mr. Welsh that he was an independent contractor during the time he was performing supervisory duties relating to the drug program and acting as a drug collector, were knowingly false, and somehow misled these sophisticated Plaintiffs into believing that they were independent contractors, when they were not. (AC ¶¶ 165-67.) However, Mr. Welsh is not alleged to ever have been a DPA, and none of these alleged misleading statements by Mr. Welsh are pleaded with particularity; for example, the AC does not identify the precise words used, or the dates of each such statement, or how many such statements were made, or the circumstances surrounding the making of each statement or to whom each statement was made, or the wording or text of statements or remarks preceding or following the highly generalized alleged substance of such statements. (Id.)

## B.    Some Plaintiffs Raise The Issue Of Whether They Are Employees Rather Than Independent Contractors

Notwithstanding Mr. Welsh's alleged statements, the AC alleges that the DPAs were sufficiently knowledgeable of their claims to enable them, "[i]n early 2006, . . . to question the legitimacy of the NFL's position that the DPAs were independent contractors and not employees." (AC ¶ 136.) The AC alleges that Plaintiff Thomas Lavin "[i]n early 2006 . . . filed an IRS Form SS-8 asking the Internal Revenue Service to issue a ruling as to the correct employment status of a DPA." (Id.) Also, in February of 2006, "Robert J. Costello of Levy, Tolman & Costello LLP, counsel for two former [Inactive] DPAs, Peter Pallatroni and Thomas Taylor, wrote to the NFLMC arguing that they were employees and not independent contractors." (AC ¶ 138.) Mr. Costello's letter confirms it to have been submitted on behalf of – and only on behalf of – these two Inactive DPAs, Messrs. Pallatroni and Taylor. (Berke Dec. Ex.

15

1.) Indeed, Mr. Costello emphasized in the letter that "[w]e are aware that we can request the IRS make [a] determination [of the employment status of Mr. Pallatroni and Mr. Taylor] by submitting IRS Form SS-8, but we will only do that if we cannot reach an amicable resolution with you," providing them with pension and welfare benefits. (Id.) Then in March 2006, it is alleged that another Plaintiff Inactive DPA, "James Clark, filed Form SS-8s with the IRS" seeking a determination that he was an employee and not an independent contractor. (AC ¶ 138.) Thereafter, according to the AC, on unidentified dates, "numerous" unidentified Plaintiff DPAs also filed Form SS-8s. (AC ¶ 139.) Notably, there are no allegations in the AC specifying why Plaintiffs could not have made these filings long before 2006 and the expiration of the limitations period for their claims.

## C.   The Mischaracterized IRS Proceedings

The AC also alleges that the IRS, after conducting its own investigation, which included inquiries of the NFL and of one DPA, Thomas Lavin, issued a determination, on February 27, 2007, that Mr. Lavin was a common law employee of the NFLMC. (AC ¶ 136.) It is further alleged that "[i]n or about June 2007, the IRS rejected the NFL's and NFLMC's de facto appeal from the February 27, 2007 ruling by refusing to issue a Technical Advice Memorandum," (a "TAM"). (AC ¶ 136.) The text of the alleged June letter, actually dated May 31, 2007, establishes that it is not a "rejection" of the NFLMC's position on the independent contractor issue, and it did not uphold or affirm in any way the IRS determination relating to Mr. Lavin, or any other determination relating to any other DPA. (Berke Dec. Ex. 7.) Rather, the IRS SS-8 unit stated that it did not any longer have jurisdiction over the matter and that issuance of a TAM would "not [be] the best format for rendering the legal advice requested," a clear indication that the factual record before the IRS had not been fully developed. (Id.)

16

**D.    The October 5, 2006 Decision To Outsource The Specimen Collection Function Followed By The Bidding Process Resulting In The Selection Of CDT**

As alleged in the AC, "[o]n October 5, 2006, the NFLMC announced in a memo to DPAs that by November 2006, it would no longer use DPAs in the drug testing program and, instead, would be using another, unspecified company to carry out the DPA functions for the NFL drug testing program." (AC ¶ 183.) At that time, the NFLMC also conveyed its understanding to the DPAs that "they would be considered for employment by the new company" which "would be contacting the DPAs to discuss their interest in joining the company." (Id.) The AC alleges that the November 2006 termination date was subsequently amended to an unspecified date after the end of the NFL season, and that the date ultimately selected was April 30, 2007. (Id.) Between October 2006 and April 2007, the AC alleges that a "bidding" process for the specimen collection contract was conducted, culminating in the selection of CDT, which began collection activities after April 30, 2007. (AC ¶ 188.)

**E.    The Mischaracterized March 15, 2007 Letter Requesting SPDs And Other Plan Documents**

According to the AC, "[o]n March 15, 2007, a request was sent on behalf of the **plaintiffs** to Dennis Curran, General Counsel of the NFL Management Council, as Plan Administrator for the NFL and NFLMC, seeking, among other things, copies of the latest updated summary plan descriptions and copies of the instruments under which each Pension and Welfare Plan is established or operated." (AC ¶ 251 (emphasis added).) However, in the text of the letter, (hereinafter the "Pallatroni Letter"), one of Plaintiffs' counsel states that she is co-counsel, for one – and only one – client, "Peter Pallatroni, who formerly served as a drug program agent of the NFL." (Berke Dec. Ex. 2.) Ms. Carty writes that she and her co-counsel "request, on behalf of our **client**, a copy of the latest updated summary plan description for any benefit or welfare

17

plan applicable to <u>National Football League employees</u> from 1988 to 2006, these being the years in which <u>Mr. Pallatroni</u> acted as a drug program agent of the NFL." (<u>Id.</u> (emphasis added).) Thus, while the AC characterizes the Pallatroni Letter as a request by all Plaintiffs, it was in fact a request on behalf of Mr. Pallatroni only as an alleged employee of the NFL.[11]

Further, according to the AC, "some documents were received in response to the [Pallatroni Letter] request within 30 days." (AC ¶ 252.) Here, the AC refers to the letter of Charles V. Stewart, Esq., dated April 13, 2007 which timely furnished the SPDs and other plan documents determined by Mr. Stewart to be responsive to the Pallatroni Letter. (Berke Dec. Ex. 3.) The AC alleges that Mr. Stewart's "production was incomplete, and may still be incomplete," but fails to specifically identify any further documents requested by the March 15, 2007 Pallatroni Letter which were not produced through Mr. Stewart's April 13, 2007 response. (AC ¶ 252.)

Nevertheless, the AC alleges that the production in response to the Pallatroni Letter, was not complete "until December 18, 2007, more than eight months after the responses were due." (AC ¶ 254.) What the pleading ignores, is the fact that the production of documents made on December 18, 2007 by the Benefit Committee, responded to a wholly new letter request for plan documents, dated December 7, 2007, which Ms. Carty submitted on behalf of 90 DPA Plaintiffs (including Mr. Pallatroni), who by then had become the clients of Plaintiffs' counsel. (Berke Dec. Exs. 14-15.) Moreover, the Benefit Committee's document production of December 18, 2007, was not only timely, it was within 11 days, rather than within the normal period of 30 days, of the new December 7, 2007 request for documents. (<u>Id.</u>)

---

[11] The Pallatroni Letter requesting certain plan documents related to NFL employees is of doubtful legal significance because Plaintiffs counsel has essentially stipulated that Mr. Pallatroni and all Plaintiffs are not claiming that they were employees of the NFL, but rather only of the NFLMC. (<u>See</u> footnote 6 <u>supra</u>; Berke Dec. Ex. 17.)

18

The AC does not allege that the December 18, 2007 production was incomplete in any manner, much less does the pleading identify any document requested which was not, by then, produced. Nevertheless, even in light of the December 18, 2007 production, the AC somehow makes the ambiguous allegation that "[t]he production requested on March 15, 2007 may still be incomplete." (AC ¶ 254.)

F.   **The Alleged Filing Of "Claims For Benefits" And The Amended Complaint's Attempt To Ignore The Benefit Committee's Administrative Determinations Of Plaintiffs' Ineligibility For Benefits Under The Various Plans**

The AC alleges that "[o]n April 25, May [1]6, May 25, June 4 and June 11, 2007 (as well as subsequently), counsel for plaintiffs filed valid benefit claims with" the plan administrator "of the NFL Pension Plan on behalf of all plaintiffs under the Pension Plans and the Flex Plan." (AC ¶ 200 (emphasis added).) It is further alleged that "[t]he NFL and NFLMC, through counsel, responded to plaintiffs' application for benefits on June 6, 2007 with, in essence, a set of interrogatories . . . demonstrating, to a certainty, that the NFL and NFLMC [had] not abandoned their challenge to the employee status of the plaintiffs." (AC ¶ 202.)

However, the text of each of the referenced April 25 through June 11 letters demonstrates that they do not refer to the "filing" of any "claim" for benefits, but state instead that counsel is "requesting that each of [their] clients be given benefits, both prospectively and retroactively . . . " under the plans.[12] (Berke Dec. Exs. 4-6, 8-12.) The June 6, 2007 letter confirms that Ms. Carty's alleged claim letters were, in actuality, requests for a determination of eligibility, preliminary to the submission of claims for benefits, and that there was no improper

---

[12] These letters further reveal that the alleged "claim" letters were submitted, in rolling fashion, on behalf of 90 of the Plaintiffs named in the letters, rather than "on behalf of all [93] of the Plaintiffs," as alleged in the AC. (AC ¶ 200; (Berke Dec. Ex. 4-6, 8-10.)

attempt to impose interrogatories upon Plaintiffs. (Berke Dec. Ex. 9; AC ¶ 202.) In the June 6

letter, Lawrence Lamade, Esq. states:

> Even though you state you are requesting "benefits" on behalf of your clients, we
> believe at this time you are instead requesting a determination that your clients are
> eligible for benefits. Applying for a benefit under the Flex Plan, for example,
> requires submitting a request that a named participant be reimbursed for a specific
> covered expense, and no such specific claim was submitted....Please ask that each
> of your clients complete for each plan, a short "Request for Eligibility
> Determination" form, a copy of which is enclosed.

(Id..) Importantly, by letter of June 27, 2007, Ms. Carty replied to Mr. Lamade, stating:

> You are correct that our clients seek a determination from the Plans that they are
> eligible for benefits under each Plan. In determining eligibility of our clients, first,
> their status as employees must be confirmed and, thereafter, their individual
> qualifications must be considered... Please confirm that the NFLMC continues to
> maintain that our 90 DPA clients were not employees of the NFLMC. Please also
> confirm that the Plan fiduciaries will not treat the DPAs as employees. If the
> NFLMC and the Plan fiduciaries agree that the DPAs are or were employees of
> the NFLMC, we will arrange for responses to the questionnaires enclosed with
> your letter.

(Berke Dec. Ex. 9.)

The AC further alleges that beyond the filing of the above "claim" letters, there were no

further administrative proceedings, which would have been "futile" to pursue. (AC ¶ 199, 201.)

However, there were further substantial administrative proceedings before the Benefit

Committee as the plan administrator for all of the relevant pension and welfare plans. (Berke

Dec. Exs. 13, 16, 18.) Pursuant to these proceedings and after affording Plaintiffs the

opportunity to submit any additional information (which was declined), the plan administrator

issued fully reasoned initial decisions, in writing, dated November 21, 2007 and December 21,

2007. (Id.) These determinations reserved decision on the issue of employee versus independent

contractor because of the time and expense of making that determination, and elected to first

consider the eligibility requirements of each plan, which any employee would need to meet, to be

eligible for benefits. (Id.) Ultimately, the decisions held that the DPAs did not meet the

eligibility requirements, which made a determination of whether they were employees unnecessary. (Id.) Those decisions were appealed and, after due consideration by the Benefit Committee, were affirmed on the same grounds of the DPAs failure to meet the plans' eligibility requirements, without waiving or determining the issue of whether the DPAs were employees. (Berke Dec. Ex. 18.)

Nevertheless, the AC, which was filed after the two initial ineligibility decisions were rendered and furnished to Plaintiffs, makes no allegation regarding the decisions of the Benefit Committee or that any of the Plaintiffs met these eligibility requirements, and proceeds as though there are no such requirements and there were no such administrative decisions.

## G.    The Absence Of Factual Grounds Supporting Alleged ERISA Retaliation

Other than Plaintiffs Pallatroni and Taylor, neither of whom are Active DPAs, the AC does not identify any other Plaintiff who arguably asserted rights under ERISA prior to the October 5, 2006 notification to DPAs of the NFLMC's decision to contract with an outside company to perform the specimen collection function. (AC ¶¶ 138, 183.)  The AC identifies Plaintiffs Lavin and Clark as filers of Form SS-8 proceedings with the IRS in February and March 2006, but neither were represented by Mr. Costello when he wrote to the NFLMC in February 2006 allegedly asserting ERISA rights of his clients Plaintiffs Pallatroni and Taylor. (AC ¶ 138.)  According to the AC, "numerous Plaintiff DPAs have [also] filed Form SS-8s," but the pleadings do not identify any such Plaintiffs, or who among such Plaintiffs, if anyone, was an Active DPA, or the date of any such filings, or that any of the NFL Defendants were aware of such filing, or when such awareness was acquired.  (AC ¶ 139.)

Similarly, the AC alleges that "the NFL and NFLMC has directed that a list be made of those DPAs who have sought legal counsel concerning the employment ramifications of their misclassification as 'independent contractors.'"  (AC ¶ 237.)  Again, the pleadings do not identify

21

when the alleged direction to prepare the purported list was given, whether and when the list was actually prepared, which, if any, Active DPAs were seeking or had retained counsel at these unspecified times, or which such Plaintiffs, if any, were known to the NFL or NFLMC, how they became known, and whether their names were or were not on the purported list. (Id.)

Nevertheless, the AC alleges that the NFLMC's decision to contract with an outside company, conveyed October 5, 2006, retaliated against Active DPAs for "attempted and proposed enforcement of ERISA rights." (AC ¶ 239.)

Additionally, it is alleged that subsequent to April 30, 2007, when Defendant CDT took over the specimen collection function of the Drug Program, Active DPAs Paul Kostyo and Nicholas DiFalco, as well as William Logay, applied to CDT to become specimen collectors and were initially encouraged by CDT that they would be retained for that position. (AC ¶¶ 190-91.) Other than these three Plaintiffs, no other Active DPA is specifically alleged to have applied for a position at CDT. Rather, the remaining Active DPAs are ambiguously alleged to have "applied to become collectors for CDT or sent an email to CDT indicating a desire to apply to become a collector," although no such applications or emails are quoted in or attached to the pleadings; nor is the date of any such application or email alleged. (AC ¶ 189.) However, again, at some unspecified time, "some" unidentified Plaintiffs were informed by CDT that they were not going to be hired until the IRS ruling regarding the DPAs status as employees of the NFL was 'resolved.'" (AC ¶¶ 190, 192.) There is no way of determining from the pleadings which, if any, alleged "application" or "email indicating a desire" was transmitted before or after the alleged statements by CDT that it would not retain the DPAs. (AC ¶ 192.)

The AC concludes that the NFL and NFLMC "instruct[ed] CDT not to hire any DPA until resolution of the IRS status issue," but no grounds are provided as the basis for this

22

conclusory allegation, and nothing in the AC supports the conclusion, that the alleged decision by CDT, if any, relating to DPAs, was not made and implemented independently by CDT. (AC ¶ 239.)

### H. The Absence Of Factual Grounds To Support Conclusory Allegations Of Age Discrimination

The AC alleges that "[i]n or about January, 2006, at the semi-annual DPA Conference, Mary Ann Fleming, Coordinator of Player Benefits of the NFLMC," made a stray remark to one Active "DPA Paul Herring[,] that the NFLMC was worried about the ages of the DPAs." (AC ¶ 180.)

It is further alleged that "[a]t the next semi-annual DPA Conference in June 2006, Valerie Cross, Director of Player Benefits for the NFL Management Council, made statements that confirm the connection between the DPAs' ages and their retention." (AC ¶ 181.) Specifically, the alleged statement by Ms. Cross was that the "'NFL has a big problem' since 'a couple' of DPAs had asked the IRS to rule that DPAs are NFL employees," which has nothing to do with age. (Id.)

On another unidentified occasion, under unidentified circumstances except that it is said to have occurred during a discussion of "the DPAs' belief that they are employees," it is alleged that Ms. Fleming told an unidentified DPA: "'you guys [the DPAs] will be dead and buried before this is resolved.'" (AC ¶ 180.) There is no connection to age in this common colloquialism.

Yet the AC alleges these statements to be "blatantly discriminatory comments," made to "the Active DPAs," (even though only one of the statements was made to only one of the Active DPAs, Mr. Herring), which are the only supposed grounds for the AC's conclusion that, "at various times during 2006, the NFL and NFLMC expressed concerns over the ages of the

23

DPAs...set upon a plan to...acquir[e] younger DPAs," and by October 5, 2006, decided to contract with an outside company to perform the specimen collection function, which was "age discrimination." (AC ¶¶ 173, 263 (emphasis added).)

During the 2007 transition of the specimen collection function to CDT, it is further alleged that Kim Jasper, President of CDT, spoke by telephone with former DPA James Bowers and, in reviewing each DPA, asked Mr. Bowers about the investigative background, age, involvement with counsel and the IRS in seeking ERISA benefits, and work habits. (AC ¶ 185.) Based on this conversation, and on the allegation that one Active DPA, Mr. Logay, allegedly told CDT that he had "grandchildren," the AC concludes that CDT decided not to hire any former DPA, and that CDT has been "recruiting and hiring younger collectors with the identical profile to DPAs – seasoned law enforcement officers – to replace the NFL and/or NFLMC DPAs." (AC ¶¶ 178, 191.) The AC makes absolutely no allegation that any of the NFL Defendants had anything to do with these events. (AC ¶¶ 257-65.)

## APPLICABLE STANDARDS

On the instant Fed. R. Civ. P. 12(b)(6) motion to dismiss, this Court, in determining if the pleading states a claim upon which relief can be granted, is to apply the standard set forth by FRCP 8(a)(2), as construed by the Supreme Court in Twombly:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests,"....While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations....a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"...Factual allegations must be enough to raise a right to relief above the speculative level..."[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" on the assumption that all the allegations in the complaint are true (even if doubtful in fact...

24

127 S. Ct. at 1964-65 (citations omitted).  As further emphasized in <u>Twombly</u>:

> Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests....Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it"…

127 S. Ct. at 1965, n.3 (citation omitted).

While <u>Twombly</u> involved pleadings under the federal antitrust laws, the Second Circuit has applied the decision to dismissal under Rule 12(b)(6) of age discrimination and retaliation claims as well as other areas of substantive law.  See <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229 (2d Cir. 2007) (ADEA, New York State and City discrimination and retaliation); <u>Benzman v. Whitman</u>, 523 F.3d 119 (2d Cir. 2008) (environmental whistleblower protection); <u>Boykin v. KeyCorp</u>, 521 F.3d 202 (2d Cir. 2008) (Fair Housing Act discrimination); <u>Goldstein v. Pataki</u>, 516 F.3d 50 (2d Cir. 2008) (eminent domain); <u>Iqbal v. Hasty</u>, 490 F.3d 143 (2d Cir. 2007) (qualified immunity defense); <u>ATSI Communications, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87 (2d Cir. 2007) (securities fraud); <u>Roth v. Jennings</u>, 489 F.3d 499 (2d Cir. 2007) (securities).  Various courts have likewise applied <u>Twombly</u> in an ERISA context.  See, e.g., <u>Halaris v. Viacom, Inc.</u>, Civ. Act. No. 3:06CV1646N; 2007 WL 4145405 (N.D. Tex. Sept. 21, 2007) (breach of fiduciary duty claim); <u>Jensen v. AT&T Corp.</u>, No. 406-CV-842 CEJ, 2007 WL 2199714 (E.D. Mo. July 27, 2007) (same).

Thus, under <u>Twombly</u>, dismissal is warranted where, as here, a pleading is utterly lacking in the "'[factual] amplification'" which "'is needed to render [these] claim[s] plausible.'" <u>Ross v. Bank of America, N.A. (USA)</u>, 524 F.3d 217, 225 (2d Cir. 2008), quoting <u>Iqbal</u>, 490 F.3d at 158.

See also Boykin, 521 F.3d at 213-14 (Twombly "require[s] a flexible 'plausibility standard,' which obliges a pleader to amplify" the factual grounds of a claim to achieve plausibility).[13]

Also, of particular applicability to the instant motion, the Second Circuit has made clear that on an Fed. R. Civ. P. 12(b)(6) motion, while "the district court is normally required to look only to the allegations on the face of the complaint," where appropriate, "the court may permissibly consider documents other than the complaint." Roth, 489 F.3d at 509. For purposes of this rule, "'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citations omitted.) "[E]ven if not attached or incorporated by reference, a document 'upon which [the complaint] solely relies and which is integral to the complaint' may be considered by the court in ruling on such a motion." Roth, 489 F.3d at 509. (citation omitted). See Rozsa v. May Davis Group, Inc., 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002) (integral documents also include those "'plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'") (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).

Therefore, whereas in the instant case, the pleading "alleges that such a document made a particular representation, the court may properly look at the document to see whether that representation was made." Id. Moreover, when the pleading mischaracterizes or misrepresents the contents of a document referred to therein, as is the repeated practice of the AC, "the documents control, and the Court need not accept the allegations contained within the complaint as true." Rozsa, 187 F. Supp. 2d at 128-29 citing DeJesus-Keolamphu v. Village of Pelham

---

[13] Significantly, the decision in Boykin, 521 F.3d at 213-14 applied the notion of "flexible plausibility" to "inartfully pleaded" claims because the court was "mindful of [its] duty to construe more liberally [plaintiff Boykin's] pro se complaint." These "less stringent standards" do not apply in the instant case, where the Court is evaluating "formal pleadings drafted by lawyers." Id.

26

Manor, 999 F. Supp. 556, 563 (S.D.N.Y.1998) (quoting Sazerac Co., Inc. v. Falk, 861 F. Supp.

253, 257 (1994)), aff'd, 166 F.3d 1199 (2d Cir. 1998).)  Accord Sobek v. Quattrochi, No. 03 Civ.

10219(RWS), 2004 WL 2809989, at *2 (S.D.N.Y. Dec. 8, 2004) ("to the extent any allegations

directly contradict evidence contained in the documents relied upon by a plaintiff, the documents

control").

## ARGUMENT

### POINT I

#### The First Claim And Second Claims Should Be Dismissed For Pleading Deficiencies, For Seeking Unauthorized Remedies, And As Time Barred

Both the First Claim for pension benefits and the Second Claim for welfare benefits are

brought on behalf of all 93 Plaintiffs, which includes all 59 Active DPAs and 34 Inactive DPAs.

(AC ¶¶ 101,102, 206-12, 213-18.)  Both claims are brought against the NFL and NFLMC, but

the First Claim also names the "Pension Plans" as defined in the AC, and the Second Claim also

names the NFL Flex.  The First and Second Claims are both alleged to be brought pursuant to 29

U.S.C. § 1132 (ERISA Section 502).  (AC ¶¶ 212, 218.)  Presumably, although not designated in

the AC, Plaintiffs are bringing both of these claims under 29 U.S.C. § 1132(a)(1)(B) as alleged

"participant[s]….to recover benefits [allegedly] due" to each of them "under the terms of his

plan." See 29 U.S.C. § 1132(a)(1)(B).

#### A.    The First And Second Claims Should Be Dismissed For All Plaintiffs Because They Fail To Plead Eligibility For Benefits Under The Specific Plans At Issue

Plaintiffs have failed to plead either adequate or accurate "notice" of their claims for

benefits or the factual "grounds upon which [such claims] rest[]." Twombly, 127 S. Ct. at 1964.

Nor have they pleaded a "claim" of eligibility for benefits upon which this Court could award

them such relief.  See Fed. R. Civ. P. 12(b)(6).  According to the AC, "[a]s 'employees,' plaintiffs

should have been and were eligible to participate in all of the employee pension benefit plans sponsored by the NFL and NFLMC," and "in all of the employee welfare benefit plans…including but not limited to group medical, dental, disability and accident insurance." (AC ¶¶ 209, 215.) But these allegations, leave out, entirely, any pleading as to whether each of these Plaintiffs, even if they were to be considered an employee, was the type of employee eligible to receive benefits under the terms of each of the plans at issue.

The gravamen of Plaintiffs' claim is that the DPAs were employees of the NFL or the NFLMC and not independent contractors. (AC ¶¶ 207, 215.) As employees, the AC claims the DPAs were entitled to pension and welfare benefits under the various plans. (Id.) The AC further alleges that the Benefit Committee failed to make a timely decision as to the employment status of the DPAs and that any further efforts before the plan administrator would be "futile." (AC ¶¶ 201-04.)

The AC relies upon the pension and welfare plans to support these claims by Plaintiffs and invokes the plans' administrative procedures to justify initiation of this lawsuit and assertion of Plaintiffs' claims for benefits. This Court may therefore consider the terms of the plans at issue as well as the administrative record in deciding this motion to dismiss. (See Applicable Standards, supra, 24-25.) These documents include the decisions of the Benefit Committee which are not pled or acknowledged in the AC. (Berke Dec. Exs. 13, 16, 18.)

However, the Benefit Committee expressly found that 90 Plaintiffs were not eligible under the different plans, even assuming arguendo that Plaintiffs were employees of the NFL or the NFLMC. The Benefit Committee expressly found that the DPAs were not entitled to pension or welfare benefits because they did not meet several different eligibility requirements of each plan. (Id.) The AC does not challenge these determinations of ineligibility by the Benefit

28

Committee; nor does it plead any Plaintiffs' eligibility under the various eligibility requirements of the plans. The result is that the AC neither states a claim for benefits nor provides notice to the NFL Defendants or the Court of which, if any, of these issues of ineligibility are in dispute in this lawsuit.

Such pleading failures are fatal to an ERISA claim for benefits. Section 502 (a)(1)(B) of ERISA requires a claim for benefits to be made "under the terms of [the applicable] plan[s]." 29 U.S.C. § 1132(a)(1)(B). The Second Circuit has similarly recognized that an ERISA plan is a contract, that plaintiffs seeking benefits are "bound by the terms of their contract," and there is no liability for benefits where the plan "does not obligate [defendants] contractually…to pay for" them. Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 629-30 (2d Cir. 2008). Indeed, as the Second Circuit has recognized under Section 502 of ERISA, unless a plaintiff "is or may become eligible to receive a benefit" under the plans, he or she lacks standing to sue as a "participant" under that section. Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 101 (2d Cir. 2005). Therefore, Plaintiffs failure to plead that they meet the eligibility requirements of each of the plans not only destroys their claim for failure to sufficiently plead entitlement to benefits, but also constitutes a failure to plead allegations demonstrating standing to sue for benefits.

Plaintiffs' failures to fulfill Twombly's requirements to plead notice and standing to assert grounds for their benefits claims impermissibly place before the Court the suggestion that only one issue, that of the DPA's employment status, controls entitlement to benefits under the First and Second Claims. Indeed, the AC hides the Benefit Committee's decision that the DPAs were not eligible employees under each plan even though the AC specifically refers to a "letter dated November 21, 2007 from Douglas O'Connell." (AC ¶ 253.) That letter is the Benefit Committee's first decision determining the ineligibility of most of the DPAs under the NFL and

NFLMC pension and welfare plans. (Berke Dec. Ex. 13.) In a further obfuscation the AC alleges that after invoking the plan administrative remedies, the Plaintiffs abandoned them as "futile." (AC ¶¶ 199, 201, 204.) These allegations were made in the Complaint filed on December 28, 2007, when Plaintiffs already had in their hands the Benefit Committee's November 21 and December 21, 2007 decisions, which denied benefits based on the assumption that the DPAs were NFLMC employees. (Berke Dec. Ex. 13, 16.)

As a matter of law, even Plaintiffs' irrelevant allegations of futility and untimeliness are inadequately and invalidly pleaded. The allegation of untimeliness by the Benefit Committee is conclusory, not based on any pleaded factual ground as required by Twombly, and is contradicted by Plaintiffs' counsels' letter date June 27, 2007 (see discussion supra at Statement of Facts, Section F). That claim is further barred by the Second Circuit's recent decision in Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 631 (2d Cir. 2008) (amended regulations have replaced the "deemed denied" provision). That decision effectively renders Plaintiffs' allegations of untimely decision by the Benefit Committee in paragraph 204 of the AC unsupportable as a matter of law.

Similarly, the futility allegations, which are completely contradicted by the Benefit Committee decisions, flaunt the Twombly "notice" and "grounds" pleadings standard. See, e.g., Sobek, 2004 WL 2809989 at *2 (documents integral to the complaint are "control[ling]" when they "directly contradict" allegations). This is especially the case because the "threshold required by the futility exception" for avoiding the requirement to exhaust administrative remedies "is very high," and predictions of what a plan administrator's ultimate decision will be, even if based on "informal representations of the view of a committee[,] are not a sufficient basis for claiming futility." Barnett v. Int'l Bus. Mach. Corp., 885 F. Supp 581, 589 (S.D.N.Y. 1995); see also

Greifenberger v. Hartford Life Ins. Co., 131 F. App'x 756, 759 (2d. Cir 2005) (blanket allegations of an "initial unreasonable denial of [a] benefits claim...are insufficient to establish futility.")

Most importantly, however, is that these allegations of "futil[ity]" and failure of the Benefit Committee to take "action...within the time frame permitted under ERISA and its implementing regulations," do not authorize Plaintiffs to dispense with pleading their qualifications under each plan's various eligibility requirements in order to state a claim for benefits; nor do they excuse noncompliance with Twombly's requirements that the AC must provide notice to the defendants of those issues of eligibility, if any, which will need to be defended in this action. (AC ¶ 204.) Futility and untimeliness, at most, are relevant only to the issue of whether Plaintiffs exhausted their administrative remedies before commencing this lawsuit. Those matters have no bearing on establishing Plaintiffs eligibility for benefits under the NFL and NFLMC's pension and welfare benefit plans. See Krauss, 517 F.3d at 629-30 (a fiduciary's failure to meet regulatory time frames exhausts administrative remedies but leaves open the issue of the degree of deference to be given to the plan administrator's determinations denying benefits); Cook v. New York Times Co. Long-Term Disability Plan, No. 02 Civ. 9154 (GEL), 2004 WL 203111, at *19 (S.D.N.Y. Jan. 30, 2004) ("'[T]he remedy for the fiduciary's failure is not, as plaintiff argues, automatic entry of judgment in favor of the insured.'") quoting George v. First Unum Life Ins. Co., No. 93 Civ. 2916 (KMW), 1995 WL 231254, at *2 (S.D.N.Y. Apr. 18, 1995).

### B.     Plaintiffs' Claims For Damages And Civil Penalties Under Their First And Second Claims For Benefits Should Be Stricken

The AC alleges claims for damages under the First and Second Claims for relief. (AC ¶¶ 212, 218.) However, under Section 502 (a)(1)(B) of ERISA, a plaintiff, by definition, may only

claim "to recover benefits due to him under the terms of his plan." That section authorizes

nothing more and, in particular, contains no authorization to seek damages. Even assuming

arguendo that Plaintiffs would argue that Section 502(a)(3)(B) of ERISA, 29 U.S.C. §

1132(a)(3)(B), also governs their First and Second Claims for benefits, that section authorizes

only "other appropriate equitable relief" which excludes "money damages." See Great-West Life

& Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) ("'[m]oney damages are, of course, the

classic form of legal relief" and are not available under Section 502(a)(3) (citations omitted));

see also Krauss, 517 F.3d at 630 ("In order to state a claim under ERISA, section 502(a)(3),'the

type of relief a plaintiff requests must be… 'equitable'" and "[c]laims for money damages are

therefore not cognizable under [that] section" ) (quoting Coan v. Kaufman, 457 F.3d 250, 264

(2d Cir. 2006) and citing Geosa v. Savasta & Co., 329 F.3d 317, 321 (2d Cir. 2003)); Lee v.

Burkhart, 991 F.2d 1004, 1009 (2d. Cir. 1993) (affirming dismissal of § 502(a)(1)(B) and §

502(a)(3) claims to recover reimbursement of health insurance costs); Zielinski v. Pabst Brewing

Co., Inc., 360 F. Supp. 2d 908, 922-24 (E.D. Wis. 2005) (premiums "paid to obtain replacement

insurance" are not recoverable under ERISA); Green v. AIM Executive, Inc., 897 F. Supp. 342,

347 (N.D. Ohio 1995) (where plaintiffs alleged that employer did not make proper contributions

to profit sharing plan and alleged damages included anticipated tax losses and lost tax-deferred

growth income, court recognized that "tax and growth benefits claimed by plaintiffs are not

benefits required by the terms of the plan" and were therefore not recoverable under § 502(a)(3));

Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 945 (8th Cir. 1999) (where plaintiff did not

claim lost benefits payable under the plan but rather losses allegedly suffered as a consequence

of the plan administrator's failure to timely distribute his accumulated account to him for

32

reinvestment, requested relief was not recoverable as "appropriate equitable relief" under §

502(a)(3)).

Plaintiffs' claims for "civil penalties" under the AC's First and Second Claims for benefits

(AC ¶¶ 212, 218), should also be stricken. Section 502(a)(1)(A), provides extremely limited

standing for a participant to seek civil money penalties for certain violations of 502(c) pertaining

to refusal to supply information only, not to a failure to provide benefits, as alleged under the

First and Second Claims.

## C.    The First And Second Claims For Benefits By All But 14 Plaintiffs Should Be Dismissed Because They Are Barred By The Applicable Statute Of Limitations

The statute of limitations applicable to the First and Second Claims is six years. See

Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir. 2007) (determining applicable statute for ERISA

benefit claims). Since the AC admits that each of the Plaintiffs knew he was retained as an

independent contractor on the date of his retention, 79 of the Plaintiffs have asserted claims that

are time barred. These 79 Plaintiffs all worked as DPAs with the necessary knowledge to have

asserted claims for benefits under ERISA prior to December 28, 2001, more than six years

before the Complaint was filed in this action on December 28, 2007. (Berke Dec. Exs. 19-20.)

Only the 14 Plaintiffs retained as DPAs subsequent to December 28, 2001 have timely claims.

(Berke Dec. Ex. 21.)

Section 502 of ERISA has no statute of limitations for benefit claims. However, the

courts have applied "the most applicable state limitations statute: the six-year limitations period

prescribed by N.Y. C.P.L.R. § 213" for breach of contract. Gardner, 480 F.3d at 148. In

applying this New York State statute "[i]n a federal question case," as presented here, "the

court…looks to federal common law to determine the time at which the plaintiff's federal claim

accrues." Id. at 149. Where, as under the AC, the allegations are that Plaintiffs have been

33

misclassified as independent contractors and thereby denied plan benefits, an "ERISA cause of action accrues 'upon a clear repudiation by the plan that is known, or should be known, to the plaintiff-regardless of whether the plaintiff has filed a formal application for benefits.'" Brennan v. Metropolitan Life Ins. Co., 275 F. Supp. 2d 406, 409 (S.D.N.Y. 2003) (quoting Carey v. Int'll Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 49 (2d Cir. 1999)).

In Metropolitan Life Insurance Co., 275 F. Supp. 2d at 409 (S.D.N.Y. 2003), plaintiffs had "worked for MetLife in the 1980s and 1990s in freelance capacities," under written contracts designating them as independent contractors ineligible for pension or welfare plan benefits under the company's existing plans. In granting MetLife's motion to dismiss the entirety of plaintiffs' claims for ERISA benefits under the applicable New York six-year statute of limitations, Judge Scheindlin held that the plaintiffs' claims accrued immediately upon retention by MetLife because "it [was] undisputed that all of the plaintiffs knew from their first day of work that they were working as freelancers and would not be entitled to benefits." Id. at 410.

Judge Scheindlin further noted "all of the district courts that have considered claims made by individuals who were classified or treated as independent contractors have held that the statute of limitations begins to run when the beneficiary first learns that she is considered an independent contractor and is therefore not entitled to benefits, regardless of whether she later files a formal claim for benefits." 275 F. Supp. 2d at 409-10 (emphasis added) ((collecting cases); see Schultz v. Texaco Inc., 127 F. Supp. 2d 443, 448 (S.D.N.Y. 2001) (plaintiffs' claims accrued because they knew or should have known that they were being reclassified as independent contractors and that their benefits were being repudiated); Ambris v. Bank of New York, No. 96 Civ. 0061 LAP, 1998 WL 702289, at *3-5 (S.D.N.Y., Oct. 7, 1998) (plaintiff's cause of action accrued about six months after she began work because she understood then that

34

she was considered a part-time employee ineligible for benefits); <u>Berry v. Allstate Ins. Co.</u>, 252

F. Supp. 2d 336, 343 (E.D. Tex. 2003), <u>aff'd</u>, 84 F. App'x 442 (5th Cir. 2004) ("the date of

accrual would be at or near the date [plaintiffs] were hired [when] they were informed…they

would not be able to participate in [defendant's] benefit plans"); <u>Kryzer v. BMC Profit Sharing</u>

<u>Plan</u>, No. 01 Civ 299, 2001 WL 1587177, at *4 (D. Minn. Nov. 1, 2001) (plaintiff knew, or

should have known, upon signing independent contractor agreement that he would not receive

benefits); <u>Bolduc v. Nat'l Semiconductor Corp.</u>, 35 F. Supp. 2d 106, 119-20 (D. Me. 1998)

(plaintiff's claim for benefits accrued when he was first hired because he knew, at that point,

"that he was being hired as an independent contractor and that, by virtue of this status, he would

not receive employment benefits"); <u>Kienle v. Hunter Eng'g Co.</u>, 24 F. Supp. 2d 1004, 1006-07

(E.D. Mo. 1998) (plaintiff's claims accrued "when he signed the agreement clearly informing

him that he would be considered an independent contractor and not an employee"). <u>Cf.</u> <u>Nahoun</u>

<u>v. Employees' Pension Plan of Credit Suisse First Boston</u>, No. 04 Civ. 9221 (LAK), 2005 WL

1476453 (S.D.N.Y. June 22, 2005) (not an alleged misclassification case).

     These cases exactly fit the circumstance alleged in the AC with respect to 79 of the

Plaintiffs in this case. (Berke Dec. Ex. 19-20.)  While there was no written contract signed by

the DPAs, none is required to trigger the statute of limitations under the "knew or should have

known" standard articulated by the Second Circuit. <u>Metropolitan Life Ins. Co.</u>, 275 F. Supp. 2d

at quoting <u>Carey</u>, 201 F.3d at 49.  In <u>Downes v. JP Morgan Chase & Co.</u>, No. 03 Civ.

8991(GEL), 2004 WL 1277991, at *4 (S.D.N.Y. June 8, 2004), Judge Lynch rejected the

independent contractor plaintiff's contention that discovery was needed before the court could

infer on a motion to dismiss that "J.P. Morgan had not been providing her employee benefits."

As Judge Lynch observed, plaintiff's classification as an independent contractor "trigger[ed] the

statute of limitations" because "[i]t blinks reality to assert that Downes remained unaware [of the]

consequences-that she did not receive employee benefits-[which] would have soon, if not

immediately, been apparent." Id. Similarly, as the court observed in Sturgis v. Mattel, Inc., 525

F. Supp. 2d 695, 703-04 (D. N.J. Nov. 29, 2007):

> This Court agrees that Plaintiff was on notice since 1997 that she
> was not eligible for benefits. Therefore, her claim accrued at that
> time. A reasonable adult worker, such as Plaintiff, knows or
> should know that when employment taxes are not deducted and
> benefits are not offered, a business does not consider that worker
> to be an employee eligible for benefits under its plans. There is no
> argument that Plaintiff lacked the sophistication or employment
> experience necessary to understand that such deductions are
> normally taken from the paychecks of employees but not from the
> pay of independent contractors. A reasonable worker would
> recognize with each paycheck that she was receiving her gross
> compensation with no deductions, beginning with her first paydays
> in 1997. No reasonable person could fail to notice that she was not
> being paid as an employee and that she was not contributing to any
> benefit funds. Accordingly, Plaintiff's claims for PIP and Health
> and Welfare Benefits accrued in 1997 and this action, filed more
> than six years later, is not timely.

These applications of the "should have known standard" are particularly applicable in the

instant case, where the Plaintiffs are largely composed of retired former federal criminal

enforcement agents from agencies such as the FBI, IRS and DEA. (AC ¶¶ 8-100.) It "blinks

reality" that Plaintiffs did not question their status as independent contractors long before those

who filed SS-8 proceedings with the IRS in February 2006. (AC ¶¶ 136-138.) Indeed, the AC

fails to allege any facts that would indicate any reason any of the DPAs could not have filed such

SS-8s or claims for benefits with the plan administrator, and if necessary, court proceedings

within the six-year limitations period following their retention as DPAs.

The AC itself establishes that Plaintiffs had actual knowledge of their claims. Thus, the

AC admits that at all pertinent times, all Plaintiffs knew they were being classified as

36

independent contractors (AC ¶ 160), rather than "NFL and/or NFLMC 'employees'" and that Plaintiffs "believ[ed]...therefore, [that they were] not entitled to employee pension benefits" and "not entitled to employee welfare benefits." (AC ¶¶ 208, 214.) Taking these allegations as true, they amount to an admission that the claims of 79 of the DPAs are time barred.

The AC makes no allegation that the statute of limitations for these claims should be tolled for any reason, and clearly no tolling argument could apply to permit the 79 barred Plaintiffs here to maintain their First and Second Claims for pension and welfare benefits. The AC's allegation that Plaintiffs were misled because the NFL and/or NFLMC treated them as independent contractors or Mr. Welsh misleadingly told the DPAs they were independent contractors, like he was, is not a concealment or grounds for estoppel but rather further grounds for Plaintiffs to have had knowledge of their claims for benefits. There are no facts pled in the AC to suggest why several of the DPAs filed Form SS-8s in the face of these alleged misrepresentations and other DPAs did not. Accordingly, such allegations as a basis for estoppel should be rejected as a matter of law. See Schultz v. Texaco Inc., 127 F. Supp. 2d 443, 447 (S.D.N.Y. 2001) (rejecting equitable tolling where it was alleged that "mistaken" classification as an independent contractor equated to "concealment of plaintiffs' eligibility for ERISA benefits [which] prevented them from discovering their injury").[14]

---

[14] The Second Circuit's decisions in Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318 (2d Cir. 2004), Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan, 497 F.3d 234 (2d Cir. 2007), and Valdez v. United States, 518 F.3d 173 (2d Cir. 2008) may be read for the proposition that, under special circumstances, equitable estoppel need not necessarily be based on an allegation of fraudulent concealment. Neither this proposition, nor any of the special circumstances considered by these decisions have any application whatsoever to the instant case, where no basis for equitable estoppel through fraud or otherwise has been or could be alleged by these Plaintiffs who knew they were retained as independent contractors and knew they were not receiving any benefits. See Veltri, 393 F.3d at 325 (equitable estoppel imposed due to the special circumstance that a plan administrator's decision rejecting plaintiff's filed claim for benefits "fail[ed] to comply with the regulatory requirement that [it] provide notice to [the] beneficiar[y] of the right to bring an action in court challenging a denial of benefits"); Strom, 497 F.3d at 246 (discussing application of special circumstances to doctrine of equitable estoppel, but ruling on other grounds involving waiver and failure to exhaust administrative remedies); Valdez, 518 F.3d at 183 (in matter under Federal Tort Claim Act, not ERISA, equitable estoppel applied due to "special circumstance" that plaintiff was not notified *(cont'd)*

37

## POINT II

### The Third Claim For Interference With Benefits And The Fourth
### Claims For Retaliation, Should Be Dismissed

Both the Third Claim for interference with benefits and the Fourth Claim for retaliation

are brought on behalf of the 59 Active DPA Plaintiffs only, not on behalf of any of the Inactive

DPA Plaintiffs. (AC ¶¶ 235, 243.) Both the Third and Fourth Claims contend that the NFLMC's

decision to outsource the DPA function, allegedly communicated on October 5, 2006 to the

Active DPAs, but carried out April 30, 2007 (the last day DPAs worked in the Drug Program),

and the alleged subsequent decision by defendant CDT (the outsource contractor) not to retain

any of the DPAs each violated Section 510 of ERISA, and if so, each would be remedial only

under Section 502(a)(3) of ERISA. The Third Claim alleges that these decisions, first by the

NFLMC and then by CDT were each made with the intent to interfere with the ability of the

DPAs to receive or continue qualifying to receive pension and welfare benefits under the NFL's

or NFLMC's sponsored plans. (AC ¶¶ 220, 222, 224.) The Fourth Claim alleges that these same

decisions were each made with the intent to retaliate against "those DPAs who seek to pursue

their rights as employees, including rights they may have under ERISA." (AC ¶ 238.)

These claims should be dismissed because (i) all but 14 of the Active DPAs lack standing

to bring either of these claims, (ii) both claims seek remedies unavailable under ERISA Section

510, (iii) the Third Claim is barred by the statute of limitations, (iv) the Fourth Claim fails to

allege protected activity by Plaintiffs, and (v) the conclusory allegations of conspiracy between

the NFL or the NFLMC and CDT lack the plausibility to justify discovery.

---

*(cont'd from previous page)*
that "physicians…who provide services in private voluntary hospitals and in what appear to be private clinics, are de
jure federal employees" a material fact about which "[p]atients receiving such treatment are not aware").

## A.   The Third And Fourth Claims Should Be Dismissed In Their Entirety Because All Of The Active DPAs Lack Participant Standing To Bring Claims For Interference Or Retaliation Under ERISA Section 510

As demonstrated above, all but 14 of the Active DPAs' First and Second Claims for

benefits are barred by the six-year statute of limitations for contractual claims under New York

law. (Berke Dec. Ex. 21.) Under such circumstances, it follows automatically that all Active

DPAs whose claims are so barred are not "participants" in any of the plans, as that term is

defined under Section 402(7), 29 U.S.C. § 1002(7), and therefore have no standing to assert the

Third Claim for interference or the Fourth Claim for retaliation in violation of Section 510. As

Judge Scheindlin's decision in Metropolitan Life Ins. Co. makes clear:

> The Supreme Court has construed the term "participant" to include former employees with "a colorable claim that [they] will prevail in a suit for benefits," since such individuals "may become eligible" for benefits within the meaning of the statute. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18, 109 S. Ct. 948, 103 L.Ed.2d 80 (1989). It is axiomatic that an individual whose claim for benefits is time-barred does not have a colorable claim for benefits [and has no standing as a participant].

275 F. Supp. 2d 406 at 41 (citations omitted). Consistent with these principles, the Second

Circuit affirmed the summary judgment dismissal of a claim under Section 502(a)(3) providing

the following instructive discussion:

> Section 502(a)(3) of ERISA provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain any other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." See 29 U.S.C. § 1132(a)(3) (2005). The Supreme Court has construed § 502 narrowly to allow only the stated categories of parties to sue for relief directly under ERISA. See Franchise Tax Board v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27, 103 S. Ct. 2841, 77 L.Ed.2d 420 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under [§ 502(a)(3)]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action ...."). The Court has

39

> also held that § 502(a)(3) strictly limits the "universe of plaintiffs
> who may bring certain civil actions." Harris Trust & Sav. Bank v.
> Salomon Smith Barney, Inc., 530 U.S. 238, 247, 120 S. Ct. 2180,
> 147 L.Ed.2d 187 (2000) (emphasis omitted). The Second Circuit
> has, of course, followed on these well-marked paths. See
> Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12,
> 14 (2d Cir. 1991) (stating that § 1132(a) "names only three classes
> of persons who may commence an action," including a participant
> or beneficiary, the Secretary of Labor, and a fiduciary); Pressroom
> Unions-Printers League Income Sec. Fund v. Continental
> Assurance Co., 700 F.2d 889, 892 (2d Cir. 1 983) (rejecting
> standing of plan itself on grounds that § 1132(a) limits standing to
> a participant, beneficiary or fiduciary).

Oxford Health Plans, Inc., 421 F.3d 100-01. Here, 45 of the Active DPA Plaintiffs who bring

their interference and retaliation claims against the NFL and the NFLMC pursuant to Section

502(a)(3) are time barred and therefore have no standing to pursue such claims. Additionally,

the claims of all 59 Active DPAs (including those 14 whose benefit claims are not yet time

barred) for interference with benefits warrant dismissal because the Benefit Committee found

they were not entitled to benefits under the plans assuming they were employees and Plaintiffs

make no allegations attacking these findings. Once a plaintiff has no entitlement to benefits, he

cannot allege that an employer's act interfered with such entitlement. See Curby v. Solutia, Inc.,

351 F.3d 868, 873 (8th Cir. 2003) (where plaintiff "had no right to benefits...her claim that

[employer] interfered with her right to ERISA benefits fails as well"); Plante v. Foster Klima &

Co., LLC, No. 03-3553(RHK/FLN), 2004 WL 2222318, at *6 (D. Minn. Sept. 30, 2004) ("as

[plaintiff] ha[d] not established...a right to [employer]-provided medical insurance under ERISA,

his claim of interference under section 510 of the Act fails.")

### B.    Plaintiffs' Claims For Lost Wages And Civil Penalties Under Their Third And Fourth Claims For Interference And Retaliation Under Section 510 Should Be Stricken

The Third and Fourth Claims seek legal damages under Sections 510 and 5(a)(3) of

ERISA under the guise of equitable remedies. (AC ¶¶ 235, 243.) Thus the AC invites the Court

to award "such equitable remedies including …lost wages …. as the Court may deem appropriate as well as civil money penalties." (Id.) The Court should "decline this invitation to perceive equitable clothing where the requested relief is nakedly" legal in nature and seeks "'to compel the Defendant to pay [back wages, ie;] a sum of money to the plaintiff'" which is the hallmark of "'suits for money damages.'" Oxford Health Plans, Inc., 421 F.3d at 103-104 (quoting Great-West, 534 U.S. at 213).

In Great-West the Supreme Court rejected the argument that the "other appropriate equitable relief" language under Section 502(a)(3)(B) authorized a court to award "back wages" as "a type of restitution" for discriminatory acts under ERISA, analogous to the back pay remedy provided by Congress under Title VII of the Civil Rights Act of 1964. 534 U.S. at 218 n.4 (citation omitted). In so doing the Supreme Court held that only "equitable restitution," not legal restitution "will be available under Section 502(a)(3)" and that an award of back pay in and of itself was legal restitution and could not be made under ERISA. Id. at 214-16, 218 n.4. See also Krauss, 517 F.3d at 630 (recognizing that no claim is stated under Section 502(a)(3) of ERISA where money damages rather than equitable relief is sought). Accordingly, it is now well recognized that "Great-West has overruled" the Second Circuit's decision in Strom v. Goldman, Sachs & Co., 202 F.3d 138, 144-45 (2d Cir. 1999) and its progeny, holding that monetary proceeds could be "a viable 'make whole' equitable remedy under Section 503(a)(3)." Wharton v. Duke Realty, LLP, 467 F. Supp. 2d 381, 391-92 (S.D.N.Y. 2006) (quoting Great-West in the context of a Section 510 claim under 502(a)(3) to the effect that "'almost invariably…suits seeking…to compel the defendant to pay a sum of money to the plaintiff are 'suits for money damages'"); see also Nicolaou v. Horizon Media, Inc., No. 01 Civ. 0785 (BSJ), 2003 WL 22208356, at *2 (S.D.N.Y. Sept. 23, 2003) (denying back pay on a Section 510 demotion and

41

termination of employment claim where, as in the instant case, plaintiff "does not seek

reinstatement or any other form of equitable relief, but rather seeks only lost wages" and other

forms of monetary relief) rev'd on other grounds, 402 F.3d 325 (2d Cir. 2005).

Under this same reasoning civil monetary penalties are clearly not equitable remedies.

Indeed, the AC cites absolutely no statutory authority authorizing recovery of such money

penalties under a Section 510 claim, nor could it conceivably do so.

C.     **The Third Claim For Interference With Benefits Is Barred In Its Entirety By The Two Year Statute Of Limitations Under New York Law For Workers' Compensation Claims And, In Any Event, Fails To State A Claim Under Section 510 Of ERISA**

For all 59 Active DPA Plaintiffs the Third Claim for interference with benefits is barred

under the two-year "New York State Workers' Compensation" statute of limitations, N.Y. Work.

Comp. Law § 120 (McKinney 1994), which is the applicable statute of limitations for a Section

510 claim. Sandberg v. KPMG Peat Marwick, L.L.P., 111 F.3d 331, 335-36 (2d Cir. 1997). The

AC specifically incorporates its First and Second Claims for benefits into the Third Claim for

interference. (AC ¶¶ 208-09, 214-15, 219.) Thus, the gravamen of Plaintiffs' Section 510

interference with benefits claim is that alleged interference with benefits began with each Active

DPA's classification as an independent contractor ineligible for benefits, which the AC alleges

all DPAs knew upon their retention in the Drug Program. (AC ¶¶ 208, 214.) Under such

allegations, a Section 510 claim for interference is "untenable in law," and even if such claim

could be made, it "accrues from the date on which [a plaintiff] knew or should have known about

the alleged wrong, that is, [plaintiff's] misclassification with intent to deny her benefits.' JP

Morgan Chase & Co., 2004 WL 1277991, at *5. Here, the date of knowledge accrues upon the

date each Active DPA began in the Drug Program, which, even in the case of those 14 DPA

Plaintiffs who were retained as DPAs within the six-year period prior to the December 21, 2007

filing of the Complaint – occurred prior to two years before the filing date of the Complaint. (AC ¶¶ 14, 16, 35, 40, 42, 45, 49, 55, 58, 59, 60, 63, 66, 83; Berke Dec. Ex. 21.) Accordingly, the Third Claim for interference is time barred in its entirety. See also Berry v. Allstate Ins. Co., 252 F. Supp. 2d 336, 341-43 (E.D. Tex. 2003) ("date of accrual" of Section 510 claim based on misclassification of alleged employees "would be at or near the date they were hired because…they were informed from the beginning of their employment that they would not be able to participate in Allstate's benefit plans"), aff'd, 84 F. App'x 442 (5th Cir. 2004).

To avoid this time bar, the AC attempts to cast its Section 510 interference with benefits claim as though the NFLMC's October 5, 2006 communicated decision to outsource, implemented April 30, 2007, as well as CDT's subsequent alleged decision not to retain any former DPAs effected a new interference with benefits. These allegations run directly counter to the AC's primary allegations that benefits had been denied long before the outsourcing due to Plaintiffs' alleged misclassification as independent contractors. (AC ¶¶ 156, 160, 165, 208, 214.) Accordingly, no new Section 510 interference claims were created by the alleged outsourcing decision or subsequent conduct. See McLellan v. E.I. DuPont de Nemours & Co., Inc., No. 04-CV-314, 2006 WL 3751583, at *19-20 (W.D.N.Y. Dec. 19, 2006) (rejecting plaintiff's contention that interference claim was grounded in a failure to rehire her as an employee because claim was in actuality plaintiff's alleged misclassification as a leased employee ineligible for benefits); Williams v. Am. Int'l Group, Inc., No. 01 Civ. 9673 (CSH), 2002 WL 31115184, at *2 (S.D.N.Y. Sept. 23, 2002) (a Section 510 claim is "untenable" where a plaintiff "does not allege," or presumably could not allege, "any disruption of her employment that was designed to preclude her from obtaining benefits").

43

**D.    The Fourth Claim For Retaliatory Discharge Under ERISA Section 510
Warrants Dismissal Because There Is No Allegation That Any Active DPA
Plaintiff Engaged In Protected Activity Prior To The Outsourcing Decision**

According to the AC's allegations, although "the date ultimately selected" for outsourcing

the specimen collection function and terminating the DPAs "was April 30, 2007," the

outsourcing and termination decision was made and communicated to the Active DPAs "[o]n

October 5, 2006." (AC ¶ 183.) Therefore, the date on which the alleged adverse action of

retaliatory discharge occurred for purposes of Section 510 of ERISA was October 5, 2006, not

April 30, 2007, as alleged by Plaintiffs. (AC ¶ 238.) See Weir v. Holland & Knight, No. 05 Civ.

9358LTSAJP, 2007 WL 1815494, at *2 (S.D.N.Y. June 25, 2007) ("§ 510 claims accrue upon

notification of an employee's termination, not upon the actual deprivation of benefits"); Hoodack

v. Int'l Bus. Machs., Inc., 202 F. Supp. 2d 109, 113 (S.D.N.Y. 2002) ("§ 510 claim

accrues…when an employer decides to terminate an employee and communicates that decision

to the employee") (citations omitted); Geaney v. McCarron, No. 01 Civ. 9260 (BSJ), 2003 WL

1701975, at *3 (S.D.N.Y. Mar. 31, 2003) (same); Fonseca v. Columbia Gas Sys., Inc., 37 F.

Supp. 2d 214, 228 (W.D.N.Y. 1998) (same).

The AC brings the Fourth Claim for retaliation under Section 510 on behalf of all Active

DPAs only, and casts the "termination of the Active DPAs [as] retaliation by the NFL against

those DPAs who seek to pursue their rights as employees, including rights they may have under

ERISA." (AC ¶¶ 238, 243.) This allegation, by its very terms, attempts to predicate a retaliatory

discharge claim based on Plaintiffs who may have taken action to "pursue their rights,"

subsequent to, but not prior to, the alleged discriminatory outsourcing decision. Since the

outsourcing decision was made prior to the time any Active DPA Plaintiff asserted his ERISA

rights the Fourth Claim for retaliatory discharge should be dismissed.

44

The operative language of Section 510 makes it "unlawful for any person to discharge...or discriminate against a participant for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. This language expressly requires that a plaintiff participant first "exercise" a right to plan benefits and that a defendant's decision to terminate be motivated to punish the plaintiff for such exercise. See Montesano v. Xerox Corp., 256 F.3d 86, 88-89 (2d Cir. 2001) (recognizing that a Section 510 retaliation claim is separate and different from a Section 510 interference claim); E.I. DuPont de Nemours & Co., Inc., 2006 WL 3751583, at *20 (Section 510 retaliation is for "adverse action taken for exercising a right under the plan" and does not lie where the "Complaint fails to identify any such right exercised"). Thus, in Giordano v. Thomson, 438 F. Supp. 2d 35, 44-45 (E.D.N.Y. 2005), the court recognized that to establish a Section 510 retaliation case, at least requires a showing that "the employee engaged in a protected activity" of which the employer was "aware" and the employer took "adverse employment action against the employee" for such activity. (citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) (an essential element of plaintiff's proof is to "show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510.")). In the instant case, the AC does not plead even one of these elements: it does not plead that the NFL Defendants were aware of any protected activities of the Active DPAs prior to October 2006, the identity of any Active DPA against whom there was alleged retaliation or the acts of any Active DPA that formed the basis for the alleged retaliation. See Twombly, 127 S. Ct. at 1964-65 (failure to set forth "notice" and "grounds" offends basic pleading requirements). Put simply, since no Active DPA is alleged to have asserted his rights under a plan prior to October 5, 2006, no retaliatory discharge cause of

action on the part of any, much less all, of the Active DPAs lies under the Fourth Claim of the AC.

**E.    The Third And Fourth Claims For Interference And Retaliation Based On CDT's Alleged Decision Not To Retain Any Of The Former DPAs Warrant Dismissal For Failure To Plead Notice And Grounds Of Entitlement To Relief Against The NFL Defendants**

That prong of Plaintiffs' Third and Fourth Claims for interference and retaliation which alleges that "[u]pon information and belief, CDT's refusal to hire any of the Active DPAs, is at the request and direction of the NFL and/or NFLMC," is a bald conclusory allegation for which absolutely no factual ground is alleged in the AC. (AC ¶¶ 223, 239.) This ungrounded assumption is directly analogous to the pleading evaluated by the Supreme Court in Twombly, an antitrust case, which in the same conclusory fashion alleged "upon information and belief that [separate defendant companies]…entered into a contract, combination or conspiracy to prevent competiti[ion] …and have agreed not to compete with one another and otherwise allocated customers and markets to one another." 127 S. Ct. at 1962-63. Where, as in the instant case, the complaint failed to contain "enough factual matter (taken as true) to suggest that an agreement was made[,] a bare assertion of conspiracy will not suffice." Id. at 1965-66.

The AC pleads that, on October 5, 2006, the NFLMC notified the DPAs it would outsource the specimen collection function of the Drug Program, which would terminate the retentions of the DPAs, but that "an unspecified new company would be contacting the DPAs to discuss their interest in joining the [new] company." (AC ¶ 183.) These matters all came to pass as the NFLMC stated they would. Moreover, the October 5, 2006 outsourcing decision is alleged to be by the NFLMC, before CDT was selected, and no alleged ground would support that it was made together with CDT. (Id.) Similarly, the alleged decision not to retain DPAs, even though some of them were interviewed and allegedly on the verge of being offered a

position by CDT, was allegedly made by CDT, with no alleged factual ground to support the

bald conclusions, again made "[u]pon information and belief," that the NFL and/or NFLMC

"request[ed]," "direct[ed]," or "instruct[ed]" CDT to make that decision.  (AC ¶¶ 223, 239.)  The

AC therefore utterly fails to give "fair notice of what the…claim is and the grounds upon which

it rests" pertaining to the NFL Defendants' alleged participation in CDT's decision.  Twombly,

127 S. Ct. at 1964 (citation omitted).

The AC inappropriately pleads "upon information and belief" allegations of which

Plaintiffs should have actual knowledge.  For example, the AC alleges upon information and

belief that "Liana Lee of CDT…informed" some "Active DPAs who applied to CDT" that "CDT

will not even consider hiring any of the DPAs."  (AC ¶¶ 221.)  This is a group action.  Each

Plaintiff knows if he was informed of a decision by CDT, the content of that alleged oral notice

and when and how he received it.  The NFL Defendants, being accused of somehow

participating in these decisions,  are entitled to more specific allegations in order to test whether

Plaintiffs' allegations are "plausible."  Thus, the AC not only "mention[s] no specific time, place

or person involved in the alleged conspirac[y]," but omits the same type of information as to the

supposed conduct resulting from such conspiracy.  Twombly, 127 S. Ct. at 1970 n.10.

Finally, the AC retaliatory failure to hire allegations are clearly lacking as to most of the

Active DPAs.  As set forth by Bradley v. England, 502 F. Supp. 2d 259, 272 (D. R.I. 2007):

> In order to establish an "adverse employment action" in a
> retaliatory failure-to-hire context, [a plaintiff] must show that (1)
> he applied for a particular position (2) which was vacant and (3)
> for which he was qualified.  See Velez v. Janssen Ortho, LLC, 467
> F.3d 802, 803 (1st Cir. 2006).  "In addition, of course, [he] must
> show that [he] was not hired for that position." Id.

The AC identifies only Active DPAs Paul Kostyo, Nicholas DiFalco, and William Logay, as

having applied for a collector position at CDT.  (AC ¶¶ 190-91.)  The AC merely alleges with

respect to the other 56 Active DPA Plaintiffs, that they either "applied to become collectors for CDT or sent an email to CDT indicating a desire to apply." (AC ¶ 189.) Without any specificity, the AC fails to meet the required standard set forth in England. See 502 F. Supp. 2d at 272. Thus, the Third and Fourth Claims of the AC should be dismissed.

## POINT III

### The Fifth Claim For Alleged Failure To File SPDs With The Department Of Labor Misstates The Law And Should Be Dismissed

The Fifth Claim seeks to "estop" the NFL Defendants from relying on SPDs containing plan eligibility requirements and seeks "damages" and collection of "civil penalties" for each of the 93 DPA Plaintiffs, in undisclosed amounts. (AC ¶ 250.) According to the AC, the Court is to award these remedies because allegedly the NFL Defendants failed to file SPDs for any of the pension and welfare plans with the DOL as "expressly required by the terms of ERISA." (AC ¶ 246.)

In fact and law, ERISA contains no such express requirement. A prior iteration of ERISA § 104(a)(1)(C) formerly provided that "[t]he administrator of any employee benefit plan…shall file with [the DOL]…a copy of the summary plan description at the time such summary plan description is required to be furnished to participants and beneficiaries." 29 U.S.C. § 1024(a)(1)(C) (1996) (Berke Dec. Ex. 22.) As explained in the DOL Archived News Release dated August 8, 1997, this requirement was amended out of the ERISA statute effective August 5, 1997. (Berke Dec. Ex. 24.) Accordingly, there is no longer any Section 104(a)(1)(C) in ERISA and, since August 5, 1997, there is no longer any requirement for filing of SPDs with the DOL unless the government specifically requests a plan administrator to make such filing as set forth in Section 104(a)(6) of the current statute, 29 U.S.C. 1024(a)(6). (Berke Dec. Ex. 23.) The AC makes no allegation that the government has ever requested that the Benefit Committee submit

48

an SPD for any of the pension or welfare plans here and therefore the Fifth Claim states no cause
of action as a matter of law.

Further, none of the regulations cited by the Fifth Claim require filing of an SPD by the
DOL. (AC ¶ 246.) 29 C.F.R. § 2520.102-2(a), cited by the AC, proscribes the method of
presenting the style and format of an SPD, but does not deal in any way with any requirement to
file an SPD with the DOL. (AC ¶ 246; Berke Dec. Ex. 25.) 29 C.F.R. § 2520.104a-3, cited by
the AC, is reserved by the DOL for subsequent regulatory material pertaining to "Reporting
Requirements," but has no current provisions, much less any requiring filing of SPDs with the
DOL. (AC ¶ 246; Berke Dec. Ex. 26.) Also, notwithstanding the AC's citation to 2520.104a-
3(a), there is no such subsection of 2520.104a-3 currently in existence. (Id.) 29 C.F.R. §
2520.104b-2(b), cited by the AC, pertains to a "requirement to furnish the updated summary plan
description to each participant and each beneficiary receiving benefits under the plan (other than
beneficiaries receiving benefits under a welfare plan) required by section 104(b)(1) of" ERISA,
but does not speak to any requirement to file an SPD with the DOL. (AC ¶ 246; Berke Dec. Ex.
27.) Accordingly, the Fifth Claim should be dismissed.

## POINT IV

### The Sixth Claim For Alleged Failure To Furnish SPDs And Other Plan Governing Instruments Should Be Dismissed Because The Alleged Request Was Made By Only One Plaintiff Who Lacks Standing To Bring The Claim

Under the Sixth Claim of the AC, Plaintiffs again seek to estop reference to plan
eligibility requirements and obtain vast "statutory penalties." The AC bases it claims solely on
the Pallatroni Letter, dated "March 15, 2007," incorrectly alleged to be "a request...sent on
behalf of [all 93 of] the plaintiffs to Dennis Curran, General Counsel of the NFL Management
Council, as Plan Administrator for the NFL and NFLMC, seeking, among other things, copies of

49

the latest updated summary plan descriptions and copies of the instruments under which each

Pension and Welfare Plan is established or operated." (AC ¶ 251.) Allegedly, "[s]ome

documents were received in response to this request within 30 days, however, the production was

incomplete, and may still be incomplete," which allegedly violates Section 502(c) of ERISA, 29

U.S.C. § 1132(c). (AC ¶ 252.)

Contrary to the AC's allegations, the referenced Pallatroni Letter reveals that it was a

request by only one Plaintiff, Mr. Pallatroni, for NFL employee related documents, and not on

behalf of all 93 Plaintiffs, for NFLMC employee related documents. (Berke Dec. Ex. 18.) Mr.

Pallatroni began in the Drug Program back in 1988 and continued as a DPA until January, 2006.

(AC ¶ 94.)

By its terms, Section 502(c) is violated when a plan administrator "fails or refuses to

comply with a request for any information which such administrator is required to furnish to a

participant or beneficiary…" Violations of Section 502(c) are actionable pursuant to Section

502(a)(1)(A) through a "civil action…brought (1) by a participant or beneficiary – (A) for the

relief provided for in subsection (c) of this section." 29 U.S.C. 1132(a)(1)(A) and (c). At all

times since his retention, Mr. Pallatroni has known that he was classified as an independent

contractor, and that he was thereby not eligible for and not receiving benefits from the plans.

(AC ¶¶ 160, 208, 214.) Mr. Pallatroni's claim for benefits was therefore barred by the six-year

statute of limitations, on March 15, 2007, when his counsel requested plan documents on his

behalf, and time barred on December 28, 2007, when the Complaint was filed in this action. See

Point I.C. above; see also Metropolitan Life Ins. Co., 275 F. Supp. 2d 406 at 411 ("an individual

whose claim for benefits is time-barred" has no standing as a "participant" under ERISA Section

502(c) relating to a request for documents). Therefore, Mr. Pallatroni had no standing to request

the plan documents on March 15, 2007 and the Sixth Claim should be dismissed in its entirety,

including as to Mr. Pallatroni.

## POINT V

### The Seventh Claims For Age Discrimination Should Be Dismissed For Failure To Plead Notice And Grounds Of Age Discrimination Or Entitlement To Relief Against The NFL Defendants

The AC makes the wholly conclusory allegation that the "circumstances surrounding the

termination of employment...of the Active DPAs...in addition to the blatantly discriminatory

comments made to the Active DPAs, give rise to an inference of age discrimination." (AC ¶

263.) As none of the circumstances of the NFL Defendants' outsourcing decision reflect age, the

only conceivable "grounds" of "entitlement to relief" on this claim, are alleged "blatantly

discriminatory comments." However, there are none factually set forth in the AC. Twombly,

127 S. Ct. at 1965. Preceding the October 5, 2006 outsourcing communication, the AC alleges

only that Mary Ann Fleming, Coordinator of Player Benefits of the NFLMC, "[i]n or about

January, 2006, at the semi-annual DPA Conference," made a stray remark to one Active "DPA

Paul Herring[,] that the NFLMC was worried about the ages of the DPAs." (AC ¶ 180.) Ms.

Fleming is not alleged to have been a decision-maker regarding the outsourcing, and even if she

was, the remoteness and lack of any explanation of the circumstances in which the alleged

comment was supposedly made, render it useless to support a conclusory allegation of age

discrimination.

As the Second Circuit has recognized, "'stray remarks' alone do not support a

discrimination suit" and cannot do so where, as in the instant case, no "other indicia of

discrimination are properly presented." Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir.

1998). "[T]he more remote and oblique the remarks are in relation to the employer's adverse

51

action, the less they prove that the action was motivated by discrimination [and] remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by [any] discriminatory sentiment," allegedly reflected by the remark. Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007).

The AC's allegation that there are other "statements that confirm the connection between the DPAs' ages and their retention," is itself conclusory and is contradicted, rather than supported, by the pleadings. (AC ¶ 181.) Indeed, the only two pleaded examples of such statements have nothing to do with age, the first dealing only with the IRS proceedings, and the second suggesting only that those proceedings would take a long time, i.e., that "'you guys [the DPAs] will be dead and buried before this [the IRS proceeding] is resolved.'" (AC ¶ 180.) Where, as here, the conclusory allegations that the outsourcing decision constituted age discrimination, are said to be supported only by equally conclusory alleged grounds, dismissal is warranted. Courts "'are not bound to accept as true...legal conclusion[s] couched as...factual allegation[s],'" especially where no "plausible" grounds for age discrimination are alleged. Twombly, 127 S. Ct. at 1965 (citation omitted).

Equally warranting dismissal is the allegation that "the refusal of employment [by] CDT" states an age discrimination claim against the NFL Defendants. (AC ¶ 263.) As demonstrated above, there are no factual allegations in the AC supporting its conclusory allegation that the NFL Defendants played any part or conspired in CDT's alleged decision not to retain any of the DPAs. (See Point II, Section E supra.) The AC lacks any specificity relating to who, what, where, when and how that decision was made or communicated to unidentified DPAs. Further, the AC fails to plead that more than three identified Active DPA Plaintiffs actually

applied, as opposed to vaguely expressing interest, to CDT for collector positions. These same circumstances are fatal to the instant age discrimination claim, especially against the NFL Defendants. See Twombly, 127 S. Ct. at 1965 n.3 (a complaint, particularly one for concerted action, should be dismissed where it does not contain a "Rule 8(a)(2) …'showing …of entitlement to relief,'" and fails to provide a "'statement of circumstances, occurrences, and events in support of the claim presented'"); see also Wong v. Kings County District Attorney's Office, No. 02 CV 3740 (JG), 2004 WL 692165, at *3 (E.D.N.Y. Mar. 31, 2004) ("The Second Circuit has made clear that to state a prima facie case for failure to promote, the employee is required to make 'some specific effort to apply for a particular position' if he or she is aware of the position." (quoting Brown v. Coach Stores, Inc., 163 F.3d 707, 710 (2d Cir. 1998)); Sembos v. Philips Components, 376 F.3d 696, 702 (7th Cir. 2004) ("An employer cannot be liable for failing to hire a person who does not apply for a job."); In re Carnegie Ctr. Assoc., 129 F.3d 290, 298 (3d Cir. 1997) ("[s]ince this is a failure to hire situation, rather than a discharge situation [plaintiff] must show that she applied for the position."); Box v. A & P Tea Co., 772 F.2d 1372, 1377 (7th Cir. 1985) (no discrimination for failure to hire where plaintiff stated only her "vague interest in…assistant manager position").

Additionally, there are absolutely no surrounding "circumstances" or "blatantly discriminatory comments" pled to show any age motivation by the NFL Defendants, let alone any participation by them, in CDT's alleged decision. (AC ¶ 263.) According to the AC, the President of CDT asked former DPA James Bowers about each DPA's performance, age and other information, after which CDT interviewed three of the DPAs and, when on the verge of hiring them, turned all three down, and decided not to hire any others, after one of the applicants suggested he might have "grandchildren." (AC ¶¶ 178, 185.) Even if age motivation was

53

inferable from these circumstances – and it is not – no possible inference of age motivation could be attributed to the NFL Defendants. It would illogically require the Court to accept that the NFLMC decided to outsource the program, told DPAs they would be considered by CDT, DPAs were then interviewed, but when three of them were about to be hired, the NFLMC, based on the "grandchildren" remark to CDT, suddenly realized these retired DPAs were in the protected age group, and instructed CDT because of their age, not to go through with pending offers to retain such DPAs, or to consider any others. Applying Twombly, 127 S. Ct. at 1966, "'some threshold of plausibility must be crossed at the outset before a …case should be permitted to go into its inevitably costly and protracted discovery phase,'" and that threshold has not even been approached, let alone crossed, on any of the discrimination claims in the AC. (citation omitted).

## CONCLUSION

For all the foregoing reasons, the NFL Defendants' motion for dismissal should be granted in its entirety.

Respectfully Submitted,

Dated: New York, New York
June 9, 2008

Shepard Goldfein (Shepard.Goldfein@skadden.com)
Jay S. Berke (Jay.Berke@skadden.com)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
*Attorneys for National Football League Defendants*

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on June 9, 2008, I caused a true copy of the

- ***Motion to Dismiss,***

- ***NFL Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint,***

- ***Transmittal Declaration of Jay S. Berke in Support of Motion to Dismiss*** and

- {Proposed} ***Order***

to be served upon the following party as indicated:

<u>By Hand Delivery</u>

Michael P. Pappas, Esq.
Littler Mendelson
885 Third Avenue, 16th Floor
New York, NY 10022

<u>By Federal Express, overnight delivery</u>

M. Christine Carty, Esq.
Schnader Harrison Segal & Lewis LLP
140 Broadway, 31st Floor
New York, NY 10005

Robert J. Costello, Esq.
Levy. Tolman & Costello, LLP
630 Third Avenue
New York, NY 10017

Dated:  New York, New York
         June 9, 2008

Steven Ray Katzenstein

1