UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
William E. Richardson, et al.,                    :
                                                  :
                            Plaintiffs,           :   07 Civ. 11632 (MGC)
                                                  :
                - against -                       :   **TRANSMITTAL DECLARATION**
                                                  :   **OF JAY S. BERKE**
National Football League, et al.,                 :   **IN SUPPORT OF**
                                                  :   **MOTION TO DISMISS**
                            Defendants.           :
                                                  :   ECF CASE
                                                  :   ELECTRONICALLY FILED
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## TRANSMITTAL DECLARATION OF JAY S. BERKE

I, JAY S. BERKE, declare under penalty of perjury pursuant to 28 U.S.C.

§ 1746 that the following is true and correct:

1.      I am a partner in the law firm Skadden, Arps, Slate, Meagher &

Flom LLP, attorneys of record for defendants National Football League, National

Football League Management Council, National Football League Pension Plan, National

Football League Capital Accumulation Plan, National Football League Flex Plan,

National Football League Management Council Pension Plan, and NFL Employee

Benefit Committee (collectively, "Defendants") in the above-captioned action. I submit

this Transmittal Declaration in support of Defendants' Motion to Dismiss of plaintiffs'

Amended Complaint.

2.    Attached are true and correct copies of the following documents:

Exhibit     Document

1)    February 7, 2006 letter from Robert J. Costello, Esq. to National Football League Management Council, Attn: Dennis Curran, Esq. re: Thomas Taylor and Peter Pallatroni.

2)    March 15, 2007 letter from M. Christine Carty, Esq. to Dennis Curran, Esq. re: Peter Pallatroni.

3)    April 13, 2007 letter from Charles V. Stewart, Esq. to M. Christine Carty, Esq. re: Peter Pallatroni. (Attachments omitted.)

4)    April 25, 2007 letter from M. Christine Carty, Esq. to Committee of the NFL Pension Plan, Attn: Jim McCloskey, re: Drug Program Agents.

5)    May 16, 2007 letter from M. Christine Carty, Esq. to Committee of the NFL Pension Plan, Attn: Jim McCloskey, re: Drug Program Agents.

6)    May 25, 2007 letter from M. Christine Carty, Esq. to Committee of the NFL Pension Plan, Attn: Jim McCloskey, re: Drug Program Agents.

7)    May 31, 2007 letter from Karen Fournier to National Football League Management Council re: Form SS-8.

8)    June 4, 2007 letter from M. Christine Carty, Esq. to Committee of the NFL Pension Plan, Attn: Jim McCloskey, re: Drug Program Agents.

9)    June 6, 2007 letter from Lawrence L. Lamade, Esq. to M. Christine Carty, Esq., re: Request for Eligibility Determination. (Attachments omitted.)

10)    June 11, 2007 letter from M. Christine Carty, Esq. to Committee of the NFL Pension Plan, Attn: Jim McCloskey, re: Drug Program Agents.

11)    June 27, 2007 letter from M. Christine Carty, Esq. to Lawrence Lamade, Esq. re: Drug Program Agents.

12)    September 10, 2007 letter from Doug O'Connell on behalf of NFL Employee Benefit Committee to M. Christine Carty, Esq. re: Drug Program Agents.

13)    November 21, 2007 letter from Doug O'Connell on behalf of NFL Employee Benefit Committee to M. Christine Carty, Esq. re: Drug Program Agents.

14)    December 7, 2007 letter from M. Christine Carty, Esq. to National Football League, Attn: Doug O'Connell, re: Drug Program Agents.

15)    December 18, 2007 letter from Doug O'Connell on behalf of NFL Employee Benefit Committee to M. Christine Carty, Esq. re: Drug Program Agents. (Attachments omitted.)

16)    December 21, 2007 letter from Doug O'Connell on behalf of NFL Employee Benefit Committee to M. Christine Carty, Esq. re: Drug Program Agents.

17)    January 16, 2008 letter from M. Christine Carty, Esq. to National Football League, attn: Doug O'Connell, re: Drug Program Agents.

18)    March 14, 2008 letter from Doug O'Connell on behalf of NFL Employee Benefit Committee to M. Christine Carty, Esq. re: Drug Program Agents. (Attachments omitted.)

19)    Alphabetical list of all Active DPA plaintiffs identified in the Amended Complaint.

20)      Alphabetical list of all Inactive DPA plaintiffs identified in the Amended
Complaint.

21)      Alphabetical list of 14 DPA plaintiffs identified in the Amended
Complaint who were retained after 12/28/2001.

22)      1996 version of 29 U.S.C. § 1024.

23)      Current version of 29 U.S.C. § 1024.

24)      August 8, 1997 Department of Labor Archived News Release.

25)      Current version of 29 C.F.R. § 2520.102-2(a).

26)      Current version of 29 C.F.R. § 2520.104a-3.

27)      Current version of 29 C.F.R. § 2520.104b-2(b).


       I declare under penalty of perjury under the laws of the United States that
the foregoing is true and correct.

       Executed this 9th day of June, 2008, in New York, New York.

                             Jay S. Berke

# Exhibit 1

# LEVY, TOLMAN & COSTELLO, LLP

ATTORNEYS AT LAW

630 THIRD AVENUE                                                      TELEPHONE (212) 949-8770
NEW YORK, N.Y. 10017                                                  FACSIMILE (212) 661-9491

February 7, 2006

## VIA FAX (212) 681-7589 & U.S. MAIL

National Football League
Management Council
280 Park Avenue
New York, NY 10017

ATTN: Dennis Curran, Esq.

Re:    Thomas Taylor and Peter Pallatroni

Gentlemen:

This firm represents Thomas Taylor and Peter Pallatroni, former Drug Program Agents ("DPA") of the National Football League ("NFL"). We are aware that the NFL has taken the position that the DPAs are independent contractors and not employees of the NFL. We believe that judgment is in error and by this letter we ask you to reconsider your determination in light of the material presented herewith. Please consider this request to be an administrative appeal. We would like to resolve this matter in this way without resorting to requesting the IRS determine whether the individuals concerned were employees or independent contractors. We are aware that the NFL has previously reconsidered its independent contractor determination with respect to other part time employees and granted them the benefits commensurate with their status as employees. We believe that the evidence described below demonstrates that the NFL exercises even more control over the details of the services performed by the DPAs than the other employees who were previously incorrectly designated as independent contractors.

As you are aware, any discussion of whether an individual is an independent contractor or an employee, is determined by the degree of control exercised by the employer over the individual working for that employer. Eisenberg v. Advance Relocation & Storage, 237 F. 3d 111 (2d Cir. 2000). The Internal Revenue Service ("IRS") puts forth a number of publications that address the issue of whether an individual is an employee or an independent contractor. The factors noted by the IRS overwhelmingly support the proposition that Messrs. Taylor and Pallatroni have been employees of the NFL throughout their service as DPAs. We hope that after reviewing this list you will agree, that Messrs. Taylor and Pallatroni are employees rather than independent contractors. We are aware that we can request the IRS make this determination by

1

## LEVY, TOLMAN & COSTELLO, LLP

submitting IRS form SS-8, but we will only do that if we cannot reach an amicable resolution with you.

Courts have considered many factors in deciding whether to categorize a worker as an independent contractor or an employee. The court recognized factors fall into three main categories: First, there is behavioral control, i.e., those factors which show whether the business has a right to direct and control the worker. Factors which demonstrate that a worker is an employee, are that the employee is told:

- When, where, how to work
- What tools or equipment to use
- What workers to hire or assist with the work
- Where to purchase supplies and services
- What work must be performed by a specific individual
- What order or sequence to follow
- Training - an employee may be trained to perform services in a particular manner. An independent contractor does not receive training, rather he is expected to be competent in the field in which he works.

The second method to determine a worker's status, is whether there is financial control. Those factors show whether the business has a right to control the economic aspects of the worker's job. Those financial control factors include:

- The extent to which the worker has unreimbursed expenses (An employee is reimbursed, an independent contractor is not.)
- The extent of the worker's investment (Investment for an independent contractor, not for an employee)
- The extent to which the worker makes services available to the relevant market (An employee works exclusively for the employer. An independent contractor can make his services available to the rest of the market.)
- How the business pays the worker (Employee relationship continues until severed. Independent contractor only works for each specific job.)
- The extent to which the worker can realize profit or loss (An employee receives a set salary, whereas an independent contractor who has an investment in his business can have a profit or a loss.)

Third, there is the type of relationship. Factors that demonstrate the type of relationship include:

- Written contacts describing the relationship the parties intended to create
- Whether the worker is provided with employee-type benefits
- The permanency of the relationship

2

02/08/2006 15:03 FAX  212 681 7589        NFLMC                          005/008
                                                                        004/007
02/07/2006 17:00 FAX  12126619491

**LEVY, TOLMAN & COSTELLO, LLP**

   o  How integral the services are to the principal activity - an employee's
      work is integral, an independent contractor's is not.

  The general rule is that an individual is an independent contractor if (the person for whom
the services are performed) has the right to control or direct only the result of the work, **and not
what will be done and how it will be done or method of accomplishment.**

  In the case of the NFL Drug Program Agents, by all of the above standards, it is
absolutely clear that the NFL mandates what will be done and the precise method of
accomplishing those results. Those factors mandate the conclusion that the DPAs are employees.
The NFL micro-manages every aspect of the services performed by the DPAs. The NFL totally
controls the process from beginning to end and rightfully mandates precise adherence to all of its
rules and procedures. The NFL precisely directs the means, methods and protocols by which the
DPAs perform their duties. This direction makes the NFL the employer and the DPAs their
employees.

  Under Common Law rules, anyone who performs services for you is your employee if
you have the right to control the details of how those services are performed. We have in our
possession, the NFL "Guide for Drug Program Coordinators" produced by the NFL Management
Council which constitutes the mandatory "play-book" for DPAs by specifying each and every
aspect of how and when the Drug Program Agents accomplish their mission. This book specifies
each and every procedure and protocol mandated by the NFL. There are no options available to
any DPAs. There is no discretion left with the DPAs. To use football jargon, the DPAs are not
permitted , at any time, for any reason, to "audible at the line of scrimmage." There is a strict
and mandatory script dictated by the NFL Management Committee. Each DPA is responsible for
collecting, packaging and shipping urine specimens he has obtained from NFL players and game
officials in implementation of the NFL programs for detecting substances of abuse (marijuana,
cocaine and other so-called street drugs, pain relievers and alcohol) and anabolic steroid
(performance enhancing substances) use. Each DPA must make computer entries on the NFL
System or maintain paper records for these collections and testify at hearings when required. The
DPA performs these duties throughout the year. Most of the 32 NFL teams are assigned two
DPA's. One of the DPAs on each team is the primary DPA and the other(s) simply DPAs. The
primary DPA is responsible for insuring that required testing is accomplished, ordering supplies
and corresponding with the Medical Advisors (Dr. Brown - Drug Program and Dr. Lombardo -
Steroids Program) and the Management Council consultant (Warren Welsh) who coordinates the
day to day administration of the DPAs. The Primary DPA receives an annual retainer fee of
$1,000.00 for these duties that is not received by other DPAs assigned to the team. All DPAs are
compensated at the same rates. The NFL reports each DPA's wages annually. All DPAs report
to and work under the supervision of the two Medical Advisors and the Management Council.
They are selected, hired and dismissed[1] by these same officials operating under the auspices of

---

[1] Only an employee can be dismissed or fined. DPAs are informed by the NFL that they are subject to being dismissed
and fined by the Commissioner.

3

## LEVY, TOLMAN & COSTELLO, LLP

the NFL Management Council. Unlike a true Independent Contractor, the primary DPA cannot select, hire or dismiss his assisting DPA(s), only the NFL can.

When a DPA is hired by the NFL, he becomes part of a group of approximately 70 other DPAs. This group collects between 8 and 10,000 urine specimens for the substances of abuse program and approximately 9,600 for the steroids program each year. The NFL Management Council gives the DPA a manual entitled Guide for Drug Program Agents that describes his duties. This guide contains an enlarged copy of a credential signed by the Commissioner of the NFL that is issued each DPA by the NFL. The credential states that its bearer is an agent of the NFL authorized to perform Drug Programs duties. The guide shows the fee structure and expense schedule that is paid by the NFL and contains an organizational chart of the NFL Drug Programs hierarchy, its Management Council personnel and the DPA Advisory Committee that exists to interface between the DPAs and the Medical Advisors/Management Council on policy and procedure issues. The guide also contains an extensive list of instructions about how the invoice and weekly worksheets provided each DPA by the NFL must be completed in order for the DPA to receive payment for work. The NFL regulates the DPAs hourly wages and pays for almost all his expenses incurred in work performed for the NFL. This is not indicative of an independent contractor but it is indicative of an employee. Computers, telephones and automobiles are not provided by the NFL, but a fee of $.445 per mile is paid DPAs for using their automobiles for NFL business. Unlike Independent Contractors, but exactly like employees, the DPAs have no at risk capital investment and are assured of earning money for their NFL work.

In a clear effort to save benefit money, the NFL has categorized DPAs as independent contractors, but simply stating it, does not make it so. It is the relationship itself that determines the issue. As a result, the DPAs do not participate in the NFL pension plans, 401K's, the NFL group medical, dental, disability or accident insurance plans and other benefits, such as, paid vacations. The NFL does not withhold income taxes, withhold or pay social security or medicare taxes or pay unemployment taxes on wages paid to the DPAs. - but they should.

The Guide contains a list of NFL authorized forms that must be submitted by DPAs to obtain the equipment, tools, and supplies needed to conduct their work. All of these items are provided to the DPAs by the NFL for free and are the only supplies authorized by the Management Council for NFL use. Again, this is totally inconsistent with the concept of DPAs being independent contractors, but totally consistent with their true status as employees. The NFL instructs DPAs that all urine specimens must be shipped to the appropriate NFL approved laboratory by Federal Express. No other laboratories or carriers may be used. All Federal Express and laboratory costs are paid by the NFL. These requirements are examples of how the NFL directs and controls how the DPAs perform their assigned tasks, as employees.

In January of each year, a newly hired DPA may attend a meeting of all primary DPAs. There is another meeting for all DPAs in June each year. The DPA must complete a transportation request form provided by the Management Council which then provides and pays for his airline tickets and hotel accommodations at the meetings. The DPA receives a fee of

4

## LEVY, TOLMAN & COSTELLO, LLP

$500.00 for attending the January meeting, $600 for the June meeting and submits an invoice to receive reimbursement for his meals and travel time. The DPA is scheduled to arrive a day before the general meeting commences. On that day he and other new DPAs receive classroom and hands-on formal training in the duties of a DPA, urine specimen collection protocols and all the requirements set forth in the Guide for Drug Programs Agents. This training is provided by senior DPAs. The remaining two days of the meeting consist of presentations and instructions about when to schedule and how to conduct urine specimen collections by the Medical Advisors, and other guidance on procedures by the NFL Chief Toxicologist (who reviews the work of the two laboratories that are approved and mandated for use in analysis of all urine specimens collected by the DPAs), NFL Management Council Consultant Welsh, and Management Council attorneys, bosses and staff members.

A letter from the Senior Vice President and General Counsel of the NFL Management Council, which stressed the importance of DPAs following procedures in an exacting manner, was distributed at a recent meeting. That letter evidences the type of control associated with employees and not independent contractors. A questionnaire asking whether and how long a DPA wishes to remain in his current employment is distributed to all DPAs every year during at least one of the two annual DPA meetings. That questionnaire is evidence of their status as employees rather than independent contractors. These documents indicate that the NFL engages the DPAs with the expectation that the relationship will continue, just as that of an employee rather than only for the time it takes to complete specific a project as would be expected from an independent contractor. While there are no employment contracts or agreements between the NFL and the DPAs, we recognize that the representatives of the Management Council have often asserted that they regard DPAs as independent contractors. We believe the IRS and the Courts would disagree. This statement of position is only as good as the evidence that supports it and that evidence is clear that the DPAs should be regarded as employees.

After the meeting the newly hired DPA returns to his assigned team. Here he receives on the job training in specimen collection from his primary DPA or, if he has replaced a primary DPA, from senior DPAs selected by Management Council consultant Welsh. This on the job training consists of his observing specimen collection in the steroid and substance of abuse programs and then collecting specimens himself, properly completing required records concerning the specimen collection and chain of custody records and packaging and mailing the specimens under supervision of the senior DPA. This is the most critical part of the DPA's job and it is highly regulated by the NFL. The collection protocols have ranged from 12 to 20 steps, which must be rigorously followed in the exact sequences prescribed in the specimen collection and shipping instructions for anabolic steroids; and substances of abuse. Deviation from these protocols may result in dismissal of the erring DPA, again evidence of an employee relationship rather than an independent contractor. These documents illustrate the high degree of behavioral control over the DPA's work methods exercised by the NFL, which exercise is an indication of employee status rather than independent contractor.

The guide also contains instructions for written reports and missed test report instructions

5

## LEVY, TOLMAN & COSTELLO, LLP

and report form for the substances of abuse program as well as a directive regarding treatment of partial specimens in the steroids program. Employees provide reports but independent contractors typically do not. A letter approved by the Medical Director for use in notifying a player the DPA has been unable to contact that he must provide a specimen for steroids testing is provided to the DPA. Even these minute details of the DPA's performance are prescribed and controlled by the NFL.

DPAs are an integral part of the NFL substance abuse and anabolic steroid (performance enhancing substances) testing programs and every aspect of their actions are specified and controlled by the NFL.

Based upon this limited description of the duties and responsibilities of the DPAs, we respectfully suggest that after further review, they have been erroneously categorized as independent contractors when they are really employees. We ask you to reconsider your prior position and grant these individuals the benefits they would have accrued as employees.

We look forward to your response.

Very truly yours,

Robert J. Costello

RJC:cn

cc:   Mr. Thomas Taylor
      20 Dunrovin Court
      Manchester, NJ 08759

      Mr. Peter Pallatroni
      P.O. Box 524
      Sparta, NJ 07871

6

# Exhibit 2



**Schnader**
ATTORNEYS AT LAW

140 BROADWAY   SUITE 3100
NEW YORK, NY 10005-1101
212.973.8000   FAX 212.972.8798   schnader.com

March 15, 2007

M. Christine Carty
Direct Dial 212-973-8012
Direct Fax 212-972-8798
E-mail: ccarty@schnader.com

COPY

Dennis Curran, Esquire
Senior Vice President and
General Counsel
National Football League
Management Council
280 Park Avenue
New York, NY 10017

> RE:  **Peter Pallatroni**
>       **Our File No.: 3009452-0001**

Dear Mr. Curran:

We serve as co-counsel with Levy Tolman & Costello, to Peter Pallatroni, who formerly served as a drug program agent of the NFL.

Pursuant to 29 U.S.C. §1024(b)(4), we request, on behalf of our client, a copy of the latest updated summary plan description for any benefit or welfare plan applicable to National Football League employees from 1988 to 2006, these being the years in which Mr. Pallatroni acted as a drug program agent of the NFL. For the same timeframe, we also seek any trust agreement, contract, or other instruments under which any employment welfare benefit plan in effect for National Football League employees was established or operated.

Pursuant to 29 U.S.C. §1132(c)(1)(B), failure to furnish such documents within 30 days of the date of this request may result in certain penalties being imposed.

Please be guided accordingly.

Sincerely yours,

M. Christine Carty
For SCHNADER HARRISON SEGAL & LEWIS LLP

MCC:sh
cc: Robert J. Costello, Esquire

# Exhibit 3

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

Attorneys at Law

**CHARLES V. STEWART**
202.887.4415 /fax 202.28.4428
cstewart@akingump.com

April 13, 2007

BY OVERNIGHT DELIVERY

M. Christine Carty
Schnader Harrison Segal & Lewis LLP
140 Broadway, Suite 3100
New York, N.Y. 10005-1101

   Re:  Peter Pallatroni

Dear Ms. Carty:

   Your March 15, 2007, letter to Dennis Curran was referred to me for a response.  In that letter you requested on behalf of your client a copy of the latest updated summary plan description (SPD) for any "benefit or welfare plan applicable to National Football League employees."  In addition, you requested copies of the instruments under which any welfare plan was established or operated.

   Please note that there are many entities making up the "National Football League."  It appears you are claiming that, in performing services as a Drug Program Agent, your client was an employee of the National Football League Management Council.  Assuming that to be the case, enclosed please find the following documents pursuant to your request:

1.  The latest updated SPD for the NFL Employee Reciprocal Flexible Benefits Plan (Flex Plan), as last updated in 2006.  In addition, for your convenience, we have enclosed copies of the SPD for 2005, 2004, 2003, 1998 and 1997.

2.  The latest updated SPD for the National Football League Capital Accumulation Plan, as last updated in June, 2004.  In addition, we have included copies for September 1997, June 1997, February 1995, August 1994 and March 1988.

3.  The latest updated SPD for the NFL Pension Plan, formerly known as the NFL Office Pension Plan, as last updated in March, 2004.  In addition, we have included copies of the 1989 SPD.

AKIN GUMP
STRAUSS HAUER & FELD LLP
————————————— Attorneys at Law

M. Christine Carty
April 13, 2007
Page 2

> 4.  The latest updated SPD for the NFL Office Supplemental Pension Plan, as last updated in 1997. In addition, we have included 1989 SPD. I am including this document even though it did not cover employees of the NFL Management Council. This Plan was frozen several years ago and then was terminated.

> 5.  The last SPD for the NFL Management Council Pension Plan. This plan was merged into NFL Office Pension Plan, now known as the NFL Pension Plan, prior to 2000.

As you will see, a range of welfare benefits are available under the Flex Plan, including Medical, Dental, Vision, Life, Accidental Death and Disability, Long Term Disability, a Health Care Spending Account, and a Dependant Care Spending Account. Enclosed please find the Flex Plan Trust Agreement, followed by a sample Employer Adoption Certificate, an Administrative Services Only Contract, an amendment thereto, and contracts and/or certificates under which insured benefits are provided.

Please contact me if you have any further questions or need additional information.

Sincerely,

Charles V. Stewart

cc:    Dennis Curran, Esq. (w/o enclosures)
       James McCloskey (w/o enclosures)
       Lawrence L. Lamade, Esq. (w/o enclosures)

7776070 v1

# Exhibit 4

# Schnader
### ATTORNEYS AT LAW

140 BROADWAY   SUITE 3100
NEW YORK, NY 10005-1101
212.973.8000   FAX 212.972.8798   schnader.com

April 25, 2007

M. Christine Carty
Direct Dial 212-973-8012
Direct Fax 212-972-8798
E-mail: ccarty@schnader.com

Committee of the NFL Pension Plan
Attention:  Jim McCloskey
280 Park Avenue
New York, New York 10017

> **RE:   Drug Program Agents**
> **Our File No.:  3009452-0001**

Dear Mr. McCloskey:

      Our firm represents, with Robert Costello of Levy Tolman & Costello, a number of present and former Drug Program Agents ("DPAs"). The purpose of this letter is to request that each of our clients be given benefits, both prospectively and retroactively from the date of first employment, as they are entitled as participants under the following ERISA Plans:

- NFL EMPLOYEE RECIPROCAL FLEXIBLE BENEFITS PLAN

- NFL PENSION PLAN

- NFL OFFICE PENSION PLAN

- NFL MANAGEMENT COUNCIL PENSION PLAN

- NFL OFFICE SUPPLEMENTAL PENSION PLAN

- NFL CAPITAL ACCUMULATION PLAN

The current DPAs we represent are:

1. William E. Richardson;

2. Dennis G. Keith;

3. Herman H. Scott;

4. Florilis Davis;

5. Harley R. Smith;

Schnader Harrison Segal & Lewis LLP
NEW YORK   PENNSYLVANIA   CALIFORNIA   WASHINGTON, DC   NEW JERSEY   NYDATA 287367_1

Schnader
ATTORNEYS AT LAW

Committee of the NFL Pension Plan
April 25, 2007
Page 2

6. Lonnie J. Blake;

7. James M. Salp;

8. Ronald W. Auld;

9. Michael E. Dennis;

10. Donald I. Byrd;

11. Paul H. Freeland;

12. Thomas R. Oberschmidt;

13. Robert F. Howell;

14. Robert L. Toothman;

15. Eugene F. Gee, Jr.;

16. Gary A. Marting;

17. Eugene E. Racht, Jr.;

18. Robert J. DeFauw;

19. Dennis W. Schoenrock;

20. Louis A. Runge;

21. Kenneth W. VanLanen;

22. Paul D. Herring;

23. Robert H. Stauffer;

24. Charles A. Roe III;

25. William J. Logay;

26. Robert L. Staratt, Jr.;

27. Kent Bryan;

28. Jack B. Holder;

NYDATA 287367_1

Schnader Harrison Segal & Lewis LLP

Schnader
ATTORNEYS AT LAW

Committee of the NFL Pension Plan
April 25, 2007
Page 3

29. Lloyd N. Nilsen;

30. Gary A. Crep;

31. Richard R. Waldie;

32. Robert T. Finney;

33. Dennis A. Vitale;

34. Laurence J. Robicheau;

35. Steven R. Wallner;

36. Benedict Saurino;

37. Guy Scantlebury;

38. Richard T. Jarrett;

39. Charles J. Sickels;

40. William R. Hausmann;

41. James J. Stever, Jr.

42. Donald P. Hoffman;

43. Alan L. Stoops;

44. Diogenes K. Galanos;

45. Bruce R. Stock;

46. John R. Thurston;

47. Clifford M. Spingler;

48. Emmett C. Scott;

49. Thomas S. Kostecke; and

50. J. Bernard Redd.

Schnader
ATTORNEYS AT LAW

Committee of the NFL Pension Plan
April 25, 2007
Page 4

The former DPAs we represent are:

1. Russell C. Anderson;

2. Walter Behrens;

3. Clarence Benham;

4. James A. Clark;

5. John Cody;

6. Clarence Cook;

7. Estate of Bernard Corbit;

8. Dwaine Converson;

9. Daniel DiPirro;

10. Richard Dreiwitz;

11. Cyril Gamber;

12. Frederick Wallace Ford;

13. Michael Goergen;

14. Joseph Gordon, Sr.;

15. Warren Griffin;

16. Ray Jackson;

17. Harold E. Jacobs;

18. William J. Knierim;

19. Thomas Lavin;

20. John Maye;

21. David McClugage;

22. David Milroy;

NYDATA 287367_1

Schnader Harrison Segal & Lewis LLP

Schnader
ATTORNEYS AT LAW

Committee of the NFL Pension Plan
April 25, 2007
Page 5

        23. Charles Monroe;

        24. James O'Brien;

        25. Peter Pallatroni;

        26. Samuel Joseph Reed;

        27. Edward Skelly; and

        28. Thomas Taylor.

We anticipate your prompt response, consistent with the dictates of the Employee Retirement Income and Security Act of 1974.

Sincerely,

*M. Christine Carty*

M. Christine Carty
For SCHNADER HARRISON SEGAL & LEWIS LLP

MCC:sh
cc: Robert J. Costello, Esquire (via email)

# Exhibit 5

May-23-07   04:19pm   From-                                    T-238   P.002/003   F-305

# Schnader
### ATTORNEYS AT LAW

140 BROADWAY   SUITE 3100
NEW YORK, NY 10005-1101
212.973.8000   FAX 212.972.8798   schnader.com

May 16, 2007

M. Christine Carty
Direct Dial 212-973-8012
Direct Fax 212-972-8798
E-mail: ccarty@schnader.com

Committee of the NFL Pension Plan
Attention: Jim McCloskey
280 Park Avenue
New York, New York 10017

> **RE:** **Drug Program Agents**
> <u>Our File No.: 3009452-0001</u>

Dear Mr. McCloskey:

Further to our letter of April 25, 2007, our firm represents, with Robert Costello of Levy Tolman & Costello, a number of present and former Drug Program Agents ("DPAs"). The purpose of this letter is to request that each of our clients be given benefits, both prospectively and retroactively from the date of first employment, as they are entitled as participants under the following ERISA Plans:

- NFL EMPLOYEE RECIPROCAL FLEXIBLE BENEFITS PLAN

- NFL PENSION PLAN

- NFL OFFICE PENSION PLAN

- NFL MANAGEMENT COUNCIL PENSION PLAN

- NFL OFFICE SUPPLEMENTAL PENSION PLAN

- NFL CAPITAL ACCUMULATION PLAN

The additional DPAs we have been retained to represent since our April 25 letter are:

1. Thomas Carter; and

2. Charles W. Harvey.

Schnader Harrison Segal & Lewis LLP
NEW YORK    PENNSYLVANIA    CALIFORNIA    WASHINGTON, DC    NEW JERSEY
NYDATA 287367_2

Schnader
ATTORNEYS AT LAW

Committee of the NFL Pension Plan
May 16, 2007
Page 2

We anticipate your prompt response, consistent with the dictates of the Employee
Retirement Income and Security Act of 1974.

Sincerely,

M. Christine Carty

M. Christine Carty
For SCHNADER HARRISON SEGAL & LEWIS LLP

MCC:sh
cc: Robert J. Costello, Esquire (via email)

# Exhibit 6

Jun-04-07   12:44pm   From-                                    T-244   P.002/003   F-326



140 BROADWAY  SUITE 3100
NEW YORK, NY 10005-1101
212 973.8000  FAX 212.972.8798  schnader.com

May 25, 2007

M. Christine Carty
Direct Dial 212-973-8012
Direct Fax 212-972-8798
E-mail: ccarty@schnader.com

06-04-07P12:25 FILE

Committee of the NFL Pension Plan
Attention: Jim McCloskey
280 Park Avenue
New York, New York 10017

**RE:  Drug Program Agents**
**Our File No.: 3009452-0001**

Dear Mr. McCloskey:

Further to our letter of April 25, 2007, our firm represents, with Robert Costello of Levy Tolman & Costello, a number of present and former Drug Program Agents ("DPAs"). The purpose of this letter is to request that each of our clients be given benefits, both prospectively and retroactively from the date of first employment, as they are entitled as participants under the following ERISA Plans:

- NFL EMPLOYEE RECIPROCAL FLEXIBLE BENEFITS PLAN
- NFL PENSION PLAN
- NFL OFFICE PENSION PLAN
- NFL MANAGEMENT COUNCIL PENSION PLAN
- NFL OFFICE SUPPLEMENTAL PENSION PLAN
- NFL CAPITAL ACCUMULATION PLAN

The additional DPAs we have been retained to represent since our April 25 letter are:

1. Raymond Egan, Jr.; and
2. Nicholas DiFalco.

Schnader
ATTORNEYS AT LAW

Committee of the NFL Pension Plan
May 25, 2007
Page 2

We anticipate your prompt response, consistent with the dictates of the Employee
Retirement Income and Security Act of 1974.

Sincerely,

M. Christine Carty

M. Christine Carty
For SCHNADER HARRISON SEGAL & LEWIS LLP

MCC:sh
cc: Robert J. Costello, Esquire (via email)

# Exhibit 7

RECEIVED

**Internal Revenue Service**
SB/SE, Compliance
BIRSC, SS-8 Unit

JUN 0 4 2007

NFL MANAGEMENT COUNCIL

**Department of the Treasury**
**40 Lakemont Road**
**Newport, VT 05855-1555**

May 31, 2007

The National Football League
  Management Council
280 Park Avenue
New York, NY 10017-1216-993

**Form: SS-8**

**Person to Contact:**
**Karen Fournier 03-00023**

**Telephone Number: 802-751-4426**
**Facsimile Number:  802-751-4455**

**Refer Reply to: Case # 49602**

Dear Sir or Madam:

This is in response to your authorized representative's, Charles Stewart, request for a technical advice memoranda (hereinafter "TAM") pursuant to Section 5.02 of Revenue Procedure 2007-2 regarding the issue of whether the Drug Program Agents (DPAs) are employees of the NFLMC or independent contractors.

It has been determined that the issuance of a TAM stemming from the reconsideration letter issued by this office on February 27, 2007 is not the best format for rendering the legal advice requested.  Also, the SS-8 Unit does not have jurisdiction over this matter at this time.  Therefore, your request is being denied.

Please refer to section 5.03 of Revenue Procedure 2007-2 regarding your appeal rights to this denial of your technical advice memorandum request.

Sincerely,

Karen Fournier
Lead Tax Technician

cc:  Charles V. Stewart, Esq.

# Exhibit 8

Jun-05-07  02:12pm  From-                                          T-246  P.002/003  F-335

# Schnader
### ATTORNEYS AT LAW

140 BROADWAY   SUITE 3100
NEW YORK, NY 10005-1101
212.973.8000  FAX 212.972.8798  schnader.com

June 4, 2007

M. Christine Carty
Direct Dial 212-973-8012
Direct Fax 212-972-8798
E-mail: ccarty@schnader.com

Committee of the NFL Pension Plan                    06-05-07 A11:20 FILE
Attention: Jim McCloskey
280 Park Avenue
New York, New York 10017

                        **RE:   Drug Program Agents**
                               **Our File No.:  3009452-0001**

Dear Mr. McCloskey:

        Further to our letter of April 25, 2007, our firm represents, with Robert Costello of Levy
Tolman & Costello, a number of present and former Drug Program Agents ("DPAs"). The
purpose of this letter is to request that each of our clients be given benefits, both prospectively
and retroactively from the date of first employment, as they are entitled as participants under the
following ERISA Plans:

- NFL EMPLOYEE RECIPROCAL FLEXIBLE BENEFITS PLAN

- NFL PENSION PLAN

- NFL OFFICE PENSION PLAN

- NFL MANAGEMENT COUNCIL PENSION PLAN

- NFL OFFICE SUPPLEMENTAL PENSION PLAN

- NFL CAPITAL ACCUMULATION PLAN

The additional DPAs we have been retained to represent since our April 25 letter are:

1. Andrew H. Nash;

2. George A. Miller; and

3. Richard Herman.

Schnader Harrison Segal & Lewis LLP
NEW YORK   PENNSYLVANIA   CALIFORNIA   WASHINGTON DC   NEW JERSEY   NYDATA 288892_1

Schnader
ATTORNEYS AT LAW

Committee of the NFL Pension Plan
June 4, 2007
Page 2

We anticipate your prompt response, consistent with the dictates of the Employee
Retirement Income and Security Act of 1974.

Sincerely,

M. Christine Carty

M. Christine Carty
For SCHNADER HARRISON SEGAL & LEWIS LLP

MCC:sh
cc: Robert J. Costello, Esquire (via email)

# Exhibit 9

074685.0168

# AKIN GUMP
# STRAUSS HAUER & FELDLLP

━━━━━━━━━ Attorneys at Law

**LAWRENCE L. LAMADE**
202-887-4201/fax: 202-887-4288
llamade@akingump.com

June 6, 2007

VIA OVERNIGHT DELIVERY

M. Christine Carty
Schnader Harrison Segal & Lewis LLP
140 Broadway
Suite 3100
New York, N.Y. 10005-1101

Re: Request for Eligibility Determination

Dear Ms. Carty:

Your letter of May 16, 2007, to Jim McCloskey was referred to me for reply. In that letter you request that each of your clients, all of whom are former Drug Program Agents, be given benefits, both prospectively and retroactively from the date of their first service, under six enumerated employee benefit plans. As a threshold matter, I believe that only three of the six listed plans are relevant. We have been informed that no employee of the NFL Management Council ever was eligible to participate in the NFL Office Supplemental Pension Plan. We also have been informed that the NFL Office Pension Plan and the NFL Management Council Pension Plan were merged into the NFL Pension Plan, so that a benefit granted under that plan would include any benefits earned under the other two. Therefore, we believe your request is limited to the NFL Employee Reciprocal Flexible Benefits Plan, the NFL Pension Plan, and the NFL Capital Accumulation Plan. Please advise us immediately if you disagree.

Even though you state you are requesting "benefits" on behalf of your clients, we believe that at this time you are instead requesting a determination that your clients are eligible for benefits under the plans. Applying for a benefit under the Flex Plan, for example, requires submitting a request that a named participant be reimbursed for a specific covered expense, and no such specific claim was submitted. Likewise, benefits under the NFL Capital Accumulation Plan are based entirely on the participant's own contributions. It appears that none of your clients ever made such contributions, so it is not certain what "benefit" they are seeking under this plan either. Please ask that each of your clients complete, for each plan, a short "Request for Eligibility Determination" form, a copy of which is enclosed.

We believe the need for such a form is obvious and hope you will agree. Each plan has specific eligibility requirements and allocates the duty to make a determination of eligibility to a

AKIN GUMP
STRAUSS HAUER & FELDₗₗₚ
Attorneys at Law

M. Christine Carty
June 6, 2007
Page 2

specific fiduciary. In addition, while your clients share important characteristics, there may be
some relevant differences. In any case, the form gives each applicant an opportunity to present
facts that may strengthen his particular case. Finally, we expect the applicable fiduciary of each
plan may be concerned with the completeness of the NFL Management Council's records
concerning the extent of each applicant's service, particularly for periods long past. This form
gives each applicant the opportunity to provide his own estimate of the extent of his service.

    For your convenience, all Request forms should be returned to James McCloskey, who
will ensure they are delivered to the appropriate plan fiduciary. Once the forms are received,
they will be processed and the decision communicated directly to you, unless you advise us to
communicate directly to your clients. The response will state the basis for the decision and, if
the decision is adverse, explain the procedures for appealing it.

    Please do not hesitate to contact me if you have any questions or comments.

                                    Sincerely,

                                    Lawrence L. Lamade

Enclosures

cc: James McCloskey

# Exhibit 10

# Schnader
### ATTORNEYS AT LAW

140 BROADWAY    SUITE 3100
NEW YORK, NY 10005-1101
212.973.8000    FAX 212.972.8798    schnader.com

June 11, 2007

M. Christine Carty
Direct Dial 212-973-8012
Direct Fax 212-972-8798
E-mail: ccarty@schnader.com

## VIA FEDERAL EXPRESS

Committee of the NFL Pension Plan
Attention: Jim McCloskey
280 Park Avenue
New York, New York 10017

06-12-07A10:25 FILE

> RE:    **Drug Program Agents**
>        **Our File No.: 3009452-0001**

Dear Mr. McCloskey:

Further to our letter of April 25, 2007, our firm represents, with Robert Costello of Levy Tolman & Costello, a number of present and former Drug Program Agents ("DPAs"). The purpose of this letter is to request that each of our clients be given benefits, both prospectively and retroactively from the date of first employment, as they are entitled as participants under the following ERISA Plans:

- NFL EMPLOYEE RECIPROCAL FLEXIBLE BENEFITS PLAN
- NFL PENSION PLAN
- NFL OFFICE PENSION PLAN
- NFL MANAGEMENT COUNCIL PENSION PLAN
- NFL OFFICE SUPPLEMENTAL PENSION PLAN
- NFL CAPITAL ACCUMULATION PLAN

The additional DPAs we have been retained to represent since our April 25 letter are:

1. Stanley Amrozowics;
2. John H. Thurston;

Schnader
ATTORNEYS AT LAW

Committee of the NFL Pension Plan
June 11, 2007
Page 2

      3.  R. Edward Lee, Jr.;

      4.  Estate of David S. Brown; and

      5.  Estate of Ronald W. Montague.

      We anticipate your prompt response, consistent with the dictates of the Employee Retirement Income and Security Act of 1974.

                Sincerely,

                M. Christine Carty
                For SCHNADER HARRISON SEGAL & LEWIS LLP

MCC:sh
cc:  Robert J. Costello, Esquire (via email)

# Exhibit 11

# Schnader
## ATTORNEYS AT LAW

140 BROADWAY  SUITE 3100
NEW YORK, NY 10006-1101
212.973.8000  FAX 212.972.8798  schnader.com

June 27, 2007

M. Christine Carty
Direct Dial 212-973-8012
Direct Fax 212-972-8798
E-mail: ccarty@schnader.com

**VIA EMAIL: llamade@akingump.com**

Lawrence Lamade, Esquire
Akin Gump Strauss Hauer & Feld, LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564

**RE:    Drug Program Agents**
      **Our File No.: 3009452-0001**

Dear Mr. Lamade:

We are writing to respond to your letter of June 6, 2007.

Your letter states that my May 16, 2007 letter "to Jim McCloskey was referred to [you] for reply." Initially, we assume that your letter replies also to all of our letters on behalf of the other clients dated April 25, 2007, May 16 and 25, 2007, and June 6 and 11, 2007. If this is not correct, please inform me immediately.

Second, would you please advise in what capacity you are acting? Do you represent the Plans and/or the Plan fiduciaries? Do you also represent the NFL Management Council ("NFLMC")?

Third, you state that replies should be sent to Jim McCloskey who will route them to the Plan fiduciaries. Please advise who are the Plan fiduciaries for each Plan.

Your letter includes three (3) questionnaires, one for each of the NFL Pension Plan, the NFL Employee Reciprocal Flexible Benefits Plan and the NFL Capital Accumulation Plan. It does not enclose the standard application forms for each of these plans. Please forward those application forms to me for distribution to our clients.

You are correct that our clients seek a determination from the Plans that they are eligible for benefits under each Plan. In determining eligibility of our clients, first, their status as employees must be confirmed and, thereafter, their individual qualifications must be considered. The Internal Revenue Service ("IRS") determined on February 27, 2007 that Thomas Lavin is or was an employee of the NFLMC. The IRS issued a similar ruling regarding Mr. Lavin and James Clark in July and August 2006. Although the NFLMC appealed the July 2006 and

# Schnader
### ATTORNEYS AT LAW

Lawrence Lamade, Esquire
June 27, 2007
Page 2

February 2007 rulings regarding Mr. Lavin, via a request for Technical Advisory Memorandum ("TAM"), the February 2007 ruling remains in effect.

The NFLMC has argued that the IRS follows the common-law agency test (plus some additional factors) in determining whether an individual is an employee. We agree. Cases under ERISA also apply the common-law agency test for determining who qualifies as an "employee". *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992). That being the case, since all of our clients operated as DPAs under the uniformly applied NFL Drug Testing Program, there are no material differences between DPAs in their relationship with the NFLMC with regard to the criteria of the common-law agency test. Thus, we contend that the outcome for each of our other 89 clients must be the same as that of Mr. Lavin.

The NFLMC has taken the contrary position. As recently as April 13, 2007, the NFLMC argued that Thomas Lavin "served as an independent contractor" in its application for a Technical Advisory Memorandum:

"The basic issue is whether [Mr. Lavin] performed the services of a DPA as an employee of the Management Council. This issue turns on the question of whether the Management Council had the right to control the manner and means by which the Applicant performed his services. In determining this test was met, the Regional Office concluded: 'The NFLMC is in charge of the drug testing for the National Football League.' The Management Council strongly believes that the conclusion is incorrect.

...

Most fundamentally, the Management Council does not have the right to right to [sic], nor does it in fact control the manner and means by which the DPAs perform their services..."

This appears to be the current position of the NFLMC. As recently as June 25, 2007, David Rappaport of your firm represented to a hearing officer of the Texas Unemployment Insurance Appeal Board that the February 2007 decision of the IRS should be given no weight because it has been appealed by the NFLMC.

Schnader
ATTORNEYS AT LAW

Lawrence Lamade, Esquire
June 27, 2007
Page 3

Please confirm that the NFLMC continues to maintain that our 90 DPA clients were not employees of the NFLMC. Please also confirm that the Plan fiduciaries will not treat the DPAs as employees. If the NFLMC and the Plan fiduciaries agree that the DPAs are or were employees of the NFLMC, we will arrange for responses to the questionnaires enclosed with your letter.

Thank you. I look forward to your response.

Sincerely yours,

M. Christine Carty

M. Christine Carty
For SCHNADER HARRISON SEGAL & LEWIS LLP

MCC:sh

# Exhibit 12



### NATIONAL FOOTBALL LEAGUE

September 10, 2007

Ms. Christine Carty, Esq.
Schnader Harrison Segal & Lewis LLP
140 Broadway
Suite 3100
New York, NY 10005-1101

      Re:   Drug Program Agents

Dear Ms. Carty,

      I write on behalf of the NFL Employee Benefit Committee regarding your letters of April 25, May 16, May 25, June 4, and June 11, 2007, as well as your June 27, 2007 letter to Lawrence L. Lamade, Esq. of Akin Gump Strauss Hauer & Feld LLP. Mr. Lamade forwarded your June 27 correspondence to the Committee's attention.

      Your letters indicate that you represent approximately ninety (90) current and former Drug Program Agents with respect to potential benefit claims under six current and former employee benefit plans sponsored by the NFL and its related entities: (1) the NFL Employee Reciprocal Flexible Benefits Plan; (2) the NFL Pension Plan; (3) the NFL Office Pension Plan; (4) the NFL Management Council Pension Plan; (5) the NFL Office Supplemental Pension Plan; and (6) the NFL Capital Accumulation Plan. Your June 27 letter states that your clients "seek a determination from the Plans that they are eligible for benefits under each Plan."

      The Committee intends to treat your June 27 letter as a claim on behalf of your clients for benefits under the terms of the Plans.

      To facilitate the review of your clients' claims, please send to my attention at the below address any additional information that you would like Committee to consider in deciding your clients' claims:

NFL Employee Benefit Committee
Attn: Doug O'Connell
280 Park Avenue
New York, NY 10017

      If you do not intend to supplement your clients' claims with anything beyond your June 27 letter, or if you disagree with the Committee's characterization of your June 27 letter, please inform the Committee through a reply letter to my attention.

You should hear from the Committee regarding the status of your claims within ninety (90) days. If additional time is needed to resolve your claims, you will receive a written notice of the need for a longer processing period, the reasons for the longer period, and a date on which you can expect to receive a decision on your claims.

Please contact me if you have any further questions regarding the review of your clients' claims.

Sincerely,

Doug O'Connell
on behalf of the NFL Employee Benefit Committee

2

# Exhibit 13

**NFL**

## NATIONAL FOOTBALL LEAGUE

November 21, 2007

M. Christine Carty, Esq.
Schnader Harrison Segal & Lewis LLP
140 Broadway
Suite 3100
New York, NY 10005-1101

     Re:   Drug Program Agents

Dear Ms. Carty,

     I am writing on behalf of the NFL Employee Benefit Committee (the "Committee") regarding your letter of June 27, 2007. Your June 27th letter requested eligibility determinations and claimed benefits on behalf of 90 former Drug Testing Program Agents ("Agents") under six employee benefit plans ("Plans").

     The Committee resolved some of the Agents' claims. This letter informs you of the decisions that the Committee has made.[1]

### Background

     Your June 27, 2007, letter asserts that the Agents were "common law" employees of the Management Council. This assertion relies on a 2006 determination by an IRS employment tax auditor that a common law employer-employee relationship existed between the Management Council and two Agents, Thomas E. Lavin and James A. Clark. On February 27, 2007, the IRS's SB/SE division reaffirmed the auditor's determination with respect to Mr. Lavin.

     You contend that the IRS's determination with respect to Mr. Lavin establishes that all 90 Agents were common law employees of the Management Council:

> The [Management Council] has argued that the IRS follows the common-law agency test (plus some additional factors) in determining whether an individual is an employee. We agree. Cases under ERISA also apply the common-law agency test for determining who qualifies as an "employee". *Nationwide Mut. Ins. Co. v.*

---

[1]    Most of the Agents have provided services to the Management Council for many years (in some cases for as long as 13 years or longer). The Committee and the Plans reserve the right to assert the statute of limitations, laches, and all other defenses that may be available as a result of the lengthy period of time that elapsed before the submission of the Agents' benefit claims. The Committee's decisions are subject to the foregoing reservation of rights.

*Darden*, 503 U.S. 318 (1992). That being the case, since all of our clients operated as [Agents] under the uniformly applied NFL Drug Testing Program, there are no material differences between [Agents] in their relationship with the [Management Council] with regard to the criteria of the common-law agency test. Thus, we contend that the outcome for each of our other 89 clients must be the same as that of Mr. Lavin.

You contend that, because of the Agents' claimed status as common law employees of the Management Council, the Agents were eligible to participate in the following employee benefit plans:

(1)    NFL Pension Plan ("NFLPP");

(2)    NFL Management Council Pension Plan ("MCPP")[2];

(3)    NFL Office Pension Plan ("OPP");

(4)    NFL Office Supplemental Pension Plan ("OSPP");

(5)    NFL Capital Accumulation Plan ("CAP"); and

(6)    NFL Employee Reciprocal Flexible Benefits Plan ("NFL Flex").

The Committee has discretionary authority to interpret the provisions of the Plans and to resolve claims for benefits under the Plans.[3]

In its letters dated September 10 and September 24, 2007, the Committee informed you of your right to submit additional information to support your clients' claims. In a letter dated September 27, 2007, you informed the Committee that you did not intend to provide any additional information.

Your June 27, 2007, letter requested determinations regarding both the status of each Agent as a common law employee and the eligibility of each Agent to participate in the Plans. After considering your letter, the Committee decided to resolve a number of potentially dispositive issues first, since resolution of those issues could make it unnecessary for the Committee to decide whether each of the 90 Agents was a common law employee and, if so, during what period of time.

---

[2]    On March 30, 2001, the MCPP merged with four other money purchase pension plans to create the NFLPP. (*See* March 30, 2001 NFLPP § 1.3). Accordingly, the Committee considered the Agents' claims under the MCPP and the NFLPP jointly.

[3]    *See, e.g.*, March 30, 2001 NFLPP § 12.2; April 1, 1997 MCPP § 11.2; January 1, 2002 CAP § 9.07; April 1, 1997 OPP § 12.2; April 1, 1989 OSPP § 10.4; April 1, 1992 NFL Flex § 5.04.

2

## OPP and OSPP

*Plans Do Not Cover Management Council Employees.* You contend that the Agents were common law employees of the Management Council. However, neither the OPP nor the OSPP has ever allowed Management Council employees to participate in the plan. Both the OPP and the OSPP limit participation to eligible employees of the NFL League Office. (*See, e.g.*, April 1, 1997 OPP §§ 2.1(l), 2.1(m), 3.1(b); April 1, 1989 OSPP §§ 2.1(r), 2.1(s), 3.1(b).) Therefore, even if the Agents were common law employees of the Management Council, their status as Management Council employees would not make them eligible to participate in the OPP or the OSPP.

## NFLPP, MCPP, CAP, and NFL Flex

*Agents Were Not Classified as Employees.* The April 1, 1997, restatement of the MCPP excludes any person "who is not classified as an employee by the Employer, but who is treated as an employee by reason of being treated as a 'common law' employee of the Employer." (*See* April 1, 1997 MCPP § 2.1(j)(3).) The January 1, 2002, restatement of the CAP excludes any person who is "not treated by the Employer as an employee for federal income tax or federal employment tax purposes." (*See* January 1, 2002 CAP § 2.01(o)(8).)

The Management Council never classified any Agent as an "employee," and has never treated any Agent as an employee for federal income tax or employment tax purposes.

*Agents Were Not Classified as Full-Time Employees And Did Not Regularly Work 30 Hours Per Week.* The Management Council's Adoption Certificates for NFL Flex exclude persons who are not "full-time salaried staff employees working 30 hours or more per week" or who are not "full-time employees who regularly work a minimum of 30 hours per week." (*See* August 1, 2003 NFL Flex Adoption Certificate ¶ 5; June 1, 1996 NFL Flex Adoption Certificate ¶ 5.)

The Management Council never classified any Agent as an "employee," a "full-time employee," or a "full-time salaried staff employee." In addition, although *some* Agents might have worked an average of 30 hours or more per week in *some* months, the Management Council's records indicate that *no* Agent "regularly work[ed] a minimum of 30 hours per week."

*Agents Were Per Diem Employees.* The NFLPP and the April 1, 1997 restatement of the MCPP exclude any "per diem employee" of the Management Council. (*See* March 30, 2001 NFLPP § 2.1(m)(6); April 1, 1997 MCPP § 2.1(j)(5).) The Management Council's March 30, 2001 Adoption Certificate for the CAP also excludes from eligibility all "employees paid on a per diem basis." (*See* March 30, 2001 CAP Adoption Certificate ¶ 2(b).)

Even if the Agents were common law employees of the Management Council, the Agents would be excluded from participation in the NFLPP and the CAP on the ground that they were "per diem" employees. The Agents did not work on a regular schedule and provided services only on an "as-needed" basis. Consistent with the Agents' provision of services on an as-needed

3

basis, the Agents did not receive regular salaries; they were compensated only for the hours and days they actually worked; and the Management Council did not restrict the Agents from performing services for others. *See, e.g., Sayler v. Ret. Comm.*, No. 4:05CV138 JLH, 2007 U.S. Dist. LEXIS 54399, at *7 (E.D. Ark. July 25, 2007) (describing "per diem employee" as an employee who "would work on an as-needed basis"); *Crosdale v. Indian River Mem. Hosp.*, 299 F. Supp. 2d 1247, 1250 (S.D. Fla. 2003) (describing "per diem employees" as "employees who are scheduled and called into work by the [employer] only as needed").

  ***Some Agents Were Not Paid Directly by the Management Council.*** The NFLPP, the April 1, 1997 restatement of the MCPP, the January 1, 2002 restatement of the CAP, and NFL Flex all exclude persons whose basic compensation for services rendered for the Management Council is "not paid directly" by the Management Council. (*See* March 30, 2001 NFLPP § 2.1(m)(5); April 1, 1997 MCPP § 2.1(j)(5); January 1, 2002 CAP § 2.01(o)(6); April 1, 1992 NFL Flex § 2.01(m)(iii).)

  The Agents were paid by submitting invoices to the Management Council detailing their hours worked and their expenses. The Management Council paid 67 of the 90 Agents directly, based on those invoices. However, the Management Council did not pay the remaining 23 Agents directly; the Management Council made payments for their services to the companies that employed them.[4]

## Decision

  Based upon the foregoing, the Committee has made the following determinations:

  (1)    No Agent was eligible to participate in the OPP and OSPP;

  (2)    No Agent was eligible to participate in NFL Flex;

  (3)    No Agent was eligible to participate in the MCPP or the NFLPP on or after April 1, 1997; and

  (4)    No Agent was eligible to participate in the CAP on or after March 30, 2001.

Accordingly, the Committee **denies** all of the Agents' benefit claims under the OPP, the OSPP, and NFL Flex. The Committee also **denies** all of the Agents' benefit claims under the MCPP and NFLPP insofar as they relate to benefits accruing on or after April 1, 1997.[5] In addition, the

---

[4]    Those 23 Agents, and the companies through which they rendered their services, are identified in Attachment A.

[5]    Management Council records indicate that 37 Agents, identified in Attachment B, did not provide any services prior to April 1, 1997. Those 37 Agents' claims under the MCPP and NFLPP are denied in full.

4

Committee **denies** all of the Agents' benefit claims under the CAP insofar as they relate to benefits accruing on or after March 30, 2001.[6]

The Committee reserves its decision with respect to any benefits that an Agent might have accrued on the basis of any services performed by the Agent for the Management Council before April 1, 1997 (under the MCPP and the NFLPP) or on the basis of any services performed by the Agent for the Management Council before March 30, 2001 (under the CAP). The Committee will address these claims at a future meeting, and will notify you of its decisions regarding these claims no later than December 24, 2007.

## ERISA Rights

The Committee has reached a partial decision regarding the Agents' claims. However, the Committee has not yet resolved all claims made by every Agent. Accordingly, if you or any Agent wishes to have this decision reviewed, you may request such a review within 60 days following receipt of the Committee's final decision resolving the Agents' remaining claims. This request must be in writing, and must be sent to:

NFL Employee Benefit Committee
Attn: Doug O'Connell
280 Park Avenue
New York, NY 10017

In addition, you or your clients may ask to see, free of charge, relevant documents and other material, and you may submit issues and comments in writing to be considered as part of such review.

If you request a further review, the Committee will provide a decision within a reasonable period of time. The Committee will attempt to provide its final decision within 60 days following receipt of your request for review. However, special circumstances may necessitate an extension of this 60-day period. In such an event, the Committee will provide written notice of the extension, and will both explain the special circumstances requiring the extension and indicate the date as of which the Committee's final decision will be made.

---

[6]     Management Council records indicate that 23 Agents, identified in Attachment B, did not provide any services prior to March 30, 2001. Those 23 Agents' claims under the CAP are denied in full.

After any such review, the Committee's decision will be final. If an Agent's claim is denied in whole or in part after review, the Agent will then have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended.

Sincerely,

Douglas O'Connell

Doug O'Connell
On behalf of the NFL Employee Benefit Committee

6

## ATTACHMENT A

Agents performing services through separate companies:

| Agent | Company Name |
|---|---|
| Russell Anderson | Russell C. Anderson Associates, Inc. |
| Thomas Carter | Thomas Carter and Associates, Inc. |
| Dwaine Converson | The Timothy Group |
| Clarence Cook | Cook International, Inc. |
| Michael Dennis | Dennis & Salp, Inc. |
| Richard Dreiwitz | Taypal, Inc. |
| Raymond Egan, Jr. | The Egan Company, Inc. |
| Michael Goergen | Eagle Training, LLC |
| Charles Harvey | Eagle Point, Inc. |
| Ray Jackson | Jackson Investigations, Inc. |
| R. Edward Lee | Ed Lee Associates, Inc. |
| William Logay | Wm. J. Logay Investigations, Inc. |
| John Maye | Taypal, Inc. |
| David McCluggage | Nationwide Investigative Services |
| Ronald Montague | Montague & Associates, Ltd. |
| Peter Pallatroni | Taypal, Inc. |
| Bernard Redd | Integrated Resource Group |
| James Salp | Dennis & Salp, Inc. |
| Emmett Scott | Sandpiper/Valley Investigations |
| Clifford Spingler | C&J Associates |
| Robert Stauffer | Collections & Consulting, Inc. |
| Thomas Taylor | Taypal, Inc. |
| Dennis Vitale | G.A.D. Tax Services |

## ATTACHMENT B

Agents performing services only after April 1, 1997:

| Agent | Company Name |
|---|---|
| Stanley Amrozowics | |
| Clarence Benham | |
| Lonnie Blake | |
| Thomas Carter | Thomas Carter and Associates, Inc. |
| Dwaine Converson | The Timothy Group |
| Gary Crep | |
| Florilis Davis | |
| Michael Dennis | Dennis & Salp, Inc. |
| Nicholas DiFalco | |
| Daniel DiPirro | |
| Robert Finney | |
| Cyril Gamber | |
| Michael Goergen | Eagle Training, LLC |
| Warren Griffin | |
| R. Edward Lee | Ed Lee Associates, Inc. |
| George Miller | |
| Andrew Nash | |
| David Milroy | |
| Thomas Oberschmidt | |
| James O'Brien | |
| William Richardson | |
| Laurence Robicheau | |
| Charles Roe | |
| James Salp | Dennis & Salp, Inc. |
| Benedict Saurino | |
| Guy Scantlebury | |
| Dennis Schoenrock | |
| Emmett Scott | Sandpiper/Valley Investigations |
| Clifford Spingler | C&J Associates |
| Robert Starratt | |
| James Stever | |
| Bruce Stock | |
| John H. Thurston | |
| John R. Thurston | |
| Robert Toothman | |
| Richard Waldie | |
| Steven Wallner | |

## ATTACHMENT C

Agents performing services only after March 30, 2001:

| Agent | Company Name |
|---|---|
| Stanley Amrozowics | |
| Clarence Benham | |
| Thomas Carter | Thomas Carter and Associates, Inc. |
| Florilis Davis | |
| Michael Dennis | Dennis & Salp, Inc. |
| Nicholas DiFalco | |
| Robert Finney | |
| Michael Goergen | Eagle Training, LLC |
| Warren Griffin | |
| R. Edward Lee | Ed Lee Associates, Inc. |
| George Miller | |
| Andrew Nash | |
| Laurence Robicheau | |
| James Salp | Dennis & Salp, Inc. |
| Benedict Saurino | |
| Guy Scantlebury | |
| Dennis Schoenrock | |
| Emmett Scott | Sandpiper/Valley Investigations |
| Robert Starratt | |
| James Stever | |
| John H. Thurston | |
| Richard Waldie | |
| Steven Wallner | |

# Exhibit 14

# Schnader
### ATTORNEYS AT LAW

140 BROADWAY   SUITE 3100
NEW YORK, NY 10005-1101
212 973 8000   FAX 212 972 8798   schnader com

December 7, 2007

M. Christine Carty
Direct Dial 212-973-8012
Direct Fax 212-972-8798
E-mail: ccarty@schnader.com

## BY HAND

National Football League
280 Park Avenue
New York, New York 10017
Attn: Doug O'Connell

**Re:   Drug Program Agents**

Dear Mr. O'Connell:

I am in receipt of your letter dated November 21, 2007, and received, by hand, November 26, 2007.

It is our clients' position that the NFL Employee Benefit Committee, by failing to respond timely to our requests, is in a situation of "deemed denial" under ERISA regulations. This letter is not intended as, nor should it be construed as, a waiver of that position.

Your letter takes an individualized approach to consideration of the rights of the various Drug Program Agents, an approach we invited many months ago. There are numerous plan documents to which your letter refers which we do not possess, despite our prior requests. We therefore request that you immediately forward:

1.   March 30, 2001 NFLPP.

2.   April 1, 1997 MCPP.

3.   January 1, 2002 CAP.

4.   April 1, 1997 OPP.

5.   April 1, 1989 OSPP.

6.   April 1, 1992 NFL Flex.

7.   March 30, 2001 CAP Adoption Certificate.

8.   August 1, 2003 NFL Flex Adoption Certificate.



Doug O'Connell
National Football League
December 7, 2007
Page 2

      9.     June 1, 1996 NFL Flex Adoption Certificate.

Thank you for your anticipated cooperation.

If you have any questions concerning our request, please feel free to call me at the number listed above.

Sincerely yours,

M. Christine Carty
For SCHNADER HARRISON SEGAL & LEWIS LLP

MCC:sh
cc: Robert J. Costello, Esquire (via email)

# Exhibit 15



## NATIONAL FOOTBALL LEAGUE

December 18, 2007

M. Christine Carty, Esq.
Schnader Harrison Segal & Lewis LLP
140 Broadway
Suite 3100
New York, NY 10005-1101

   Re:  Drug Program Agents

Dear Ms. Carty,

   I write on behalf of the NFL Employee Benefit Committee, in response to your letter of December 7, 2007.

   Enclosed with this letter please find copies of:

  1.  NFL Pension Plan (March 30, 2001)

  2.  NFL Management Council Pension Plan (April 1, 1997)

  3.  NFL Capital Accumulation Plan ("CAP") (January 1, 2002)

  4.  NFL Office Pension Plan (April 1, 1997)

  5.  NFL Office Supplemental Pension Plan (April 1, 1989)

  6.  NFL Employee Reciprocal Flexible Benefits Plan ("NFL Flex") (April 1, 1992)

  7.  CAP Adoption Certificate (March 30, 2001)

  8.  NFL Flex Adoption Certificate (August 1, 2002)

  9.  NFL Flex Adoption Certificate (June 1, 1996)

   Please contact me if you have any questions regarding the enclosed documents.

Sincerely,

Douglas O'Connell

Doug O'Connell
on behalf of the NFL Employee Benefit Committee

Enclosures

280 Park Avenue, New York, New York 10017   (212) 450-2000   FAX (212) 655-5519

# Exhibit 16

**NATIONAL FOOTBALL LEAGUE**

December 21, 2007

M. Christine Carty, Esq.
Schnader Harrison Segal & Lewis LLP
140 Broadway
Suite 3100
New York, NY 10005-1101

      Re:    Drug Program Agents

Dear Ms. Carty,

      I am writing on behalf of the NFL Employee Benefit Committee (the "Committee") regarding your letter of June 27, 2007. Your June 27th letter requested eligibility determinations and claimed benefits on behalf of 90 former Drug Testing Program Agents ("Agents") under six employee benefit plans ("Plans").

      By letter dated November 21, 2007, the Committee resolved some of the Agents' claims. The Committee has now decided the Agents' remaining claims. This letter informs you of the Committee's decision.[1]

### Background[2]

      The Committee's November 21st letter informed you that the Committee had decided to deny all of the Agents' benefit claims under three Plans: the NFL Office Pension Plan; the NFL Office Supplemental Pension Plan; and, the NFL Employee Reciprocal Flexible Benefits Plan. The Committee also denied all of the Agents' benefit claims (a) under the NFL Management Council Pension Plan ("MCPP") and the NFL Pension Plan insofar as they relate to benefits accruing on or after April 1, 1997, and (b) under the NFL Capital Accumulation Plan ("CAP") insofar as they relate to benefits accruing on or after March 30, 2001.

      In its November 21st letter, the Committee reserved decision on two issues: (1) any benefits that an Agent might have accrued under the MCPP on the basis of services performed by

---

[1]    Most of the Agents have provided services to the Management Council for many years (in some cases for as long as 13 years or longer). The Committee and the Plans reserve the right to assert the statute of limitations, laches, and all other defenses that may be available as a result of the lengthy period of time that elapsed before the submission of the Agents' benefit claims. The Committee's decisions are subject to the foregoing reservation of rights.

[2]    The background section of Committee's November 21st decision letter sets forth the history of the Agents' claims, and is incorporated by reference into this letter.

the Agent for the Management Council before April 1, 1997, and (2) any benefits that an Agent might have accrued under the CAP on the basis of services performed by the Agent for the Management Council before March 30, 2001.

The Management Council's records indicate that 53 Agents provided some services to the Management Council on or before April 1, 1997, and that 67 Agents provided some services to the Management Council on or before March 30, 2001.

## Decision

Prior to April 1, 1997, the MCPP stated that "any person employed by" the Management Council was eligible to participate in the MCPP after meeting certain service requirements. (*See* April 1, 1989 MCPP §§ 1.09, 2.01.) Between January 1, 1997 and March 30, 2001, the terms of the CAP similarly provided that any person (other than a player) "actively employed by" the Management Council was eligible to participate in the CAP after meeting certain service requirements.[3] (*See* January 1, 1989 CAP §§ 2.01(o), 3.01.)

The Committee has determined that the Management Council never intended to permit individuals who were classified as independent contractors to participate in the MCPP or the CAP, regardless of whether those individuals were later deemed to be common-law employees by a court or administrative agency. The Committee has not identified any instance in which an individual not on the Management Council's employee payroll, and not classified by the Management Council as an employee, was permitted to participate in either Plan. *See generally MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 481-82 (5th Cir. 2003) (plan administrator properly found "that no one had been paid benefits without first being on the Mobil payroll"); *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 14 (1st Cir. 2003) ("The administrator permissibly looked to [the sponsor's] intention in defining the Plan's scope.").

The Management Council's records indicate that it has consistently administered the MCPP and the CAP to exclude individuals who were not on the Management Council's employee payroll. As explained in the Committee's November 21st letter, the April 1, 1997 restatement of the MCPP includes a number of exclusions that apply to some or all of the Agents. Only one of the exclusions – for "per diem employees" – is stated to be "effective on the date of adoption of this restatement." (*See* April 1, 1997 MCPP § 2.1(j)(6).) The remaining exclusions – for any individual "not classified as an employee" and for any individual "not paid directly" by the Management Council – are not subject to similar temporal restrictions. (*See id.* §§ 2.1(j)(3), 2.1(j)(5).)

The Management Council's March 30, 2001, Adoption Certificate for the CAP also excludes all "employees paid on a per diem basis." (*See* March 30, 2001 CAP Adoption Certificate ¶ 2(b).) Unlike the parallel exclusion in the April 1, 1997 MCPP, this exclusion is not

---

[3]     The Management Council adopted the CAP on January 1, 1997, and did not sponsor a 401(k) plan prior to that date.

2

subject to a temporal restriction. The January 1, 2002 CAP restatement contains specific exclusions for persons "not treated by the Employer as an employee for federal income tax or federal employment tax purposes," and persons "not paid directly" by the Management Council. (*See* January 1, 2002 CAP §§ 2.01(o)(6); 2.01(o)(8).) Those exclusions also are not subject to a temporal restriction.

These exclusions should be taken into account in interpreting the eligibility provisions of the pre-April 1, 1997 MCPP and the pre-March 30, 2001 CAP. *See generally MacLachlan*, 350 F.3d 472. Importantly, the Management Council adopted the April 1, 1997 MCPP restatement shortly after the United States Court of Appeals for the Ninth Circuit issued its decision in *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1996). *Vizcaino* was a highly-publicized case regarding the benefit eligibility of service-providers who were initially classified as independent contractors, but who were later determined by the IRS to be common-law employees. After the *Vizcaino* decision, many employers, including the Management Council, amended their benefit plans to clarify their intent to exclude from eligibility persons whom they did not classify as employees.[4]

Other factors also support interpreting the CAP and the MCPP to exclude individuals whom the Management Council did not treat as employees. For example, the CAP is funded by elective reductions in the current pay of eligible employees who elect to participate in the CAP. (*See, e.g.*, January 1, 1989 CAP §§ 4.01, 4.02.) The CAP cannot operate as intended unless both the Management Council and its eligible employees know currently who is eligible to participate in the CAP. A contributory plan cannot operate effectively if the class of individuals eligible to participate in the plan can be expanded retroactively, years after the affected individuals received the compensation that they could have elected to have contributed to the plan, and, at least in some cases, years after the affected individuals ceased providing services to the plan sponsor. (*See generally id.* §§ 4.03, 4.04(a) (providing that changes in participant contributions may be made only on a prospective basis).) Similarly, the Management Council's funding assumptions for the MCPP took into account only individuals who were on the Management Council's employee payroll. *See Hensley v. Northwest Permanente P.C. Ret. Plan*, 258 F.3d 986, 1001-02 (9th Cir. 2001) (holding that administrator reasonably defined eligibility to "limit[] disbursements to persons whom the Plans were intended to benefit").

---

[4]     The NFL League Office sponsors a pension plan that mirrors the MCPP. The League Office amended and restated its pension plan (the "League Office Plan"), effective April 1, 1997, which was also the effective date of the amendment and restatement of the MCPP that included a parallel exclusion for individuals who were not classified as employees. A footnote to a draft of the April 1, 1997 League Office Plan restatement states that this exclusion was "intended to avoid the problem encountered in *Vizcaino v. Microsoft Corp.*, No. 94-35770 (9th Cir. Oct. 3, 1996)." The Committee believes that the Management Council had the same intent regarding the MCPP and the CAP.

3

Based on the foregoing, the Committee (1) **denies** the 53 Agents' claims for benefits accruing under the MCPP prior to April 1, 1997;[5] and (2) **denies** the 67 Agents' claims for benefits accruing under the CAP between January 1, 1997 and March 30, 2001.[6]

## ERISA Rights

The Committee has denied each Agent's claims. If you or any Agent wishes to have this decision reviewed, the you may request such a review within 60 days following receipt of this letter. This request must be in writing, and must be sent to:

NFL Employee Benefit Committee
Attn: Doug O'Connell
280 Park Avenue
New York, NY 10017

In addition, you or your clients may ask to see, free of charge, relevant documents and other material, and you may submit issues and comments in writing to be considered as part of such review.

If you request a further review, the Committee will provide that review and will make a decision within a reasonable period of time. The Committee will attempt to provide its final decision within 60 days following receipt of the request for review. However, special circumstances may necessitate an extension of this 60-day period. In that event, the Committee will provide written notice of the extension, and will both explain the special circumstances requiring the extension and indicate the date as of which the Committee's final decision will be made.

After any such review, the Committee's decision will be final. If an Agent's claim is denied in whole or in part after review, the Agent will then have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended.

Sincerely,

Doug O'Connell

Doug O'Connell
On behalf of the NFL Employee Benefit Committee

---

[5]    The 53 Agents are identified in Attachment A.

[6]    The 67 Agents are identified in Attachment B.

4

## ATTACHMENT A

Agents with service before April 1, 1997:

| **Agent** | **Company Name** |
|---|---|
| Russell Anderson | Russell C. Anderson Associates, Inc. |
| Ronald Auld | |
| Walter Behrens | |
| David Brown | |
| Kent Bryan | |
| Donald Byrd | |
| James Clark | |
| John Cody | |
| Clarence Cook | Cook International, Inc. |
| Bernard Corbit | |
| Robert DeFauw | |
| Richard Dreiwitz | Taypal, Inc. |
| Raymond Egan, Jr. | The Egan Company, Inc. |
| Frederick Ford | |
| Paul Freeland | |
| Diogenes Galanos | |
| Eugene Gee | |
| Joseph Gordon | |
| Charles Harvey | Eagle Point, Inc. |
| William Hausmann | |
| Richard Herman | |
| Paul Herring | |
| Donald Hoffman | |
| Jack Holder | |
| Robert Howell | |
| Ray Jackson | Jackson Investigations, Inc. |
| Harold Jacobs | |
| Richard Jarrett | |
| Dennis Keith | |
| William Knierim | |
| Thomas Kostecke | |
| Thomas Lavin | |
| William Logay | William J. Logay Investigations, Inc. |
| Gary Marting | |
| John Maye | Taypal, Inc. |
| David McCluggage | Nationwide Investigative Services |
| Charles Monroe | |
| Ronald Montague | Montague & Assoc., Ltd. |
| Lloyd Nilsen | |
| Peter Pallatroni | Taypal, Inc. |

| Agent | Company Name |
|---|---|
| Eugene Racht | |
| Bernard Redd | Integrated Resource Group |
| Samuel Reed | |
| Louis Runge | |
| Herman Scott | |
| Charles Sickels | |
| Edward Skelly | |
| Harley Smith | |
| Robert Stauffer | Collections & Consulting, Inc. |
| Alan Stoops | |
| Thomas Taylor | Taypal, Inc. |
| Kenneth VanLanen | |
| Dennis Vitale | G.A.D. Tax Services |

6

## ATTACHMENT B

Agents with service before March 30, 2001:

| Agent | Company Name |
|---|---|
| Russell Anderson | Russell C. Anderson Associates, Inc. |
| Ronald Auld | |
| Walter Behrens | |
| Lonnie Blake | |
| David Brown | |
| Kent Bryan | |
| Donald Byrd | |
| James Clark | |
| John Cody | |
| Dwaine Converson | |
| Clarence Cook | Cook International, Inc. |
| Bernard Corbit | |
| Gary Crep | |
| Robert DeFauw | |
| Daniel DiPirro | |
| Richard Dreiwitz | Taypal, Inc. |
| Raymond Egan, Jr. | The Egan Company, Inc. |
| Frederick Ford | |
| Paul Freeland | |
| Diogenes Galanos | |
| Cyril Gamber | |
| Eugene Gee | |
| Joseph Gordon | |
| Charles Harvey | Eagle Point, Inc. |
| William Hausmann | |
| Richard Herman | |
| Paul Herring | |
| Donald Hoffman | |
| Jack Holder | |
| Robert Howell | |
| Ray Jackson | Jackson Investigations, Inc. |
| Harold Jacobs | |
| Richard Jarrett | |
| Dennis Keith | |
| William Knierim | |
| Thomas Kostecke | |
| Thomas Lavin | |
| William Logay | William J. Logay Investigations, Inc. |
| Gary Marting | |
| John Maye | Taypal, Inc. |

| | |
|---|---|
| David McCluggage | Nationwide Investigative Services |
| David Milroy | |
| Charles Monroe | |
| Ronald Montague | Montague & Assoc., Ltd. |
| Lloyd Nilsen | |
| Thomas Oberschmidt | |
| James O'Brien | |
| Peter Pallatroni | Taypal, Inc. |
| Eugene Racht | |
| Bernard Redd | Integrated Resource Group |
| Samuel Reed | |
| William Richardson | |
| Charles Roe | |
| Louis Runge | |
| Herman Scott | |
| Charles Sickels | |
| Edward Skelly | |
| Harley Smith | |
| Clifford Spingler | |
| Robert Stauffer | Collections & Consulting, Inc. |
| Bruce Stock | |
| Alan Stoops | |
| Thomas Taylor | Taypal, Inc. |
| John R. Thurston | |
| Robert Toothman | |
| Kenneth VanLanen | |
| Dennis Vitale | G.A.D. Tax Services |

8

# Exhibit 17

Schnader
ATTORNEYS AT LAW

140 BROADWAY   SUITE 3100
NEW YORK, NY 10005-1101
212.973.8000   FAX 212 972 8798   schnader.com

January 16, 2008

M. Christine Carty
Direct Dial 212-973-8012
Direct Fax 212-972-8798
E-mail: ccarty@schnader.com

## BY HAND

National Football League
280 Park Avenue
New York, New York 10017
Attn: Doug O'Connell

### Re:   Drug Program Agents

Dear Mr. O'Connell:

This letter is in response to your letters of November 21, 2007 and December 21, 2007.

It is our clients' position that the NFL Employee Benefit Committee ("Committee"), by failing to respond timely to our requests, is in a situation of "deemed denial" under ERISA regulations. This letter is not intended as, nor should it be construed as, a waiver of that position. The Committee has already denied the claims of our clients, and said denial is final by operation of law. For a discussion of the impact of a "deemed denial," we respectfully refer you to Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98 (2d Cir. 2005).

For this reason, in our view, this letter is not properly an appeal of the Committee's decision, nor is it a request for review, within the meaning of ERISA. Your November 21, 2007 and December 21, 2007 letters would have had to have been timely in order for there to be something to appeal from. Only in the event that reviewing court might disagree concerning the lateness of the Committee's decisions might this letter be construed as an appeal or request for review. That determination, if needed, is for a reviewing court.

In any event, your letters have taken an individualized approach to consideration of the rights of the various Drug Program Agents ("DPAs"), an approach we invited many months ago. We take this opportunity to advise you of some of the reasons for our disagreement with the positions taken by the Committee.

Further, we request copies of every document reviewed, considered or otherwise relied upon by the Committee in rendering its decisions. We note that despite two document requests, we still do not have the documents cited by the Committee as a Plan document or aid to Plan construction. In fact, your December 21, 2007 letter, in a footnote, even alludes to a draft of the League Office Plan restatement. This Plan, you contend in the November 21, 2007 letter, was never for the benefit of NFLMC employees. We need to consider everything the Committee considered, and we invoke our right to do so under ERISA.

Schnader Harrison Segal & Lewis LLP

NEW YORK   PENNSYLVANIA   CALIFORNIA   WASHINGTON, DC   NEW JERSEY

PHDATA 3045595_1


ATTORNEYS AT LAW

Doug O'Connell
National Football League
January 16, 2008
Page 2

## Employee Status

Neither the November 21, 2007 letter nor December 21, 2007 letter offers any basis to conclude that the DPAs were not the "common law" employees of the Management Council. The November 21, 2007 letter sidesteps the employment issue entirely, stating that "the Committee decided to resolve a number of potentially dispositive issues first, since resolution of those issues could make it unnecessary for the Committee to decide whether each of the 90 Agents was a common law employee and, if so, during what period of time." The December 21, 2007 letter, which purports to be "final," never addresses whether the DPAs were "employees."

Were this an ERISA appeal, the issue of "employment," not having been contested by the Committee, would not be framed as an issue for review. The issue of employment would be deemed conceded by the Committee's knowing and purposeful failure to substantively address it.

Accordingly for purposes of this letter, we do not view the question of employment as being one that is in controversy between the DPAs and the Committee.

## Exclusions Relied Upon by the Committee

Both the November 21, 2007 and December 21, 2007 letters cite to a number of different exclusions which were purportedly in effect over time[1]. It is clear, as a matter of law, that the Committee bears the burden of proving the applicability of any exclusion. Mario v. P & C Food Mkts., 313 F.3d 758 (2d Cir. 2002).

We address each exclusion argument you have raised, under the heading under which your have raised such argument:

## November 21, 2007 Letter

### 1.     "Not classified as employees"

You cite to two exclusions:

"not classified by an employee by the Employer, but who is treated as an employee by reason of being treated as a 'common law' employee of the Employer."

---

[1]     We acknowledge that if the NFL Office Pension Plan ("OPP") and NFL Office Supplemental Pension Plan ("OSPP") have never allowed Management Council employees to participate, as you have represented in the letter dated November 21, 2007, the DPAs cannot make claim thereunder. No such claim is advanced in the DPA's Complaint which is filed in the Southern District of New York seeking, among other things, employee benefits. However, for some reason, you rely upon an exclusion contained in a draft version of the OPP in your letter dated December 21, 2007. We request a copy of that draft OPP.



Schnader
ATTORNEYS AT LAW

Doug O'Connell
National Football League
January 16, 2008
Page 3

and

"not treated by the Employer as an employee for federal income tax or federal
employment tax purposes."

Neither exclusion is claimed to have been in effect for all ERISA plans, whether pension or
welfare, at all times. Therefore, neither, even if applicable, serves as an absolute or total bar to
the DPAs claims.

You interpret the two exclusions to have the identical meaning, both relating to
"classification of employees." That is not accurate. The first cited exclusion does appear to
relate to "classification[2]", but not the second cited exclusion. The second cited exclusion clearly
does not apply, on its face. In fact, the IRS has expressly determined that the DPAs are "treated
by the Employer as an employee for federal income tax or federal employment tax purposes."
That is the very basis of the finding of "common law" employment.

The issue of how the NFLMC "classifies" the DPAs is irrelevant to how it "treats" the
DPAs.    One of the underpinnings of the "common law employment" doctrine is that
"classification" is immaterial to the determination of employment status.    To the contrary,
employment status is based, in large measure, upon "treatment" by the employer. Labeling or
misclassifying the DPAs as "independent contractors" is ineffective under the law, as we
presume the NFL and NFLMC are now well aware given the proceedings before the IRS and
elsewhere.

## 2.    Agents Were Not Classified as Full-Time Employees and Did Not Regularly Work 30 Hours Per Week

Again, whether the agents were "classified" as "employees" or "full-time" employees is
immaterial under the exclusions you rely upon under the NFL Flex. The question is whether the
employees met, or did not meet, the hours requirements.

---

[2]    Whether such exclusion will prove effective, and unambiguous, remains to be determined by a reviewing court.
The Committee has the burden of proof on this issue. Mario v. P & C Food Mkts., 313 F.3d 758 (2d Cir. 2002).
Among other things, the Committee will need to demonstrate that the DPAs were consistently classified,
internally and in good faith, as "independent contractors."    The allegations set forth in the Complaint
concerning prior classification of Warren Welsh certainly raise serious issues concerning whether classification
of the DPAs as "independent contractors" was made in good faith as opposed to as a calculated means of
misleading the DPAs. If the latter, then it follows that the NFL and NFLMC did not actually "classify" the
DPAs as "independent contractors" for their own internal purposes, and the exclusion is inapplicable.


Schnader
ATTORNEYS AT LAW

Doug O'Connell
National Football League
January 16, 2008
Page 4

You do state that Management Council records indicate that no Agent "regularly work[ed] a minimum of 30 hours per week." In order to assess the validity of your assertion, we need:

1.    To know what source of authority is relied upon for the definition of the term "regularly" as utilized in the NFL Flex Plan; and

2.    To know what "records" the Committee reviewed in connection with its determination.

We hereby request copies of all documents which the Committee reviewed on these issues.

### Agents Were Per Diem Employees

We know of no basis for or precedent supporting the Committee's position. No Plan document provided to us defines the term "per diem" employee. The dictionary definition refers to employees paid a set amount for a day's work. That definition does not encompass the DPAs.

As to the attempt to redefine "per diem" to mean "as needed," neither the cases cited by the Committee, nor the plain meaning of the phrase itself, will support the position. We could have an interesting academic debate about whether the DPAs worked on an "as needed" basis, given that they were assigned to teams, and given the other findings made by the IRS. However, unless and until you direct us to an exclusion for employees hired on an "as needed" basis, such a discussion is wholly immaterial.

### Some Agents Were Not Paid Directly By the Management Council

The Committee's reference to "companies that employed them" is misplaced. As to most of the 23 DPAs whom you claim were not paid "directly" by the NFLMC, payments were made to their wholly owned businesses.

The exclusion you rely upon appears targeted toward excluding employees working for temporary services and the like. We have found no case law applying such an exclusion to the a set of facts analogous to this one.

Had the NFL and NFLMC actually filed its Plans with the Department of Labor, the DPAs in question could easily have structured their affairs to be paid directly in hand, rather than through companies, assuming your construction of the clause is correct. The same observation holds had the NFL and NFLMC made accurate representations concerning the DPAs' status as "employees" rather than "independent contractors." Put simply, the NFL, NFLMC and Committee cannot benefit from an exclusion that they themselves created by their knowingly incorrect classification of the DPAs as "independent contractors."



Doug O'Connell
National Football League
January 16, 2008
Page 5

In any event, the exclusion you rely upon seems inapplicable to the situation we are addressing with the DPAs.

**December 21, 2007 Letter**

The notion that the "Management Council never intended to permit individuals who were classified as independent contractors to participate in the MCPP or CAP" is completely beside the point, even if true. The issue for the Committee (had it made a timely determination), and for a reviewing Court, is to determine the meaning of the exclusions in the Plan, not to make some vague assertions concerning the NFLMC's intentions.

Remarkably, the Committee not only relies upon exclusions that do not apply, using expressions of "intention," but also refers to footnotes to drafts (see your footnote 4), and attempts to apply exclusions on a retroactive basis, in express violation of Section 1054 of ERISA. If there is precedent suggesting that unadopted (and unfiled) "drafts" form part of the "Plan" in an ERISA context, we are unaware of it.

In 2006, at precisely the time the DPAs were making an issue of their status with the IRS, you contend that the NFL and NFLMC did make certain amendments in an effort to explicitly exclude the DPAs. Whether such amendments will be effective for the period from their adoption to the firing of the DPAs in 2007 remains to be seen. However, it seems curious that the NFL and NFLMC would need to clarify Plans which it now claims were clear all along, in language, exclusions and intent. If anything, this amendment would seem to suggest that the DPAs were entitled to benefits under the Plans as formerly in effect.

The reality is that the Plans as drafted provided benefits for the DPAs. The arguments concerning exclusions are baseless. In virtually all cases, those exclusions, as drafted, do not apply. As to "intent" based arguments, the amendment of the Plans in 2006 would seem to demonstrate that the "intent" to exclude DPAs, and later fire them, arose only when they sought to enforce the rights they had as employees. As drafted, those Plans provide substantial rights to the DPAs.

If you have any questions concerning this letter or the DPAs' positions, please feel free to contact me.

Sincerely yours,

M. Christine Carty
For SCHNADER HARRISON SEGAL & LEWIS LLP

MCC:sh
cc: Robert J. Costello, Esquire (via email)

# Exhibit 18



## NATIONAL FOOTBALL LEAGUE

March 14, 2008

M. Christine Carty, Esq.
Schnader Harrison Segal & Lewis LLP
140 Broadway
Suite 3100
New York, NY 10005-1101

      Re:    Drug Program Agents

Dear Ms. Carty,

      I am writing on behalf of the NFL Employee Benefit Committee (the "Committee") regarding your letter of January 16, 2008. Your January 16th letter challenged the Committee's November 21, and December 21, 2007 decisions denying the claims of 90 former Drug Testing Program Agents ("Agents") under six benefit plans ("Plans"). By letter dated January 28, 2008, the Committee informed you of its decision to treat your January 16th letter as the Agents' administrative appeal.

      The Committee has resolved the Agents' appeal. This letter informs you of the Committee's decision.[1]

### Background

      Through letters dated April 25, May 16, May 25, June 4, June 11, and June 27, 2007, you requested a "determination from the Plans" that the Agents "are eligible for benefits under each Plan." By letter dated September 10, 2007, the Committee informed you that it intended to treat your June 27, 2007 letter as a claim for benefits under the terms of the Plans.

      The Committee denied the Agents' benefit claims, and informed the Agents of its decisions through letters dated November 21, and December 21, 2007. The Committee's November 21st decision[2] denied all of the Agents' claims under three Plans: the NFL Office Pension Plan ("OPP"); the NFL Office Supplemental Pension Plan ("OSPP"); and, the NFL

---

[1]    The Committee and the Plans reserve the right to assert the defenses of statute of limitations and laches, as well as all other grounds and defenses justifying denial of benefits under the Plans including without limitation that the Agents were independent contractors and not employees, or any other basis on which the Plans, by their terms or Amendments do not cover the Agents, although not considered or discussed herein. The Committee's decisions are subject to the foregoing reservation of rights.

[2]    The Committee's November 21, 2007 decision letter is appended as Attachment A.

Employee Reciprocal Flexible Benefits Plan ("NFL Flex"). The Committee also denied all of the Agents' claims under the NFL Management Council Pension Plan ("MCPP") and the NFL Pension Plan ("NFLPP") insofar as they related to benefits accruing on or after April 1, 1997.[3] The Committee further denied all of the Agents' claims under the NFL Capital Accumulation Plan ("CAP") insofar as they related to benefits accruing on or after March 30, 2001. The Committee's December 21st[4] decision denied the Agents' remaining claims under the MCPP and CAP.

Through your letter dated January 16, 2008, the Agents appealed-in-part the Committee's November 21st and December 21st decisions. The appeal challenges the Committee's denial of the Agents' claims under the NFLPP, MCPP, CAP, and NFL Flex. Your January 16th letter indicates that the Agents do not appeal the Committee's denial of their claims under the OPP and the OSPP. (*See* January 16, 2008 Letter at 2 n.1.)

### The Agents' Appeal of the Committee's November 21, 2007 Decision

Your January 16, 2008 letter raises four specific challenges to the benefit determinations communicated through the Committee's November 21, 2007 decision letter. Upon review of those challenges, the Committee affirms its November 21st decision to deny-in-part the Agents' benefit claims.

*Agents Were Not "Treated" as Employees for Federal Tax Purposes.* The January 1, 2002 restatement of the CAP excludes from eligibility any person who is "not treated by the Employer as an employee for federal income tax or federal employment tax purposes." (*See* January 1, 2002 CAP § 2.01(o)(8).) Your January 16th letter challenges the Committee's determination that this exclusion applies to the Agents. (*See* January 16, 2008 Letter at 2-3.) You contend that the Committee should have relied on an IRS auditor's determination that the Management Council may be liable for failing to withhold and pay certain federal taxes with respect to two Agents. (*Id.* at 3.)

The Committee denies the Agents' appeal on this exclusion. The "employer treatment" exclusion in the CAP applies to the Management Council's **actual** tax treatment of the Agents during the periods in which the Agents performed drug testing services. *See, e.g., Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 13-15 (1st Cir. 2003) (affirming plan administrator's decision to consider actual tax treatment to determine plan eligibility). A defined contribution plan such as the CAP, which is funded by elective reductions from an employee's current pay, cannot operate as intended unless both the employer and the eligible employees know **currently** who is eligible to participate in the plan. Your January 16th letter does not dispute that the Management Council never withheld federal income taxes or employment taxes from any Agent's wages or compensation.

---

[3]     On March 30, 2001, the MCPP merged with four other money purchase pension plans to create the NFLPP. (*See* March 30, 2001 NFLPP § 1.3.) Accordingly, the Committee considered the Agents' claims under the MCPP and the NFLPP jointly.

[4]     The Committee's December 21, 2007 decision letter is appended as Attachment B.

*Agents Were Not "Full-Time" Employees And Did Not Work A Regular 30 Hour Per Week Schedule.* The Management Council's Adoption Certificates for NFL Flex exclude from eligibility any person who is not a "full-time" employee or who does not work at least "30 hours" per week. (*See* August 1, 2003 NFL Flex Adoption Certificate ¶ 5; June 1, 1996 NFL Flex Adoption Certificate ¶ 5.) Your January 16th letter challenges the Committee's determination that the Agents were ineligible to participate in NFL Flex because the Management Council never classified any Agent as an "employee" or as a "full-time" employee. (*See* January 16, 2008 Letter at 3-4.) You contend that the only relevant consideration "is whether the [Agents] met, or did not meet, the hours requirements" in the Adoption Certificates. (*Id.* at 3.)

The Committee denies the Agents' appeal on this exclusion. First, the "full-time" employment requirement in the Management Council's NFL Flex Adoption Certificates imposes an additional eligibility prerequisite beyond regularly working at least 30 hours per week. *See, e.g., De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir. 1989) (plan interpretation should not "render some language in the plan documents 'meaningless'"). You do not contend that the Agents were "full-time" employees, and the Management Council's records do not indicate that the Agents were ever classified as "full-time" employees.

Second, even if the only relevant eligibility criterion was whether the Agents "met, or did not meet, the hours requirements," the Agents would still be ineligible to participate in NFL Flex. The Management Council's records indicate that **no** Agent ever worked a **regular schedule** requiring at least 30 hours of work each week. Those records show that a few Agents worked the annual equivalent of 30 hours per week in certain years; however, none of those Agents (or any other Agent) had a regular schedule requiring 30 hours of work per week. It would be administratively infeasible for the Management Council to administer NFL Flex to allow employees (or, in the case of the Agents, alleged common-law employees) not working a regular 30-hour per week schedule to participate in the plan only during those weeks in which the employee (or alleged common-law employee) actually worked at least 30 hours.

*Agents Were "Per Diem" Employees.* The NFLPP, the April 1, 1997 restatement of the MCPP, and the Management Council's March 30, 2001 Adoption Certificate for the CAP exclude from eligibility "per diem" employees of the Management Council. (*See* March 30, 2001 NFLPP § 2.1(m)(6); April 1, 1997 MCPP § 2.1(j)(5); March 30, 2001 CAP Adoption Certificate ¶ 2(b).) Your January 16th letter challenges the Committee's determination that, even if the Agents were common-law Management Council employees, the Agents would still be excluded from participation because they were "per diem" employees. (*See* January 16, 2008 Letter at 4.) You contend that the dictionary definition of "per diem" does not encompass the Agents. (*Id.*)

The Committee denies the Agents' appeal on this exclusion. Your appeal does not challenge the Committee's previous determination that the Agents did not work regular

schedules and provided services only on an "as-needed" basis.[5] Consistent with the Agents' provision of services on an as-needed basis, the Agents did not receive regular salaries; they were compensated only for the hours and days they actually worked; and the Management Council did not restrict the Agents from providing services for others. Substantial legal precedent supports the conclusion that the Plans' "per diem" employee exclusion applies to persons performing services for the Management Council on an "as needed" basis. *See, e.g., Dacas Nursing Support Sys. v. NLRB*, 7 F.3d 511, 512 (6th Cir. 1993) ("Per diem [employees] work on an as-needed basis, and Dacas neither guarantees nor expects that they will work a particular number of hours each year."); *Saylor v. Ret. Comm.*, No. 4:05CV138JLH, 2007 U.S. Dist. LEXIS 54399, at *7 (E.D. Ark. July 25, 2007) (describing "per diem employee" as an employee who "would work on an as-needed basis"); *Crossdale v. Indian River Mem. Hosp.*, 299 F. Supp. 2d 1247, 1250 (S.D. Fla. 2003) ("Per diem employees are employees who are scheduled and called in to work by the [employer] only if needed."); *DeWesse v. DaimlerChrysler Corp.*, 120 F. Supp. 2d 735, 739 (S.D. Ind. 2000).

As an additional matter, this exclusion would apply to the Agents even if the Committee accepted your January 16th letter's proposed interpretation of "per diem." You contend that the "dictionary definition" of "per diem" refers "to employees paid a set amount for a day's work." (*See* January 16, 2008 Letter at 4.) The Management Council's records indicate that the Agents were paid on the basis of a "daily rate" and an "hourly rate." The Agents were thus compensated (at a set rate) only for the days and hours during which they actually performed services.

***Some Agents Were Not Paid Directly By the Management Council.*** The NFLPP, the April 1, 1997 restatement of the MCPP, the January 1, 2002 restatement of the CAP, and NFL Flex exclude from eligibility persons whose basic compensation for services is "not paid directly" by the Management Council. (*See* March 30, 2001 NFLPP § 2.1(m)(5); April 1, 1997 MCPP § 2.1(j)(5); January 1, 2002 CAP § 2.01(o)(6); April 1, 1992 NFL Flex § 2.01(m)(iii).) Your January 16th letter challenges the Committee's determination that this exclusion applies to 23 Agents who were not paid directly by the Management Council, but were instead paid for their services through separate companies that employed them. (*See* January 16, 2008 Letter at 4-5.) You contend that this exclusion "appears targeted toward excluding employees working for temporary services and the like," and does not apply to "most" of the 23 Agents, for whom you contend "payments were made to their wholly owned businesses." (*Id.* at 4.) However, you do not identify the Agents who were allegedly paid through "their wholly owned businesses."

The Committee denies the Agents' appeal on this exclusion. Your appeal does not challenge the Committee's determination that 23 Agents were paid through separate companies.[6]

---

[5]     Your letter asserts that there could be "an interesting academic debate" about whether the Agents provided services on an "as-needed basis," but further asserts that "such a discussion is wholly immaterial." (*See* January 16, 2008 Letter at 4.) Accordingly, the Committee does not interpret the Agents' appeal to challenge the Committee's determination that the Agents worked only as-needed.

[6]     Those 23 Agents, and the companies through which they rendered their services, are identified in Attachment A to the Committee's November 21, 2007 decision letter.

4

By its terms, the "not paid directly" exclusion does not support the distinction claimed in your January 16th letter – the exclusion applies broadly to all persons "not paid directly" by the Management Council. The terms of the Plans also do not state or otherwise suggest that that the Management Council (or the Committee) was required to inquire into the ownership of each company engaged by the Management Council. It would be inconsistent with those Plan terms to require the Management Council to routinely conduct the burdensome and intrusive inquiry suggested by the Agents' appeal.

### The Agents' Appeal of the Committee's December 21, 2007 Decision

Your January 16, 2008 letter also challenges the benefit determinations communicated through the Committee's December 21, 2007 decision letter. Upon review of those challenges, the Committee affirms its December 21st decision to deny the Agents' remaining benefit claims.

*The Committee Correctly Considered and Interpreted the Management Council's Intent.* Prior to April 1, 1997, "any person employed by" the Management Council was eligible to participate in the MCPP after meeting certain service requirements. (*See* April 1, 1989 MCPP §§ 1.09, 2.01.) Between January 1, 1997 and March 30, 2001, the terms of the CAP similarly provided that any person (other than a player) "actively employed by" the Management Council was eligible to participate in the CAP after meeting certain service requirements. (*See* January 1, 1989 CAP §§ 2.01(o), 3.01.) Your January 16th letter challenges the Committee's determination that the Management Council did not ever intend to permit individuals classified as independent contractors to participate in the MCPP or the CAP, regardless of whether those individuals were later deemed to be common-law employees. (*See* January 16, 2008 Letter at 5.) You contend that the Committee should have "determine[d] the meaning of the exclusions in the Plan, not ... make some vague assertions concerning the [Management Council's] intentions. (*Id.*)

The Committee denies the Agents' appeal of the Committee's decision to consider the Management Council's intent. A plan administrator may interpret plan terms consistent with the intent of the plan sponsor. *See, e.g., Kolling,* 347 F.3d at 14 ("The administrator permissibly looked to the [sponsor's] intention in defining the Plan's scope...."); *Hensley v. Northwest Permanente P.C. Ret. Plan & Trust,* 258 F.3d 986, 1001-02 (9th Cir. 2001).

The Committee also denies the Agents' appeal of the Committee's actual interpretation of the Management Council's intent. As the Committee explained in its December 21st decision letter, the Management Council has consistently administered the MCPP and the CAP to exclude individuals who were not on the Management Council's employee payroll when they performed services. Indeed, the Committee is not aware of any instance in which an individual not on the Management Council's employee payroll, and not classified by the Management Council as an employee, was permitted to participate in either Plan. *See MacLachlan v. ExxonMobil Corp.,* 350 F.3d 472, 481-82 (5th Cir. 2003) (interpreting plan open to all "regular employees; plan administrator properly determined "that no one had been paid benefits without first being on the Mobil payroll"); *Kolling,* 347 F.3d at 14 (interpreting plan open to all "Employees of the Employer"; plan administrator properly a "W-2 definition" to the term "employee").

5

Accordingly, the Committee reaffirms its December 21st decision to deny the Agents' claims based upon its interpretation of the Management Council's intent.[7]

The Committee similarly denies your three specific challenges to the Committee's interpretation of the Management Council's intent. You first contend that the Committee's December 21st decision improperly relied on draft plan language. (*See* January 16, 2008 Letter at 5.) This challenge misinterprets the Committee's decision. The December 21st decision letter cited to an explanatory footnote in a draft restatement of the NFL Office Pension Plan as **evidence** of the Management Council's intent in simultaneously restating the parallel MCPP. (*See* December 21, 2007 Letter at 3 n.4.) Both the OPP and the MCPP were restated effective April 1, 1997, to include express exclusions for individuals who were not classified as employees by their employer. The cited footnote in the draft OPP explained that the NFL Office added this clarification "to avoid the problem encountered in *Vizcaino v. Microsoft Corp.*, No. 94-35770 (9th Cir. Oct. 3, 1996.)" (*Id.*) The Committee determined that this explanation also evidenced the Management Council's intent in adding an identical clarification to the MCPP.[8]

You next contend that the Committee's December 21st decision applied certain eligibility exclusions "on a retroactive basis." (*See* January 16, 2008 Letter at 5.) This challenge again misinterprets the Committee's decision. The Committee did not apply any exclusion retroactively; the Committee instead determined that certain later-adopted exclusions **evidenced** and **clarified** the Management Council's long-standing intent to exclude individuals classified as independent contractors. (*See* Attachment B at 2-3.) The Committee's consideration of those exclusions as indicative of the Management Council's intent does not equate to relying on those exclusions as plan terms. Indeed, the Committee considered at separate meetings the Agents' claims for time periods (and plans) subject to express eligibility exclusions, and the Agents' claims for time periods not subject to express exclusions.

You last contend that the Committee misinterpreted the effect of a 2006 amendment to the NFLPP. (*See* January 16, 2008 Letter at 5.) The Committee's December 21st decision (which relates to time periods well before 2006) did not reference or rely upon the 2006 NFLPP amendment. A review of this amendment does not alter the Committee's interpretation of the eligibility provisions of the pre-April 1, 1997 MCPP or the pre-March 30, 2001 CAP. The at-issue amendment further clarified that certain classes of persons were excluded from eligibility to participate in the NFLPP. (*See* 2006 NFLPP § 2.1(m)(6)-(10).) That clarification is consistent with the Committee's interpretation of the Management Council's long-standing intent to

---

[7]   The Committee reaffirms, and incorporates into this decision, its prior analysis of the Management Council's intent, as explained in the Committee's December 21, 2007 decision letter. (*See* December 21, 2007 Letter at 2-4.)

[8]   The Committee explained in its December 21, 2007 decision letter that *Vizcaino* was a highly-publicized case regarding the benefit eligibility of service providers classified as independent contractors. *See* 97 F.3d 1187 (9th Cir. 1996). After the *Vizcaino* decision, many employers, including the Management Council, amended their benefit plans to clarify their intent to exclude from eligibility persons whom they did not classify as employees.

6

exclude individuals classified as independent contractors, regardless of whether those individuals were later deemed to be common-law employees.

## ERISA Rights

The Committee has reached a final decision denying each Agent's appeal. Because their appeals have been denied, each Agent has the right to bring a civil action under ERISA § 502(a), 29 U.S.C. § 1132(a). In addition, you or your clients have the right to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to their appeals. This request may be sent to:

NFL Employee Benefit Committee
Attn: Doug O'Connell
280 Park Avenue
New York, NY 10017

Sincerely,

Douglas O'Connell

Doug O'Connell
On behalf of the NFL Employee Benefit Committee

# Exhibit 19

## LIST OF "ACTIVE DPAs"

|     | Name | Allegations From AC ¶ | Alleged Retention Start Date From AC | Alleged Retention Stop Date From AC |
|-----|------|------------------------|---------------------------------------|--------------------------------------|
| 1) | Stanley Amrozowicz | 59 | 2002 | 4/30/2007 |
| 2) | Ronald Auld | 15 | mid-1988 | 4/30/2007 |
| 3) | Lonnie Blake | 13 | 1997 | 4/30/2007 |
| 4) | Kent Lloyd Bryan | 36 | 1992 | 4/30/2007 |
| 5) | Donald Byrd | 17 | 1989 | 4/30/2007 |
| 6) | Thomas Carter | 58 | 2002 | 4/30/2007 |
| 7) | Gary Crep | 39 | 2001 | 4/30/2007 |
| 8) | Florilis Davis | 11 | 2001 | 4/30/2007 |
| 9) | Robert Defauw | 26 | 1988 | 4/30/2007 |
| 10) | Michael Dennis | 16 | Jan. 2002 | 4/30/2007 |
| 11) | Nicholas DiFalco | 18 | 2001 | 4/30/2007 |
| 12) | Robert Finney | 66 | 2005 | 4/30/2007 |
| 13) | Paul Freeland | 19 | 1988 | 4/30/2007 |
| 14) | Diogenes Galanos | 51 | 1988 | 4/30/2007 |
| 15) | Eugene Gee | 23 | 1988 | 4/30/2007 |
| 16) | Steve Goodenow | 99 | 1995 | 4/30/2007 |
| 17) | Charles Harvey | 33 | 1994 | 4/30/2007 |
| 18) | William Hausmann | 48 | 1993 | 4/30/2007 |
| 19) | Richard Herman | 61 | 1995 | 4/30/2007 |
| 20) | Paul Herring | 30 | 1991 | 4/30/2007 |
| 21) | Donald Hoffman | 50 | 1991 | 4/30/2007 |
| 22) | Jack Holder | 37 | 1992 | 4/30/2007 |
| 23) | Robert Howell | 21 | 1994 | 4/30/2007 |
| 24) | Richard Jarrett | 46 | 1996 | 4/30/2007 |
| 25) | Dennis Keith | 9 | Aug. 1988 | 4/30/2007 |
| 26) | Thomas Kostecke | 56 | 1996 | 4/30/2007 |
| 27) | Paul Kostyo | 64 | Nov. 1999 | 4/30/2007 |
| 28) | William Logay | 34 | 1995 | 4/30/2007 |
| 29) | Gary Marting | 24 | 5/1/1996 | 4/30/2007 |
| 30) | George Miller | 62 | 2001 | 4/30/2007 |
| 31) | Andrew Nash | 63 | 2003 | 4/30/2007 |
| 32) | Lloyd Nilsen | 38 | 1993 | 4/30/2007 |
| 33) | Thomas Oberschmidt | 20 | 1999 | 4/30/2007 |
| 34) | Eugene Racht | 25 | Feb. 1996 | 4/30/2007 |
| 35) | Bernard Redd | 57 | 1997 | 4/30/2007 |
| 36) | William Richardson | 8 | 1997 | 4/30/2007 |

| 37) | Laurence Robicheau | 42 | 2003 | 4/30/2007 |
|-----|--------------------|----|------|-----------|
| 38) | Charles Roe | 31 | 1999 | 4/30/2007 |
| 39) | Louis Runge | 28 | Dec. 1995 | 4/30/2007 |
| 40) | James Salp | 14 | Jan. 2002 | 4/30/2007 |
| 41) | Benedict Saurino | 44 | Jun. 2001 | 4/30/2007 |
| 42) | Guy Scantlebury | 45 | 2003 | 4/30/2007 |
| 43) | Dennis Schoenrock | 27 | 2001 | 4/30/2007 |
| 44) | Emmett Scott | 55 | 2002 | 4/30/2007 |
| 45) | Herman Scott | 10 | 1988 | 4/30/2007 |
| 46) | Charles Sickles | 47 | 1996 | 4/30/2007 |
| 47) | Harley Smith | 12 | 1995 | 4/30/2007 |
| 48) | Clifford Spingler | 54 | 2001 | 4/30/2007 |
| 49) | Robert Starratt | 35 | Oct. 2005 | 4/30/2007 |
| 50) | Robert Stauffer | 32 | 1994 | 4/30/2007 |
| 51) | James Stever | 49 | 2004 | 4/30/2007 |
| 52) | Bruce Stock | 52 | 2001 | 4/30/2007 |
| 53) | John R. Thurston | 53 | 2001 | 4/30/2007 |
| 54) | John H. Thurston | 60 | 2005 | 4/30/2007 |
| 55) | Robert Toothman | 22 | 2000 | 4/30/2007 |
| 56) | Kenneth Van Lanen | 29 | Aug. 1989 | 4/30/2007 |
| 57) | Dennis Vitale | 41 | 1990 | 4/30/2007 |
| 58) | Richard Waldie | 40 | 2005 | 4/30/2007 |
| 59) | Steven Wallner | 43 | 2001 | 4/30/2007 |

# Exhibit 20

### LIST OF "INACTIVE DPAs"

|      | Name | Allegations From AC ¶ | Alleged Retention Start Date From AC | Alleged Retention Stop Date From AC |
|------|------|------------------------|--------------------------------------|-------------------------------------|
| 1)   | Russell Anderson  | 67  | 1988      | 2004       |
| 2)   | Walter Behrens    | 68  | 1988      | 2001       |
| 3)   | Clarence Benham   | 69  | 2001      | 2005       |
| 4)   | David Brown       | 70  | 1988      | May 2004   |
| 5)   | James Clark       | 71  | 1988      | 2005       |
| 6)   | John Cody         | 72  | 1988      | 1993       |
| 7)   | Clarence Cook     | 73  | 1991      | 2002       |
| 8)   | Dwaine Converson  | 76  | 1998      | 2001       |
| 9)   | Bernard Corbit    | 75  | 1988      | 1998       |
| 10)  | Daniel DiPirro    | 77  | 1998      | 2002       |
| 11)  | Richard Dreiwitz  | 78  | 1991      | 2003       |
| 12)  | Raymond Egan      | 79  | 1988      | 2001       |
| 13)  | Frederick Ford    | 74  | 1988      | 2002       |
| 14)  | Cyril Gamber      | 80  | 2001      | 2005       |
| 15)  | Michael Goergen   | 81  | Dec. 2001 | Apr. 2005  |
| 16)  | Joseph Gordon     | 82  | 1988      | 2001       |
| 17)  | Warren Griffin    | 83  | 2002      | 2005       |
| 18)  | Ray Jackson       | 84  | 1990      | 2000       |
| 19)  | Harold Jacobs     | 85  | 1990      | 1999       |
| 20)  | William Knierim   | 98  | Jul. 1994 | 1/16/2002  |
| 21)  | Thomas Lavin      | 86  | 1991      | Jan. 2006  |
| 22)  | Edward Lee        | 87  | 2001      | Nov. 2003  |
| 23)  | John Maye         | 88  | 1991      | 2001       |
| 24)  | David McClugage   | 89  | 1991      | 2006       |
| 25)  | David Milroy      | 90  | 1999      | 2001       |
| 26)  | Charles Monroe    | 91  | 1995      | 1997       |
| 27)  | Ronald Montague   | 92  | 1988      | 2003       |
| 28)  | James O'Brien     | 93  | 1998      | 2001       |
| 29)  | Peter Pallatroni  | 94  | 1988      | Jan. 2006  |
| 30)  | Frank Pickens     | 100 | Mar. 1997 | Jul. 2001  |
| 31)  | Samuel Reed       | 95  | 1988      | 2000       |
| 32)  | Edward Skelly     | 96  | 1996      | Jan. 2006  |
| 33)  | Alan Stoops       | 65  | Nov. 1994 | 2/1/2007   |
| 34)  | Thomas Taylor     | 97  | 1988      | Jan. 2003  |

# Exhibit 21

## LIST OF 14 DPAs RETAINED AFTER 12/28/2001

|  | Name | Allegations From AC ¶ | Alleged Retention Start Date From AC | Actual Retention Start Date | Alleged Retention Stop Date From AC |
|---|---|---|---|---|---|
| 1) | Stanley Amrozowicz | 59 | 2002 | 9/1/2002 | 4/30/2007 |
| 2) | Thomas Carter | 58 | 2002 | 1/1/2002 | 4/30/2007 |
| 3) | Michael Dennis | 16 | Jan. 2002 | 1/1/2002 | 4/30/2007 |
| 4) | Robert Finney | 66 | 2005 | 5/1/2005 | 4/30/2007 |
| 5) | Warren Griffin | 83 | 2002 | 8/1/2002 | 2005 |
| 6) | Andrew Nash | 63 | 2003 | 10/1/2003 | 4/30/2007 |
| 7) | Laurence Robicheau | 42 | 2003 | 1/1/2003 | 4/30/2007 |
| 8) | James Salp | 14 | Jan. 2002 | 2/1/2002 | 4/30/2007 |
| 9) | Guy Scantlebury | 45 | 2003 | 5/1/2003 | 4/30/2007 |
| 10) | Emmett Scott | 55 | 2002 | 1/1/2002 | 4/30/2007 |
| 11) | Robert Starratt | 35 | Oct. 2005 | 11/1/2005 | 4/30/2007 |
| 12) | James Stever | 49 | 2004 | 8/1/2004 | 4/30/2007 |
| 13) | John H. Thurston | 60 | 2005 | 6/1/2005 | 4/30/2007 |
| 14) | Richard Waldie | 40 | 2005 | 5/1/2005 | 4/30/2007 |

# Exhibit 22

UNITED STATES CODE SERVICE
Copyright (c) 1996, Lawyers Cooperative Publishing

\*\*\* ARCHIVE MATERIAL \*\*\*

\*\*\* THIS SECTION IS CURRENT THROUGH THE 104TH CONGRESS, 2ND SESSION \*\*\*

TITLE 29. LABOR
CHAPTER 18. EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM
PROTECTION OF EMPLOYEE BENEFIT RIGHTS
REGULATORY PROVISIONS
Reporting and Disclosure

29 USCS § 1024 (1996)

§ 1024. Filing and furnishing of information

(a) Filing of annual report, plan description, summary plan description, and modifications and changes with Secretary.

(1) The administrator of any employee benefit plan subject to this part shall file with the Secretary--

(A) the annual report for a plan year within 210 days after the close of such year (or within such time as may be required by regulations promulgated by the Secretary in order to reduce duplicative filing);

(B) the plan description within 120 days after such plan becomes subject to this part and an updated plan description, no more frequently than once every 5 years, as the Secretary may require;

(C) a copy of the summary plan description at the time such summary plan description is required to be furnished to participants and beneficiaries pursuant to subsection (b)(1)(B) of this section; and

(D) modifications and changes referred to in section 102(a)(2) [29 USCS § 1022(a)(2)] within 60 days after such modification or change is adopted or occurs, as the case may be.

The Secretary shall make copies of such plan descriptions, summary plan descriptions, and annual reports available for inspection in the public document room of the Department of Labor. The administrator shall also furnish to the Secretary, upon request, any documents relating to the employee benefit plan, including but not limited to the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated.

(2) (A) With respect to annual reports required to be filed with the Secretary under this part, he may by regulation prescribe simplified annual reports for any pension plan which covers less than 100 participants.

(B) Nothing contained in this paragraph shall preclude the Secretary from requiring any information or data from any such plan to which this part applies where he finds such data or information is necessary to carry out the purposes of this title nor shall the Secretary be precluded from revoking provisions for simplified reports for any such plan if he finds it necessary to do so in order to carry out the objectives of this title.

(3) The Secretary may by regulation exempt any welfare benefit plan from all or part of the reporting and disclosure requirements of this title, or may provide for simplified reporting and disclosure if he finds that such requirements are inappropriate as applied to welfare benefit plans.

(4) The Secretary may reject any filing under this section--

(A) if he determines that such filing is incomplete for purposes of this part; or

(B) if he determines that there is any material qualification by an accountant or actuary contained in an opinion submitted pursuant to section 103(a)(3)(A) or section 103(a)(4)(B) [29 USCS § 1023(a)(3)(A) or (4)(B)].

(5) If the Secretary rejects a filing of a report under paragraph (4) and if a revised filing satisfactory to the Secretary is not submitted within 45 days after the Secretary makes his determination under paragraph (4) to reject the filing, and if the Secretary deems it in the best interest of the participants, he may take any one or more of the following actions--

(A) retain an independent qualified public accountant (as defined in section 103(a)(3)(D) [29 USCS § 1023 (a)(3)(D)]) on behalf of the participants to perform an audit,

(B) retain an enrolled actuary (as defined in section 103(a)(4)(C) of this Act [29 USCS § 1023(a)(4)(C)]) on behalf of the plan participants, to prepare an actuarial statement,

(C) bring a civil action for such legal or equitable relief as may be appropriate to enforce the provisions of this part, or

(D) take any other action authorized by this title.

The administrator shall permit such accountant or actuary to inspect whatever books and records of the plan are necessary for such audit. The plan shall be liable to the Secretary for the expenses for such audit or report, and the Secretary may bring an action against the plan in any court of competent jurisdiction to recover such expenses.

(b) Publication of summary plan description and annual report to participants and beneficiaries of plan. Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:

(1) [Caution: For applicability of Aug. 21, 1996 amendments to this paragraph, see § 101(g) of Act Aug. 21, 1996, P.L. 104-191, which appears as 29 USCS § 1181 note.] The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 102(a)(1) [29 USCS § 1022(a) (1)]--

(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or

(B) if later, within 120 days after the plan becomes subject to this part.

The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 102 [29 USCS § 1022] which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply. Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 102 [29 USCS § 1022] every tenth year after the plan becomes subject to this part. If there is a modification or change described in section 102(a)(1) [29 USCS § 1022(a)(1)] (other than a material reduction in covered services or benefits provided in the case of a group health plan (as defined in section 733(a)(1) [29 USCS § 1191b(a)(1)])), a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan. If there is a modification or change described in section 102(a)(1) [29 USCS § 1022(a)(1)] that is a material reduction in covered services or benefits provided under a group health plan (as defined in section 733(a)(1) [29 USCS § 1191b(a)(1)]), a summary description of such modification or change shall be furnished to participants and beneficiaries not later than 60 days after the date of the adoption of the modification or change. In the alternative, the plan sponsors may provide such description at regular intervals of not more than 90 days. The Secretary shall issue regulations within 180 days after the date of enactment of the Health Insurance Portability and Accountability Act of 1996 [enacted Aug. 21, 1996], providing alternative mechanisms to delivery by mail through which group health plans (as so defined) may notify participants and beneficiaries of material reductions in covered services or benefits.

(2) The administrator shall make copies of the plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

(3) Within 210 days after the close of the fiscal year of the plan, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 103(b)(3) [29 USCS § 1023(b)(3)(A), (B)] and such other material (including the percentage determined under section 103(d)(11) [29 USCS § 1023(d)(11)]) as is necessary to fairly summarize the latest annual report.

(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may be regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

(c) Statement of rights. The Secretary may by regulation require that the administrator of any employee benefit plan furnish to each participant and to each beneficiary receiving benefits under the plan a statement of the rights of participants and beneficiaries under this title.

(d) Cross references For regulations respecting coordination of reports to the Secretaries of Labor and the Treasury, see section 3004 [29 USCS § 1204].

**HISTORY:** (Sept. 2, 1974, P.L. 93-406, Title I, Subtitle B, Part 1, § 104, 88 Stat. 847; Apr. 7, 1986, P.L. 99-272, Title XI, § 11016(b)(2), 100 Stat. 273; Dec. 22, 1987, P.L. 100-203, Title IX, Subtitle D, Part II, Subpart D, § 9342(a)(2), 101 Stat. 1330-371; Dec. 19, 1989, P.L. 101-239, Title VII, Subtitle G, Part V, Subpart D, § 7894(b)(3), (4), 103 Stat. 2448.)

   (As amended Aug. 21, 1996, P.L. 104-191, Title I, Subtitle A, Part 1, § 101(c)(1), 110 Stat. 1951; Sept. 26, 1996, P.L. 104-204, Title VI, § 603(b)(3)(D), 110 Stat. 2938.)

# Exhibit 23

☐ ◙

UNITED STATES CODE SERVICE
Copyright © 2008 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 110-238, APPROVED 5/30/2008 ***
*** WITH GAPS OF 110-234 and 110-236 ***

TITLE 29. LABOR
CHAPTER 18. EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM
PROTECTION OF EMPLOYEE BENEFIT RIGHTS
REGULATORY PROVISIONS
REPORTING AND DISCLOSURE

29 USCS § 1024

§ 1024. Filing and furnishing of information

(a) Filing of annual report with Secretary.
  (1) The administrator of any employee benefit plan subject to this part shall file with the Secretary the annual report for a plan year within 210 days after the close of such year (or within such time as may be required by regulations promulgated by the Secretary in order to reduce duplicative filing). The Secretary shall make copies of such annual reports available for inspection in the public document room of the Department of Labor.
  (2) (A) With respect to annual reports required to be filed with the Secretary under this part, he may by regulation prescribe simplified annual reports for any pension plan which covers less than 100 participants.
    (B) Nothing contained in this paragraph shall preclude the Secretary from requiring any information or data from any such plan to which this part applies where he finds such data or information is necessary to carry out the purposes of this title nor shall the Secretary be precluded from revoking provisions for simplified reports for any such plan if he finds it necessary to do so in order to carry out the objectives of this title.
  (3) The Secretary may by regulation exempt any welfare benefit plan from all or part of the reporting and disclosure requirements of this title, or may provide for simplified reporting and disclosure if he finds that such requirements are inappropriate as applied to welfare benefit plans.
  (4) The Secretary may reject any filing under this section--
    (A) if he determines that such filing is incomplete for purposes of this part; or
    (B) if he determines that there is any material qualification by an accountant or actuary contained in an opinion submitted pursuant to section 103(a)(3)(A) or section 103(a)(4)(B) [29 USCS § 1023(a)(3)(A) or (4)(B)].
  (5) If the Secretary rejects a filing of a report under paragraph (4) and if a revised filing satisfactory to the Secretary is not submitted within 45 days after the Secretary makes his determination under paragraph (4) to reject the filing, and if the Secretary deems it in the best interest of the participants, he may take any one or more of the following actions--
    (A) retain an independent qualified public accountant (as defined in section 103(a)(3)(D) [29 USCS § 1023(a)(3)(D)]) on behalf of the participants to perform an audit,
    (B) retain an enrolled actuary (as defined in section 103(a)(4)(C) of this Act [29 USCS § 1023(a)(4)(C)]) on behalf of the plan participants, to prepare an actuarial statement,
    (C) bring a civil action for such legal or equitable relief as may be appropriate to enforce the provisions of this part, or
    (D) take any other action authorized by this title.
  The administrator shall permit such accountant or actuary to inspect whatever books and records of the plan are necessary for such audit. The plan shall be liable to the Secretary for the expenses for such audit or report, and the Secretary may bring an action against the plan in any court of competent jurisdiction to recover such expenses.
  (6) The administrator of any employee benefit plan subject to this part shall furnish to the Secretary, upon request, any documents relating to the employee benefit plan, including but not limited to, the latest

summary plan description (including any summaries of plan changes not contained in the summary plan description), and the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated.

(b) Publication of summary plan description and annual report to participants and certain employers and beneficiaries of plan. Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:

(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 102(a) [29 USCS § 1022(a)]--

(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or

(B) if later, within 120 days after the plan becomes subject to this part.

The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 102 [29 USCS § 1022] which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply. Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 102 [29 USCS § 1022] every tenth year after the plan becomes subject to this part. If there is a modification or change described in section 102(a) [29 USCS § 1022(a)] (other than a material reduction in covered services or benefits provided in the case of a group health plan (as defined in section 733(a)(1) [29 USCS § 1191b(a)(1)])), a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan. If there is a modification or change described in section 102(a) [29 USCS § 1022(a)] that is a material reduction in covered services or benefits provided under a group health plan (as defined in section 733(a)(1) [29 USCS § 1191b(a)(1)]), a summary description of such modification or change shall be furnished to participants and beneficiaries not later than 60 days after the date of the adoption of the modification or change. In the alternative, the plan sponsors may provide such description at regular intervals of not more than 90 days. The Secretary shall issue regulations within 180 days after the date of enactment of the Health Insurance Portability and Accountability Act of 1996 [enacted Aug. 21, 1996], providing alternative mechanisms to delivery by mail through which group health plans (as so defined) may notify participants and beneficiaries of material reductions in covered services or benefits.

(2) The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

(3) Within 210 days after the close of the fiscal year of the plan, the administrator (other than an administrator of a defined benefit plan to which the requirements of section 103(f) [29 USCS § 1023(f)] applies) shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 103(b)(3) [29 USCS § 1023(b)(3)(A), (B)] and such other material (including the percentage determined under section 103(d)(11) [29 USCS § 1023(d)(11)]) as is necessary to fairly summarize the latest annual report.

(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description,[,] and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may be regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

(5) Identification and basic plan information and actuarial information included in the annual report for any plan year shall be filed with the Secretary in an electronic format which accommodates display on the Internet, in accordance with regulations which shall be prescribed by the Secretary. The Secretary shall provide for display of such information included in the annual report, within 90 days after the date of the filing of the annual report, on an Internet website maintained by the Secretary and other appropriate media. Such information shall also be displayed on any Intranet website maintained by the plan sponsor (or by the plan administrator on behalf of the plan sponsor) for the purpose of communicating with employees and not the public, in accordance with regulations which shall be prescribed by the Secretary.

(c) Statement of rights. The Secretary may by regulation require that the administrator of any employee benefit plan furnish to each participant and to each beneficiary receiving benefits under the plan a statement

of the rights of participants and beneficiaries under this title.

(d) Furnishing summary plan information to employers and employee representatives of multiemployer plans.

(1) In general. With respect to a multiemployer plan subject to this section, within 30 days after the due date under subsection (a)(1) for the filing of the annual report for the fiscal year of the plan, the administrators shall furnish to each employee organization and to each employer with an obligation to contribute to the plan a report that contains--

(A) a description of the contribution schedules and benefit formulas under the plan, and any modification to such schedules and formulas, during such plan year;

(B) the number of employers obligated to contribute to the plan;

(C) a list of the employers that contributed more than 5 percent of the total contributions to the plan during such plan year;

(D) the number of participants under the plan on whose behalf no contributions were made by an employer as an employer of the participant for such plan year and for each of the 2 preceding plan years;

(E) whether the plan was in critical or endangered status under section 305 [29 USCS § 1085] for such plan year and, if so, include--

(i) a list of the actions taken by the plan to improve its funding status; and

(ii) a statement describing how a person may obtain a copy of the plan's improvement or rehabilitation plan, as applicable, adopted under section 305 [29 USCS § 1085] and the actuarial and financial data that demonstrate any action taken by the plan toward fiscal improvement;

(F) the number of employers that withdrew from the plan during the preceding plan year and the aggregate amount of withdrawal liability assessed, or estimated to be assessed, against such withdrawn employers, as reported on the annual report for the plan year to which the report under this subsection relates;

(G) in the case of a multiemployer plan that has merged with another plan or to which assets and liabilities have been transferred, the actuarial valuation of the assets and liabilities of each affected plan during the year preceding the effective date of the merger or transfer, based upon the most recent data available as of the day before the first day of the plan year, or other valuation method performed under standards and procedures as the Secretary may prescribe by regulation;

(H) a description as to whether the plan--

(i) sought or received an amortization extension under section 304(d) of this Act [29 USCS § 1084(d)] or section 431(d) of the Internal Revenue Code of 1986 [26 USCS § 431(d)] for such plan year; or

(ii) used the shortfall funding method (as such term is used in section 305 [29 USCS § 1085]) for such plan year; and

(I) notification of the right under this section of the recipient to a copy of the annual report filed with the Secretary under subsection (a), summary plan description, summary of any material modification of the plan, upon written request, but that--

(i) in no case shall a recipient be entitled to receive more than one copy of any such document described during any one 12-month period; and

(ii) the administrator may make a reasonable charge to cover copying, mailing, and other costs of furnishing copies of information pursuant to this subparagraph.

(2) Effect of subsection. Nothing in this subsection waives any other provision under this title requiring plan administrators to provide, upon request, information to employers that have an obligation to contribute under the plan.

(e) Cross references For regulations respecting coordination of reports to the Secretaries of Labor and the Treasury, see section 3004 [29 USCS § 1204].

## 𝕿 History:

(Sept. 2, 1974, P.L. 93-406, Title I, Subtitle B, Part 1, § 104, 88 Stat. 847; April 7, 1986, P.L. 99-272, Title XI, § 11016(b)(2), 100 Stat. 273; Dec. 22, 1987, P.L. 100-203, Title IX, Subtitle D, Part II, Subpart D, § 9342(a)(2), 101 Stat. 1330-371; Dec. 19, 1989, P.L. 101-239, Title VII, Subtitle G, Part V, Subpart D, § 7894(b)(3), (4), 103 Stat. 2448; Aug. 21, 1996, P.L. 104-191, Title I, Subtitle A, Part 1, § 101(c)(1), 110 Stat. 1951; Sept. 26, 1996, P.L. 104-204, Title VI, § 603(b)(3)(D), 110 Stat. 2938; Aug. 5, 1997, P.L. 105-34, Title XV, Subtitle A, § 1503(c)(1), (2)(A), (d)(1)-(3), 111 Stat. 1062; Aug. 17, 2006, P.L. 109-280, Title V, §§ 503(c)(1), (d), 504(a), 120 Stat. 943, 944, 945.)

# Exhibit 24

# U.S. Department of Labor

⮞ Printer-Friendly Version

## Archived News Release--Caution: information may be out of date.

U.S. DEPARTMENT OF LABOR

# Pension and Welfare Benefits Administration

### EBSA Press Release: New Law Eliminates Certain Employee Benefit Plan Filing Requirements [08/08/1997]

#### For more information call: (202) 219-8921

The U.S. Department of Labor today announced that administrators of employee benefit plans are no longer required to file summary plan descriptions and related plan changes with the department.

Effective Aug. 5, 1997, with the passage of the Taxpayer Relief Act of 1997, plan administrators subject to the Employee Retirement Income Security Act will no longer be required to file summary plan descriptions (SPDs), summary material modifications (SMMs) or updated SPDs with the Labor Department. These filings cost plan administrators approximately $2.5 million annually. The new law, however, does not relieve plan administrators from their obligation to furnish participants and beneficiaries with copies of these documents.

"The elimination of these filings will reduce the administrative costs and burdens for both plan administrators and the government," said Olena Berg, Assistant Secretary for the Pension and Welfare Benefits Administration (PWBA). "At the same time, the new law gives the department authority to protect the access of workers to needed plan information."

PWBA is advising plan administrators that they should immediately cease filing these plan documents with the department, even if the event giving rise to the filing obligation occurred before Aug. 5, 1997. For example, a plan amendment adopted on July 1, 1997, would result in a requirement that a SMM be furnished to participants and beneficiaries and filed with the department within 210 days after the end of the plan year. Under the new requirement, the SMM need not be filed with the department.

Until now, PWBA has received over 150,000 SPDs and related filings from plans each year. Under the new law, plan administrators must furnish copies of SPDs and other plan documents to the department upon request. In addition, new civil penalties of up to $100 per day (not to exceed $1,000 per request) may be assessed against administrators who fail to furnish the requested information to the department within 30 days.

The SPD is the basic document which gives plan participants and beneficiaries information about how the plan works, what benefits the plan provides and how those benefits may be calculated. If any of these plan details change from what was described in the SPD, participants and beneficiaries must receive a SMM describing that change. The administrator must also periodically update the SPD, incorporate all SMMs, and furnish copies of the updated SPD to participants and beneficiaries.

## Archived News Release--Caution: information may be out of date.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USA-DOL**
TTY: 1-877-889-5627
**Contact Us**

# Exhibit 25

29 C.F.R. § 2520.102-2

**C**

**Effective: [See Text Amendments]**

Code of Federal Regulations Currentness
Title 29. Labor
  Subtitle B. Regulations Relating to Labor
    Chapter XXV. Employee Benefits Security
    Administration, Department of Labor (Refs
    & Annos)
      Subchapter C. Reporting and Disclosure
      Under the Employee Retirement Income
      Security Act of 1974
        ↘▣ Part 2520. Rules and Regulations for
        Reporting and Disclosure (Refs & An- nos)
          ↘▣ Subpart B. Contents of Plan De-
          scriptions and Summary Plan Descrip-
          tions

→ **§ 2520.102-2 Style and format of
summary plan description.**

(a) Method of presentation. The summary plan de-
scription shall be written in a manner calculated to
be understood by the average plan participant and
shall be sufficiently comprehensive to apprise the
plan's participants and beneficiaries of their rights
and obligations under the plan. In fulfilling these
requirements, the plan administrator shall exercise
considered judgment and discretion by taking into
account such factors as the level of comprehension
and education of typical participants in the plan and
the complexity of the terms of the plan. Considera-
tion of these factors will usually require the limita-
tion or elimination of technical jargon and of long,
complex sentences, the use of clarifying examples
and illustrations, the use of clear cross references
and a table of contents.

(b) General format. The format of the summary
plan description must not have the effect to mis-
leading, misinforming or failing to inform parti-
cipants and beneficiaries. Any description of excep-
tion, limitations, reductions, and other restrictions

of plan benefits shall not be minimized, rendered
obscure or otherwise made to appear unimportant.
Such exceptions, limitations, reductions, or restric-
tions of plan benefits shall be described or summar-
ized in a manner not less prominent than the style,
captions, printing type, and prominence used to de-
scribe or summarize plan benefits. The advantages
and disadvantages of the plan shall be presented
without either exaggerating the benefits or minim-
izing the limitations. The description or summary
of restrictive plan provisions need not be disclosed
in the summary plan description in close conjunc-
tion with the description or summary of benefits,
provided that adjacent to the benefit description the
page on which the restrictions are described is noted.

(c) Foreign languages. In the case of either--

(1) A plan that covers fewer than 100 parti-
cipants at the beginning of a plan year, and in
which 25 percent or more of all plan parti-
cipants are literate only in the same non-
English language, or

(2) A plan which covers 100 or more parti-
cipants at the beginning of the plan year, and in
which the lesser of (i) 500 or more participants,
or (ii) 10% or more of all plan participants are
literate only in the same non-English language,
so that a summary plan description in English
would fail to inform these participants ad-
equately of their rights and obligations under
the plan, the plan administrator for such plan
shall provide these participants with an Eng-
lish-language summary plan description which
prominently displays a notice, in the non-
English language common to these parti-
cipants, offering them assistance. The assist-
ance provided need not involve written materi-
als, but shall be given in the non-English lan-
guage common to these participants and shall
be calculated to provide them with a reasonable
opportunity to become informed as to their

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

rights and obligations under the plan. The notice offering assistance contained in the summary plan description shall clearly set forth in the non-English language common to such participants offering them assistance. The assistance provided need not involve written materials, but shall be given in the non-English language common to these participants and shall be calculated to provide them with a reasonable opportunity to become informed as to their rights and obligations under the plan. The notice offering assistance contained in the summary plan description shall clearly set forth in the non-English language common to such participants the procedures they must follow in order to obtain such assistance.

Example. Employer A maintains a pension plan which covers 1000 participants. At the beginning of a plan year five hundred of Employer A's covered employees are literate only in Spanish, 101 are literate only in Vietnamese, and the remaining 399 are literate in English. Each of the 1000 employees receives a summary plan description in English, containing an assistance notice in both Spanish and Vietnamese stating the following:

"This booklet contains a summary in English of your plan rights and benefits under Employer A Pension Plan. If you have difficulty understanding any part of this booklet, contact Mr. John Doe, the plan administrator, at his office in Room 123, 456 Main St., Anywhere City, State 20001. Office hours are from 8:30 A.M. to 5:00 P.M. Monday through Friday. You may also call the plan administrator's office at (202) 555-2345 for assistance."

[42 FR 37180, July 19, 1977]

SOURCE: 51 FR 41287, Nov. 13, 1986; 54 FR 8627, March 1, 1989; 62 FR 16984, April 8, 1997; 65 FR 7163, Feb. 11, 2000; 67 FR 17274, April 9, 2002; 67 FR 64772, Oct. 21, 2002; 68 FR 16400, April 3, 2003; 71 FR 1911, Jan. 11, 2006; 72 FR 64727, Nov. 16, 2007, unless otherwise noted.

AUTHORITY: 29 U.S.C. 1021-1025, 1027, 1029-31, 1059, 1134, and 1135; and Secretary of Labor's Order 1-2003, 68 FR 5374 (Feb. 3, 2003). Sec. 2520.101-2 also issued under 29 U.S.C. 1132, 1181-1183, 1181 note, 1185, 1185a-b, 1191, and 1191a-c. Secs. 2520.102-3, 2520.104b-1, and 2520.104b-3 also issued under 29 U.S.C. 1003, 1181-1183, 1181 note, 1185, 1185a-b, 1191, and 1191a-c. Secs. 2520.104b-1 and 2520.107 also issued under 26 U.S.C. 401 note, 111 Stat. 788.

29 C. F. R. § 2520.102-2, **29 CFR § 2520.102-2**

Current through May 29, 2008; 73 FR 31014

Copr. © 2008 Thomson Reuters/ West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Exhibit 26

29 C.F.R. § 2520.104a-3

**C**

**Effective: [See Text Amendments]**

Code of Federal Regulations Currentness
  Title 29. Labor
    Subtitle B. Regulations Relating to Labor
      Chapter XXV. Employee Benefits Security
      Administration, Department of Labor (Refs
      & Annos)
        Subchapter C. Reporting and Disclosure
        Under the Employee Retirement Income
        Security Act of 1974
          ↖️ Part 2520. Rules and Regulations for
          Reporting and Disclosure (Refs & An- nos)
            ↖️ Subpart E. Reporting Requirements
            (Refs & Annos)

          ➡ **§§    2520.104a-3,    2520.104a-4
          [Reserved]**

[67 FR 777, Jan. 7, 2002]

29 C. F. R. § 2520.104a-3, **29 CFR § 2520.104a-**3


Current through May 29, 2008; 73 FR 31014

        Copr. © 2008 Thomson Reuters/ West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Exhibit 27

29 C.F.R. § 2520.104b-2

**C**

**Effective: [See Text Amendments]**

Code of Federal Regulations Currentness
  Title 29. Labor
    Subtitle B. Regulations Relating to Labor
      Chapter XXV. Employee Benefits Security
      Administration, Department of Labor (Refs
      & Annos)
        Subchapter C. Reporting and Disclosure
        Under the Employee Retirement Income
        Security Act of 1974
          Part 2520. Rules and Regulations for
          Reporting and Disclosure (Refs & An- nos)
          Subpart F. Disclosure Require-
          ments (Refs & Annos)

          → § 2520.104b-2 Summary plan
          description.

(a) Obligation to furnish. Under the authority of
sections 104(b)(1) and 104(c) of the Act, the plan
administrator of an employee benefit plan subject to
the provisions of Part 1 of Title I shall furnish a
copy of the summary plan description and a state-
ment of ERISA rights as provided in §
2520.102-3(t), to each participant covered under the
plan (as defined in § 2510.3-3(d)), and each benefi-
ciary receiving benefits under a pension plan on or
before the later of:

  (1) The date which is 90 days after the employ-
  ee becomes a participant, or (in the case of a
  beneficiary receiving benefits under a pension
  plan) within 90 days after he or she first re-
  ceives benefits, except as provided in §
  2520.104b-4(a), or,

  (2) Within 120 days after the plan becomes
  subject to Part 1 of Title I.

  (3)(i) A plan becomes subject to Part 1 of Title
  I on the first day on which an employee is cred-
  ited with an hour of service under §

2530.200b-2 or § 2530.200b-3. Where a plan is
made prospectively effective to take effect after
a certain date or after a condition is satisfied,
the day upon which the plan becomes subject
to Part 1 of Title I is the day after such date or
condition is satisfied. Where a plan is adopted
with a retroactive effective date, the 120 day
period begins on the day after the plan is adop-
ted. Where a plan is made retroactively effect-
ive dependent on a condition, the day on which
the plan becomes subject to Part 1 of Title I is
the day after the day on which the condition is
satisfied. Where a plan is made retroactively
effective subject to a contingency which may
or may not occur in the future, the day on
which the plan becomes subject to Part 1, Title
I is the day after the day on which the contin-
gency occurs.

  (ii) Examples: Company A is negotiating the
  purchase of Company B. On September 1,
  1978, as part of the negotiations, Company A
  adopts a pension plan covering the employees
  of Company B, contingent on the successful
  conclusion of its negotiations to purchase Com-
  pany B. The plan provides that it shall take ef-
  fect on the first day of the calendar year in
  which the purchase is concluded. On February
  1, 1979, the negotiations conclude with Com-
  pany A's purchase of Company B. The plan
  therefore becomes effective on February 1,
  1979, retroactive to January 1, 1979. The sum-
  mary plan description must be filed and dis-
  closed no later than 120 days after February 1,
  1979.

(b) Periods for furnishing updated summary plan
description.

  (1) For purposes of the requirement to furnish
  the updated summary plan description to each
  participant and each beneficiary receiving be-
  nefits under the plan (other than beneficiaries
  receiving benefits under a welfare plan) re-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

quired by section 104(b)(1) of the Act, the administrator of an employee benefit plan shall furnish such updated summary plan description no later than 210 days following the end of the plan year which occurs five years after the last date a change in the information required to be disclosed by section 102 or 29 CFR 2520.102-3 would have been reflected in the most recently distributed summary plan description (or updated summary plan description) as described in section 102 of the Act.

(2) In the case of a plan to which no amendments have been made between the end of the time period covered by the last distributed summary plan description (or updated summary plan description), described in section 102 of the Act, and the next occurring applicable date described in paragraph (b)(1) of this section, for purposes of the requirement to furnish the updated summary plan description to each participant, and to each beneficiary receiving benefits under the plan (other than beneficiaries receiving benefits under a welfare plan), required by section 104(b)(1) of the Act, the administrator of an employee benefit plan shall furnish such updated summary plan description no later than 210 days following the end of the plan year which occurs ten years after the last date a change in the information required to be disclosed by section 102 or 29 CFR 2520.102-3 would have been reflected in the most recently distributed summary plan description (or updated summary plan description), as described in section 102 of the Act.

(c) to (f) [Reserved]

(g) Terminated plans.

(1) If, on or before the date by which a plan is required to furnish a summary plan description or updated summary plan description to participants and pension plan beneficiaries under this section, the plan has terminated within the meaning of paragraph (g)(2) of this section, the administrator of such plan is not required to furnish to participants covered under the plan or to beneficiaries receiving benefits under the plan a summary plan description.

(2) For purposes of this section, a plan shall be considered terminated if:

(i) In the case of an employee pension benefit plan, all distributions to participants and beneficiaries have been completed; and

(ii) In the case of an employee welfare benefit plan, no claims can be incurred which will result in a liability of the plan to pay benefits. A claim is incurred upon the occurrence of the event or condition from which the claim arises (whether or not discovered).

(h) [Reserved]

(i) Style and format of the summary plan description. See § 2520.102-2.

(j) Contents of the summary plan description. See § 2520.102-3.

(k) Option for different summary plan descriptions. See § 2520.102-4; § 2520.104-26; and § 2520.104-27.

(l) Employee benefit plan--participant covered under a plan. See § 2510.3-3(d).

[42 FR 37187, July 19, 1977, as amended at 45 FR 14032, March 4, 1980; 48 FR 1714, Jan. 14, 1983; 61 FR 33849, 33850, July 1, 1996; 67 FR 777, Jan. 7, 2002]

SOURCE: 51 FR 41287, Nov. 13, 1986; 54 FR 8627, March 1, 1989; 62 FR 16984, April 8, 1997; 65 FR 7163, Feb. 11, 2000; 67 FR 17274, April 9, 2002; 67 FR 64772, Oct. 21, 2002; 68 FR 16400, April 3, 2003; 71 FR 1911, Jan. 11, 2006; 72 FR 64727, Nov. 16, 2007, unless otherwise noted.

AUTHORITY: 29 U.S.C. 1021-1025, 1027, 1029-31, 1059, 1134, and 1135; and Secretary of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

29 C.F.R. § 2520.104b-2

Labor's Order 1-2003, 68 FR 5374 (Feb. 3, 2003). Sec. 2520.101-2 also issued under 29 U.S.C. 1132, 1181-1183, 1181 note, 1185, 1185a-b, 1191, and 1191a-c. Secs. 2520.102-3, 2520.104b-1, and 2520.104b-3 also issued under 29 U.S.C. 1003, 1181-1183, 1181 note, 1185, 1185a-b, 1191, and 1191a-c. Secs. 2520.104b-1 and 2520.107 also issued under 26 U.S.C. 401 note, 111 Stat. 788.; (The information collection requirements contained in Subpart F were approved by the Office of Management and Budget under control number 1210- 0016.)

29 C. F. R. § 2520.104b-2, **29 CFR § 2520.104b-2**

Current through May 29, 2008; 73 FR 31014

Copr. © 2008 Thomson Reuters/ West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on June 9, 2008, I caused a true copy of the

- ***Motion to Dismiss,***

- ***NFL Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint,***

- ***Transmittal Declaration of Jay S. Berke in Support of Motion to Dismiss*** and

- {Proposed} ***Order***

to be served upon the following party as indicated:

<u>By Hand Delivery</u>

Michael P. Pappas, Esq.
Littler Mendelson
885 Third Avenue, 16th Floor
New York, NY 10022

<u>By Federal Express, overnight delivery</u>

M. Christine Carty, Esq.
Schnader Harrison Segal & Lewis LLP
140 Broadway, 31st Floor
New York, NY 10005

Robert J. Costello, Esq.
Levy. Tolman & Costello, LLP
630 Third Avenue
New York, NY 10017

Dated:  New York, New York
        June 9, 2008

Steven Ray Katzenstein