LITTLER MENDELSON, P.C.
Michael P. Pappas (MP-6716)
885 Third Avenue
New York, New York 10022
(212) 583-9600

Attorneys for Defendant
  Comprehensive Drug Testing, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

WILLIAM E. RICHARDSON, et al.,

               Plaintiffs,

        -against-                 No. 07-cv-11632 (MGC)

NATIONAL FOOTBALL LEAGUE, et al.,

             Defendants.
_____

**DEFENDANT COMPREHENSIVE DRUG TESTING, INC.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT, OR, ALTERNATIVELY, TO TRANSFER VENUE TO THE CENTRAL
DISTRICT OF CALIFORNIA, WESTERN DIVISION**

TABLE OF CONTENTS

PAGE

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

STATEMENT OF RELEVANT FACTS ........................................................................................ 3

ARGUMENT ...................................................................................................................................... 5

I.     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CDT
       UPON WHICH RELIEF CAN BE GRANTED .................................................... 5

       A.     The Complaint Fails To State a Claim Under ERISA ............................ 5

              (1)  Plaintiffs Have No Standing ..................................................... 6

              (2)  A Refusal to Hire Is Not Actionable Under ERISA ........................... 6

              (3)  There Is No Controversy Ripe For Adjudication ................................ 7

       B.     The Complaint Fails To State a Claim Under the ADEA ......................... 8

II.    THERE IS NO BASIS FOR EXERCISING PERSONAL JURISDICTION
       OVER CDT .......................................................................................................... 10

       A.     There Are No Grounds For Exercising Personal Jurisdiction Over
              CDT Under the New York Long-Arm Statute ......................................... 11

       B.     The Exercise of Jurisdiction Over CDT Would Offend Due
              Process Principles Under the United States Constitution ........................ 14

III.   THE CLAIMS AGAINST CDT SHOULD BE TRANSFERRED TO A
       PROPER VENUE .............................................................................................. 16


CONCLUSION ................................................................................................................................ 20

TABLE OF AUTHORITIES

PAGE(S)

Apache Prods. Co. v. Employers Ins. of Wausau, 154 F.R.D. 650 (S.D. Miss. 1994) ............................................................................................................. 18

Barrett v. Tema Dev. (1988), Inc., 463 F. Supp.2d 423 (S.D.N.Y. 2006), aff'd, 251 Fed.Appx. 698, 700, 2007 U.S. App. LEXIS 25126 (2d. Cir., 2007).......... 12

Becker v. Mack Truck, Inc., 281 F.3d 372 (3rd Cir.), cert. denied, 537 U.S. 818 (2002)........................................................................................................... 7

Bensusan Rest. Corp. v. King, 937 F. Supp. 295 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997)........................................................................................... 15

Bridgeport Music, Inc., 327 F.3d 472 (6th Cir.), cert. denied, 540 U.S. 948 (2003).................. 14

Broaddus v. Florida Power Corp., 145 F.3d 1283 (11th Cir. 1998) ............................. 8

Burger King v. Rudzewicz, 471 U.S. 462 (1985)........................................................ 16

Burrows Paper Corp. v. R.G. Engineering, Inc., 363 F. Supp.2d 379 (N.D.N.Y. 2005) ....................................................................................................... 13, 15

Core-Vent Corp. v. Nobel Indus., AB, 11 F.3d 1482 (9th Cir. 1993) ......................... 14

Darby v. Compagnie Nationale Air France, 769 F. Supp. 1255 (S.D.N.Y. 1991) ...... 15

Gaffney v. Dept. of Info. Tech. & Telecomms., 536 F. Supp.2d 445 (S.D.N.Y. 2008) ........................................................................................................... 10

Hazen Paper v. Biggins, 507 U. S. 604 (1993) ........................................................ 8, 9

In re Vitamins Anti Trust Litigation, 270 F. Supp.2d 15 (D.D.C. 2003) ................... 18

I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc., 986 F. Supp. 816 (S.D.N.Y. 1997)............................................................................................ 10

Int'l Shoe Co. v. State of Wash., 326 U.S. 310 (1945)............................................... 15

James v. New York Racing Ass'n, 233 F.3d 149 (2d Cir. 2000) .................................. 9

Kulko v. Superior Ct. of Cal., 436 U.S. 84 (1978) .................................................... 14

Lancaster v. Colonial Motor Freight Line, Inc., 177 A.D.2d 152, 581 N.Y.S.2d 283 (1st Dep't 1992) ...................................................................................... 12

Maurice Silvera, Inc. v. Nat'l Ctr. for Employment of the Disabled, 2003 U.S. Dist. LEXIS 1755 (S.D.N.Y. Feb. 6, 2003) ...................................................... 16

McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34 (1967)................. 12

Mortgage Funding Corp. v. Boyer Lake Pointe, L.C., 379 F. Supp.2d 282 (E.D.N.Y. 2005)............................................................................................. 15

Nutritional Health Alliance v. Shalala, 144 F.3d 220 (2d Cir.), cert. denied, 525 U.S. 1040 (1998)........................................................................................... 8

PDK Labs, Inc. v. Friedlander, 103 F.3d 1105 (2d Cir. 1997) .................................. 10

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

Pennoyer v. Neff, 95 U.S. 714 (1878) .............................................................. 15

Rio Properties, Inc., v. Rio Int'l Interlink, 284 F.3d. 1007 (9th Cir. 2002) ................................. 10

Robinson v. Overseas Military Sales Corp., 21 F.3d 502 (2d Cir. 1994) ..................................... 10

St. Cyr v. Greyhound Lines, Inc., 486 F. Supp. 724 (E.D.N.Y. 1980) ........................................ 18

Scheinbart v. Certain-Teed Prods. Corp., 367 F. Supp. 707 (S.D.N.Y. 1973) ........................... 18

Shawley v. Bethlehem Steel Corp., 784 F. Supp. 1200 (W.D. Pa., 1992), aff'd,
     989 F.2d 652 (3d Cir. 1993)........................................................................... 7

Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87 (2d Cir.), cert. denied,
     534 U.S. 951 (2001) ....................................................................................... 9

Sunward Electronics, Inc. v. McDonald, 362 F.3d 17 (2d Cir. 2004) ......................................... 10

Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827, 527 N.Y.S.2d 729 (1988)......................... 12

United Computer Capital Corp. v. Secure Prods., L.P., 218 F. Supp.2d 273
     (N.D.N.Y. 2002) ...................................................................................... 13

Woroski v. Nashua Corp., 31 F.3d 105 (2d Cir. 1994)............................................................. 9

## STATUTES

29 U.S.C. § 1132............................................................................................ 6

29 U.S.C. § 1132(e)(2).................................................................................. 10

29 U.S.C. § 1140............................................................................................ 6

28 U.S.C. § 1391(b) ............................................................................ 1, 3, 16, 17

28 U.S.C. § 1404(a) ............................................................................ 1, 3, 18, 20

28 U.S.C. § 1406(a) ...................................................................................... 17

CPLR 302(a) (McKinney's 2008) ............................................................ 11, 12, 13, 14

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Comprehensive Drug Testing, Inc. ("CDT"), by its attorneys, Littler Mendelson, P.C., respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' claims against CDT pursuant to Fed.R.Civ.P. 12(b), or, alternatively, to sever those claims and transfer the action against CDT to the Central District of California pursuant to 28 U.S.C. §§ 1391 or 1404(a).

Plaintiffs' purported causes of action against CDT should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because they fail to state a claim upon which relief may be granted. CDT is named in only two of the seven claims for relief in the Complaint -- the Third Claim for ERISA violations and the Seventh Claim for ADEA violations, both arising solely from CDT's alleged failure to hire Plaintiffs.

As a matter of law, there is no basis for an ERISA cause of action against CDT because it is undisputed that Plaintiffs were never employed by CDT and were never participants in any CDT benefit plan. It is well-established that non-employee, non-participants cannot maintain a cause of action under ERISA for failure to hire. Further, even if Plaintiffs had a colorable claim against CDT under ERISA (and they do not), there is no case or controversy ripe for adjudication because Plaintiffs have never sought or applied for ERISA benefits from CDT.[1]

Similarly, the facts alleged fail to state a claim for age discrimination under the ADEA. Plaintiffs allege that the determining factor in CDT's alleged refusal to hire them was *not* age, but their pending dispute with the NFL/NFLMC regarding independent

---

[1] At the court conference on June 24, 2008, Plaintiffs' counsel represented that Plaintiffs were suing CDT only for an alleged violation of the ADEA, not ERISA. Accordingly, Plaintiffs have apparently withdrawn their ERISA claim against CDT, which they must have recognized is legally deficient. In the event Plaintiffs have not withdrawn their ERISA cause of action against CDT, CDT hereby moves to dismiss that claim.

contractor status. Plaintiffs' assertion of a non-age-related reason for CDT's alleged refusal to hire them precludes a claim of age discrimination. In any event, the only fact asserted in support of the age claim is that a CDT employee allegedly said to one of the Plaintiffs, "I didn't know you had grandchildren." That alleged comment, even if made, is legally insufficient to support a finding of age discrimination.

Plaintiffs' claims against CDT should also be dismissed pursuant to Rule 12(b)(2) because there is no basis for exercising personal jurisdiction over CDT. CDT is a foreign corporation located exclusively within the State of California. In a federal question case involving an out-of-state defendant, when the federal statute does not provide for national service of process, federal courts apply the forum state's personal jurisdiction rules.[2] Under New York's long-arm statute, CDT, a non-domicilliary, is not subject to personal jurisdiction in New York unless Plaintiffs can establish that their claims against CDT arose from CDT's conduct within New York State. However, it is undisputed that the events upon which the claims against CDT are based, *i.e.*, CDT's alleged failure to hire Plaintiffs, occurred exclusively in California, not New York. Because Plaintiffs' claims did not arise from CDT's acts within New York State, there are no grounds for exercising long-arm jurisdiction over CDT. Even if the requisites of New York's long-arm statute were satisfied, personal jurisdiction over CDT would still be improper because CDT's contacts with New York were insufficient to satisfy federal due process requirements.

Finally, in the event Plaintiffs' claims against CDT are not dismissed on other grounds, those claims should either be dismissed or severed and transferred based on

---

[2]    Although ERISA does permit nationwide service of process and might provide a basis for personal jurisdiction over CDT if the ERISA cause of action were viable, the Complaint plainly fails to state a claim under ERISA and Plaintiffs have represented that they are not pursuing that claim. Therefore, ERISA's service provisions cannot be used to invoke personal jurisdiction with respect to CDT.

improper venue. Dismissal pursuant to Fed.R.Civ.P. 12(b)(3) is appropriate because: (i) CDT is not a resident of New York State, (ii) the events giving rise to the claims against CDT (which are separate and distinct from the claims against the NFL Defendants) did not occur here, and (iii) the action could have been filed in the district where CDT is located, the Central District of California. *See* 28 U.S.C. § 1391(b).

Alternatively, even if venue in this District were technically proper as to CDT, the Court should exercise its discretion pursuant to 28 U.S.C. § 1404(a) and Fed.R.Civ.P. 21 to sever and transfer the claims against CDT to the Central District of California for the convenience of the parties and witnesses. CDT and its witnesses and documents are all located in the Long Beach, California area, whereas the Plaintiffs are geographically dispersed throughout the United States (with only 6 of the 93 Plaintiffs located in New York State, and none in this District, as opposed to 9 Plaintiffs located in California).

## STATEMENT OF RELEVANT FACTS

The following facts are derived from the First Amended Complaint (the "Complaint") and from the Declaration of Kim Jasper ("Jasper Decl.") filed concurrently herewith. CDT does not admit that the allegations of the Complaint are true, but concedes that, for purposes of this Motion only, those facts may be deemed to be true.

This case is brought by 93 individuals who were under contract with the National Football League ("NFL") and/or the National Football League Management Council ("NFLMC") (collectively "NFL/NFLMC") to perform services as specimen collectors with respect to the NFL's program of testing its players for performance enhancing substances ("the NFL Drug Testing Program"). The services consisted of collecting urine specimens on a random and scheduled basis from professional football players,

game officials, and others under protocols established by the NFL and NFLMC, transporting said samples to designated laboratories for testing, maintaining a "chain of custody" for said samples, and testifying at any hearing, if necessary, resulting from a positive test. (Complaint, ¶ 119.)

According to the allegations in the Complaint, Plaintiffs' oral contracts or other affiliations with the NFL/NFLMC were terminated on April 30, 2007, when the NFL/NFLMC decided to "outsource" the NFL Drug Testing Program to a third party, CDT. (Complaint, ¶¶ 1, 118.) Effective May 1, 2007, the NFLMC contracted with CDT to provide collection services for the NFL Drug Testing Program. (Complaint, ¶¶ 174, 176.) Plaintiffs allege that CDT refused to hire them after their contracts or engagements with the NFL/NFLMC were terminated. (Complaint, ¶¶ 194, 221 - 223, 265.)

CDT is a California corporation with its principal place of business in Long Beach, California (within the jurisdiction of the United States District Court for the Central District of California, Western Division, centered in Los Angeles). (Complaint, ¶ 110; Jasper Decl., ¶ 2.) CDT does not have any offices, employees, or permanent presence in the Southern District of New York or anywhere in the State of New York. (Jasper Decl., ¶¶ 2-3.) Further, none of the acts on which Plaintiffs' claims against CDT are based (the alleged refusal to hire Plaintiffs) took place in New York or arose from any conduct by CDT within New York State. Rather, all activities of CDT regarding the hiring or non-hiring of Plaintiffs took place in California, and all of the witnesses to such hiring or non-hiring reside and regularly work in California. (Jasper Decl., ¶¶ 6-7.) Plaintiffs reside in 27 different States and the District of Columbia. (Complaint, §§ 8-

100.)  Only 6 of the 93 Plaintiffs reside in New York State, and none resides in the Southern District of New York.  (Id.)

The bulk of the claims in the Complaint arise from the Plaintiffs' allegations that their contracts or associations with the NFL/NFLMC were terminated by the NFL/NFLMC in retaliation for Plaintiffs seeking a ruling from the IRS that they were employees of the NFL/NFLMC rather than independent contractors.  CDT is named in only in two of the seven separate claims in the Complaint: (a) the Third Claim for "Interference with Rights Protected by ERISA", and (b) the Seventh Claim for "ADEA Violations."  (Complaint, ¶¶ 219-35, 257-66.)  With respect to both claims, the only act or omission alleged on the part of CDT was its failure to hire Plaintiffs after their respective associations with the NFL/NFLMC had been terminated.  (Complaint, ¶¶ 194, 221 - 223, 265.)  Plaintiffs do not allege that they were ever employed by CDT, that they were ever participants in any CDT benefit plan, or that they ever applied for benefits from CDT and were rejected.  Further, neither CDT nor any of its employees participate in any pension or benefits plan administered by the NFL or NFLMC or offered to any employee of the NFL or NFLMC.  (Jasper Decl., ¶ 9.)

## ARGUMENT

### I.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CDT UPON WHICH RELIEF CAN BE GRANTED

#### A.    The Complaint Fails To State a Claim Under ERISA

Plaintiffs' claim against CDT for interference with ERISA rights should be dismissed on the grounds that: (1) Plaintiffs do not have standing because they were never employed by CDT, never participated in any CDT benefit plan, and, therefore, do not have any "protected rights" under ERISA; (2) there is no cognizable cause of action

under ERISA based on a failure to hire; and (3) even if Plaintiffs could have some colorable claim under ERISA based on CDT's alleged failure to hire them, there is no case or controversy ripe for adjudication because Plaintiffs have never sought, applied for, or been denied ERISA benefits from CDT.

### (1)    Plaintiffs Do Not Have Standing

Plaintiffs' interference claim is based on Section 510 of ERISA, which makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."  29 U.S.C. § 1140.  It is undisputed that Plaintiffs were never employees of CDT, never participated in any CDT benefit plan, and were never covered under or eligible for benefits under any CDT plan.[3]  Thus, they do not have any right or claim to benefits under, and could not possibly be classified as "participants" in or "beneficiaries" of, any CDT-sponsored employee benefit plan within the meaning of ERISA.  Accordingly, Plaintiffs have no standing to bring a Section 510 claim against CDT.  See 29 U.S.C. § 1132 (standing to bring ERISA claims limited to participants, beneficiaries, fiduciaries, and the Secretary of Labor).

### (2)    A Refusal to Hire is Not Actionable Under ERISA

Even assuming Plaintiffs had standing, CDT's purported refusal to hire them does not constitute a violation of ERISA.  As discussed, § 510 makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising [ERISA] right[s]."  29 U.S.C. § 1140.  It is well-established

---

[3]      Further, there is no allegation that employees of CDT were eligible for any rights under any NFL-sponsored plan.

that non-participants and non-beneficiaries who were never employed have no cognizable claim under ERISA for failure to hire.  See, e.g., Becker v. Mack Truck, Inc., 281 F.3d 372, 380-381 (3rd Cir.) ("The plain language of § 510 omits a refusal to 'rehire,' 'hire' or to take any action related to hiring from its enumeration of prohibited acts.  *** [A] failure to hire does not amount to a circumvention of promised benefits because job applicants who have yet to be hired have not been promised any benefits. *** The language enacted by Congress simply does not extend to actions taken before an employer-employee relationship exists."), cert. denied, 537 U.S. 818 (2002) ; Shawley v. Bethlehem Steel Corp., 784 F. Supp. 1200, 1203 (W.D. Pa., 1992) ("[T]he words of the statute do not expressly prohibit refusals to hire an employee based on consideration of the employee's potential economic cost and benefit to the employer."), aff'd, 989 F.2d 652 (3d Cir. 1993).

Here, Plaintiffs never became employees of CDT, were not participants in or beneficiaries of any CDT benefit plan, and, therefore, could not have had an expectation of (and had no right to) vested pension rights under any ERISA plan sponsored by CDT. Accordingly, as a matter of law, CDT's alleged failure or refusal to hire Plaintiffs does not give rise to any claim against CDT under ERISA.

### (3)    There Is No Controversy Ripe For Adjudication

As the Court noted during the conference on June 24, 2008, there is no case or controversy ripe for adjudication under ERISA unless the Plaintiffs sought or applied for ERISA benefits and were rejected.  Thus, even if Plaintiffs might have some colorable ERISA claim against CDT (and they do not), there is no justiciable controversy here because Plaintiffs have never sought or applied for ERISA benefits from CDT or any

CDT-sponsored benefit plan. Therefore, in the unlikely event the Court determines that Plaintiffs could state a valid ERISA claim against CDT, the claim should nevertheless be dismissed on ripeness grounds. See, e.g., Nutritional Health Alliance v. Shalala, 144 F.3d 220, 225 (2d Cir.) (ripeness is constitutional prerequisite to exercise of jurisdiction by federal courts), cert. denied, 525 U.S. 1040 (1998).

### B.      The Complaint Fails to State a Claim Under the ADEA

Plaintiffs' purported claim against CDT for violation of the ADEA should also be dismissed in its entirety because, as a matter of law, the facts alleged are insufficient to support a finding of age discrimination.

The crux of Plaintiffs' claims against CDT is that CDT, either in concert with or at the direction of the NFL/NFLMC, refused to hire them because of the status of the IRS determination that they had been "employees" of the NFL. Indeed, in Paragraph 192 of the Complaint, Plaintiffs expressly assert that "the IRS's determination that the DPAs were employees was a determinative factor in [CDT's] decision." (Complaint, ¶ 192.) The ADEA prohibits only discrimination in hiring based on age -- not on the status of being involved in employee/independent contractor disputes with a former employer/contractor or any other factor. Hazen Paper v. Biggins, 507 U. S. 604, 611 (1993) ("[A] disparate treatment claim cannot succeed unless the employee's [age] actually played a role in that process *and* had a determinative influence on the outcome) (emphasis in original); Broaddus v. Florida Power Corp., 145 F.3d 1283, 1286 (11th Cir. 1998) ("The Supreme Court has cautioned that the ADEA prohibits age discrimination and age discrimination alone.").

Here, the Complaint alleges on its face that "the IRS's determination that [Plaintiffs] were employees was a determinative factor" in CDT's alleged refusal to hire them.  Because, according to Plaintiffs' own allegation, the IRS determination was the determining factor in CDT's decision, then, *a fortiori*, CDT would have refused to hire Plaintiffs regardless of their age.  Thus, by Plaintiffs' admission, their age did not have a determinative influence on CDT's alleged refusal to hire them, and CDT did not violate the ADEA.  See Hazen Paper, 507 U.S. at 611.

To the extent the Complaint can be read to allege that age played any role at all in CDT's actions (even a non-determinative one), the only fact asserted in support of that allegation is an off-hand remark attributed to CDT's Liana Lee.  (Complaint, ¶ 191.) Specifically, Plaintiffs allege that Ms. Lee, during a discussion with one of the Plaintiffs about his family, stated, "Oh, I didn't know you that you had grandchildren." (Id.)  That alleged remark, even assuming it was made, is insufficient as a matter of law to establish age discrimination by CDT.  It made no specific reference to any Plaintiff's age, did not reflect age animus, and had no nexus to CDT's employment decisions.  It would, at very most, constitute a "stray remark," which courts have consistently held is insufficient to sustain a claim of age discrimination under the ADEA.  See Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir.), cert. denied, 534 U.S. 951 (2001); James v. New York Racing Ass'n, 233 F.3d 149, 152-53 (2d Cir. 2000);  Woroski v. Nashua Corp., 31 F.3d 105, 109-10 (2d Cir. 1994).

Finally, even if the allegations in the Complaint were sufficient to state a claim under the ADEA, no claim can be maintained by the Plaintiffs who never applied for a position at CDT.  Only the 58 Plaintiffs named in Paragraph 189 of the Complaint

actually applied to become specimen collectors for CDT. Accordingly, at a minimum, the ADEA claim must be dismissed as to the remaining 35 Plaintiffs who did not apply. See Gaffney v. Dept. of Info. Tech. & Telecomms., 536 F. Supp.2d 445, 459-60 (S.D.N.Y. 2008) (to establish prima facie case of failure to hire, plaintiff must have applied for position sought).

## II.     THERE IS NO BASIS FOR EXERCISING PERSONAL JURISDICTION OVER CDT

Even if the Court finds that Plaintiffs have stated a claim against CDT under the ADEA, that claim should be dismissed based on lack of personal jurisdiction.[4]

The party invoking the jurisdiction of the court bears the burden of proof on the necessary jurisdictional facts. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994); Rio Properties, Inc., v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). Here, Plaintiffs have not demonstrated a sufficient basis for exercising personal jurisdiction over CDT. To the contrary, the undisputed facts establish that the Court does not have personal jurisdiction over CDT. Therefore, CDT's motion to dismiss should be granted pursuant to Fed.R.Civ.P. 12(b)(2).

"In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) (citing PDK Labs, Inc. v. Friedlander, 103

---

[4]     ERISA might have provided a basis for personal jurisdiction over CDT because the statute provides for nationwide service of process. 29 U.S.C. § 1132(e)(2). See also I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc., 986 F. Supp. 816, 822 (S.D.N.Y. 1997) ("[A]ny defendant residing in the United States is subject to an ERISA suit in any district in the United States."). However, as discussed above, Plaintiffs have represented in open court that they are suing CDT only under the ADEA, not ERISA, and, in any event, the Complaint clearly fails to state a claim against CDT under ERISA. (See discussion, supra at 5-8.)

F.3d 1105, 1108 (2d Cir. 1997)).  Because the ADEA does not provide for national service of process, the New York State long-arm statute governs whether personal jurisdiction may be invoked over CDT.  See id.  However, as we show, the facts are insufficient to support the exercise of personal jurisdiction over CDT under New York's long-arm statute, CPLR 302.

### A.    There Are No Grounds For Exercising Personal Jurisdiction Over CDT Under the New York State Long-Arm Statute

CPLR 302, New York's "long arm" statute, enumerates the circumstances under which a court in New York can exercise personal jurisdiction over a non-domiciliary such as CDT:

> Acts which are the basis of jurisdiction.  As to a cause of action **arising from any of the acts enumerated in this section**, a court may exercise personal jurisdiction over any on-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1.    transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2.    commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3.    commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> > (i)    regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> >
> > (ii)    expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4.    owns, uses or possesses any real property situated within the state.

CPLR 302(a) (McKinney's 2008) (emphasis supplied).

By requiring jurisdiction to be based on acts occurring or causing tortious injury "within the state," New York's long-arm statute provides only for "specific jurisdiction" over non-residents. That is, personal jurisdiction may be exercised over a non-domicilliary defendant only if the cause of action arose out of the defendant's contacts with New York State. See, e.g., Barrett v. Tema Dev. (1988), Inc., 463 F. Supp.2d 423, 429 (S.D.N.Y. 2006) ("To establish personal jurisdiction under [CPLR 302], the plaintiff must demonstrate that the defendant engaged in a purposeful business transaction in or directed to New York and that such contacts with the state had a 'substantial relationship' to the claim asserted in the underlying litigation.") (emphasis supplied), aff'd, 251 Fed.Appx. 698, 700, 2007 U.S. App. LEXIS 25126 (2d. Cir., 2007).[5]

Thus, to establish personal jurisdiction over CDT, Plaintiffs must show that the acts upon which they base their ADEA claim against CDT -- the alleged refusal to hire Plaintiffs -- arose out of CDT's contacts with the forum state, New York. Plaintiffs cannot satisfy that burden.

As mentioned, Plaintiffs' ADEA claim against CDT arises solely from the CDT's failure to hire Plaintiffs as specimen collectors. All of the activities relating to CDT's hiring of specimen collectors took place in Long Beach, California. Specifically, the

_____

[5] The jurisdictional requirements of CPLR 302 "are considerably more substantial than would be constitutionally necessary to satisfy due process concerns." Lancaster v. Colonial Motor Freight Line, Inc., 177 A.D.2d 152, 157, 581 N.Y.S.2d 283, 287 (1st Dep't 1992). "[T]he New York statute does not go as far as the Constitution permits. Not only do the categories of New York-related activity listed in CPLR 302 represent a closed universe, the New York courts have not interpreted them as necessarily providing the same reach as would be available under the Constitution." Alexander, Practice Commentary C302:1, CPLR § 302 (McKinney's 2008) (citing Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827, 527 N.Y.S.2d 729 (1988)). Thus, in applying CPLR 302, the New York Court of Appeals has cautioned: "[W]e should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters or where they conduct substantial general business activities." McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 383, 283 N.Y.S.2d 34, 38 (1967).

selection of specimen collectors by CDT for its contract with the NFL was done by Kim Jasper and Liana Lee from CDT's office in Long Beach, where they received applications and communicated with applicants by phone, fax, mail, or e-mail. (Jasper Decl., ¶ 6.) Furthermore, all of the interview/training sessions for new specimen collectors took place either in Long Beach or Atlanta, Georgia. (Id. at ¶ 7.) The final selection decisions were made at CDT's office in Long Beach, and applicants were all informed of CDT's decisions by communications from Ms. Lee or Ms. Jasper originating in Long Beach. (Id.) In short, there simply were no activities of CDT in New York pertaining to its selection of specimen collectors, and Plaintiffs do not allege otherwise.

Indeed, Plaintiffs' only jurisdictional allegations against CDT are: (i) that CDT entered into a contract with the NFL/NFLMC; (ii) that CDT representatives met with the NFL/NFLMC in New York and made a contract proposal, which led to further negotiations; and (iii) that CDT employed sample collectors to collect urine samples in New York State. (Complaint, ¶ 113.) Even assuming, *arguendo*, that these alleged activities rise to the level of "transacting business" within New York State for purposes of CPLR 302(a),[6] conspicuously absent from Plaintiffs' Complaint is any allegation that CDT's failure to hire them *arose from* those alleged activities.

The mere fact that CDT entered into a contract with a New York entity or later retained specimen collectors to collect samples in New York is insufficient to establish that CDT's hiring decisions arose from its contacts with New York State. Furthermore,

---

[6]     Simply entering into a contract with a New York company, attending a preliminary meeting in New York, or retaining contractors in New York to collect samples for testing out-of-state, are not activities rising to the level of "transacting business" within the State under CPLR 302(a). See, e.g., Burrows Paper Corp. v. R.G. Engineering, Inc., 363 F. Supp.2d 379, 382-85 (N.D.N.Y. 2005); United Computer Capital Corp. v. Secure Prods., L.P., 218 F. Supp.2d 273, 278-79 (N.D.N.Y. 2002).

there is no evidence whatsoever that CDT's alleged age-based hiring decisions arose from its earlier meetings with the NFL/NFLMC in New York. To the contrary, CDT's meetings with the NFL/NFLMC in New York were preliminary in nature and did not involve the decisions to hire or not hire Plaintiffs. (Jasper Decl., ¶ 5.) Thus, CDT's alleged contacts with New York are not the basis of, and did not give rise to, Plaintiffs' age discrimination claim against CDT. Rather, Plaintiffs' claim is predicated solely on CDT's failure or refusal to hire or contract with them, which occurred in Long Beach, California.

In sum, because Plaintiffs have not alleged and cannot establish that CDT's alleged decision not to hire them (which was made in California) arose from CDT's contacts with New York, personal jurisdiction over CDT may not be invoked under New York's long-arm statute. See CPLR 302.

### B.   The Exercise of Jurisdiction Over CDT Would Offend Due Process Principles Under the United States Constitution

Even assuming that the requirements of New York's long-arm statute are satisfied (and they are not), personal jurisdiction over CDT still may not be exercised unless it comports with federal constitutional requirements of due process. See Bridgeport Music, Inc., 327 F.3d 472, 477 (6th Cir.), cert. denied, 540 U.S. 948 (2003); Core-Vent Corp. v. Nobel Indus., AB, 11 F.3d 1482, 1484 (9th Cir. 1993).

The due process requirements of the United States Constitution operate as a limitation on the jurisdiction of courts to enter judgments affecting the rights or interests of nonresident defendants. It has long been the rule that a valid judgment imposing personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. Kulko v. Superior Ct. of Cal., 436 U.S. 84,

92 (1978); Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945); Pennoyer v. Neff, 95 U.S. 714, 732 (1878). The test of due process, as stated in the seminal case of Int'l Shoe, is whether a defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U. S. at 316. See also Darby v. Compagnie Nationale Air France, 769 F. Supp. 1255, 1262 (S.D.N.Y. 1991).

The propriety of limited personal jurisdiction under the Constitution is measured according to a three-prong test: (1) whether the defendant purposefully availed himself of the benefits of the forum state; (2) whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there; and (3) whether the defendant carries on a continuous and systematic part of its general business within the forum state. Bensusan Rest. Corp. v. King, 937 F. Supp. 295, 301 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997). Here, not one element of the three-prong test can be satisfied.

First, as discussed above, there is no allegation that CDT has purposefully availed itself of the benefits of the forum state, New York. Merely entering into a national contract with a national unincorporated association that happens to be headquartered in New York does not constitute "availing" oneself of the benefits of the forum state. See Mortgage Funding Corp. v. Boyer Lake Pointe, L.C., 379 F. Supp.2d 282, 286-87 (E.D.N.Y. 2005); Burrows Paper Corp., 363 F. Supp.2d at 382-85.

Second, there is nothing relating to CDT's selection of specimen collectors that would cause CDT to expect to be haled into court in New York. Fortuitous or random

encounters with the forum state do not meet the requirement of this prong. <u>Burger King</u> <u>v. Rudzewicz</u>, 471 U.S. 462, 475 (1985).

Finally, CDT does not carry on a continuous and systematic part of its business in New York State, and Plaintiffs do not contend otherwise. CDT is a California company that hires independent contractors to occasionally collect urine samples from personnel on NFL teams (only one of which happens to be located within the State of New York). Its minimal activities within New York State can in no way be deemed continuous and systematic. <u>See</u>, <u>e.g.</u>, <u>Maurice Silvera, Inc. v. Nat'l Ctr. for Employment of the Disabled</u>, 2003 U.S. Dist. LEXIS 1755, *7-8 (S.D.N.Y. Feb. 6, 2003).

In sum, CDT does not have sufficient contacts with New York State to justify requiring it to defend itself in a distant forum against claims that did not arise from its conduct in New York. Therefore, exercising personal jurisdiction over CDT in this Court would not comport with constitutional due process requirements.

## III.    THE CLAIMS AGAINST CDT SHOULD BE TRANSFERRED TO A PROPER VENUE

Alternatively, and in the event the claims against CDT are not dismissed on other grounds, the Court should dismiss or transfer Plaintiffs' action against CDT to a proper venue.

The Southern District of New York is an improper venue for Plaintiffs' claims against CDT. The federal venue statute, 28 U.S.C. § 1391(b), provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial

district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Here, Defendants do not all reside in the same state (or in the same judicial district of any state). Further, as against CDT, the events or omissions which give rise to Plaintiffs' claims (the alleged failure to hire some of the Plaintiffs as specimen collectors) did not occur in the Southern District of New York. Finally, there is a judicial district -- the Central District of California -- in which the action against CDT could have been brought, since a substantial part of the alleged acts or omissions on which the Plaintiffs' claims against CDT are based occurred in that district. Accordingly, with respect to Plaintiffs' claims against CDT, there is no basis for invoking the venue of the Southern District of New York under 28 U.S.C. § 1391(b).

Where, as here, claims are filed in an improper venue, 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The proper court in which Plaintiffs' claims against CDT should have been brought is the United States District Court for the Central District of California. Therefore, this Court should either dismiss this action as against CDT, or, in the interests of justice, sever the claims against CDT pursuant to Fed.R.Civ.P. 21[7] and transfer those claims to the United States District Court for the Central District of California, Western Division (sitting in Los Angeles,

---

[7]    As noted by the Court and acknowledged by Plaintiffs' counsel at the June 24, 2008, court conference, Plaintiffs' claims against CDT are separate and distinct from their claims against the NFL Defendants. Specifically, Plaintiffs' claims against CDT are based on CDT's alleged refusal to hire them after their relationship with the NFL/NFLMC was terminated, whereas the claims against the NFL/NFLMC are based on the NFL/NFLMC's failure to designate them as employees during their employment and its subsequent decision to terminate their services. Accordingly, the claims are amenable to severance.

California).  See In re Vitamins Anti Trust Litigation, 270 F. Supp.2d 15, 36 (D.D.C. 2003) (severing and transferring claims);  Apache Prods. Co. v. Employers Ins. of Wausau, 154 F.R.D. 650, 660 (S.D. Miss. 1994) (same).

If the Court elects not to dismiss or transfer this case because of improper venue, it should, alternatively, transfer the action for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district court or division where it might have been brought."

In determining whether to transfer a case under Section 1404(a), courts consider the following factors: (1) convenience of the parties; (2) convenience of material witnesses;  (3) availability of process to compel the presence of unwilling witnesses;  (4) the cost of obtaining the presence of witnesses;  (5) the relative ease of access to sources of proof;  (6) calendar congestion;  (7) where the events in issue took place; and  (8) the interests of justice in general.  St. Cyr v. Greyhound Lines, Inc., 486 F. Supp. 724, 727 (E.D.N.Y. 1980);  Scheinbart v. Certain-Teed Prods. Corp., 367 F. Supp. 707, 709 (S.D.N.Y. 1973).

With respect to Plaintiffs' claims against CDT, all of these factors, as between the Southern District of New York and the Central District of California, are either neutral or favor the Central District of California. Specifically:

1.    Convenience of the Parties:  This factor favors the Central District of California. Plaintiffs are located throughout the country in 27 different states and the District of Columbia.  More of them (9) live in California than in New York (6), and none resides in the Southern District of New York.  Moreover, CDT and all of its

employees involved in the selection of specimen collectors are located in Long Beach, California. (Jasper Decl., ¶¶ 3, 6.)

2.    <u>Convenience of material witnesses</u>: This factor also favors the Central District of California. For the most part, the material witnesses regarding Plaintiffs' claims against CDT would be the Plaintiffs (scattered across the Country) and the personnel of CDT (in Long Beach, California).

3.    <u>The availability of process to compel the presence of unwilling witnesses</u>: Until discovery is undertaken to determine the identity of potentially unwilling witnesses, this factor is neutral.

4.    <u>The cost of obtaining the presence of witnesses</u>: More of the Plaintiffs reside in California than in New York, and all of CDT's personnel reside in Southern California. Further, since the Plaintiffs are generally evenly distributed between the eastern and western United States, it would be no more costly or inconvenient to the Plaintiffs overall to appear in the Central district of California. This factor, accordingly, favors the Central District of California.

5.    <u>The relative ease of access to sources of proof</u>: Most of the documentary evidence pertaining to the Plaintiffs' claims against CDT is located at CDT's office in the Central District of California.

6.    <u>Calendar congestion</u>: According to the 2007 Judicial Caseload Profile published by uscourts.gov, the Southern District of New York has a more crowded docket than the Central District of California, and its "filing to disposition" period is approximately 3 months longer. This factor also militates in favor of transfer to the Central District of California.

7.     <u>Where the events in issue took place</u>:  As discussed, all of the decisions regarding CDT's selection of specimen collectors took place in the Central District of California.

8.     <u>The interests of justice in general</u>:  This factor favors the Central District of California.  CDT is a small company with only a handful of managers and would face substantial economic hardship and disruption to its operations in having to defend this action in New York.  (Jasper Decl., ¶ 8.)  Plaintiffs, on the other hand, are located throughout the Country, and any disruption to them is equal whether this matter is heard in New York or in California.

Accordingly, if the Court determines that it has personal jurisdiction over CDT, and elects not to dismiss the claims against CDT due to improper venue, the Court should sever and transfer those claims to the United States District Court for the Central District of California for the convenience of the parties and in the interests of justice pursuant to 28 U.S.C. § 1404(a) and Fed.R.Civ.P. 21.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant CDT respectfully requests that the Court issue an Order: (i) dismissing the action as against CDT in its entirety pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3), and/or 12(b)(6), (ii) alternatively, severing and transferring Plaintiffs' claims against CDT to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) and Fed.R.Civ.P. 21, and (iii) awarding CDT such other and further relief as the Court deems equitable and just.

Dated: New York, New York          Respectfully submitted,
       July 9, 2008

                                         LITTLER MENDELSON, P.C.


                             By:          S/
                                     Michael P. Pappas (MP-6716)