UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
William E. Richardson, et al.,                          :
                                                        :
                                    Plaintiffs,         :
                                                        :
                    v.                                  :          1:07-cv-11632 (MGC)
                                                        :
National Football League, et al.,                       :
                                                        :
                                    Defendants.         :
                                                        :
-------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE NFL DEFENDANTS' MOTION TO DISMISS

SCHNADER HARRISON SEGAL
  & LEWIS LLP
M. Christine Carty (MC-1796)
140 Broadway, Suite 3100
New York, NY 10005
(212) 973-8000
*Attorneys for Plaintiffs*

LEVY, TOLMAN
  & COSTELLO, LLP
Robert J. Costello (RC-8301)
630 Third Avenue
New York, NY 10017
(212) 949-8770
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....................................................................................1

SUMMARY OF THE ARGUMENTS .............................................................................3

    A.    The NFL Defendants Ignore Well-Established Judicial
        Standards for Deciding a Motion to Dismiss and Wrongly
        Apply the U.S. Supreme Court's *Twombly* Decision .............................3

    B.    Plaintiffs' ERISA Claims Are Not Barred by the
        Statute of Limitations..............................................................................4

    C.    The NFL Defendants' Reliance on the U.S. Supreme Court's
        Decision in *Great West* is Misplaced.....................................................5

    D.    Plaintiffs' Interference and Retaliation Claims Are Properly
        Pleaded Under ERISA. ...........................................................................6

    E.    Plaintiffs' "Failure to Furnish" Claims Are Viable and
        Not Subject to Dismissal.........................................................................7

    F.    Plaintiffs Have Properly Pled a Claim For Estoppel ..............................7

    G.    The NFL Defendants Misunderstand or Misapply Settled
        Law in Arguing for Dismissal of the ADEA Claims...............................8

ARGUMENT ..............................................................................................................8

POINT I

The Amended Complaint Meets and Exceeds the Standards of Pleading
With Respect to the First Through Fourth and Seventh Claims ....................................8

    A.    The First and Second Claims....................................................................9

    B.    The Third and Fourth Claims..................................................................13

    C.    The Seventh Claim..................................................................................15

POINT II

The First and Second Claims Are Not Barred by the Statute of Limitations ................15

    A.    Plaintiffs' Claims Did Not Accrue Upon Hiring ...................................15

    B.    Equitable Tolling Is Appropriate ...........................................................22

PHDATA 3108287_1

POINT III

The NFL Defendants' Arguments to Strike Portions of Plaintiffs'
Prayer for Relief Under *Great-West* Are Without Merit ................................................24

POINT IV

The NFL Defendants' Arguments to Dismiss the Interference and
Retaliation Claims are Misplaced and Inappropriate.......................................................29

    A.     The Plaintiffs' Claims Were Timely Filed...........................................................29

    B.     The Adverse Action Occurred After the NFL Defendants
          Were Aware of the DPAs' Assertions of Rights to ERISA Benefits ...................30

    C.     The Plaintiffs Have Standing Under ERISA §510 ...............................................34

POINT V

The NFL Defendants' Arguments Urging Dismissal of the
Failure to Furnish Claims are Without Merit....................................................................39

POINT VI

Plaintiffs' Fifth Claim for Equitable Estoppel Should Not Be Dismissed ......................42

POINT VII

The NFL Defendants' Arguments For Dismissal of the ADEA
Claims Are Without Merit ................................................................................................45

CONCLUSION..................................................................................................................49

## TABLE OF AUTHORITIES

CASES            Page(s)

*Abbasi v. Herzfeld & Rubin, P.C.,*
    1995 WL 303603 (S.D.N.Y. 1995)........................................................48

*Albright v. Oliver,*
    510 U.S. 266 (1994).....................................................................................48

*Ashcroft v. Iqbal,*
    No. 07-1015, 2008 WL 336310 (S.Ct. June 16, 2008) ...............................9

*Baraschi v. Silverwear, Inc.,*
    No. 01 Civ. 11263 (MBM), 2002 WL 31867730
    (S.D.N.Y. Dec. 23, 2002)...........................................................................36

*Barnett v. International Business Corp.,*
    885 F.Supp. 581 (S.D.N.Y.1995) ..............................................................31

*Bell of Atlantic Corp. v. Twombly,*
    127 S.Ct. 1955 (2007).......................................................................... passim

*Bennett v. Spear,*
    520 U.S. 154 (1997).....................................................................................38

*Brennan v. Metropolitan Life Insurance,*
    275 F.Supp.2d 406 (S.D.N.Y. 2003).................................................. passim

*Burgin v. General Motors Corp.,*
    No. 04-CV-503S, 2006 WL 469355 (W.D.N.Y. Feb. 26, 2006) ...............23

*Burke v. Gregory,*
    356 F.Supp.2d 179 (N.D.N.Y. 2005)..........................................................42

*Caltagirone v. N.Y. Community Bancorp, Inc.,*
    257 Fed.Appx. 470, (2d. Cir. 2007)...........................................................38

*Carey v. IBEW Local 363 Pension Plan,*
    201 F.3d 44 (2d Cir. 1999)..........................................................................15

*Coan v. Kaufman,*
    457 F.3d 250 (2d Cir. 2006)...............................................................25, 38

*Corcoran v. GAB Business Serv., Inc.,*
    723 F. Supp. 966 (S.D.N.Y. 1989) .............................................................34

*Cress v. Wilson,*
No. 06 Civ. 2717 (JGK), 2007 WL 1686687
(S.D.N.Y. June 6, 2007)..................................................................................................10

*Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991)...............................................................................................4

*Critchlow v. First Unum Life Ins. Co. of America,*
378 F.3d 246 (2d Cir. 2004)......................................................................................11, 37

*Cronin v. Aetna Life Ins. Co.,*
46 F.3d 196 (2d Cir. 1995)..............................................................................................46

*Curtiss-Wright Corp. v. Schoonejongen,*
514 U.S. 73 (1995).........................................................................................................17

*Daill v. Sheet Metal Workers' Local 73 Pension Fund,*
100 F.3d 62 (7th Cir. 1996) ............................................................................................18

*Davis v. Bryan,*
810 F.2d 42 (2d Cir. 1987)..............................................................................................22

*Devlin v. Empire Blue Cross & Blue Shield,*
274 F.3d 76 (2d Cir. 2001)..............................................................................................44

*Downes v. J.P.Morgan Chase & Co.,*
2004 WL 1277991 (S.D.N.Y. June 2004) ................................................................ passim

*Economu v. Borg-Warner Corp.,*
662 F. Supp. 1047 (D. Conn. 1986)................................................................................34

*Fin. Inst. Ret. Fund v. Office of Thrift Supervision,*
964 F.2d 142 (2d Cir.1992).......................................................................................37, 38

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101 (1989)........................................................................................................35

*Gray v. Briggs,*
No. 97 Civ. 6252 (DLC), 1998 WL 386177
(S.D.N.Y. July 7, 2006) ..................................................................................................37

*Great-West Life & Annuity Ins. Co. v. Knudson,*
534 U.S. 204 (2002)................................................................................................. passim

*Green v. AIM Executive, Inc.,*
897 F. Supp. 342 (N.D.Ohio 1995)................................................................................26

iv

*Green v. Int'l Business Machines, Inc.*,
   No. 01 Civ. 2334 (CM), 2001 WL 736811
   (S.D.N.Y. June 22, 2001) ........................................................................................31

*Greifenberger v. Hartford Life Ins. Co.*,
   131 Fed. Appx. 756, 2005 WL 1162982 (2d Cir. May 16, 2005) ...........................44

*Harris v. Finch, Pruyn & Company, Inc.*,
   No. 1:05-CV-951 (FJS/RFT), 2008 WL 2064972
   (N.D.N.Y. May 13, 2008) .......................................................................................23

*Holtz v. Rockerfeller & Co.*,
   258 F.3d 62 (2d Cir. 2001) .....................................................................................47

*Hoodack v. Int'l Bus. Machines, Inc.*,
   202 F. Supp. 2d 109 (S.D.N.Y. 2002) ....................................................................30

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) ................................................................................................17

*In re Polaroid ERISA Litigation*,
   240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................................35

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007) ...........................................................................passim

*Katzenberg v. Lazzari*,
   No. 04 CV 5100 (CBA), 2007 WL 1017645
   (E.D.N.Y. Mar. 30, 2007) ......................................................................................35

*Kerr v. Charles F. Vatterott & Co.*,
   184 F.3d 938 (8th Cir. 1999) .................................................................................27

*Krauss v. Oxford Health Plans*,
   517 F.3d 614 (2d Cir. 2008) ...................................................................................12

*Lee v. Burkhardt*,
   991 F.2d 1004 (2d. Cir. 1991) ................................................................................27

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir. 2003), *cert. denied*,
   540 U.S. 1012 (2003) ..............................................................................................38

*Leyda v. AlliedSignal, Inc.*,
   322 F.3d 199 (2d Cir. 2003) ...................................................................................24

*Lifson v. INA Life Ins. Co. of New York*,
   333 F.3d 349 (2d Cir. 2003) ...................................................................................37

*Lockheed Corp. v. Spink,*
  517 U.S. 882 (1996)..................................................................................17

*Martin v. Construction Laborer's Pension Trust,*
  947 F.2d 1381 (9th Cir. 1991) ...............................................................18

*McCauley v. First Unum Life Ins. Co.,*
  No. 97 Civ. 7662 (LMM), 1998 WL 846121
  (S.D.N.Y. Dec. 2, 1998)......................................................................31, 33

*McEvoy v. Spencer,*
  124 F.3d 92 (2d Cir.1997)........................................................................48

*McLellan v. E.I. DuPont de Nemours & Co., Inc.,*
  No. 04-CV-314 A(F) 2006 WL 3761993
  (W.D.N.Y. Sept. 22, 2006) ...................................................................30, 36

*Medoy v. Warnaco Emples. Long Term Disability Ins. Plan,*
  No. 97 CV 6612(SJ), 2005 WL 3775953
  (E.D.N.Y. Dec. 24, 2005) ......................................................................23, 40

*Metropolitan Life Ins. Co. v. Glenn,*
  128 S.Ct. 2343 (2008)..............................................................................12

*Miles v. N.Y. State Teamsters Conf. Pension Plan,*
  698 F.2d 593 (2d Cir. 1983).............................................................16, 31, 33

*Mitchell v. Shearson Lehman Bros., Inc.,*
  No. 97 Civ. 0526 (MBM), 1997 WL 277381
  (S.D.N.Y. May 27, 1997)........................................................................17, 23

*Mullins v. Pfizer, Inc.,*
  23 F.3d 663 (2d Cir. 1994).......................................................................35

*Nahoun v. Employees' Pension Plan,*
  No. 04 Civ. 9221(LAK), 2005 WL 1476453
  (S.D.N.Y. June 22, 2005)........................................................................20, 22

*Nationwide Mut. Ins. Co. v. Darden,*
  503 U.S. 318 (1992)..................................................................................36

*Nicolaou v. Horizon Media, Inc.,*
  No. 01 Civ. 0785, 2003 WL 22208356
  (S.D.N.Y. Sept. 23, 2003)..........................................................................27

*Orth v. Wis. State Emples. Union Council 24,*
  No. 07-C-149, 2007 WL 2042252 (E.D.Wis. July 11, 2007)...............................26

*Pelosi v. Schwab Capital Markets, L.P.,*
    462 F.Supp.2d 503 (S.D.N.Y. 2006)......................................................27

*Perreca v. Gluck,*
    295 F.3d 215 (2d Cir. 2002)...............................................................37

*Powell v. Nat'l Bd. of Medical Examiners,*
    364 F.3d 79 (2d Cir. 2004)................................................................28

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000).........................................................................46

*Reid v. The Local 966 Pension Fund,*
    No. 03 Civ 9231 (LAP), 2004 WL 2072086,
    (S.D.N.Y. Sept. 15, 2004)............................................................35, 39

*Roarty v. AFA Protective Systems, Inc.,*
    No. 06-1052 (DRH)(WDW), 2006 WL 4094362
    (E.D.N.Y. Nov. 20, 2006)..................................................................37

*Saladino v. I.L.G.W.U. Nat'l Retirement Fund,*
    754 F.2d 473 (2d Cir. 1985)...............................................................39

*Sandberg v. KPMG Peat Marwick,*
    111 F.3d 331 (2d Cir.1997)................................................................29

*Schonholz v. Long Island Jewish Med. Ctr.,*
    87 F.3d 72 (2d Cir. 1996)..................................................................44

*Schultz v. Stoner,*
    308 F.Supp.2d 289, 301 (S.D.N.Y. 2004) .............................................37

*Schwapp v. Town of Avon,*
    118 F.3d 106 (2d Cir. 1997)...............................................................46

*Schwartz v. Independence Blue Cross,*
    299 F.Supp.2d 441 (E.D.N.Y.2003) ...................................................30

*Sereboff v. Mid Atlantic Medical Services, Inc.,*
    547 U.S. 356 (2006).....................................................................25, 26

*Shapiro v. New York City Dept. of Educ.,*
    No. 06 Civ 1836 (JSR), 2008 WL 2414039,
    (S.D.N.Y. June 13, 2008)..................................................................45

*Shipper v. Avon Products, Inc.,*
    605 F. Supp. 701 (S.D.N.Y. 1985) ......................................................34

*St. Mary's Honor Ctr. v. Hicks,*
   509 U.S. 502 (1993)........................................................................................................46

*Swierkiewicz v. Sorema,*
   534 U.S. 506 (2002)........................................................................................................47

*Titsch v. Reliance Group, Inc.,*
   548 F. Supp. 983 (S.D.N.Y. 1982), *aff'd mem.,*
   742 F.2d 1441 (2d Cir. 1983).........................................................................................34

*Tomassi v. Insignia Financial Group, Inc.,*
   478 F.3d 111 (2d Cir. 2007)...........................................................................................48

*U.S. v. Mason Tenders Dist. Council,*
   909 F. Supp. 882 (S.D.N.Y. 1995) .................................................................................22

*Veltri v. Bldg. Serv. 32B-J Pension Fund,*
   393 F.3d 318 (2d. Cir. 2004)................................................................................... passim

*Warth v. Seldin,*
   422 U.S. 490 (1975).......................................................................................................38

*Wilkins v. Mason Tenders Dist. Council Pension Fund,*
   445 F.3d 572 (2d Cir. 2006)...........................................................................................27

*Williams v. American Intern. Group, Inc.,*
   No. 01 Civ. 9673 (CSH), 2002 WL 31115184, *2 (S.D.N.Y. 2002).........................29, 30

*Zielinski v. Pabst Brewing Co., Inc.,*
   360 F.Supp.2d 908 (E.D.Wis. 2005)..............................................................................26

*Zimmermann v. Assocs. First Capital Corp.,*
   251 F.3d 376 (2d Cir.2001).............................................................................................46

## FEDERAL STATUTES

29 U.S.C. § 1002(7)..............................................................................................................34

29 U.S.C. § 1024(a)(1)..........................................................................................................44

29 U.S.C. § 1024(b)(4) .........................................................................................................39

29 U.S.C. § 1132...................................................................................................................42

29 U.S.C. § 1132(a)(1)(B) ....................................................................................................24

29 U.S.C. § 1132(a)(3) ...................................................................................................34

29 U.S.C. § 1132(a)(3)(B) ..............................................................................................25

29 U.S.C. Sec. 1133(2) ...................................................................................................17

Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.* ("ADEA") ...............45

§104 (b)(1) of the Employee Retirement Income and Security Act ...............................43

§502 of the Employee Retirement Income and Security Act .........................................30

§502 (a) of the Employee Retirement Income and Security Act ....................................34

§502(a)(1)(B) of the Employee Retirement Income and Security Act ...........................24

§502(a)(3) of the Employee Retirement Income and Security Act .............................6, 25

§510 of the Employee Retirement Income and Security Act ................................... passim

29 C.F.R. § 2510.3-3(d) .................................................................................................43

29 C.F.R. § 2520.104b-2(b) .....................................................................................7, 8, 43

29 C.F.R. § 2560.503-1(1) .............................................................................................12

Fed. R. Civ. P. 8 ...............................................................................................................3

Fed. R. Civ. P. 8(a) ..........................................................................................................8

Fed. R. Civ. P. 8(a)(2) ....................................................................................................47

Fed.R.Civ.P. 12(b)(6) ............................................................................................1, 4, 48

Fed. R. Civ. P 54(c) ........................................................................................................28

Plaintiffs submit this memorandum of law in opposition to the motion by Defendants National Football League ("NFL"), National Football League Management Council ("NFLMC"), National Football League Pension Plan ("NFLPP"), National Football League Capital Accumulation Plan ("CAP"), National Football League Flex Plan ("NFL Flex") and the NFL Employee Benefit Committee ("Employee Benefit Committee") (collectively "NFL Defendants") seeking to dismiss the Amended Complaint under Fed.R.Civ.P. 12(b)(6).

## PRELIMINARY STATEMENT

This lawsuit was commenced on December 28, 2007 to seek redress for the actions of the NFL Defendants and Comprehensive Drug Testing Inc. ("CDT") against former Drug Program Agents ("DPAs") of the NFL and NFLMC. Though the NFL and NFLMC termed them as independent contractors, the DPAs, up until their termination on April 30, 2007, were, at all times, employees of the NFL or the NFLMC and responsible for administering vital aspects of the NFL program for testing NFL players for performance enhancing substances and illegal drugs. Amended Complaint ¶ 1 (hereinafter "¶ __"). The named plaintiffs were all DPAs employed, either as of April 30, 2007, or in the past, by the NFL and/or the NFLMC. The majority of the Plaintiffs have law enforcement backgrounds, and all are older workers. ¶ 3.

The work of the DPAs in collecting urine samples as part of the NFL Drug Program was unequivocally essential to the operations of the NFL Defendants. There was never a material complaint by the NFL Defendants about the performance of the DPAs. Nor, was there any discussion by the NFL Defendants of replacing the DPAs until they began exploring rights to benefits in 2006 and 2007. ¶ 2. It has been determined, beginning in 2006, by the Internal

Revenue Service ("IRS"), as well as by numerous State Unemployment Boards, that the DPAs were, at all pertinent times, employees of the NFL or the NFLMC. ¶¶ 4, 136, 198.

This lawsuit seeks relief against all NFL Defendants for the employee benefits (pension and welfare) to which the DPAs were entitled as employees under the terms of the NFL Defendants' employee pension and welfare plans (the "Plans"), but which were never provided to them. ¶ 5. Remedies are sought also against both the NFL Defendants and CDT for interference with the DPAs' attainment of said benefits and for the retaliation the NFL Defendants inflicted upon the DPAs, including age discrimination, beginning in 2006 for attempting to assert, correctly, that they were "employees" and owed substantial benefits by the Plans. ¶ 6. Plaintiffs also allege that CDT interfered with their rights to obtain benefits under the Plans and discriminated against them due to their ages in refusing to hire a single DPA to perform the functions they had previously performed as the NFL Defendants' employees, instead engaging younger men with the same law enforcement backgrounds. ¶ 7.

Plaintiffs respectfully refer the Court to the Amended Complaint, annexed as Exhibit "E" to the Declaration of M. Christine Carty, for a full statement of the facts as pleaded.

The NFL Defendants have moved to dismiss the Amended Complaint in its entirety.[1] As discussed below, the arguments raised in the NFL Defendants' Memorandum of Law in Support of Motion to Dismiss (hereinafter "NFL Memorandum at __") lack merit and should be rejected. Many of the arguments advanced by the NFL Defendants are grounded in fundamental misunderstandings or misapplication of the applicable law and rely on authorities that are clearly distinguishable and often diametrically opposed to the propositions for which they are cited.

---

[1] CDT has filed a separate motion to dismiss. Plaintiffs' arguments in opposition to CDT's motion are set forth in a separate memorandum of law.

Moreover, the NFL Defendants raise issues that are premature on a motion to dismiss as a matter of law.

## SUMMARY OF THE ARGUMENTS

**A.     The NFL Defendants Ignore Well-Established Judicial Standards for Deciding a Motion to Dismiss and Wrongly Apply the U.S. Supreme Court's _Twombly_ Decision.**

The NFL Defendants seek dismissal of the First through Fourth Claims and the Seventh Claim because, they argue, Plaintiffs have failed to meet a heightened pleading standard set forth in _Bell of Atlantic Corp. v. Twombly_, 127 S.Ct. 1955 (2007).

As a factual matter, nothing could be further from the truth. Plaintiffs have pleaded over two hundred detailed factual allegations in the Amended Complaint. Every allegation that the NFL Defendants contend is conclusory is amply supported by factual citation.

As a legal matter, the NFL Defendants misapply _Twombly_ to the facts of this case and ignore the standard in this Circuit for application of _Twombly_ enunciated in _Iqbal v. Hasty_, 490 F.3d 143 (2d Cir. 2007). _Iqbal_ is clear that only if the facts as pleaded do not support a claim does _Twombly_ require additional specificity from a plaintiff. Neither case changes the liberal pleading standard of Fed. R. Civ. P. 8, which requires only that Plaintiffs present in a complaint a short and plain statement which shows that they are entitled to relief. As discussed in detail below, Plaintiffs' claims as alleged satisfy Fed.R.Civ.P. 8, _Twombly_ and _Iqbal_ since they provide Defendants with detailed notice of the facts which, if proven, plausibly support their claims.

_Twombly_ does not alter the bedrock principle that, on a motion to dismiss, the Court must accept as true the material facts alleged in the complaint and draw all reasonable inferences in Plaintiffs' favor. Nor, does _Twombly_ authorize the NFL Defendants to challenge the plausibility of the facts as pleaded in a complaint on a motion to dismiss. Yet, the NFL Defendants seek to

3

do just this by impermissibly reformulating and recharacterizing the facts as alleged and then contending that the claims are "implausible" as recharacterized and subject to dismissal under *Twombly*. These efforts by the NFL Defendants to create a counter-statement of facts, including the so-called "administrative record" are an improper exercise on a motion to dismiss.[2] When considering a Rule 12(b)(6) motion, the Court must limit itself to the facts stated in the complaint, documents attached to the complaint, and documents incorporated by reference into the complaint. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

**B.     Plaintiffs' ERISA Claims Are Not Barred by the Statute of Limitations.**

The NFL Defendants argue that all of the DPAs' claims for benefits under ERISA stated in the First and Second Claims began to accrue at the moment when each DPA was hired. The NFL Defendants' contention is incorrect. As a matter of law, the statute of limitations starts to run on ERISA claims upon clear repudiation of a claim for benefits by the fiduciary. There was no repudiation of benefits by anyone, much less by an ERISA Plan fiduciary, at the moment the DPAs were hired. Thus, the NFL Defendants cannot fit this case into the mold of *Brennan v. Metropolitan Life Insurance*, 275 F.Supp.2d 406 (S.D.N.Y. 2003), where the determinative fact

---

[2] The Amended Complaint, at ¶ 204, specifically alleges that there was no "Administrative Record" because the NFL Employee Benefit Committee did not act in a timely fashion. Additionally, the "Administrative Record," as provided by the NFL Defendants, is facially incomplete and, therefore, inaccurate (even assuming, *arguendo*, that it does constitute an "administrative record," an issue which the parties sharply dispute).

Ironically, the "record" presented by the NFL Defendants expressly forecloses some of the arguments made by the NFL Defendants, including their statute of limitations argument. Thus, to the extent that it may be necessary to rebut the arguments of the NFL Defendants that go outside the four corners of the Amended Complaint, Plaintiffs will refer to admissions of the NFL Defendants which contradict the improper, and legally invalid, arguments they currently assert. Some of these admissions are before the Court due to the "record" submitted by the movants. Others are contained in documents which would be before the Court but for the selective pruning of the so-called "record" by the movants. Plaintiffs submit additional documents in support of this Memorandum solely to provide a more complete and accurate set of facts for the benefit of the Court. (Carty Decl. Exhs. "A" to "D").

was the existence of a written independent contractor agreement that expressly repudiated benefits.

Admissions in correspondence from the NFL and/or NFLMC and their agents demonstrate that, as late as July of 2007, there had been no express repudiation of benefits. In June 2007, the DPAs were asked, by both Dennis Curran, Esq. (NFL in-house counsel) and Lawrence Lamade, Esq. (NFL outside counsel), separately, to file claims for benefits to be considered by the appropriate plan fiduciaries. In July 2007, Mr. Lamade stated that the plan fiduciaries would determine the DPAs' eligibility at some point in the future. As discussed below, those claims were not considered by the plan fiduciaries in a timely fashion. The DPAs began inquiring about and applying for benefits in 2006 and 2007. The NFL Defendants took action in response to the DPAs applications in 2007 and 2008. It is therefore contrary to the facts for the NFL Defendants to suggest that the Plan fiduciary actually repudiated the DPAs' entitlement to benefits more than six years before this lawsuit was filed.[3]

**C.    The NFL Defendants' Reliance on the U.S. Supreme Court's Decision in *Great West* is Misplaced.**

The NFL Defendants argue that some or all of the relief sought by Plaintiffs in the First through Fourth Claims is barred by the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002). The NFL Defendants object to the references in the

---

[3]   The NFL Defendants never contended, until the filing of the Motion to Dismiss, that a repudiation of benefits occurred at the moment the DPAs were hired. Obviously, if that was their position all along, from 1988 to the present date, it follows that the "administrative review process" they trumpet was nothing more than a sham. If benefits from the NFL and NFLMC were repudiated at the moment of hiring, it follows that there could be no reasonable expectation that the fiduciary would ever pay benefits years later, regardless of the language of entitlement contained in the Plans at issue. If repudiation took place upon hiring then it made no sense for the inside and outside counsel for the NFL and NFLMC (Messrs. Curran and Lamade) to ask the DPAs to apply for benefits to be considered by the plan fiduciary.

Complaint to "damages" "civil penalties" and "back pay" and claim that such terms should be "stricken."

The argument should be rejected. The Amended Complaint properly seeks benefits and equitable relief. Further, the reliance on *Great-West* to attempt to strike the Prayer for Relief is misplaced because that decision addresses only claims advanced under the "other appropriate equitable relief" clause of ERISA 502(a)(3). Moreover, the authorities cited by the NFL Defendants actually support the ability of this Court to forge equitable relief for the Plaintiffs, as necessary, regardless of the relief requested in the Amended Complaint.

### D.    Plaintiffs' Interference and Retaliation Claims are Properly Pleaded Under ERISA.

Plaintiffs allege in the Third and Fourth Claims that the NFL Defendants terminated the employment of the DPAs to interfere with their attainment of future ERISA benefits, and to retaliate against them for their efforts to obtain ERISA benefits, in addition to factors relating to the ages of the DPAs. In their Motion to Dismiss, the NFL Defendants advance several arguments for dismissal, all of which are erroneous. The NFL Defendants argue that Plaintiffs' claims are time-barred, notwithstanding that the claims were timely brought within two (2) years of the date of the announcement that the DPAs' employment would be terminated. The NFL Defendants also contend that the Amended Complaint fails to plead that Plaintiffs engaged in a protected activity before the retaliatory conduct by the NFL and NLFMC. The allegations of the Amended Complaint, on their face, reveal that this is plainly untrue. The NFL Defendants claim that the DPAs lack standing because their underlying claims for benefits are barred—a theory which is incorrect as a matter of law and improperly calls for the Court to address the underlying

merits of the benefits claims.[4]  The law permits an ERISA retaliation or interference claim to be advanced and maintained even where (unlike these facts) the plaintiff's claims on the underlying benefits claim fail.

**E.    Plaintiffs' "Failure to Furnish" Claims Are Viable and Not Subject to Dismissal.**

The NFL Defendants maintain that Plaintiffs' Sixth Claim for failure to furnish Plan information should be dismissed for lack of standing because only Plaintiff Pallatroni requested documents from the NFL Defendants. The NFL Defendants further argue that Plaintiff Pallatroni lacks standing because his claims for ERISA benefits had accrued upon his initial hiring and are therefore time-barred. Neither argument is tenable.  As discussed below, the NFL Defendants were well aware of the collective representation of the DPAs by counsel during the relevant time period.  The NFL Defendants were kept apprised of which DPAs were represented by counsel, and letters so advising them were sent on a rolling basis.  Their lateness in responding, they fully knew, could and did prejudice all Plaintiffs, not only Pallatroni.  Further, Plaintiff Pallatroni had standing to request Plan documents, as a matter of law, since as the NFL Defendants expressly recognized, he was a potential Plan participant.

**F.    Plaintiffs Have Properly Pled a Claim For Estoppel.**

The NFL Defendants seek dismissal of the Fifth Claim for Equitable Estoppel on the grounds that they complied with ERISA reporting requirements.  By their own admission, this is not so. The NFL Defendants failed to provide a single Plan document to the Plaintiffs until two weeks before the termination date and, thus, violated ERISA regulations, 29 C.F.R. §2520. 104b-

---

[4] The NFL Defendants have not requested consideration of underlying merits of the benefit claims on this motion and, indeed, have not even placed the relevant Plans and Summary Plan Descriptions before the Court for consideration of their terms.

2(b). The NFL and NFLMC also never filed a single Summary Plan Description ("SPD") with the U.S. Department of Labor between 1988 and the termination of the DPA's employment on April 30, 2007, even though they admit that they were required to do so until 1997. Further, the NFL Defendants have failed to consistently file annual reports for the Plans since 1997. Such regulatory failures, particularly in view of the allegations of systematic misrepresentations, give rise to estoppel.

**G.    The NFL Defendants Misunderstand or Misapply Settled Law in Arguing for Dismissal of the ADEA Claims.**

The NFL Defendants argue, in reliance on *Twombly*, that the Seventh Claim for age discrimination under the ADEA lacks sufficient specificity and should be dismissed. As discussed fully below, the allegations of the Seventh Claim make out a *prima facie* case of age discrimination and clearly state facts to support concerted action between the NFL and the NFLMC, on the one hand, and CDT on the other. That is all that is required under *Twombly* and *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).

## ARGUMENT

### POINT I

**The Amended Complaint Meets and Exceeds the Standards of Pleading With Respect to the First Through Fourth and Seventh Claims.**

The Amended Complaint meets and exceeds the pleading standards of the Federal Rules of Civil Procedure, *Twombly* and *Iqbal*, *supra*, with respect to the First through Fourth and Seventh Claims.

Fed.R.Civ.Proc. 8(a) requires that a plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief." The Second Circuit has interpreted the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), to mean that

a complaint must plead facts supporting otherwise conclusory allegations, if, and only if, those

conclusory allegations appear to be implausible in the absence of such pleaded facts:

> After careful consideration of the Court's opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007)[5].  The Amended Complaint makes no conclusory

allegations that are not supported by prior pleading of facts.  And, the factual basis for the claims

in the Amended Complaint is specifically pleaded in every situation which is claimed to be

deficient by movants.  Moreover, the NFL Defendants fail to demonstrate that Plaintiffs' claims

for benefits are implausible.

## A.    The First and Second Claims.

With respect to the First and Second Claims for Plan benefits, the NFL Defendants

contend that "[p]laintiffs have failed to plead either adequate or accurate 'notice' of their claims

for benefits or the 'actual grounds upon which [such claims] rest [].'"  Memorandum at 27.  The

NFL Defendants argue that Plaintiffs failed to specifically allege that each DPA was eligible for

benefits under each Plan for which a claim is being made.

This "lack of notice" argument is flatly contradicted by the NFL Defendants' conduct as

described by their Memorandum.  Particularly, the NFL Defendants, in their Memorandum,

---

[5] The Supreme Court has granted certiorari to hear this case for the 2008 term. The case arises out of prison conditions experienced by a man of Arab descent who was detained in the wake of the events of September 11, 2001. *See Ashcroft v. Iqbal*, 2008 WL 336310 (June 16, 2008). It appears that the Supreme Court accepted the case to assess whether, and under what circumstances, members of the President's Cabinet and other high federal officials may be sued for constitutional violations by their subordinates. It is not anticipated that the Supreme Court intends to revisit the questions of pleading standards resolved in *Iqbal*.

argue that the NFL Employee Benefit Committee conducted an "administrative review" of Plaintiffs' claims for benefits and refer at length to letters from the Employee Benefit Committee denying benefits to each of the Plaintiffs under each of the Plans.[6] Assuming, *arguendo*, that there was such an administrative review[7], as the NFL Defendants argue, it is inconsistent and contradictory for them also to argue "lack of notice" of Plaintiffs' claims for benefits. The NFL Defendants explicitly contend that the Employee Benefit Committee understood the letters from the DPAs to be claims for benefits and to have had sufficient notice of them to consider them in what the NFL Defendants term an administrative process.[8] If the Amended Complaint did not allege a claim for benefits, the NFL Defendants would have argued that Plaintiffs failed to exhaust administrative remedies. That the NFL Defendants make no such point emphasizes the hollowness of the "lack of notice" argument.

In any event, an ERISA plaintiff need not plead entitlement to benefits by addressing each eligibility or exclusionary term with specificity. A general pleading of entitlement in a complaint is a sufficient pleading, even after *Twombly*. *Cress v. Wilson*, No. 06 Civ. 2717 (JGK), 2007 WL 1686687 (S.D.N.Y. June 6, 2007). Plaintiffs aver generally that they were eligible to participate in the Plans provided by the NFL Defendants and that they filed benefit claims. ¶¶ 200, 209, 215. To the extent that the NFL Defendants are arguing that

---

[6] NFL Defendants urge the Court that these and other documents should be considered on a motion to dismiss because they are referred to or are integral to the Amended Complaint. Memorandum at 26-27.

[7] Plaintiffs dispute this contention, which is contrary to the Amended Complaint, which specifically pleads that this case involves a "deemed denial" based upon the failure of the Employee Benefit Committee to act in a timely fashion. ¶ 204). As shown by the letters annexed by the NFL Defendants to the Transmittal Declaration of Jay Berke ("Trans. Decl."), specifically Exhibits 14 and 17, the lateness of that Committee in responding to the requests for benefits was never waived by the Plaintiffs.

[8] Plaintiffs consider this "process" as legally irrelevant due to lateness, and based on clear irregularities in the handling, including the result-oriented nature of the review.

"amplification" of the DPAs' claims to benefits is required, as a matter of pleading, they need look no further than Plaintiffs' letter dated January 16, 2008, which NFL Defendants annex to the Transmittal Declaration at Exhibit 17 ("January 16th Letter") and which they contend should be considered as part of the Amended Complaint on this motion. In the January 16th Letter, Plaintiffs address the specific arguments raised by the Employee Benefit Committee concerning eligibility for benefits, as well as the inapplicability of exclusions.

The NFL Defendants also argue that Plaintiffs lack standing as Plan "participants" because each Plaintiff does not allege that he is eligible for benefits under each Plan. Memorandum at 29, 38-39. Plaintiffs' allegations in paragraph 200 make clear that the Plaintiffs claim to be Plan participants and entitled to benefits. This is all that is required. *See* discussion at 32-37, *infra*.

Therefore, the positions of the NFL Defendants that (1) they lack fair notice of the ERISA claims being advanced in this case; (2) that the claims lack plausibility under *Twombly*; or (3) that Plaintiffs lack standing, are meritless.[9]

The NFL Defendants also argue that Plaintiffs' allegations of the "untimeliness" of the so-called "administrative review" do not satisfy *Twombly*. NFL Memorandum at 30. The allegations of untimeliness in the Amended Complaint are specific. The dates of the claims are set forth in paragraph 200 of the Amended Complaint and, as pleaded in the Amended Complaint, the "administrative review" of Plaintiffs' claims exceeded the time allotted under ERISA for a benefits determination. While the NFL Defendants try to key or link the November

---

[9] At the appropriate time, Plaintiffs expect to demonstrate that they satisfied the eligibility conditions for each of the ERISA Plans for which they seek benefits. The NFL Defendants, not the Plaintiffs, must prove the applicability of any exclusions, an issue not currently before this Court. *Critchlow v. First Unum Life Ins. Co. of America*, 378 F.3d 246 (2d Cir. 2004). Indeed, the NFL Defendants have not even placed the subject Plans into the record, and cannot be heard to argue eligibility or exclusions in their absence.

21 and December 21, 2007 decisions of the Employee Benefit Committee into a request date of June 27, 2007[10], the documents annexed to their opposition papers show that the requests for benefits began to be submitted, at the latest, in April of 2007, as specifically pleaded in the Amended Complaint. *See* ¶ 200. *See* Trans. Decl., Exh. 4. Thus, the November 2007 decision by the Employee Benefit Committee occurred at least seven months after the April 2007 claim by 78 of the Plaintiffs. No portion of 29 C.F.R. § 2560.503-1 authorizes a benefits administrator to fail to act upon a benefits application, whether pension or welfare, for a period in excess of 180 days.

Second, the NFL Defendants misinterpret the decision in *Krauss v. Oxford Health Plans*, 517 F.3d 614, 631 (2d Cir. 2008), as they argue that Plaintiffs' claims for benefits were not "deemed denied" when Defendants notified Plaintiffs of decisions regarding their claims more than seven months after the claims for benefits were filed. Memorandum at 30. *Krauss* explicitly does not address whether, under the new ERISA regulations, a late denial of benefits renders the claim "deemed denied." A late denial under the recently amended ERISA regulations prevents the NFL Defendants from claiming a failure to exhaust. 29 CFR 2560.503-1(l). Since the NFL Defendants do not claim that Plaintiffs failed to exhaust their administrative remedies, the NFL Defendants' point is irrelevant.[11]

---

[10] Whether June 27, 2007 is an appropriate date to utilize in gauging the timeliness of the plan fiduciary's response is an issue that is incapable of resolution on this motion, and one which the parties sharply dispute.

[11] The NFL Defendants apparently intend to argue that the rulings of the Employee Benefits Committee on the "administrative" record are entitled to deference. Whether the NFL Defendants will be permitted to invoke discretionary review of their alleged "administrative" decisions is an open question, both under *Krauss*, as the NFL Defendants admit, and the Supreme Court's recent decision in *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008), which was decided after the NFL Defendants prepared and originally filed the motion to dismiss. NFL Memorandum at 31.

**B.**     <u>The Third and Fourth Claims.</u>

The NFL Defendants also incorrectly cite *Twombly* as support for the portion of their motion that seeks dismissal of the Third and Fourth Claims for interference and retaliation under ERISA § 510. Memorandum at 45-47. As previously discussed, *Twombly* and *Iqbal* require facts to be pleaded only in the event that conclusory allegations make the claim implausible. The NFL Defendants point to ¶ 223 of the Amended Complaint as conclusorily drafted as it alleges that "CDT's refusal to hire any Active DPAs, is at the request or direction of the NFL and/or NFLMC." The NFL Defendants' point appears to be that there are no facts alleged in the Amended Complaint from which to infer that the NFL Defendants participated in Defendant CDT's refusal to hire the Active DPAs.

A plain reading of the Amended Complaint shows this objection to be ridiculous. First, paragraph 219 of the Amended Complaint incorporates by reference all previous allegations into the Third Claim. Second, the context of the previous allegations overwhelmingly shows the deep involvement of the NFL and NFLMC with CDT in ridding themselves of the troublesome DPAs completely. *See* ¶ 175 (alleging that Dennis Curran, Counsel to the NFL, told the DPAs they would be eligible to be hired by the third-party administrator); ¶ 176 (alleging that DPAs applied to CDT, and were not hired); ¶ 180 (alleging that in January 2006 the NFL Coordinator of Player Benefits told a DPA that the NFLMC was concerned about the ages of the DPAs and, on another date, that "you guys will be dead and buried before [the issue of employment] is resolved"); ¶ 181 (alleging that in June 2006 the NFL/NFLMC was acutely conscious of the DPA ages and their efforts to be declared employees, and that it was actively looking for a solution); ¶ 185 (alleging that the NFL/NFLMC asked Jim Bowers to work with the President of CDT to assist her in the transition of the NFL DPAs' functions and that Bowers spent several hours on the

telephone with the President, at her request, reviewing each active DPA, including their involvement with counsel in seeking ERISA benefits and their ages); ¶ 186 ("At the specific instruction of Valerie Cross, Mr. Bowers invoiced and was paid by the NFL for his work in assisting Ms. Jasper of CDT"); ¶ 187 (alleging that Valerie Cross, on behalf of the NFLMC, told the DPAs not to contact CDT because CDT would be contacting them); ¶ 189 (alleging that numerous DPAs attempted to become collectors for CDT); and ¶ 190 (providing that CDT stated that DPAs would not be hired until the IRS ruling regarding the DPAs' status as employees of the NFL was "resolved"). We call the Court's attention also to ¶ 192, alleging that Liana Lee of Defendant CDT called DPAs who had applied for jobs and left them a recorded message that "CDT is not retaining any of the DPAs until the IRS situation has been fully resolved" when the "IRS situation" affected only the NFL and the DPAs, and not Defendant CDT.

These detailed facts alleged in numerous paragraphs of the Amended Complaint amply support the inference of the allegation of ¶ 223 that the NFL/NFLMC requested or directed that CDT not hire any DPAs. Further, the claims of interference and retaliation by the Defendants are highly plausible. The goal of the NFL and NFLMC was to cease doing business with the DPAs both because they feared that they would be held to be employees for all purposes (tax, benefits, Workers' Compensation, unemployment, etc.), and because of their ages. With these goals in mind, and in the context of the extensive specific allegations, it is more than plausible – not implausible – that the NFL and NFLMC requested or directed that Defendant CDT not hire, retain or do business with the NFL DPAs because the NFL did not want to risk a finding by the IRS or a Court that the DPAs working for Defendant CDT were joint employees of CDT and the NFL.

14

Plaintiffs have more than satisfied whatever heightened plausibility standard exists in the wake of *Twombly* and *Iqbal* with respect to the Third and Fourth Claims. For pleading purposes, the Amended Complaint provides enough detail to support the inference of concerted action between Defendant CDT and the NFL Defendants.

## C.    The Seventh Claim.

Similarly, as discussed below, see *infra* at p. 42, the NFL Defendants *Twombly*-based argument that the Seventh Claim for age discrimination is predicated upon impermissibly conclusory allegations should be rejected. (NFL Memorandum at 51-54). The argument misstates the law with respect to pleading of age discrimination claims and is based upon a highly selective reading of the Amended Complaint.

For all of these reasons, the NFL Defendants' *Twombly* arguments that the First, Second, Third, Fourth and Seventh Claims fail to state a claim are without merit and should be rejected.

## POINT II

### The First and Second Claims Are Not Barred by the Statute of Limitations.

The NFL Defendants argue that "[o]nly the 14 Plaintiffs retained as DPAs subsequent to December 28, 2001 have timely claims." NFL Memorandum at 33. They reach this conclusion by counting backward six years from the December 28, 2007 filing date of the Complaint, and by labeling the bare act of hiring (and misrepresentation of the status of the DPAs upon hiring) as clear repudiation of a right to pension and welfare benefits which triggered the accrual of Plaintiffs' claims. This is contrary to the law.

## A.    Plaintiffs' Claims Did Not Accrue Upon Hiring.

"Clear repudiation" by the plan fiduciary of a right to benefits governs the accrual of an ERISA benefits claim. *Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999).

The NFL Defendants posit that a "clear repudiation" of entitlement to benefits occurred at the moment that each of the 93 individual DPAs were hired (although the hirings were all separate events). In support of this proposition, the NFL Defendants rely primarily upon the decision in *Brennan v. Metropolitan Life Insurance*, 275 F.Supp.2d 406 (S.D.N.Y. 2003). The decision in *Brennan*, however, was predicated on an express clause in an independent contractor agreement repudiating benefits, and the NFL Defendants' concede that no such agreement or clause exists in this case. Memorandum at 35. Moreover, the NFL Defendants' argument incorrectly assumes that actions taken by the plan sponsors, here NFL and NFLMC, are coextensive with actions taken by the plan fiduciary, here the Employee Benefit Committee. In fact, though, only the plan fiduciary can make entitlement decisions or deny benefits. *See Miles v. N.Y. State Teamsters Conf. Pension Plan*, 698 F.2d 593, 598 (2d Cir. 1983)(holding that "[a] plaintiff's ERISA cause of action accrues...when there has been a repudiation *by the fiduciary* which is clear and made known to the beneficiaries." (emphasis added).

Ironically, the NFL Defendants' current position that repudiation of benefits occurred at the time of hiring is in marked contrast to their prior representations, in which the NFL Defendants explicitly represented that no repudiation of benefits had yet been made for any DPA. For example, a letter from Dennis Curran, Senior Vice President and General Counsel of the NFL, dated April 27, 2006 (the "April 27 Letter) clearly states that there had yet to be repudiation by the Plan. *See* Carty Decl., Exh. A. The April 27 Letter concludes by stating "[p]lease do not hesitate to contact me if I can provide further assistance in this *process of determining your clients' rights under the Plans.*" *Id.* (emphasis added). Similar language is found in Mr. Curran's letter dated September 22, 2006 (the "September 22 Letter"). See Carty Decl., Exh. B. Further, in a letter dated June 6, 2007 ("June 6 Letter"), Lawrence Lamade,

outside counsel to the NFLMC, indicated that the "appropriate plan fiduciary" would provide a response "which state[s] the basis for the decision and, *if the decision is adverse*, explain the procedures for appealing it." *See* Trans. Decl., Exh. 9, p. 2, (emphasis added). In May 2006, Mr. Lamade pointed out that since there had been no adverse decision with respect to benefits, counsel for the DPAs and counsel for the NFLMC were not adverse, and, therefore, counsel for the DPAs could communicate directly with the plan sponsors at the NFLMC. *See* Carty Decl., Exh. F. A subsequent letter from Mr. Lamade dated July 13, 2007 provides that the "fiduciaries of the Plans will determine whether your clients are eligible for participation in the Plans." *See* Carty Decl., Ex. C. Clearly, according to Mr. Lamade, eligibility decisions would be made at some point after July 13, 2007, by the Plan fiduciaries. Accordingly, there could not possibly have been a denial or repudiation of benefits before the date of that letter.

To accept the NFL Defendants' belatedly raised repudiation argument at this preliminary stage of the litigation, runs contrary to the notion that only a plan fiduciary can make determinations of eligibility. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999); *Lockheed Corp. v. Spink*, 517 U.S. 882, 889-91 (1996); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78-79 (1995). Repudiation cannot occur through the act of the plan sponsors (i.e., through hiring), as both inside and outside counsel for the NFLMC (Messrs. Curran and Lamade) agreed prior to this litigation. ERISA commits eligibility decisions solely to the plan fiduciary. *See* 29 U.S.C. § 1133(2).

Further, whether repudiation can occur at all, regardless of the identity of the "repudiator," prior to a formal denial of benefits and exhaustion of administrative review, remains an open question according to the Second Circuit Court of Appeals. *See, e.g., Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 325 (2d. Cir. 2004). Both the Seventh and Ninth

Circuit Court of Appeals have held that a formal denial and exhaustion must first occur in order for an ERISA claim to accrue. *See, e.g., Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 67 (7th Cir. 1996); *Martin v. Construction Laborer's Pension Trust*, 947 F.2d 1381, 1386 (9th Cir. 1991). While the Second Circuit has not ruled on this point, in *Mitchell v. Shearson Lehman Bros., Inc.*, No. 97 Civ. 0526 (MBM), 1997 WL 277381 (S.D.N.Y. May 27, 1997), Judge Mukasey held:

> I conclude that a claim under ERISA does not accrue until the internal remedies mandated by that statute are exhausted. In addition to the reasoning outlined above - - that a claim has not been clearly and unequivocally repudiated until the appeals process is completed - - it is simply illogical to say that a claim has accrued if it is automatically subject to dismissal when filed.

1997 WL at *5. While there is District Court authority to the contrary cited by the NFL Defendants, including *Brennan v. Metropolitan Life Ins.*, 275 F.Supp.2d 406 (S.D.N.Y. 2003), these cases are readily distinguishable.

*Brennan, supra*, involved an express contractual provision provided to employees at the moment of hiring and which clearly repudiated benefits. The NFL Defendants admit that "there was no written contract signed by the DPAs." Memorandum at 35. Thus, the *Brennan* case is completely inapposite to this case. In fact, every case cited by the NFL Defendants to support their argument involved a writing, with the exception of *Downes v. J.P. Morgan Chase & Co*, 204 WL 1277991 (S.D.N.Y. June 8, 2004). (That case is distinguished *infra* at 20.) If the NFL or NFLMC wanted to implement a written agreement containing such a provision, they were

more than able to do so.[12]  The NFL and NFLMC were purposefully silent in their dealings with the DPAs on the issue of benefits, thus distinguishing this case from *Brennan*.

The NFL Defendants appear to argue that the absence of an express contractual provision is irrelevant because there is a "knew or should have known" standard for repudiation of benefits in the Second Circuit.  The NFL and NFLMC do not argue that any conduct on **their** part, or, more critically, on the part of the Employee Benefit Committee, constituted a repudiation of benefits that was "known" by the DPAs prior to November 2007.  Indeed, they have, specifically, through counsel taken the position that repudiation did not occur prior to this litigation.  The NFL Defendants' argument, thus, is that the DPAs "should have known" that the NFL Defendants had denied the DPAs entitlement to benefits earlier than 2006.  There is nothing in the Amended Complaint from which to conclude that the NFL or NFLMC "repudiated" claims for benefits upon the hiring of the DPAs, and counsel for the NFL Defendants repeatedly told the DPAs and their attorneys that no repudiation had taken place.  Even the misrepresentations of the NFL and NFLMC to the DPAs was to the effect that they were independent contractors, [13] and not employees. ¶¶ 208, 214.  The DPAs were never given copies of the Plans themselves.  As the Amended Complaint pleads, the Plans, as drafted, always provided entitlement to benefits, and the Plan Administrator did not repudiate those benefits until the "deemed denial" of the benefits claims occurred in 2007.  See ¶ 204.

---

[12] Of course, providing such an agreement with the explicit notice language sufficient to constitute repudiation, as in *Brennan*, would have served to defeat the scheme of misrepresentation alleged by the Amended Complaint, yet another critical distinction between this case and *Brennan*.

[13] Again, the NFL Defendants' arguments under *Twombly* are not well taken, as the Amended Complaint is detailed on the transactions and occurrences which had the end and aim of misleading the DPAs.  Reference is made to ¶¶ 157-167 of the Amended Complaint.

This case is far closer factually to *Nahoun v. Employees' Pension Plan*, 2005 WL 1476453 No. 04 Civ. 9221(LAK) (S.D.N.Y. June 22, 2005) than to *Brennan*. In *Nahoun*, as here, the employer argued, under *Brennan*, that claims for benefits asserted by so-called "independent contractors" accrued upon hiring. Judge Kaplan rejected this argument, on facts far stronger for the defendant employer than those in this case. In *Nahoun*, unlike here, the defendant actually provided copies of the relevant Plan to the plaintiff. In contrast, in the instant case, the NFL and NFLMC made it impossible for the Plaintiffs to know what their rights were because the NFL Defendants never filed a single Summary Plan Description ("SPD") with the Department of Labor during the relevant period, *see* ¶¶ 108, 245, and failed to provide a single Plan to the Plaintiffs until two weeks before the termination date. *See* Trans. Decl., Exh. 3. The NFL Defendants' argument that such filings were not mandatory after 1997, *see* Memorandum at 48, does not excuse their failure to file SPDs prior to 1997. Certainly, the absence of such filings or publicly available summary plan descriptions, at any time, cuts against any notion that the Plaintiff DPAs "should have known" that there were Employee Benefit Plans, for which they might be eligible and, further, that their eligibility under the Plans was being repudiated. The NFL Defendants sidestep their failure to comply with the requirement after 1997 that they file annual reports. According to an investigation by Plaintiffs' counsel, the NFL and NFLMC frequently breached the obligation to file annual reports as well. Carty Decl., ¶4. In any event, the annual reports are facially insufficient to put employees on any "notice" of Plan eligibility terms and exclusions.

The NFL Defendants mistakenly rely on *Downes v. J.P. Morgan Chase & Co.*, *supra*, to support the position that the statute of limitations began to run when the Plaintiff DPAs were hired. *Downes* is distinguishable on several bases and, in any event, is not controlling authority.

First, *Downes* is a simple misclassification case, unlike this litigation which involves an express finding of the DPAs' employment status and active misleading conduct by some of the NFL Defendants.[14]   Second, it is alleged that the IRS and numerous states have determined that Plaintiffs were NFL and NFLMC employees. Third, it is further alleged that the DPAs were always eligible for the benefits now being claimed, but that, due to the misleading conduct of the NFL and NFLMC (including false statements that the DPA supervisor and fellow DPA Warren Welsh was an advisor or consultant when he was actually an employee, and the failure to provide and file SPDs) so that the DPAs did not know and had no way of learning of their eligibility or the eligibility terms for those Plans.  Plaintiffs now know, having quite belatedly received those Plans, that they were eligible for the benefits they currently seek from the very moment that each DPA was hired. Further, the facts in *Downes* did not involve the repeated statements by defendants and their counsel that there had yet to be a repudiation because only the Employee Benefit Committee (The Plan Administrator) could make eligibility decisions.

Perhaps more critically, the decision in *Downes* predates *Veltri v. Bldg. Serv. 32 B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004), and the logic employed by the court in *Downes* seems irreconcilable with the later-decided Second Circuit Court of Appeals decision.   In allowing accrual of a benefits claim without clear repudiation by the Plan Administrator, or, by an express written statement in an independent contractor agreement as in *Brennan*, *Downes* stands alone among all of the cases cited by the NFL Defendants. To accept the logic of *Downes*

---

[14] Warren Welsh, who was the face of the DPA program to these Plaintiffs, specifically held himself out to the DPAs as being an independent contractor, when, in fact, he was an NFL and/or NFLMC employee. ¶¶ 158-167. The NFL Defendants' speculative musings about how these DPA Plaintiffs, with their prior experience in law enforcement, could have been misled, are completely inappropriate. Memorandum at 37. These DPAs were not ERISA-trained attorneys, and the issues presented are complex.

is to bypass the requirement of "clear repudiation by the fiduciary" set forth in all the Second Circuit precedent, as well as the fundamental fairness concerns expressed in *Veltri*.

The NFL Defendants, apparently recognizing that the facts in this case are not analogous either to *Brennan* or to *Downes* (but far closer to *Nahoun*), argue that "[t]here are no facts pled in the AC to suggest why several of the DPAs filed Form SS-8s in the face of these alleged misrepresentations and other DPAs did not." Memorandum at 37. Of course, those SS-8s were filed in 2006, and only by some of the Plaintiff DPAs. To suggest that SS-8 filings in 2006 give rise to an argument of time-bar runs contrary to the NFL Defendants position because, assuming that **all** DPAs first "knew" of the NFL's and NFLMC's deception in 2006, all claims asserted in the Amended Complaint are timely.[15]

**B.     Equitable Tolling Is Appropriate.**

This Court should not approve of or countenance the misleading actions of the NFL Defendants by dismissing the First and Second Claims on statute of limitations grounds. The Court of Appeals for the Second Circuit equitably tolls in circumstances like those presented in this case. *See Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 325 (2d. Cir. 2004).    In *Veltri*, the Second Circuit Court of Appeals held that equitable tolling was appropriate because the defendants had failed to comply with the regulatory requirement that benefit plans provide notice to beneficiaries of the right to bring an action in court that challenges a denial of benefits. *Id.* at 325.    In the wake of *Veltri*, Courts within the Second Circuit have concluded that

---

[15] The NFL Defendants also suggest that "the AC fails to allege any facts that would indicate any reason any of the DPAs could not have filed such SS-8s or claims for benefits with the plan administrator, and if necessary, court proceedings within the six year limitations period following their retention as DPAs." NFL Memorandum at 36. Such pleading is not required. Statute of limitations is an affirmative defense, and the burden is on the defense, not the Plaintiffs, to plead (or risk waiver) and subsequently establish its elements. *U.S. v. Mason Tenders Dist. Council*, 909 F. Supp. 882 (S.D.N.Y. 1995); *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987).

misleading (but not necessarily "fraudulent") conduct by an employer or administrator impacts the time of accrual of a benefits claim. *See Medoy v. Warnaco Emples. Long Term Disability Ins. Plan*, No. 97 CV 6612(SJ), 2005 WL 3775953 (E.D.N.Y. Dec. 24, 2005); *Harris v. Finch, Pruyn & Company, Inc.*, No. 1:05-CV-951 (FJS/RFT), 2008 WL 2064972 (N.D.N.Y. May 13, 2008); *Burgin v. General Motors Corp.*, No. 04-CV-503S, 2006 WL 469355 (W.D.N.Y. Feb. 26, 2006). In this case, it is specifically pleaded that the NFL and NFLMC took specific actions to conceal from the plaintiffs 1) their correct employment status and 2) the existence of the employee benefit plans. *See* ¶¶ 156-69, 244. Thus, this case, like *Veltri*, also involves the repeated failure to comply with regulatory requirements which, as a result, denied Plaintiffs access to information about the benefit plans and their eligibility under them. The Amended Complaint also alleges that some NFL Defendants took retaliatory actions against the Plaintiff DPAs when they ultimately attempted to obtain the treatment and benefits which they were due as employees.

Further, *Veltri* cites with approval Judge Mukasey's 1997 decision in *Mitchell v. Shearson Lehman Bros, supra* at p. 16, noting that equitable tolling is nothing more than an alternative characterization of the result reached by Judge Mukasey in *Mitchell* when the court held that repudiation does not occur until the appeals process is complete. To this end, Plaintiffs assume without conceding, as the NFL Defendants contend, that the appeal process ended on March 14, 2008. NFL Memorandum at 4. If ever there was a fairness concern, it is presented in this case. The NFL, through inside and outside counsel, expressly required that the Plaintiffs pursue administrative review, and explicitly provided that their rights to benefits would be considered by the Plan Administrator. If the NFL Defendants' new claim that repudiation occurred at hiring does not give rise to a tolling argument on these circumstances, nothing does. Fundamental fairness requires that Plaintiffs' claims be heard.

For the reasons set forth above, the NFL Defendants' statute of limitations arguments are without merit.

## POINT III

### The NFL Defendants' Arguments to Strike Portions of Plaintiffs' Prayer for Relief Under *Great-West* Are Without Merit.

The NFL Defendants argue that some of the remedies sought by the plaintiffs are barred under the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).[16]  Specifically, they object to the references to "damages," "civil penalties" and "back pay" in the First, Second, Third and Fourth Claims of the Amended Complaint, arguing that those terms should be stricken.  Defendants' claims are unfounded.

Claims for benefits are specifically authorized under ERISA 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  That is a remedy that Plaintiffs seek in the First and Second Claims. *See, e.g.* ¶¶ 5, 6, 212, 218.  The references to "damages" in ¶¶ 212 and 218 of the First and Second Claims are clearly modified by references to remedies available under the ERISA statute in each of those paragraphs.  Certainly, recovery on these claims will necessarily result in a judgment for money damages.  ERISA would not have much vitality as a remedial statute if a claimant could not collect a monetary award under ERISA for benefits that are due and owing under the terms of the Plans in question.  *Great-West* does not hold otherwise.  Indeed, Plaintiffs' reference to this form of relief as "damages", *see* ¶¶ 212 and 218, is consistent with the language used by the courts in ERISA benefits cases. *See e.g.*, *Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 204 (2d Cir. 2003).  ERISA itself terms "failure to furnish" remedies under 29 U.S.C. § 1132 as a "civil penalty."  This remedy, as well, is not impacted by *Great-West*.

---

[16] *See* NFL Memorandum at 31-33, 40-42 regarding the First, Second, Third and Fourth Claims.

Second, *Great-West* applies only to claims for "other appropriate equitable relief" under

502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3)(B). It is premature for the Court to determine on

Defendants' motion to dismiss whether or to what extent Plaintiffs are entitled to equitable relief.

Discovery will be needed to determine whether viable equitable remedies under 502(a)(3) might

be necessary in the event remedies under the other sections of ERISA fail and, if so, what

remedies the Court can forge on these facts. *Great-West* itself, in footnote 2, provides:

> There is a limited exception for an accounting for profits, a form of equitable
> restitution that is not at issue in this case. If, for example, a plaintiff is entitled to a
> constructive trust on particular property held by the defendant, he may also
> recover profits produced by the defendant's use of that property, even if he cannot
> identify a particular res containing the profits sought to be recovered. *See* 1 Dobbs
> § 4.3(1), at 588; id., § 4.3(5), at 608.

534 U.S. at 214, fn. 2. Did the NFL or NFLMC have prior knowledge (as alleged in the

Amended Complaint) that they were depriving the DPAs of benefits due and owing? Did the

NFL and/or NFLMC make calculations on the pension and welfare benefit savings intended by

their alleged deception? Was there a separate fund or reserve established with respect to the

DPAs' benefits? Such issues need to be pursued in discovery, which is precisely the reason that

most of the cases relied upon by the NFL Defendants arise in the summary judgment context.

*See, e.g.*, Memorandum at 32, quoting *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006). At the

summary judgment phase, but not on a motion to dismiss, the Court may consider, on a full

record, the feasibility of forging equitable remedies.

The creativity of Courts sitting in equity is hardly hampered by *Great-West*. Indeed, in

*Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), a case involving insurer-

subrogation exactly like *Great-West*, a unanimous Supreme Court held that a Plan could enforce

a reimbursement provision under ERISA §502(a)(3) because the beneficiary had preserved the

disputed funds pending resolution of the claim, and the plan sought to enforce "an equitable lien

established by agreement" over those funds. *See Sereboff, supra*, 547 U.S. at 357. To suggest that a Court, sitting in equity, is circumscribed in the scope of potential remedies, not just at judgment, but at the motion to dismiss phase, is a conclusion belied by the Supreme Court's decision in *Sereboff*.

*Zielinski v. Pabst Brewing Co., Inc.*, 360 F.Supp.2d 908, 922-24 (E.D.Wis. 2005) is also a summary judgment case relied upon by the NFL Defendants. *Zielinski* is distinguishable:

> While costs for *replacement* insurance might indeed be extracontractual -- indeed, obtaining insurance not provided for in the applicable contract is, by definition, extracontractual -- that is not what Orth seeks here. Instead, he simply wants his employer to reimburse him for the amounts it should have covered in the first place -- the exact benefit provided for in the contract. There is thus nothing extracontractual about Orth's demand, a point the *Zielinski* court (citing the Fifth Circuit) makes crystal clear. . .

*Orth v. Wis. State Emples. Union Council 24*, No. 07-C-149, 2007 WL 2042252 (E.D.Wis. July 11, 2007). Here, in contrast, there is no benefit sought by the Plaintiffs, medical benefits included, that is extra-contractual in nature.

Similarly, *Green v. AIM Executive, Inc.*, 897 F. Supp. 342 (N.D.Ohio 1995), is also a summary judgment case cited by the NFL Defendants. The holding in *Green* is misrepresented by the NFL Defendants. In *Green*, equitable relief was **granted** to the plaintiffs under ERISA 502(a)(3):

> [I]f CAP is available, it appears to be an appropriate equitable remedy to redress injuries to plaintiffs not otherwise recoverable under ERISA. Section 1132(a)(3) permits a participant or beneficiary to obtain 'other appropriate equitable relief' not only for violations of the terms of the plan, but for violations of' any provision of this subchapter." Plaintiffs have alleged violations of fiduciary duties set forth in § 1104. *See* Complaint at P 74(D). Thus, plaintiffs may obtain equitable relief to redress such violations.
>
> . . .
>
> The Court concludes that it has the power to order the equitable relief requested. As plaintiffs ask only for a declaration of the Court's power to order such a remedy, the Court will grant plaintiffs' motion for partial summary judgment.

*Green, supra*, 897 F.Supp. at 349. *Green*, like *Sereboff*, confirms the broad powers of a Court, in equity, to grant relief.[17]

The NFL Defendants' arguments concerning the meaning of *Great-West* have been considered and expressly rejected by the Second Circuit Court of Appeals. Indeed, the Court of Appeals has made it crystal clear, in the wake of *Great-West*, that a claim seeking to obtain the funds to which a participant is entitled under the terms of the Plan is expressly authorized under ERISA. *See Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 583 (2d Cir. 2006). Claims for benefits, the Court of Appeals has expressly concluded, cannot be blithely recharacterized as claims for "money damages," and hence barred under *Great-West*.

The Courts have also held that back pay may be part of an equitable ERISA remedy that includes the hiring and reinstatement of employees. *See Great-West Life, supra*; *Pelosi v. Schwab Capital Markets, L.P.*, 462 F.Supp.2d 503 (S.D.N.Y. 2006); *Nicolaou v. Horizon Media, Inc.*, No. 01 Civ. 0785, 2003 WL 22208356 (S.D.N.Y. Sept. 23, 2003). The Amended Complaint states that the Plaintiffs are seeking "equitable remedies, *including* back benefits, lost wages, lost benefits, costs of suit and attorney's fees as the Court may deem appropriate." ¶¶ 235, 243 (emphasis added). Also, the Prayer for Relief in the Amended Complaint specifically seeks

---

[17] *Lee v. Burkhardt*, 991 F.2d 1004, 1009 (2d. Cir. 1991), also cited by the NFL Defendants, is similar procedurally to this case in that it involves a motion to dismiss, but it is completely distinguishable from the facts of this case. *Lee* involved an attempt to obtain an extracontractual remedy from a party that had not agreed to pay benefits. It is, therefore, a far cry from the relief sought herein, which is targeted towards obtaining benefits that were and are due and owing from the Plans.

*Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 945 (8th Cir. 1999), also relied upon by the NFL defendants, is completely inapposite. It stands for the rather unsurprising proposition that late distribution of a 401(k) account balance, that continued to accumulate interest during the period of alleged delay, does not give rise to other extracontractual remedies, such as prejudgment interest.

appropriate injunctive relief. Reinstatement of employment is certainly an equitable remedy and a form of injunctive relief that is authorized by ERISA.

As discussed above, Plaintiffs' Prayer for Relief does not purport to limit the Court's authority to award to Plaintiffs any form of relief authorized under ERISA, regardless of whether that relief was more explicitly sought in the Amended Complaint. Thus, the Court has the authority to order plaintiffs' reinstatement to their former employment with the NFLMC and, in conjunction with such injunctive relief, award back pay in the form of lost wages.[18]

Even assuming, *arguendo*, that Plaintiffs' use of the term "damages" (or "civil penalties") in the context of the First and/or Second Claims is found by the Court to be inappropriate, such language does not constrain the power of the Court to ultimately award to plaintiffs any form of authorized relief under ERISA. Pursuant to Fed. R. Civ. P. 54(c), a Federal court many grant any relief which a prevailing party is entitled, whether or not that relief was expressly sought in the complaint. *See* Fed.R.Civ.P. 54(c). *See also Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 86 (2d Cir. 2004), citing *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60 (1978).

For these reasons, the Court should reject the NFL Defendants' arguments made in reliance upon the *Great-West* decision. To the extent monetary recovery is sought, recovery is expressly authorized as a claim for benefits or is appropriate as incidental to other equitable relief which is available and pleaded in the Amended Complaint.

---

[18] Should the Court find it necessary, the Active DPA Plaintiffs will cross-move to further amend their Complaint to make specific their demand for reinstatement.

**POINT IV**

**The NFL Defendants' Arguments to Dismiss the Interference and
Retaliation Claims are Misplaced and Inappropriate.**

**A.**    **The Plaintiffs' Claims Were Timely Filed.**

The NFL Defendants argue that the Third Claim for interference is barred by the two-year limitations period for New York Workers' Compensation claims. NFL Memorandum at 42. The NFL Defendants' argument is wrong. Plaintiffs have specifically alleged in the Amended Complaint that the NFL and NFLMC terminated the employment of the Active DPAs on April 30, 2007 intentionally to interfere with the DPAs' rights to participate in ERISA plans. *See* ¶ 232. Even assuming, *arguendo*, that the applicable statute of limitations for Plaintiffs' claims is two years, as the NFL Defendants contend, Plaintiffs' claims are timely.

The NFL Defendants seek to distract the Court from the timeliness and substance of plaintiffs' allegations by asserting that the "gravamen" of Plaintiffs' interference claims "began with each Active DPA's classification." *See* Memorandum at 43. In doing so, the NFL Defendants impermissibly re-plead Plaintiffs' interference claims as being predicated on the NFL's "misclassification" of them as independent contractors at the time of hiring. According to the NFL Defendants, therefore, any claim for interference under ERISA §510 must have accrued at the time of Plaintiffs' hiring and are now time-barred. *Id.*

The NFL Defendants' approach finds no support in the Amended Complaint or the law. "As clarified by judicial opinion, ERISA §510 protects against the disruption of employment privileges to prevent the vesting or enjoyment of benefit rights, to punish their exercise, or to punish the giving of testimony in a proceeding relating to ERISA or a sister act." *Williams v. American Intern. Group, Inc.*, No. 01 Civ. 9673 (CSH), 2002 WL 31115184, *2 (S.D.N.Y. 2002), citing *Sandberg v. KPMG Peat Marwick*, 111 F.3d 331, 334 (2d Cir. 1997). *See*

29

*Sandberg*, 111. F.3d at 334 (same). *See also Hoodack v. Int'l Bus. Machines, Inc.*, 202 F.Supp.2d 109, 114 (S.D.N.Y. 2002)("Unlike a claim under section 502 that an employee has been denied benefits due under a plan, a claim under section 510 is essentially...focusing on the employment decision rather than plan coverage.")

While the alleged initial misclassification of one's employee status may be actionable under ERISA §502, the courts have explicitly held that no similar cause of action lies under ERISA §510 because misclassification does not implicate a disruption in the employment relationship. *See e.g. Williams, supra*, 2002 WL *at* *2; *McLellan v. E.I. DuPont de Nemours & Co., Inc.*, 2006 WL 3761993 (W.D.N.Y. 2006); *Schwartz v. Independence Blue Cross*, 299 F.Supp.2d 441, 450 (E.D.N.Y.2003). Therefore, the accrual theory relied upon by the NFL Defendants fails as a matter of law. If misclassification is insufficient to state a ERISA § 510 claim, it cannot cause the accrual of such a claim either.

The employment disruption complained of by Plaintiffs in the Third and Fourth Claims is that they were fired from their jobs, not that they were misclassified years earlier. *See* ¶¶ 213-243. Accrual for these claims thus occurred on April 30, 2007 and Plaintiffs' claims are timely.

**B.    The Adverse Action Occurred After the NFL Defendants Were Aware of the DPAs' Assertions of Rights to ERISA Benefits.**

The NFL Defendants also argue that the DPA Plaintiffs did not allege that any Active DPA exercised ERISA rights prior to the adverse employment action, thus precluding recovery. Their argument is that because the "outsourcing and termination decision was made and communicated to the Active DPAs" on October 5, 2006, the alleged adverse action of retaliatory discharge took place on that date for purposes Plaintiffs' ERISA §510 claims, not on April 30, 2007. The NFL Defendants then argue that since the "outsourcing decision" in 2006 was allegedly made prior to the time any Active DPA plaintiff asserted his ERISA rights, plaintiffs'

retaliatory discharge claim must be dismissed. NFL Memorandum at 44-46. This argument is meritless and should be rejected.

A claim based on the discharge of an ERISA plan participant for exercising his ERISA rights accrues when the employer decides to discharge the employee and communicates that decision to him. *See e.g., Green v. Int'l Business Machines, Inc.*, No. 01 Civ. 2334 (CM), 2001 WL 736811 (S.D.N.Y. June 22, 2001); *Barnett v. International Business Corp.*, 885 F.Supp. 581, 592 (S.D.N.Y. 1995). *See also McCauley v. First Unum Life Ins. Co.*, No. 97 Civ. 7662 (LMM), 1998 WL 846121, *6 (S.D.N.Y. Dec. 2, 1998) (holding that a claim accrues when the employee becomes aware of the employer's unlawful practice). This standard is consistent with the line of Second Circuit cases holding that, generally, the statute of limitations in ERISA actions begins to run upon the participant or beneficiary's notice of the violation. *See, e.g., Miles v. N.Y. York State Teamsters Conf. Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983). Thus, the inquiry is whether Active DPA Plaintiffs engaged in protected activity up to the date of the accrual of the ERISA §510 claim (which Plaintiffs argue is April 30, 2007).

Based on the allegations in the Amended Complaint and the documents annexed by the NFL Defendants to the Trans. Decl., it is clear that the NFL Defendants were well aware that the Active DPA Plaintiffs had collectively sought to exercise their rights under ERISA prior to their notice of any intended termination of their employment. As early as February of 2006, the NFL and NFLMC began receiving correspondence from counsel on behalf of several DPAs seeking to exercise their ERISA rights. *See, e.g.*, Amended Complaint ¶¶ 136, 138, 139; Trans. Decl., Exh. 1. The NFL Defendants also knew that various DPAs were filing SS-8 forms with the IRS seeking a determination of their status as employees. ¶139. Further, the Amended Complaint

31

alleges that in June 2006, the NFLMC acknowledged that it "had a big problem" because DPAs had filed SS-8s. ¶¶ 181-82. Most significantly, in July 2006, the NFLMC invited an Active DPA, James Bowers, to make a proposal to take over the entire specimen collection process and replace all of the DPAs and, in August 2006, the NFLMC senior officials met with Bowers to review his proposal to relieve the NFL/NFLMC of all DPAs by conducting urine specimen collection through a newly formed company owned by him. ¶¶ 181-82. All this activity by the NFL and NFLMC shows awareness of the concerted activity by the DPAs, and occurred before the announcement of any decision to "outsource" by the NFL/NFLMC in October 2006.

Moreover, the announcement in October 2006 by the NFLMC that it would no longer use the DPAs in the drug testing program was not a bright line notice to the DPAs of a single retaliatory act of the NFL Defendants. In October 2006, the NFL Defendants knew only that the NFL Drug Program would not employ DPAs after a certain date, initially November 30, 2006. In October 2006, the DPAs could not have known of the continuing retaliation that the NFL, NFLMC and CDT would conduct from October 2006 to April 2007 in scheming to exclude DPAs from being hired due to their age and efforts to obtain ERISA benefits. Rather, the October 2006 notice by NFL/NFLMC encouraged the DPAs to believe that they would be re-hired by an as yet unnamed new company. ¶¶ 183, 187. As the Amended Complaint alleges, the decision to terminate the DPAs was delayed more than once and the "new company" was not initially identified or the drug collection program specified until April 2007. ¶¶ 183, 187. It was thus reasonable for the DPAs to believe that their employment as specimen collectors might and likely would continue. As time marched on toward April 30, 2007, more and more DPAs retained counsel and sought benefits, so that by the termination date, the NFL and NFLMC determined to retaliate against them by ensuring that they would not be hired by CDT. ¶ 185;

32

Trans. Decl. Exhs. 2, 4. *See, e.g.,* ¶ 185 (at the request of the NFLMC, Bowers' provided information about the ages and legal representations of DPAs to CDT). On these facts, the April 30, 2007 date on which the DPAs definitely lost their positions as DPAs and were rejected by CDT proves a fair and reasonable date to use as a marker to look back to determine if prior protected activity occurred. This conclusion is consistent with the holdings of *McCauley, supra,* and *Miles, supra.* The Amended Complaint and the Trans. Decl. contain numerous allegations of such collective actions by Active DPAs before April 30, 2007. *See, e.g.* ¶¶ 136-38, 180. Trans. Decl. Exh. 4.

The Amended Complaint demonstrates that the NFL Defendants were aware of and concerned about such collective action on the part of all DPAs because, after announcing its "outsourcing decision" in October 2006, the NFL Defendants solicited and paid Jim Bowers to determine which Active DPAs were "involved with" counsel and/or the IRS in seeking to obtain ERISA and other benefits and to communicate the information to CDT. *See* ¶¶ 185-86. Plaintiffs believe that discovery will reveal the extent of the NFL Defendants' awareness and concern. At the latest, by April 25, 2007, before termination, the NFL Defendants knew that at least seventy-eight former and active DPAs had grouped together and sought collective representation by counsel to assert their rights under ERISA. *See* Trans. Decl., Exh. 4. And, in late April 2007, the DPAs were informed by Defendant CDT that they would not be employed as specimen collectors, specifically because the "IRS situation" had not been fully resolved between the NFL and the DPAs. *See* ¶ 192.

Contrary to movants' arguments, Plaintiffs' allegations satisfy all of the elements required to pursue an unlawful retaliation claim under ERISA §510. Plaintiffs have shown that they individually and collectively engaged in a protected activity prior to their final discharge

date, that the NFL Defendants were aware of such activity prior to the discharge date, and that the NFL Defendants took adverse actions against Plaintiffs that were at least in part motivated by these Plaintiffs' intent to engage in protected activity. At a minimum, the Court should not dismiss the claim without discovery. *See Corcoran v. GAB Business Serv., Inc.*, 723 F. Supp. 966, 969-970 (S.D.N.Y. 1989); *Economu v. Borg-Warner Corp.*, 662 F. Supp. 1047, 1052 (D. Conn. 1986); *Shipper v. Avon Products, Inc.*, 605 F. Supp. 701, 706 (S.D.N.Y. 1985); *Titsch v. Reliance Group, Inc.*, 548 F. Supp. 983, 985 (S.D.N.Y. 1982), *aff'd mem.*, 742 F.2d 1441 (2d Cir. 1983). Therefore, the NFL Defendants' motion to dismiss Plaintiffs' claims of retaliation for failure to state a claim should be denied.

## C.   The Plaintiffs Have Standing Under ERISA §510.

The NFL Defendants also urge that Plaintiffs' claims for retaliation and interference with ERISA rights under ERISA §510 should be dismissed for lack of standing because: (1) the majority of Plaintiffs' claims for benefits under ERISA §502(a) are barred by the statute of limitations; and (2) the Employee Benefit Committee found that Plaintiffs were not entitled to benefits under the Plans. NFL Memorandum at 39-40. These arguments overlook the governing law on standing.

The ERISA civil enforcement mechanism provides that "[a] civil action . . . may be brought ... by a participant, beneficiary, or fiduciary...." 29 U.S.C. § 1132(a)(3). A "participant" is defined as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7). The Supreme Court has clarified that a claimant can establish that he or she "may become eligible" for benefits by demonstrating

34

that "(1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989).

*In re Polaroid ERISA Litigation*, 240 F.R.D. 65 (S.D.N.Y. 2006) observes that the "Second Circuit has declined to apply the *Firestone* standard rigidly in the context of defining a 'participant'" under ERISA in that:

> While acknowledging a circuit split on the issue of whether former employees qualify as "participants," *Mullins* suggested that "the basic standing issue is whether the plaintiff is **'within the zone of interests ERISA was intended to protect.'** " *Mullins*, 23 F.3d at 668 (emphasis in original) [internal citations omitted] Applying the "zone of interests" standard, the Court of Appeals concluded that a former employee had standing as a plan participant because he alleged that "but for the fact that [the defendant] misled him, he would have been a participant." *Mullins*, 23 F.3d at 667 (internal quotation marks omitted). The court reasoned that it would reap an "anomalous effect" to "allow [ ] a fiduciary through its own malfeasance to defeat the employee's standing." *Mullins*, 23 F.3d at 668 (internal quotation omitted) [citations omitted].(emphasis added)

240 F.R.D. at 71 (discussing *Mullins v. Pfizer, Inc.*, 23 F.3d 663 (2d Cir. 1994)). *See also Katzenberg v. Lazzari*, No. 04 CV 5100 (CBA), 2007 WL 1017645 (E.D.N.Y. Mar. 30, 2007)(describing the Second Circuit as having adopted "an expansive view" of standing under ERISA). The Courts have further recognized that the class of individuals "who have 'colorable claims' to benefits [] clearly encompasses a larger group than just those individuals ultimately determined to have rights under a plan." *Reid v. The Local 966 Pension Fund*, No. 03 Civ. 9231 (LAP), 2004 WL 2072086, *5 (S.D.N.Y. Sept. 15, 2004)(citing *Kascewicz v. Citibank, N.A.*, 837 F.Supp. 1312, 1321 (S.D.N.Y. 1993)). The prevailing case law dictates that, applied to the facts of this case, these Plaintiffs are "within the zone of interests ERISA was intended to protect" because they allege that if the NFL Defendants had not misled them, the DPA Plaintiffs would have received Plan benefits, and were, as defined under the Plans, eligible as Plan participants. *See* discussion, *supra* at 15.

35

The courts have articulated the test for standing under ERISA as having two prongs, requiring that (1) plaintiff be an employee; and (2) according to the language of the subject ERISA plan, the plaintiff is or may become "eligible" to receive a benefit under the plan. *See e.g. McLellan v. E.I. Dupont, supra; Baraschi v. Silverwear, Inc.*, No. 01 Civ. 11263 (MBM), 2002 WL 31867730 (S.D.N.Y. Dec. 23, 2002).

The first prong of the test is satisfied if a plaintiff can establish that he is a common law employee. To this end, the employer's own classification of an employee is not dispositive, and the courts will engage in an independent analysis of the employee's status, applying general common law principles. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)("[W]e adopt a common-law test for determining who qualifies as an 'employee' under ERISA…"). In the Amended Complaint, Plaintiffs allege that they were common law employees of the NFL Defendants. *See, e.g.*, ¶¶ 116, 124-135,136-147, 143-153, 156. The NFL Defendants do not dispute these allegations in making this motion, or in seeking to dismiss the ERISA §510 claims[19]. Thus, for the purposes of dismissal, the Court should assume all of Plaintiffs' allegations to be true and that the first prong of the test for standing is met.

The second prong of the test for standing is satisfied where the plaintiff alleges facts indicating that it is highly likely that plaintiff is eligible to receive benefits under the ERISA

---

[19] To the contrary, by arguing that Plaintiffs' claims for interference and retaliation under ERISA §510 accrued upon the alleged "misclassification" of them at the time of hiring, the NFL Defendants tacitly concede the common law employee status of the DPAs. *See McLellan, supra*, 2000 WL 31867730, at *15:

> Specifically, Defendants, in support of summary judgment on the First Cause of Action, construe McLellan's allegation… as alleging that DuPont intentionally "misclassified" McLellan as a leased employee so as to render McLellan ineligible for pension benefits…By relying on their "misclassification" argument, however, Defendants impliedly concede that McLellan is, in fact, a common law DuPont employee. [internal citation omitted] Simply put, if McLellan were not DuPont's employee, it would not have been possible for DuPont to "misclassify" him for any employment purpose…As such, McLellan's status as a common law DuPont employee is established for the purposes of the instant motions in this action.

36

plans, or will be eligible in the future. *See, e.g., McLellan, supra*, 2002 WL 31867730 at *16. As

with plaintiff's "employee" status, the fact that an employer or plan fiduciary has determined that

an employee is ineligible for benefits is not dispositive on this issue, and a Court will engage in

its own analysis of the provisions of the employer's ERISA covered plans to assess an

employee's potential eligibility[20]. *See e.g., Schultz v. Stoner*, 308 F.Supp.2d 289, 301 (S.D.N.Y.

2004) (characterizing as "baseless" the argument of the Defendant that because "her eligibility

determinations properly exclude Plaintiffs from participation in the plans...that Plaintiffs

therefore have no standing as 'participant or beneficiaries' to sue under ERISA's civil action

provisions."); *Roarty v. AFA Protective Systems, Inc.*, No. 06-1052 (DRH)(WDW), 2006 WL

4094362, *5 (E.D.N.Y. Nov. 20, 2006)(noting that the courts have expressly preserved their

ability to "reexamine a litigant's status under a plan").

    In the Amended Complaint, Plaintiffs seek benefits under Plans to which they were

entitled at or before the time of the termination of their employment, but which they did not

receive. *See e.g.,* ¶¶ 157, 160, 165, 166, 167, 185, 187, 190, 199, 207, 208, 209, 214, 215, 223,

224, 230, 231, 232, 233, 237, 238, 239, 240. This Court has found similar allegations to

establish a "colorable claim to benefits" and has specifically stated that "[i]t would defeat the

purposes of ERISA to deny standing in this context." *Gray v. Briggs*, No. 97 Civ. 6252 (DLC),

1998 WL 386177, *5 (S.D.N.Y. July 7, 2006). Further, it is well established "that when standing

is challenged on the basis of the pleadings, we accept as true all material allegations of the

complaint, and ... construe the complaint in favor of the complaining party." *Fin. Inst. Ret. Fund*

---

[20] In doing so, the courts apply general contract interpretation principles, whereby any ambiguity in plan language will be construed against the drafter (i.e., the employer). *See, e.g., Critchlow v. First Unum Life Ins. Co.*, 378 F.3d 246 (2d Cir. 2004); *Lifson v. INA Life Ins. Co. of New York*, 333 F.3d 349, 353 (2d Cir. 2003); *Perreca v. Gluck*, 295 F.3d 215, 223 (2d Cir. 2002).

*v. Office of Thrift Supervision*, 964 F.2d 142, 149 (2d Cir. 1992) (citing *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)). *See also Bennett v. Spear*, 520 U.S. 154, 168 (1997) (allegation of facts sufficient to show standing suffices to withstand motion to dismiss); *Warth v. Seldin*, 422 U.S. 490 (1975).

The NFL Defendants' attempts to rely on a time-bar of underlying benefit claims fail, not merely because there is no time-bar, as discussed in Point II, *supra*, but also because Plaintiffs are colorably "within the zone of interests ERISA was intended to protect." It would be inappropriate for the Court to grant the NFL Defendants' request to dismiss the ERISA §510 claims based on Defendants contention that Plaintiffs do not have a "colorable claim" for benefits, because "the evaluation of ERISA standing is intertwined with an evaluation of the potential merits of the claims." *Caltagirone v. N.Y. Community Bancorp, Inc.*, 257 Fed.Appx. 470, *1 (2d. Cir. 2007). The Second Circuit Court of Appeals has clarified that, although it has "referred to a plaintiff's status as a 'participant' under ERISA as a question of 'standing,' [internal citations omitted] it is a statutory requirement, not a constitutional one. Thus, '[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, [internal citations omitted] statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action'." (internal citations omitted). *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006). *See also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 127 (2d Cir. 2003) ("[C]ourts may determine whether a cause of action exists under a given statute, an issue of statutory construction that goes to the merits of the action, before addressing ... statutory standing"), *cert. denied*, 540 U.S. 1012 (2003). Under this authority, dismissal based on a supposed lack of standing would be premature before discovery.

For these reasons, the NFL Defendants' motion to dismiss Plaintiffs' claims under ERISA §510 for lack of standing must be denied.

## POINT V

### The NFL Defendants' Arguments Urging Dismissal of the Failure to Furnish Claims are Without Merit.

The NFL Defendants maintain that the Sixth Claim for failure to furnish Plan information should be dismissed for lack of standing because only plaintiff Pallatroni requested documents from the NFL Defendants. Memorandum at 49-50. Defendants further argue that plaintiff Pallatroni lacks standing because his claims for ERISA benefits had accrued upon his initial hiring and are therefore time-barred. *Id.*

The NFL Defendants' arguments are contrary to the law.  ERISA provides that an "administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description...or other instruments under which the plan is established or operated." *See* 29 U.S.C. § 1024(b)(4).  When a court analyzes whether a plaintiff has standing as a plan "participant" to bring failure to furnish claims, the time for measuring whether a claim for plan documents is "colorable" is at the time the request for information is made. *See Reid v. Local 966, supra*, 2004 WL at * 4 (citing *Saladino v. ILGWU Nat. Retirement Fund*, 754 F.2d 473, 447 (2d. Cir. 1985)).  Thus, to the extent the NFL Defendants are arguing that Plaintiffs' claims should be dismissed because the DPAs were not "participants" as of the date of the filing of the Complaint, their request for dismissal must be denied.  Indeed, as discussed fully above, the claims were obviously "colorable" because the Employee Benefit Committee (as the NFL Defendants take great pains to explain to this Court) did, indeed, consider them (albeit belatedly, as pleaded by Plaintiffs).

39

Further, the courts have "reasoned that even a 'potential plan participant' who requested information would trigger a plan administrator's obligation to provide such information" under ERISA §104(b). *See Reid, supra,* citing *Finz v. Schlesinger,* 957 F.2d 78, 82 (2d Cir. 1992)(stating that "[i]t is well-established that the trustees of a pension plan have an obligation to provide plan participants with summary plan descriptions upon request...Although ERISA does not speak to the issue directly, we believe that plan trustees have a general obligation to provide potential plan participants who request plan descriptions..."). Accordingly, if under all of the circumstances there was a "possibility that Plaintiff was eligible to receive benefits," at least as of time that the request was made, Plaintiffs have standing to bring a claim because "the question of their eligibility for benefits was at least arguable." *See id.,* at *5, citing *Algie v. RCA Global Communication,* 891 F.Supp. 839, 869 (S.D.N.Y. 1994). *See also Medoy v. Warnaco Employees' Long Term Disability Ins. Plan,* 43 F.Supp.2d 303 (E.D.N.Y. 1999)(holding that a former employee had standing to bring a claim under ERISA seeking penalties for a plan's failure to disclose requested documents, even though at the time of request the employee had been neither a participant nor a beneficiary under the plan, since the employee had a colorable claim that she would prevail in a suit seeking reinstatement of benefits).

The Amended Complaint alleges that Plaintiffs were employees of the NFL and NFLMC, that Plaintiffs were entitled to benefits under the Plans, and that Plaintiffs did not receive such benefits. *See* ¶¶ 5, 107, 207, 209, 210. The Amended Complaint further alleges that on March 15, 2007, Plaintiffs' counsel wrote to the Plan Administrator requesting covered plan documents, *see* ¶ 251, and that the Plan Administrator did not timely provide to Plaintiffs the complete production of such documents. *See* ¶¶ 252, 254, 256.

40

The argument that Plaintiffs (other than Pallatroni) lack standing because the March 15, 2007 letter from Plaintiffs' counsel to Defendants, referenced at ¶ 251 was a request for documents on behalf of only Plaintiff Pallatroni is ridiculous and inappropriate for resolution at this juncture of the case. The NFL Defendants were informed on April 25, 2007 that the very same counsel who represented Pallatroni, in fact, represented seventy-seven other Active and Inactive DPAs who, they were explicitly advised were pursuing the same rights asserted by Pallatroni.[21]  *See* Trans. Decl., Exh. 4. To suggest that the NFL Defendants were unaware that the documents were being sought on behalf of all DPAs, as opposed to Pallatroni alone, is inconsistent with the Amended Complaint as pleaded, and with common sense.[22]

The NFL Defendants acted at their peril when they chose to provide a belated and facially incomplete set of documents in response to requests that they knew, or should have known, were made on behalf of all the DPAs represented by counsel, and necessary to frame their arguments. On December 7, 2007, the NFL Defendants were informed in writing by Plaintiffs' counsel that there were numerous plan documents that Defendants had not provided to Plaintiffs, and that another request for complete documents was being made on behalf of all of the Plaintiffs. *See* Trans. Decl., Exh. 14. The Plan Administrator again failed to produce a timely and complete set of the documents requested. Plaintiffs notified Defendants of the second deficient response on January 16, 2008. *See* Trans. Decl., at Exh. 17. These facts clearly

---

[21] Plaintiffs notified Defendants in writing each time Plaintiffs' counsel accepted the representation of additional DPAs. *See* Trans. Decl, Exhs. 5, 6, 8 and 10.

[22] Moreover, even before the Schnader Harrison firm became involved in this case, requests were made by the Levy Costello firm in 2006, which implicitly sought the actual Plans. Those requests were not honored by delivery of documents. *See* letters dated February 7, 2006; May 19, 2006; July 18, 2006; September 20, 2006 and October 17, 2006. (Carty Decl., Exh. D). For example, the May 19, 2006 letter states: "Please inform us which benefit Plans employees such as Messrs. Taylor and Pallatroni would have been eligible for."

demonstrate that the NFL Defendants had received requests for Plan information from each of the named Plaintiffs. Yet, the NFL Defendants opted, on more than one occasion, to provide late and incomplete information, in direct contravention to ERISA. For this reason, movants' application for the dismissal of Plaintiffs' failure to furnish claims should be denied.

Also incorrect is the NFL Defendants' argument that Plaintiffs lack standing because of the alleged expiration of the limitations period for the underlying benefit claims. At the time of Plaintiffs' hiring, there was no formal "repudiation" by a plan fiduciary of Plaintiffs' rights to benefits which would have triggered the relevant statute of limitations. *See supra*, at pp. 15-22. Moreover, even assuming, *arguendo*, that the Court finds that Plaintiffs' benefits claims are time-barred, the Court may nonetheless still find that Plaintiffs have standing to bring a claim for failure to provide plan documents. This is true even if the Court also finds that the Plaintiffs failed to establish entitlement to benefits. *See e.g., Burke v. Gregory*, 356 F.Supp.2d 179 (N.D.N.Y. 2005)(holding that the fact that plaintiff had already received payment of vested benefits did not require the dismissal of a claim for damages for failure to provide requested documents). This view "is consistent with the idea that §1132 is a penalty that should focus on the actions which violate ERISA and not on whether the participant ultimately received her vested benefits." *Id.*, 356 F. Supp. 2d at 186. For this additional reason, the NFL Defendants' motion to dismiss the Sixth Claim for failure to furnish Plan documents must be denied.

### POINT VI

### Plaintiffs' Fifth Claim for Equitable Estoppel Should Not Be Dismissed.

The NFL Defendants seek dismissal of the Fifth Claim for equitable estoppel on the grounds that they complied with ERISA reporting requirements. By their own admission, this is not so.

The NFL Defendants failed to provide a single Plan document to the Plaintiffs until two weeks before the termination date of April 30, 2007. Trans. Decl. Exh. 3. The NFL and NFLMC also never filed a single Summary Plan Description ("SPD") with the Department of Labor between 1988 and the termination of the DPA's employment on April 30, 2007. *See* ¶¶ 108, 245.

As the NFL Defendants admit, 29 C.F.R. § 2520.104b-2(b) "cited by the AC, pertains to a 'requirement to furnish the updated summary plan description to each participant . . . required by section 104(b)(1) of' ERISA." Memorandum at 49. Plaintiffs clearly allege that they were participants under the various Plans for which they seek benefits. ¶¶ 5, 209. Paragraph 247 of the Amended Complaint, which is part of the allegations of the Fifth Claim, specifically alleges that no DPA was ever provided with any copies of any SPDs by the NFL or NFLMC. If the facts alleged in the Amended Complaint are true, the DPAs meet the requirements of 29 CFR §2510.3-3(d), which defines the term "participant." The NFL Defendants, in moving against the Fifth Claim, fail to address this failure to provide SPDs to the DPAs, as the regulations require.[23]

The NFL Defendants do argue that filing of SPDs with the U.S. Department of Labor was not mandatory after 1997. Memorandum at 48. They do not deny, though, that they failed to file SPDs between 1988 and 1997 and they offer no excuse for their failure to file these documents.

These failures were prejudicial to the DPAs. The NFL Defendants are trying to argue, without any written basis, that repudiation of benefits occurred as early as 1988 for some of the DPAs. Certainly, the absence of Department of Labor filings meant that there were no publicly

---

[23] Presumably, the NFL Defendants' position will be that no DPA was a participant in any Plan. Participant status, however, remains to be resolved by this Court, and the NFL Defendants have not even placed the Plans or SPDs before this Court for such an assessment to be made. Thus, the relief sought by the NFL Defendants is premature, at best.

available SPDs for the DPAs to refer to, whether before or after 1997. The absence of filings negates the NFL Defendants' theory that the Plaintiff DPAs "should have known" that there were Employee Benefits Plans, for which they might be eligible and, further, that eligibility was being repudiated. The NFL Defendants' breach of the duty to provide SPDs and to file them with the Department of Labor between 1988 and 1997 are precisely the type of regulatory failures that give rise to estoppel arguments under *Veltri v. Bldg. Serv. 32 B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004). The Fifth Claim was pleaded to place the NFL Defendants on full notice of the issue.

Plaintiffs further note that after 1997, ERISA regulations required the NFL and NFLMC to file annual reports. 29 U.S.C. § 1024(a)(1). An investigation by Plaintiffs discloses that the NFL and NFLMC frequently breached that obligation, as well. Carty Decl., at ¶ 4. However, it merits mention that full compliance by the NFL and NFLMC with this filing requirement would have made no difference to the notice to the DPAs. The annual reports do not contain any information from which the DPAs might have "known" the terms of the Plans or the exclusions, or that they should be claiming eligibility thereunder.

Equitable estoppel is a claim available under ERISA in "extraordinary circumstances." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001); *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 77 (2d Cir. 1996). "Extraordinary circumstances" that will support equitable estoppel in the context of an ERISA plan is conduct tantamount to fraud. *Greifenberger v. Hartford Life Ins. Co.*, 131 Fed. Appx. 756, 2005 WL 1162982 (2d Cir. May 16, 2005). Here, not only have Plaintiffs pleaded substantial regulatory failures, as detailed above (failure to provide SPDs to participants and failure to file with the Department of Labor), but Plaintiffs also plead an active campaign of concealment. Paragraph 208 of the Amended

Complaint expressly alleges that "[m]isrepresentations made by the NFL, the NFLMC, and employee Welsh served to mislead Plaintiffs into believing that they were not NFL and/or NFLMC employees and, therefore, not entitled to employee pension benefits" (and ¶ 214 makes the same allegation concerning welfare benefits). The Amended Complaint details the transactions and occurrences which had the end and aim of misleading the DPAs. Reference is made to ¶¶ 157-167 of the Amended Complaint.

For these reasons, the NFL Defendants' request to dismiss the Fifth Claim should be denied.

### POINT VII

### The NFL Defendants' Arguments For Dismissal of the ADEA Claims Are Without Merit.

The NFL Defendants seek dismissal of the Seventh Claim brought under the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.* ("ADEA") arguing that the allegations supporting the claim amount to "stray remarks," "insufficient to support a discrimination suit" and which fail to meet the *Twombly* pleading standard. *See* Memorandum at 51-52. These arguments are incorrect as a matter of law.

A plaintiff establishes a *prima facie* case of age discrimination under the ADEA by showing that (1) he was a member of the protected class, *i.e.* an employee over 40 years of age; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the action give rise to an inference of age discrimination. *Shapiro v. New York City Dept. of Educ.*, No. 06 Civ. 1836 (JSR), 2008 WL 2414039, *7 (S.D.N.Y. June 13, 2008), citing *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 466-67 (2d Cir. 2001).

The burden of establishing a *prima facie* case is "neither onerous, nor intended to be rigid, mechanized, or ritualistic." *Id.* (internal citations and quotation marks omitted).[24] Accordingly, a plaintiff may establish an "inference of discrimination" at the *prima facie* level either through direct evidence, such as age-based comments, or indirect evidence, such as differential treatment or a replacement of plaintiff by a significantly younger employee. *Holtz v. Rockerfeller & Co.*, 258 F.3d 62 (2d Cir. 2001). Plaintiff's required *prima facie* showing at the pleadings stage is *de minimus* and can be based on circumstantial evidence. *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995).

In the context of the above-cited authority, it is clear that Plaintiffs have alleged facts in the Amended Complaint that establish a *prima facie* case of age discrimination. Plaintiffs have alleged that each DPA was over the age of 40 (*see* ¶¶ 8-100), that the DPAs were qualified and satisfactorily performing their duties (*see* ¶¶ 170-172), that the DPAs were terminated from their employment and were rejected or not considered for hiring by CDT jointly with the NFL and NFLMC (*see* ¶¶ 174-177). Such adverse actions were taken under a cloud of discrimination and the Amended Complaint specifically alleges <u>both</u> direct and circumstantial evidence of discrimination by Defendants. As direct evidence, *see, e.g.*, ¶ 173 NFL expressed concern over the ages of the DPAs in 2006); ¶180 (comment in 2006 that DPAs "will be dead and buried

---

[24] If a plaintiff makes out a *prima facie* case of age discrimination, a presumption of discrimination arises and the burden then shifts to the employer to provide evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Id.*, citing *Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1155 (2d Cir.1993). If the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993) (citation omitted). In the final step the plaintiff is afforded "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)(internal citation omitted).

before" resolution of benefits issue). As indirect or circumstantial evidence of discrimination, *see* ¶173 ( NFL set up plan to acquire younger DPAs); ¶177 (the ages of the DPAs were determinative factors in termination decision by NFL Defendants); ¶178 (CDT has been recruiting and hiring younger collectors with identical profiles to the DPAs); ¶185 (Bowers became the agent of the NFLMC in cooperating at its request with CDT and being paid to provide, among other information, the ages of DPAs to CDT) and ¶191 (application by DPA Plaintiff Logay denied following comment during CDT interview that "Oh, I didn't know that you had any grandchildren").

In addition to establishing a *prima facie* case of discrimination, these facts also satisfy the pleading requirements contemplated by the U.S. Supreme Court. Contrary to the NFL Defendants' position, the Supreme Court's decision in *Twombly* did not place a requirement on plaintiffs to plead a higher level of specific facts in a complaint for employment discrimination. Indeed, the Supreme Court has consistently held that to withstand a motion to dismiss, an employment discrimination complaint need not allege specific facts or otherwise meet a heightened pleading standard. Rather, the complaint must simply comply with Fed. R. Civ. P. 8(a)(2) by providing a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511-512 (2002); *Twombly, supra*, 127 S.Ct. at 1973-74 (2007) (reaffirming the vitality of *Swierkiewicz*). Accordingly, in considering a motion to dismiss, "**[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims.**" *Swierkiewicz, supra*, 534 U.S. at 514-15 (emphasis added.)

Moreover, as the Second Circuit has made clear, when adjudicating a motion to dismiss

under Fed. R. Civ. Proc. 12(b)(6), the court must accept all factual allegations in the complaint as

true and draw inferences from those allegations in the light most favorable to the plaintiff. *See*

*Albright v. Oliver*, 510 U.S. 266, 268 (1994); *McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir. 1997).

In this case, under the guise of the accusation that Plaintiffs' allegations "lack specificity,"

movants are, in fact, challenging the truth, probative value[25] and/or weight of the facts alleged by

Plaintiffs.    *See e.g.*, NFL Memorandum at 51 ("[T]he remoteness and lack of any

explanation…render [the comment] useless to support a conclusory allegation of age

discrimination."); at 52 ("The AC's allegation…is contradicted, rather than supported by the

pleadings."); at 53-54 ("Even if age motivation was inferable from these circumstances…it would

illogically require the Court to accept that…").  It is inappropriate for the Court to entertain the

NFL Defendants' arguments at this point in the litigation where, to do so, would necessitate that

the Court engage in a balancing of the significance of various alleged indicia of discrimination.

*See Abbasi v. Herzfeld & Rubin, P.C.*, 1995 WL 303603, *4 (S.D.N.Y. 1995) (holding that it

would be premature for the court to determine the weight of various indicia of discrimination in

the context of a motion to dismiss and, therefore finding that plaintiff stated a claim of age

discrimination in violation of the ADEA).

---

[25] Specifically, the NFL defendants' efforts to have the Court reject the supposed "stray remarks" is improper at this stage of litigation.  The Second Circuit recently clarified that where it "described remarks as 'stray,' the purpose of doing so was to recognize that all comments pertaining to a protected class are not equally probative of discrimination and to explain in generalized terms why the evidence in the particular case was not sufficient." *Tomassi v. Insignia Financial Group, Inc*, 478 F.3d 111, 116 (2d Cir. 2007).  However the Second Circuit "did not mean to suggest that remarks should first be categorized either as stray or not stray and then disregarded if they fall into the stray category." *Id.* Rather, courts should consider all alleged discriminatory comments in the context of (1) who made the comment, (2) when the remark was made in relation to the adverse employment action, (3) the content of the remark, and (4) the context in which the remark was made. *Id.* Clearly, the law requires the Court to engage in a probative assessment of Plaintiffs' allegations on a full record, which is inappropriate on the motion to dismiss when full discovery has not occurred.

For all of these reasons, the NFL Defendants' motion to dismiss the Seventh Claim for age discrimination lacks merit and should be rejected.

## CONCLUSION

For the reasons set forth fully above, the NFL Defendants' motion to dismiss the Complaint should be denied, in all respects.

Dated:    New York, New York
         July 23, 2008

                    Respectfully submitted,

                    SCHNADER HARRISON SEGAL & LEWIS LLP

By: *M. Christine Carty*
                    M. Christine Carty (MC-1796)
                    140 Broadway, Suite 3100
                    New York, NY 10005
                    (212) 973-8000
                    *Attorneys for Plaintiffs*

                    LEVY, TOLMAN & COSTELLO, LLP
                    Robert J. Costello (RC-8301)
                    630 Third Avenue
                    New York, NY 10017
                    (212) 949-8770
                    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Declaration of M. Christine Carty in Opposition to Motion to Dismiss and exhibits annexed thereto and the accompanying Memorandum of Law, were served electronically and by hand on this 23rd day of July 2008 upon:

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Shepard Goldfein
Jay S. Berke
4 Times Square
New York, NY 10036
(212) 735-3000
*Attorneys for National Football League Defendants*

LITTLER MENDELSON, P.C.
Michael P. Pappas
885 Third Avenue, 16th Floor
New York, NY 10022
(212) 583-9600
*Attorneys for Defendant Comprehensive Drug Testing, Inc.*

M. Christine Carty