UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X  :

William E. Richardson, et al.,                            :
                                                          :
                    Plaintiffs,                           :
                                                          :
          v.                                              :          1:07-cv-11632 (MGC)
                                                          :
National Football League, et al.,                         :
                                                          :
                    Defendants.                           :
                                                          :
-----------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CDT'S MOTION TO DISMISS

SCHNADER HARRISON SEGAL
  & LEWIS LLP
M. Christine Carty (MC-1796)
140 Broadway, Suite 3100
New York, NY 10005
(212) 973-8000
*Attorneys for Plaintiffs*

LEVY, TOLMAN
  & COSTELLO, LLP
Robert J. Costello (RC-8301)
630 Third Avenue
New York, NY 10017
(212) 949-8770
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

POINT I. DEFENDANT CDT'S ARGUMENTS SEEKING DISMISSAL OF THE THIRD
CLAIM FOR INTERFERENCE UNDER ERISA § 510 ARE WITHOUT MERIT ........ 3

    A.    Defendant CDT Falls Within the Scope of Potentially Liable Parties  Under
ERISA § 510. ............................................................................................. 3

    B.    Plaintiffs' Claims Against Defendant CDT Are Actionable Under ERISA §510.. 5

    C.    Plaintiffs' Claims Are Ripe for Adjudication ....................................................... 8

POINT II. DEFENDANT CDT'S ARGUMENTS TO DISMISS PLAINTIFFS'  ADEA
CLAIMS HAVE NO BASIS IN LAW OR FACT ............................................................ 9

    A.    Plaintiffs Have Properly Pled a Claim for "Mixed-Motives" Discrimination ........ 9

    B.    Defendant CDT's Challenge to Plaintiffs' "Evidence" is Inappropriate on a
Motion to Dismiss.................................................................................... 12

    C.    Only Certain DPAs Allege ADEA Violations.................................................... 13

POINT III. DEFENDANT CDT IS SUBJECT TO PERSONAL JURISDICTION IN THE
FORUM ....................................................................................................................... 14

    A.    Defendant CDT is "Doing Business" in New York Under CPLR 301................. 14

    B.    Defendant CDT is Subject to Long-Arm Jurisdiction in New York .................... 16

POINT IV. VENUE IS APPROPRIATE IN THE SOUTHERN DISTRICT OF NEW YORK.. 21

    A.    Venue is Proper in the District.......................................................................... 21

    B.    It is Contrary to the Interests of Justice to Sever the Claims Asserted Against
Defendant CDT and Transfer Them to California.............................................. 22

CONCLUSION................................................................................................................ 26

PHDATA 3108219_3

# TABLE OF AUTHORITIES

## FEDERAL CASES

CASES                                                                    Page(s)

*Abbasi v. Herzfeld & Rubin, P.C.,*
No. 94 Civ. 2809 (RLC),1995 WL 303603 (S.D.N.Y. May 17, 1995) ...................................13

*Abdu-Brisson v. Delta Air Lines,*
239 F.3rd 456 (2d Cir. 2001) ...........................................................................9

*ADP Investor Communication Services, Inc. v. In House Attorney Services,*
390 F.Supp.2d 212 (E.D.N.Y. 2005) ................................................................20

*Agency Rent A Car Sys. v. Grand Rent A Car Corp.,*
98 F.3d 25 (2d Cir. 1996)..............................................................................17

*Albright v. Oliver,*
510 U.S. 266 (1994)......................................................................................13

*Apache Prods. Co. v. Employers Ins.,*
154 F.R.D. 650 (S.D.Miss. 1994) ..................................................................24

*Bell Atlantic Corp. v. Twombly,*
127 S.Ct. 1955 (2007).............................................................................8, 11

*Bell v. Classic Auto Group, Inc.,*
2005 WL 659196 (S.D.N.Y. 2005)................................................................23

*BHP Trading, Ltd v. Deep Sea Int'l Shipping Co.,*
1991 U.S. Dist. LEXIS 13220 (S.D.N.Y. 1991)...............................................14

*Boesl v. Suburban Trust & Sav. Bank,*
642 F. Supp. 1503 (N.D.Ill. 1986) ...................................................................4

*Burrows Paper Corp. v. R.G. Engineering, Inc.,*
363 F.Supp.2d 379 (N.D.N.Y. 2005)...............................................................17

*Carlson v. Cuevas,*
932 F.Supp. 76 (S.D.N.Y. 1996).....................................................................20

*Chhetry v. U.S. Dept. of Justice,*
490 F.3d 196 (2d Cir. 2007).............................................................................15

PHDATA 3108219_3

*Christensen v. Nordell,*
   No. C 01-03415 (CRB), 2001 WL 1752370 (N.D.Cal. Nov. 30, 2001) ...................................4

*Condit v. Dunne,*
   317 F.Supp.2d 344 (S.D.N.Y. 2004) ...............................................................................15

*Creative Socio-Medics, Corp. v. City of Richmond,*
   219 F.Supp.2d 300 (E.D.N.Y. 2002) ..............................................................................21

*Credit Suisse Securities (USA) LLC v. Hilliard,*
   469 F.Supp.2d 103 (S.D.N.Y. 2007) ..............................................................................19

*Cronin v. Aetna Life Ins. Co.,*
   46 F.3d 196 (2d Cir. 1995) ........................................................................................10, 11

*Custer v. Pan Am. Life Ins. Co.,*
   12 F.3d 410 (4th Cir. 1993) ............................................................................................3

*David Tunick, Inc. v. Kornfeld,*
   1993 U.S. Dist. LEXIS 31 (S.D.N.Y. 1993) ..................................................................14

*Desert Palace, Inc. v. Costa,*
   539 U.S. 90 (2003) ........................................................................................................11

*Dister v. Continental Group, Inc.,*
   859 F.2d 1108 (2d Cir. 1988) .........................................................................................8

*Doron Precision Sys., Inc. v. FAAC, Inc.,*
   423 F.Supp.2d 173 (S.D.N.Y. 2006) .............................................................................15

*Factors, Etc., Inc. v. Pro Arts, Inc.,*
   579 F.2d 215 (2d Cir.1978), *cert denied,* 440 U.S. 908 (1979)...................................24

*Garber v. Legg Mason, Inc.,*
   537 F.Supp.2d 597 (S.D.N.Y. 2008) .............................................................................15

*Geller v. Markham,*
   635 F.2d 1027 (2d Cir. 1980), *cert. denied,* 451 U.S. 945 (1981) .............................11

*Hagelthorn v. Kennecott Corp.,*
   710 F.2d 76 (2d Cir. 1983) ...........................................................................................11

*Holcomb v. Iona College,*
   521 F.3d 130 (2d Cir. 2008) ..........................................................................................11

*Holtz v. Rockerfeller & Co.,*
   258 F.3d 62 (2d Cir. 2001) ...........................................................................................10

PHDATA 3108219_3

*Hoodack v. Int'l. Business Machines, Inc.,*
    202 F. Supp.2d 109, (S.D.N.Y. 2002)...................................................................8

*I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.,*
    986 F.Supp. 816 (S.D.N.Y. 1997) .....................................................................14

*In re Alstom SA,*
    406 F.Supp. 2d 402 (S.D.N.Y. 2005)..............................................................15

*In re Bennet Funding Group, Inc.*
    220 B.R. 743 (N.D.N.Y. 1997) ..........................................................................15

*In re Magnetic Audiotape Antitrust Litig.,*
    334 F.3d 204 (2d Cir. 2003)..............................................................................14

*In re Take-Two Interactive Securities Litigation,*
    551 F.Supp.2d 247 (S.D.N.Y. 2008)................................................................15

*In re Vitamins Anti-Trust Litigation,*
    270 F.Supp.2d 15 (D.D.C. 2003) ......................................................................24

*International Healthcare Exchange, Inc. v. Global Healthcare Exchange,*
    470 F.Supp.2d 345 (S.D.N.Y. 2007)...........................................................19, 20

*IUE AFL-CIO Pension Fund v. Hermann,*
    9 F.3d 1049 (2d Cir.1993)................................................................................14

*Kahn Lucas Lancaster, Inc. v. Lark International Ltd.,*
    956 F. Supp. 1131 (S.D.N.Y. 1997)..................................................................17

*Kanbar v. U.S. Healthcare, Inc.,*
    715 F.Supp. 602 (S.D.N.Y.1989) .....................................................................24

*La Fata v. Raytheon Co.,*
    223 F.Supp.2d 668 (E.D.Pa. 2002) .....................................................................4

*Maez v. Mountain States Tel. & Tel., Inc.,*
    54 F.3d 1488 (10th Cir. 1995) .............................................................................4

*Mattei v. Mattei,*
    126 F.3d 794 (6th Cir. 1997) ...............................................................................4

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973)..............................................................................................7

*McEvoy v. Spencer,*
    124 F.3d 92 (2d Cir. 1997)..................................................................................13

iv

*McLellan v. E.I. DuPont de Nemours & Co., Inc.,*
  No. 04-CV-314A(F), 2006 WL 3751583 (W.D.N.Y. Sept. 22, 2006) ..................................7

*National Telephone Directory Consultants, Inc. v. Bellsouth Advertising,*
  25 F.Supp.2d 192 (S.D.N.Y. 1998) ..............................................................................19

*Nauman v. Abbott Laboratories,*
  2005 WL 1139480 (N.D.Ill. Apr. 27, 2005) ...................................................................7

*New Alliance Party v. New York Bd. of Elections,*
  861 F.Supp. 282 (S.D.N.Y. 1994) .................................................................................15

*New Life Homecare, Inc. v. Blue Cross of Northeastern Penn.,*
  No. 3:06-CV-2485; 2008 WL 423837 (M.D.Pa. Feb. 14, 2008).....................................4

*New York v. Hendrickson Bros., Inc.,*
  840 F.2d 1065 (2d Cir.), *cert. denied,* 488 U.S. 848 (1988)........................................23

*Pickering v. USX Corp.,*
  No. 87-C-838J, 1995 WL 584372 (D.Utah May 8, 1995)..............................................4

*Place v. Abbott Laboratories, Inc.,*
  938 F.Supp. 1373 (N.D.Ill. 1996) ...................................................................................4

*Plain v. AT&T, Corp.,*
  424 F. Supp. 2d 11 (D.D.C. 2006)...................................................................................4

*Reeves v. Sanderson Plumbing Prods., Inc.,*
  530 U.S. 133 (2000)..........................................................................................................9

*Schwapp v. Town of Avon,*
  118 F.3d 106 (2d Cir. 1997)...........................................................................................10

*Seagoing Uniform Corp. v. Texaco, Inc.,*
  705 F.Supp. 918 (S.D.N.Y. 1989) .................................................................................24

*Securities and Exchange Com'n v. Thrasher,*
  1993 WL 437752 (S.D.N.Y. 1993)................................................................................24

*Shah v. Meeker,*
  435 F.3d 244 (2d Cir. 2006)...........................................................................................15

*Shapiro v. New York City Dept. of Educ.,*
  No. 06 Civ. 1836(JSR), 2008 WL 2414039 (S.D.N.Y. June 13, 2008)...........................9

*Spence v. Md. Cas. Co.,*
  995 F.2d 1147 (2d Cir. 1993)...........................................................................................9

PHDATA 3108219_3

*St. Mary's Honor Ctr. v. Hicks,*
    509 U.S. 502 (1993)....................................................................................................9

*Swanson v. U. A. Local 13 Pension Plan,*
    779 F. Supp. 690 (W.D.N.Y. 1991) ........................................................................4

*Swierkiewicz v. Sorema,*
    534 U.S. 506  (2002)............................................................................................8, 11

*Tingey v. Pixley-Richards West, Inc.,*
    953 F.2d 1124 (9th Cir. 1992) ..................................................................................4

*Tobin v. Nadeau,*
    No. Civ. A. 03-11817 (DPW), 2004 WL 1922134 (D.Mass. Aug. 30, 2004) ...........4

*Tomassi v. Insignia Financial Group, Inc.,*
    478 F.3d 111 (2d Cir. 2007)....................................................................................12

*Trans World Airlines, Inc. v. Sinicropi,*
    No. 93 CIV. 3094 (CSH), 1994 WL 132233 (S.D.N.Y. Apr. 14, 1994) ..................14

*United Computer Capital Corp. v. Secure Prods., L.P.,*
    218 F. Supp. 2d 273 (N.D.N.Y. 2002)....................................................................17

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,*
    216 F.Supp.2d 198 (S.D.N.Y. 2002)........................................................................21

*U.S. Commodity Futures Trading v. Amaranth Advisors, L.L.C.,*
    No. 07 Civ. 6682 (DC), 2008 WL 2123323 (S.D.N.Y. May 21, 2008)...................19

*Vogel v. Independence Fed. Sav. Bank,*
    692 F.Supp. 587 (D.Md. 1988) ................................................................................4

*Warner v. Buck Creek Nursery, Inc.,*
    149 F.Supp.2d 246 (W.D.Va. 2001) ........................................................................4

*Weizmann Inst. of Sci. v. Neschis,*
    229 F.Supp.2d 234 (S.D.N.Y. 2002)......................................................................15

*West v. Butler,*
    621 F.2d 240 (6th Cir. 1980) ....................................................................................4

*Zimmermann v. Assocs. First Capital Corp.,*
    251 F.3d 376 (2d Cir. 2001)....................................................................................10

PHDATA 3108219_3

## STATE CASES

*Berk v. Theatre Arts of West Virginia, Inc.,*
  157 Misc.2d 696, 598 N.Y.S.2d 418 (N.Y.Cty Civ. Ct., 1993)..............................18

*Courtroom Television Network v. Focus Media,*

  264 A.D.2d 351, 695 N.Y.S.2d 17 (1st Dep't. 1999) ..................................................20

*Kreutter v. McFadden Oil Corp.,*
  71 N.Y.2d 460, 527 N.Y.S.2d 195 (1988) ..................................................................18

*L.F. Rothschild, Unterberg, Towbin v. Thompson,*
  78 A.D.2d 795, 433 N.Y.S.2d 6 (1st Dep't. 1980) .....................................................18

*Landoil Resources Corp. v Alexander & Alexander Servs., Inc.,*
  77 N.Y.2d 28 (1990) ...................................................................................................15

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,*
  15 N.Y.2d 443, 261 N.Y.S.2d 8 (1965) ......................................................................18

*Parke-Bernet Galleries, Inc. v. Franklyn,*
  26 N.Y.2d 13, 208 N.Y.S.2d 337 (1970) ....................................................................18

*Scheuer v. Schwartz,*
  42 A.D.3d 314, 839 N.Y.S.2d 485 (1st Dep't. 2007) ............................................18, 19

## FEDERAL STATUTES

28 U.S.C. § 1391.............................................................................................................22

28 U.S.C. §1404..............................................................................................................24

28 U.S.C. §1404(a) .....................................................................................................23, 24

29 U.S.C. §1132(e)(2)...........................................................................................14, 21, 22

Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq*. ("ADEA") ....................... passim

§510 of the Employee Retirement Income and Security Act, 29 U.S.C. § 1140................. passim

Fed.R.Civ.P. 12(b)(6)..................................................................................................1, 13

Fed.R.Civ.P. 21...............................................................................................................23

Fed. R. Civ. P. 8(a)(2)......................................................................................................11

PHDATA 3108219_3

Fed.R.Evid. 201 ...................................................................................................................15

## **STATE STATUTES**

C.P.L.R. 302(a)(1) ...........................................................................................................1, 13

C.P.L.R. §301 ....................................................................................................................14

C.P.L.R. § 302(a)(1) ..........................................................................................................16

CPLR 302..........................................................................................................................18

PHDATA 3108219_3

Plaintiffs submit this memorandum of law in opposition to the motion by Defendant Comprehensive Drug Testing ("CDT") seeking to (i) dismiss the Third and Seventh Claims of the Amended Complaint against it pursuant to Fed.R.Civ.P. 12(b)(6) and for lack of personal jurisdiction and improper venue,[1] and, alternatively, (ii) to transfer venue to the Central District of California.

## INTRODUCTION

Defendant CDT's motion to dismiss should be denied. It is grounded upon fundamental misapprehensions of the applicable law and the nature of the claims that Plaintiffs assert against it.

Defendant CDT argues for the dismissal of Plaintiffs' Third Claim for interference under §510 of the Employee Retirement Income and Security Act, 29 U.S.C. § 1140 ("ERISA §510") because CDT was allegedly never Plaintiffs' employer and the Plaintiffs never enrolled or applied to enroll in any of Defendant CDT's Employee Benefit Plans. Neither of these facts is in dispute, but they are irrelevant to whether Plaintiffs may assert an ERISA §510 claim against CDT. Plaintiffs specifically allege that, in conjunction with the NFL Defendants, Defendant CDT interfered with the Plaintiff DPAs' attainment of benefits and rights under the NFL and NFLMC Employee Benefits Plans. The interference alleged went well beyond a unilateral refusal to hire by Defendant CDT of any Plaintiff DPA and is actionable under ERISA §510.

---

[1] The NFL Defendants have filed a separate motion to dismiss (hereinafter, referred to as the "NFL Memorandum"). Plaintiffs' arguments in opposition to the NFL Defendants' motion are set forth in a separate memorandum of law which was filed concurrently with Plaintiffs' Opposition to Defendant CDT's motion to dismiss (hereinafter, referred to as the " Opposition to NFL Memorandum").

PHDATA 3108219_3

Defendant CDT also asserts that the Seventh Claim for age discrimination under the Age Discrimination In Employment Act ("ADEA") should be dismissed because the Amended Complaint alleges that both Plaintiffs' ages and their inquiries to the IRS regarding benefits were determinative factors in Defendants' decision to terminate their employment. Defendant CDT's argument, however, is contrary to well-established law which holds that employment discrimination may be found if the employer's adverse employment decision is based on mixed motives.

Defendant CDT's arguments of lack of jurisdiction are misplaced.  ERISA permits nationwide service of process as CDT admits.  Under settled interpretations of ERISA, that statute confers personal jurisdiction in any district over U.S. resident corporations, such as CDT. Thus, the Court has personal jurisdiction over CDT.  Moreover, by taking judicial notice of CDT's business with respect to Major League Baseball, the National Hockey League and the Ladies Professional Golf Association, in addition to the NFL, the Court should find that Defendant CDT is subject to general jurisdiction in the State of New York ("New York"). Alternatively, CDT's motion concedes systematic and continuous contacts within New York with a sufficient nexus to New York and the litigation to warrant the exercise of long-arm jurisdiction.

Finally, Defendant CDT argues that venue is inappropriate in the Southern District of New York and that any claims asserted against it should be severed and transferred to the Central District of California. However, it is abundantly clear that the issues in this case demonstrate a greater nexus to this District than to the Central District of California.  Among other things, the NFL and NFLMC (as well as the Plans themselves) have their headquarters in this District, and

2

numerous NFL and NFLMC employees' witnesses are located in this District, in addition to the DPAs resident in New York.

## POINT I.

## DEFENDANT CDT'S ARGUMENTS SEEKING DISMISSAL OF THE THIRD CLAIM FOR INTERFERENCE UNDER ERISA § 510 ARE WITHOUT MERIT

### A.    Defendant CDT Falls Within the Scope of Potentially Liable Parties Under ERISA § 510

Defendant CDT alleges that "Plaintiffs were never employed by CDT and were never participants in any CDT benefit plan," and argues that it is "well-established that non-employee, non-participants cannot maintain a cause of action under ERISA for failure to hire." *See* CDT Memorandum of Law in Support of Motion to Dismiss ("CDT Memorandum"), at 1.   This argument misconstrues the allegations pleaded in the Complaint and misstates applicable law.

An "employer" is not the only party who may be held liable for interference in violation of ERISA §510.   ERISA § 510 expressly provides that it is unlawful for:

> [A]ny person [to] discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001 or the Welfare and Pension Plans Disclosure Act or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title, or the Welfare and Pensions Act.

29 U.S.C. § 1140 (emphasis added).   In interpreting the term "any person," the Fourth Circuit Court of Appeals observed in *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 421 (4th Cir. 1993):

> As written, however, 29 U.S.C. §1140 states that the proscribed actions are unlawful "for any *person*." (Emphasis added). Since both terms, "employer" and "person," are defined by ERISA, *see* 29 U.S.C. §1002(5) and (9), we must assume that Congress used the term "person" deliberately. Although the verbs used in §1140, such as "discharge," "suspend," or "discipline," may suggest action by an *employer*, Congress also used broader verbs, such as "discriminate," and the much broader term "person," in stating by whom such actions would be illegal. In light of the plain language of the section, we cannot agree with the defendants that Congress intended to limit those who could violate §1140 to employers. *See*

> *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1132 n.4 (9th Cir. 1992). Because the definition of "person" includes a corporation, mutual company, or association, see 29 U.S.C. §1002(a), we reject the argument of Pan American Life and National Insurance that they are not within the class of persons to which §1140 was directed.

Other Courts have also found that interference claims under ERISA §510 may be brought against non-employers. *See e.g., Mattei v. Mattei*, 126 F.3d 794 (6th Cir. 1997); *Maez v. Mountain States Tel. & Tel., Inc.,* 54 F.3d 1488 (10th Cir. 1995); *New Life Homecare, Inc. v. Blue Cross of Northeastern Penn.*, No. 3:06-CV-2485; 2008 WL 423837 (M.D.Pa. Feb. 14, 2008); *Plain v. AT&T, Corp.*, 424 F. Supp. 2d 11 (D.D.C. 2006): *Tobin v. Nadeau*, No. Civ. A. 03-11817 (DPW), 2004 WL 1922134, *4 (D.Mass. Aug. 30, 2004); *La Fata v. Raytheon Co.*, 223 F.Supp.2d 668 (E.D.Pa. 2002); *Christensen v. Nordell*, No. C 01-03415 (CRB), 2001 WL 1752370 (N.D.Cal. Nov. 30, 2001); *Warner v. Buck Creek Nursery, Inc.*, 149 F.Supp.2d 246 (W.D.Va. 2001); *Place v. Abbott Laboratories, Inc.*, 938 F.Supp. 1373 (N.D.Ill. 1996) *Pickering v. USX Corp.*, No. 87-C-838J, 1995 WL 584372 (D.Utah May 8, 1995); *Vogel v. Independence Fed. Sav. Bank*, 692 F.Supp. 587 (D.Md. 1988); *Boesl v. Suburban Trust & Sav. Bank*, 642 F. Supp. 1503 (N.D.Ill. 1986) (same). *See also Swanson v. U. A. Local 13 Pension Plan*, 779 F. Supp. 690 (W.D.N.Y. 1991)(observing that "an individual's employment relationship may be disrupted in a variety of ways," and that employers are not the only persons or entities capable of affecting the employment relationship), citing *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980).[2]

Similarly, Defendant CDT's argument that Plaintiffs lack standing because they are not "participants" in any CDT-sponsored benefit plan is misplaced. ERISA §510 prohibits interference with a "participant" who seeks to exercise rights under "**an** employee benefit plan."

---

[2] Plaintiffs are unaware of any authority addressing this issue in either the Second Circuit Court of Appeals or the Southern District of New York.

29 U.S.C. § 1140 (emphasis added).  There is no requirement, and Defendant CDT has not provided any contrary authority, that Plaintiffs must separately demonstrate that they are "participants" eligible to receive benefits under covered plans established and maintained by the interfering party.  The plain language of the statute clearly indicates that Plaintiffs need only demonstrate that they are "participants" in those covered plans or benefits for which Plaintiffs allege interference.  In the Amended Complaint, Plaintiffs have sufficiently alleged that they were participants in the NFL and NFLMC Plans, and that their rights under those Plans were interfered with as a result of Defendant CDT's joint actions with some of the NFL Defendants. *See, e.g.,* Amended Complaint ("Complaint") at ¶¶ 5, 6, 105, 107, 116, 156, 185, 207, 209, 215, 221, 231.  One example of joint conduct, known to Plaintiffs and relevant to the interference claim, is the inquiry by CDT's President to the NFL through its agent, DPA Jim Bowers, as to which DPAs were represented by counsel and were pursuing efforts to have the IRS declare them to be employees of the NFL and/or NFLMC, see ¶ 185.  These allegations sufficiently establish standing to pursue ERISA §510 claims of interference against both the NFL Defendants and Defendant CDT.

**B.    Plaintiffs' Claims Against Defendant CDT Are Actionable Under ERISA §510[3]**

Defendant CDT also argues that the Third Claim for interference under ERISA §510 should be dismissed because "CDT's purported refusal to hire them does not constitute a violation of ERISA."  CDT Memorandum at 6.   Plaintiffs, however, have not pleaded that

---

[3] Plaintiffs are surprised to learn that Defendant CDT believes that Plaintiffs, in effect, withdrew their ERISA §510 interference claim against it merely because the claim was not discussed by Plaintiffs at the initial conference before the Court.  Plaintiffs did not withdraw the §510 claim and the failure to mention the claim while presenting a brief synopsis of the Amended Complaint for the benefit of the Court does not constitute a "waiver."

Defendant CDT's violation is a "failure to hire" claim. Rather, Plaintiffs allege that Defendant CDT, in concert with some of the NFL Defendants, interfered with the Plaintiff DPAs' attainment of benefits and rights under the NFL and NFLMC Employee Benefits Plans. Such interference extended beyond Defendant CDT's mere unilateral refusal to hire any of the Plaintiff DPAs. *See, e.g.,* Complaint at ¶185 (at the urging of the NFL Defendants, Jim Bowers provided information to CDT President, Kim Jaspers, as to which DPAs had retained counsel, were petitioning the IRS regarding their employment status and seeking to obtain ERISA and other benefits); ¶190 (some DPAs were offered and signed contracts with Defendant CDT, but were subsequently informed that they were not going to be hired until the IRS ruling regarding the DPAs' status as employees of the NFL was "resolved"); ¶192 (Defendant CDT telephone Plaintiff DPAs and informed that they would "not be retaining any of the DPAs until the IRS situation has been fully resolved.")[4] Moreover, the Amended Complaint alleges that if CDT had hired the DPAs, the DPAs would have continued to be NFL or NFLMC employees "and their rights to benefits, particularly those that are based on hours accrued, would continue to mature and vest," ¶230. In short, Plaintiffs allege that CDT and NFL or NFLMC would have been "joint employers" of the DPAs, with continuing liability by the NFL or NFLMC for ERISA benefits, but for the concerted conduct of CDT and some NFL Defendants to exclude the DPAs from working for CDT. Plaintiffs' rights to benefits under the NFL and NFLMC Employee Benefit Plans are protected from interference by operation of ERISA §510, and Defendant CDT is fully liable, as pleaded, for its illegal conduct.

---

[4] These allegations, if proven, would establish that Defendant CDT was clearly conscious of the fact that the DPAs were seeking to obtain ERISA benefits.

6

Furthermore, even assuming, *arguendo*, that Plaintiffs' claims against Defendant CDT for interference in violation of ERISA §510 may be construed as partially predicated upon a failure or refusal to hire or rehire Plaintiffs, such a construction does not, as Defendant CDT contends, require the dismissal of Plaintiffs' claims. *See, e.g., McLellan v. E.I. DuPont de Nemours & Co., Inc.*, No. 04-CV-314A(F), 2006 WL 3751583 (W.D.N.Y. Sept. 22, 2006) (recognizing that a plaintiff may state a viable claim under ERISA §510 based on a failure to hire), citing *Nauman v. Abbott Laboratories*, 2005 WL 1139480 (N.D.Ill. Apr. 27, 2005) (stating that a company's refusal to rehire an employee states a claim for relief under ERISA §510 where the evidence establishes that such refusal to rehire is specifically intended to prevent a former employee from vesting in the company's ERISA-covered pension plan).

In addition to alleging discriminatory actions that occurred prior to Defendant CDT's formal denial of employment to Plaintiff DPAs, the Amended Complaint also alleges that Defendant CDT's actual decisions prevented Plaintiffs from obtaining ERISA benefits on a going forward basis under the NFL and NFLMC Employee Benefit Plans. *See* Complaint, at ¶ 225 (one of the SPDs for the plans at issue purportedly required 1000 Hours of Service per year in order to be eligible for benefits. Defendant CDT's failure to hire Plaintiffs foreclosed Plaintiffs' opportunity to satisfy this requirement); ¶ 229 (transfer of the urine specimen collection function performed by DPAs under the direction of the NFL and/or NFLMC to CDT would not change the 'employee' status of those who perform the job); ¶ 230 (had CDT hired the Active DPAs, they would continue to be NFL and NFLMC employees, and their rights to benefits would have continued to mature and to vest.)[5]

---

[5] The detailed allegations in the Complaint more than satisfy the applicable pleading standards. An ERISA § 510 claim is analyzed under the Title VII discrimination framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05

*...Continued*

It is clear that, as pleaded, Defendant CDT engaged in conduct which is explicitly barred by ERISA §510. For this reason, the Court must deny Defendant CDT's request to dismiss Plaintiffs' claims.

### C.    <u>Plaintiffs' Claims Are Ripe for Adjudication</u>

Defendant CDT further asserts that Plaintiffs' claim under §510 is not "ripe" for adjudication because Plaintiffs have not sought or applied for ERISA benefits from any CDT-sponsored plan. This argument also must fail. Plaintiffs' allege interference with their ERISA rights under the NFL and NFLMC Plans, and not under CDT Employee Benefits Plans. The NFL Defendants contend that there has been a full administrative review of Plaintiffs' claims. *See* NFL Defendants' Memorandum at 4-5. The NFL Defendants do not claim failure to exhaust, making the issues presented in this case ripe for adjudication. As discussed above, Plaintiffs are not required to allege or prove that they were also "participants" under Defendant CDT-sponsored plans in order to bring an ERISA §510 claim against Defendant CDT. For this same reason, Plaintiffs are not required to establish that they sought or applied for ERISA benefits under a CDT-sponsored plan prior to bringing a claim against Defendant CDT under ERISA §510. Exhaustion is also not a prerequisite to any of ERISA §510 claim. See *Hoodack v. Int'l Business Machines, Inc.,* 202 F.Supp. 2d 109, 115 (S.D.N.Y. 2002).

---

*Continued from previous page*

(1973). See *Dister v. Continental Group, Inc.,* 859 F.2d 1108 (2d Cir. 1988). For pleading purposes, the United States Supreme Court has consistently held that to withstand a motion to dismiss, a discrimination claimant need not meet a heightened pleading standard. Rather, the complaint must simply provide a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of discrimination and the grounds upon which those claims rest. See *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-512 (2002); *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1973-74 (2007) (reaffirming the vitality of <u>Swierkiewicz</u>).

PHDATA 3108219_3

### POINT II.

### DEFENDANT CDT'S ARGUMENTS TO DISMISS PLAINTIFFS' ADEA CLAIMS HAVE NO BASIS IN LAW OR FACT

Defendant CDT argues for dismissal of the Seventh Claim under the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.* ("ADEA"), because (1) Plaintiffs also assert that the "IRS's determination" was "a determinative factor in [CDT's] decision"; (2) Plaintiffs' rely on only one "off-hand remark attributed to a CDT employee, Liana Lee"; and (3) only 58 of the 93 named Plaintiffs applied for positions with CDT. None of the reasons asserted by Defendant CDT warrant the dismissal of the Seventh Claim.

### A.    Plaintiffs Have Properly Pled a Claim of "Mixed-Motives" Discrimination

A plaintiff establishes a *prima facie* case of age discrimination under the ADEA by showing that (1) he was a member of the protected class, *i.e.* an employee over 40 years of age; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the action give rise to an inference of age discrimination. *Shapiro v. New York City Dept. of Educ.*, No. 06 Civ. 1836(JSR), 2008 WL 2414039, *7 (S.D.N.Y. June 13, 2008), citing *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 466-67 (2d Cir. 2001).

The burden of establishing a *prima facie* case is "neither onerous, nor intended to be rigid, mechanized, or ritualistic." *Id.* (internal citations and quotation marks omitted).[6]

---

[6] If a plaintiff makes out a *prima facie* case of age discrimination, a presumption of discrimination arises and the burden then shifts to the employer to provide evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Id.*, citing *Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1155 (2d Cir. 1993). If the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993) (citation omitted). In the final step the plaintiff is afforded "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)(internal citation omitted).

PHDATA 3108219_3

Accordingly, a plaintiff may establish an "inference of discrimination" at the *prima facie* level either through direct evidence, such as age-based comments, or indirect evidence, such as differential treatment or a replacement of plaintiff by a significantly younger employee. *Holtz v. Rockerfeller & Co.*, 258 F.3d 62 (2d Cir. 2001). A plaintiff's required *prima facie* showing at the pleadings stage is *de minimus* and can be based on circumstantial evidence. *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995).

In the context of the above-cited authority, it is clear that Plaintiffs have alleged facts in the Amended Complaint that establish a *prima facie* case of age discrimination. Plaintiffs have alleged that each DPA was over the age of 40, ¶¶ 8-100, that the DPAs were qualified and satisfactorily performing their duties, ¶¶ 170-172, and that the DPAs were terminated from their employment and were rejected or not considered for hiring by CDT jointly with the NFL and NFLMC, ¶¶ 174-177. The Complaint also alleges that such adverse actions were taken under a cloud of discrimination – indeed, the Complaint specifically alleges <u>both</u> direct and indirect evidence of discrimination by Defendants. Examples of direct evidence are found in ¶ 173 (NFL expressed concern over the ages of the DPAs in 2006) and ¶ 180 (comment in 2006 that DPAs "will be dead and buried before" resolution of benefits issue). Examples of indirect or circumstantial evidence of discrimination are found in ¶ 173 ( NFL set up plan to acquire younger DPAs); ¶ 177 (the ages of the DPAs were determinative factors in termination decision by NFL Defendants); ¶ 178 (CDT has been recruiting and hiring younger collectors with identical profiles to the DPAs); ¶ 185 (Bowers became the agent of the NFL MC in cooperating at its request with CDT and being paid by the NFLMC to provide, among other information , the ages of DPAs to the President of CDT) and ¶191 (application by Plaintiff

10

Logay denied following comment during CDT interview that "Oh, I didn't know that you had any grandchildren"). [7]

Nowhere in the Amended Complaint do Plaintiffs allege that the IRS determination of employee status was the sole determinative factor behind CDT's decisions and actions. On the contrary, the Complaint expressly states that **"the ages of the DPAs and the IRS decision** that the DPAs were NFL employees **were the determinative factors** for the NFL in deciding to terminate the services of the DPAs and of CDT in not hiring or retaining any of the DPAs." Complaint, at ¶ 177 (emphasis added.) It is well settled that a plaintiff may establish discrimination in a "mixed-motive" context, by showing that an adverse employment decision was based, in whole or in part, on prohibited discrimination and that a prohibited factor was at least one of the motivating factors. *See, e.g., Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003); *Holcomb v. Iona College,* 521 F.3d 130 (2d Cir. 2008); *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir. 1995); *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76 (2d Cir. 1983); *Geller v. Markham,* 635 F.2d 1027, 1035 (2d Cir. 1980), *cert. denied,* 451 U.S. 945 (1981). Thus, Plaintiffs allegations in the Amended Complaint properly state a *prima facie* case of age discrimination.

---

[7] In addition to establishing a *prima facie* case of discrimination, these also satisfy the pleading requirements contemplated by the Supreme Court. Indeed, the Supreme Court has consistently held that to withstand a motion to dismiss, an employment discrimination complaint need not allege specific facts or otherwise meet a heightened pleading standard. Rather, the complaint must simply comply with Fed.R.Civ.P. 8(a)(2) by providing a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest. *See Swierkiewicz v. Sorema,* 534 U.S. 506,511-512 (2002); *Twombly, supra,* 127 S.Ct. at 1973-74 (2007) (reaffirming the vitality of *Swierkiewicz*). Accordingly, in considering a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Swierkiewicz, supra,* 534 U.S. at 514-15.

**B.**  **Defendant CDT's Challenge to Plaintiffs' "Evidence" is Inappropriate on a Motion to Dismiss**

Defendant CDT also argues for dismissal of the Seventh Claim for age discrimination because Defendant CDT perceives that the claim is based solely on a "stray remark" by CDT's Liana Lee. CDT Memorandum at 9. As demonstrated in the immediately preceding discussion, this is simply incorrect. Plaintiffs allege both direct and circumstantial evidence of age discrimination, see *supra*, at 10-11. Moreover, CDT's "stray remark" argument is misplaced and ineffectual as a matter of law.

First, contrary to Defendant CDT's characterization, the Amended Complaint alleges more than Liana Lee's comment as a basis for age discrimination by CDT. *See, e.g.,* Complaint, at ¶185 (DPA Jim Bowers and CDT President, Kim Jaspers' conversations regarding every DPA that specifically included questions regarding the DPAs' ages); and ¶ 178 (CDT has been recruiting and hiring younger collectors with identical qualifications to the DPAs). Notably, CDT does not challenge the allegation that CDT's President affirmatively sought out the ages of the DPAs.

Second, the classification of Ms. Lee's comment as a "stray remark," even if true, does not remove that comment from consideration as evidence of discrimination on a motion to dismiss or at any stage of the litigation. The Court of Appeals for the Second Circuit recently clarified that where it "described remarks as 'stray,' the purpose of doing so was to recognize that all comments pertaining to a protected class are not equally probative of discrimination and to explain in generalized terms why the evidence in the particular case was not sufficient." *Tomassi v. Insignia Financial Group, Inc.,* 478 F.3d 111, 116 (2d Cir. 2007). Further, the Court of Appeals said it "did not mean to suggest that remarks should first be categorized either as stray or not stray and then disregarded if they fall into the stray category." *Id.* Rather, the courts

should consider all alleged discriminatory comments in the context of (1) who made the comment, (2) when the remark was made in relation to the adverse employment action, (3) the content of the remark, and (4) the context in which the remark was made. *Id.*

Moreover, as the Second Circuit has made clear, when adjudicating a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir. 1997). In this case, Defendant CDT is, in fact, challenging the truth, probative value and/or weight of the facts alleged by Plaintiffs.  It would be inappropriate for the Court to entertain Defendant CDT's argument at this point in the litigation where, to do so, would necessitate that the Court engage in a balancing of the significance of various alleged indicia of discrimination. *See Abbasi v. Herzfeld & Rubin, P.C.*, 1995 WL 303603, *4 (S.D.N.Y. 1995) (holding that it would be premature for the court to determine the weight of various indicia of discrimination in the context of a motion to dismiss and, therefore finding that plaintiff stated a claim of age discrimination in violation of the ADEA). Discovery is needed in this case to assess the full extent of the conduct of the NFL, NFLMC and CDT.

For all of these reasons, Defendant CDT's motion to dismiss the ADEA claims lacks merit.

### C.    <u>Only Certain DPAs Allege ADEA Violations</u>

Plaintiffs concur with Defendant CDT's assessment that ADEA claims may not be alleged against CDT by individuals who never applied for employment with CDT.  To this end, only those Plaintiffs who are named in Paragraph 189 of the Amended Complaint assert ADEA claims against Defendant CDT.

PHDATA 3108219_3

For all of these reasons, CDT's motion to dismiss Plaintiffs' ADEA claims should be denied.

## POINT III.

### DEFENDANT CDT IS SUBJECT TO PERSONAL JURISDICTION IN THE FORUM

Defendant CDT concedes that ERISA provides a basis for nationwide service of process. *See* CDT Memorandum, at 10, footnote 4, citing 29 U.S.C. §1132(e)(2). As explained in Point I above, Defendant CDT may properly be held liable for interference under ERISA §510, and Plaintiffs' claim alleging such violations is viable. *See, Point I, supra* at p. 1 - 8. For this reason, Defendant CDT is subject to the jurisdiction of the Court.[8]

However, even if the Court were to dismiss Plaintiffs' ERISA claim against Defendant CDT, Defendant CDT would still be subject to personal jurisdiction in the Southern District of New York on the age discrimination claim. Should the Court have questions about the appropriateness of exercising such jurisdiction, it would be premature for the Court to dismiss Defendant CDT, without first allowing some limited discovery to take place on the personal jurisdiction issues.[9]

### A.    Defendant CDT is "Doing Business" in New York Under CPLR 301

A foreign corporation is amenable to suit in New York courts under N.Y. C.P.L.R. §301 if the corporation has engaged in such a continuous and systematic course of 'doing business' in

---

[8] ERISA provides that process "may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Courts have interpreted this provision for nationwide service to confer jurisdiction over a defendant without regard to state long-arm statutes, so long as the defendant has sufficient minimum contacts with the United States. *See IUE AFL-CIO Pension Fund v. Hermann,* 9 F.3d 1049, 1056 (2d Cir.1993); *I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.,* 986 F.Supp. 816 (S.D.N.Y. 1997); *Trans World Airlines, Inc. v. Sinicropi,* No. 93 CIV. 3094 (CSH), 1994 WL 132233 (S.D.N.Y. Apr. 14, 1994).

[9] *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 208 (2d Cir. 2003); *David Tunick, Inc. v. Kornfeld,* 1993 U.S. Dist. LEXIS 31 (S.D.N.Y. 1993); *BHP Trading, Ltd v. Deep Sea Int'l Shipping Co.,* 1991 U.S. Dist. LEXIS 13220 (S.D.N.Y. 1991).

PHDATA 3108219_3

the New York that a finding of its 'presence' in this jurisdiction is warranted. *Landoil Resources Corp. v Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33 (1990). In determining whether a company is "doing business" in New York, the essential factual inquiry is whether the company has a permanent and continuous presence in this State, as opposed to merely occasional or casual contact with the State. *Id.* at 34.

Defendant CDT, through the Declaration of Kim Jasper, self-servingly characterizes itself as a "small California corporation" employing "less than 25 persons." Jasper Declaration ("Jasper Decl."), ¶¶ 2-3. However, Defendant CDT's use of the term "employs" or "employing" skirts an issue which is at the core of this case, *i.e.*, classification of employees. Although Defendant CDT may classify less than 25 persons on its staff as "employees," the company, in fact, runs a nationwide sports drug testing program, for multiple prominent professional sports, whether through the use of so-called "independent contractors" or other staff.[10] At the time the Amended Complaint was filed, Defendant CDT, in addition to conducting drug testing for the NFL and NFLMC[11], also conducted drug testing for the National Hockey League (NHL).[12] In

---

[10] While Ms. Jasper's affidavit is completely silent about such activities, the Court can, and should, take judicial notice of these activities, which are public, systematic and substantial in scope. Facts properly susceptible to judicial notice are those "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *In re Bennett Funding Group*, Inc. 220 B.R. 743, 767-768 (N.D.N.Y. 1997) In this Circuit, a court can take judicial notice on a motion to dismiss of the existence of publicly-available newspaper or magazine articles and certain widely known adjudicative facts not subject to reasonable dispute. *See* Fed.R.Evid. 201; *Shah v. Meeker*, 435 F.3d 244, 249-50 (2d Cir.2006); *Garber v. Legg Mason, Inc.*, 537 F.Supp.2d 597 (S.D.N.Y. 2008); *Condit v. Dunne*, 317 F.Supp.2d 344, 358 (S.D.N.Y.2004); *Weizmann Inst. of Sci. v. Neschis*, 229 F.Supp.2d 234, 246 (S.D.N.Y.2002); *New Alliance Party v. New York Bd. of Elections*, 861 F.Supp. 282, 290 n. 10 (S.D.N.Y.1994). *In re Take-Two Interactive Securities Litigation*, 551 F.Supp.2d 247, 285, fn. 23 (S.D.N.Y. 2008), citing *In re Alstom SA*, 406 F.Supp.2d 402, 408-09 (S.D.N.Y. 2005) (indicating that court may take judicial notice of newspaper articles for the fact of their publication and for other relevant purposes). Such notice extends to public articles and information published on the internet. *See, e.g., Chhetry v. U.S. Dept. of Justice*, 490 F.3d 196 (2d Cir. 2007)(holding that it was proper to take judicial notice of a Yahoo website); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173, 179 n. 8 (S.D.N.Y.2006).

[11] There are two football clubs in the New York City metropolitan area (the New York Giants and the New York Jets), as well as the Buffalo Bills, located in Buffalo, New York.

*...Continued*

the relevant time period, CDT also conducted drug testing for Major League Baseball (MLB)[13] and, until recently, did the testing for the Ladies Professional Golf Association[14].

Nowhere in the Memorandum or in the Jasper Declaration does Defendant CDT discuss or otherwise address whether it is subject to "general jurisdiction" or "doing business" in the State of New York.  However, in light of the publicly available and widely-known information about CDT, it would certainly appear that its business activities in the forum are continuous and systematic.

**B.    Defendant CDT is Subject to Long-Arm Jurisdiction in New York**

N.Y. C.P.L.R. 302(a)(1) provides for long-arm jurisdiction over a non-resident where a cause of action arises out of the "transaction of any business within the state" or "contract[ing] anywhere to supply . . . services in the state." *See* C.P.L.R. 302(a)(1).  In her declaration, Ms. Jasper concedes that she or other representatives of Defendant CDT met with the NFL on three occasions in New York.  She further states that these were "preliminary meetings," Jasper Decl., ¶5, and avers that "no contracts or agreements were signed at those meetings."  In moving to dismiss Plaintiffs' claims, Defendant CDT concedes, for the sake of argument, that these

---

*Continued from previous page*

[12]Information pertaining to the drug testing program can be found at: http://www.nhlpa.com/PerformanceEnhancing/index.asp.

The NHL has three clubs in the State of New York, the Rangers (in this District); the Islanders and the Buffalo Sabres. The Devils are located in nearby Newark, NJ, but some of the players reside in, and presumably are tested in, the State of New York.

[13]http://www.nytimes.com/2007/10/31/sports/baseball/31testing.html?ex=1351483200&en=46bba8f8b0694ad2&ei=5088&partner=rssnyt&emc=rss.

There are two baseball clubs in the State of New York, the Yankees (in this District) and the Mets.

[14] *See* http://www.golfweek.com/story/kraft-notes-040208. This State is often a prominent venue for Professional Golf tournaments.

PHDATA 3108219_3

activities rise to the level of "transacting business" in the state, but nonetheless argues that there are no allegations in the Complaint that that Defendant CDT's "failure to hire them *arose from* [activities in New York]." Memorandum, at p. 13.[15]

Notably, the Jasper Declaration does not deny that there were discussions between the NFL Defendants and CDT concerning the employment of the DPAs. Nor, does the Jasper Declaration deny that Ms. Jasper engaged in discussions with DPA Jim Bowers concerning the ages of the various DPAs who applied for positions with Defendant CDT. Rather, Defendant CDT's sole argument opposing personal jurisdiction appears to be that, to establish jurisdiction in the forum, any discussions concerning refusal to hire or other discriminatory acts had to

---

[15] Defendant CDT makes a passing effort at claiming that there was no "transaction of business" in New York. *See* Memorandum, at p. 13, fn. 6. Neither of the cases cited by CDT supports this position. *Burrows Paper Corp. v. R.G. Engineering, Inc.*, 363 F.Supp.2d 379, 382-85 (N.D.N.Y. 2005) pertained to a one time discrete sale of a rebuilt press to a New York entity. The press was neither shipped to New York, nor was the defendant required to perform any services in the State of New York. Here, Defendant CDT contracted with a New York entity, the NFL, and performed substantial drug testing services for that entity within the forum.

The decision in *United Computer Capital Corp. v. Secure Prods.*, L.P., 218 F. Supp. 2d 273 (N.D.N.Y. 2002), provides even less support for Defendant CDT's position. *United Computer* involved visits to the forum that were not part of the formation of a business relationship. However, where, as here, the meeting or meetings in the forum are essential to the formation of a business relationship, jurisdiction is present under the "transacting business" portion of CPLR 302. *Kahn Lucas Lancaster, Inc. v. Lark International Ltd.*, 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997).

Generally, the following factors must be considered in determining whether an out-of-state defendant *transacts* business in New York: (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and v) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. *Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).

A full analysis of some of these factors would require limited discovery by the Plaintiffs. Plaintiffs do not possess a copy of any written contract between the NFL Defendants and Defendant CDT. Therefore, Plaintiffs are unaware whether the contracting parties are subject to a forum selection or choice of law provision in favor of this forum. Regardless, it is clear that Defendant CDT had an ongoing relationship with the NFL. The contract at issue, whether preliminarily or not, was admittedly negotiated in New York, and services thereunder were performed in New York, at the very least in connection with New York based teams. Further, CDT's work is obviously subject to some degree of review or supervision by the NFL, which is based in the forum.

PHDATA 3108219_3

physically occur in New York. Defendant CDT has presented no authority in support of this position, and based on Plaintiffs' review of the law, none exists.

To the contrary, it has long been held that CPLR 302 is a "single-act" statute, meaning that a single business transaction in the forum, related to the cause of action, can be sufficient for jurisdictional purposes. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198 (1988). Defendants' execution of the contract in New York is hardly a necessary prerequisite to jurisdiction. Indeed, conduct in the forum preceding, or following, the actual execution of a contract, can confer jurisdiction. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8 (1965). A court may find the transaction of business in the forum even where a contract intending performance and executed elsewhere involves a single, albeit significant, meeting in New York. *See Berk v. Theatre Arts of West Virginia, Inc.*, 157 Misc.2d 696, 598 N.Y.S.2d 418 (N.Y.Cty Civ. Ct., 1993) (finding jurisdiction based on an audition in New York for play in West Virginia, where contract was executed in West Virginia). Indeed, unlike the facts presented here, a defendant may transact business in New York without ever setting foot in the forum. *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 208 N.Y.S.2d 337 (1970). A personal visit by the defendant to the forum is not required for jurisdictional purposes. *L.F. Rothschild, Unterberg, Towbin v. Thompson*, 78 A.D.2d 795, 433 N.Y.S.2d 6 (1st Dept. 1980).

While Plaintiffs do not claim that all alleged wrongful acts occurred in New York, there is no such requirement under the CPLR. Rather, all that is required to confer personal jurisdiction is a "substantial relationship" or sufficient nexus between the cause of action and the New York transaction. For example, in *Scheuer v. Schwartz*, 42 A.D.3d 314, 839 N.Y.S.2d 485 (1st Dept. 2007), a New York domiciliary hired a Pennsylvania attorney to prosecute a claim

against an estate in a probate proceeding in Connecticut. In addition to collecting $425,000 in legal fees for work performed, the attorney allegedly misappropriated a $200,000 "success fee" from the proceeds of the settlement of the probate proceeding. The Pennsylvania attorney billed approximately 70 hours for work performed in New York or about 8 percent of the total billed. The court found that the attorney had repeatedly engaged in "purposeful activities" in New York relating to the Connecticut proceeding. The plaintiff in *Scheuer, supra,* did not claim that the wrongful act complained of, the alleged misappropriation of the "success fee," occurred in New York. For purposes of the New York long-arm statute, it is not the wrongful act or acts that must occur in New York. Rather, there must be a substantial nexus between the transaction of business in New York and the wrong.

Furthermore, courts in the Second Circuit have found that telephone calls and mailings into the forum can confer personal jurisdiction if the defendants conducted these activities in such a manner as to project themselves into New York in order to purposely avail themselves of the benefits of doing business in New York. *See National Telephone Directory Consultants, Inc. v. Bellsouth Advertising*, 25 F.Supp.2d 192, 196 (S.D.N.Y.1998). *See also* U.S. *Commodity Futures Trading v. Amaranth Advisors, L.L.C.*, No. 07 Civ. 6682 (DC), 2008 WL 2123323, *6 (S.D.N.Y. May 21, 2008) (finding that the defendant was subject to personal jurisdiction because he personally placed orders through a New York broker and directed New York traders under his supervision to place orders to trade natural gas futures.); *Credit Suisse Securities (USA) LLC v. Hilliard*, 469 F.Supp.2d 103 (S.D.N.Y. 2007)(holding that while electronic communications, telephone calls or letters, in and of themselves, are generally not enough to establish jurisdiction under New York long-arm statute, they may be sufficient if used by a defendant deliberately to project itself into business transactions occurring within New York state); *International*

19

*Healthcare Exchange, Inc. v. Global Healthcare Exchange,* 470 F.Supp.2d 345 (S.D.N.Y. 2007) (holding that district court had personal jurisdiction in employment discrimination claim where out-of-state defendants communicated with plaintiff in her New York City home from where she worked, giving her allegedly discriminatory work assignments via telephone, e-mail, and fax, and discussions concerning her complaints about her work assignments took place through the same channels.); *Carlson v. Cuevas,* 932 F.Supp. 76, 78 (S.D.N.Y.1996)(holding that if the purpose of telephone calls is for the defendant to actively participate in business in New York, then they alone may support a finding of New York long arm jurisdiction under C.P.L.R. § 302(a)(1)").

In this case, Defendant CDT does not dispute that (1) Defendant CDT engaged in repeated communications in New York for the purpose of negotiating and executing a contract with the New York-based NFL and NFLMC; (2) Defendant CDT telephoned New York resident DPAs to inform them that it was not retaining them, ¶ 192; (3) Defendant CDT engaged in repeated communications with the NFL in New York regarding the employment of the DPAs with Defendant CDT; and (4) the CDT "sports collectors" have performed their work for the NFL, NFLMC and CDT in New York. Based on these facts, there is more than enough evidence before the Court to exercise personal jurisdiction over CDT pursuant to CPLR 302(a)(1). *See ADP Investor Communication Services, Inc. v. In House Attorney Services,* 390 F.Supp.2d 212 (E.D.N.Y. 2005)(holding that a district court in New York had personal jurisdiction over a California corporation and rejecting argument by defendant that telephone calls and emails sent into New York by a non-domiciliary defendant are insufficient to establish jurisdiction), citing *Courtroom Television Network v. Focus Media,* 264 A.D.2d 351, 695 N.Y.S.2d 17 (1st Dep't 1999)(court found personal jurisdiction over a California corporation in a breach of contract suit

PHDATA 3108219_3

even though the parties negotiated the entire contract by telephone and correspondence). *See also United Feature Syndicate, Inc. v. Miller Features Syndicate*, Inc., 216 F.Supp.2d 198 (S.D.N.Y. 2002)(holding that a district court had personal jurisdiction over Canadian officers of a Canadian corporation acting as an agent for a New York company where the officers availed themselves of privilege of conducting activities in New York by negotiating contract in state, by carrying on extensive telephone and mail communications regarding contract, and by remitting money to New York); *Creative Socio-Medics, Corp. v. City of Richmond*, 219 F.Supp.2d 300 (E.D.N.Y. 2002)(holding that Virginia municipality transacted business in New York for purposes of personal jurisdiction, where city solicited bid from a New York resident, maintained contacts with New York via telephone and mail before and after execution of the contract and entered into an ongoing contractual relationship with New York, notwithstanding that the defendant city executed the contract in Virginia and its personnel had little physical presence in New York).

Should the Court have any questions regarding relevant jurisdictional facts that are not in Plaintiffs' possession, limited discovery on the subject should be conducted. See cases cited *supra* at fn. 9.

## POINT IV.
## VENUE IS APPROPRIATE IN THE SOUTHERN DISTRICT OF NEW YORK

### A.    Venue is Proper in the District

Defendant CDT argues that venue is improper in the Southern District of New York (the "District") with respect to CDT. Essentially, CDT asks the Court to sever the Plaintiffs' claims against CDT and transfer them to California. Defendant CDT's position is contrary to the law.

PHDATA 3108219_3

The Plans at issue in Plaintiffs' ERISA claims are administered in District and Plaintiffs allege that the interference with benefits and retaliation occurred here. *See* 29 U.S.C.A. § 1132(e)(2)(providing that where an action relating to the protection of employee benefit rights is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found). Thus venue is proper in the District for Plaintiffs' ERISA claims.

Venue is also proper in the District for Plaintiffs' ADEA claims under the general venue provisions of 28 U.S.C. § 1391, because, according to the allegations in the Amended Complaint, a substantial part of the events or omissions and discriminatory transactions (e.g., the discrimination against the DPAs) giving rise to the claims occurred in the District. *See* 28 U.S.C. § 1391 (which provides, in relevant party that venue is proper where a substantial part of the events or omissions giving rise to the claim occurred.) Indeed, in addition to the Plans, the NFL and NFLMC are also based in this District, and it is hard to contemplate a more appropriate District for this litigation.[16]

### B.   It is Contrary to the Interests of Justice to Sever the Claims Asserted Against Defendant CDT and Transfer Them to California

Defendant CDT alternatively requests that the case against CDT be "severed" and separately transferred to California for adjudication. CDT Memorandum at 17. If the two claims against CDT are severed, this would require two busy federal courts on opposite ends of the

---

[16] CDT's argument regarding venue appears to be that the claims asserted against it do not arise from conduct in this District. As explained above with regards to jurisdiction over Defendant CDT, that is not the case. Defendant CDT's interactions, negotiations, discussions and contract execution with the NFL and/or NFLMC are at the core of this case. All of these activities have a substantial nexus to the forum.

22

country to adjudicate nearly all of the same asimilar issues involving 58 of the 93 plaintiffs. Under these facts, severance is contrary to judicial economy and to the governing law.

Defendant CDT does not claim that there has been a misjoinder of parties, the typical reason to sever under Fed.R.Civ.P. 21. Rather, it seeks have part of the present action severed and transferred pursuant to 28 U.S.C. §1404(a). Under *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir.), *cert. denied*, 488 U.S. 848 (1988), the Court will consider the following factors in assessing severance under Fed.R.Civ.P. 21: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

Applying the factors set forth in *New York, supra*, it is clear that severance and transfer of Plaintiffs' claims against Defendant CDT is improper. The issues in the ERISA and ADEA discrimination and interference claims against CDT are functionally identical to the issues against the NFL Defendants.  Further, because Plaintiffs allege that CDT and the NFL Defendants acted in concert to discriminate against the DPAs and to interfere with their ERISA benefits, these claims will certainly involve overlapping testimony and documentary evidence. *See Bell v. Classic Auto Group, Inc.*, 2005 WL 659196 (S.D.N.Y. 2005)(stating that "[w]hen the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would not ordinarily be consistent with the sound exercise of discretion")(internal citations omitted).  Moreover, because this action alleges nationwide conduct by CDT and the NFL Defendants, it is likely that no matter what the venue, witnesses and documents will have to be brought in from another state.

These facts, taken together with the Plaintiffs' interest in litigating their claims in one action, and the judicial efficiency that is attained by litigating the claims against CDT together with the claims against the other defendants, tilt the balance against severance and transfer. *See Securities and Exchange Com'n v. Thrasher*, 1993 WL 437752 (S.D.N.Y. 1993)(finding that judicial economy, trial efficiency, and consistency of judgments would all be best served if a motion for severance and transfer to the Central District of California was denied).

The cases cited by Defendant CDT in support of its severance application are inapposite. *In re Vitamins Anti-Trust Litigation*, 270 F.Supp.2d 15, 36 (D.D.C. 2003) involved a severance and transfer at the urging of plaintiffs because the transferor Court lacked jurisdiction over the claims. *Apache Prods. Co. v. Employers Ins.*, 154 F.R.D. 650 (S.D. Miss. 1994) is not only distinguishable on the grounds upon which the defendant sought severance and transfer, but also because there, the Court, citing judicial economy concerns, kept the case consolidated for purposes of discovery.

As to Defendant CDT's request for dismissal for convenience of the parties and witnesses, Defendant CDT's argument is plainly inappropriate. 28 U.S.C. 1404(a) permits the Court to transfer any civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." A determination of venue under 28 U.S.C. 1404 lies in the sound discretion of the district court. *See Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert denied*, 440 U.S. 908 (1979); *Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F.Supp. 918, 936 (S.D.N.Y. 1989). The moving party has the burden of establishing the propriety of the transfer by a clear and convincing showing. *See Factors*, 579 F.2d at 218; *Kanbar v. U.S. Healthcare, Inc.*, 715 F.Supp. 602, 604 (S.D.N.Y. 1989).

PHDATA 3108219_3

CDT's arguments fall short of the "clear and convincing" standard. The argument that the presence of (9) plaintiffs in California trumps the (6) plaintiffs in New York borders on frivolous, particularly given the presence and domicile of all of the NFL Defendants, and its numerous witnesses, in New York. Moreover, the supposed "fact" that CDT made a decision in Long Beach, California as to who would replace the DPAs as specimen collectors after April 30, 2007 is not a core issue. The NFL witnesses will need to be deposed, as well, in any severed case, concerning at least the negotiations between CDT and the NFL or NFLMC, the concerted actions in the lead up to the April 30, 2007 effective date of CDT's specimen collection responsibilities, and discussions between CDT and the NFL Defendants regarding the NFL Employee Benefit Plans and/or the ages of the specimen collectors. California is hardly more convenient, or cost-effective, for the NFL/NFLMC witnesses than the Southern District of New York. Plaintiffs agree, at this early juncture, that availability of process in a Federal case is a neutral factor, although it appears likely that there is far more discovery physically located within the State of New York, where the NFL Defendants are, than there is in Long Beach, California. Plaintiffs reject CDT's point that the NFL's proof is immaterial to the claims against CDT, which betrays CDT's fundamental failure to grasp the nature of the claims asserted against it, despite clear pleading by the Plaintiffs. In short, CDT's suggestion that severance, increased costs, multiplicity of actions and risk of inconsistent verdicts serves the interests of justice, is contrary to logic and the law.

PHDATA 3108219_3

## CONCLUSION

For the reasons set forth herein, Defendant CDT's motion to dismiss the Complaint should be denied. The alternative relief sought by Defendant CDT of severance and transfer should also be denied.

Dated:  New York, New York
        July 23, 2008

                                    Respectfully submitted,

                                    SCHNADER HARRISON SEGAL & LEWIS LLP

                                    By: *M. Christine Carty*
                                        M. Christine Carty (MC-1796)
                                        140 Broadway, Suite 3100
                                        New York, NY 10005
                                        (212) 973-8000
                                        *Attorneys for Plaintiffs*

                                    LEVY, TOLMAN & COSTELLO, LLP
                                    Robert J. Costello (RC-8301)
                                    630 Third Avenue
                                    New York, NY 10017
                                    (212) 949-8770
                                    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendant CDT's Motion to Dismiss was served electronically, and via hand delivery, on this 23rd day of July 2008 upon:

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Shepard Goldfein
Jay S. Berke
4 Times Square
New York, NY 10036
(212) 735-3000
*Attorneys for National Football League Defendants*

LITTLER MENDELSON, P.C.
Michael P. Pappas (MP-6716)
885 Third Avenue, 16th Floor
New York, NY 10022
(212) 583-9600
*Attorneys for Defendant CDT, Inc.*

M. Christine Carty