Shepard Goldfein (Shepard.Goldfein@skadden.com)
Jay S. Berke (Jay.Berke@skadden.com)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
*Attorneys for National Football League Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| William E. Richardson, et al., | : | |
| Plaintiffs, | : | 07 Civ. 11632 (MGC) |
| - against - | : | ECF CASE<br>ELECTRONICALLY FILED |
| National Football League, et al., | : | |
| Defendants. | : | |

**NFL DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... iii

POINT I Nothing In Plaintiffs' Opposition Memo Saves The First And Second Claims For Benefits From Dismissal Because Of Fatal Pleading Deficiencies, As Time Barred And For Seeking Unauthorized Remedies ..... 1

A. The First And Second Claims Fail To Plead Eligibility For Benefits Under The Particular Plans At Issue ..... 1

B. The First And Second Claims For Benefits By All But 14 Plaintiffs Should Be Dismissed Because They Are Barred By The Applicable Statute Of Limitations ..... 7

C. Equitable Tolling Is Inapplicable And Cannot Prevent The Statute Of Limitations Bar To The Benefit Claims Of All But 14 Plaintiffs ..... 17

D. Plaintiffs' Claims For Damages And Civil Penalties Under Their First And Second Claims For Benefits Should Be Stricken ..... 21

POINT II Nothing In Plaintiffs' Opposition Memo Saves The Third Claim For Interference With Benefits And The Fourth Claim For Retaliation, From Dismissal ..... 21

A. The Active DPAs Lack Participant Standing To Bring The Third And Fourth Claims In Their Entirety ..... 21

B. The Active DPAs Lack Participant Standing To Bring The Claim For Retaliatory Discharge Under The Third And Fourth Claims ..... 22

C. None of the Active DPAs Are Alleged To Have Exercised An ERISA Protected Right Prior To The October 5, 2006 Decision To Outsource And Terminate The DPAs And Therefore, No Active DPA Has A Cause Of Action For Retaliatory Discharge ..... 23

D. The Interference Claims Of Most Active DPAs Under Section 510 Are Barred By The Applicable Two Year Statute Of Limitations And Because There Can Be No Interference With Nonexistent Rights To Benefits ..... 25

E. The Active DPAs' Section 510 Interference And Retaliation Claims Based on CDT's Alleged Refusal To Rehire Plaintiffs Are Inadequately Pleaded ..... 26

F. Plaintiffs' Claims For Back Wages And Civil Penalties Under Their Third And Fourth Claims Should Be Stricken ..... 28

POINT III Nothing In Plaintiffs' Opposition Memo Saves The Fifth Claim For Alleged Failure To File SPDs With The Department Of Labor From Dismissal ..........30

POINT IV Nothing In Plaintiffs' Opposition Memo Saves The Sixth Claim For Alleged Failure To Furnish Requested Plan Information From Dismissal ..........33

POINT V Nothing In Plaintiffs' Opposition Memo Saves The Seventh Claim For Age Discrimination From Dismissal For Failure To Meet Twombly Pleading Standards ..........34

CONCLUSION ..........36

# TABLE OF AUTHORITIES

## CASES

**Page**

Aetna Life Insurance Co. v. Haworth, 300 U.S. 227 (1937) ....................................................3

Ambris v. Bank of New York, No. 96 Civ. 0061, 1998 WL 702289 (S.D.N.Y., October 7, 1998)....................................................10, 13

Assoko v. City Of New York, 539 F. Supp. 2d 728 (S.D.N.Y. 2008)....................................2, 24

Baldwin County Welcome Center v. Brown, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ....................................................17

Barnett v. IBM Corp., 885 F. Supp 581 (S.D.N.Y. 1995) ....................................................14

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)....................................1, 26, 35

Berry v. Allstate Insurance Co., 252 F. Supp. 2d 336 (E.D. Tex. 2003), aff'd, 84 F. App'x 442 (5th Cir. 2004)....................................................10, 26

Brennan v. Metropolitan Life Insurance Co., 275 F. Supp. 2d 406 (S.D.N.Y. 2003) .................................................... *passim*

Carey v. International Brotherhood of Electric Workers Local 363 Pension Plan, 201 F.3d 44 (2d Cir. 1999).................................................... *passim*

Christian v. Bureau of Prisons, No. 04 Civ. 6526, 2005 WL 2033381 (S.D.N.Y. Aug. 23, 2005) ....................................................3

Coan v. Kaufman, 457 F.3d 250 (2d Cir. 2006) ....................................................21

Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62 (7th Cir. 1996)....................................................16

Downes v. JP Morgan Chase & Co., No. 03 Civ. 8991, 2004 WL 1277991 (S.D.N.Y. June 8, 2004) ....................................................9, 10

Finz v. Schlesinger, 957 F.2d 78 (2d Cir. 1992)....................................12, 16, 19

Firestone Tire & Rubber Company v. Bruch, 489 U.S. 101 (1989) ....................................16, 23

Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002)........................28, 29

Greifenberger v. Hartford Life Insurance Co., 131 F. App'x 756, 759 (2d. Cir 2005).................14

Guilbert v. Gardner, 480 F.3d 140 (2d Cir. 2007) ....................7

Holtz v. Rockerfeller & Co., 258 F.3d 62 (2d Cir. 2001) ....................35

I.V. Services of America, Inc. v. Inn Development & Management, Inc., 182 F.3d 51 (1st Cir. 1999) ....................17, 18

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) ....................26

Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S. Ct. 1716, 44 L. Ed.2d 295 (1975) ....................17

Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588 (2d Cir. 1993) ....................6

Krauss v. Oxford Health Plans, 517 F.3d 614 (2d Cir. 2008) ....................6, 31

Kryzer v. BMC Profit Sharing Plan, No. 01 Civ. 299, 2001 WL 1587177 (D. Minn. Nov. 1, 2001) ....................14

Lee v. Burkhart, 991 F.2d 1004 (2d. Cir. 1993) ....................21

Martin v. Construction Laborer's Pension Trust, 947 F.2d 1381 (9th Cir. 1991) ....................16

Metropolitan Life Insurance Co. v. Glenn, 128 S. Ct. 2343 (2008) ....................6

Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995) ....................3, 4, 5

Mitchell v. Shearson Lehman Brothers, Inc., No. 97 Civ. 0526, 1997 WL 277381 (S.D.N.Y. May 27, 1997) ....................16

Mohasco Corp. v. Silver, 447 U.S. 807, 100 S. Ct. 2486, 65 L. Ed.2d 532 (1980) ....................17

Nahoun v. Employees' Pension Plan of Credit Suisse First Boston, No. 04 Civ. 9221, 2005 WL 1476453 (S.D.N.Y. June 22, 2005) ....................11

North Carolina v. Rice, 404 U.S. 244 (1971) ....................3

Paese v. Hartford Life & Accident Insurance Co., 449 F.3d 435 (2d Cir. 2006) ....................6, 7, 30

Pani v. Empire Blue Cross Blue Shield, 153 F.3d 67 (2d Cir. 1998) ....................31

In re Polaroid ERISA Litigation, 240 F.R.D. 65 (S.D.N.Y. 2006) ....................23

Reid v. Local 966 Pension Fund, No. 03 Civ. 9231, 2004 WL 2072086 (S.D.N.Y. Sept. 15, 2004) .................... *passim*

Sandberg v. KPMG Peat Marwick, L.L.P., 111 F.3d 331 (2d Cir. 1997) ....................................25

Schultz v. Texaco Inc., 127 F. Supp. 2d 443 (S.D.N.Y. 2001)..............................................10, 13

Shore v. PaineWebber Long Term Disability Plan, No. 04-CV-4152, 2007 WL 3047113 (S.D.N.Y Oct. 15, 2007)..........................................................................................5

Sturgis v. Mattel, Inc., 525 F. Supp. 2d 695 (D. N.J. Nov. 29, 2007) ..........................................10

Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318 (2d Cir. 2004) .......................................................................................... *passim*

Wilson v. Garcia, 471 U.S. 261, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985).................................17

## STATUTES

29 U.S.C. § 1132(a)(1)(B) ..........................................................................................1, 3, 11

29 U.S.C. § 1140..........................................................................................................20, 22

Fed. R. Civ. P. 8(a)(2)..........................................................................................................1

Fed. R. Civ. P. 9(b) ..........................................................................................................29

58 Fed. Reg. 49649-53 (Sept. 23, 1993)..........................................................................30

67 Fed. Reg.16822, 16936 (April 8, 2002)......................................................................30

Defendants National Football League (the "NFL"), National Football League Management Council (the "NFLMC"), National Football League Pension Plan (the "NFLPP"), National Football League Capital Accumulation Plan (the "CAP"), National Football League Flex Plan (the "NFL Flex" or "Flex Plan"), National Football League Management Council Pension Plan (the "NFLMCPP"), and NFL Employee Benefit Committee (the "Benefit Committee") (collectively, the "NFL Defendants"), respectfully submit this reply memorandum of law in support of their motion to dismiss the Amended Complaint (the "AC").[1]

**POINT I**

**Nothing In Plaintiffs' Opposition Memo Saves The First And Second Claims For Benefits From Dismissal Because Of Fatal Pleading Deficiencies, As Time Barred And For Seeking Unauthorized Remedies**

**A. The First And Second Claims Fail To Plead Eligibility For Benefits Under The Particular Plans At Issue**

As demonstrated in the NFL Defendants' Moving Memorandum at page 29, Section 502 (a)(1)(B) of ERISA establishes that, to make a claim for benefits, a plaintiff must demonstrate eligibility "under the terms of [the applicable] plan[s]." 29 U.S.C. § 1132(a)(1)(B). In the instant case, the AC makes no mention at all and deliberately hides the fact that the Benefit Committee, i.e. the plan administrator, under the relevant pension, health, and 401(k) plans, determined that, even assuming arguendo each DPA was an employee, he was not eligible under the terms of each particular plan. Under FRCP 8(a)(2) pleading standards, as interpreted by the Supreme Court in Beli Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007), Plaintiffs are

[1] Citations are to the Amended Complaint "AC ¶ _"; to the NFL Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The Amended Complaint (the "NFL Defendants' Moving Memorandum") "MM at _" ; to the Transmittal Declaration of Jay S. Berke in Support of the NFL Defendants' Motion To Dismiss, executed July 9, 2008 "Berke Dec. ¶ _"; to the Plaintiffs' Memorandum Of Law In Opposition To The NFL Defendants' Motion To Dismiss "Pls. Op. Memo at _"; to the Declaration of M. Christine Carty In Support Of Plaintiffs' Memorandum of Law In Opposition To NFL Defendants' Motion To Dismiss "Carty Dec. ¶ _" and to any exhibit thereto "Ex. _".

required to provide the NFL Defendants with "notice" of each Plaintiff's claims for benefits and the factual "grounds upon which [each such claim] rests." By failing to even mention the Benefit Committee's decision and plead eligibility under the terms of the various plans, the AC fails to provide the most basic notice and grounds for its benefit claims and should be dismissed. This is especially true because the "present action is not a class action and individual plaintiffs are not relieved from the pleading requirements necessary to support each of their individual claims." Assoko v. City of N.Y., 539 F. Supp. 2d 728, 737 n.9 (S.D.N.Y. 2008).

Nevertheless, Plaintiffs' Opposition Memorandum states that "Plaintiffs aver generally that they were eligible to participate in the Plans provided by the NFL Defendants." (Pls. Op. Memo at 10.) This is not so. Indeed, this statement is typical of the numerous inaccuracies, mischaracterizations of cited documents and correspondence, and conclusory charges against the NFL Defendants including allegations of blatant violations of laws and regulations requiring summary plan descriptions ("SPDs") to be filed with the United States Department of Labor ("US DOL") which have been off the books for more than a decade and in the absence of an allegation prior to 1997 any DPA asked the US DOL or the NFL Defendants for SPDs.

Plaintiffs assert that Paragraphs 209 and 215 of the AC, cited at page 10 of Plaintiffs Reply Memorandum, allege eligibility for benefits under all the various plans on one basis, i.e. that "[a]s 'employees,' plaintiffs should have been and were eligible to participate in all of the employee pension [and welfare] benefit plans sponsored by the NFL and NFLMC." The AC made this allegation, because, as also alleged in the pleading, at all times pertinent to the Action, the DPAs were classified as independent contractors and therefore ineligible for benefits. (AC ¶¶ 208, 214.) Indeed, a determination by this Court that a DPA was an independent contractor in the instant Action, would defeat his claim for benefits. But the reverse, i.e., a determination

that the DPA was an employee would not entitle any Plaintiff to benefits. As demonstrated by the Benefit Committee's decisions, even if each Plaintiff's employment status is assumed, he is not entitled to benefits, because, as determined by the Benefit Committee, he does not meet the eligibility requirements of each particular plan. (Berke Dec. Exs. 13, 16, 18.) Therefore, both employment status and eligibility under the terms of each plan must be alleged to plead each DPA's claim for benefits here.

Under these standards, the AC should be dismissed because it seeks only an advisory opinion from the Court, on an issue – employment status – that, if determined in favor of each Plaintiff, would not entitle him to specific relief, i.e. benefits under each plan. This Court has no "power to render [such an] advisory opinion[]." Christian v. Bureau of Prisons, No. 04 Civ. 6526, 2005 WL 2033381, at *2 (S.D.N.Y. Aug. 23, 2005). A Federal Court cannot "'decide questions'" which do not constitute "'a real and substantial controversy admitting of specific relief through a decree of a conclusive character.'" Id. quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971), quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937). Indeed, as set forth below, in the event the Court reversed the decisions of the Benefit Committee, it would be required to remand the independent contractor/employee question to the Benefit Committee for its determination in the first instance. See Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (affirming district court's finding that "Fund's decision [denying benefits] was arbitrary and capricious" but instructing district court that "the case be returned to the Fund for reconsideration").

Plaintiffs cannot avoid dismissal by arguing that the NFL Defendants are on notice, through the administrative record and documents integral to the AC, that each Plaintiff, who alleged himself to have been an employee also contends that he meets each plan's eligibility

requirements. (See Pl. Op. Memo at 10.) The only possible reading of this AC, is that Plaintiffs' have alleged that the eligibility requirements and the Benefit Committee's interpretation of the plans are irrelevant, a nullity, and to be ignored and denied as though they never existed. The AC not only takes pains to hide the eligibility requirements and the Benefit Committee decisions, but, as demonstrated by Points III and IV herein, the AC sets forth specious claims for estoppel aimed at relieving Plaintiffs from meeting the eligibility requirements by preventing the NFL Defendants from raising them. Not surprisingly, Plaintiffs fail to cite even one case holding that estoppel principles relieve Plaintiffs of pleading or establishing the bedrock statutory requirement of ERISA, that on a claim for benefits, a plaintiff must demonstrate eligibility "to recover benefits dues to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs cannot amend this requirement for establishing a claim for benefits out of the statute through their invalid claims for estoppel.

Moreover, the AC as currently pleaded offends the order of issues and the manner in which a properly pleaded case for benefits under ERISA is to proceed. Under the correct procedure, a court should first review the bases on which the plan administrator has denied benefits. Whereas here, it is undisputed that the plans vest discretion in the Benefit Committee to interpret plan provisions (Berke Dec. Exs. 13, 16, 18), if the court, after such review, sets aside the bases for the plan administrator's denial, it ordinarily remands to the plan administrator for reconsideration of the claim, or for resolution of any additional issues of eligibility necessary to the plaintiff's entitlement to benefits which have not yet been decided by the administrative process. See Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (affirming district court's finding that "Fund's decision [denying benefits] was arbitrary and capricious" but instructing district court that "the case be returned to the Fund for reconsideration"). For

example, in Shore v. PaineWebber Long Term Disability Plan, No. 04-CV-4152, 2007 WL 3047113, at *14 (S.D.N.Y Oct. 15, 2007), the court reversed the plan administrator's denial of disability benefits because the plan administrator had "arbitrarily and improperly defined Plaintiff's 'regular occupation.'" The court in Shore then remanded the benefit claim to the plan administrator which had "not fully considered whether Plaintiff was disabled from her 'regular occupation' as that the term [was properly] defined." Id.

In the instant case, the Benefit Committee reserved decision on the highly factual, time consuming and expensive issue of determining each Plaintiff's status as an employee or independent contractor, and instead exercised its discretion to initially consider the eligibility requirements of each particular plan. (Berke Dec. Exs. 13, 16, 18.) That consideration resulted in denial of benefits to the DPAs without a determination of the employee/independent contractor status issue. Id. Had the AC been properly pleaded, the extent, if any, to which Plaintiffs' disagreed with the Benefit Committee's determinations would have been revealed, and the NFL Defendants could then have responded in their Answer or in motion practice. Once issue on such matters was joined, this Court would first review the Benefit Committee's ineligibility determinations and denials, and affirm or reverse them. An affirmance would result in dismissal of the benefit claims. In the event such determinations were set aside, the Court would ordinarily remand to the Benefit Committee to decide the issues of whether each DPA was an employee. See Miller, 72 F.3d 1066, at 1072; Shore, 2007 WL 3047113, at *14. Such a procedure is exactly what is contemplated by the "important policy goals" of the "exhaustion requirement under ERISA" which are:

> [to] uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; [to] provide a sufficiently clear record of administrative action if litigation should ensue; ... [to] assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and

> capricious standard, not de novo[;] ... to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.

Paese v. Hartford Life & Accident Insurance Co., 449 F.3d 435, 445 (2d Cir. 2006), quoting Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993).

In light of these procedures and goals, Plaintiffs Opposition Memorandum makes absolutely no sense when it contends that the NFL Defendants have not "argued that Plaintiffs failed to exhaust administrative remedies," which Plaintiffs somehow reason "emphasizes the hollowness of the 'lack of notice' argument." (Pl. Op. Memo at 10.) Administrative remedies have been exhausted at the present time because Plaintiffs pursued them through initial decisions and a ruling on appeal by the Benefit Committee denying benefits under each plan. However, had the AC been properly pleaded, the case would have been revealed as one for judicial review of an administrative determination, not as a litigation proceeding from its inception as though the plan administrator had never made a decision.[2] Moreover, in such eventuality, the role of the

[2] Plaintiffs' Opposition Memorandum continues to press the invalid argument that, because the AC alleges that the Benefit Committee's decisions were untimely, they are automatically without consequence and Plaintiffs' benefit claims are to be "deemed denied," without further consideration by the Court of the plan administrator's decisions in this litigation. (Pl. Op. Memo at 12.) Indeed, the AC's repeated use of the phrase "deemed denied," is but another instance of the pleadings' reliance on outmoded regulations, which, in this instance, further explains why the pleadings incorrectly failed to address the plan administrator's decisions. (AC ¶¶ 204, 211, 217.) Krauss v. Oxford Health Plans, 517 F.3d 614, 631 (2d Cir. 2008), establishes that the concept of "deemed denial" had been amended out of ERISA's regulations, and therefore, on the present state of the law, the only consequence of untimely administrative decisions – and it is the NFL Defendants' position that the Benefit Committee decisions in the instant case were timely – is that such untimeliness will not support dismissal of a court action for failure to exhaust administrative remedies. However, as the Supreme Court's recent decision in Metropolitan Life Insurance Co. v. Glenn, 128 S. Ct. 2343 (2008), made clear, even when the benefit administrator is operating under conflict of interest circumstances, it does not alter the nature of an ERISA benefit claim proceeding in court where, as here, the plans confer upon the administrator discretionary authority to determine eligibility for benefits. (Berke Dec. Exs. 13, 16, 18.) Under Glenn, such a proceeding remains one for review of the administrator's decision under a "deferential standard," although the conflict of interest is "weighed as a factor in determining whether there is an abuse of discretion." Id. at 2348.

plan administrator could come back into play on remand, if necessary.[3]

But the AC has not been properly pleaded and does not present any, much less adequate, notice of which, if any, particular eligibility issues are to be litigated in this matter. Instead, the AC is pleaded to block any notice or grounds relating to these eligibility issues, or relating to whether and to what extent Plaintiffs in this Action are challenging the merits of the Benefit Committee determinations thereon. Instead, the AC's alleged claims for benefits plead no more than attempts to obtain an advisory opinion on the employee/independent contractor issue, which is not cognizable by this Court and therefore such claims should be dismissed.

**B. The First And Second Claims For Benefits By All But 14 Plaintiffs Should Be Dismissed Because They Are Barred By The Applicable Statute Of Limitations**

As demonstrated in the NFL Defendants' Moving Memorandum at page 33, the six-year state statute of limitations applicable to the First and Second Claims bars those claims for benefits under ERISA except for the 14 Plaintiffs engaged as DPAs within 6 years of the December 28, 2007 filing of the Complaint. See Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir. 2007) (applying 6-year New York statute for breach of contract to ERISA benefit claims). All Plaintiffs who functioned as DPAs prior to December 28, 2001, based on knowledge they had prior to that date, as admitted in the allegations of the AC, had "discover[ed], or with reasonable diligence should [have] discover[ed], the injury that gives rise to [the benefit] claim[s]" here, to wit, that the DPAs were being treated as independent contractors, not employees, and on that basis, were being denied participation in and benefits under the NFL and NFLMC pension and welfare plans. Carey v. Int'l Broth. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 48

[3] In any event, failure to exhaust administrative remedies under ERISA is an affirmative defense, still available to the NFL Defendants in their answer to a proper pleading, if necessary to preserve the potential for remand to the Benefit Committee, on the issue of employee/independent contractor status, which eventuality might never occur. Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 446 (2d Cir. 2006).

(2d Cir. 1999).

For example, the AC alleges that, [a]t all times pertinent, the NFL and/or NFLMC failed to pay the Federal Insurance Contributions Act taxes ("FICA") and Federal Unemployment Act Taxes ("FUTA") [and] did not withhold Federal Income Tax from DPA wages nor did it report their compensation on Form W-2." (AC ¶¶ 154, 155) (emphasis added). It is further alleged that, "Warren Welsh...who served from 1996 to 2007 as a liaison and supervisor between the NFLMC and the DPAs [and f]rom 1988 to 1996 [as] Director of Security for the NFL and as such was...in charge of certain aspects of the drug program[,] 'retired' as Director of Security for the NFL [in 1996], but kept his responsibilities supervising the drug program collection process and acting as a drug collector." (AC ¶ 158.) In 1997, Mr. Welsh allegedly made statements to the group of DPAs at a meeting, referring to himself as an "independent contractor...just like you." (AC ¶ 165) (emphasis added). The AC then comes right out and admits that, as a consequence of these statements, "plaintiffs...believ[ed] that they were not NFL and/or NFLMC 'employees' and, therefore, not entitled to employee pension [and welfare] benefits." (AC ¶¶ 208, 214) (emphasis added). All of the Plaintiffs allegedly possessed this knowledge and belief, and the AC specifically identifies 14 DPAs who apparently left the Drug Program prior to December 28, 2001 (the first date within the 6-year statute of limitations period), without ever participating in the plans or receiving pension, health or 401(k) benefits. (Berke Dec. Ex. 21; AC ¶¶ 68, 72, 75, 76, 79, 82, 84, 85, 88, 90, 91, 93, 95, 100.) One of these Plaintiffs, John Cody, allegedly left the Drug Program in 1993 and another, Charles Monroe, allegedly left in 1997, with this knowledge and belief, although apparently not based on Mr. Welsh's alleged 1997 statements. (AC ¶¶ 72, 91.)

Against such alleged facts, Plaintiffs' Opposition Memorandum fails to demonstrate any valid basis for avoidance of the 6-year time bar which should be applied to dismiss the benefit claims of the 79 Plaintiffs, all of whom worked as DPAs for substantial periods of time prior to December 28, 2001, knowing they were being treated as independent contractors who were not eligible to participate in any pension or welfare program. (Berke Dec. Exs. 20, 21.) Plaintiffs' arguments in opposition to the statute of limitation are invalid for, at least, the following reasons.

First, Plaintiffs argue that "the bare act of hiring" them as independent contractors does not, at that point, amount to "a clear repudiation of their right to pension and welfare benefits." (Pl. Op. Memo at 15.) Application of the statute of limitations from date of hire is the fault of the AC, the only fair reading of which, as explained above, is that Plaintiffs were aware of their independent contractor status and ineligibility to participate in the benefit plans at all pertinent times. But, this Court need not be concerned with the necessity of barring these claims from date of retention, because all of the 79 Plaintiffs subject to time barred claims worked as DPAs for substantial periods of time prior to December 28, 2001, knowing they were being treated as independent contractors who were not eligible to participate in any pension or welfare program. (Berke Dec. Exs. 20, 21.) Indeed, the starting dates as DPAs for this group of 79 go back as far as 1988. (Id.) Moreover, the AC imputes knowledge to the entire group based on Mr. Welsh's statements in 1997, well before the December 28, 2001 statute of limitations cut-off date. Under such circumstances, the case law is unified in applying the statue of limitations to bar such benefit claims. See, e.g., Brennan v. Metropolitan Life Ins. Co., 275 F. Supp. 2d 406, 410 (S.D.N.Y. 2003) ("plaintiffs knew from their first day of work that they were working as freelancers and would not be entitled to benefits"); Downes v. JP Morgan Chase & Co., No. 03 Civ. 8991, 2004 WL 1277991, at *4 (S.D.N.Y. June 8, 2004) (ineligibility for benefits "would

have soon, if not immediately, been apparent"); Berry v. Allstate Ins. Co., 252 F. Supp. 2d 336, 343 (E.D. Tex. 2003), aff'd, 84 F. App'x 442 (5th Cir. 2004) ("the date of accrual would be at or near the date [plaintiffs] were hired").

Second, Plaintiffs incorrectly seek to distinguish the consistent line of cases cited by the NFL Defendants to support application of the statute of limitations allegedly on the ground that Brennan v. Metropolitan Life Insurance Co., "was predicated on an express clause in an independent contractor agreement repudiating benefits," and, "every case cited by the NFL Defendants to support their argument [similarly] involved a writing, the exception of Downes." (Pl. Op. Memo at 16, 18.) Plaintiffs are wrong and misleading. In three of the cases, Ambris v. Bank of New York, No. 96 Civ. 0061, 1998 WL 702289 (S.D.N.Y., October 7, 1998), Schultz v. Texaco Inc., 127 F. Supp. 2d 443 (S.D.N.Y. 2001), and Downes, there was no writing. In a fourth case, Sturgis v. Mattel, Inc., 525 F. Supp. 2d 695, 703 (D. N.J. Nov. 29, 2007), the court accrued the plaintiff's benefit claim under the statute of limitations from 1997, the time Ms. Sturgis was retained, based on her understanding, at that time, that she was, from the beginning, an independent contractor without benefit status. The only contract in Sturgis, which first codified that status, was not executed until 2003. Id. at 702. Clearly, the line of cases cited in Brennan v. Metropolitan Life Insurance Co., do not turn on the need for a contract or other writing repudiating benefits. Rather, these cases are "consistent with" the "knew or should have known" discovery of injury rule enunciated by the Second Circuit in Carey. 201 F.3d at 48. The gravamen of all these cases is that the Carey discovery rule, when applied in a case involving causes of action for ERISA benefits due to alleged misclassification as an independent contractor is that accrual for statute of limitations purposes is based on "reality." Downes, 2004 WL 1277991, at *4. As aptly articulated by Downes, it "blinks reality" to assert that a plaintiff

remained unaware of the injury underlying a claim for benefits under ERISA when, upon hire and in periods of close proximity thereafter, the individual receives no employee benefits and is aware of her status as an independent contractor. Id.

Third, unable to distinguish the cases cited by the NFL Defendants, Plaintiffs argue that the instant case should be controlled by Nahoun v. Employees' Pension Plan of Credit Suisse First Boston, No. 04 Civ. 9221, 2005 WL 1476453 (S.D.N.Y. June 22, 2005), in which the court declined to accrue the statute of limitations against the plaintiff on a pension claim based on the employer's treatment of the plaintiff during the claimant's employment period. (Pl. Op. Memo at 20.) Nahoun has nothing to do with the instant case. In Nahoun, the plaintiff argued not that he had been informed from the start that he was an independent contractor ineligible for benefits, but rather that the employer's treatment of him from the start led him to believe all along that he was an employee eligible for benefits. "Nahoun allege[d] that he always has been a 'Plan Participant,' not that he had been wrongly classified." Id. at *3. Obviously, in Nahoun, there would be no claim accrual from time of hire, because, accepting Mr. Nahoun's allegations, there was no knowledge of injury during the employment. By contrast, in the instant case, none of the Plaintiffs ever believed he was an employee or eligible for benefits, rather the AC alleges that all knew and believed the opposite: that they were being treated as independent contractors and therefore believed they were ineligible for benefits from the beginning of their engagement as DPAs. (AC ¶¶ 209, 215.)

Equally incorrect is Plaintiffs' contention that the NFL Defendants' conduct is more egregious than the employer in Nahoun because the plaintiff in Nahoun was furnished with an SPD of the pension plan. (Pl. Op. Memo at 20.) But, in Nahoun, the employer's provision of the SPD to the plaintiff during employment contributed to misleading Mr. Nahoun into believing he

was eligible for benefits. In the instant case, the DPAs were never furnished with SPDs consistent with their treatment as independent contractors ineligible for benefits. This is another element which should have put Plaintiffs on knowledge of their claim for statute of limitations accrual purposes. As a general matter, the NFL Defendants were under no obligation to distribute plan information to the Plaintiffs. An individual may be a "'potential plan participant,' i.e. an individual...whose coverage is in doubt," but any obligation to furnish plan information to such a person is "triggered" by his request to the plan. Reid v. Local 966 Pension Fund, No. 03 Civ. 9231, 2004 WL 2072086, at *4 (S.D.N.Y. Sept. 15, 2004), citing Finz v. Schlesinger, 957 F.2d 78, 82 (2d Cir. 1992).[4]

Fourth, the Plaintiffs' Opposition Memorandum erroneously argues that claim accrual only occurs if the plan administrator, not the employer, repudiates eligibility for benefits. This argument runs directly against Carey, which, while speaking in terms of a "clear repudiation by the plan," 201 F.3d at 48, did so because, under the facts of that case, the plaintiff was a plan participant who had acquired retirement benefits and was questioning the loss of such benefits under plan rules. The entirety of his dealings were with the plan, not his employer. By contrast, in the ordinary circumstances of an alleged independent contractor misclassification matter, the plaintiff knows he is not participating in the plan and is made aware of the injury underlying his claim because the employer does not treat him as an employee eligible to participate in or receive

[4] In the instant case, only one Plaintiff, Mr. Pallatroni (who became a DPA as far back as 1988), made a request through counsel for plan information on March 15, 2005, and, by that date, he had long ago failed the "colorable claim requirement" for participant standing, because his claim was barred by the statute of limitations. See Brennan v. Metro. Life Ins. Co., 275 F. Supp. 2d 406, 411 (S.D.N.Y. 2003) (time barred claimant lacks participant standing). Nevertheless, this request was timely honored. (Berke Dec. Ex. 3.) A request for plan information by a larger group of Plaintiffs was made through counsel on December 7, 2007, and honored in full on December 18, 2007, well within the 30 day period for responding under 29 U.S.C. § 1132(c). In any event, the AC, on behalf of these requestors was filed on December 28, 2007, prior to the expiration of the statutory 30-day period for furnishing information and therefore any issue of alleged failure to furnish information is irrelevant to application of the statute of limitations to Plaintiffs' benefit claims.

benefits under the plan. Thus, as the court recognized in Ambris v. Bank of New York, No. 96 Civ. 0061 LAP, 1998 WL 702289, at *7 (S.D.N.Y. Oct. 7, 1998):

> Plaintiff's...argument-that ...a representation by a supervisory employee not involved in the administration of the plan would clearly not be sufficient to trigger the running of the limitations period-is...misleading. True enough, the [original] standard refers to repudiation by a fiduciary, but there is no indication...that a plaintiff's general understanding that she is not eligible for benefits is somehow insufficient...because it did not come directly from a fiduciary.

Indeed, in Ambris, knowledge of the injury triggering accrual of the benefit claim was based on plaintiff's ineligibility for plan benefits which she admitted under oath at deposition was "common knowledge" in the workplace. Id. As emphasized in Schultz, 127 F. Supp. 2d at 448, it is knowledge of "injury" which triggers accrual. Thus, Schultz concluded that, when the employer (not the plan) removed plaintiffs from its payroll and placed them on the payroll of various temporary employment agencies, plaintiffs "knew they would not be eligible" and would not "receive benefits from...the Plans" and thereby "suffered the injury which forms the basis of their denial of benefits claim." Id. Moreover, Carey makes clear that a claim accrues upon knowledge of injury, not at some later period chosen by a claimant, long-aware of such injury, but who, by intent or lack of "reasonable diligence," delays filing a claim for benefits with the plan. Carey, 201 F.3d at 48. Any other rule "would lead to the illogical result that no claim under [ERISA] could ever be time-barred." Shultz, 127 F. Supp. 2d 443, 447 (rejecting a continuing violation theory to toll the statute of limitations for a Section 510 breach of fiduciary duty claim under ERISA based on denial of benefits to a misclassified independent contractor).

Indeed, Plaintiffs' Opposition Memo admits that, in a misclassification case, like the instant one, actual or constructive knowledge of injury need not come from the plan or its fiduciaries to trigger accrual of the statute of limitations on a benefit claim. Plaintiffs admit that

notice by the employer triggers accrual. For example, Plaintiffs argue that: "[o]f course, providing such an agreement [between the NFLMC, the alleged employer here, and the DPAs] with the explicit notice language sufficient to constitute repudiation, as in Brennan," would have been a sufficient repudiation by the plan to trigger the statute of limitations. (Pl. Op. Memo at 19 n.12.) Such a contract with the employer advocated by plaintiffs would represent repudiation by the employer. Thus, Plaintiffs admit that notice from the employer is sufficient to impute repudiation by the plan. See Kryzer v. BMC Profit Sharing Plan, No. 01 Civ 299, 2001 WL 1587177, at *4 (D. Minn. Nov. 1, 2001) (upon signing independent contractor agreement with employer, plaintiff "should have known that at that time, the Plan would repudiate any and all claims he would make for benefits"). The allegations of the AC itself equate statements or positions by the NFL or the NFLMC with those of the plan administrator. (See AC ¶ 199 ("No NFL or NFLMC fiduciary or Plan Administrator will find that DPAs are employees of the NFL and/or NFLMC in the face of the position advocated by the NFL or NFLMC....").) Given these allegations, these Plaintiffs cannot be heard to argue lack of claim accrual based on their clear understanding, at all times pertinent to the action, that any entitlement they claim to benefits was long ago repudiated.[5]

---

[5] It should be emphasized that such repudiation based on the NFL's treatment of the DPAs as independent contractors, while triggering the statute of limitations, does not mean that the outcome of plaintiffs filed claims was predetermined or that pursuit of administrative remedies were ever futile here, as they were not. The standard for claim accrual under the statute of limitations is not the same as the standard for futility. Indeed, in Carey v. International Brotherhood of Electric Workers Local 363 Pension Plan, 201 F.3d 44 (2d Cir. 1999), the court found claim accrual based on positions enunciated by the plan prior to the filing of a formal claim by plaintiff. This did not render the processing of Mr. Carey's claim by the plan administrator futile. See Barnett v. Int'l Bus. Mach. Corp., 885 F. Supp 581, 589 (S.D.N.Y. 1995) (no futility of pursuing claims procedure even where "informal representations of the view of a committee" against the claim have been communicated to plaintiff); Greifenberger v. Hartford Life Ins. Co., 131 F. App'x 756, 759 (2d. Cir 2005) ("initial...denial of...benefits claim... insufficient to establish futility"). Accordingly, Plaintiffs Opposition Memorandum is grossly in error when it contends that Dennis Curran, Senior Vice President and General Counsel of the NFL, "represented that no repudiation of benefits had yet been made for any DPA," thereby supposedly restoring timeliness of Plaintiffs' barred claims, when Mr. Curran expressed in his letter of April 27, 2006, a good faith willingness to "provide further assistance in this process of determining your clients' rights under the Plans."

*(cont'd)*

Fifth, Plaintiffs incorrectly rely on Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318 (2d Cir. 2004), for the proposition that developing law suggests that claim accrual under ERISA does not occur until a formal claim for benefits is filed by a participant. Of course, this would effectively reverse the Second Circuit's decision in Carey, which held otherwise. Carey, 201 F.3d at 49 (accrual occurs pursuant to a "known or should be known" standard "regardless of whether the plaintiff has filed a formal application for benefits"). Also, Veltri was not an accrual case, but rather involved the issue of whether equitable tolling applied on an accrued claim which had been filed with the plan administrator. Veltri, 393 F.3d at 325. In the course of formally denying the claim, the fiduciary failed to notify the claimant in writing that he had a "right to file an administrative appeal" from the denial, and to "file an action challenging that determination in court." Id. at 323. In Veltri, this violation of a specific notice regulation defining the fiduciary's obligation to a diligent participant who has not slept on his rights and has filed a claim for benefits, which has been formally denied by a deficient writing in violation of regulations, by the plan administrator, was held grounds for equitable tolling of the statute of limitations. These circumstances are clearly not presented here.

Indeed, most significantly, Veltri is distinguishable from the instant case because it dealt with a claimant who was actively participating in the plan and diligent in pursuing his claim. By contrast, the instant case and the Brennan v. Metropolitan Life Insurance Co. line of consistent and well reasoned cases deal with the issue of when a claim accrues in an independent contractor

*(cont'd from previous page)*

(Pl. Op. Memo at 16.) This statement is no more than commendable courtesy and recognition that any process before the Benefit Committee should and will be taken seriously and is not futile. Mr. Curran's and Mr. Lamade's similar letters relating to the Benefit Committee's process are therefore utterly irrelevant to the issue of accrual under the statute of limitations. (Id. at 16-17.)

misclassification case, a far different setting than in Veltri.[6] Unlike in Veltri, the DPAs knew or should have known they had a claim and sat on it for years, some for as long as 19 years. (Berke Dec. Exs. 20, 21.) Unlike Veltri, the DPAs were not individuals who were participating in the plan when they acquired knowledge of their claims. As recognized by the Supreme Court, only once an individual actually makes a claim for benefits, might he become a "participant" under ERISA. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) ("'participant'" is not "any person who claims to be one" but only person making a "colorable claim"). Indeed, as similarly recognized by Finz, 957 F.2d at 82 and Reid, 2004 WL 2072086, at *4, "an individual...whose coverage is in doubt," is not a plan "participant," but, at most, is a "'potential plan participant.'" To the extent such an individual has rights to protections under ERISA regulations, such as the notice regulation construed in Veltri, those rights are "triggered" only when the individual exercises diligence and comes forward to assert his claim. Such a "potential plan participant," who knew or should have known that he was being treated as ineligible for benefits because he was not an employee, is obviously subject to the injury discovery rule applied by the Brennan v. Metropolitan Life Insurance Co. line of cases; any other result means that there would never be a statute of limitations in such circumstances. Moreover, no misclassified independent contractor is unfairly prejudiced by this rule because the potential for equitable tolling exists if, it is warranted by law, and it clearly is not warranted in the instant case. See Point I.C. below.

---

6 Like Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318 (2d Cir. 2004), the decisions in Mitchell v. Shearson Lehman Brothers, Inc., No. 97 Civ. 0526, 1997 WL 277381 (S.D.N.Y. May 27, 1997), Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 67 (7th Cir. 1996), and Martin v. Construction Laborer's Pension Trust, 947 F.2d 1381, 1386 (9th Cir. 1991), cited by Plaintiffs Opposition Memo at 18, all deal with active participants in the plan who have diligently approached the plan administrator to assert rights. None of these cases is an independent contractor misclassification case, where plaintiffs have slept on their rights despite discovery of the injury underlying their claim.

This is the essence of a functioning statute of limitations. Claim accrual deals with the Plaintiffs' responsibilities of diligence upon discovery. Equitable tolling deals with whether the NFL Defendants' actions actually prevented the Plaintiffs' diligent pursuit of their claims. As the Second Circuit recognized in Carey, 201 F.3d at 47:

> As the Supreme Court has noted, the length of a limitation period for instituting suit in federal court "inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64, 95 S. Ct. 1716, 44 L.Ed.2d 295 (1975). Statutes of limitation serve several important policies, including rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses. See, e.g., Wilson v. Garcia, 471 U.S. 261, 271, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). For these reasons, statutes of limitation "are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152, 104 S. Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam). Indeed, strict adherence to limitation periods "is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S. Ct. 2486, 65 L.Ed.2d 532 (1980).

Consistent with these principles, Veltri conceded that it would not have applied equitable estoppel pursuant to the notice regulation, if the claimant knew of his rights to go to court. Thus, Veltri recognized that even where a defendant is in breach of a regulatory notice requirement, plaintiffs will not be rescued and relieved from their responsibilities under claim accrual, where, as here, "plaintiffs had actual knowledge that a cause of action had accrued...years before they filed their lawsuit." 393 F.3d at 326 (specifically approving the approach of the First Circuit Court of Appeals in I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt. Inc., 182 F.3d 51 (1st Cir. 1999)).

**C. Equitable Tolling Is Inapplicable And Cannot Prevent The Statute Of Limitations Bar To The Benefit Claims Of All But 14 Plaintiffs**

For reasons just discussed in Point I.B. above, Plaintiffs' Opposition Memorandum is wrong in its contention that, based on Veltri, "the Court of Appeals for the Second Circuit

equitably tolls in circumstances like those presented in this case." (Pl. Op. Memo at 22.)  Veltri

not only involved distinguishable circumstances from the instant case, but the decision also made

clear that, in applying equitable tolling due to the plan administrator's failure to notify the

claimant of his right to pursue a court action, such equitable tolling should not be afforded where,

"for example, a plaintiff who has actual knowledge of the right to bring a judicial action

challenging the denial of her benefits." 393 F.3d at 326.  Plaintiffs, such as those in the instant

case, who have knowledge of their claim "may not rely on equitable tolling notwithstanding

inadequate notice from [the] pension plan."  Id.  Adopting I.V. Services of America, Inc., 182

F.3d at 57, the Second Circuit in Veltri made clear that plaintiffs such as the DPAs, cannot claim

equitable tolling where they had "actual knowledge that a cause of action had accrued" for years

before the Complaint was filed on December 28, 2007. 393 F.3d at 326.  Here, the AC alleges

the NFL Defendants did not make employee related tax deductions or withholdings from each

DPA's compensation, and the AC specifically alleges that at all times the DPAs knew they were

being treated as independent contractors and that they were ineligible for pension and welfare

benefits.  (AC ¶¶ 154, 155, 208, 214.)  Thus, as explained in the NFL Defendant's moving

Memorandum, at pages 36-37, the Plaintiffs had actual knowledge of their claims and the injury

upon which the claims are based.

Moreover, as the NFL Defendants have explained in Point I.B. above, neither the AC nor

Plaintiffs' Opposition Memorandum set forth any viable basis for violation of an ERISA notice

regulation to support equitable tolling here, much less that Plaintiffs' claim accrual was effected

by any such failing. As set forth in Point III below, the AC contains no claim – and cannot make

any claim – that the NFL Defendants failed to comply with filings requirements with the US

DOL prior to 1997 amendments to ERISA eliminating such requirements.  Any such alleged

failure is irrelevant to support equitable estoppel here. It has not been nor can it be alleged that any Plaintiff DPA ever sought access to government records which would, or should, have contained SPDs filed by the NFL Defendants.

Similarly, these Plaintiffs remained silent for years, and rights to regulatory notice, if any, never arose before such "potential plan participants...triggered" such rights by coming forward to request information. Reid, 2004 WL 2072086, at *4. The right of a potential participant is not that of a participant under ERISA. Indeed, while they may be permitted to make a claim for plan information, if they request it, the right to do so is based on "a general fiduciary obligation," not as a "participant" under ERISA. Finz, 957 F.2d at 82 ("Although ERISA does not speak to this issue directly, we believe that plan trustees have a general obligation to provide potential plan participants who request plan descriptions with adequate information about the plan.") Here, the rights of Mr. Pallatroni were long barred by the statute of limitations when he was the lone DPA requesting information on March 15, 2007. And all but 14 of the Plaintiffs' rights to file were already barred by December 10, 2007, when a request for information by a greater number, though not all, of the Plaintiffs was made. Both of these requests were timely and fully honored, but even if that were not the case, it would be irrelevant to equitable estoppel, because the Plaintiffs were knowledgeable enough for some of them to file Form SS-8 claims a year earlier in February 2006. Indeed, by letter dated February 7, 2006, attorney Costello on behalf of two DPAs (Pallatroni and Taylor) threatened the NFLMC with pursuing tax claims unless they were given plan benefits. (Berke Dec. Ex. 1.) Plaintiffs have utterly failed to explain why they could not have filed SS-8 claims or their ERISA claims years earlier and within the limitations period.[7]

---

[7]  Plaintiffs contend that, because Form SS-8 proceedings were first commenced by a few DPAs in February 26, 2006, well within the statute of limitations, Plaintiffs' arguments against claim accrual and in favor of equitable estoppel should not be discredited. (Pl. Op. Memo at 22.) Plaintiffs miss the point. The AC is indisputable, *(cont'd)*

The AC also alleges that in June and July, 2007, well before the December 7, 2007 request for information, Plaintiffs knew they could take their ERISA claims to court, allegedly due to futility, but they did not do so at that time.  (AC ¶¶ 201-05.)  Therefore, no prejudice conceivably resulted to Plaintiffs from any alleged deficiency in the plans' response to Plaintiffs' December 7, 2007 request.  On their own accord, Plaintiffs apparently chose to delay filing the instant action for ERISA benefits past June and July 2007 so they could add weight to their already time barred ERISA claims by combining them with alleged age discrimination claims. (AC ¶¶ 259-60.)  Administrative remedies under the Age Discrimination in Employment Act were commenced by Plaintiffs belatedly through charges filed with the United Stated Equal Opportunity Commission on July 27, 2007, requiring Plaintiffs to wait an additional 60 days before an age discrimination complaint could be filed in court.  (Id.)  Of course, even at the close of this 60 day period (September 26), Plaintiffs waited four more months to file the instant Complaint.

Thus Plaintiffs were never prejudiced by failure, if any occurred, of the NFL Defendants to file or furnish plan information.  Nor can Plaintiffs' Opposition Memo purport to obtain equitable estopple based on arguments that the NFL Defendants intended to deceive Plaintiffs. As emphasized in Veltri, "[t]he relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." 393 F.3d at 323 (citations omitted.)  Here, the alleged

---

*(cont'd from previous page)*

that in February 2006, Plaintiffs knew no more about the nature of their potential claims to employment status and ineligibility for benefits then they knew all along, because the AC alleges that they were treated as independent contractors without benefits, and that the NFL Defendants allegedly exercised control over them as employees at all times pertinent to the AC.  (AC ¶¶ 136-39, 154, 155, 158, 165, 208, 214.)  Thus, if a DPA could file in February 2006 seeking employment status, or threaten further tax proceedings unless he received ERISA benefits, there is nothing in the AC alleging why such claims could not have been filed by all DPAs earlier during the limitations period.

misclassification of Plaintiffs as independent contractors, was continuously communicated to the Plaintiffs by word and deed, as alleged in the AC, and therefore Plaintiffs knew and believed they were ineligible for benefits under the plans, as also alleged in the AC. Rather than concealment, the conduct of the NFL Defendants revealed the injury and claim to these Plaintiffs and no equitable estoppel preventing accrual should be entertained by this Court.

### D. Plaintiffs' Claims For Damages And Civil Penalties Under Their First And Second Claims For Benefits Should Be Stricken

In light of confusion in the AC, which is aggravated by Plaintiffs' Opposition Memo, this Court should dismiss Plaintiffs' First and Second Claims for any remedies other than benefits. The AC specifically seeks "benefits," "damages," and "civil penalties" under the First and Second Claims. (AC ¶¶ 210, 212, 216, 218.) Now, Plaintiffs state that "benefits...is [only] a remedy that Plaintiffs seek in the First and Second Claims." (Pl. Op. Memo at 24) (emphasis added). The point is that benefits is the only remedy Plaintiffs can seek on these claims, and a broad request for damages, where benefits are also sought, is unnecessary unless Plaintiffs are seeking "extracontractual" damages beyond benefits, which are not recoverable under Section 502 of ERISA. See Lee v. Burkhart, 991 F.2d 1004, 1009 (2d. Cir. 1993) ("extracontractual damages" not recoverable under Section 502(a)(1)(B)); Coan v. Kaufman, 457 F.3d 250, 264 (2d Cir. 2006) ("extracontractual damages" not recoverable under Section 502(a)(3)). Obviously, civil penalties are also not benefits, and should be dismissed from the remedies sought by Plaintiffs' First and Second Claims.

## POINT II

## Nothing In Plaintiffs' Opposition Memo Saves The Third Claim For Interference With Benefits And The Fourth Claim For Retaliation, From Dismissal

### A. The Active DPAs Lack Participant Standing To Bring The Third And Fourth Claims In Their Entirety

Section 510 of ERISA protects a "participant" from an act of "discharge" or other discriminatory act taken by an employer to "interfere...with the attainment of any right" under a plan or to which such "participant" may become entitled under the plan. 29 U.S.C. § 1140. Section 510 also protects a "participant" from retaliatory discharge for "exercising any right to which he is entitled under the plan." Id. Plaintiffs' Opposition Memorandum fails to establish that Plaintiffs have standing under Section 510. As set forth in Point I, above, the AC fails to plead that any DPA satisfied the eligibility requirements under the terms of the plans at any time, and therefore no DPA was a "participant," because as plead by the AC, none of them ever had the basis to make a colorable claim for benefits under ERISA.

Alternatively, as established by Point II above, on the date of filing of the Complaint, the claims for benefits of 45 of the 59 Active DPAs were barred by the applicable six-year statute of limitations. Accordingly, these Plaintiffs lack standing to bring a Section 510 claim, because, upon commencing this Action, they were not "participants." Indeed, even at the time of the notice of termination on October 5, 2006, the claims of most of these DPAs were already time barred. (Berke Dec. Ex. 19.)

**B. The Active DPAs Lack Participant Standing To Bring The Claim For Retaliatory Discharge Under The Third And Fourth Claims**

Plaintiffs Opposition Memorandum effectively concedes that an adverse action under Section 510, based on the discharge of an ERISA plan participant for exercising his ERISA rights, occurs "when the employer decides to discharge the employee and communicates that decision to him." (Pl. Op. Memo at 31.) Therefore, as alleged in the AC, the adverse action of termination of the DPAs occurred on October 5, 2006, when the NFLMC notified the DPAs that it would outsource the DPA function. (AC ¶ 183.) Contrary to Plaintiffs' contention, this was a "bright line" communication which the NFLMC followed through to completion, culminating in

the selection of CDT, and discontinuance of DPA activities on April 30, 2007. (Pl. Op. Memo at 32.) Only Active DPAs bring the Third and Fourth Claims under the AC and none of these Plaintiffs were "participants" under ERISA on the October 5, 2006, date of the alleged adverse action. No Active DPA asserted any right under ERISA on or before October 5, 2006. Whereas here, a potential claimant has not articulated a claim, he is not a "participant" until he does, and even then, his claim must be "colorable" for him to obtain participant standing. Firestone Tire & Rubber Company, 489 U.S. at 117. Some cases have recognized that a "potential plan participant," may have a right to receive plan information, but that right, too, is only "triggered" by a request. Reid, 2004 WL 2072086 at *4. Even if the Active DPAs were "potential plan participants" on or before October 5, 2006, under the AC, they never "triggered" any rights under ERISA through any action known to any NFL Defendant or pleaded in the AC. Plaintiffs' reliance on In re Polaroid ERISA Litigation, 240 F.R.D. 65 (S.D.N.Y. 2006), and cases cited therein, for the proposition that the "Active DPAs" were somehow "within the zone of interests ERISA was intended to protect," has no foundation. None of these cases suggest that any such "zone" would include protection of Plaintiffs, who by October 5, 2006, had not yet acted in an ERISA protected fashion.

### C. None of the Active DPAs Are Alleged To Have Exercised An ERISA Protected Right Prior To The October 5, 2006 Decision To Outsource And Terminate The DPAs And Therefore, No Active DPA Has A Cause Of Action For Retaliatory Discharge

Only a "participant" who has "exercis[ed] any right to which he is entitled...under the benefit plan" has a claim for retaliatory discharge under Section 510. 29 U.S.C. § 1140. Plaintiffs flatly contradict their own pleading when they argue that the NFLMC's decision to discharge the DPAs, was "made and communicated" to the DPAs on April 30, 2007, rather than on October 5, 2006, as clearly alleged in the AC. (Pl. Op. Memo at 31; AC ¶ 183.) However,

Plaintiffs admit that in determining if the AC states a claim for a retaliatory discharge "the inquiry is whether Active DPA Plaintiffs engaged in protected activity up to" the date of the adverse action. (Pl. Op. Memo at 31.) Plaintiffs do not challenge the black and white statutory language quoted above from Section 510 and the ample case law which requires each Plaintiff to engage in protected activity in order to mount a Section 510 retaliatory discharge claim. See NFL Defendants' Moving Brief at 45-46. Here, no Active DPA is alleged by the AC to have engaged in such activity prior to October 5, 2006 and the claims of these Active DPAs therefore fail and should be dismissed.

As earlier emphasized, the instant action is by a group of individuals, "not a class action." Assoko, 539 F. Supp. 2d at 737 n.9. Each Plaintiff must allege an "individual claim[]" for relief. Id. Here, the AC fails to allege individual protected activity by any Plaintiff making the Section 510 retaliatory discharge claim. All the Plaintiffs' Opposition Memorandum argues is that the behavior of the NFL Defendants somehow shows that they knew that, prior to October 5, 2006, each and all the Active DPAs were acting in a group in the commission of a protected activity. However, the AC itself contradicts this contention. Indeed, if the Active DPAs were engaging in protected activities, there is no explanation why such activities by each of the members of this group are not alleged in the AC. To the contrary, all the pleading alleges is that an extremely small number of identified Inactive DPAs (not any of the Plaintiffs making the Section 510 Claims) filed Form SS-8 proceedings, or retained counsel to write to the NFLMC on their behalf prior to October 5, 2006. (AC ¶¶ 102, 235, 243.) Even by April 2007, well after notice of the adverse termination was conveyed to the DPAs, Plaintiffs' counsel filed the first alleged claim letter, which did not include claims made by all of the Plaintiffs. These deficiencies in pleading, and the limited Inactive DPAs identified as asserting rights prior to communication of the alleged

retaliatory discharge decision, demonstrates that when the AC was drafted, filed, amended and refiled, and when Plaintiffs' Opposition Memorandum was filed less than one week ago, Plaintiffs were either unaware of which, if any, of the Active DPAs participated in any protected activities prior to October 5, 2006, or Plaintiffs are simply unwilling or unable to allege such activities. Under such circumstances, it ill behooves Plaintiffs to impute knowledge to Defendants about Plaintiffs' own acts, which knowledge Plaintiffs' themselves apparently do not possess.

**D. The Interference Claims Of Most Active DPAs Under Section 510 Are Barred By The Applicable Two Year Statute Of Limitations And Because There Can Be No Interference With Nonexistent Rights To Benefits**

Plaintiffs' Opposition Memorandum does not contest that the statute of limitations for Section 510 claims is two years from accrual. (See MM at 42 citing Sandberg v. KPMG Peat Marwick, L.L.P., 111 F.3d 331, 335-36 (2d Cir. 1997); Pl. Op. Memo at 29.) The parties also agree that accrual of an interference claim, takes place upon the act of interference. As Plaintiffs correctly state, the usual accrual date for a retaliatory discharge claim of interference is when the decision to discharge is communicated to the Plaintiffs. (Pl. Op. Memo at 31.) But this is not the usual discharge case under Section 510. Here, at the time of discharge, the claims for benefits of most of the 59 Active DPAs were barred by the six-year statute of limitations. Thus, the NFLMC's decision to discharge DPAs and outsource the specimen collection function, communicated in October 2006, did not violate Section 510 because an employer cannot interfere with already time barred nonexistent rights to benefits for these Active DPAs. Thus, if there was any interference here, it was committed when Plaintiffs were allegedly misclassified as independent contractors ineligible for benefits, and the Active DPAs knew or should have known of that interference both well before October 5, 2004, two years before the outsourcing

notification was given, and two years prior to December 28, 2007, the date the instant action was filed. See Berry v. Allstate Ins. Co., 252 F. Supp. 2d 336, 341-43 (E.D. Tex. 2003) ("date of accrual" of Section 510 claim for interference in alleged misclassification matter involving independent contractors was "date they were hired [and] informed...they would not be able to participate in...benefit plans"), aff'd, 84 F. App'x 442 (5th Cir. 2004).

**E. The Active DPAs' Section 510 Interference And Retaliation Claims Based on CDT's Alleged Refusal To Rehire Plaintiffs Are Inadequately Pleaded**

Plaintiffs' Opposition Memorandum argues to the Court that Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007), one of many Second Circuit decisions applying the pleading standards in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), does not "authorize the NFL Defendants to challenge the plausibility of the facts as pleaded in a complaint on a motion to dismiss," but does require the Court to analyze "conclusory allegations [which] appear to be implausible." (Pl. Op. Memo at 3, 9) (emphasis added). Here, the AC must be dismissed under the above tests that Plaintiffs themselves set forth. The allegations that, when CDT declined to "rehire" any of the Active DPAs after the specimen collection function of the Drug Program was outsourced to CDT is purely conclusory, implausible and unsupported by any factual grounds sufficient to suggest that the NFL Defendants conspired with CDT to take such action.

Although Plaintiffs' Opposition Memorandum attacks the NFL Defendants' motion for dismissal on this point as "ridiculous," no amount of hyperbole furnishes the necessary grounds required by notice pleading of the alleged conspiracy. (Pl. Op. Memo at 13.) Indeed, all the AC alleges is that, at some unspecified times, "beginning in October 2006," the NFL Defendants requested one of the DPAs, Mr. Jim Bowers (who is not a Plaintiff in this matter) to answer any questions Ms. Kim Jasper, President of CDT, might have in the course of CDT's consideration of retaining the DPAs to perform collection specimen activities in the Drug Program for CDT. (Pl.

Op. Memo at 13-14, AC ¶¶ 185-87.) As would be expected, DPA Bowers invoiced the NFLMC and was paid by it for this activity. (Id.) It is alleged that during Ms. Jasper's discussion with DPA Bowers, Ms. Jasper asked DPA Bowers about each DPA's involvement with counsel in seeking ERISA benefits. (AC ¶ 185-87.) In October 2006, as the NFL Defendants have repeatedly pointed out in the instant memorandum, there is no allegation that any Active DPA bringing the Section 510 claim had, at that time, engaged in any ERISA protected activity and no basis to impute knowledge about the protected activities of any such Active DPA to the NFL Defendants or to DPA Bowers. To date, the pleadings fail to identify any active DPA who sought or engaged counsel during this period. It was not until April 25, 2007 that Plaintiffs' counsel revealed an Active DPA as a claimant or potential claimant for ERISA benefits and there is no allegation that the discussions between DPA Bowers and Ms. Jasper took place after such revelation. In any event, questions asked by Ms. Jasper of CDT about potential activities of the Active DPAs, and answered by DPA Bowers – if in fact he did answer them, which is not alleged, and could not be since nothing in the AC reveals any such activity by an Active DPA at this point in time – do not form grounds to infer that the NFL Defendants played any role in Ms. Jasper's decision not to engage the DPAs to work for CDT.

Moreover, it is illogical to contend, as do Plaintiffs, that the NFLMC would tell the DPAs of its belief that CDT would retain some of them, while conspiring with CDT to do the opposite. Nor do offhand statements made by one person at the NFLMC that "you guys [the DPAs] will be dead and buried before this is resolved" (AC ¶ 180), allegedly referring to the pending Form SS-8 proceedings, lend any support to an allegation of conspiracy between the NFL and CDT.

In addition, the AC provides no grounds to infer that a failure by CDT to engage DPAs after the outsourcing interfered with a right to benefits under NFLMC plans. There is no

allegation in the AC that subsequent to the outsourcing, CDT and any of the NFL Defendants would have been joint employers of the DPAs. Indeed, at page 2 of Plaintiffs' Memorandum Of Law In Opposition To Defendant CDT's Motion To Dismiss, Plaintiffs emphasize that the Court should take judicial notice that CDT performs specimen collection functions for "Major League Baseball, the National Hockey League and the Ladies Professional Golf Association, in addition to the NFL." The only facts therefore before the Court in the pleadings and the briefs herein is that CDT is a bona fide, independent organization, and there are no facts, or even any conclusory pleading in the AC on which to base even a conclusory allegation of joint employment, if one had been made.

Furthermore, Plaintiffs' Opposition Memorandum fails to provide any opposition to, or even mention, the undeniable ground for dismissal of the AC's Section 510 Claims of all but three Active DPAs (Kostyo, Difalco and Logay) because the AC failures to allege or identify any other Active DPAs who actually applied to CDT for a position. As supported by case law at page 47 of the NFL Defendants' Moving Memorandum, without such allegations and identification, no claim for interference or retaliatory failure to rehire under Section 510 has been pleaded for the Active DPAs except the three identified Plaintiffs, whose claims are dismissable on the other grounds discussed above. Again, this is not a class action and each Plaintiff must meet notice pleading requirements for his individual claims.

### F. Plaintiffs' Claims For Back Wages And Civil Penalties Under Their Third And Fourth Claims Should Be Stricken

Plaintiffs' Opposition Memorandum agrees that the Supreme Court's decision in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002), provides that, in addition to restoration of benefits, Plaintiffs cannot recover other than equitable remedies on its claims for interference and retaliatory discharge under Section 510. Plaintiffs also cannot contest that under

Great-West, "back wages" are damages and, as such, are not recoverable under Section 510. 534 U.S. at 218 n.8. Nevertheless, Plaintiffs insist they can seek damages under their 510 Claims in the AC because they seek "other appropriate equitable relief" from the Court, which might include reinstatement, in which case Plaintiffs argue back wages might be awardable as part of such remedy of reinstatement. (Pl. Op. Memo at 25.) The NFL Defendants do not agree that Great-West (which clearly ruled out recovery of back wage damages under ERISA), finally decided that back wages are recoverable as part of an equitable remedy of reinstatement. However, even assuming arguendo, that is the rule, Plaintiffs have not sought reinstatement in the AC and the "other appropriate equitable relief" language is insufficient to do so, where as here, there are 59 Active DPAs making claims under Section 510. This Court clearly will not order reinstatement and back wages to Plaintiffs who do not seek reinstatement and are not ready, willing and able to accept a position with CDT, if offered. In pleading each of the 59 individual cases here, the AC should state which Plaintiffs are requesting reinstatement and their readiness, willingness and ability to accept it. There is not one allegation in the AC that any Plaintiff seeks reinstatement or even that all do. The remedy of back wages under the Third and Fourth Claims should be stricken because it serves only the purpose to permit Plaintiffs to swell their monetary claim and conduct improper discovery relating thereto. This is yet another pleading deficiency caused by Plaintiffs' inappropriate treatment of this litigation as though it were a class action. Moreover, Plaintiffs' Opposition Memorandum offers no justification for the AC's request for civil penalties under the Section 510 claims. Civil penalties are clearly not equitable remedies and should be dismissed from these claims.

## POINT III

### Nothing In Plaintiffs' Opposition Memo Saves The Fifth Claim For Alleged Failure To File SPDs With The Department Of Labor From Dismissal

In the AC, Plaintiffs' Fifth claim was a cause of action for failure to file SPDs with the US DOL, in violation of ERISA provisions, which were repealed eleven years ago and based on cited regulations which were repealed or are nonexistent. In light of these circumstances, Plaintiffs no longer rely on the AC's allegation that as of March 2007, there was not a single SPD on file with the US DOL. Indeed, in Plaintiffs' Meorandum of Law, there is nothing left of the original Fifth Claim for failure to file documents with the US DOL, for which Plaintiffs' formerly sought estoppel and penalties.

Instead, there is a new claim for "equitable estoppel" which was never pleaded before. The intent of this new claim, as was the previous request for estoppel under the repealed statute and regulations cited in the AC's Fifth Claim (AC ¶ 246) is to relieve Plaintiffs from the statutory requirement in ERISA that, to obtain benefits, each DPA must plead and prove entitlement "under the terms of [the applicable] plan[s]." 29 U.S.C. § 1132(a)(1)(B). Accordingly, this proposed new claim, as was the specious Fifth Claim before it, is both to amend requirements out of the statute and to nullify the Benefit Committee's determinations of ineligibility under the terms of the plan which were made by the Benefit Committee consistent with the judicial policy under ERISA that there be exhaustion of administrative procedures before burdening courts with plan benefit claims. See Paese, 449 F.3d at 445 (discussing significant policies underlying the exhaustion requirement). By this new claim, Plaintiffs also seek to reinforce their position that the Benefit Committee's determinations are a nullity under the standard of "deemed denied," which, though repeatedly cited and emphasized in no less than three paragraphs of the AC (AC ¶¶ 204, 211, 217) has no applicability because it has been amended out of the US DOL's

regulations. Krauss v. Oxford Health Plans, 517 F.3d 614, 631 (2d Cir. 2008) (discussing elimination of "deemed denied" standard).

In addition to these improper motivations, this new claim purports to be based on "extraordinary circumstances...tantamount to fraud," which has never been pleaded before and is not now pleaded with any particularity, e.g., under FRCP 9(b). (Pl. Op. Memo at 44.) Moreover, Plaintiffs have filed no motion to amend the AC and cannot do so in their opposition memorandum. Pani v. Empire Blue Cross Blue Shield, 153 F.3d 67, 76 (2d Cir. 1998) (affirming dismissal of claims where plaintiff "never requested leave to amend from the district court"). Indeed, Plaintiffs make no showing that they "would be able to amend" their pleading "in a manner that would survive dismissal." Id. Thus, there is no allegation in the AC or in Plaintiffs' Opposition Memorandum that Plaintiffs ever sought to examine materials filed by any of the NFL Defendants with the US DOL. Nor is there any allegation that Plaintiffs ever inquired about whether there had been such filings prior to March 2007, by which time SPD filing requirements had long ago been repealed. Ironically, Plaintiffs' Opposition Memorandum argues that its new equitable estoppel claim should be based on the NFL Defendants' failure to file SPDs with the US DOL between 1988 and 1997, even though there is no allegation that any Plaintiff ever sought to examine US DOL records during that period of time.

The Declaration Of M. Christine Carty In Support Of Plaintiffs' Memorandum Of Law And In Opposition To NFL Defendants' Motion To Dismiss ("Carty Declaration") provides no support for an equitable estoppel claim. According to Ms. Carty, one of her firm's legal assistants went to the US DOL and was informed that its records showed that the NFL Defendants did no file SPDs for the NFL PP, CAP, Flex Plan and NFL MCPP between 1978 and 1997. (Carty Dec. ¶ 4.) The Carty Declaration does not state who from the US DOL made the

alleged determination, allegedly imparted to the paralegal, or how such person determined the alleged facts stated in the Carty Declaration. Likely, the US DOL's alleged hearsay on hearsay statements in the Carty Declaration were based merely on the absence of any SPDs currently in US DOL records for the period prior to 1997. But that would not establish that such filings were never made. All it would show is that records of such filings were no longer retained by the US DOL. Indeed, the Carty Declaration sets forth no basis to conclude that DOL preserved records of required ERISA filings made in 1997 or prior thereto. Prior to 2002, it appears that there were no requirements that the US DOL retain records pertaining to mandated disclosures by plans under ERISA. The 1993 US DOL record retention policies (excerpted as Attachment A hereto) apparently required the US DOL to retain records relating to either correspondence between individuals requesting information, the names/information of plan administrators, etc. and records relating to investigations. See Attachment A, 58 Fed. Reg. 49649-53 (Sept. 23, 1993). The 2002 regulations (excerpted as Attachment B hereto) added DOL/PWBA-16, entitled Form 5500EZ, with the purpose of retaining records satisfying mandated "reporting and disclosure requirements," but by then, SPDs were not covered by such requirements. See Attachment B, 67 Fed. Reg. 16822, 16936 (April 8, 2002). Accordingly, there is no support in the AC, Plaintiffs' Opposition Memorandum, or the Carty Declaration for the contention that no such materials were filed by the NFL Defendants. The Carty Declaration apparently stands for nothing more than that US DOL presently has no records of any such stale filings. Therefore, Plaintiffs who filed a specious Fifth Claim in the AC now seek to replace it with an equally specious new Fifth Claim for equitable estoppel by means of their opposition memorandum, without any motion to amend their pleading. There already has been one amended complaint filed and Plaintiffs have no authority for a further amendment without leave of court, which

should not be entertained in this matter. The Fifth Claim in the AC should therefore be dismissed.

## POINT IV

### Nothing In Plaintiffs' Opposition Memo Saves The Sixth Claim For Alleged Failure To Furnish Requested Plan Information From Dismissal

Like the Fifth Claim under the AC, Plaintiffs' Sixth Claim has fallen apart and cannot avoid dismissal. As pointed out in the NFL Defendants' Moving Memorandum at 49-51, the Fifth Claim was based on the NFL Defendants' alleged failure to fully respond to a letter request for plan information, dated March 15, 2007, which the AC mischaracterized as a request by all Plaintiffs. (Id.) In fact, it was a request on behalf of only one Plaintiff, Mr. Pallatroni, an Inactive DPA whose benefits claims were barred by the six-year statute of limitations on March 15, 2007, when his letter request for information was made by his attorney. (Berke Dec. Ex. 2.) The Fifth Claim by any Plaintiff other than Mr. Pallatroni must therefore be dismissed.

Moreover, due to the statute of limitations bar, Mr. Pallatroni had no standing to request documents and cannot pursue the Sixth Claim, which should therefore be dismissed in its entirety. See Metro. Life Ins. Co. 275 F. Supp. 2d 406 at 41 ("individual whose claim for benefits is time-barred" has no colorable claim for benefits and is not a participant with standing under ERISA). It is irrelevant that Plaintiffs' Opposition Memorandum argues that "potential plan participants" may have standing to request plan information under ERISA. (Pl. Op. Memo at 40.) Mr. Pallatroni, whose benefit claims were barred had no colorable claim, or any potential colorable claims for benefits and was neither a "participant" nor a "potential plan participant" at the time of his request. Reid, 2004 WL 2072086, at *4. Accordingly, he lacked standing to request materials or to complain of a deficient response, if any, to such request, and consequently has not standing to bring the Sixth Claim in the AC.

It does not become Plaintiffs to argue, as they attempt to do, that their counsel's letter of March 15, 2007, which was written by a lawyer in exacting terms defining it as a request on behalf of only Mr. Pallatroni, should have been regarded by the NFL Defendants as a request on behalf of all DPAs because Plaintiffs' counsel later filed a claim on behalf of 77 other DPAs on April 25, 2007. The alleged claim for benefits on April 25, 2007, was filed after the NFL Defendants provided materials in response to Mr. Pallatroni's March 15, 2007 request made by the same counsel. (Berke Dec. Exs 2, 3, 4.) Respectfully, this argument does not dignify a further response. Moreover, like the Fifth Claim, the Sixth Claim seeks estoppel to improperly nullify the ERISA statutory requirement that Plaintiffs plead and establish their eligibility under the terms of the plan, and to similarly nullify the Benefit Committee's determinations denying such eligibility. As previously discussed in Point III above, these improper goals offend ERISA's statutory requirements and judicial policies requiring exhaustion of administrative procedures. The Sixth Claim should therefore be dismissed.

## POINT V

### Nothing In Plaintiffs' Opposition Memo Saves The Seventh Claim For Age Discrimination From Dismissal For Failure To Meet Twombly Pleading Standards

As fully explained in Point II.E. above, Plaintiffs' Opposition Memorandum fails to demonstrate that the AC has adequately pleaded that the NFL Defendants acted in conspiracy with CDT in connection with CDT's decision to decline to engage the DPAs to perform the outsourced specimen collection function of the Drug Program. Simply because Ms. Jasper of CDT asked DPA Bowers about the ages of the DPAs (as alleged) and he answered (as alleged), does not demonstrate that the NFL Defendants participated in a conspiracy (as alleged) resulting in Ms. Jasper's decision, apparently made months later (as alleged), to decline engaging the DPAs, much less to decline engaging them allegedly due to their age. (AC ¶¶ 185, 192, 193.)

Moreover, the AC fails to set forth grounds to support the implausible conclusory allegations of a conspiracy based on age animus, because the alleged stray remarks in the AC do not infer age discrimination in any way. (See NFL Defendants' Moving Memorandum at 51-54.)

Essentially, Plaintiffs' Opposition Memorandum argues that it has pleaded grounds supporting the conclusory allegation of an age based conspiracy because, even if it has not pleaded stray remarks to support an inference of direct age motivation, the AC has pleaded a prima facie case of age discrimination, which, according to Plaintiffs, can substitute for facts of direct discrimination to satisfy Twombly pleading requirements. (Pl. Op. Memo at 46.) To the contrary, the AC has not pleaded a prima facie case of age discrimination, because, such a *prima facie* case would, of necessity, include an allegation, supported by some factual grounds, that the NFL Defendants, as employers of the DPAs, refused to engage them as collectors at CDT, and engaged younger persons to be collectors at CDT instead of the DPAs. See, e.g., Holtz v. Rockefeller & Co., 258 F.3d 62 (2d Cir. 2001), as cited by Pl. Op. Memo at 46. Where, as here, the AC has not adequately pleaded conspiracy, it has not shown that the NFL played any role whatsoever in declining to engage the DPAs at CDT, much less in engaging younger DPAs at CDT. Moreover, the NFL Defendants are not employers of any newly hired specimen collectors at CDT, and nowhere in the AC, is it pleaded that the NFL Defendants were joint employers with CDT of CDT's specimen collectors. Indeed, the AC contains no allegations whatsoever regarding the manner in which CDT's specimen collectors functioned after the outsourcing or of any conduct by any of the NFL Defendants providing grounds to allege that the NFL Defendants control the activities of any CDT collector. Indeed, as set forth in Point II.E. above, Plaintiffs have invited the Court to take judicial notice of the fact that CDT provides specimen collection services not only to the NFL, but also to a number of other major sports leagues and

organizations. Nothing in the AC, or in Plaintiffs' Opposition Memorandum, sets forth plausible allegations of joint employment rebutting the inference from these judicially noticeable facts, that CDT is anything but a bona fide specimen collection entity, operated independently of its various major clients, including the NFL Defendants.

Accordingly, because the AC fails to plead grounds to support its implausible conclusory allegations of conspiracy, or of conspiracy to refuse to engage DPAs at CDT due to their age, the AC fails to plead any cause of action for age discrimination and the Seventh Claim must therefore be dismissed.

## CONCLUSION

For all the foregoing reasons, the NFL Defendants' motion to dismiss should be granted in its entirety.

Dated: New York, New York
July 29, 2008

Respectfully Submitted,

______________________

Shepard Goldfein (Shepard.Goldfein@skadden.com)
Jay S. Berke (Jay.Berke@skadden.com)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
*Attorneys for National Football League Defendants*

# ATTACHMENT A

**DEPARTMENT OF LABOR**

**Office of the Secretary**

## Privacy Act of 1974; Publication in Full of All Notices of Systems of Records Including Numerous New Systems; Publication of Proposed Routine Uses

**AGENCY:** Office of the Secretary, Labor.

**ACTION:** Notice; publication in full of all notices of systems of records, including numerous new systems; publication of proposed routine uses for all systems of records.

**SUMMARY:** This notice provides an accurate and complete text with administrative (non-substantive) changes of this agency's 138 systems of record, including 37 new systems, which are currently maintained under the Privacy Act of 1974. The notice also proposes new routine uses for all of the systems. This notice will update our last publication which appeared in the **Federal Register** on February 28, 1990. That notice also was a publication in full. This notice will add 37 new systems which are being published for the first time; amend 54 other systems previously published; and will delete three systems.

**DATE:** Persons wishing to comment on newly published systems and on the proposed routine uses may do so by November 22, 1993.

**EFFECTIVE DATE:** Unless there is a further notice in the **Federal Register**, the new systems of records and the proposed routine uses will become effective on December 13, 1993. The notices with the administrative (non-substantive) changes are effective on September 23, 1993.

**ADDRESSES:** Written comments may be sent or delivered to Robert A. Shapiro, Associate Solicitor, Office of the Solicitor, Division of Legislation and Legal Counsel, U.S. Department of Labor, Room N–2428, 200 Constitution Avenue, NW, Washington, DC 20210.

**FOR FURTHER INFORMATION CONTACT:** Miriam McD. Miller, Co-Counsel for Administrative Law, Office of the Solicitor, Department of Labor, 200 Constitution Avenue, NW, Room N–2428, Washington, DC 20210; Telephone (202) 219–8188.

**SUPPLEMENTARY INFORMATION:** Pursuant to section three of the Privacy Act of 1974 (5 U.S.C. 552a(e)(4)), the Department hereby publishes an updated notice for all of its 138 systems of records, including 37 new systems, currently maintained pursuant to the Privacy Act of 1974. Our last publication appeared in the **Federal Register** on February 28, 1990 at 55 FR 7084. That notice was also a publication in full.

This notice also proposes new universal routine uses for all of the systems. However, the eleven paragraphs, containing the universal routine uses (those uses which apply to all systems), are essentially a refined version of those universal routine uses which were published on February 28, 1990, at pages 7089–7090 in Volume 55 of the **Federal Register**.

Besides these eleven paragraphs of universal routine uses, minor changes have been made to some of the specific routine uses which appear within the body of some of the systems.

This notice will add 37 new systems which are being published for the first time; it amends 54 systems previously published; and it deletes three systems.

The following is a listing of the significant additions, changes, and deletions to the various departmental systems of records. Those systems previously eliminated, or where no revisions were required to existing systems, will not appear within this Preamble (below).

### Government-wide Systems by the Department of Labor

*DOL/GOVT–1*

DOL/GOVT–1, entitled "Office of Workers' Compensation Programs, Federal Employees' Compensation File," is the new name for DOL/ESA–13. Since this is a government-wide system, the new name is more appropriate and highlights that it is a government-wide system. In addition to being renamed, this system underwent substantial rewriting for the purpose of clarifying the different sections of the notice including the category for system location and the category for exemptions.

Routine uses: Includes a new paragraph clarifying that agencies may delegate their authority for access to records to a contractor that is performing the work which agency personnel would normally do; makes clearer that information can be released to prospective employer in a Department-sponsored or sanctioned return to work effort; clarifies that information can be released to health and welfare plans.

*DOL/GOVT–2*

DOL/GOVT–2, entitled "Job Corps Student Records," is the new name for DOL/ETA–14. Since this is a government-wide system, the new name is more appropriate and highlights that it is a government-wide system. The former name of the system was Job Corpsmember Records which is being changed to Job Corps Student Records. It also amends the system to include the collection and maintenance of drug testing information on each student.

### Office of the Secretary (OSEC)

*DOL/OSEC–1*

"Supervisor's Records of Employees." The "Categories of Records in the System" is expanded to contain information related to supervisors's observations.

*DOL/OSEC–4*

"Credit Data on Individual Debtors." This system of records is being amended to reflect system location and office title changes, to add a system security classification, and, to clarify notification and record access procedures.

*DOL/OSEC–5*

"High Performance Work Place Tracking Database" is a new system to provide support to the Secretary of Labor's efforts to assemble the names and addresses of individuals from industry, labor, government, and academia who are involved in the development and management of high performance work organizations. It provides capabilities to develop and print sorted lists and mailing labels.

### Office of the Assistant Secretary for Administration and Management (OASAM)

*DOL/OASAM–1*

"Attendance, Leave, and Payroll File". The Categories of records in the system has been expanded to include claims by the employee for overtime, for back wages and for waivers.

*DOL/OASAM–5*

"Rehabilitation and Counseling File." This system is amended to (1) add private sector treatment or rehabilitation sites to the list of locations where rehabilitation and counseling fields are stored, and (2) to delete in the Notification Procedure section, "Employee Assistance Program Coordinator" so as to better identify the individuals who arrange for counseling or treatment.

*DOL/OASAM–7*

"Employee Medical Records." This system is amended with regard to location of the system, categories of individuals and records in the system, authority citation, purpose, retention and disposal regulations, record source categories, and expansion of the routine uses. Under the DOL drug testing program, all test results for DOL

employees shall be retained and filed in OPM/GOVT 10, "Employee Medical File System Records." All test results for outside applicants shall be retained in OPM/GOVT 5, "Recruiting, Examining, Placement Records."

*DOL/OASAM-11*

"DOL Training Records." This system has been expanded to include additional office locations.

*DOL/OASAM-12*

"Administrative Grievance Records." In our February 28, 1990 Privacy Act publication this system was erroneously deleted. Prior to this omission, it was entitled "Employee Relations Files." This system is now entitled "Administrative Grievance Records" and has been reinstated. As now published, all portions of the original system, published on July 13, 1982 at 46 FR 30362 at 30371, have been deleted except for grievances under 5 CFR part 771. The record source category has been revised to include information from the individuals on whom the record is maintained, testimony of witnesses, investigative records and decisions by Agency Officials. Also, the system location has been broadened to include additional offices. The deleted portions of this system are covered by the following government wide systems:

OPM/GOVT-2
OPM/GOVT-3
OPM/GOVT-5
MSPB/GOVT-1

*DOL/OASAM-15*

"Travel Authorization and Voucher System." This system is amended to include travel arrangement services and government contractor issued charge cards; system locations have been added.

*DOL/OASAM-17*

"Equal Employment Opportunity Complaint Files." This system is revised to (1) indicate that records in this system are covered in conjunction with EEOC's Government-Wide system EEOC/GOVT-1; (2) add to system location section; (3) expand the routine use of records section and (4) to modify the retention and disposal section of this record system.

*DOL/OASAM-19*

"Negotiated Grievance Procedure and Unfair Labor Practice Files." The system location has been broadened to include additional offices and categories of records in the system.

*DOL/OASAM-21*

"Senior Executive Service Certification File." This system has been deleted. The OPM/GOVT-1 system includes the same records and has broader routine uses.

*DOL/OASAM-22*

"Directorate of Civil Rights Citizen Discrimination Complaint Case Files." This system is revised to add clarity to the descriptions of types, uses, and safeguard of records, to update statutory references, and to modify the retention and disposal section of this record system.

*DOL/OASAM-26*

A new system entitled "Frances Perkins Building Parking Management System" is established to maintain records on individuals who are assigned or applying for assignment of parking privileges in the Frances Perkins Building.

*DOL/OASAM-27*

A new system entitled "Employee/Contractor Identification Program" is established to maintain records which identify individuals who are employed by the U. S. Department of Labor (DOL) and individuals employed by contractors doing business with DOL.

*DOL/OASAM-28*

A new system entitled "Incident Report/Restriction Notice" is established to maintain records on individuals involved in incidents occurring in the Frances Perkins Building.

*DOL/OASAM-29*

A new system entitled "OASAM Employee Conduct Investigations" is established to ensure that all appropriate records of problems and misconduct arising from informal complaints of employee misconduct in the National Office and DOL Regions are addressed.

*DOL/OASAM-30*

A new system entitled "Injury Compensation System" (ICS) is established to track and monitor DOL employees and/or Job Corps Center students who receive continuation of pay and/or FECA compensation benefits.

**Office of Administrative Appeals (OAA)**

DOL/OAA-1, Administrative Appeals File, has been amended to describe the system's purpose category more fully and to clarify the routine uses.

**Office of the Administrative Law Judges (OALJs)**

DOL/OALJ-1, Administrative Law Management System, has been amended to clarify its category of records, and to reflect the new address for the system's location.

**Office of the American Workplace (OAW)**

A new Office of the American Workplace has been established. This Office contains the five systems of records which were formerly known DOL/OLMS-1 and DOL/BLMRCP-1 through DOL/BLMRCP-4. These five systems of records have been renamed DOL/OAW-1 through DOL/OAW-5.

**Office of the Assistant Secretary for Policy (ASP)**

DOL/ASP-1 has been changed to indicate its name change from the National Seasonal Agricultural Services Farmworker Survey to the National Agricultural Workers Survey (NAWS). This was done in order to create a shorter, easier-to-remember title.

**Benefits Review Board (BRB)**

DOL/BRB-1, Appeals Files-Benefit Review Board has been amended to reflect the new address of the system's location.

**Bureau of Labor-Management Relations and Cooperative Programs (BLMRCP)**

This Bureau has been transferred to the new Office of the American Workplace (OAW). All four of its systems of records have been renamed and are being carried by the new OAW as DOL/OAW-2 through DOL/OAW-5.

**Bureau of Labor Statistics (BLS)**

DOL/BLS-2 "Staff Utilization System" is changed to correct the system location address, the system manager's address, and to add cartridges to the storage media.

DOL/BLS-3 "Regional Office Staff Utilization File" is changed to correct the system location and system manager's address.

DOL/BLS-4 "Business Research Advisory Council" is changed to correct the entry for storage to "File cabinets and bookcases," to change the title "liaison" to "Management Assistant," and to correct the system location and system manager's address.

DOL/BLS-5 "Labor Research Advisory Council" is changed to correct the system manager's address, to change the number of years files are retained, to change the titles "liaison" and "Associate Commissioner" to "Management Assistant," and to correct the system location and system manager's address.

HeinOnline -- 58 Fed. Reg. 49549 1993

DOL/BLS–6 "Applicant Race and National Origin (ARNO) System. Form 618." is now named "Applicant Race and National Origin (ARNO) System. Form E 618." Corrections have been made to the system location and the system manager's address, the entry for storage has been changed to "Hard copy-manually generated forms," the entry for Retrievability has been changed to read "Retrievable by name and SSN," and in the entry for Retention and disposal, the word "fiscal" has been changed to "calendar."

DOL/BLS–7 "BLS Employee Conduct Investigation" is changed to correct the system location and system manager's address.

DOL/BLS–8. This system of records entitled "BLS Employee ADP Training History" is changed to correct the system's manager's address. In the 1990 publication this system was published but through inadvertence it was not carried in the table of contents.

DOL/BLS–9 is a new system of records entitled "Routine Administrative Files." This system contains administrative records of BLS employees, BLS contractors, BLS visitors for over 30 days and people who car pool with a BLS employee and park in BLS space.

DOL/BLS–10 is a new system of records entitled "Commissioner's Correspondence Control System." This is an automated tracking system for correspondence received in the Commissioner's Office of the Bureau of Labor Statistics.

DOL/BLS–11 is a new system of records entitled "NIH and Boeing User ID Database." This system contains records of all BLS employees, BLS contractors and state employees who are computer users at the National Institutes of Health and Boeing computer centers.

DOL/BLS–12 is a new system of records entitled "Employee Acknowledgement Letter Control System." This system contains records of all BLS employees who sign an acknowledgement letter stating that they have read and understood Bureau policy on safeguarding confidential data.

DOL/BLS–13 is a new system of records entitled "National Longitudinal Survey of Youth (NLSY) Database." This system is a contractor-maintained database that contains information from labor force surveys conducted on a random sampling of the general public.

DOL/BLS–14 is a new system of records entitled "Collection Procedures Research Lab Project Files." This system contains biographical and sometimes personal information on volunteers who participated in projects to improve the accuracy of response in BLS surveys.

DOL/BLS–15 is a new system of records entitled "Management Research Files." This system contains a variety of employment, training, and personal information on employees of DOL and its agencies. The information will be used in the development of new experimental measures and behavioral models which explain the determinants of employment events, etc.

DOL/BLS–16 is a new system of records entitled "Annual Survey of Occupational Injuries and Illnesses." This system contains employment information and injury illness circumstances of injured or ill employees. The information will be used in statistical analyses to develop information regarding the causes and prevention of occupational accidents and illnesses, in allocating resources, and evaluating the effectiveness of occupational safety and health programs.

## Employees' Compensation Appeals Board (ECAB)

Both of the ECAB systems have been amended to reflect a new telephone number for the systems.

## Employment Standards Administration (ESA)

DOL/ESA–2—*Office of Federal Contract Compliance Programs Complaint Files.* Changes which include title changes under "System Manager(s)", including office addresses, notification under "System Location", deleting a phrase in the "Notification Procedure", and correcting the Privacy Act citations.

DOL/ESA–6—*Office of Workers' Compensation Programs, Black Lung Benefit(s) Claim File.* The routine uses were rewritten to clarify to whom releases may be made and why, but without any substantive change.

DOL/ESA–12—*Office of Workers' Compensation Programs, Black Lung X-ray Interpretation File.* The routine uses were rewritten to clarify to whom releases may be made and why, but without any substantive change.

DOL/ESA–13 is redesignated as DOL/GOVT–1—*Office of Workers' Compensation Programs, Federal Employees' Compensation Act File.* This is a government-wide system. In addition to the redesignation, this system underwent substantial rewriting for the purpose of clarifying the different sections of the notice including the category of system location and category of exemptions.

Routine uses: includes a new paragraph clarifying that agencies may delegate their authority for access to records to a contractor that is performing the work which agency personnel would normally do; makes clearer that information can be released to prospective employer in a Department-sponsored or sanctioned return to work effort; clarifies that information can be released to health and welfare plans.

DOL/ESA–25—*Office of Federal Contract Compliance Programs Compliance Review Information System (CRIS).* Changes include; under System Name, addition of office address notification; under System Location, a deletion and phrase change; word changes under Routine Uses; name change under System Manager(s); deletion of phrase under Notification Procedure; and correction under Systems Exempted.

DOL/ESA–26—*Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Investigation Files.* Under the Category for Exemptions, it clarifies that the Privacy Act provisions granting to criminal law-enforcement agencies certain authority for withholding information does not apply to OWCP, since it is not a criminal law-enforcement agency.

DOL/ESA–30—*Office of Workers' Compensation Programs, Black Lung Automated Support Package.* Systems exempted from the Privacy Act: clarifies that the Privacy Act provisions granting to law-enforcement agencies certain authority for withholding information does not apply to OWCP, since it is not a law-enforcement agency.

DOL/ESA–31—*Office of Federal Contract Compliance Programs Time Reporting Information System (TRIS).* Changes included under Purpose and Routine Uses; name change under System Manager(s); word change under Record Source Categories.

DOL/ESA–32—*ESA Complaint and Employee Conduct Investigations.* System name has been changed and Retention and Disposal has been changed.

DOL/ESA–33—*Wage and Hour Division's Investigator's Weekly Report.* Changes under System Name, System Location, and Categories of Individuals Covered by the System. This system was published in the 1990 **Federal Register**, but through inadvertence it was not included in the table of contents.

DOL/ESA–34—*Wage and Hour Division's Farm Labor Contractor Registration File.* This is a new system which includes a record of applicants for and holders of Farm Labor

HeinOnline -- 58 Fed. Reg. 49550 1993

Contractor Certificates of Registration. Records are used to determine eligibility for issuance of a certificate of registration and for determining compliance with the Migrant and Seasonal Agricultural Worker Protection Act (MSPA).

DOL/ESA–35—*Wage and Hour Division's Farm Labor Contractor Employee Registration File.* This is a new system which includes a record of applicants for and holders of Farm Labor Contractor Employee Certificates of Registration. Records are used to determine eligibility for issuance of a certificate of registration and for determining compliance with the Migrant and Seasonal Agricultural Worker Protection Act (MSPA).

DOL/ESA–36—*Wage and Hour Division's Migrant and Seasonal Agricultural Worker Protection Act (MSPA)/Farm Labor Contractor Registration Act (FLCRA) Civil Money Penalty Record Files.* This is a new system which includes information on all persons investigated and assessed civil money penalties under the MSPA and FLCRA and all actions connected therewith.

DOL/ESA–37—*Wage and Hour Division's Migrant and Seasonal Agricultural Worker Protection Act (MSPA) Public Central Registry Records Files.* This is a new system which includes a record of holders of Farm Labor Contractor and Farm Labor Contractor Employee Certificates of Registration.

DOL/ESA–38—*Wage and Hour Division's Regional Office Clearance List—Migrant and Seasonal Agricultural Worker Protection Act (MSPA) Registration.* This is a new system which provides a list of persons who may not meet eligibility requirements for issuance of a Farm Labor Contractor or Farm Labor Contractor Employee Certificate of Registration used by Wage and Hour Regional Office staff for screening incoming applications.

DOL/ESA–39—*State Employment Service Clearance List—Migrant and Seasonal Agricultural Worker Protection Act (MSPA) Registration.* This is a new system which provides a list of persons who may not meet eligibility requirements for issuance of a Farm Labor Contractor or Farm Labor Contractor Employee Certificate of Registration used by Florida Department of Labor and Employment Security, Tallahassee, Florida; New Jersey Department of Labor, Trenton, New Jersey; and Virginia Employment Commission, Exmore, Virginia for Wage and Hour Regional Office staff for screening incoming applications.

DOL/ESA–40—*Wage and Hour Division's Migrant and Seasonal Agricultural Worker Protection Act (MSPA)/Farm Labor Contractor Registration Act (FLCRA) Tracer List.* This is a new system which provides to Wage and Hour investigators written compliance history of persons who have been investigated under either MSPA or FLCRA and the results of those investigations.

DOL/ESA–41—*Wage and Hour Division's Migrant and Seasonal Agricultural Worker Protection Act (MSPA)/Farm Labor Contractor Registration Act (FLCRA) Certificate Action Records Files.* This is a new system which provides a record of persons whose application for a Farm Labor Contractor or Farm Labor Contractor Employee Certificate of Registration has been denied or revoked and all subsequent actions connected therewith for the use of Wage Hour National Office staff.

DOL/ESA–42—*Wage and Hour Division's Case Registration/Compliance Officer Assignment Form (WH–53).* This is a new system which provides Wage and Hour District Offices (D.O.) with an alphabetical index of employers currently undergoing investigation by Wage and Hour within the jurisdiction of that particular D.O.

DOL/ESA–43—*Office of Workers' Compensation Programs Federal Employees' Compensation Act and Longshore and Harbor Workers' Compensation Act Rehabilitation Files.* This is a new system covering records compiled in connection with rehabilitation efforts undertaken by OWCP for both FECA and LHWCA claimants

DOL/ESA–44—*Office of Workers' Compensation Programs Federal Employees' Compensation Act (FEC) and Longshore and Harbor Workers' Compensation Act Rehabilitation Counselor Case Assignment, Contract Management and Performance Files and FEC Field Nurses.* This is a new system covering records maintained by OWCP rehabilitation specialists on the assignment and performance of rehabilitation counselors who contract with OWCP to perform rehabilitation services.

## Employment and Training Administration (ETA)

DOL/ETA–14 is redesignated as DOL/GOVT–2, and it is renamed "Job Corps Student Records." This redesignation reflects that it is a government-wide system and also changes the name of the system from Job Corpsmember Records to Job Corps Student Records. It also amends the system to include records which contain information concerning the collection and maintenance of drug testing information on each student.

DOL/ETA–21, is renamed as "Employment and Training Administrative Advisory Committees Members Files".

DOL/ETA–24, Contracting and Grant Officer Files, is a new system which covers all present and former contracting and grant officers in the Employment and Training Administration. These records are maintained as documents for ready access in ascertaining an individual's qualifications to be appointed as a contracting/grant officer, to determine if limitations on procurement authority are appropriate, and to complete the Certificate of Appointment.

DOL/ETA–25, DOL/ETA Evaluation Research Projects, is a new system which covers information collected and maintained by State Employment Security Agencies that, when forwarded to ETA (or an individual contractor used for the purpose), is used for researching and evaluating the unemployment compensation and other programs for which ETA is responsible. When these projects are being conducted, in house or by the contractor, ETA (or its contractor) creates the system and uses information (claimant records, employer contribution records, and employee wage records) that is stored and accessed by personal identifiers. Upon completion of the project, the records are returned to the State from which they were obtained.

DOL/ETA–26, Standardized Program Information Report (SPIR), is a new system developed to maintain a management information system designed to facilitate the uniform compilation and analysis of programmatic data necessary for reporting, monitoring and evaluation purposes. The records in this system will not be used for making determinations about identifiable individuals. They will be used to generate statistical reports of program participants, program activities, and program outcomes to enable the Department to evaluate the program at different levels and to provide appropriate feedback and technical guidance to local programs in establishing performance goals for their service providers.

## Office of the Inspector General (OIG)

DOL/OIG–4, entitled Temporary Matching Files, has been deleted.

**Office of Labor-Management Standards (OLMS)**

This Office has been transferred to the new Office of the American Workplace (OAW), and therefore, DOL/OLMS–1 has been renamed as DOL/OAW–1. In addition, this system is amended by revising the category for routine uses.

**Mine Safety and Health Administration (MSHA)**

DOL/MSHA–1, Coal and Metal and Nonmetal Mine Accident and Injury, has been amended so that there is a routine use to permit disclosure to other federal agencies when relevant and necessary to mine safety and health research.

DOL/MSHA–3, Metal and Nonmetal Mine Accident and Health Management Information, has been amended to make editorial changes and update the retention and disposal entry to comply with the approved MSHA records schedule and clarify routine uses.

DOL/MSHA–10, Discrimination Investigations, has been amended to make editorial changes and corrections to the categories for storage, retrievability, safeguards, retention and disposal, records source, and routine uses.

DOL/MSHA–13, Coal Mines Respirable Dust Program, has been amended to clarify categories of individuals covered by the system, categories of records in the system, routine uses, safeguards, retention and disposal, and records access procedures.

DOL/MSHA–14 Coal Mine Noise Level Program, has been deleted. The information collected and maintained by the program is no longer subject to the provisions of the Privacy Act.

DOL/MSHA–15, Health and Safety Training and Examination Records Including Qualification and Certification Data, was amended to make editorial changes and corrections in the areas of: storage; retrievability; safeguards; retention and disposal and records access procedures; contesting records procedures and routine uses.

DOL/MSHA–18, Coal Mine Safety and Health Management Information System, has been amended to expand and clarify most of the categories, including routine uses.

DOL/MSHA–20, Civil/Criminal Investigations, is a new system of records, which covers individuals who have been civilly assessed a monetary penalty or prosecuted for violations of the underground mining statutes.

**Occupational Safety and Health Administration (OSHA)**

DOL/OSHA–4 "Advisory Committee Candidates' Biographies" is amended only to include information on "Categories of Records" that was inadvertently omitted from the previous Privacy Act notice.

DOL/OSHA–6 "Compliance Safety and Health Officer Manpower File," is renamed "Program Activity File," to more accurately reflect its purpose; also, the "Storage," "Safeguards," and "Retention and Disposal" sections of the notice are amended to delete reference to manually maintained files, since these files are no longer maintained manually.

DOL/OSHA–12 "OSHA Employee Conduct Investigations" is amended to include the listing, "Categories of Individuals Covered by the System," which was inadvertently omitted when the notice was previously published.

*DOL/OSHA–14.* This is a new system entitled: The Office of Training and Education Computer Based Acquisition/Financial Record System. The purpose of this system is to provide an acquisition and financial management system which will improve the acquisition process; and provide an efficient means for the accurate recording, tracking, reporting, and control of Office funds.

*DOL/OSHA–15.* This is a new system and entitled: Office of Training and Education Resource Center Circulation Project. The records are maintained to facilitate the performance of the Resource Center Circulation Project which loans occupational safety and health materials to qualified borrowers, for verification of borrower status and authorization to borrow, to track borrower requests for materials availability and usage information, to track status and history of overdue materials, to maintain records on lost and damaged materials.

**Pension and Welfare Benefits Administration (PWBA)**

DOL/PWBA–1, and DOL/PWBA–2, have been amended to show a new room address for the systems' location. DOL/PWBA–1 has been renamed as "Employee Retirement Income Security Act (ERISA) Advisory Council on Employee Welfare and Pension Benefit Plans". DOL/PWBA–2, entitled "the Office of Enforcement Index Cards and Investigation Files," and DOL/PWBA–5, entitled "Public Disclosure Request Tracking System," have been amended to clarify their routine uses.

DOL/PWBA–6, entitled PWBA Debt Collection/Management System is a new system of records which contains records on an ongoing Debt Collection/Management Program requiring tracking and accounting for assessed fines/penalties, determination of collection status and assignment of delinquent debts to private collection agencies.

DOL/PWBA–7, entitled PWBA Employee Conduct Investigations, is a new system of records maintained to ensure that all appropriate documentation of problems, investigations, misconduct, illegal acts, conflicts of interest, etc., are retained and are available.

**Office of the Solicitor (OSOL)**

DOL/SOL–12, entitled Third Party Recovery System, has been amended to reflect its expansion to include monetary recoveries on behalf of a broader number of Solicitor's Offices programs. Accordingly the categories of individuals, categories of records and the purpose section have been expanded.

DOL/SOL–15, Solicitor's Office Litigation Files, is a new system which is maintained for the purpose of prosecuting violations of labor laws as well as for defending suits brought against the Secretary of Labor.

DOL/SOL–16, Solicitor's Office Directory of Senior Management, is a new system which contains records maintained for the purpose of supplying the addresses and telephone numbers of senior management so that they can be quickly communicated with during times of emergency.

DOL/SOL–17, entitled Solicitor's Office Ergonomic Furniture File, is a new system which contains records maintained for the purpose of purchasing and supplying employees with ergonomic furniture.

**Office of Veterans Employment and Training (VETS)**

DOL/VETS–2—*Veterans' Preference Complaint File.* This is a new system, which contains records compiled in connection with the enforcement of federal laws pertaining to veterans' preference and other special considerations related to federal employment.

DOL/VETS–3—*Veterans' Employment and Training Services Transition Assistance Program (TAP) Tracking System.* This is a new system which contains records used to monitor the achievement levels in TAP work-shops, develop demographic data and research program effectiveness.

HeinOnline -- 58 Fed. Reg. 49552 1993

*Routine Uses*

The Department, in the General Prefatory Statement, sets forth eleven paragraphs containing routine uses which apply to all systems. These routine uses are a more refined version of those universal routine uses which were published on February 28, 1990, at pages 7089–7090 of Volume 55 of the **Federal Register.**

*Government-Wide Records*

Two systems of records are reported by the Department of Labor for all federal agencies since this Department has overall responsibility for the administration of the programs in connection with which these systems of records have been compiled. It is presumed that most, if not all, federal agencies maintain systems of records comprising a portion of the government-wide systems of records. In order to avoid duplication in reporting, the Department is reporting these systems on behalf of all agencies. The Department has control over these systems to the same extent as the Office of Personnel Management has control over systems of records containing federal employee personnel records. These systems are the Federal Employees' Compensation Act files and the Job Corps Student Records.

Signed at Washington, DC, this 8th day of September, 1993.

**Robert B. Reich,**

*Secretary of Labor*

**Table of Contents**

*General Prefatory Statement*

*Government-Wide Systems by the U.S. Department of Labor*

DOL/GOVT-1—Office of Workers' Compensation Programs, Federal Employees' Compensation File (formerly known as DOL/ESA-13).
DOL/GOVT-2—Job Corps Student Records (formerly known as DOL/ETA-14).

*Office of the Secretary (OSEC)*

DOL/OSEC-1—Supervisor's Records of Employees.
DOL/OSEC-4—Credit Data on Individual Debtors.
DOL/OSEC-5—High Performance Work Place Tracking Database.

*Office of the Assistant Secretary for Administration and Management (OASAM)*

DOL/OASAM-1—Attendance, Leave and Payroll File.
DOL/OASAM-4—Occupational Accident/ Injury/Illness Reporting System (AIIRS) File.
DOL/OASAM-5—Rehabilitation and Counseling File.
DOL/OASAM-7—Employee Medical Records.
DOL/OASAM-11—Training Information System.
DOL/OASAM-12—Administrative Grievance Records.
DOL/OASAM-14—Automated Position Control System.
DOL/OASAM-15—Travel and Transportation System.
DOL/OASAM-17—Equal Employment Opportunity Complaint Files.
DOL/OASAM-19—Negotiated Grievance Procedure and Unfair Labor Practice Files.
DOL/OASAM-20—Personnel Investigation Records.
DOL/OASAM-22—Directorate of Civil Rights Citizen Discrimination Complaint Files.
DOL/OASAM-23—Contracted Travel Service Program.
DOL/OASAM-24—Privacy Act/Freedom of Information Act Requests Files Systems.
DOL/OASAM-25—Intergovernmental Personnel Act Assignment Records.
DOL/OASAM-26—Frances Perkins Building Parking Management System.
DOL/OASAM-27—Employee/Contractor Identification Program.
DOL/OASAM-28—Incident Report/ Restriction Notice.
DOL/OASAM-29—OASAM Employee Administrative Investigation File.
DOL/OASAM-30—Injury Compensation System (ICS).

*Office of Administrative Appeals (OAA)*

DOL/OAA-1—Administrative Appeals File.

*Office of Administrative Law Judges (OALJs)*

DOL/OALJ-1—Administrative Law Management System.

*Office of the American Workplace (OAW)*

DOL/OAW-1—Investigative Files.
DOL/OAW-2—List of Airline Employees Protected Under the Rehire Program.
DOL/OAW-3—Semi-Annual Lists of Hired Employees.
DOL/OAW-4—Rehire Program Appelant and Injury File.
DOL/OAW-5—OLMP, Redwood Employee Protection Program, Health and Welfare Claims and Benefits Payments.

*Office of the Assistant Secretary for Policy (ASP)*

DOL/ASP-1—National Agricultural Workers Survey (NAWS) Research File.

*Benefits Review Board (BRB)*

DOL/BRB-1—Appeals Files-Benefits Review Board (BRB)

*Bureau of Labor Statistics (BLS)*

DOL/BLS-2—Staff Utilization System
DOL/BLS-3—Regional Office Staff Utilization File
DOL/BLS-4—Business Research Advisory Council
DOL/BLS-5—Labor Research Advisory Council
DOL/BLS-6—Applicant Race and National Origin (ARNO) System, Form E 618
DOL/BLS-7—BLS Employee Conduct Investigation
DOL/BLS-8—BLS Employee ADP Training History
DOL/BLS-9—Routine Administrative Files
DOL/BLS-10—Commissioner's Correspondence Control System
DOL/BLS-11—NIH and Boeing User ID Database
DOL/BLS-12—Employee Acknowledgement Letter Control System
DOL/BLS-13—National Longitudinal Survey of Youth (NLSY) Database
DOL/BLS-14—Collection Procedures Research Lab Project Files
DOL/BLS-15—Management Research Files
DOL/BLS-16—Annual Survey of Occupational Injuries and Illnesses

*Employees' Compensation Appeals Board(ECAB)*

DOL/ECAB-1—Employees' Compensation Appeals Board Docket Records
DOL/ECAB-2—Employees' Compensation Appeals Board Disposition Records

*Employment Standards Administration (ESA)*

DOL/ESA-2—Office of Federal Contract Compliance Programs, Complaint Files.
DOL/ESA-5—Office of Workers' Compensation Programs, Black Lung Antidiscrimination Files.
DOL/ESA-6—Office of Workers' Compensation Programs, Black Lung Benefits Claim File.
DOL/ESA-12—Office of Workers' Compensation Programs, Black Lung X-ray Interpretation File.
DOL/ESA-15—Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Case Files.
DOL/ESA-24—Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Special Fund System.
DOL/ESA-25—Office of Federal Contract Compliance Programs, Management Information System (OFCC/MIS).
DOL/ESA-26—Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Investigation Files.
DOL/ESA-27—Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Claimant Representatives.
DOL/ESA-28—Office of Workers' Compensation Programs, Physicians and Health Care Providers Excluded Under the Longshore Act.
DOL/ESA-29—Office of Workers' Compensation Programs, Physicians and Health Care Providers Excluded Under the Federal Employees' Compensation Act.
DOL/ESA-30—Office of Workers' Compensation Programs, Black Lung Automated Support Package.
DOL/ESA-31—Office of Federal Contract Compliance Programs, Time Reporting Information System (TRIS).

HeinOnline -- 58 Fed. Reg. 49553 1993

DOL/ESA-32—Employee Conduct Investigations.
DOL/ESA-33—ESA, Wage and Hour Division, Investigator's Weekly Report.
DOL/ESA-34—Farm Labor Contractor Registration File.
DOL/ESA-35—Farm Labor Contractor Employee Registration File.
DOL/ESA-36—MSPA/FLCRA Civil Money Penalty Record Files.
DOL/ESA-37—MSPA Public Central Registry Records File.
DOL/ESA-38—Wage and Hour Regional Office Clearance List—MSPA Registration.
DOL/ESA-39—State Employment Service Clearance List—MSPA Registration.
DOL/ESA-40—MSPA/FLCRA Tracer List.
DOL/ESA-41—MSPA/FLCRA Certification Action Record Files.
DOL/ESA-42—Case Registration/Compliance Officer Assignment Form (WH-53).
DOL/ESA-43—Office of Workers' Compensation Programs, Federal Employees Compensation Act and Longshore and Harbors Workers' Compensation Act Rehabilitation Files.
DOL/ESA-44—Office of Workers' Compensation Programs, Federal Employees Compensation Act (FEC) and Longshore and Harbor Workers' Compensation Act Rehabilitation Counselor Case Assignment, Contract Management and Performance Files and FEC Field Nurses.

*Employment and Training Administration (ETA)*

DOL/ETA-1—Bureau of Apprenticeship and Training, Budget and Position Control File.
DOL/ETA-2—Bureau of Apprenticeship and Training, Program Management Group, Budget and Position Control File.
DOL/ETA-4—Apprenticeship Management System (AMS)
DOL/ETA-7—Employer Application File for Permanent and Temporary Alien Workers.
DOL/ETA-8—Job Corps Management Information System (JCMIS) File.
DOL/ETA-15—DOL/ETA Evaluation, Research Pilot or Demonstration Contractors' Project Files.
DOL/ETA-16—Employment and Training Administration Investigatory File.
DOL/ETA-20—Federal Bonding Program, Bondees Certification Files.
DOL/ETA-21—Employment and Training Administration Advisory Committees Members Files.
DOL/ETA-22—ETA Employee Conduct Investigations.
DOL/ETA-23—Federal Committee on Apprenticeship (FCA).
DOL/ETA-24—Contracting and Grant Officer Files.
DOL/ETA-25—DOL/ETA Evaluation Research Projects.
DOL/ETA-26—Standardized Program Information Report (SPIR).

*Office of Inspector General (OIG)*

DOL/OIG-1—General Investigative Files, Case Tracking Files, and Subject/Title Index, USDOL/OIG.
DOL/OIG-2—Freedom of Information/ Privacy Acts Records.
DOL/OIG-3—Case Development Records.
DOL/OIG-5—Investigative Case Tracking Systems/Audit Information Reporting Systems/USDOL/OIG.

*Mine Safety and Health Administration (MSHA)*

DOL/MSHA-1—Coal and Metal and Nonmetal Mine Accident and Injury.
DOL/MSHA-3—Metal and Nonmetal Mine Safety and Health Management Information System.
DOL/MSHA-10—Discrimination Investigations.
DOL/MSHA-13—Coal Mine Respirable Dust Program.
DOL/MSHA-15—Health and Safety Training and Examination Records Including Qualification and Certification Data.
DOL/MSHA-18—Coal Mine Safety and Health Management Information System.
DOL/MSHA-19—Employee Conduct Investigations.
DOL/MSHA-20—Civil/Criminal Investigations.

*Occupational Safety and Health Administration (OSHA)*

DOL/OSHA-1—Discrimination Complaint File.
DOL/OSHA-4—Advisory Committee Candidates' Biographies.
DOL/OSHA-6—Program Activity File.
DOL/OSHA-9—OSHA Compliance Safety and Health Officer Training Record.
DOL/OSHA-10—OSHA Train-the-Trainer Outreach Program.
DOL/OSHA-12—OSHA Employee Conduct Investigations.
DOL/OSHA-13—OSHA Office of Training and Education Automated Registration System.
DOL/OSHA-14—Office of Training and Education Computer-based Acquisition/ Financial Records System.
DOL/OSHA-15—Office of Training and Education Resource Center Circulation Project.

*Pension and Welfare Benefits Administration (PWBA)*

DOL/PWBA-1—Employee Retirement Income Security Act (ERISA) Advisory Council on Employee Welfare and Pension Benefit Plans.
DOL/PWBA-2—Office of Enforcement Index Cards and Investigation Files.
DOL/PWBA-3—ERISA Coverage Correspondence Files.
DOL/PWBA-4—Inquiry Correspondence Files.
DOL/PWBA-5—Public Disclosure Request Tracking System.
DOL/PWBA-6—PWBA Debt Collection/ Management System.
DOL/PWBA-7—Employee Conduct Investigations.

*Office of the Solicitor (SOL)*

DOL/SOL-1—Conflict of Interest File.
DOL/SOL-2—Employment and Training Legal Services Litigation and Investigation File.
DOL/SOL-3—Federal Tort Claims Act.
DOL/SOL-5—Job Training Partnership Act.
DOL/SOL-6—Military Personnel and Civilian Employees Claims Act.
DOL/SOL-7—Solicitor's Legal Activity Recordkeeping System.
DOL/SOL-8—Special Litigation Records.
DOL/SOL-9—Freedom of Information Act and Privacy Act Appeals File.
DOL/SOL-10—Privacy Act Litigation Files.
DOL/SOL-11—Division of Civil Rights Defensive Litigation Files.
DOL/SOL-12—Third-Party Recovery Files.
DOL/SOL-13—Employee Conduct Investigations.
DOL/SOL-14—DOL Subpoena Tracking System.
DOL/SOL-15—Solicitor's Office Litigation Files.
DOL/SOL-16—Solicitor's Office Directory of Senior Management.
DOL/SOL-17—Solicitor's Office Ergonomic Furniture File.

*Veterans Employment and Training (VETS)*

DOL/VETS-1—Veterans' Reemployment Complaint File.
DOL/VETS-2—Veterans' Preference Complaint File.
DOL/VETS-3—Veterans' Transition Assistance Program (TAP) Tracking System.

**Appendix 1—Responsible Officials**
**Appendix 2—Privacy Act Coordinators**

GENERAL PREFATORY STATEMENT

The following routine uses apply to and are incorporated by reference into each system of records published below unless the text of a particular notice of a system of records indicates otherwise. These routine uses *do not* apply to DOL/ OASAM-5 Rehabilitation and Counseling File nor to DOL/OASAM-7— Employee Medical Records.

1. It shall be a routine use of the records in this system of records to disclose them to the Department of Justice when: (a) The agency or any component thereof; or (b) any employee of the agency in his or her official capacity where the Department of Justice has agreed to represent the employee; or (c) the United States Government, is a party to litigation or has an interest in such litigation, and by careful review, the agency determines that the records are both relevant and necessary to the litigation and the use of such records by the Department of Justice is therefore deemed by the agency to be for a purpose that is compatible with the purpose for which the agency collected the records.

2. It shall be a routine use of the records in this system of records to

HeinOnline -- 58 Fed. Reg. 49554 1993

disclose them in a proceeding before a court or adjudicative body, when: (a) The agency or any component thereof; or (b) any employee of the agency in his or her official capacity; or (c) any employee of the agency in his or her individual capacity where the agency has agreed to represent the employee; or (d) the United States Government, is a party to litigation or has an interest in such litigation, and by careful review, the agency determines that the records are both relevant and necessary to the litigation and the use of such records is therefore deemed by the agency to be for a purpose that is compatible with the purpose for which the agency collected the records.

3. When a record on its face, or in conjunction with other records, indicates a violation or potential violation of law, whether civil, criminal or regulatory in nature, and whether arising by general statute or particular program statute, or by regulation, rule, or order issued pursuant thereto, disclosure may be made to the appropriate agency, whether Federal, foreign, State, local, or tribal, or other public authority responsible for enforcing, investigating or prosecuting such violation or charged with enforcing or implementing the statute, or rule, regulation, or order issued pursuant thereto, if the information disclosed is relevant to any enforcement, regulatory, investigative or prosecutive responsibility of the receiving entity, and by careful review, the agency determines that the records are both relevant and necessary to the litigation and the use of such records is therefore deemed by the agency to be for a purpose that is compatible with the purpose for which the agency collected the records.

4. A record from this system of records may be disclosed to a Member of Congress or to a Congressional staff member in response to an inquiry of the Congressional office made at the written request of the constituent about whom the record is maintained.

5. Records from this system of records may be disclosed to the National Archives and Records Administration or to the General Services Administration for records management inspections conducted under 44 U.S.C. 2904 and 2906.

6. Disclosure may be made to agency contractors, or their employees, consultants, grantees, or their employees, or volunteers who have been engaged to assist the agency in the performance of a contract, service, grant, cooperative agreement or other activity related to this system of records and who need to have access to the records in order to perform the activity. Recipients shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a; see also 5 U.S.C. 552a(m).

7. The name and current address of an individual may be disclosed from this system of records to the parent locator service of the Department of HHS or to other authorized persons defined by Pub. L. 93–647 for the purpose of locating a parent who is not paying required child support.

8. To any source from which information is requested in the course of a law enforcement or grievance investigation, or in the course of an investigation concerning retention of an employee or other personnel action, the retention of a security clearance, the letting of a contract, the retention of a grant, or the retention of any other benefit, to the extent necessary to identity the individual, inform the source of the purpose(s) of the request, and identify the type of information requested.

9. Disclosure may be made to a Federal, State, local, foreign, or tribal or other public authority of the fact that this system of records contains information relevant to the hiring or retention of an employee, the granting or retention of a security clearance, the letting of a contract, a suspension or debarment determination or the issuance or retention of a license, grant, or other benefit.

10. A record from any system of records set forth below may be disclosed to the Office of Management and Budget in connection with the review of private relief, legislative coordination and clearance process.

11. To a debt collection agency that the United States has contracted with for collection services to recover debts owed to the United States.

*Government-Wide Records*

Two systems of records are reported by the Department of Labor for all federal agencies since this Department has overall responsibility for the administration of the programs in connection with which these systems of records have been compiled. It is presumed that most, if not all federal agencies maintain systems of records comprising a portion of the government wide systems of records. In order to avoid duplication in reporting, the Department is reporting these systems on behalf of all agencies. The Department has control over these systems to the same extent as the Office of Personnel Management has control over systems of records containing federal employee personnel records.

1. *Federal Employees' Compensation Act Files*: All records relating to injury or death of civilian employees or other persons entitled to benefits under the Federal Employees' Compensation Act are the records of the Office of Workers' Compensation Programs of the Department of Labor. The Office asserts control of these records under the provisions of 5 U.S.C. 8149 and Department regulations at 20 CFR 10.10. This notice applies to copies of claim forms and other documents relating to a compensation claim maintained by the employing agency. This notice, however, does not apply to other medical or related files not created pursuant to the Federal Employees' Compensation Act which may be in the possession of an agency. This system is now entitled DOL/GOVT–1, Office of Workers' Compensation Programs, Federal Employees' Compensation File (formerly known as DOL/ESA–13).

Initial determinations on requests for access, amendment or correction of records maintained in this system of records shall be made by the OWCP district office having jurisdiction over the particular claim. In addition, requests for access to copies of records maintained by the employing agency may be directed to that agency. Administrative appeals from initial determinations denying access, amendment or correction, shall be addressed to the Solicitor of Labor, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210, as required by 20 CFR 70.9.

2. *Job Corps Student Records:* All records which contain information about students during their stay in Job Corps, from entrance to placement and/or termination, are records which must be maintained by the Job Corps center. The Office of Employment and Training Administration asserts control of these records under 29 U.S.C. 1691 et. seq. This system is now entitled DOL/GOVT–2, Job Corps Student Records (formerly known as DOL/ETA–14.)

Initial determinations concerning access, amendment or correction of this government-wide system of records shall be made by screening contractors, Job Corps Center Directors, Job Corps National or Regional Offices. Administrative appeals shall be referred to the Solicitor of Labor, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

*Special California Earthquake Cooperative Agreement*

The San Francisco, California Regional Office of the Department of Labor's Office of Assistant Secretary for Administration and Management

(OASAM), Region IX of OASAM, has entered into a reciprocal agreement with the U.S. Internal Revenue Service's Office of the Regional Counsel located in San Francisco. The purpose of this reciprocal agreement is to provide each with an alternative off-site location to store computer data. This back-up storage capacity will mitigate damage if an earthquake ever occurs in the San Francisco area. This agreement is based upon the fact that the respective offices of the participants are located at opposite ends of the downtown San Francisco district and the ground structure of the two areas is substantially different.

Addresses to Which Requests May Be Directed

The addresses of the various component units of the Department as well as its field offices are contained in Appendix 1 annexed to this document. For general assistance, you may wish to contact the Privacy Act Coordinators listed in Appendix 2.

In addition, the following government agencies also have Government-wide Systems of Records:

*Government-Wide Systems*

EEOC/GOVT-1—Equal Employment Opportunity Complaint Records and Appeal Records

FEMA/GOVT-1—Uniform Identification Systems for Federal Employees Performing Essential Duties During Emergencies

GSA/GOVT-2—Employment Under Commercial Activities Contracts

GSA/GOVT-3—Travel Charge Card Program

GSA/GOVT-4—Contracted Travel Services Programs

MSPB/GOVT-1—Appeal and Case Records

OPM/GOVT-1—General Personnel Records

OPM/GOVT-2—Employee Performance File System Records

OPM/GOVT-3—Records of Adverse Actions and Actions Based on Unacceptable Performance

OPM/GOVT-4—Executive Branch Public Financial Disclosure Reports and other Ethics Program Records

OPM/GOVT-5—Recruiting, Examining and Placement Records

OPM/GOVT-6—Personnel Research and Test Validation Records

OPM/GOVT-7—Applicant—Race, Sex, National Origin and Disability Status Records

OPM/GOVT-8—Confidential Statements of Employment and Financial Interests

OPM/GOVT-9—File on Position Classification Review Requests (Appeals) and Grade and Pay Retention Appeals

OPM/GOVT-10—Employee Medical File System Records

**DOL/GOVT-1**

**SYSTEM NAME:**

Office of Workers' Compensation Programs, Federal Employees' Compensation Act File.

**SECURITY CLASSIFICATION:**

Most files and data are unclassified. Files and data in certain cases have Top Secret classification, but the rules concerning their maintenance and disclosure are determined by the agency which has given the information the security classification of Top Secret.

**SYSTEM LOCATION:**

Central database is located at Computer Science Corporation, 11700 Montgomery road, Beltsville, Maryland, 20706. Case files and local databases are located at District Offices (see appendix 1 for addresses of those offices and responsible officials); files of employees of the Central Intelligence Agency are located at that agency. Copies of claim forms and other documents relating to a compensation claim may also be maintained by the employing agency. In addition, the records relating to third-party claims of FECA beneficiaries are maintained in the Division of Employee Benefits, U.S. Department of Labor, 200 Constitution Ave., NW, Washington, DC 20210, and the Office of the Regional Solicitor and Associate Regional Solicitor at various field locations.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals or their survivors who claim benefits under the FECA for injuries or death sustained while in the performance of duty, including local law enforcement officers and their survivors who claim benefits under the FECA. The FECA covers all federal employees and certain other individuals as defined. Individuals in addition to federal employees who are covered include: Civil Air Patrol, Peace Corps Volunteers, Job Corps enrolles, Volunteers in Service to America, members of the National Teacher Corps, certain student employees, certain employees of the Alaska Railroad, members of the Reserve Officer Training Corps, certain state and local law enforcement officers (in addition to those employed by the United States), certain former prisoners of war, and employees of certain commissions and other agencies. Prior to January 1, 1957, the FECA also covered reservists in the Armed Forces of the Unite States. Also covered are various classes of persons who provide or have provided personal service to the Government of the United States and certain volunteers with other government agencies.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records include reports of injury by the employee and employing establishment, claims by survivors for benefits accruing at the death of a federal employee or other covered individual, authorization for medical treatment, medical records, medical and transportation bills, compensation payment records, formal orders for or against payment of compensation, transcripts of informal hearings, any and all medical, employment and personal information submitted or gathered in connection with the claim, including vital statistics such as birth, death and marriage certificates, notes on telephone conversations held in connection with the claim, and information related to vocational rehabilitation plans and progress reports. Records may also include court records, insurance records, records of employers, articles from publications, published financial data, corporate information, bank information, and information received from various investigative and law enforcement agencies who report findings to OWCP relating to investigations concerning possible violations of federal civil and criminal law relating to the compensation claim. This system contains the work product of the Department of Labor and other government personnel and consultants involved in the development of the claim.

The system may also contain consumer credit reports of individuals indebted to the United States, correspondence to and from the debtor, information or records relating to the debtor's current whereabouts, assets, liabilities, income and expenses, debtor's personal financial statements, and other information such as the nature, amount and history of a debt owed by an individual covered by this system, and other records and reports relating to the implementation of the Debt Collection Act of 1982, including any investigative reports or administrative review matters. The individual records listed herein are included only as pertinent or applicable to the individual employee or beneficiary.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 8101 et seq., 20 CFR 1.1, et seq.

**PURPOSE(S):**

The Federal Employees' Compensation Act (FECA) establishes the workers' compensation system for federal employees, including a process for adjudicating and administering compensation claims. The records

RETENTION AND DISPOSAL:

Dispose of when no longer needed for administrative purposes.

SYSTEM MANAGER AND ADDRESS:

Chief, Division of Administration and Training Information, Occupational Safety and Health Administration, U.S. Department of Labor, 1555 Times Drive, Des Plaines, Illinois 60018.

NOTIFICATION PROCEDURE:

Any individual who wishes to be notified if this system of records contains a record pertaining to them may apply in writing to the system manager at the above address.

RECORD ACCESS PROCEDURE:

Any individual wishing to gain access to any non-exempt records pertaining to them, may apply in writing to the system manager at the system address listed above.

CONTESTING RECORD PROCEDURES:

Individuals wishing to request modification or deletion to any non-exempt records pertaining to them, may apply in writing to the system manager at the system address listed above.

RECORD SOURCE CATEGORIES:

Information contained in this system is obtained from individuals who become qualified borrowers by completing a Borrower's Agreement Form which contains data which is entered into the record system.

Information pertaining to Resource Center materials are taken from Resource Center files.

SYSTEM EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

Not applicable.

DOL/PWBA-1

SYSTEM NAME:

Employee Retirement Income Security Act (ERISA) Advisory Council on Employee Welfare and Pension Benefit Plans.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, 200 Constitution Avenue, NW, Room N-5766, Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Private persons who are members of or have been recommended for appointment to the Advisory Council on Employee Welfare and Pension Plans.

CATEGORIES OF RECORDS IN THE SYSTEM:

Biographical, professional and personal data contained in background files on members and prospective members.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1135, et seq.

PURPOSE(S):

To maintain a record of all members of and nominees for the Advisory Council on Employee Welfare and Pension Benefit Plans. These records are a source of professional and personal data and other background information.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

None, except for those routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Manual files.

RETRIEVABILITY:

Indexed alphabetically by subject's name.

SAFEGUARDS:

Files are maintained by Executive Secretary of the Advisory Council and are available or accessible only to limited Executive Staff members of the Office of the Assistant Secretary.

RETENTION AND DISPOSAL:

Break file annually. Transfer to Federal Records Center when three years old. Transfer to National Archives when 10 years old.

SYSTEM MANAGER(S) AND ADDRESS:

Assistant Secretary for Pension and Welfare Benefits, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N-5766, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals must furnish their full names for their records to be located and identified.

RECORD ACCESS PROCEDURES:

Same as Notification procedure. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records (5 CFR 297.201 and 297.203).

CONTESTING RECORD PROCEDURES:

Same as Notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought.

RECORD SOURCE CATEGORIES:

The individual concerned and groups or entities making recommendations for Council membership.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

DOL/PWBA-2

SYSTEM NAME:

Office of Enforcement Index Cards and Investigation Files.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, 200 Constitution Avenue, NW, Room N-5702, Washington, DC 20210 and all PWBA field offices.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Plan administrators, trustees, and those individuals who provide advice or services to employee benefit plans and other individuals involved in investigations and enforcement actions.

CATEGORIES OF RECORDS IN THE SYSTEM:

Information including plan name, plan administrator's name, service provider name, trustees and plan participant or beneficiary's name.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 1135, *et seq.*

PURPOSE(S):

This index system is used to access case files and correspondence files of plan administrators, trustees, and those individuals providing advice or services to the plan and other individuals involved in investigations and enforcement actions instituted by the Department of Labor (DOL) under the Employee Retirement Income Security Act of 1974 (ERISA). The investigative files are used in the prosecution of violations of law, whether civil, criminal or regulatory in nature.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

A record from this system of records may be disclosed to a Federal, State, local or foreign governmental authority,

HeinOnline -- 58 Fed. Reg. 49649 1993

in response to its request in connection with the hiring or retention of an employee, in the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant or benefit by the requesting agency to the extent that the information is relevant and necessary to the requesting agency's decision on such matters.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

The records in this system are maintained on 3 x 5 index cards and manual case files.

RETRIEVABILITY:

Records are retrieved by name of plan, participant or beneficiary's name, service provider name, and/or trustee name, case number, plan EIN/PN, service provider and/or trustee EIN. Index cards are filed alphabetically.

SAFEGUARDS:

Locked storage equipment. Direct access to and use of these records is restricted to authorized personnel in the Office of Enforcement and PWBA field offices.

RETENTION AND DISPOSAL:

Investigative case files are retained in the office for one year upon completion of litigation and/or actions based thereon, transferred to the Federal Records Center for seven years, then destroyed. Index cards are retained permanently.

SYSTEM MANAGER(S) AND ADDRESS:

Director of Enforcement, Pension and Welfare Benefits Administration, Department of Labor, 200 Constitution Avenue, NW, Room N–5702, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals should furnish their full name, address and employee benefit plan association, and identify the employee benefit plan by name, address and EIN (if known).

RECORD ACCESS PROCEDURES:

Specific materials in this system have been exempted from Privacy Act provisions under 5 U.S.C. 552a (j) and (k). To the extent that this system of records is not subject to exemption, it is subject to access and contest. A determination as to exemption shall be made at the time a request for access is received. Access procedures are the same as Notification procedure above. Individuals requesting access must also comply with Privacy Act regulations on verification of identity (29 CFR 70a.4 – 70a.6.).

CONTESTING RECORD PROCEDURES:

Same as Notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the system manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment the information sought.

RECORD SOURCE CATEGORIES:

Individual complaints, witnesses, interviews conducted during investigations on cases opened in the Office of Enforcement or in any of the field offices of PWBA.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

a. *Criminal Law Enforcement:* In accordance with subsection (j)(2) of the Privacy Act, information maintained for criminal law enforcement purposes in the files of the Office of Enforcement (OE) consisting of index cards and investigatory files is exempted from all provisions contained in 5 U.S.C. 552a, except those requirements set forth in subsections (b), (c) (1) and (2), (e)(4) (A) through (F), (e)(6),(7),(9),(10), and (11) and (i) of the Act.

b. *Other Law Enforcement:* In accordance with 5 U.S.C. 552a (k)(2), investigatory material in this system of records compiled for civil law enforcement purposes is exempt from subsections (c)(3); (d); (e)(1) ; (e)(4)(G), (H), and (I); and (f) of 5 U.S.C. 552a, provided however, that if any individual is denied any right, privilege, or benefit that he or she would otherwise be entitled to by Federal law, or for which he or she would otherwise be eligible, as a result of the maintenance of these records, such material shall be provided to the individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or prior to January 1, 1975, under an implied promise that the identity of the source would be held in confidence.

DOL/PWBA–3

SYSTEM NAME:

ERISA Coverage Correspondence Files.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, 200 Constitution Avenue, NW, Room N–5646, Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

The general public.

CATEGORIES OF RECORDS IN THE SYSTEM:

Letters from the general public relating to certain aspects of Title I of ERISA, the Department's replies thereto, advisory opinions and related internal memoranda, including notes pertaining to meetings and telephone calls.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

5 U.S.C. 1135, et seq.

PURPOSE(S):

These records are maintained to take action on or to respond to a complaint or an inquiry concerning certain aspects of Title 1 of ERISA.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Manual files and computer storage.

RETRIEVABILITY:

Manual files are indexed alphabetically, by name of correspondent. Data is entered into computer system by a control number.

SAFEGUARDS:

Access to these records is limited to authorized PWBA staff. Computer system is password protected and accessible only to personnel creating the database.

RETENTION AND DISPOSAL:

Manual records are maintained for four years then transferred to the Federal Records Center for five additional years, then destroyed. Computer files will be retained until incorporated into PWBA records disposition schedule.

HeinOnline -- 58 Fed. Reg. 49650 1993

SYSTEM MANAGER(S) AND ADDRESS:

Director of Regulations and Interpretations, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW., Room N-5671, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. All requests must be in writing and mailed, or presented in person during the Department's normal working hours.

RECORD ACCESS PROCEDURES:

Same as Notification procedure. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records (5 CFR 297.201 and 297.203).

CONTESTING RECORD PROCEDURES:

Same as Notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the system manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought.

RECORD SOURCE CATEGORIES:

Correspondence from individuals and responses thereto.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

DOL/PWBA-4

SYSTEM NAME:

Inquiry Correspondence Files.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, 200 Constitution Avenue, NW, Room N-5658, Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Members of Congress, Senators, and private citizens.

CATEGORIES OF RECORDS IN THE SYSTEM:

General and congressional inquiries and correspondence regarding all aspects of pension and welfare benefit plans and the status of individuals under these plans.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1135 et seq.

PURPOSE(S):

These records are used to take action on or respond to inquiries and responses from members of Congress, Senators, and private citizens.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

None, except for those routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Records are maintained in file cabinets and on computer system.

RETRIEVABILITY:

Inquiries and responses from Members of Congress, Senators and private citizens are indexed alphabetically by last name.

SAFEGUARDS:

Manual files are maintained in file cabinets with access limited to staff of the Division of Technical Assistance and Inquiries. Computer system is password protected and limited to use by authorized personnel.

RETENTION AND DISPOSAL:

Manual records are maintained for two years, then destroyed. Computer files are destroyed when three years old or when no longer needed for reference.

SYSTEM MANAGER(S) AND ADDRESS:

Director of Program Services, Pension and Welfare Benefits Administration, U.S. Department of Labor, Room N-5670, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals must furnish their full names for their records to be located and identified.

RECORD ACCESS PROCEDURES:

Same as Notification procedure. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records (5 CFR 297.201 and 297.03).

CONTESTING RECORD PROCEDURES:

Same as Notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought.

RECORD SOURCE CATEGORIES:

Congressional and public correspondence.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

DOL/PWBA-5

SYSTEM NAME:

Public Disclosure Request Tracking System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, 200 Constitution Avenue, NW, Room N-5507, Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Plan participants, general public, private organizations. State or local government.

CATEGORIES OF RECORDS IN THE SYSTEM:

Data regarding the request for information and/or reports regarding employee benefit plans or benefits. Data includes individual's name, street address, city, state, zip code, and telephone number.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

5 U.S.C. 1135 et seq.

PURPOSE(S):

These records are maintained to process requests made for information and/or reports in reference to pension and welfare benefit plans.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

These records are used by PWBA managers to document and process requests for information and to compile statistical reports regarding such requests for management information purposes.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Manual files and computer storage.

HeinOnline -- 58 Fed. Reg. 49651 1993

RETRIEVABILITY:

Requests are sorted numerically by public disclosure request number. Records on this system are retrieved by computer and manually using the name of requestor, public disclosure request number, or EIN/PN number.

SAFEGUARDS:

Manual files are maintained in file cabinets with access limited to authorized personnel. Computer system is password protected and accessible only to personnel creating and maintaining the database.

RETENTION AND DISPOSAL:

Manual records are maintained for two years, then destroyed. Computer files will be retained until incorporated in a PWBA records disposition schedule.

SYSTEM MANAGER(S) AND ADDRESS:

Director of Program Services, Pension and Welfare Benefits Administration, U.S. Department of Labor, Room N-5670, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals must furnish their full names for their records to be located and identified.

RECORD ACCESS PROCEDURES:

Same as Notification procedure. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records (5 CFR 297.201 and 297.03).

CONTESTING RECORD PROCEDURES:

Same as Notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought.

RECORD SOURCE CATEGORIES:

Sources of information contained in this system are the individual requests for disclosure of reports and/or information from the general public.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

DOL/PWBA-6

SYSTEM NAME:

PWBA Debt Collection/Management System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, 200 Constitution Avenue, NW, Room N-5711, Washington, DC 20210

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Plan Administrators and fiduciaries.

CATEGORIES OF RECORDS IN THE SYSTEM:

Records containing data regarding the assessment of fines/penalties under provisions of ERISA sections 502(c)(2), 502(i) and 502(l). Data includes individuals (or trade) name, street address, city, state, zip code, telephone number, taxpayer identification number, and transaction information (e.g. correspondence, debt status and payment records).

AUTHORITY OF MAINTENANCE OF THE SYSTEM:

31 U.S.C. 3711(f) and 29 CFR part 20.

PURPOSE(S):

Records are used for maintaining an ongoing Debt Collection/Management Program requiring tracking and accounting for assessed fines/penalties, determination of collection status and assignment of delinquent debts to private collection agencies.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:

Records may be disclosed to private collection agency in order for them to collect debts subject to this program.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

Records may be disclosed for delinquent accounts.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING AND DISPOSING OF RECORDS:

STORAGE:

Manual files and computer storage.

RETRIEVABILITY:

Debt Collection/Management data is sorted numerically by assigned case number. Records in this system are retrieved by computer and manually using the PWBA-assigned case number and a cross-reference debtor taxpayer identification number.

SAFEGUARDS:

Manual files are maintained in file cabinets with access limited to authorized personnel. Computer system is accessible, through password, only to personnel creating and maintaining the database.

RETENTION AND DISPOSAL:

Both, manual and automated records are maintained for two years after the case is closed or until expiration of applicable statute of limitations, whichever occurs first.

SYSTEM MANAGER AND ADDRESS:

Administrative Officer, Pension and Welfare Benefits Administration, U.S. Department of Labor, Room N-5711, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals must furnish their full name and taxpayer identification number for their records to be located and identified.

RECORD ACCESS PROCEDURE:

See Notification procedure above. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records. (See 29 CFR part 70a.)

CONTESTING RECORD PROCEDURE:

Same as Notification procedure above, except individuals desiring to contest or amend information maintained in the system should direct their written request to the system manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought.

RECORD SOURCE CATEGORIES:

Sources of information contained in this system are from records containing fines/penalties levied by the Pension and Welfare Benefits Administration under provisions of ERISA sections 502(c)(2), 502(i) and 502(l).

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

DOL/PWBA-7

SYSTEM NAME:

PWBA Employee Conduct Investigations.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Offices in Pension and Welfare Benefits Administration in the National Office.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

PWBA employee(s) against whom allegations of misconduct have been made.

CATEGORIES OF RECORDS IN THE SYSTEM:

The file contains investigative report(s) compiled in the course of employee misconduct investigations, including interviews and other data.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301.

PURPOSE(S):

The records are compiled as an adjunct to investigating allegations of employee misconduct, to make determinations on personnel actions and to document agency action in most cases.

ROUTINE USE OF RECORDS MAINTAINED IN THE SYSTEMS, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

None, except for those routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

The records are stored in file folders in metal cabinets.

RETRIEVABILITY:

Records are retrieved by name of subjecting investigation.

SAFEGUARDS:

The files are maintained in locked file cabinets with access only to those with a need to know the information to perform their duties. A charge out system is used to monitor and restrict the withdrawal of records from this file.

RETENTION AND DISPOSAL:

Records are retained for four years following the date either: (a) they are referred to the OIG; (b) they are transferred to OPM/GOVT–3 Records of Adverse Actions and Actions Based on Unacceptable Performance; or (c) it is determined that the allegation was without sufficient merit to warrant further action, after which they are destroyed by burning.

SYSTEM MANAGER(S) AND ADDRESS:

Director, Office of Program Planning, Evaluation, and Management, Pension and Welfare Benefits Administration, 200 Constitution Avenue NW, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Inquiries should be mailed or presented to the System Manager noted at the address listed above.

RECORD ACCESS PROCEDURES:

A request for access shall be addressed to the System Manager at the address listed above. Individuals must furnish the following information for their records to be located and identified:

a. Name.

b. Approximate date of the investigation.

c. Individuals requesting access must also comply with the Privacy Act regulations regarding verification of identity at 29 CFR 70a.4.

CONTESTING RECORD PROCEDURES:

A petition for amendment shall be addressed to the System Manager and must meet the requirements of 29 CFR 70a.7

RECORD SOURCE CATEGORIES:

Complaints through the Office of the Inspector General's and the General Accounting Office's hotline system; allegations and incident reports submitted by employees; statements by the subject, fellow employees or members of the public; and other investigative reports.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

In accordance with 5 U.S.C. 552a(k)(2), investigatory material in this system of records compiled for law enforcement purposes is exempt from subsections (c)(3); (d); (e)(1); (e)(4) (G), (H), and (I); and (f) of 5 U.S.C. 552a, provided however, that if any individual is denied any right, privilege, or benefit that he or she would otherwise be entitled to by Federal law, or for which he or she would otherwise be eligible, as a result of the maintenance of these records, such material shall be provided to the individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or prior to January 1, 1975, under an implied promise that the identity of the source would be held in confidence.

DOL/SOL–1

SYSTEM NAME:

Conflict of Interest File.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Division of Labor-Management Laws, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210 and Offices of the Regional Solicitors and Associate Regional Solicitors at various field locations.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Those persons from whom reports may be required under Sections 202 and 203, Labor-Management Reporting and Disclosure Act (LMRDA) (29 U.S.C. 432, 433), are those allegedly having conflicts of interest who must file reports under these sections. Investigation relates to civil litigation or criminal prosecution.

CATEGORIES OF RECORDS IN THE SYSTEM:

Investigative reports, legal analyses, forwarding memoranda.

AUTHORITY FOR MAINTENANCE OF THE SYSTEMS:

Section 202, LMRDA (29 U.S.C. 432); section 203, LMRDA (29 U.S.C. 433); section 601, LMRDA (29 U.S.C. 521) (investigative authority); section 209, LMRDA (29 U.S.C. 439); section 607, LMRDA (29 U.S.C. 527).

PURPOSE:

To enforce LMRDA requirement that persons with conflicts of interest file designated reports.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

Files interchanged in the processing of cases with the Department of Justice and Assistant U.S. Attorneys to enforce the LMRDA by court action.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Manual files.

RETRIEVABILITY:

Indexed by name.

SAFEGUARDS:

Restricted to official business within agency, personnel screening.

RETENTION AND DISPOSAL:

Files are maintained for five years and then destroyed.

# ATTACHMENT B



Monday,
April 8, 2002

## Part II

# Department of Labor

## Office of the Secretary

## Privacy Act of 1974; Publication in Full of All Notices of Systems of Records Including Several New Systems; Publication of Proposed Routine Uses; Notice

**DEPARTMENT OF LABOR**

**Office of the Secretary**

## Privacy Act of 1974; Publication in Full of All Notices of Systems of Records Including Several New Systems; Publication of Proposed Routine Uses

**AGENCY:** Office of the Secretary, Labor.

**ACTION:** Notice; publication in full of all notices of systems of records, including several new systems; publication of a new universal routine use for all systems of records; publication of several proposed system-specific routine uses, as well as substantive amendments.

**SUMMARY:** This notice provides an accurate and complete text with both proposed substantive and non-substantive changes of this agency's 147 systems of records which are currently maintained under the Privacy Act of 1974. This notice also proposes one new universal routine use for all of the systems. This notice will update our last complete publication in full which appeared in the **Federal Register** on September 23, 1993. In addition to 33 new systems of records, which are being published for the first time, it will propose substantive amendments to 60 other systems which have been previously published. Twenty-nine (29) systems will be amended in a non-substantive manner. The notice deletes 31 systems.

**DATES:** Persons wishing to comment on newly published systems and on the proposed routine uses, both universal and specific, may do so by June 7, 2002.

**EFFECTIVE DATE:** Unless there is a further notice in the **Federal Register**, the new systems of records and the proposed routine uses will become effective June 27, 2002. The notices, pertaining to the 29 systems with non-substantive (administrative) changes are effective on April 8, 2002.

**ADDRESSES:** Written comments may be sent or delivered to Robert A. Shapiro, Associate Solicitor, Office of the Solicitor, Division of Legislation and Legal Counsel, U.S. Department of Labor, Room N–2428, 200 Constitution Avenue, NW., Washington, DC 20210.

**FOR FURTHER INFORMATION CONTACT:** Miriam McD. Miller, Co-Counsel for Administrative Law, Office of the Solicitor, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N–2428, Washington, DC 20210; Telephone (202) 693–5500.

**SUPPLEMENTARY INFORMATION:**

### 1. Background

Pursuant to section three of the Privacy Act of 1974 (5 U.S.C. 552a(e)(4)), hereinafter referred to as the Act, the Department hereby publishes notice of a new universal routine use, as well as thirty-three (33) new systems of records currently maintained pursuant to the Act. This document supplements this Department's last consolidated publication of all of its Privacy Act systems of records. On September 23, 1993, in Volume 58 at Page 49548 of the **Federal Register**, the Department published a notice containing 138 systems of records which were maintained, at that time, under the Act. That document gave notice of eleven paragraphs containing universal routine uses which applied, across the board, to all 138 systems of records, except for the two employee counseling and medical systems of records. Those eleven paragraphs were presented in the General Prefatory Statement for that document. Thereafter, seven new systems of records were established as set forth in the following five documents. These five documents were as follows: 59 FR 18156, April 15, 1994 (two new systems); 60 FR 24897, May 10, 1995 (one new system); 60 FR 31495, June 15, 1995 (one new system); 62 FR 16610, April 7, 1997 (two new systems); and 62 FR 53343, October 14, 1997 (one new system). The 33 new systems published herein will increase the total number of systems to 147 after accounting for the 31 systems which are being deleted in this notice.

In addition to the seven new systems, discussed above, the Department made amendments to its existing systems subsequent to the September 23, 1993 consolidated publication. These amendments were published in three separate documents published as follows: 59 FR 47361, September 15, 1994, 63 FR 2417, January 15, 1998, and 63 FR 25234, May 7, 1998. You should also note that amendments were made to existing systems in the same documents which established the seven new systems of records.

### 2. The Current Action

Pursuant to section three of the Privacy Act of 1974 (5 U.S.C. 552a(e)(4)), the Department hereby publishes an updated consolidated publication in full for all of its 147 systems of records, including 33 new systems, currently maintained pursuant to the Privacy Act of 1974. As noted above, the Department's last consolidated publication in full appeared in the **Federal Register** on September 23, 1993, at page 49548 in Volume 58 of the **Federal Register**.

This notice also proposes one new universal routine use to be added to the Department's current list of eleven universal routine uses. These universal routine uses apply across the board to all of the Department's systems of records. The original eleven universal routine uses, being republished herein, are essentially a refined version of those universal routine uses which were published on September 23, 1993, at pages 49554–49555 in Volume 58 of the **Federal Register**.

Besides these twelve universal routine uses, both substantive and non-substantive changes have been made to certain of the system-specific routine uses which appear within the body of most of the systems.

As noted above, this notice will add 33 new systems which are being published for the first time; it amends 60 existing systems in a substantive manner, and it amends 29 existing systems in a non-substantive manner. This notice deletes 31 systems.

The following is a listing of the substantive and non-substantive additions, changes, and deletions to the various departmental systems of records. This listing will not describe extremely non-substantive revisions to the Department's existing systems of records.

The public, the Office of Management and Budget (OMB), and the Congress are invited to submit written comments on the 33 new systems, and on the other substantive amendments. A report on all of the new systems and on the substantive amendments has been provided to OMB and to the Congress as required by OMB Circular A–130.

### Revisions to the Universal Routine Uses Appearing Within the General Prefatory Statement

*A. Refinements to the Current Universal Routine Uses*

The Department is proposing certain grammatical refinements to the eleven routine uses of the records which currently appear within the General Prefatory Statement. In addition, routine use number 10, disclosure to the Office of Management and Budget (OMB), is being broadened to include all legislative matters, instead of being limited to private relief legislation. These universal routing uses apply across the board to all current systems of records, except for the two employee counseling and medical systems.

*B. A New Universal Routine Use*

The new universal routine use of the records proposed herein will be

designated as universal routine use number 12, and will appear within the General Prefatory Statement. This routine use will permit the Department to disclose the fact that an employee conduct investigation may be underway, based upon an allegation of prohibited activity, in the event of a media request, or in the event that the subject of the investigation has released information to the public.

**Government-Wide Systems by the Department of Labor**

DOL/GOVT–1, entitled *Office of Workers' Compensation Programs, Federal Employees' Compensation File*, is being amended by maintaining its covered records in an electronic format as well as in paper files. The subject of the file, as well as other parties, as specified in this notice, will be able to access information relating to the claim in either format. Ultimately, the plan is to maintain all open claim files only electronically. In addition, this system of records is revising its Routine Uses category to balance the privacy interests of those persons seeking benefits under the FECA with the benefits of providing access to these records for the purposes specified in the routine uses.

DOL/GOVT–2, entitled *Job Corps Student Records*, is being revised to rename its enrollees as students.

**Office of the Secretary (OSEC)**

DOL/OSEC–1, *Supervisor's/Team Leader's Records of Employees*, is amended by revising several of its categories so that new information can be collected such as labor relations information and requests for reasonable accommodation. For this purpose, the Category of Records and Routine Uses Category have been expanded. In addition, the system has been renamed, and the Location category has been amended.

DOL/OSEC–4, *Credit Data on Individual Debtors*, has been deleted since it is no longer needed inasmuch as this function has been taken over by the U.S. Treasury Department. Accordingly, the records have been destroyed.

DOL/OSEC–5, *High Performance Work Place Tracking Database*, has been deleted since it never became operational, and no records were ever created.

**Office of the Assistant Secretary for Administration and Management (OASAM)**

DOL/OASAM–4, *Occupational Accident/Injury/Illness Reporting System (AIIRS) File*, has been amended to reflect a new place for the system location and a new title of the system manager.

DOL/OASAM–5, *Rehabilitation and Counseling File*, has been amended by revising several categories in order to make the notice more descriptive.

DOL/OASAM–7, *Employee Medical Records*, has been amended by revising several categories in order to make the notice more descriptive.

DOL/OASAM–11, *Training Information System*, and DOL/OASAM–14, *Automated Position Control System*, have been transferred into new system DOL/OASAM–36, *PeoplePower*, and are therefore, deleted from this notice.

DOL/OASAM–12, *Administrative Grievance Records*, has been amended to reflect a new place for the system location and a new title of the system manager.

DOL/OASAM–15, *Travel and Transportation System*, has been transferred to the Office of the Chief Financial Officer, and has been renumbered as DOL/CFO–3.

DOL/OASAM–17, *Equal Employment Opportunity Complaint Files*, has been amended to reflect a new place for the system location and a new title of the system manager.

DOL/OASAM–19, *Negotiated Grievance Procedure and Unfair Labor Practice Files*, has been amended to reflect a new place for the system location and a new title of the system manager.

DOL/OASAM–20, *Personnel Investigation Records*, has been amended to reflect a new place for the system location and a new title of the system manager.

DOL/OASAM–22, *Civil Rights Center Citizen Discrimination Complaint Files*, has been amended to reflect a new place for the system location and a new title of the system manager. Also, the system of records is being amended to reflect additional statutory jurisdiction for the Welfare-to-Work grant program and the Workforce Investment Act.

DOL/OASAM–23, *Travel Management Center*, has been amended to reflect a new title for the system.

DOL/OASAM–24, *Privacy Act/ Freedom of Information Act Requests File System*, has been amended to reflect a new place for the system location and a new title of the system manager.

DOL/OASAM–25, *Intergovernmental Personnel Act Assignment Records*, has been amended to reflect a new place for the system location and a new title of the system manager.

DOL/OASAM–26, *Frances Perkins Building Parking Management System*, is being amended with respect to the category of Records to add the Social Security Numbers of the individuals who apply for and receive parking privileges. In addition, the category for Routine Uses will be amended so that data can be disclosed by DOL to other governmental agencies to enable these agencies to compare the names of car pool members. Finally, the categories for Records and Record Source are being amended to permit other government agencies to disclose data to DOL so that DOL can compare the names of car pool members.

DOL/OASAM–27, *Employee/ Contractor Identification Program*, has been amended to reflect a new place for the system location and a new title of the system manager.

DOL/OASAM–28, *Incident Report/ Restriction Notice*, has been amended to reflect a new place for tbe system location and a new title of the system manager.

DOL/OASAM–29, *OASAM Employee Administrative Investigation File*, has been amended to reflect a new place for the system location and title of the system manager.

DOL/OASAM–30, *Injury Compensation System (ICS)*, has been deleted because its information belongs in DOL/GOVT–1, this Department's government-wide system for processing injury claims by federal employees. That system is entitled *Office of Workers' Compensation Programs, Federal Employees Compensation File*.

DOL/OASAM–31, *DOL Flexible Workplace (Flexiplace) Programs Evaluation and Files*, has been amended to reflect that the flexiplace program has advanced from a pilot program to a permanent program. Also, the categories for Location and System Manager have been amended to reflect changes in both.

DOL/OASAM–32, *Transit Subsidy Management System*, is a new system of records to be used to validate identification of employees who request and receive a transit subsidy.

DOL/OASAM–33, *Entity Database*, is a new system of records which contains the data to complete applications, personnel and administrative forms, and to provide input to various small systems used in administrative and management of DOL employees.

DOL/OASAM–34, *DOL Fitness Association (DOLFA) Membership Files*, is a new system of records which is used to administer the Department's Fitness Center which provides exercise facilities in the building.

DOL/OASAM–35, *DOL Child Care Subsidy Programs Records*, is a new system of records which will establish and verify Departmental employees' eligibility for child care subsidies in

order for the Department to provide monetary assistance to its employees.

DOL/OASAM–36, *PeoplePower*, is a new electronic system of records which will produce official personnel actions notifications, and to store and provide access to current and historical human resource information for all of the Department's employees. It will also aid in the performance of several management functions. Former systems, DOL/OASAM–11 and DOL/OASAM–14, have been transferred into this new system.

**Office of the Administrative Law Judges (OALJs)**

DOL/OALJ–1 has been renamed the *Office of Administrative Law Judges Case Tracking System*, and its Routine Use category has been amended to state that its proceedings and court dockets records are public and are available for public inspection.

DOL/OALJ–2, entitled *Office of Administrative Law Judge Case Files*, is a new system of records for the purpose of maintaining records in the adjudication of cases and the determination of issues in hearings and appeals proceedings. Its Routine Uses category provides for public disclosure of its proceedings and decisions.

DOL/OALJ–3, entitled *Contract List*, is a new system of records for the purpose of maintaining a list of contractors to assist in managing contracts with contractors.

DOL/OALJ–4, entitled *Notification List*, is a new system of records for the purpose of providing electronic mail notifications of web site updates to the registrants in the system.

**Office of the Administrative Review Board**

DOL/ARB–1, *Administrative Review Board Appeals Files*, (formerly DOL/OAA–1) has been amended and updated to reflect the change in agency name from Office of Administrative Appeals to Administrative Review Board and to clarify the routine uses.

**Office of the American Workplace (OAW)**

This Office no longer exists, but its duties and responsibilities have been transferred into the Employment Standards Administration (ESA). In this connection, in the **Federal Register** of October 14, 1997 (62 FR 53343 at 53347), DOL/OAW–1 was renamed as DOL/ESA–45, *Investigative Files of the Office of Labor-Management Standards*.

The following four systems of the OAW are being deleted as noted below. The records for these four systems have been transferred to the National Archives and Records Administration (NARA) since they are permanent records.

DOL/OAW–2, *Lists of Airline Employees Protected Under the Rehire Program*, is being deleted because this program is inactive.

DOL/OAW–3, *Semi-Annual Lists of Hired Employees*, is being deleted because this program is inactive.

DOL/OAW–4, *Rehire Program Appellant and Inquiry Files*, is being deleted because this program has been terminated.

DOL/OAW–5, *OLMP/OSP, Redwood Employee Protection Program, Health, Welfare, and Pension Claims and Benefit Payments* (including severance benefits and benefits for salary replacement, retraining, job search and relocation) is being deleted because this program has been terminated.

**Office of the Assistant Secretary for Policy (ASP)**

DOL/ASP–1, *National Agricultural Workers Survey (NAWS) Research File, Case Tracking Files, Name Index, USDOL/ASP*, is amended by changing several categories including Location, Records, Purpose and Routine Uses. The revised Routine Uses Category will provide additional protection to the privacy interests of the participants in the study. This additional privacy protection is achieved by making several of the Universal Routine Uses, contained within the General Prefatory Statement, inapplicable to this system of records.

**Benefits Review Board (BRB)**

DOL/BRB–1, *Appeals Files—Benefits Review Board*, has been amended to reflect the new address of the system's location and to clarify the routine uses.

**Bureau of Labor Statistics (BLS)**

DOL/BLS–2, *Staff Utilization System*, is being deleted because this system of records has been closed, and its records have been destroyed.

DOL/BLS–4, *Business Research Advisory Council* and DOL/BLS–5, *Labor Research Advisory Council*, are being deleted. Information and data for all of the Department's advisory committees have been transferred to the Office of Small Business Programs (DOL/OSBP) which has established a new system of records for this purpose, entitled DOL/OSBP–2, *Department of Labor Advisory Committees Members Files*.

DOL/BLS–6, *Applicant Race and National Origin (ARNO) System, Form E–7*, has been amended to reflect a new title of the system manager.

DOL/BLS–7, *BLS Employee Conduct Investigation*, has been amended to reflect a new title of the system manager.

DOL/BLS–8, *BLS Employee ADP Training History*, is being amended to include the employee's Social Security Number, and a new title of the system manager. In addition, certain minor changes are being made.

DOL/BLS–9, *Routine Administrative Files*, is being amended by revising several categories to make the system more descriptive. These categories are Individuals Covered, Records, and Record Sources. In addition, certain non-substantive, administrative changes are being made throughout the system.

DOL/BLS–11, NIH and Boeing User ID Database, is being renamed as *Mainframe User ID Database*, and the system is being amended to reflect a new location for the system's electronic records and a new title of the system manager.

DOL/BLS–13, *National Longitudinal Survey of Youth 1979 (NLSY79) Database*, and DOL/BLS–17, *National Longitudinal Survey of Youth 1996 (NLYS96)*, which are each research surveys of youth, are being expanded so that information can be received from persons who interact with the respondents.

DOL/BLS–15, *Management Research Files*, is being deleted, because the underlying project was closed down, and no records were ever created.

DOL/BLS–16, *Annual Survey of Occupational Injuries and Illnesses*, is being deleted as a Privacy Act system of records, because these records are no longer maintained or retrieved by name or by a personal identifier.

DOL/BLS–18, *Postal Square Building Parking Management Records*, is a new system which is needed to administer the parking and car pool programs at the Postal Square Building wherein the Bureau is housed.

DOL/BLS–19, *Customer Information Files*, is a new system to maintain and service the list of customers who request BLS information.

DOL/BLS–20, *Fellowship Applicants and Recipients Files*, is a new system which maintains a list of applicants and recipients of fellowship awards. These individuals are not federal employees but are assigned to work with the BLS staff and/or BLS non-public data files.

**Office of the Chief Financial Officer (CFO)**

DOL/CFO–1, *Attendance, Leave and Payroll File*, is being amended by revising the category of Records in the System to include data from the newly created DOL/OASAM–32, *Transit*

*Subsidy Management System.* It is amended by changing the category for Routine Uses, by permitting disclosure of data to other governmental agencies for the purpose of comparing transit subsidy recipients and car pool applicants. This system of records was last published on January 15, 1998 at 63 FR 2417. That publication inadvertently failed to list certain previously approved disclosures under paragraphs E. and F. of the Routine Uses Category. (An earlier publication of this system, at 62 FR 16614, on April 7, 1997, correctly contained the previously approved disclosures). This document lists all approved disclosures. Finally, an additional routine use, permitting disclosure of information to labor organizations, is being added.

DOL/CFO–3 is a new system for the CFO, having been transferred into CFO from OASAM. It is entitled the *Travel and Transportation System,* and was formerly entitled OASAM–15.

**The Office of Disability Employment Policy (ODEP) formerly entitled the President's Committee on Employment of People With Disabilities (PCEPD)**

DOL/PCEPD–1, *Job Accommodation Network (JAN) Files,* has been redesignated as DOL/ODEP–1 because of a reorganization within the Department.

DOL/ODEP–2, *Workforce Recruitment Program (WRP) Database,* is a new system of records to maintain records on a database resource of college students with disabilities so that federal and private sector employers may be able to identify qualified employees in a variety of fields.

**Employees' Compensation Appeals Board (ECAB)**

DOL/ECAB–1, *Employees' Compensation Appeals Board Docket Records,* has been amended to reflect the new address of the system location and to clarify the routine uses.

DOL/ECAB–2, *Employees' Compensation Appeals Board Disposition Records,* has been amended to reflect the new address of the system location and to clarify the routine uses.

**Employment Standards Administration (ESA)**

DOL/ESA–2, *Office of Federal Contract Compliance Programs, Complaint Case Files,* is changed to correct name of system and to add "class action" to Record Source Categories.

DOL/ESA–5, *Office of Workers' Compensation Programs, Black Lung Antidiscrimination Files,* has been refined in a non-substantive manner.

DOL/ESA–6, *Office of Workers' Compensation Programs, Black Lung Benefits Claim File,* has been refined in a non-substantive manner.

DOL/ESA–12, *Office of Workers' Compensation Programs, Black Lung X-ray Interpretation File,* is being deleted because these records have been transferred into DOL/ESA–6.

DOL/ESA–15, *Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Case Files,* has been amended with respect to the category for Routine Uses. Disclosures have been both expanded and reduced by these amendments.

DOL/ESA–24, *Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Special Fund System,* has been amended with respect to the category for Routine Uses. Disclosures have been both expanded and reduced by these amendments.

DOL/ESA–25, *Office of Federal Contract Compliance Programs, Executive Management Information Systems (OFCCP/EIS),* is amended to include "TRIS" in the system names, to change Location, to change Categories of Individuals Covered By The System, to change Categories of Records In The System, to change Authority for Maintenance of the system, to change Purpose, to change Retrievability.

DOL/ESA–26, *Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Investigation Files,* has been amended by adding a note to the category for Routine Uses to provide that, pursuant to 5 U.S.C. 552a(b)(1), information from this system of records may be disclosed to members and staff of the Benefits Review Board, the Office of Administrative Law Judges, the Office of the Solicitor and other components of the Department who have a need for the record in the performance of their duties.

DOL/ESA–27, *Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Claimant Representatives,* has been amended by adding a note to the category for Routine Uses to provide that, pursuant to 5 U.S.C. 552a(b)(1), information from this system of records may be disclosed to members and staff of the Benefits Review Board, the Office of Administrative Law Judges, the Office of the Solicitor and other components of the Department who have a need for the record in the performance of their duties.

DOL/ESA–28, *Office of Workers' Compensation Programs, Physicians and Health Care Providers Excluded under the Longshore Act,* has been amended with respect to the category for Routine Uses. Disclosures have been both expanded and reduced by these amendments. In addition, a note has been added to the category for Routine Uses to provide that, pursuant to 5 U.S.C. 552a(b)(1), information from this system of records may be disclosed to members and staff of the Benefits Review Board, the Office of Administrative Law Judges, the Office of the Solicitor and other components of the Department who have a need for the record in the performance of their duties.

DOL/ESA–29, *Office of Workers' Compensation Programs, Physicians and Health Care Providers Excluded under the Federal Employees' Compensation Act.* The same changes are made as described above with respect to DOL/ESA–28.

DOL/ESA–30, *Office of Workers' Compensation Programs, Black Lung Automated Support Package,* has been refined in a non-substantive manner.

DOL/ESA–31, *Office of Federal Contract Compliance Programs, Time Reporting Information System (TRIS)* is being deleted because it has been merged into DOL/ESA–25, *Office of Federal Contract Compliance Programs, Management Information System (OFCCP/MIS).*

DOL/ESA–33, *Time Report Component of the Wage and Hour Investigative Support and Reporting Database (WHISARD), Compliance Officer's Weekly Report,* is amended to add "leave records" to the Categories of Records, add "statute" to Purpose, add "investigator" to Record Source Category, add the "Systems Exempted" Category which was inadvertently omitted from the previous publication.

DOL/ESA–34, *Farm Labor Contractor Registration File,* is amended to correct the name of the Florida system location, remove extraneous references in the Authority for Maintenance of the System, correct the name of the Florida storage location, correct the identity and address of system manager, and correct the identity and address of the person to whom contesting inquiries should be addressed and remove "Social Security Number" from the information required to make such inquiry.

DOL/ESA–35, *Farm Labor Contractor Employee Registration File,* is changed to correct the name of the Florida system location, remove extraneous references in the Authority for Maintenance of the System, correct the name of the Florida storage location, correct the identity and address of the System Manager, and correct the identity and address of the person to whom contesting inquiries should be

addressed and remove "Social Security Number" from the information required to make such inquiry.

DOL/ESA–36, *MSPA Civil Money Penalties in the Wage and Hour Investigative Support and Reporting Database (WHISARD)*, is amended to: Delete reference to "FLCRA" in the title of the record; add "District" offices to the system locations, remove extraneous references in the Authority for Maintenance of the System; add "District" offices to the storage locations; correct the identity and address of the system manager; correct the identity and address for Notification Procedure and remove "Social Security Number" from the information required to make such inquiry; correct the identity and address for record access procedures; and remove "social security number" from the information required to make such inquiry; and correct the identity and address for contesting record procedures and remove "social security number" from the information required to make such inquiry.

DOL/ESA–37, *MSPA Public Central Registry Records Files*, is changed to remove extraneous references in the authority for maintenance of the system, to add language in the routine uses category to allow disclosure of registration information via an "800" telephone number required by and published in 29 CFR 500.170; correct the identity and address of system manager, correct the identity and address for contesting record procedures and remove "Social Security Number" from the information required to make such inquiry, and to add "applications" to the record source categories.

DOL/ESA–38, *Wage and Hour Regional Office Clearance List—MSPA Registration*, is amended to show that the category of records shown as "personal identification" means "names, addresses and Social Security Numbers", to remove extraneous references in the Authority for Maintenance of the System, to include "providing historical and current compliance information to Wage and Hour National, Regional, and District offices as a purpose, correct the identity and address of system manager, and correct the identity and address for contesting record procedures and remove "Social Security Number" from the information required to make such inquiry.

DOL/ESA–39, *State Employment Service Clearance List—MSPA Registration*, is changed to: Remove "Division of Labor and Industry, Baltimore, Maryland; Delaware Department of Labor, Dover, Delaware; and New York Department of Labor, Albany, New York" from system location; to show that the category of records shown as "personal identification" means "names, addresses and social security numbers"; to remove extraneous references in the Authority for Maintenance of the System; to correct the routine uses of records to show that this record will be disclosed to the Department of Labor and Employment Security, Tallahassee, Florida; New Jersey Department of Labor, Trenton, New Jersey; and Virginia Employment Commission, Richmond, Virginia; to correct the identity and address of the system manager; and to correct the identity and address for contesting record procedures and remove "Social Security Number" from the information required to make such inquiry.

DOL/ESA–40, *MSPA Tracer List*, is amended in Categories of Records to Delete reference to "FLCRA" in the title of the record, remove "Social Security Numbers" and add "certificate of registration numbers", to remove extraneous references in the authority for maintenance of the system, correct the identity and address of system manager, correct the identity and address for notification procedure and remove "social security number" from the information required to make such inquiry, correct the identity and address for record access procedures and remove "Social Security Number" from the information required to make such inquiry, and correct the identity and address for contesting record procedures and remove "Social Security Number" from the information required to make such inquiry.

DOL/ESA–41, *MSPA Certificate Action Records Files*, is amended to: Delete reference to "FLCRA" in the title of the record, remove extraneous references in the authority for maintenance of the system, add "and maintain a record" of persons who filed applications to the purpose, correct the identity and address of system manager, correct the identity and address for contesting record procedures and remove "Social Security Number" from information required to make such inquiry.

DOL/ESA–42, *Case Registration/Investigator Form; in the Wage and Hour Investigative Reporting Database (WHISARD)*, is amended to change system name, to change categories of individuals covered, to change retrievability, and to make it an exempt system.

DOL/ESA–43, *Office of Workers' Compensation Programs, Federal Employees' Compensation Act and Longshore and Harbor Workers' Compensation Act Rehabilitation Files*, has been amended with respect to the category for Routine Uses. Disclosures have been both expanded and reduced by these amendments. In addition, a note has been added to the category for Routine Uses to provide that, pursuant to 5 U.S.C. 552a(b)(1), information from this system of records may be disclosed to members and staff of the Benefits Review Board, the Office of Administrative Law Judges, the Office of the Solicitor and other components of the Department who have a need for the record in the performance of their duties.

DOL/ESA–44, *Office of Workers' Compensation Programs, Federal Employees' Compensation Act (FEC) and Longshore and Longshore and Harbor Workers' Compensation Act Rehabilitation Counselor Case Assignment, Contract Management and Performance, and Federal Employees' Compensation Act Field Nurses Files*, has been amended by the following additions: The note following the routine uses category regarding telephonic disclosure of information, which currently appears in the other ESA/OWCP Privacy Act Systems of Records, has been added and language is inserted into this note to reflect that, pursuant to 5 U.S.C. 552a(b)(1), information from this system of records is disclosed to members and staff of the Benefits Review Board, the Employees' Compensation Appeals Board, the Office of Administrative Law Judges, the Office of the Solicitor and other components of the Department who have a need for the record in the performance of their duties.

DOL/ESA–45, *Investigative Files of the Office of Labor-Management Standards (Formerly DOL/OAW–1)*, has been amended to reflect a reorganization of the Office of Labor-Management Standards (OLMS); to clarify the Categories of Individuals Covered by the System; to include the Congressional Accountability Act of 1995 (CAA); to change the authority citations; to include CAA in the Purpose; to make changes in the retention schedule, and to make typographical corrections.

DOL/ESA–46, is a new system entitled, *Migrant and Seasonal Agricultural Worker Protection Act (MSPA) Ineligible Farm Labor Contractors*, which is being established in order to maintain a listing of individuals who are ineligible to engage in any activity as a farm labor contractor or farm labor contractor employee. This listing is available to the general public, upon request.

DOL/ESA–47 is a new electronic system, entitled *Youth Peddler Bulletin*

*Board,* which is being established to exchange information with law enforcement agencies about individuals and organizations that employ young children as "door-to-door candy sellers." Access is available only to those enforcement agencies through the issuance of a "password".

DOL/ESA–48 is a new system, entitled "*Customer Service" component of the Wage Hour Investigative Support and Reporting Database (WHISARD),* which is being established to provide Wage and Hour employees with an index of individuals who contact the Wage and Hour Division. This information may be used to provide assistance or to facilitate the processing of complaints.

DOL/ESA–49 is a new system, entitled *Office of Workers' Compensation Programs, Energy Employees' Occupational Illness Compensation Program Act File,* which is being established in order to adjudicate claims of current and former employees of the Department of Energy, its contractors, and predecessor agencies, and other individuals for compensation under the Energy Employees' Occupational Illness Compensation Programs Act (EEOICPA).

DOL/ESA–50 is a new system entitled *Office of Workers' Compensation Programs, Physicians and Health Care Providers Excluded under the Energy Employees' Occupational Illness Compensation Program Act,* which is being established as a companion system to DOL/ESA–49 in order to adjudicate claims of individuals for compensation under the Energy Employees' Occupational Illness Compensation Programs Act (EEOICPA).

DOL/ESA–51 is a new system entitled *OLMS Public Disclosure Request Tracking System,* which is being established to process requests made to the OLMS Public Disclosure Room, to prepare requests for payment, and to process payments.

**Employment and Training Administration (ETA)**

DOL/ETA–1, *Bureau of Apprenticeship and Training, Budget and Position Control File,* has been amended to include information from DOL/ETA–2, *Bureau of Apprenticeship and Training, Program Management Group, Budget and Position Control File.*

DOL/ETA–2 has been deleted since its records and function have been transferred into to DOL/ETA–1.

DOL/ETA–4, *Apprenticeship Management System (AMS), is being renamed Apprenticeship Information Management System (AIMS).*

DOL/ETA–8, *Job Corps Management Information System (JCMIS) File is being renamed Job Corps Student Pay, Allotment and Management Information System (SPAMIS).*

DOL/ETA–21, *Employment and Training Administration Advisory Committees Members Files,* has been deleted. Information and data for all of the Department's advisory committees have been transferred to the Office of Small Business Programs(SBA) which has established a new system of records for this purpose, entitled DOL/OSBP–2, *Department of Labor Advisory Committees Members Files.*

DOL/ETA–23, *Federal Committee on Apprenticeship,* has been deleted. The information is to be included in a new department-wide system DOL/OSBP–2, described above.

DOL/ETA–25, *DOL/ETA Evaluation Research Projects of the Unemployment Compensation System,* has been amended to reflect a new name, and a new system manager.

DOL/ETA–27, *Youth Opportunity Grant Program Information Files,* is a new management information system designed to facilitate the uniform compilation and analysis of programmatic data necessary for reporting, monitoring, and evaluation purposes.

**Office of Inspector General (OIG)**

DOL/OIG–1, *General Investigative Files, Case Tracking Files, and Subject/Title Index, USDOL/OIG,* has been amended to reflect the title change (to *Investigative Files, Case Tracking System, Analysis, Complaints, Inspections, and Evaluation Files,* describe the system's categories of records more completely, clarify the routine uses and reflect the number of years files are retained.

DOL/OIG–2, *Freedom of Information/Privacy Act Records,* has been amended to clarify the routine uses.

DOL/OIG–3, *Case Development Records,* has been amended to reflect its title change (to *Investigative Case Files, Case Development and Intelligence Records*), to clarify the routine uses and to reflect the number of years information is retained.

DOL/OIG–5, *Audit Information, Tracking and Reporting System US DOL/OIG,* has been amended to clarify the routine uses and to change the number of years files are retained.

**Bureau of International Labor Affairs (ILAB)**

DOL/ILAB–2, entitled *Senior Technical Assistance Register,* has been deleted since this program has ended and the records have been destroyed.

**Mine Safety and Health Administration (MSHA)**

DOL/MSHA–1, *Coal and Metal and Nonmetal Mine Accident, Injury, and Illness,* has been amended to make editorial changes and corrections to these paragraphs: system name, system location, safeguards, retention and disposal, and system manager and address.

DOL/MSHA–3, *Metal and Nonmetal Mine Safety and Health Management Information System,* has been amended to make an editorial change in the area of retention and disposal.

DOL/MSHA–10, *Discrimination Investigations,* has been amended to make editorial changes and corrections to the categories of: Categories of Records in the system, Retrievability, Safeguards, Notification Procedure, Records Source categories, and to delete information in the categories of Record Access procedures and Contesting Record procedures.

DOL/MSHA–13, *Coal Mine Respirable Dust Program,* has been amended to make editorial changes, clarify categories of records in the system, and to update the retention and disposal procedures.

DOL/MSHA–15, *Health and Safety Training and Examination Records,* is revised to add clarity to the descriptions of types, uses, and safeguard of records, and to modify the retention and disposal section of the record system.

DOL/MSHA–18, *Coal Mine Safety and Health Management Information System,* has been amended to remove references to training personnel and add information related to samples taken by inspectors.

DOL/MSHA–19, *Employee Conduct Investigations System,* is amended to make editorial changes and corrections in the categories of: Categories of Records in the System; Storage; Safeguards; and Records Access Procedures.

DOL/MSHA–20, *Civil/Criminal Investigations,* has been amended to make editorial changes and corrections to the categories of: Individuals Covered by the System, Records in the System, Authority for Maintenance of the System, Retrievability, Notification Procedure, and to delete information in categories of Record Access Procedures and Contesting Record Procedures.

DOL/MSHA–21, *Assessments and Civil Penalty Debt Collection Activity and Reporting System,* is a new system to maintain records on operating companies and individuals indebted to the U.S. Department of Labor, Mine Safety and Health Administration, for civil penalties assessed as a result of

violations of the Mine Safety and Health Act of 1977 (Mine Act).

DOL/MSHA–22, *Education Policy and Development; National Mine Health and Safety Academy Permanent Record Card*, is a new system to maintain records on Mine Safety and Health inspectors who receive training. Records are used to track training and grades.

DOL/MSHA–23, *Educational Policy and Development; Education Field Services (EFS) Activity Reporting System*, is a new system of records. The Mine Safety and Health Administration has transferred all training specialists from Coal Mine Safety and Health and Metal/Nonmetal Safety and Health to Educational Policy and Development. This new system of records has been established to track information on the training specialists with regard to the mine being visited; number of personnel contacted; activities conducted; time spent on activities; and information on time utilization for Training Specialists.

DOL/MSHA–24, *Radon Daughter Exposure*, is a new system of records for the purpose of preventing over exposure of miners to radon daughters, a form of radiation which has been documented as causing cancer in humans and is well known as a severe hazard for metal and nonmetal miners.

**Occupational Safety and Health Administration (OSHA)**

DOL/OSHA–1, *Discrimination Complaint File*, is amended by revising the categories of System Location, Individuals Covered, Authority, System Manager, Purpose and Routine Uses.

DOL/OSHA–4, *Advisory Committee Candidates' Biographies*, is being deleted. As noted above, information and data for all of the Department's advisory committees have been transferred to the Office of Small Business Programs(OSBP) which has established a new system of records for this purpose, entitled DOL/OSBP–2, *Department of Labor Advisory Committees Members Files*.

DOL/OSHA–10, *OSHA Train-the-Trainer Outreach Program*, is amended by revising several of the categories, including the name of this system to the above name.

**Pension and Welfare Benefits Administration (PWBA)**

DOL/PWBA–1, *Employee Retirement Income Security Act Advisory Council on Employee Welfare and Pension Benefit Plan*, has been deleted and is included in the Department-wide system, entitled DOL/OSBP–2.

DOL/PWBA–2, *Office of Enforcement Index Cards and Investigation Files*, has been renamed as *PWBA EnforcementManagement System* due to the elimination of the use of index cards. The system has been computerized. No other substantive changes have been made.

DOL/PWBA–3, *ERISA Coverage Correspondence Files*, has been renamed as *PWBA Correspondence Files* to reflect that the system has been expanded to several PWBA national and field office components. The categories for System Location(s) and System Manager(s) reflect these changes. The Categories of Individuals Covered has been simplified. Categories of Records, Purpose and Retention and Disposal have been expanded to better reflect the variety of documents in the system.

DOL/PWBA–4, *Inquiry Correspondence Files*, has been renamed as *Technical Assistance and Inquiry System*. The system is now in use in all PWBA offices and services are now provided via telephone as well as through correspondence. The entire notice has been adjusted to reflect the expansion of the technical assistance program and to correct the retention and disposal information.

DOL/PWBA–5, *Public Disclosure Request Tracking System*, has been amended to reflect the change in location of the system and clarify the Categories of Individuals Covered and correct the Retention and Disposal Category.

DOL/PWBA–6, entitled *PWBA Debt Collection/Management System*, has been amended to clarify the Categories of Individuals Covered and the Categories of Records in the System.

DOL/PWBA–7, entitled *Employee Conduct Investigations*, has been amended to correct the system location.

DOL/PWBA–8, entitled *PWBA Consolidated Training Record* is a new system of records which is used to identify which employees have completed certain training courses, and the number of employees awaiting training.

DOL/PWBA–9, entitled *Office of Enforcement Correspondence Tracking System* is a new system of records used to track the progress of correspondence through the Office of Enforcement.

DOL/PWBA–10, entitled *PWBA Civil Litigation Case Information System*, is a new system of records used to access information related to civil litigation case files involving investigation initiated by DOL under Title I of ERISA.

DOL/PWBA–11, entitled *PWBA Criminal Case Information System*, is a new system of records used to maintain information about the progress and/or disposition of criminal cases involving private sector employee benefit plans.

DOL/PWBA–12, entitled *Publication Hotline Requests*, is a new system of records used to process requests made to the PWBA toll-free hotline for publications.

DOL/PWBA–13, entitled *Office of Exemption Determinations ERISA Section 502(l)* Files, is a new system of records used to document the Department's response to petitioners' requests for relief from the Section 502(l) penalties assessed upon those who are found to have violated the fiduciary and prohibited transaction provisions of Part 4 Title I of ERISA.

DOL/PWBA–14, entitled *Investment Advisor Registration Data Base*, is a new system of records used to develop a listing of individuals who have status as an investment advisor under ERISA.

DOL/PWBA–15, entitled, *PWBA Inventory Management Data Base*, is a new system of records used to identify the makes and models of all PWBA owned ADP hardware, the equipment's current location within the agency and the individual to whom it is assigned.

DOL/PWBA–16, entitled, *Form 5500EZ*, is a new system of records which maintains records on individuals who have filed pension plan reporting Form 5500EZ.

**Office of Small Business Programs (OSBP)**

DOL/OSBP–2, *Department of Labor Advisory Committee Members Files*, is a new system of records which centralizes all of the advisory committees' members files which were previously maintained by the various component agencies of the Department.

**Office of the Solicitor (OSOL)**

DOL/SOL–1, *Conflict of Interest File*, has been deleted because its remaining records and function have been transferred into an enlarged DOL/SOL–15, *Solicitor's Office Litigation Files*. Older records from this system have been destroyed pursuant to the records retention schedule.

DOL/SOL–2, *Employment and Training Legal Services Litigation and Investigation File*, has been deleted, because its records and function have been transferred into an enlarged DOL/SOL–15, *Solicitor's Office Litigation Files*.

DOL/SOL–5, *Job Training Partnership Act*, has been renamed as the *Workforce Investment Act Tort Claims Files*, and has been amended to reflect that its underlying statute has been superceded, and that its system's location has been narrowed to the Offices of the Regional Solicitors.

DOL/SOL–8, *Special Litigation Files*, has been deleted because its remaining

records and function have been transferred into an enlarged DOL/SOL–15, *Solicitor's Office Litigation Files.* Older records from this system have been destroyed pursuant to the records retention schedule.

DOL/SOL–10, *Privacy Act Litigation Files,* has been deleted, because its records and function have been transferred into an enlarged DOL/SOL–15, *Solicitor's Office Litigation Files.*

DOL/SOL–11, *Division of Civil Rights Defensive Litigation Files,* has been deleted, because its records and function have been transferred into an enlarged DOL/SOL–15, *Solicitor's Office Litigation Files.*

DOL/SOL–12, *Third-Party Recovery Files,* has been deleted, because its records and function have been transferred into an enlarged DOL/SOL–15, *Solicitor's Office Litigation Files.*

DOL/SOL–14, *DOL Subpoena Tracking System,* has been deleted, because its records and function have been transferred into an enlarged DOL/SOL–15, *Solicitor's Office Litigation Files.*

DOL/SOL–15, *Solicitor's Office Litigation Files,* has been greatly enlarged in order to accept information from the six litigation systems, which have been deleted, as noted above.

DOL/SOL–16, *Solicitor's Office Directory of Senior Management,* has been deleted because these records are no longer maintained. Older records from this system have been destroyed pursuant to the record retention schedule.

DOL/SOL–17, *Solicitor's Office Equipment Files,* has been renamed and enlarged in order to contain all of the component's equipment.

**Veterans Employment and Training Administration (VETS)**

DOL/VETS–1, *Veterans' Reemployment Complaint File,* has been renamed as the *Uniformed Services Employment and Re-employment Right Act (USERRA) Complaint File.*

DOL/VETS–2, *Veterans' Preference Complaint File,* has been renamed as *Veterans' Preference Complaint File under the Veterans Equal Opportunities Act of 1998 (VEOA).* It has been amended to reflect its new function of investigating possible violations of those federal laws pertaining to veterans' preference and other special considerations related to employment with Federal agencies.

*Routine Uses of the Records*

The Department, in the General Prefatory Statement, sets forth twelve paragraphs containing routine uses of the records which apply to all systems. The first eleven routine uses are a more refined version of those universal routine uses which were published on September 23, 1993, at pages 49554–49555 of Volume 58 of the **Federal Register**. The twelftb routine use is a new use.

*Government-Wide Records*

Two systems of records are reported by the Department of Labor for all federal agencies since this Department has overall responsibility for the administration of the programs in connection with which these systems of records have been compiled. It is presumed that most, if not all, federal agencies maintain systems of records comprising a portion of the government-wide systems of records. In order to avoid duplication in reporting, the Department is reporting these systems on behalf of all agencies. The Department has control over these systems to the same extent as the Office of Personnel Management has control over systems of records containing federal employee personnel records. These systems are the Federal Employees' Compensation Act files and the Job Corps Student Records.

Signed at Washington, DC, this 19th day of March, 2002.

**Elaine L. Chao,**

*Secretary of Labor.*

**Table of Contents**

*General Prefatory Statement*

*Government-Wide Systems by the U.S. Department of Labor*

DOL/GOVT–1—Office of Workers' Compensation Programs, Federal Employees' Compensation File.

DOL/GOVT–2—Job Corps Student Records.

*Office of the Secretary (OSEC)*

DOL/OSEC–1—Supervisor's/Team Leader's Records of Employees.

*Office of the Assistant Secretary for Administration and Management (OASAM)*

DOL/OASAM–4—Occupational Accident/Injury/Illness Reporting System (AIIRS) File.

DOL/OASAM–5—Rehabilitation and Counseling File.

DOL/OASAM–7—Employee Medical Records.

DOL/OASAM–12—Administrative Grievance Records.

DOL/OASAM–17—Equal Employment Opportunity Complaint Files.

DOL/OASAM–19—Negotiated Grievance Procedure and Unfair Labor Practice Files.

DOL/OASAM–20—Personnel Investigation Records.

DOL/OASAM–22—Civil Rights Center Citizen Discrimination Complaint Files.

DOL/OASAM–23—Travel Management Center.

DOL/OASAM–24—Privacy Act/Freedom of Information Act Requests File System.

DOL/OASAM–25—Intergovernmental Personnel Act Assignment Records.

DOL/OASAM–26—Frances Perkins Building Parking Management System.

DOL/OASAM–27—Employee/Contractor Identification Program.

DOL/OASAM–28—Incident Report/Restriction Notice.

DOL/OASAM–29—OASAM Employee Administrative Investigation File.

DOL/OASAM–31—DOL Flexible Workplace (Flexiplace) Programs Evaluation and Files.

DOL/OASAM–32—Transit Subsidy Management System.

DOL/OASAM–33—Entity Database.

DOL/OASAM–34—DOL Fitness Association (DOLFA) Membership Files.

DOL/OASAM–35—DOL Child Care Subsidy Programs Records.

DOL/OASAM–36—PeoplePower.

*Office of Administrative Law Judges (OALJs)*

DOL/OALJ–1—Office of Administrative Law Judges Case Tracking System.

DOL/OALJ–2—Office of Administrative Law Judges Case Files.

DOL/OALJ–3—Contract List.

DOL/OALJ–4—Notification List.

*Office of the Administrative Review Board*

DOL/ARB–1—Administrative Review Board Appeals Files.

*Office of the Assistant Secretary for Policy (ASP)*

DOL/ASP–1—National Agricultural Workers Survey (NAWS) Research File, Case Tracking Files, Name Index.

*Benefits Review Board (BRB)*

DOL/BRB–1—Appeals Files-Benefits Review Board (BRB).

*Bureau of Labor Statistics (BLS)*

DOL/BLS–6—Applicant Race and National Origin (ARNO) System, Form E 618.

DOL/BLS–7—BLS Employee Conduct Investigation.

DOL/BLS–8—BLS Employee ADP Training History.

DOL/BLS–9—Routine Administrative Files.

DOL/BLS–10—Commissioner's Correspondence Control System.

DOL/BLS–11—Mainframe User ID Database.

DOL/BLS–12—Employee Acknowledgement Letter Control System.

DOL/BLS–13—National Longitudinal Survey of Youth 1979 (NLSY79) Database.

DOL/BLS–14—Collection Procedures Research Lab Project Files.

DOL/BLS–17—National Longitudinal Survey of Youth 1996 (NLYS96).

DOL/BLS–18—Postal Square Building Parking Management Records.

DOL/BLS–19—Customer Information Files.

DOL/BLS–20—Fellowship Applicants and Recipients Files.

*Office of the Chief Financial Officer (CFO)*

DOL/CFO–1—Attendance, Leave and Payroll File.

DOL/CFO–2—Department of Labor Accounting and Related Systems.

DOL/CFO–3—Travel and Transportation System.

*Office of Disability Employment Policy, formerly known as the President's Committee on Employment of People with Disabilities (PCEPD)*

DOL/ODEP–1—Job Accommodation Network (JAN) Files.

DOL/ODEP–2—Workforce Recruitment Program (WRP) Database.

*Employees' Compensation Appeals Board (ECAB)*

DOL/ECAB–1—Employees' Compensation Appeals Board Docket Records.

DOL/ECAB–2—Employees' Compensation Appeals Board Disposition Records.

*Employment Standards Administration (ESA)*

DOL/ESA–2—Office of Federal Contract Compliance Programs, Complaint Case Files.

DOL/ESA–5—Office of Workers' Compensation Programs, Black Lung Antidiscrimination Files.

DOL/ESA–6—Office of Workers' Compensation Programs, Black Lung Benefits Claim File.

DOL/ESA–15—Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Case Files.

DOL/ESA–24—Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Special Fund System.

DOL/ESA–25—Office of Federal Contract Compliance Programs, Management Information System (OFCC/MIS).

DOL/ESA–26—Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Investigation Files.

DOL/ESA–27—Office of Workers' Compensation Programs, Longshore and Harbor Workers' Compensation Act Claimant Representatives.

DOL/ESA–28—Office of Workers' Compensation Programs, Physicians and Health Care Providers Excluded Under the Longshore Act.

DOL/ESA–29—Office of Workers' Compensation Programs, Physicians and Health Care Providers Excluded Under the Federal Employees' Compensation Act.

DOL/ESA–30—Office of Workers' Compensation Programs, Black Lung Automated Support Package.

DOL/ESA–32—Employee Conduct Investigations.

DOL/ESA–33—Time Report Component of the Wage and Hour Investigative Support and Reporting Database (WHISARD).

DOL/ESA–34—Farm Labor Contractor Registration File.

DOL/ESA–35—Farm Labor Contractor Employee Registration File.

DOL/ESA–36—MSPA Civil Money Penalties in the Wage and Hour Investigative Support and Reporting Database (WHISARD).

DOL/ESA–37—MSPA Public Central Registry Records File.

DOL/ESA–38—Wage and Hour Regional Office Clearance List-MSPA Registration.

DOL/ESA–39—State Employment Service Clearance List-MSPA Registration.

DOL/ESA–40—MSPA Tracer List.

DOL/ESA–41—MSPA Certificate Action Record Files.

DOL/ESA–42—Case Registration/Investigator form; in the Wage and Hour Investigative Support and Report Database (WHISARD).

DOL/ESA–43—Office of Workers' Compensation Programs, Federal Employees Compensation Act and Longshore and Harbor Workers' Compensation Act Rehabilitation Files.

DOL/ESA–44—Office of Workers' Compensation Programs, Federal Employees Compensation Act (FEC) and Longshore and Harbor Workers' Compensation Act Rehabilitation Counselor Case Assignment, Contract Management and Performance Files and FEC Field Nurses Files.

DOL/ESA–45—Investigative Files of the Office of Labor-Management Standards (Formerly DOL/OAW–1)

DOL/ESA–46—Migrant and Seasonal Agricultural Worker Protection Act (MSPA) Ineligible Farm Labor Contractors.

DOL/ESA–47—Youth Peddler Bulletin Board.

DOL/ESA–48—"Customer Service" component of the Wage Hour Investigative Support and Reporting Database (WHISARD).

DOL/ESA–49—Office of Workers' Compensation Programs, Energy Employees' Occupational Illness Compensation Program Act File.

DOL/ESA–50—Office of Workers' Compensation Programs, Physicians and Health Care Providers Excluded under the Energy Employees' Occupational Illness Compensation Program Act.

DOL/ESA–51—OLMS Public Disclosure Request Tracking System.

*Employment and Training Administration (ETA)*

DOL/ETA–1—Bureau of Apprenticeship and Training, Budget and Position Control File.

DOL/ETA–4—Apprenticeship Information Management System (AIMS).

DOL/ETA–7—Employer Application File for Permanent and Temporary Alien Workers.

DOL/ETA–8—Job Corps Student Pay, Allotment and Management Information System (SPAMIS).

DOL/ETA–15—DOL/ETA Evaluation, Research Pilot or Demonstration Contractors' Project Files.

DOL/ETA–16—Employment and Training Administration Investigatory File.

DOL/ETA–20—Federal Bonding Program, Bondees Certification Files.

DOL/ETA–22—ETA Employee Conduct Investigations.

DOL/ETA–24—Contracting and Grant Officer Files.

DOL/ETA–25—DOL/ETA Evaluation Research Projects of the Unemployment Compensation System.

DOL/ETA–26—Standardized Program Information Report (SPIR).

DOL/ETA–27—Youth Opportunity Grant Program Information Files.

*Office of Inspector General (OIG)*

DOL/OIG–1—Investigative Files, Case Tracking System, Analysis, Complaints and Evaluation Files, USDOL/OIG.

DOL/OIG–2—Freedom of Information/Privacy Acts Records.

DOL/OIG–3—Investigative Case Files, Case Development and Intelligence Records.

DOL/OIG–5—Audit Information, Tracking and Reporting Systems.

*Bureau of International Labor Affairs (ILAB)*

DOL/ILAB–1—Arbitrators/Experts/Consultant Candidates' Biographies.

*Mine Safety and Health Administration (MSHA)*

DOL/MSHA–1—Coal and Metal and Nonmetal Mine Accident, Injury, and Illness.

DOL/MSHA–3—Metal and Nonmetal Mine Safety and Health Management Information System.

DOL/MSHA–10—Discrimination Investigations.

DOL/MSHA–13—Coal Mine Respirable Dust Program.

DOL/MSHA–15—Health and Safety Training and Examination Records.

DOL/MSHA–18—Coal Mine Safety and Health Management Information System.

DOL/MSHA–19—Employee Conduct Investigations System.

DOL/MSHA–20—Civil/Criminal Investigations.

DOL/MSHA–21—Assessments and Civil Penalty Debt Collection Activity and Reporting System.

DOL/MSHA–22—Education Policy and Development; National Mine

Health and Safety Academy Permanent Record Cards.

DOL/MSHA–23—Educational Policy and Development; Educational Field Services (EFS) Activity Reporting System.

DOL/MSHA–24—Radon Daughter Exposure.

*Occupational Safety and Health Administration (OSHA)*

DOL/OSHA–1—Discrimination Complaint File.

DOL/OSHA–6—Program Activity File.

DOL/OSHA–9—OSHA Compliance Safety and Health Officer Training Record.

DOL/OSHA–10—OSHA Train-the-Trainer Outreach Program.

DOL/OSHA–12—OSHA Employee Conduct Investigations.

DOL/OSHA–13—OSHA Office of Training and Education Automated Registration System.

DOL/OSHA–14—Office of Training and Education Computer-based Acquisition/Financial Records System.

DOL/OSHA–15—Office of Training and Education Resource Center Circulation Project.

*Pension and Welfare Benefits Administration (PWBA)*

DOL/PWBA–2—PWBA Investigation Management Files.

DOL/PWBA–3—PWBA Correspondence Files.

DOL/PWBA–4—Technical Assistance and Inquiry Files.

DOL/PWBA–5—Public Disclosure Request Tracking System.

DOL/PWBA–6—PWBA Debt Collection/Management System.

DOL/PWBA–7—Employee Conduct Investigations.

DOL/PWBA–8—PWBA Consolidated Training Record.

DOL/PWBA–9—Office of Enforcement Correspondence Tracking System.

DOL/PWBA–10—PWBA Civil Litigation Case Information System.

DOL/PWBA–11—PWBA Criminal Case Information System.

DOL/PWBA–12—Publication Hotline Requests.

DOL/PWBA–13—Office of Exemption Determinations ERISA Section 502(l) Files.

DOL/PWBA–14—Investment Advisor Registration Data Base.

DOL/PWBA–15—PWBA Inventory Management Data Base.

DOL/PWBA–16—Form 5500EZ Filings.

*Office of Small Business Programs (OSBP)*

DOL/OSBP–1—Office of Small Business Programs, Small Entity Inquiry and Complaint Tracking System.

DOL/OSBP–2—Department of Labor Advisory Committee Members Files.

*Office of the Solicitor (OSOL)*

DOL/SOL–3—Tort Claims Files.

DOL/SOL–5—Workforce Investment Act Tort Claims Files.

DOL/SOL–6—Military Personnel and Civilian Employees' Claims.

DOL/SOL–7—Solicitor's Legal Activity Recordkeeping System.

DOL/SOL–9—Freedom of Information Act and Privacy Act Appeals Files.

DOL/SOL–13—Employee Conduct Investigations.

DOL/SOL–15—Solicitor's Office Litigation Files.

DOL/SOL–17—Solicitor's Office Equipment Files.

*Veterans Employment and Training (VETS)*

DOL/VETS–1—Uniformed Services Employment and Re-employment Rights Act (USERRA) Complaint File.

DOL/VETS–2—Veterans' Preference Complaint File under the Veterans Equal Opportunities Act of 1998 (VEOA).

DOL/VETS–3—Veterans' Transition Assistance Program (TAP) Registration System.

**Appendix—Responsible Officials**

**General Prefatory Statement**

*A. Universal Routine Uses of the Records*

The following routine uses of the records apply to and are incorporated by reference into each system of records published below unless the text of a particular notice of a system of records indicates otherwise. These routine uses *do not* apply to DOL/OASAM–5, *Rehabilitation and Counseling File*, nor to DOL/OASAM–7, *Employee Medical Records*.

1. To disclose the records to the Department of Justice when: (a) The agency or any component thereof; or (b) any employee of the agency in his or her official capacity; or (c) the United States Government, is a party to litigation or has an interest in such litigation, and by careful review, the agency determines that the records are both relevant and necessary to the litigation, and the use of such records by the Department of Justice is for a purpose that is compatible with the purpose for which the agency collected the records.

2. To disclose the records in a proceeding before a court or adjudicative body, when: (a) The agency or any component thereof; or (b) any employee of the agency in his or her official capacity; or (c) any employee of the agency in his or her individual capacity; or (d) the United States Government, is a party to litigation or has an interest in such litigation, and by careful review, the agency determines that the records are both relevant and necessary to the litigation, and that the use of such records is a purpose that is compatible with the purpose for which the agency collected the records.

3. When a record on its face, or in conjunction with other information, indicates a violation or potential violation of law, whether civil, criminal or regulatory in nature, and whether arising by general statute or particular program statute, or by regulation, rule, or order issued pursuant thereto, disclosure may be made to the appropriate agency, whether Federal, foreign, State, local, or tribal, or other public authority responsible for enforcing, investigating or prosecuting such violation or charged with enforcing or implementing the statute, or rule, regulation, or order issued pursuant thereto, if the agency determines by careful review that the records or information are both relevant and necessary to any enforcement, regulatory, investigative or prosecutive responsibility of the receiving entity, and that the use of such records or information is for a purpose that is compatible with the purposes for which the agency collected the records.

4. To a Member of Congress or to a Congressional staff member in response to an inquiry of the Congressional office made at the written request of the constituent about whom the record is maintained.

5. To the National Archives and Records Administration or to the General Services Administration for records management inspections conducted under 44 U.S.C. 2904 and 2906.

6. To disclose to contractors, employees of contractors, consultants, grantees, and volunteers who have been engaged to assist the agency in the performance of or working on a contract, service, grant, cooperative agreement or other activity or service for the Federal Government.

**Note 1.** Recipients shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a; *see also* 5 U.S.C. 552a(m).

7. To the parent locator service of the Department of Health and Human Services or to other authorized persons defined by Pub. L. 93–647 the name and current address of an individual for the purpose of locating a parent who is not paying required child support.

8. To any source from which information is requested in the course of a law enforcement or grievance investigation, or in the course of an investigation concerning retention of an employee or other personnel action, the retention of a security clearance, the letting of a contract, the retention of a grant, or the retention of any other benefit, to the extent necessary to identify the individual, inform the source of the purpose(s) of the request, and identify the type of information requested.

9. To a Federal, State, local, foreign, or tribal or other public authority of the fact that this system of records contains information relevant to the hiring or retention of an employee, the granting or retention of a security clearance, the letting of a contract, a suspension or debarment determination or the issuance or retention of a license, grant, or other benefit.

10. To the Office of Management and Budget during the coordination and clearance process in connection with legislative matters.

11. To the Department of the Treasury, and a debt collection agency with which the United States has contracted for collection services to recover debts owed to the United States.

12. To the news media and the public when (1) the matter under investigation has become public knowledge, (2) the Solicitor of Labor determines that disclosure is necessary to preserve confidence in the integrity of the Department or is necessary to demonstrate the accountability of Department's officers, employees, or individuals covered by this system, or (3) the Solicitor of Labor determines that there exists a legitimate public interest in the disclosure of the information, except to the extent that the Solicitor of Labor determines in any of these situations that disclosure of specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy.

*B. System Location—Flexiplace Programs*

The following paragraph applies to and is incorporated by reference into all of the Department's systems of records under the Privacy Act, within the category entitled,

**SYSTEM LOCATION:**

"Pursuant to the Department of Labor's Flexiplace Programs, copies of records may be temporarily located at alternative worksites, including employees' homes or at geographically convenient satellite offices for part of the workweek. All appropriate safeguards will be taken at these sites."

Government-Wide Records

Two systems of records are reported by the Department of Labor for all federal agencies since this Department has overall responsibility for the administration of the programs in connection with which these systems of records have been compiled. It is presumed that most, if not all, federal agencies maintain systems of records comprising a portion of the government wide systems of records. In order to avoid duplication in reporting, the Department is reporting these systems on behalf of all agencies. The Department has control over these systems to the same extent as the Office of Personnel Management has control over systems of records containing federal employee personnel records.

1. Federal Employees' Compensation Act Files: All records relating to injury or death of civilian employees or other persons entitled to benefits under the Federal Employees' Compensation Act are the records of the Office of Workers'

Compensation Programs of the Department of Labor. The Office asserts control of these records under the provisions of 5 U.S.C. 8149 and Department regulations at 20 CFR 10.10. This notice applies to copies of claim forms and other documents relating to a compensation claim maintained by the employing agency. This notice, however, does not apply to other medical or related files not created pursuant to the Federal Employees' Compensation Act which may be in the possession of an agency. This system is entitled DOL/GOVT–1, Office of Workers' Compensation Programs, Federal Employees' Compensation File.

Initial determinations on requests for access, amendment or correction of records maintained in this system of records shall be made by the OWCP district office having jurisdiction over the particular claim. In addition, requests for access to copies of records maintained by the employing agency may be directed to that agency. Administrative appeals from initial determinations denying access, amendment or correction, shall be addressed to the Solicitor of Labor, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210, as required by 20 CFR 10.12.

2. Job Corps Student Records: All records which contain information about students during their stay in Job Corps, from entrance to placement and/or termination, are records which must be maintained by the Job Corps center. The Employment and Training Administration asserts control of these records under 29 U.S.C. 2881 *et seq.* This system is entitled DOL/GOVT–2, Job Corps Student Records.

Initial determinations concerning access, amendment or correction of this government-wide system of records shall be made by screening contractors, Job Corps Center Directors, Job Corps National or Regional Offices. Administrative appeals shall be referred to the Solicitor of Labor, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

Special California Earthquake Co-operative Agreement

The San Francisco, California Regional Office of the Department of Labor's Office of Assistant Secretary for Administration and Management (OASAM), Region IX of OASAM, has entered into a reciprocal agreement with the U.S. Internal Revenue Service's Office of the Regional Counsel located in San Francisco. The purpose of this reciprocal agreement is to provide each with an alternative off-site location to store computer data. This back-up storage capacity will mitigate damage if an earthquake ever occurs in the San Francisco area. This agreement is based upon the fact that the respective offices of the participants are located at opposite ends of the downtown San Francisco district and the ground structure of the two areas is substantially different.

Addresses to Which Requests May Be Directed

The addresses of the various component units of the Department as well as its regional offices are contained in the Appendix annexed to this document.

In addition, the following government agencies also have Government-wide Systems of Records:

Government-Wide Systems

EEOC/GOVT–/–1—Equal Employment Opportunity Complaint Records and Appeal Records
FEMA/GOVT–1—National Defense Executive Reserve System
GSA/GOVT–2—Employment Under Commercial Activities Contracts
GSA/GOVT–3—Travel Charge Card Program
GSA/GOVT–4—Contracted Travel Services Programs
MSPB/GOVT–1—Appeal and Case Records
OGE/GOVT–1—Executive Branch Public Financial Disclosure Reports and Other Ethics Program Records
OGE/GOVT–2—Confidential Statements of Employment and Financial Interests
OPM/GOVT–1—General Personnel Records
OPM/GOVT–2—Employee Performance File System Records
OPM/GOVT–3—Adverse Actions and Actions Based on Unacceptable Performance
OPM/GOVT–4—[Reserved]
OPM/GOVT–5—Recruiting, Examining and Placement Records
OPM/GOVT–6—Personnel Research and Test Validation Records
OPM/GOVT–7—Applicant—Race, Sex, National Origin and Disability Status Records
OPM/GOVT–8—[Reserved]
OPM/GOVT–9—Position Classification Appeals, Job Grading Appeals, and Retained Grade or Pay
OPM/GOVT–10—Employee Medical File System Records

**DOL/GOVT–1**

**SYSTEM NAME:**

Office of Workers' Compensation Programs, Federal Employees' Compensation Act File.

**SECURITY CLASSIFICATION:**

Most files and data are unclassified. Files and data in certain cases have Top Secret classification, but the rules concerning their maintenance and disclosure are determined by the agency, which has given the information the security classification of Top Secret.

**SYSTEM LOCATION:**

The central database for DOL/GOVT–1 is located at SUNGUARD, 600 Laurel Oak Road, Voorhees, New Jersey, 08043. Paper claim files and local databases are located at the various OWCP district offices, and in Kansas City (for imaged cases only); claim files of employees of the Central Intelligence Agency are located at that agency. Records from this system of records may be temporarily located in the office of health care providers and other individuals or entities with whom the Department contracts for such services as examination or evaluation of claimants. Copies of claim forms and other documents arising out of a job-related injury that resulted in the filing of a claim under the Federal Employees' Compensation Act (FECA), may also be maintained by the employing agency (and where the forms were transmitted to the Office of Workers' Compensation Programs (OWCP) electronically, the original forms are maintained by the employing agency). In addition, records relating to third-party claims of FECA beneficiaries are maintained in the Division of Employee Benefits, Office of the Solicitor, United States Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210–0002, in the offices of the Regional and Associate Regional Solicitors, and in various offices of the United States Postal Service, which undertakes various duties relating to third party claims pursuant to an agreement with OWCP.

Pursuant to the Department of Labor's Flexiplace Programs, copies of records may be temporarily located at alternative worksites, including employees' homes or at geographically convenient satellite offices for part of the workweek. All appropriate safeguards will be taken at these sites.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals and/or their survivors who file claims seeking benefits under the FECA by reason of injuries sustained while in the performance of duty. The FECA applies to all civilian federal employees, including various classes of persons who provide or have provided personal service to the government of the United States, and to other persons as defined by law such as state or local law enforcement officers, and their survivors, who were injured or killed while assisting in the enforcement of federal law. In addition, the FECA covers employees of the Civil Air Patrol, Peace Corps Volunteers, Job Corps students, Volunteers in Service to America, members of the National Teacher Corps, certain student employees, members of the Reserve Officers Training Corps, certain former prisoners of war, and employees of particular commissions and other agencies.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

This system may contain the following kinds of records: reports of injury by the employee and/or employing agency; claim forms filed by or on behalf of injured federal employees or their survivors seeking benefits under the FECA; forms authorizing medical care and treatment; other medical records and reports; bills

RETENTION AND DISPOSAL:

Data for the current year and two preceding years will be retained on the computer hard disk. Data pre-dating this time will be backed up on floppy disks and stored in a locked cabinet. In no case will data predate fiscal year 1989. Files will be destroyed when no longer of any administrative use.

SYSTEM MANAGER(S) AND ADDRESS:

Administrative officer, Office of Training and Education, at the system location in Des Plaines, Illinois.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager at the system location listed above.

RECORD ACCESS PROCEDURES:

Individuals wishing to gain access to non-exempt records should contact the system manager at the system location listed above.

CONTESTING RECORD PROCEDURE:

Individuals wishing to request amendment of any non-exempt records should contact the system manager at the system location listed above.

RECORD SOURCE CATEGORIES:

Students.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

Not applicable.

## DOL/OSHA–14

SYSTEM NAME:

Office of Training and Education Computer-based Acquisition/Financial Records System.

SECURITY CLASSIFICATION:

Unclassified.

SYSTEM LOCATION:

Office of Training and Education, Occupational Safety and Health Administration, U.S. Department of Labor, 1555 Times Drive, Des Plaines, Illinois 60018.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Staff of the Office of Training and Education, including the Training Institute. Individuals doing business with the Office of Training and Education that involve the payment or receipt of funds.

CATEGORIES OF RECORDS IN THE SYSTEM:

Records include necessary data to prepare a procurement requisition including: The requisition number; the name of the bureau making the procurement request; the specific page number of the requisition; the date of the requisition; the accounting code; the delivery requirement address; the official's name, title, and phone number for information concerning the procurement; an identification if the procurement is for instructional services, or for other supplies/services, if for instructional services—the course number and location of the course; a specific ordering item number and/or stock number; a narrative description of the item or service; the quantity requested; the unit price; the unit issue; the total dollar amount; the narrative justification for making the request; the name, address, and phone number of the suggested vendor; the Office division making the request; and the initials of the staff person(s) making the request. This system of records also contains the necessary data for maintaining a general ledger of accounts. Information will be taken from obligating documents. Records also include necessary data to track the receipt of all receivables.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

Occupational Safety and Health Act of 1970 (29 U.S.C. 651–678).

PURPOSE(S):

To provide an acquisition and financial management system which will improve the acquisition process; and provide an efficient means for the accurate recording, tracking, reporting, and control of Office funds and receivables.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

None, except for those universal routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

ADP files.

RETRIEVABILITY:

By name of vendor, by name of staff person making a procurement request, by individual travel authorization number, by individual last name, and by any of the data elements identified in the Categories of Records in the System category.

SAFEGUARDS:

Computer disks locked in file cabinets; password system for authorized persons only.

RETENTION AND DISPOSAL:

Dispose of when no longer needed for administrative purposes.

SYSTEM MANAGER(S) AND ADDRESS:

Chief, Division of Administration and Training Information, Occupational Safety and Health Administration, U.S. Department of Labor, 1555 Times Drive, Des Plaines, Illinois 60018.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager at the system location listed above.

RECORD ACCESS PROCEDURES:

Individuals wishing to gain access to non-exempt records should contact the system manager at the system location listed above.

CONTESTING RECORD PROCEDURE:

Individuals wishing to request amendment of any records should contact the system manager at the system location listed above.

RECORD SOURCE CATEGORIES:

Administrative files and procurement files.

SYSTEM EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

## DOL/OSHA–15

SYSTEM NAME:

Office of Training and Education Resource Center Loan Program.

SECURITY CLASSIFICATION:

Unclassified.

SYSTEM LOCATION:

Office of Training and Education, Occupational Safety and Health Administration, U.S. Department of Labor, 1555 Times Drive, Des Plaines, Illinois 60018.

CATEGORIES OF INDIVIDUAL COVERED BY THE SYSTEM:

Individual borrowers who have become qualified to borrow from the Resource Center Collection of occupational safety and health materials.

CATEGORIES OF RECORDS IN THE SYSTEM:

Records contain borrower name, company name and address or home address, company and home telephone numbers, fax number, application form

number, application date, borrower category, audiovisual program title and accession number, audiovisual copyright date, transaction identification number, and transaction date.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

Occupational Safety and Health Act of 1970 (29 U.S.C. 651–678) and 5 U.S.C. 301.

PURPOSE(S):

These records are maintained to facilitate the performance of the Resource Center Loan Program which loans occupational safety and health materials to qualified borrowers, for verification of borrower status and authorization to borrow, to track borrower requests for materials through processing and disposition, to maintain material availability and usage information, to track status and history of overdue materials, to maintain records on lost and damaged materials.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

None, except for those universal routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Manual files for signed borrower agreement forms, borrower request forms, and program booking forms are maintained in file cabinets. Automated Data Processing (ADP) files for all other records.

RETRIEVABILITY:

By name of borrower for signed borrower agreement forms (manual), by any of the data elements in Categories of Records in the System section (ADP).

SAFEGUARDS:

Manual files and computer disks are locked in file cabinets. Password system access to authorized personnel for ADP files.

RETENTION AND DISPOSAL:

Dispose of when no longer needed for administrative purposes.

SYSTEM MANAGER(S) AND ADDRESS:

Chief, Division of Administration and Training Information, Occupational Safety and Health Administration, U.S. Department of Labor, 1555 Times Drive, Des Plaines, Illinois 60018.

NOTIFICATION PROCEDURE:

Any individual who wishes to be notified if this system of records contains a record pertaining to them may apply in writing to the system manager at the above address.

RECORD ACCESS PROCEDURES:

Any individual wishing to gain access to any records pertaining to them, may apply in writing to the system manager at the system address listed above.

CONTESTING RECORD PROCEDURES:

Individuals wishing to request modification or deletion to any records pertaining to them, may apply in writing to the system manager at the system address listed above.

RECORD SOURCE CATEGORIES:

Individuals and information pertaining to Resource Center materials are taken from Resource Center files.

SYSTEM EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

## DOL/PWBA–2

SYSTEM NAME:

PWBA Enforcement Management System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Office of Enforcement, PWBA, U.S. Department of Labor, 200 Constitution Ave., NW, Washington, DC 20210, and all PWBA field offices as listed in the Appendix A to this document.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Plan administrators, trustees, and those individuals who provide advice or services to employee benefit plans, and other individuals (such as the named defendants) involved in investigations and enforcement actions.

CATEGORIES OF RECORDS IN THE SYSTEM:

Information including plan name, plan administrator's name, service provider's name, trustee's name, and names of other individuals (such as the named defendants) involved in investigations and enforcement actions.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1134–37.

PURPOSE(S):

This system of records is used to access information related to case files involving investigations instituted by the Department of Labor (DOL) under the Title I of the Employee Retirement Security Act of 1974 (ERISA). The investigative files are used in the prosecution of violations of law, whether civil or criminal in nature.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

In addition to those universal routine uses listed in the General Prefatory Statement to this document, pursuant to 29 U.S.C. 1134, a record from this system of records may be disclosed, subject to the restrictions imposed by various statutes and rules, such as the Privacy Act, to a department or agency of the United States, or to any person actually affected by any matter which may be the subject of the investigation; except that any information obtained by the Secretary of Labor pursuant to section 6103 of Title 26 shall be made available only in accordance with regulations prescribed by the Secretary of the Treasury.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

The records in this system are maintained in an electronic database and in paper case files.

RETRIEVABILITY:

Records are retrieved from the electronic database by the name of the plan, service provider name, trustee name, or the name of another individual (such as the named defendant) involved in the investigation or enforcement action. Records are also retrieved by case number, the plan's employer identification number (EIN) and plan number (if known), or service provider or trustee EIN.

SAFEGUARDS:

Direct access to and use of these records is restricted to authorized personnel in the Office of Enforcement and PWBA field offices. In the Office of Enforcement, manual files are maintained in file cabinets with access limited to OE staff. In the field offices, manual files are maintained in file cabinets with access limited to appropriate PWBA staff. In all instances, the electronic database is password protected and limited to use by authorized personnel.

RETENTION AND DISPOSAL:

Investigative case files are retained in the office for one year after completion

by voluntary compliance or litigation, or related actions following voluntary compliance or litigation. After one year, the case files are transferred to the Federal Records Center for seven (7) years and then destroyed. The electronic database files are retained permanently.

SYSTEM MANAGER(S) AND ADDRESS:

In the national office: Director of Enforcement, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW., Washington, DC 20210.

In the Regional offices: the Regional Director (as listed in the Appendix to this document).

In the District Offices: the District Supervisor (as listed in the Appendix A to this document).

NOTIFICATION PROCEDURES:

Individuals wishing to inquire whether this system of records contains information about them should contact the appropriate system manager described above. Individuals should furnish their full name, address, and employee benefit plan association and should identify the employee benefit plan by name, address, and EIS (if known).

RECORD ACCESS PROCEDURES:

Request for access to records should follow the Notification procedure described above. Specific materials in the system have been exempted from Privacy Act provisions under 5 U.S.C. 552a(j)(2) and (k)(2). To the extent that this system of records is not subject to exemption, it is subject to access, contest of the content of the record, and appeal of a denial to access. A determination as to exemption shall be made at the time a request for access is received. Access procedures are the same as the Notification procedures described above. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records (29 CFR 71.2).

CONTESTING RECORD PROCEDURES:

Same as the Notification procedure above, except individuals desiring to contest or amend information maintained in the system should direct their written request to the appropriate System Manager listed above, state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Individual complaints, witnesses, or interviews conducted during investigations or plan participant or beneficiary information obtained during investigations on cases opened in the Office of Enforcement or in any of the PWBA field offices.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

a. *Criminal Law Enforcement:* In accordance with subsection 552a(j)(2) of the Privacy Act, 5 U.S.C. 552a(j)(2), information maintained for criminal law enforcement purposes in PWBA's Office of Enforcement or its field offices is exempt from subsections (c)(3) and (4), (d), (e)(1), (2), and (3), (e)(4)(G), (H), and (I), (e)(5) and (8), (f), and (g) of 5 U.S.C. 552a.

b. *Other Law Enforcement:* In accordance with subsection 552a(k)(2) of the Privacy Act, 5 U.S.C. 552a(k)(2), investigatory material in this system of records compiled for civil law enforcement purposes is exempt from subsections (c)(3), (d)(1), (2), (3), and (4), (e)(1), (e)(4)(G) and (I), and (f) of 5 U.S.C. 552a.

DOL/PWBA–3

SYSTEM NAME:

PWBA Correspondence Files.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Office of Participant Assistance and Communications

Office of Exemption Determinations

Office of Regulations and Interpretations

Office of Health Plan Standards and Compliance Assistance

U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210

Atlanta Regional Office, 61 Forsyth Street, Suite 7B54, Atlanta, GA 30303

Boston Regional Office, J.F.K. Building, Room 575, Boston, MA 02203

San Francisco Regional Office, 71 Stevenson Street, Suite 915, P.O. Box 190250, San Francisco, CA 94119–250

Seattle District Office, 1111 Third Avenue, MIDCOM Tower, Suite 860, Seattle, WA 98101–3212.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Correspondents.

CATEGORIES OF RECORDS IN THE SYSTEM:

Letters requesting information, advisory opinions, FOIA requests, Privacy Act Requests, or submitting comments, the Department's replies thereto, and related internal memoranda, including notes pertaining to meetings and telephone calls.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 1135.

PURPOSE(S):

These records are maintained to take action on or to respond to a complaint, inquiry or comment concerning certain aspects of Title I of ERISA or to respond to requests under FOIA or Privacy Act and to track the progress of such correspondence through the office.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

None, except for those universal routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Manual files and electronic tracking system.

RETRIEVABILITY:

Files are retrieved by an individual name or control number.

SAFEGUARDS:

Access to these records is limited to authorized PWBA staff. Computer system is password protected and accessible only to personnel creating the database.

RETENTION AND DISPOSAL:

The retention schedule for FOIA and Privacy Act request files follows General Records Schedule 14 and are retained two years after date of reply or six years after issuance of the appeal determination. If there is litigation in the underlying matter, the file is retained for three years after tbe litigation is completed. Requests for advisory opinions and the replies thereto are retained indefinitely, requests for information are destroyed one year after completion of project. Electronic index is destroyed six years after date of last entry.

SYSTEM MANAGER(S) AND ADDRESS:

Director of the Office of Participant Assistance and Communications

Director of the Office of Exemption Determinations

Director of the Office of Regulations and Interpretations

Director of the Office of Health Plan Standards and Compliance Assistance

Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

Regional Directors in the following offices:

Atlanta Regional Office, 61 Forsyth Street, Suite 7B54, Atlanta, GA 30303

Boston Regional Office, J.F.K. Building, Room 575, Boston, MA 02203

San Francisco Regional Office, 71 Stevenson Street, Suite 915, PO Box 190250, San Francisco, CA 94119–250

District Supervisor, Seattle District Office, 1111 Third Avenue, MIDCOM Tower, Suite 860, Seattle, WA 98101–3212.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. All requests must be in writing and mailed or presented in person during the Department's normal business hours.

RECORDS ACCESS PROCEDURES:

Same as notification procedure. Individuals requesting access must also comply with U.S. Department of Labor Privacy Act regulations on verification of identity at 29 CFR 71.2.

CONTESTING RECORD PROCEDURES:

Same as notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Correspondence from individuals and responses thereto.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

## DOL/PWBA–4

SYSTEM NAME:

Technical Assistance and Inquiries System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Division of Technical Assistance and Inquiries in the National office, all regional and district offices.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Correspondents and callers requesting information and assistance.

CATEGORIES OF RECORDS IN THE SYSTEM:

General and congressional telephone inquiries and correspondence regarding all aspects of pension and welfare benefit plans and records which provide the status of individuals under these plans.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1135.

PURPOSE(S):

These records are used to take action on or respond to inquiries from Members of Congress and private citizens.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

In addition to those universal routine uses listed in the General Prefatory Statement to this document, records in this system may be disclosed to the relevant employee benefit plan administrator, third party administrator, insurance carrier or other party as necessary to facilitate a resolution to the circumstance presented by the individual seeking assistance from the agency.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Records are maintained in file cabinets and on computer system.

RETRIEVABILITY:

By name of individual.

SAFEGUARDS:

In the National office, manual files are maintained in file cabinets with access limited to staff of the Division of Technical Assistance and Inquiries. In the regional and district offices, manual files are maintained in file cabinets with access limited to appropriate PWBA staff. Computer system is password protected and limited to use by authorized personnel.

RETENTION AND DISPOSAL:

Manual records are maintained for one year after closing the file, then destroyed. Computer files are maintained for the same period as the manual records or deleted when no longer needed which ever is later.

SYSTEM MANAGER(S) AND ADDRESS:

In the national office: Director of the Office of Participant Assistance and Communications, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

In the Regional offices: the Regional Director

In the District Offices: the District Supervisor.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact a system manager indicated above. Individuals must furnish their full names for their records to be located and identified.

RECORD ACCESS PROCEDURES:

Same as notification procedure. Individuals requesting access must also comply with U. S. Department of Labor Privacy Act regulations on verification of identity at 29 CFR 71.2.

CONTESTING RECORD PROCEDURES:

Same as notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Individuals seeking technical assistance or information.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

## DOL/PWBA–5

SYSTEM NAME:

Public Disclosure Request Tracking System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, PWBA, Public Disclosure Room, U.S. Department of Labor, Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals who request documents.

CATEGORIES OF RECORDS IN THE SYSTEM:

Data regarding the request for copies of plan filings made with the Department of Labor or the Internal Revenue Service. Data includes individual requester's name, street address, city, state, zip code, and telephone number, the Employer Identification Number and Plan Number of the plan for which information has been requested and the documents requested.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

5 U.S.C. 1021 et seq.

PURPOSE(S):

These records are used by authorized PWBA disclosure personnel to process requests made to the Public Disclosure Room and by PWBA managers to compile statistical reports regarding such requests for management information purposes.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

None, except for those universal routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Manual files and computer storage.

RETRIEVABILITY:

By individual name, control number or EIN/PN of requested plan.

SAFEGUARDS:

Manual files are maintained in file cabinets with access limited to authorized personnel. Computer system is password protected and accessible only to personnel creating and maintaining the database.

RETENTION AND DISPOSAL:

Manual files are destroyed after three months, the electronic index is deleted on the same schedule as the manual files or when no longer needed whichever is later.

SYSTEM MANAGER(S) AND ADDRESS:

Director of the Office of Participant Assistance and Communications, Pension and Welfare Benefits Administration, 200 Constitution Avenue, NW., Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals must furnish their full names for their records to be located and identified.

RECORD ACCESS PROCEDURES:

Same as notification procedure. Individuals requesting access must also comply with U. S. Department of Labor Privacy Act regulations on verification of identity at 29 CFR 71.2.

CONTESTING RECORD PROCEDURES:

Same as notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Individuals requesting documents from the Public Disclosure Room.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

## DOL/PWBA–6

SYSTEM NAME:

PWBA Debt Collection/Management System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Pension and Welfare Benefits Administration, Office of Program Planning, Evaluation and Management, U.S. Department of Labor, 200 Constitution Avenue, NW., Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals who have been assessed fines or penalties under provisions of ERISA sections 502(c)(2), 502(i) and 502(l).

CATEGORIES OF RECORDS IN THE SYSTEM:

Records containing data regarding the assessment of fines/penalties under provisions of ERISA sections 502(c)(2), 502(i) and 502(l). Data includes individuals (or trade) name, street address, city, state, zip code, telephone number, taxpayer identification number, and transaction information (e.g., correspondence, debt status and payment records).

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1132, 31 U.S.C. 3711(a) and 29 CFR Part 20.

PURPOSE(S):

Records are used for maintaining an ongoing Debt Collection/Management Program requiring tracking and accounting for assessed fines/penalties, determination of collection status and assignment of delinquent debts to private collection agencies.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:

Relevant records may be disclosed to private collection agencies in order for them to collect debts subject to this program.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

Records may be disclosed for delinquent accounts.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING AND DISPOSING OF RECORDS:

STORAGE:

Manual files and computer storage.

RETRIEVABILITY:

Debt Collection/Management data is sorted numerically by assigned case number. Records in this system are retrieved by computer and manually using the PWBA-assigned case number and a cross-reference debtor taxpayer identification number.

SAFEGUARDS:

Manual files are maintained in file cabinets with access limited to authorized personnel. Computer system is accessible, through password, only to personnel creating and maintaining the database.

RETENTION AND DISPOSAL:

Both, manual and automated records are maintained for two years after the case is closed or until expiration of applicable statute of limitations, whichever occurs first.

SYSTEM MANAGER(S) AND ADDRESS:

Administrative Officer, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals must furnish their full name and additional personal identifiers for their records to be located and identified.

RECORD ACCESS PROCEDURE:

See notification procedure above. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records. (29 CFR 71.2.).

CONTESTING RECORD PROCEDURE:

Same as notification procedure above, except individuals desiring to contest or amend information maintained in the

system should direct their written request to the system manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Investigators and auditors.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

### DOL/PWBA–7

SYSTEM NAME:

PWBA Employee Conduct Investigations.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, Pension and Welfare Benefits Administration, Office of Program Planning, Evaluation and Management, 200 Constitution Avenue, NW., Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

PWBA employee(s) against whom allegations of misconduct have been made.

CATEGORIES OF RECORDS IN THE SYSTEM:

The file contains investigative report(s) compiled in the course of employee misconduct investigations, including interviews and other data.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301.

PURPOSE(S):

The records are compiled as an adjunct to investigating allegations of employee misconduct, to make determinations on personnel actions and to document agency action in most cases.

ROUTINE USE OF RECORDS MAINTAINED IN THE SYSTEMS, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

None, except for those universal routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

The records are stored in file folders in metal cabinets.

RETRIEVABILITY:

Records are retrieved by name.

SAFEGUARDS:

The files are maintained in locked file cabinets with access only to those with a need to know the information to perform their duties. A charge out system is used to monitor and restrict the withdrawal of records from this file.

RETENTION AND DISPOSAL:

Records are retained for four years following the date either: (a) They are referred to the OIG; (b) they are transferred to OPM/GOVT–3 Records of Adverse Actions and Actions Based on Unacceptable Performance; or (c) it is determined that the allegation was without sufficient merit to warrant further action, after which they are destroyed by burning.

SYSTEM MANAGER(S) AND ADDRESS:

Director, Office of Program Planning, Evaluation, and Management, Pension and Welfare Benefits Administration, 200 Constitution Avenue NW., Washington, DC 20210.

NOTIFICATION PROCEDURE:

Inquiries should be mailed or presented to the System Manager noted at the address listed above.

RECORD ACCESS PROCEDURES:

A request for access shall be addressed to the System Manager at the address listed above. Individuals must furnish the following information for their records to be located and identified:

a. Name.

b. Approximate date of the investigation.

Individuals requesting access must also comply with the Privacy Act regulations regarding verification of identity at 29 CFR 71.2.

CONTESTING RECORD PROCEDURES:

Same as notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Complaints through the Office of the Inspector General's and the General Accounting Office's hotline system; allegations and incident reports submitted by employees; statements by the subject, fellow employees or members of the public; and other investigative reports.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

In accordance with 5 U.S.C. 552a(k)(2), investigatory material in this system of records compiled for law enforcement purposes is exempt from subsections (c)(3); (d); (e)(1); (e)(4) (G), (H), and (I); and (f) of 5 U.S.C. 552a, provided however, that if any individual is denied any right, privilege, or benefit that he or she would otherwise be entitled to by Federal law, or for which he or she would otherwise be eligible, as a result of the maintenance of these records, such material shall be provided to the individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or prior to January 1, 1975, under an implied promise that the identity of the source would be held in confidence.

### DOL/PWBA–8

SYSTEM NAME:

PWBA Consolidated Training Record.

SECURITY CLASSIFICATION:

Unclassified.

SYSTEM LOCATION:

Office of Program Planning, Evaluation & Management, Pension and Welfare Benefits Administration, 200 Constitution Avenue, NW., Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Employees of the Pension and Welfare Benefits Administration.

CATEGORIES OF RECORDS IN THE SYSTEM:

Records reflect educational attainment levels (to include areas of study), professional certifications, date of accession to PWBA, in-house (PWBA) technical training courses and Federal Law Enforcement Training Center programs completed by employees of the Pension and Welfare Benefits Administration.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301.

PURPOSE(S):

These records are used to identify which employees have completed certain of the courses, and the number of employees awaiting training. This information, in the aggregate, helps project the number of courses to schedule for succeeding years. The prior formal education information is used to respond to Congressional and other inquiries regarding the educational

attainment level of our workforce. Finally, a combination of the data elements is used to identify employees with specific educational backgrounds and current skill levels who may be considered as Instructors for the several agency-sponsored courses.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES;

None, except for those universal routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Electronic Files.

RETRIEVABILITY:

By name of the individual employee.

SAFEGUARDS:

System is password protected and limited to use by authorized personnel in the Office of Program Planning, Evaluation and Management.

RETENTION AND DISPOSAL:

Destroyed when 5 years old or when no longer needed, whichever is later.

SYSTEM MANAGER(S) AND ADDRESS:

PWBA Training Coordinator, Office of Program Planning, Evaluation and Management, PWBA, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager at the system location listed above.

RECORD ACCESS PROCEDURES:

Same as notification procedure. Individuals requesting access must also comply with U.S. Department of Labor Privacy Act regulations on verification of identity at 29 CFR 71.2.

CONTESTING RECORD PROCEDURES:

Same as notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Individual employees, SF171s, or resume(s) submitted at time of accession to PWBA and individual training course records.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

## DOL/PWBA–9

SYSTEM NAME:

Office of Enforcement Correspondence Tracking System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Office of Enforcement, PWBA, U.S. Department of Labor, 200 Constitution Ave., NW., Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Correspondents, such as employee benefit plan professionals, and other individuals involved in investigations and enforcement actions.

CATEGORIES OF RECORDS IN THE SYSTEM:

Information including plan name, plan administrator's name, service provider's name, trustee's name, and names of other individuals (such as the named defendants) involved in investigations and enforcement actions. Letters from the general public requesting information under the Freedom of Information Act or relating to all aspects of pension and welfare benefit plans covered by Title I of the Employee Retirement Income Security Act of 1974 (ERISA), the status of individuals under these plans, the Department's replies to the inquiries, and related internal memoranda, including notes pertaining to meetings and telephone calls.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1134–37.

PURPOSE(S):

This system of records is used to track the progress of correspondence through the Office of Enforcement, including a record of action taken on or response to an inquiry received from the general public or others, and to access investigative information related to field office correspondence regarding investigations instituted by the Department of Labor (DOL) under the Title I of the Employee Retirement Security Act of 1974 (ERISA). The investigative files are used in the prosecution of violations of law, whether civil, criminal or regulatory in nature.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

In addition to those universal routine uses listed in the General Prefatory Statement to this document, pursuant to 29 U.S.C. 1134, a record from this system of records may be disclosed, subject to the restrictions imposed by various statutes and rules, such as the Privacy Act, to a department or agency of the United States, or to any person actually affected by any matter which may be the subject of the investigation; except that any information obtained by the Secretary of Labor pursuant to section 6103(g) of Title 26 shall be made available only in accordance with regulations prescribed by the Secretary of the Treasury.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

The records in this system are maintained in an electronic database.

RETRIEVABILITY:

Records are retrieved from the electronic database by the name of the plan, service provider name, trustee name, the name of another individual (such as the named defendant) involved in the investigation or enforcement action, or the name of the correspondent. Records are also retrieved by case number, the plan's employer identification number (EIN).

SAFEGUARDS:

Direct access to and use of these records is restricted to authorized personnel in the Office of Enforcement. General correspondence are maintained in file cabinets with access limited to OE staff. The electronic database is password protected and limited to use by authorized personnel.

RETENTION AND DISPOSAL:

General correspondence files are destroyed after three years. The electronic database files are deleted when no longer needed.

SYSTEM MANAGER(S) AND ADDRESS:

Director of Enforcement, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURES:

Individuals wishing to inquire whether this system of records contains information about them should contact

the System Manager. Individuals should furnish their full name, address, and employee benefit plan association and should identify the employee benefit plan by name, address, and EIN (if known).

RECORD ACCESS PROCEDURES:

Request for access to records should follow the notification procedure described above. Specific materials in the system have been exempted from Privacy Act provisions under 5 U.S.C. 552a (j)(2) and (k)(2). To the extent that this system of records is not subject to exemption, it is subject to access, contest of the content of the record, and appeal of a denial to access. A determination as to exemption shall be made at the time a request for access is received. Access procedures are the same as the Notification procedures described above. Individuals requesting access must also comply with Privacy Act regulations regarding verification of identity and access to records (29 CFR 71.2).

CONTESTING RECORD PROCEDURES:

Same as the Notification procedure above, except individuals desiring to contest or amend information maintained in the system should direct their written request to the appropriate System Manager listed above, state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Correspondence from individuals, individual complaints, witnesses, or interviews conducted during investigations or plan participant or beneficiary information obtained during investigations on cases opened in the Office of Enforcement or in any of the PWBA field offices.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

a. *Criminal Law Enforcement:* In accordance with subsection 552a(j)(2) of the Privacy Act, 5 U.S.C. 552a(j)(2), information maintained for criminal law enforcement purposes in PWBA's Office of Enforcement or its field offices is exempt from subsections (c)(3), and (4), (d), (e)(1), (2), and (3), (e)(4)(G), (H), and (I), (e) (5) and (8), (f), and (g) of 5 U.S.C. 552a.

b. *Other Law Enforcement:* In accordance with subsection 552a(k)(2) of the Privacy Act, 5 U.S.C. 552a(k)(2), investigatory material in this system of records compiled for civil law enforcement purposes is exempt from subsections (c)(3), (d)(1), (2), (3), and (4), (e)(1), (e)(4)(G) and (I), and (f) of 5 U.S.C. 552a.

DOL/PWBA–10

SYSTEM NAME:

PWBA Civil Litigation Case Information System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Office of Enforcement, PWBA, U.S. Department of Labor, 200 Constitution Ave., NW, Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

The named defendants in the civil actions, and the names of other individuals involved in investigations and enforcement actions resulting in civil litigation with PWBA.

CATEGORIES OF RECORDS IN THE SYSTEM:

Documents such as litigation memoranda, legal documents, press releases, judgements, consent orders and other documents which relate information about a case in civil litigation. Information includes plan name, plan administrator's name, service provider's name, trustee's name, the named defendants, and the names of other individuals involved in investigations and enforcement actions resulting in civil litigation with PWBA.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1134–37.

PURPOSE(S):

This system of records is used to access information related to civil litigation case files involving investigations instituted by the Department of Labor (DOL) under the Title I of the Employee Retirement Security Act of 1974 (ERISA). The civil litigation case files are used in the prosecution of violations of law.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

In addition to those universal routine uses listed in the General Prefatory Statement to this document, pursuant to 29 U.S.C. 1134, a record from this system of records may be disclosed, subject to the restrictions imposed by various statutes and rules, such as the Privacy Act, to a department or agency of the United States, or to any person actually affected by any matter which may be the subject of the investigation; except that any information obtained by the Secretary of Labor pursuant to section 6103(g) of Title 26 shall be made available only in accordance with regulations prescribed by the Secretary of the Treasury.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

The records in this system are maintained in an electronic database and in manual files.

RETRIEVABILITY:

Records are retrieved by the name of the plan, service provider name, trustee name, and/or the named defendants in the investigation or enforcement action.

SAFEGUARDS:

Direct access to and use of these records is restricted to authorized personnel in the Office of Enforcement (OE). The civil litigation case files are maintained in file cabinets with access limited to OE staff. The electronic database is password protected and limited to use by authorized personnel.

RETENTION AND DISPOSAL:

Manual files are destroyed after three years, the electronic index is deleted on the same schedule as the manual files or when no longer needed whichever is later.

SYSTEM MANAGER(S) AND ADDRESS:

Director of Enforcement, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW., Washington, DC 20210.

NOTIFICATION PROCEDURES:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager. Individuals should furnish their full name, address, and employee benefit plan association and should identify the employee benefit plan by name and address.

RECORD ACCESS PROCEDURES:

Request for access to records should follow the Notification procedure described above. Specific materials in the system have been exempted from Privacy Act provisions under 5 U.S.C. 552a. To the extent that this system of records is not subject to exemption, it is subject to access, contest of the content of the record, and appeal of a denial to access. A determination as to exemption shall be made at the time a request for access is received. Access procedures are the same as the Notification procedures described above. Individuals

requesting access must also comply with Privacy Act regulations on verification of identity and access to records (29 CFR 71.2).

CONTESTING RECORD PROCEDURES:

Same as the Notification procedure above, except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager, state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Investigators, individual defendants, witnesses, and other individuals who have relevant information.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

In accordance with subsection 552a(k)(2) of the Privacy Act, 5 U.S.C. 552a(k)(2), investigatory material in this system of records compiled for civil law enforcement purposes is exempt from subsections (c)(3), (d)(1), (2), (3), and (4), (e)(1), (e)(4)(G) and (I), and (f) of 5 U.S.C. 552a, provided however, that if any individual is denied any right, privilege or benefit to which he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or prior to January 1, 1975, under an implied promise that the identity of the source would be held in confidence. Accordingly the following systems of records are exempt from (c)(3), (d)(1), (d)(2), (d)(3), (d)(4), (e)(1), (e)(4)(G), (e)(4)(I) and (f) of 5 U.S.C. 552a.

## DOL/PWBA–11

SYSTEM NAME:

PWBA Criminal Case Information System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION

Office of Enforcement, PWBA, U.S. Department of Labor, 200 Constitution Ave., NW, Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Defendants in criminal actions involving private sector employee benefit plans.

CATEGORIES OF RECORDS IN THE SYSTEM:

Court and other documents which transmit information about the progress and/or disposition of criminal cases involving private sector employee benefit plans and written summaries of same. Documents include media articles, press releases, indictments, plea agreements, judgements, appellate documents and documents bearing evidence of restitution.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1134–37.

PURPOSE(S):

This system of records is used to access information related to criminal actions involving investigations conducted by the Department of Labor (DOL). The criminal information files are used in the prosecution of violations of law.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

In addition to those universal routine uses listed in the General Prefatory Statement to this document, pursuant to 29 U.S.C. 1134, a record from this system of records may be disclosed, subject to the restrictions imposed by various statutes and rules, such as the Privacy Act, to a department or agency of the United States, or to any person actually affected by any matter which may be the subject of the investigation; except that any information obtained by the Secretary of Labor pursuant to section 6103(g) of Title 26 shall be made available only in accordance with regulations prescribed by the Secretary of the Treasury.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

The records in this system are maintained in an electronic tracking system and in manual files.

RETRIEVABILITY:

Manual files are retrieved by the name of the defendant. Records in electronic index may be retrieved by court, defendant's name, violation, type of plan, etc.

SAFEGUARDS:

Direct access to and use of these records is restricted to authorized personnel in the Office of Enforcement. The electronic system is password protected and limited to use by authorized personnel.

RETENTION AND DISPOSAL:

Manual files are destroyed after three years after case is closed, the electronic index is deleted on the same schedule as the manual files or when no longer needed whichever is later.

SYSTEM MANAGER(S) AND ADDRESS:

Director of Enforcement, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURES:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager. Individuals should furnish their full name, address, and employee benefit plan association and should identify the employee benefit plan by name and address.

RECORD ACCESS PROCEDURES:

Request for access to records should follow the Notification procedure described above. Specific materials in the system have been exempted from Privacy Act provisions under 5 U.S.C. 552a(j)(2). To the extent that this system of records is not subject to exemption, it is subject to access, contest of the content of the record, and appeal of a denial to access. A determination as to exemption shall be made at the time a request for access is received. Access procedures are the same as the Notification procedures described above. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records (29 CFR 71.2).

CONTESTING RECORD PROCEDURES:

Same as the Notification procedure above, except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager, state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Individual defendants, witnesses, and other individuals who have relevant information.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

In accordance with subsection 552a(j)(2) of the Privacy Act, 5 U.S.C. 552a(j)(2), information maintained for criminal law enforcement purposes in PWBA's Office of Enforcement or its field offices is exempt from subsections (c)(3) and (4), (d), (e)(1), (2), and (3), (e)(4)(G), (H), and (I), (e) (5) and (8), (f), and (g) of 5 U.S.C. 552a.

## DOL/PWBA–12

SYSTEM NAME:

Publication Hotline Requests

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

GMR, Inc. 7203 Gateway Court, Manassas, VA 20109.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals requesting PWBA publications via the toll free telephone number.

CATEGORIES OF RECORDS IN THE SYSTEM:

Data regarding requests for copies of PWBA publications that are received through the toll free publication request line. Data includes individual requester's name, street address, city, state, zip code, telephone number, the publication(s) ordered and the quantity, the date the order was placed and the date it was filled.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

5 U.S.C. 1135.

PURPOSE(S):

These records are maintained to process requests made to the PWBA Toll Free Publication Hotline for publications.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

None except those mentioned in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Computer storage.

RETRIEVABILITY:

Records on this system are retrieved electronically by using the name of requestor.

SAFEGUARDS:

Computer system is password protected and accessible only to personnel creating and maintaining the database.

RETENTION AND DISPOSAL:

Destroyed when three months old or when no longer needed, whichever is later.

SYSTEM MANAGER(S) AND ADDRESS:

Director of the Office of Participant Assistance and Communications, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals must furnish their full names for their records to be located and identified.

RECORD ACCESS PROCEDURES:

Same as notification procedure. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records (29 CFR 71.2).

CONTESTING RECORD PROCEDURES:

Same as Notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Individuals requesting publications.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

## DOL/PWBA–13

SYSTEM NAME:

Office of Exemption Determination ERISA Sec. 502(l) Files.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Office of Exemption Determinations, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW., Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals who have petitioned the Secretary of Labor for relief from the monetary penalties imposed under ERISA Sec. 502(l).

CATEGORIES OF RECORDS IN THE SYSTEM:

Letters from individuals seeking relief from the 502(l) penalties, attachments supporting their petitions for relief, the Department's replies thereto, and related internal memoranda, including notes pertaining to meetings and telephone calls.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1135.

PURPOSE(S):

These records are maintained to document the Department's response to petitioners' requests for relief from the section 502(l) penalties. Such penalties are imposed upon those who are found to have violated the fiduciary and prohibited transaction provisions of Part 4 of Title I of ERISA.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

None, except for those universal routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Manual files and computerized index.

RETRIEVABILITY:

Files are retrieved by name of requester using a computerized index.

SAFEGUARDS:

Access to these records is limited to authorized PWBA staff. Computer system is password protected and accessible only to personnel creating the database.

RETENTION AND DISPOSAL:

Manual records are maintained in the Office of Exemption Determinations for up to two years after case closure, then transferred to the Federal Records Center for retention for an additional 23 years. Electronic records are destroyed on the same schedule as the manual files or when no longer needed, whichever is later.

SYSTEM MANAGER(S) AND ADDRESS:

Director of Exemption Determinations, Pension and Welfare

Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. All requests must be in writing and mailed or presented in person during the Department's normal business hours.

RECORDS ACCESS PROCEDURES:

Same as notification procedures. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records (29 CFR 71.2).

CONTESTING RECORD PROCEDURES:

Same as notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the system manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Individuals requesting a 502(l) exemption and the responses thereto.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

### DOL/PWBA–14

SYSTEM NAME:

Investment Advisor Registration Data Base.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

Department of Labor, PWBA Public Disclosure Room, U.S. Department of Labor, Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Investment advisers who manage less than $25 million in assets and wish to obtain investment advisor status under the Employee Retirement Income Security Act.

CATEGORIES OF RECORDS IN THE SYSTEM:

Copies of state registration forms. Such forms vary from state to state, but typically include name, SEC file number, Employer Identification number, social security number, business address, etc.

AUTHORITY FOR THE MAINTENANCE OF THE SYSTEM:

29 U.S.C. 1002(38).

PURPOSE(S):

To develop a listing of individuals who have status as an investment advisors under ERISA.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

The records must be publicly available in accordance with ERISA.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Manual records and electronic listing.

RETRIEVABILITY:

Records on this system are retrieved electronically by the name of investment advisor. A list of the name, location, state of registration, and date filed is available on the PWBA web-site.

SAFEGUARDS:

Computer system is password protected and accessible only to personnel creating and maintaining the database. Manual files are stored off site and are only available to authorized personnel.

RETENTION AND DISPOSAL:

Manual files are destroyed when six years old. Electronic version is deleted on the same schedule as the manual files or when no longer needed, whichever is later.

SYSTEM MANAGER(S) AND ADDRESS:

Director of the Office of Participant Assistance and Communications, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW., Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals must furnish their full names for their records to be located and identified.

RECORD ACCESS PROCEDURES:

Same as notification procedure. Individuals requesting access must also comply with Privacy Act regulations on verification of identity and access to records (29 CFR 71.2).

CONTESTING RECORD PROCEDURES:

Same as notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Investment advisors who request investment advisor status under ERISA.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

### DOL/PWBA–15

SYSTEM NAME:

PWBA Inventory Management Data Base.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, Office of Information Management, Pension and Welfare Benefits Administration, 200 Constitution Avenue, NW., Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals assigned custody of PWBA-owned ADP equipment.

CATEGORIES OF RECORDS IN THE SYSTEM:

Electronic records of PWBA-owned ADP hardware, its assigned location, the individual assigned custody of equipment, acquisition/disposal and warranty data.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301.

PURPOSE(S):

To identify the makes and models of all PWBA owned ADP hardware, the equipment's current location within the agency and the individual to whom it is assigned.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

None, except for those universal routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Electronic database.

RETRIEVABILITY:

Files are retrieved using individual's name.

SAFEGUARDS:

Access to these records is limited to authorized PWBA staff. The computer system provides security with: (1) Mapping rights on the network, (2) network user logon passwords, and (3) database passwords.

RETENTION AND DISPOSAL:

Records are destroyed when no longer needed for administrative, legal, audit, or other operational purposes.

SYSTEM MANAGER(S) AND ADDRESS:

Director of Information Management, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Ave., NW., Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. All requests must be in writing and mailed or presented in person during the Department's normal business hours.

RECORDS ACCESS PROCEDURES:

Same as notification procedure. Individuals requesting access must also comply with US Department of Labor Privacy Act regulations on verification of identity at 29 CFR 71.2.

CONTESTING RECORD PROCEDURES:

Same as notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Individuals assigned computer equipment and individuals assigning the computer equipment.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

## DOL/PWBA–16

SYSTEM NAME:

Form 5500EZ Filings.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, Pension and Welfare Benefits Administration, Attention: EFAST 3833 Greenway Drive, Lawrence, KS 66046–1290.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals who have filed a Form 5500EZ with the Department of Labor for plan years beginning on or after January 1, 1999.

CATEGORIES OF RECORDS IN THE SYSTEM:

Forms 5500EZ filed with the Department of Labor for plan years beginning on or after January 1, 1999.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

26 U.S.C. 6058(a); 29 U.S.C. 1135, 1137, 1143.

PURPOSE(S):

These records satisfy the reporting and disclosure requirements mandated by the Employee Retirement Income Security Act of 1974, as amended, and the Internal Revenue Code.

**Note:** This system of records is maintained by the Department of Labor for the benefit of the Internal Revenue Service (IRS).

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

None, except for those routine uses listed in the General Prefatory Statement to this document.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

None.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Original paper filings, electronic image files of the filings, and electronic data files extracted from the filing.

RETRIEVABILITY:

Retrieved using personal name, taxpayer identification number, or Social Security number; plan number; and plan year.

**Note:** Only the IRS can retrieve this data.

SAFEGUARDS:

Accessible only to authorized personnel. Safeguards include both electronic safeguards, including C2 compliant systems and password-protected files, and physical safeguards, including a restricted-access facility.

RETENTION AND DISPOSAL:

Paper filings are retained by the system manager for 6 months, after which time they are retained off-site for a period of fifty years. Electronic files are retained by the system manager for a period of fifty years. At the end of their respective retention periods, the paper and electronic files are destroyed.

SYSTEM MANAGER(S) AND ADDRESS:

Director, Office of Information Management, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

NOTIFICATION PROCEDURE:

Individuals wishing to inquire whether this system of records contains information about them should contact the system manager indicated above. Individuals must furnish their full names for their records to be located and identified.

RECORD ACCESS PROCEDURES:

Same as notification procedure. Individuals requesting access must also comply with U.S. Department of Labor Privacy Act regulations on verification of identity at 29 CFR 71.2.

CONTESTING RECORD PROCEDURES:

Same as notification procedure above except individuals desiring to contest or amend information maintained in the system should direct their written request to the System Manager listed above, and state clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought pursuant to 29 CFR 71.9.

RECORD SOURCE CATEGORIES:

Individuals filing Form 5500EZ filings.

SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

None.

## DOL/OSBP–1

SYSTEM NAME:

Office of Small Business Programs, Small Entity Inquiry and Complaint Tracking System.

SECURITY CLASSIFICATION:

None.

SYSTEM LOCATION:

U.S. Department of Labor, Office of Small Business Programs, Frances Perkins Building, 200 Constitution Ave., NW, Room C–2318, Washington, DC 20210.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals who make oral or written complaints about, or requests or inquiries concerning, enforcement activities under the Small Business Regulatory Enforcement Fairness Act of 1996 (SBREFA) of the U.S. Department of Labor (Department).