LITTLER MENDELSON, P.C.
Michael P. Pappas (MP-6716)
885 Third Avenue
New York, New York 10022
(212) 583-9600

Attorneys for Defendant
  Comprehensive Drug Testing, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

WILLIAM E. RICHARDSON, et al.,

                Plaintiffs,

        -against-                                  No. 07-cv-11632 (MGC)

NATIONAL FOOTBALL LEAGUE, et al.,                  <u>ECF CASE</u>

                Defendants.
_____

**DEFENDANT COMPREHENSIVE DRUG TESTING, INC.'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, OR, ALTERNATIVELY, TO TRANSFER VENUE
TO THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 1

    I.     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CDT
          UNDER ERISA SECTION 510 ........................................................... 1

    II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CDT FOR
          AGE DISCRIMINATION UNDER THE ADEA ................................. 8

    III.   PLAINTIFFS HAVE NOT ESTABLISHED A BASIS FOR
          EXERCISING PERSONAL JURISDICTION OVER CDT .............................. 10

          A.    There Are No Grounds For Exercising Personal Jurisdiction Over
                CDT Under CPLR 301 ........................................................................... 10

          B.    Plaintiffs Have Not Established That CDT's Alleged Wrongful
                Acts "Arose Out Of" CDT's Alleged Activities Within New York
                State ....................................................................................................... 13

    IV.   THE CLAIMS AGAINST CDT SHOULD BE SEVERED AND
          TRANSFERRED TO A PROPER VENUE ....................................... 16

CONCLUSION ..................................................................................................... 17

i.

TABLE OF AUTHORITIES

PAGE(S)

*Barrett v. Tema Dev. (1988), Inc.*, 463 F. Supp.2d 423 (S.D.N.Y. 2006), *aff'd*, 251 Fed.Appx. 698 (2d. Cir. 2007)..................................................................................... 13

*Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983) .............................. 14

*Becker v. Mack Truck, Inc.*, 281 F.3d 372 (3rd Cir.), *cert. denied*, 537 U.S. 818 (2002)........................................................................................................................ 1, 7

*Brink v. Union Carbide Corp.*, 41 F. Supp.2d 406 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 354 (2d Cir. 2000).............................................................................................. 4, 8

*Burrows Papers Corp. v. R.G. Engineering, Inc.*, 363 F. Supp.2d 379 (N.D.N.Y. 2005) ........................................................................................................................... 11

*Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir. 1988) ................................. 4

*Erne Shipping v. HBC Hamburg Bulk Carriers GmbH & Co.*, 409 F. Supp.2d 427 (S.D.N.Y. 2006) ......................................................................................................... 11

*Estate of Ungar v. Palestinian Auth.*, 400 F. Supp.2d 541 (S.D.N.Y. 2005) ............... 11

*Granat v. Bochner*, 268 A.D.2d 365, 702 N.Y.S.2d 262 (1st Dep't 2000) ................... 15

*Hazen Paper v. Biggins*, 507 U. S. 604 (1993)............................................................. 10

*Heidle v. Prospect Reef Resort*, 364 F. Supp.2d 312 (W.D.N.Y. 2005)....................... 11

*Kahn Lucas Lancaster, Inc. v. Lark Int'l, Ltd.*, 956 F. Supp. 1131 (S.D.N.Y. 1997)................. 15

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898 (2d Cir. 1997)............................... 4, 6

*McLellan v. E.I. Dupont De Nemours & Co., Inc.*, 2006 WL 3751583 (W.D.N.Y. Dec. 19, 2006)............................................................................................................ 2

*Montesano v. Xerox Corp.*, 256 F.3d 86 (2d Cir. 2001) ............................................... 6

*Montesano v. Xerox Corp.*, 117 F. Supp.2d 147 (D. Conn. 2000), *aff'd in part*, 256 F.3d 86 (2d Cir. 2001)............................................................................................ 7

*O'Reilly v. Con. Ed.*, 374 F. Supp.2d 278 (E.D.N.Y. 2005), *aff'd*, 173 Fed. Appx. 20 (2d Cir. 2006)......................................................................................................... 8

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)..................................................... 9

*Professional Personnel Management Corp. v. Southwest Medical Assocs., Inc.*, 216 A.D.2d 958, 628 N.Y.S.2d 919 (4th Dep't 1995) ............................................. 15

*Raskin v. Wyatt*, 125 F.3d 55 (2d Cir. 1997) ........................................................... 9, 10

*Reers v. Deutsche Bahn AG*, 320 F. Supp.2d 140 (S.D.N.Y. 2004) ............................. 12

*Shawley v. Bethlehem Steel Corp.*, 784 F. Supp. 1200 (W.D. Pa., 1992), *aff'd*, 989 F.2d 652 (3d Cir. 1993)............................................................................................. 2

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

*Slapshot Beverage Co., Inc. v. Southern Packaging Machinery, Inc.*, 980 F. Supp. 684 (E.D.N.Y. 1997)..................................................................................... 14

*Smith v. Circus-Circus Casinos, Inc.*, 304 F. Supp.2d 463 (W.D.N.Y. 2003) ........................... 12

*Stewart v. NYNEX*, 78 F. Supp.2d 172 (S.D.N.Y. 1999) .................................................................. 7

*Tavoloni v. Mt. Sinai Med. Ctr.*, 26 F. Supp.2d 678 (S.D.N.Y. 1998), *aff'd*, 198 F.3d 235 (2d Cir. 1999).................................................................................. 4, 8

*White v. Omega Protein Corp.*, 390 F. Supp.2d 604 (S.D. Tex. 2005), *aff'd*, 226 Fed. Appx. 360 (5th Cir. 2007)........................................................................ 8

*Williams v. American Int'l Group, Inc.*, 2002 WL 31115184 (S.D.N.Y. Sept. 23, 2002) ............................................................................................................ 2, 7

## INTRODUCTION

Defendant Comprehensive Drug Testing, Inc. ("CDT"), by its attorneys, Littler Mendelson, P.C., respectfully submits this reply memorandum of law in further support of its motion to dismiss Plaintiffs' claims against CDT pursuant to Fed.R.Civ.P. 12(b), or, alternatively, to sever those claims and transfer the action against CDT to the Central District of California pursuant to 28 U.S.C. §§ 1391 or 1404(a).

## ARGUMENT

### I.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CDT UNDER ERISA SECTION 510

Plaintiffs acknowledge, as they must, that: (1) they were never employed (or co-employed) by CDT; (2) they were never engaged by CDT as independent contractors; (3) they were never participants in or beneficiaries of any ERISA plan that could be attributed to CDT; (4) they were never eligible for participation in any ERISA plan that could be attributed to CDT; and (5) they never sought benefits under any ERISA plan that could be, or is alleged to be, attributed to CDT.  (Pl. Opp. Brf. at 1.)

Plaintiffs further acknowledge (or, at a minimum, make no attempt to refute) the ample legal authority holding that non-participants and non-beneficiaries who were never employed by the defendant have no cognizable claim under § 510 of ERISA for failure to hire.  See, e.g., Becker v. Mack Truck, Inc., 281 F.3d 372, 380-381 (3rd Cir.) ("The plain language of § 510 omits a refusal to 'rehire,' 'hire' or to take any action related to hiring from its enumeration of prohibited acts. *** [A] failure to hire does not amount to a circumvention of promised benefits because job applicants who have yet to be hired have not been promised any benefits. *** The language enacted by Congress simply does not extend to actions taken before an employer-employee relationship exists."), cert. denied,

537 U.S. 818 (2002);  Shawley v. Bethlehem Steel Corp., 784 F. Supp. 1200, 1203 (W.D. Pa., 1992) ("[T]he words of the statute do not expressly prohibit refusals to hire an employee based on consideration of the employee's potential economic cost and benefit to the employer."), aff'd, 989 F.2d 652 (3d Cir. 1993).  See also Williams v. American Int'l Group, Inc., 2002 WL 31115184, *2-3 (S.D.N.Y. Sept. 23, 2002) (Haight, J.) (Section 510 only prohibits employers "from disrupting existing employment privileges to prevent the attainment or vesting of benefits in which those employees already have an interest," and "an employer may hire employees under terms that render them ineligible to receive benefits ... without violating the mandate of § 510.) (emphasis supplied).[1]

Undoubtedly recognizing that their failure to hire claim against CDT is inactionable under § 510, Plaintiffs now assert that their claim against CDT is not based on a failure to hire, but rather some unspecified "interference" by CDT with their attainment of benefits under the NFL and NFLMC Employee Benefit Plans.  (Pl. Opp. Brf. at 5-8.)  Plaintiffs' attempt to recast their claims is disingenuous and belied by the allegations in the Complaint.

According to the Complaint, the only "interfering" conduct by CDT was its alleged failure to hire some of the Plaintiffs.  Specifically, Plaintiffs' "Third Claim" for ERISA interference by CDT states, in relevant part:

---

[1]    The one case cited by Plaintiffs on this point, McLellan v. E.I. Dupont De Nemours & Co., Inc., 2006 WL 3751583 (W.D.N.Y. Dec. 19, 2006), is inapposite.  In McLellan, the court merely held that a claim "may" be stated under § 510 where an employer refuses to rehire employees who were previously participants in that employer's benefit plan, and the failure to rehire is for the express purpose of denying them retroactive reinstatement into the company's plan, to which they would otherwise have been entitled had they been rehired within 2 years of their discharge.  McLellan in no way stands for the proposition that individuals who were never employed and who never participated in the prospective employer's benefit plan can maintain a § 510 interference claim based on a refusal to hire in the first instance.

221. Upon information and belief, the Active DPAs who applied to CDT have been contacted by a Liana Lee of CDT and informed in words or substance, that ***CDT will not even consider hiring any of the DPAs*** until the IRS ruling concerning the DPA's status as NFL or NFLMC "employees" is "resolved."

222. Upon information and belief, ***no former NFL/NFLMC DPA has been hired by CDT***.

223. Upon information and belief, ***CDT's refusal to hire*** any of the Active DPAs, is at the request and direction of the NFL and/or NFLMC.

* * *

228. ***CDT has refused to hire*** any former NFL/NFLMC DPA, despite application and inquiry from and qualification of numerous DPAs before and after their April 20, 2007 termination.

* * *

230. ***Had CDT hired the Active DPAs***, they would continue to be NFL and NFLMC employees, and their rights to benefits, particularly those that are based upon hours accrued, would continue to mature and to vest.

(Amended Complaint ("Complaint"), ¶¶ 219-235) (emphasis in italics supplied).[2]  Thus, Plaintiffs cannot credibly contend that their § 510 claim against CDT is not based on failure to hire.

Because Plaintiffs' ERISA § 510 claim against CDT is indisputably based on CDT's alleged failure to hire them, and given that there is no recognized cause of action under § 510 based on a failure to hire, the interference claim against CDT must be dismissed as a matter of law.

Even assuming, *arguendo*, that a § 510 cause of action may be maintained based on a mere failure to hire, Plaintiffs fail to allege any facts to support a finding that: (i)

---

[2]    The only other "act" of "interference" alleged by Plaintiffs is that the NFL Defendants provided information to CDT regarding which DPAs had obtained counsel and were seeking to obtain ERISA benefits. (Pl. Opp. Brf. at 6.)  However, Plaintiffs do not explain how the mere receipt of such information by CDT interfered with their ERISA rights under the NFL Defendants' Plans.  In any event, even that purported "act" relates directly to the failure to hire claim since Plaintiffs allege that CDT's refusal to hire was based, in part, on that information. (Complaint, ¶¶ 185, 192.)

CDT's alleged failure to hire them interfered with their purported rights under the NFL/NFLMC Employee Benefit Plans; or (ii) if there was such interference, that CDT acted with the *specific intent* to deprive Plaintiffs of rights under the NFL/NFLMC Plans.

It is well-established that a plaintiff asserting unlawful interference under § 510 must prove *both* that the defendant's alleged actions <u>caused</u> a deprivation of ERISA rights *and* that those actions were undertaken with the "<u>specific intent</u>" of interfering with such rights. <u>See</u>, <u>e.g.</u>, <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 906 (2d Cir. 1997) <u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1111 (2d Cir. 1988); <u>Brink v. Union Carbide Corp.</u>, 41 F. Supp.2d 406, 416 (S.D.N.Y. 1999), <u>aff'd</u>, 210 F.3d 354 (2d Cir. 2000); <u>Tavoloni v. Mt. Sinai Med. Ctr.</u>, 26 F. Supp.2d 678, 680 (S.D.N.Y. 1998), <u>aff'd</u>, 198 F.3d 235 (2d Cir. 1999). There are no factual allegations in the Amended Complaint to sustain either of these elements.

- First, to the extent Plaintiffs had any ERISA rights under the NFL/NFLMC Plans,[3] any interference with those rights was caused by the NFL Defendants' earlier decision to terminate Plaintiffs' services and outsource its drug testing program. According to the Complaint, that decision was made in October or November 2006 -- long before CDT had even been selected as the outsourcing company:

> On October 5, 2006, the NFLMC announced in a memo to DPAs that by November 2006, it would no longer use DPAs in the drug testing program and, instead, would use another *unspecified company* to carry out the DPA functions for the NFL drug testing program....

---

[3]    CDT does not believe that Plaintiffs had or have any such rights under the NFL/NFLMC's Plans, and expressly adopts and incorporates herein the arguments stated in the NFL Defendants' Motion to Dismiss to the extent they also apply to Plaintiffs' claims against CDT.

> [I]n November 2006 ... Dennis Curran, Vice President and General
> Counsel of the NFL Management Counsel, ... told the DPAs on behalf of
> the NFLMC that they would be replaced in the near future by *a then yet to
> be selected* "independent third party administrator."....

(Complaint, ¶¶ 175, 183) (emphasis supplied). Thus, if the allegations in the Complaint
are to be believed, the NFL Defendants independently determined in October or
November 2006 that they would be terminating the services of all Active DPAs, and that
decision was motivated by the NFL Defendants' desire to avoid any arguable continuing
liability for ERISA benefits with respect to those DPAs. There are no facts alleged that
CDT -- who had not yet even been chosen to perform the drug testing function -- played
any role in that decision or otherwise brought about Plaintiffs' termination by the
NFL/NFLMC. On the contrary, taking the allegations in the Complaint as true,
Plaintiffs' termination by the NFL Defendants (and the resulting deprivation of their
rights under the NFL/NFLMC Plans) was a *fait accompli* and would have occurred
whether CDT or some other entity had been selected as the NFL's outsourcing company.
(See Complaint, ¶ 238 ("[T]he April 30, 2007, termination of the Active DPAs is
retaliation by the NFL against those DPAs who seek to pursue their rights as employees,
including any rights they may have under ERISA.")).

    Plaintiffs' conclusory allegation that they would have remained "joint employees"
of the NFL (and eligible for benefits under the NFL/NFLMC Employee Benefit Plans) if
CDT had hired them is pure speculation and is insufficient as a matter of law to support
an ERISA interference claim against CDT. It is based on the assumption that the NFL
Defendants would have continued to exercise the same degree of control over the DPAs'
services even after retaining CDT to perform that very function -- a proposition that is not
only unsupported by fact but inherently illogical. Plaintiffs' mere conjecture that the

circumstances of their relationship with the NFL/NFLMC would have remained unchanged if they had been hired by CDT is not enough to support their claim. In short, Plaintiffs have alleged no facts whatsoever to support the allegation that they would have been common law employees of the NFL/NFLMC and eligible for participation in the NFL/NFLMC benefit plans even after CDT hired them. Therefore, there is no factual or legal basis for their claim that CDT's alleged failure to hire them interfered with their purported rights under the NFL/NFLMC Employee Benefit Plans, and their § 510 interference claim against CDT should be dismissed.

- Second, even if Plaintiffs had sufficiently alleged that CDT's failure to hired them "caused" a deprivation of ERISA rights under the NFL/NFLMC Plans, the allegations in the Complaint do not support a finding that CDT acted with the "specific intent" to interfere with those rights. See Lightfoot, 110 F.3d at 898. See Montesano v. Xerox Corp., 117 F. Supp.2d 147, 164 (D. Conn. 2000) ("[A] plaintiff must show more than a lost opportunity to accrue benefits to sustain a § 510 claim."), aff'd in part, 256 F.3d 86 (2d Cir. 2001).

As an initial matter, Plaintiffs do not explain what motive CDT would have had to intentionally interfere with their rights under *another employer's* benefit plan. Plaintiffs do not allege that their participation in the NFL/NFLMC Plans would have resulted in any additional cost to CDT. Indeed, CDT likely would have *preferred* for Plaintiffs to have remained covered under the NFL/NFLMC Plans, since it would have eliminated the need for CDT to provide such benefits and/or lessened the likelihood of any benefits claims against CDT.

Furthermore, no facts or circumstances are alleged to support the conclusion that CDT's actions were motivated by a specific intent to interfere with Plaintiffs' rights under the NFL Defendants' Plans, rather than by CDT's own self-interest. For example, Plaintiffs allege that the NFL Defendants specifically directed CDT not to hire any of the former DPAs. (Complaint, ¶¶ 223, 224, 239, 240.) Since it can be assumed that CDT sought to do business with the NFL, any alleged decision by CDT to comply with the NFL's directive would have been motivated by nothing more than CDT's own self-interest in obtaining the NFL contract, and not by any specific intent to deprive Plaintiffs of ERISA rights. See, e.g., Stewart v. NYNEX, 78 F. Supp.2d 172, 187 (S.D.N.Y. 1999) (actions taken in employer's own business interests do not violate § 510 even where they result in loss of benefits, since specific intent was not to interfere with pension rights).

In addition, CDT had the right to provide (or not provide) whatever employee benefits it saw fit, including the right to utilize independent contractors who would not be eligible for such benefits. See Williams, 2002 WL 31115184 at *2-3 (employer "may hire employees under terms that render them ineligible to receive benefits given to other kinds of employees without violating the mandate of § 510.") (citing Montesano v. Xerox Corp., 256 F.3d 86, 88 (2d Cir. 2001)). See also Becker, 281 F.3d at 382-83 (Section 510 "simply does not require that employers bind themselves to ... future pension liability when making hiring decisions."). Accordingly, CDT, in its own self-interest and without violating ERISA § 510, could have lawfully determined that it did not wish to retain the services of individuals who had an expectation of receiving ERISA benefits (such as the former DPAs engaged by the NFL/NFLMC). CDT clearly had no obligation to hire

those DPAs merely because they had been eligible for and/or asserted entitlement to ERISA benefits from the NFL/NFLMC.  See id.

Finally, none of the facts alleged suggest that CDT believed Plaintiffs had any rights under the NFL/NFLMC Plans that could be interfered with.  On the contrary, according to the NFL Defendants (and not disputed by Plaintiffs), the NFL plan administrators had determined that Plaintiffs were not employees and would not have been eligible for benefits *even if they had been deemed employees*, and there is no evidence CDT had any reason to doubt that determination at the time (or currently).  (See NFL Defendants' Mem. Of Law in Support at pp. 19-21.)

In short, Plaintiffs have alleged no facts whatsoever from which a "specific intent" by CDT to interfere with their NFL/NLFMC benefits can be inferred.  Plaintiffs' conclusory allegations of such intent are insufficient.  See White v. Omega Protein Corp., 390 F. Supp.2d 604, 610 (S.D. Tex. 2005) (specific intent must be proven with positive evidence; speculation and conclusory allegations will not suffice), aff'd, 226 Fed. Appx. 360 (5th Cir. 2007).  Absent positive evidence of specific intent, the mere fact that the purported loss of benefits was a consequence of CDT's failure to hire them does not state a claim under § 510.  See O'Reilly v. Con. Ed., 374 F. Supp.2d 278 (E.D.N.Y. 2005), aff'd, 173 Fed. Appx. 20 (2d Cir. 2006); Brink, 41 F. Supp.2d at 416;  Tavoloni, 26 F. Supp.2d at 680.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CDT FOR FOR AGE DISCRIMINATION UNDER THE ADEA

Plaintiffs' essential claim is that CDT refused to hire them based on an IRS determination that they were "employees" of the NFL (and, therefore, may have been entitled to benefits under the NFL/NFLMC Employee Benefit Plans).  (See Complaint.)

As discussed in CDT's moving brief, this claim is inherently inconsistent with Plaintiffs' contention that CDT's refusal to hire them was based on age. That is, because Plaintiffs allege that their purported status as common law employees of the NFL was a determining factor in CDT's decision, and because common law employment status is not at all dependent on age, then, *a fortiori*, CDT would have made the same decision regardless of age. (See CDT's Moving Brf. at 8-9.) Indeed, according to Plaintiffs' own allegations, the NFL Defendants directed CDT not to hire **any** of the DPAs (regardless of age), and CDT complied with that directive. (Complaint, ¶¶ 220-23, 228.)

Plaintiffs now attempt to reconcile the inherent inconsistency in their claims by arguing that that they are proceeding under a "mixed motive" theory. Specifically, Plaintiffs assert that CDT was motivated both by their age and the status of the IRS determination that they were "employees" of the NFL. (Pl. Opp. Brf. at 9-11.) However, even under a mixed motive analysis, Plaintiffs' age claim fails as a matter of law.

Mixed motive claims under the ADEA are considered under the Price Waterhouse analysis. See Raskin v. Wyatt, 125 F.3d 55, 60 (2d Cir. 1997) (citing Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)). Under Price Waterhouse, the plaintiff must initially show that age was a "motivating or substantial" factor in the employment decision. Id. If the plaintiff establishes that age played a motivating or substantial part in the decision, the burden shifts to the employer to prove that it would have made the same decision even if age had not been considered. Id.

Here, even if the weak allegations against CDT were sufficient to show that age played a "motivating or substantial" part in its alleged failure to hire Plaintiffs (and they are not, for the reasons discussed in CDT's Moving Brief, pp. 9-10), the other allegations

in the Complaint conclusively establish that CDT "would have made the same decision"
regardless of age.    As stated, according to Plaintiffs' own allegations, the NFL
Defendants instructed CDT not to hire *any* of the DPAs due to the status of the IRS
determination that they were NFL employees.    The IRS determination applied to all
DPAs, regardless of age, and age had no bearing whatsoever on the DPAs' purported
status as common law employees of the NFL.  (Complaint, ¶¶ 141-142.)  Given the NFL
Defendants' alleged instruction not to hire any DPAs who were subject to the IRS
determination, and CDT's own alleged intention not to hire such individuals, there can be
no basis for concluding that age ultimately made a difference in CDT's hiring decisions,
even if it had been considered.  On the contrary, if Plaintiffs' own allegations are taken as
true, then CDT would have refused to hire any of the DPAs regardless of age.[4]
Accordingly, based on the allegations in the Complaint, Plaintiffs' so-called "mixed
motive" theory cannot stand, and no claim under the ADEA is stated against CDT.  See
Raskin, 125 F.3d at 60-63.  See also Hazen Paper v. Biggins, 507 U. S. 604, 611 (1993)
("[A] disparate treatment claim cannot succeed unless the employee's [age] actually
played a role in that process *and* had a determinative influence on the outcome)
(emphasis in original)

## III.    PLAINTIFFS HAVE NOT ESTABLISHED A BASIS FOR EXERCISING PERSONAL JURISDICTION OVER CDT

### A.    There Are No Grounds For Exercising Personal Jurisdiction Over CDT Under CPLR 301

Undoubtedly recognizing that they can establish no substantial nexus between
CDT's alleged contacts with New York and the alleged wrong (*i.e.*, CDT's refusal to hire

---

[4]    In fact, not all of the DPAs who CDT allegedly refused to hire were over age 40.
(Complaint, ¶ 66.)

the DPAs), Plaintiffs contend that the Court has general jurisdiction over CDT under CPLR 301 because CDT was "doing business" in New York at the time the Complaint was filed. However, the allegations in the Complaint provide no basis for exercising general jurisdiction over CDT under CPLR 301.

To establish general jurisdiction, Plaintiffs must prove that, at the time the Complaint was filed (January 2008), CDT was engaged in "continuous, permanent, and substantial" business activity in New York State. See Estate of Ungar v. Palestinian Auth., 400 F. Supp.2d 541, 550 (S.D.N.Y. 2005); Heidle v. Prospect Reef Resort, 364 F. Supp.2d 312, 314 (W.D.N.Y. 2005) (citing cases). The specific factors considered in assessing general jurisdiction under CPLR 301 include, but are not limited to: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; the existence of a phone listing in New York; and the permanent presence of employees or agents in New York. See, e.g., Erne Shipping v. HBC Hamburg Bulk Carriers GmbH & Co., 409 F. Supp.2d 427, 433-34 (S.D.N.Y. 2006); Burrows Papers Corp. v. R.G. Engineering, Inc., 363 F. Supp.2d 379, 383-84 (N.D.N.Y. 2005).

Here, the allegations in the Complaint fall woefully short of demonstrating the type of "continuous and systematic" business activity required to support a finding of general jurisdiction under CPLR 301. Indeed, the only jurisdictional allegations pertaining to CDT are the following:

> 113. Defendant CDT contracted with the NFL and NFLMC, New York domiciled entities, to provide drug testing services, and, upon information and belief, its officers met with NFLMC representatives in New York City to present CDT's proposal to provide such services and later to negotiate the agreement to do so. Upon information and belief, Defendant CDT recruited and has

> employed sample collectors to collect urine samples in New York State. CDT is subject to personal jurisdiction in this forum.

(Complaint, ¶ 113.)

Nowhere in the Complaint is it alleged that CDT was engaged in "continuous, permanent, and substantial" business activity in New York State as of January 2008. Further, nowhere is it alleged that CDT has an office or other property in New York State, a phone listing here, or permanent employees continuously and systematically conducting business here.[5]   In short, the Complaint fails to state any grounds for exercising general jurisdiction over CDT under the "doing business" standard of CPLR 301.

Perhaps conceding the deficiency of the Complaint in this regard, Plaintiffs now attempt to present evidence outside the pleadings and ask the Court to take "judicial notice" of certain Internet websites. (Pl. Opp. Brf. at 15-16.) Even if the sources cited by Plaintiffs were sufficient to permit judicial notice, they do not establish that CDT was engaged in "continuous, permanent, and substantial" business activity in New York State as of January 2008. At very most, they show: (i) that at some unspecified time, and for an unspecified period, CDT retained independent contractors to occasionally and randomly collect samples from professional sports teams, a small fraction of which happen to be located in New York;[6] and (ii) that won a bid to be the LPGA's testing agency and collected samples at the Fields Open in Hawaii in February 2008 before being

---

[5]    An out-of-state corporation's mere engagement of limited-authority independent contractors to occasionally provide services in New York is generally insufficient to establish the permanent presence of employees or agents for purposes of the CPLR 301 factors. See, e.g., Reers v. Deutsche Bahn AG, 320 F. Supp.2d 140, 152-53 (S.D.N.Y. 2004); Smith v. Circus-Circus Casinos, Inc., 304 F. Supp.2d 463, 465-66 (W.D.N.Y. 2003).

[6]    As the Court is undoubtedly aware, both the Jets and Giants are located in New Jersey, not New York. The Bills are the only NFL team located within New York State.

dismissed by the Tour. Plaintiffs have simply offered no evidence or made any factual allegations that CDT's provision of drug testing services to these entities amounted to "continuous and systematic" business in New York, or, to the extent such services were provided as of January 2008, that CDT's activities within New York were "continuous, permanent and substantial" in nature. Therefore, Plaintiffs have not sufficiently alleged that CDT was "doing business" in New York for purposes of CPLR 301.

**B.** **Plaintiffs Have Not Established That CDT's Alleged Wrongful Acts "Arose Out Of" CDT's Alleged Activities in New York State**

As Plaintiffs acknowledge, long-arm personal jurisdiction under CPLR 302 may be exercised over a non-domiciliary defendant *only* if the cause of action arose out of the defendant's contacts with New York State. See, e.g., Barrett v. Tema Dev. (1988), Inc., 463 F. Supp.2d 423, 429 (S.D.N.Y. 2006) ("To establish personal jurisdiction under [CPLR 302], the plaintiff must demonstrate that the defendant engaged in a purposeful business transaction in or directed to New York and that such contacts with the state had a 'substantial relationship' to the claim asserted in the underlying litigation.") (emphasis supplied), aff'd, 251 Fed.Appx. 698 (2d. Cir. 2007).

However, Plaintiffs cannot show that the act upon which they base their claims against CDT -- the alleged refusal to hire Plaintiffs -- arose out of CDT's contacts with New York. Indeed, none of the alleged facts cited by Plaintiffs remotely establishes the required substantial nexus between CDT's failure to hire and its activities within New York State. (See Pl. Opp. Brf. at 20.)

First, the mere fact that "CDT engaged in repeated communications in New York for the purpose of negotiating and executing a contract with the New York-based NFL and NFLMC" does not establish that CDT's hiring decisions "arose out of" such

13

communications or that those decisions were impacted in any way by the fact that the NFL Defendants happened to be located in New York. In short, Plaintiffs do not allege any facts suggesting that CDT's hiring decisions regarding the DPAs, individually or as a group, were made during CDT's in-person or remote contract negotiations with the NFL.

Second, the mere fact that CDT "telephoned New York resident DPAs to inform them that it was not retaining them" clearly does not establish that the hiring decisions being communicated "arose out of" those conversations. Plaintiffs simply allege that the decisions were communicated by phone to a few individuals in New York (among many others located nationwide) after the decisions had already been made. That some rejected applicants happened to be located in New York was mere happenstance and had no substantial relationship (or any relationship at all) to CDT's hiring decisions.

Third, Plaintiffs' allegation that "CDT engaged in repeated conversations with the NFL in New York regarding the employment of the DPAs with Defendant CDT" is unsupported by any allegation in the Complaint and, in any event, is insufficient to establish that CDT's hiring decisions "arose out of" CDT's purposeful business activities within the State. That CDT may have "discussed the employment" of the DPAs, without more, does not establish that CDT's actual hiring decisions arose out of those alleged conversations.

Further, "New York Courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." Slapshot Beverage Co., Inc. v. Southern Packaging Machinery, Inc., 980 F. Supp. 684, 687 (E.D.N.Y. 1997) (quoting Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 766 (2d Cir. 1983)). Thus, "contacts through telephone calls, the

mail, and by facsimile, are usually insufficient to confer personal jurisdiction." <u>Kahn Lucas Lancaster, Inc. v. Lark Int'l, Ltd.</u>, 956 F. Supp. 1131, 1135 (S.D.N.Y. 1997). <u>See also</u> <u>Granat v. Bochner</u>, 268 A.D.2d 365, 702 N.Y.S.2d 262, 263 (1st Dep't 2000) ("sending faxes and making phone calls to this State are not, without more, activities tantamount to 'transacting business' within the meaning of the … long-arm statute."); <u>Professional Personnel Management Corp. v. Southwest Medical Assocs., Inc.</u>, 216 A.D.2d 958, 628 N.Y.S.2d 919, 919 (4th Dep't 1995) ("Interstate negotiations by telephone, facsimile or mail are insufficient to impose personal jurisdiction in New York upon a non-resident defendant [under CPLR 302(a)(1)]."). Here, the fact that the person on the other end of the phone during the alleged conversations happened to be located in New York is wholly insufficient to establish that CDT's hiring decisions "arose out of" its activities within New York. According to Kim Jasper's unrefuted declaration, the selection of specimen collectors by CDT for its contract with the NFL was done by Ms. Jasper and Liana Lee from CDT's office in Long Beach, where they received applications and communicated with applicants by phone, fax, mail, or e-mail. (Jasper Decl., ¶ 6.) Furthermore, the final selection decisions were made at CDT's office in Long Beach, and applicants were all informed of CDT's decisions by communications from Ms. Lee or Ms. Jasper originating in Long Beach. (<u>Id.</u>)

Finally, Plaintiffs assert that "the CDT 'sports collectors' have performed their work for the NFL, NFLMC, and CDT in New York." Obviously, the allegation that CDT personnel have performed work in New York *after* Plaintiffs were rejected does not establish any substantial nexus between those alleged activities and the hiring decisions of which Plaintiffs complain. Since Plaintiffs assert no facts suggesting that CDT's

decision not to hire them "arose out of" the fact that others later "performed work" for CDT in New York, this allegation is insufficient to confer jurisdiction under CPLR 302.

In sum, because Plaintiffs have not alleged and cannot establish that CDT's alleged decision not to hire them (which was made in California) arose from CDT's contacts with New York, personal jurisdiction over CDT may not be invoked under New York's long-arm statute. See CPLR 302.

## IV. THE CLAIMS AGAINST CDT SHOULD BE SEVERED AND TRANSFERRED TO A PROPER VENUE

Contrary to Plaintiffs' contention, the claims against CDT are amenable to severance and transfer because they are sufficiently separate and distinct from the claims against the NFL Defendants. As discussed, Plaintiffs' claims against CDT are based on CDT's alleged refusal to hire them *after* their relationship with the NFL/NFLMC was terminated, whereas the claims against the NFL/NFLMC are based on the NFL/NFLMC's failure to designate them as employees during their employment, its determination that they were not eligible for ERISA benefits, and its decision to terminate their services. Any limited overlap (such as alleged discussions between CDT and the NFL regarding the DPAs) can be addressed through shared discovery, and is insufficient to justify the significant hardship and inconvenience that would result in requiring CDT to defend this action 3,000 miles away from its only place of business. In contrast, no additional hardship would befall Plaintiffs since they are located throughout the country, and it would be no more costly or inconvenient to Plaintiffs to appear in the Central District of California than in New York.

Accordingly, if the Court determines that it has personal jurisdiction over CDT, the Court should sever and transfer the failure to hire claims against CDT to the United

States District Court for the Central District of California for the convenience of the parties and in the interests of justice pursuant to 28 U.S.C. § 1404(a) and Fed.R.Civ.P. 21.

## CONCLUSION

For the foregoing reasons, Defendant CDT respectfully requests that the Court issue an Order: (i) dismissing the action as against CDT in its entirety pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3), and/or 12(b)(6), (ii) alternatively, severing and transferring Plaintiffs' claims against CDT to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) and Fed.R.Civ.P. 21, and (iii) awarding CDT such other and further relief as the Court deems equitable and just.

Dated: New York, New York
      July 29, 2008

Respectfully submitted,

LITTLER MENDELSON, P.C.

By:        S/
            Michael P. Pappas (MP-6716)